# Exhibit A

# NATIONAL REGISTERED AGENTS, INC.
## SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM

To: MARK VUONO
VUONO & GRAY, LLC
310 Grant St Ste 2310
Pittsburgh, PA 15219-2247

SOP Transmittal #  **535941113**

312-345-4336 - Telephone

Entity Served:  AMERICAN INTERNATIONAL RELOCATION SOLUTIONS, LLC  (Domestic State: PENNSYLVANIA)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc. or its Affiliate in the State of ILLINOIS on this 26 day of July, 2019. The following is a summary of the document(s) received:

1. **Title of Action:**  MELINDA SGARIGLIA, PLTF. vs. AMERICAN INTERNATIONAL RELOCATION SOLUTIONS, LLC, ETC., ET AL., DFTS. // TO:

2. **Document(s) Served:**  Other: VERIFIED COMPLAINT, SUMMONS, ATTACHMENT(S)

3. **Court of Jurisdiction/Case Number:** Cook County Circuit Court - Cook County Judicial District, IL
   Case # 2019CH07429

4. **Amount Claimed, if any:**  N/A

5. **Method of Service:**

   _X_ Personally served by:  _X_ Process Server  ___ Law Enforcement  ___ Deputy Sheriff  ___ U. S Marshall

   ___ Delivered Via:  ___ Certified Mail  ___ Regular Mail  ___ Facsimile

   ___ Other (Explain):

6. **Date and Time of Receipt:**  07/26/2019 01:06:00 PM CST

7. **Appearance/Answer Date:**  10/18/2019 AT 10:00 A.M.

8. **Received From:**  Carol Oshana     9. **Carrier Airbill #** 1ZY041160193244586
   OSHANA LAW
   33 N. Dearborn, Suite 200
   Chicago, IL 60602        10. **Call Made to:** Not required
   312-404-8390

11. **Special Comments:**
SOP Papers with Transmittal, via  UPS Next Day Air

Image SOP

Email Notification,  MARK VUONO  MVUONO@VUONOGRAY.COM

**NATIONAL REGISTERED AGENTS, INC.**          **CopiesTo:**

Transmitted by  Khalilah Starks

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL

Hearing Date: 10/18/2019 10:00 AM - 10:00 AM
Courtroom Number: 2405
Location: District 1 Court
Cook County, IL

FILED
6/20/2019 12:11 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH07429
5489146

FILED DATE: 6/20/2019 12:11 PM 2019CH07429

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

MELINDA SGARIGLIA

(Name all parties)

v.

AMERICAN INTERNATIONAL ET AL.

Case No. 2019 CH 07429

National Rea Agents
208 S. LaSalle #814

☑ SUMMONS        ☐ ALIAS SUMMONS

To each Defendant: 60604

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 1 of 3

**Summons - Alias Summons** (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: 44899

Atty Name: Oshana Law

Atty. for: PLAINTIFF

Address: 33 N. Dearborn Suite 200

City: CHICAGO

State: IL  Zip: 60602

Telephone: 312 404 8390

Primary Email: Oshanalaw@yahoo.com

Witness: 6/20/2019 12:11 PM DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

FILED DATE: 6/20/2019 12:11 PM  2019CH07429

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

- Richard J Daley Center
  50 W Washington
  Chicago, IL 60602

- District 2 - Skokie
  5600 Old Orchard Rd
  Skokie, IL 60077

- District 3 - Rolling Meadows
  2121 Euclid
  Rolling Meadows, IL 60008

- District 4 - Maywood
  1500 Maybrook Ave
  Maywood, IL 60153

- District 5 - Bridgeview
  10220 S 76th Ave
  Bridgeview, IL 60455

- District 6 - Markham
  16501 S Kedzie Pkwy
  Markham, IL 60428

- Domestic Violence Court
  555 W Harrison
  Chicago, IL 60607

- Juvenile Center Building
  2245 W Ogden Ave, Rm 13
  Chicago, IL 60602

- Criminal Court Building
  2650 S California Ave, Rm 526
  Chicago, IL 60608

### Daley Center Divisions/Departments

- Civil Division
  Richard J Daley Center
  50 W Washington, Rm 601
  Chicago, IL 60602
  Hours:  8:30 am - 4:30 pm

- Chancery Division
  Richard J Daley Center
  50 W Washington, Rm 802
  Chicago, IL 60602
  Hours:  8:30 am - 4:30 pm

- Domestic Relations Division
  Richard J Daley Center
  50 W Washington, Rm 802
  Chicago, IL 60602
  Hours:  8:30 am - 4:30 pm

- Civil Appeals
  Richard J Daley Center
  50 W Washington, Rm 801
  Chicago, IL 60602
  Hours:  8:30 am - 4:30 pm

- Criminal Department
  Richard J Daley Center
  50 W Washington, Rm 1006
  Chicago, IL 60602
  Hours:  8:30 am - 4:30 pm

- County Division
  Richard J Daley Center
  50 W Washington, Rm 1202
  Chicago, IL 60602
  Hours:  8:30 am - 4:30 pm

- Probate Division
  Richard J Daley Center
  50 W Washington, Rm 1202
  Chicago, IL 60602
  Hours:  8:30 am - 4:30 pm

- Law Division
  Richard J Daley Center
  50 W Washington, Rm 801
  Chicago, IL 60602
  Hours:  8:30 am - 4:30 pm

- Traffic Division
  Richard J Daley Center
  50 W Washington, Lower Level
  Chicago, IL 60602
  Hours:  8:30 am - 4:30 pm

FILED
6/20/2019 12:11 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH07429
5489146

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

<table>
<tr><td>MELINDA SGARIGLIA,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Condominium Owner,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>    Plaintiff,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>Case No. 2019CH07429</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>AMERICAN INTERNATIONAL RELOCATION</td><td>)</td><td></td></tr>
<tr><td>SERVICES, LLC, D.B.A. AIRES, AN ILLINOIS</td><td>)</td><td></td></tr>
<tr><td>LIMITED LIABILITY COROPORATION,</td><td>)</td><td></td></tr>
<tr><td>NICHOLAS GONRING & KELLY GONRING,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>    Defendants.</td><td>)</td><td></td></tr>
</table>

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

## VERIFIED COMPLAINT

Plaintiff, MELINDA SGARLIGLIA, by and through her attorneys, Carol Oshana and Oshana Law, as and for her Complaint against Defendants, AMERICAN INTERATIONAL RELOCATION SEVICES, LLC, d/b/a AIRES, and NICHOLAS AND KELLY GONRING states as follows:

### I.   THE PARTIES

1.     Plaintiff, MELINDA SGARIGLIA ("Sgariglia"), is a citizen of the State of Illinois, residing in Cook County, Illinois and an owner of a condominium located at 2726 West Cortez Street, Unit 1, Chicago, IL 60622 ("Condominium"). The property index number is 16-01-408-055-1001. The building consists of a 3-unit condominium association called 2726 W. Cortez Avenue Condominiums ("Condo Association").

2.     Defendant, AMERICAN INTERATIONAL RELOCATION SEVICES, LLC, d/b/a AIRES ("AIRES"), is an Illinois Limited Liability Corporation that is located at 6 Penn Center West, Suite 200, Pittsburgh, PA 15276.

3.      Defendant, Nicholas Gonring and Kelly Gonring ("The Gonrings") are the former owners of the Condominium.  They purchased the Condominium on or about May 5, 2016.

## II.      JURISDICTION AND VENUE

4.      Jurisdiction is proper because the Complaint concerns a contract for the sale of a Condominium, which is located in Chicago, Illinois.   Venue is proper in Cook County, Illinois, because the causes of action pled in Complaint are based upon transactions that occurred in Cook County, Illinois, and Plaintiff SGARIGLIA resides in Cook County, Illinois.

## III.      FACTS COMMON TO ALL COUNTS

5.      On or about May 21, 2018, Defendants listed the Condominium for sale on the MLS for the purchase price of $475,000.

6.      On June 8, 2019, Defendant ARIES signed a Condominium Real Estate Purchase and Sale Contract ("Sales Contract") accepting the Plaintiff's offer to purchase the Condominium.  The purchase price $510,000.00, with the closing to occur on July 25, 2018. (See Sales Contract, attached as Exhibit A).

7.      At the time of the signing of the contract, and since May 5, 2016, The Gonrings were the owners of the Condominium and ARIES was not the owner.

8.      Attached to the Sales Contract is a Residential Real Property Disclosure Report under 765 ILCS 77/35, signed by The Gonrings.  In it, they check the box "no" for all items requesting if they are aware of any defects, including "leaks or material defects in the roof, ceilings, or chimney" and defects "in the walls, windows, doors or floors." (See Disclosure Report, attached as Exhibit B-1).  Plaintiff relied upon the Sellers' representations and proceeded with the purchase of the Condominium.

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

2

9. In addition, the Defendants signed a Sellers Property Disclosure Statement that was provided to Plaintiff Sgariglia. (See Property Disclosure Statement, attached as Exhibit B-2). Also as to whether they were aware of water leakage, the Defendants only disclose that "unit 3 had leaks on west facing windows HOA sealed building to resolve Unit 3 leak." (See para. 6a.). When asked if they were aware of any past or present "deterioration or other problems with the walls, foundations or other structural components," the Defendants answered "no." Plaintiff relied upon the Sellers' representations and proceeded with the purchase of the Condominium.

10. Also part of the Sales Contract is an Addendum to Purchase and Sale Agreement, which identifies AIRES as the Seller. (See Addendum, attached as Exhibit C).

11. On June 14, 2018, attorneys for Plaintiff Sgariglia sent an attorney review letter to Defendants' attorney. (See June 14, 2018 letter, attached as Exhibit D). In paragraph 8, Plaintiff Sgariglia asks the Seller Defendants to verify that the Condo Association has not experienced any instances of water (interior or exterior) leaking into the Property and/or any water damage during Seller's ownership of the Property." Further, in paragraph 9, Plaintiff Sgariglia's attorney asked if there had been any insurance claims within the last 5 years and if there any "any other matter concerning this property or the Seller that may interfere with the Buyer's enjoyment and marketability of the property."

12. On June 18, 2018, Defendant AIRES' attorney responded to the letter and refused to answer paragraphs 8e, 9a and 9e, claiming that as a relocation company, they are unable to make any representation or warranties beyond its factual report. (See June 18, 2018 letter, attached as Exhibit E.)

13. On June 22, 2018, counsel for Plaintiff Sgariglia reiterated their request for information under paragraphs 8e, 9a and 9e. (See June 22, 2018 letter, attached as Exhibit F).

FILED DATE: 6/20/2019 12:11 PM 2019CH07429

3

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

14.     On July 2, 2018, Defendant AIRES responded that they have no knowledge of any leaks "when the information reported in the Residential Real Property Disclosure Report or other homeowner provided disclosures makes no mention of water infiltration issues within the Property." (See July 2, 2018 letter, attached as Exhibit G.)

15.     In the same letter, Seller reports no insurance claims were made against their homeowners' insurance within the last 5 years, and that that Seller reports that the property is not subject to any current or pending complaints." (See Exhibit G, para. 8, 9).   Plaintiff Sgariglia relied upon this representation in proceeding with the purchase of the Condominium.

16.     The Defendants provided a 22.1 statement to Plaintiff Sgariglia that asks if any capital expenditures were anticipated by the Association for the current or next to fiscal years that would require a special assessment and/or increase in the monthly assessments, and the Association answered "No." (See 22.1 Statement, attached as Exhibit H).  Defendants were well aware that this was a false statement.

17.     On or about July 25, 2018, Defendants The Gonrings conveyed the Condominium to Plaintiff Sgariglia by Warranty Deed.

18.     On September 7, 2018, John Gorr, the owner of the 3, informed Plaintiff Sgariglia that "there has been a history of water intrusion to the building" and that the "history of the water intrusion has been thoroughly documented over some years and was clearly communicated along the way to the other unit owners." (See September 7, 2018, attached Exhibit I).

19.     Plaintiff Sgariglia demanded and received the history of documentation as it pertains to the condominium association.  By way of example, emails between the owners complaining about water infiltration in the condominium building go back as far as April 2013. (See April 18, 2013 email, attached as Exhibit J).

4

FILED DATE: 6/20/2019 12:11 PM    2019CH07429

20.      Complaints continued after Defendant The Gonrings purchased the Condominium after May 5, 2016.   Specifically, on December 4, 2017, John Gorr informed The Gonrings that an engineer concluded that water had been entering his unit due to improper flashing.  (See December 4, 2017 email, attached as Exhibit K.)  In addition, on February 20, 2018, an email from Defendant Kelsey Gonring demonstrates that they became aware of the history of the water infiltration and that "because the water infiltration issue has not been properly addressed and has gotten so bad and costly, you are now reaching out to the HOA." (See February 20, 2018 email, attached as Exhibit L.)

21.      In addition, The Gonrings were aware that the issue had been ongoing for the last 5 years and that this was an HOA issue, including the requirement about fixing the flashing. (See March 12, 2018 email, attached as Exhibit M).

22.      During Defendant The Gonring's ownership of the Condominium, the Association received an ESI Investigative Report that was sent to Mr. Gorr on November 29, 2017.  (See ESI Investigative Report, attached as Exhibit M).  The Investigative Report opines that water infiltration was occurring "at various locations of the structure, but particularly at window and door openings," with the problem due to deficiencies in the "original construction of the building with the predominate issue being improper flashing at wall openings." (See Exhibit N, page 4).

23.      The Association made a claim on its insurance coverage, which was denied on or about November 30, 2017.  (See November 30, 2017 letter from Erie Insurance, attached as Exhibit O).

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

24.     The Association received quotes for exterior and interior inspection on or about March 6, 2018 from Bral Restoration, LLC.  (See March 6, 2018 proposal, attached as Exhibit P).  John Gorr, as President of the HOA accepted this proposal.  (See Exhibit P, page 2).

25.     On May 3, 2018, Bral Restoration, LLC followed up on its investigative results to the Association, and determined that the "existing flashing was through wall that allowed water to penetrate right into the back of block."  (See May 3, 2018 Water Investigation Results, attached as Exhibit Q).  Bral Restoration also submitted its proposal for work to repair the building.  (See Exhibit Q).

26.     The Association also pursued other quotes.  For example, on or about March 30, 2018 it received a quote from Gralak Tuckpointing.  (See March 30, 2018 Estimate, attached as Exhibit R).  Also on May 7, 2018, Defendant Kelsey Gonring received a quote from Arrow Masonry, describing work to be performed on the Building, including installing flashing "above all 3 rear decks."  (See May 7, 2018 Arrow Masonry and Exteriors Contract, attached as Exhibit S).

27.     The Defendants never provided Plaintiff Sgarigilia with any of the reports or estimates.

28.     The Defendants never disclosed any problems associated with the flashing to Plaintiff Sgariglia.

29.     Despite being informed of the myriad of structural problems and leaks associated with the Building, Sellers failed to disclose the defects in their Residential Real Property Disclosure Report, which states that the information is being provided as of May 17, 2018, and states under line 6 that the Sellers are not aware of material defects in the walls, windows, door, or floors. (See Exhibit B-1, para 6.).

30.     On its Aires disclosure report, the Sellers concealed the magnitude of the problem and warranted that the issues were resolved, while concealing the defects by answering "no" when as asked about problems with the walls or other structural components. (See Exhibit B-2, para. 6a and 6b).

31.     Defendants intentionally misrepresented to Plaintiff Sgarligia that there was no water leakage and that "the provided disclosures makes [sic] no mention of water infiltration issues within the Property." (See Exhibit G, para. 7.) The Defendants received a report and were obtaining quotes to address the water infiltration a mere few weeks before the Condominium was listed for sale.

32.     Defendants intentionally misrepresented that they had made no claims against their homeowners' insurance within the last five years, when there was a claim for coverage that had been made less than 1 year before. (See Exhibit G, para. 8; see also Exhibit N).

33.     Upon learning of the exact nature of the concealed defects, Plaintiff has obtained quotes for repairs. The total amount of estimate repairs will costs the entire Association approximately $275,000.00 and Plaintiff is responsible for 44%.

34.     Plaintiff Sgariglia's Condominium has depreciated in value due to the defects.

## COUNT I
## (VIOLATION OF 765 ILCS 77/35 ET SEQ. AGAINST DEFENDANTS NICHOLAS AND KELLY GONRING)

35.     Plaintiff restates and reiterates paragraphs 1 through 34 as though full restated herein.

36.     The Illinois Residential Real Property Disclosure Act ("Disclosure Act") requires Sellers of property to disclose certain conditions of the property. 765 ILCS 77/35.

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

37.     Under the pertinent portions of the Disclosure Act, "A person who knowingly violates or fails to perform any duty prescribed by any provision of this Act or who discloses any information on the Residential Real Property Disclosure Report that he knows to be false shall be liable in the amount of actual damages and court costs, and the court may award reasonable attorney fees incurred by the prevailing party. (765 ILCS 77/55).

38.     Defendants violated the Disclosure Act by failing to mention any of the defects that they were well aware of.

WHEREFORE, Plaintiff, MELINDA SGARIGLIA, prays for the entry of judgment in his favor and against Defendants, NICHOLAS & KELLY GONRING, in an amount in excess of $100,000.00, plus costs, attorney fees, prejudgment interest, costs, and whatever further relief the Court deems necessary or appropriate under the circumstances.

<div align="center">

**COUNT II**
**(FRAUDULENT CONCEALMENT)**

</div>

39.     Plaintiff Sgarigilia repeats and realleges the allegations contained in Paragraphs 1 through 38 of the Complaint as though actually pled herein.

40.     Defendants were well apprised of the problems associated with the Condominium Association building structure.

41.     Defendants had a duty to disclose all latent defects to Plaintiff Sgariglia.

42.     Defendants concealed the latent defects by intentionally providing false information in the disclosures and the letters to Plaintiff's attorney, while claiming minor issues had been allegedly resolved.

43.     Defendants concealed their claim for insurance and denied making any such claims.

8

FILED DATE: 6/20/2019 12:11 PM  2019CH07429

44.     Defendants made the false statements to induce Plaintiff Sgariglia to purchase the Condominium, and Plaintiff Sgariglia did rely upon those statements and purchased the Condominium.

45.     The defects were not discovered by a professional inspector who Plaintiff retained and were not readily visible to either the professional inspector or to Plaintiff Sgariglia.

46.     The information was material to Plaintiff Sgariglia, as the quotes provided to Defendants by contractors demonstrated that work could easily cost $125,000.00, according to estimates.

WHEREFORE, Plaintiff, MELINDA SGARIGLIA, prays for the entry of judgment in his favor and against Defendants, AMERICAN INTERATIONAL RELOCATION SEVICES, LLC, d/b/a AIRES, and NICHOLAS AND KELLY GONRING., in an amount in excess of $100,000.00, or in the alternative, rescission of contract and restitution, plus costs, prejudgment interest, attorney fees and whatever further relief the Court deems necessary or appropriate under the circumstances.

### COUNT III
### (BREACH OF CONTRACT)

47.     Plaintiff Sgarigilia repeats and realleges the allegations contained in Paragraphs 1 through 46 of the Complaint as though actually pled herein.

48.     Within every contract is the covenant of good faith and fair dealing.

49.     Defendants violated the duty of good faith and fair dealing by concealing the structural problems associated with the Condominium, the claim against insurance and the complaints of water seepage that were well known to Defendants.

9

WHEREFORE, Plaintiff, MELINDA SGARIGLIA, prays for the entry of judgment in his favor and against Defendants, AMERICAN INTERATIONAL RELOCATION SEVICES, LLC, d/b/a AIRES, and NICHOLAS AND KELLY GONRING., in an amount in excess of $100,000.00, or in the alternative, rescission of contract and restitution, plus costs, prejudgment interest, attorney fees and whatever further relief the Court deems necessary or appropriate under the circumstances.

<div style="margin-left:50%">

MELINDA SGARIGLIA,,
Plaintiff

BY:_____

One of her Attorneys

</div>

Carol Oshana, Esquire
OSHANA LAW
33 N. Dearborn, Suite 200
Chicago, Illinois  60602
312-404-8390
Oshanalaw@yahoo.com

Dated:  June 11, 2019

10

FILED DATE: 6/20/2019 12:11 PM  2019CH07429

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

## VERIFICATION

Melinda Sgariglia, under penalties as provided by law pursuant to Section 5/1-109 of the Illinois Code of Civil Procedure, hereby certifies that the statements set forth in this First Verified Complaint are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he/she verily believes the same to be true.

MELINDA SGARIGLIA

11

dotloop signature verification: www.dotloop.com/my/verification/DL-355357745-3-1073
DocuSign Envelope ID: 097E6F1C-7090-4B1C-BB50-77350249A631



# CHICAGO ASSOCIATION OF REALTORS®
## Condominium Real Estate Purchase and Sale Contract
(including condominium townhomes and commercial condominiums)
### This Contract is Intended to be a Binding Real Estate Contract



1. **Contract.** This Condominium Real Estate Purchase and Sale Contract ("*Contract*") is made by and between
2. **Melinda Sgariglia** ("*Buyer*"), and ~~OOR~~ Aires ("*Seller*")
3. (Buyer and Seller collectively, ("*Parties*"), with respect to the purchase and sale of the real estate and improvements located at
4. **2726 W Cortez St, Unit 1, Chicago, IL 60622** ("*Property*").
5. The Property P.I.N. # is **16014080551001**
6. The Property includes parking space number(s) **tbd**, which is (check all that apply) ☐ deeded, ☐ limited common element, ☑ assigned, ☐ indoor, ☐ outdoor.
7. If deeded, the parking P.I.N. is: _____. The Property includes storage space/locker number(s) **tbd**, which
8. is (check all that apply) ☐ deeded, ☐ limited common element, ☑ assigned. If deed, the storage space/locker P.I.N.# is: _____.

9. 2. **Fixtures and Personal Property.** At Closing (as defined in Paragraph 8 of this Contract), in addition to the Property, Seller shall transfer to Buyer by a Bill of Sale
10. all heating, cooling, electrical and plumbing systems, and the following checked and enumerated items (collectively, "*Fixtures and Personal Property*"), which Fixtures and
11. Personal Property are owned by Seller, and to Seller's knowledge, are currently present on the Property and in operating condition as of the Acceptance Date:

12. ☑ Refrigerator___ ☑ Sump Pump___ ☑ Central air conditioner___ ☐ Fireplace screen ☐ Built-in or attached
13. ☑ Oven/Range___ ☑ Smoke and carbon monoxide ☐ Window air conditioner___ and equipment___ shelves or cabinets___
14. ☑ Microwave___ detectors___ ☐ Electronic air filter___ ☐ Fireplace gas log___ ☑ Ceiling fan(s)___
15. ☑ Dishwasher___ ☑ Intercom system___ ☐ Central humidifier___ ☐ Firewood___ ☐ Radiator covers___
16. ☑ Garbage disposal___ ☑ Security system___ (rented or owned)(check one) ☐ Attached gas grill___ ☑ All planted vegetation
17. ☐ Trash compactor___ ☐ Satellite Dish___ ☑ Lighting fixtures___ ☑ Existing storms ☐ Outdoor play set/swings
18. ☑ Washer___ ☑ Attached TV(s)___ ☐ Electronic garage door(s) and screens___ ☐ Outdoor shed
19. ☑ Dryer___ ☐ TV Antenna___ with ___ remote unit(s) ☑ Window treatments___
20. ☐ Water Softener___ ☐ Multimedia equipment___ ☑ Tacked down carpeting ☐ Other Equipment ___

21. Seller shall also transfers the following: _____
22. The following items are excluded: _____

23. 3. **Purchase Price.** The purchase price for the Property (including the parking and storage space, if applicable, Fixtures and Personal Property) is
24. $ ~~106,000 107,000~~ **510,000/** ("*Purchase Price*").

25. 4. **Closing Cost Credit (Optional).** Check if applicable ☐ Seller agrees to credit to Buyer at Closing (check one) ☐ $ _____ OR ☐ ___% of Purchase Price
26. ("*Closing Cost Credit*"), to be applied to prepaid expenses, closing costs or both as lender permits, and that such credit appears on the Master Statement or Closing
27. Disclosure.

28. 5. **Home Warranty (Optional).** Check if applicable ☐ Seller agrees to provide Buyer with a Home Warranty at Closing, at a cost of no less than: $ _____

29. 6. **Earnest Money.** Upon the Parties execution and delivery of this Contract, Buyer shall deposit with **Coldwell Banker Residential** ("*Escrowee*").
30. earnest money in the amount of $ **3,000** , in the form of **personal check** within **3** Business Days after the Acceptance Date. The
31. earnest money shall be increased to (check one) ☑ **5** % (percent) of the Purchase Price, OR ☐ a total of $ _____ ("*Earnest Money*")
32. within **3** Business Days after the conclusion of the Attorney Approval Period (as established in Paragraph 15 of this Contract). The Parties acknowledge and agree that
33. (i) the Parties shall execute all necessary documents with respect to the handling of the Earnest Money in form and content mutually agreed upon between the Parties
34. and (ii) unless otherwise agreed, Buyer shall pay all expenses incurred in opening an escrow account for the Earnest Money.

35. 7. **Mortgage Contingency.** Parties agree that this Contract (check one) ☑ [is] ☐ [is not] subject to Paragraph 7 Mortgage Contingency. If [is not] is checked,
36. then this paragraph 7 does not apply. This Contract is contingent upon Buyer securing by ~~June 30~~ July 6 ("*First Commitment Date*") a written mortgage
37. commitment for a fixed rate or an adjustable rate mortgage permitted to be made by a U.S. or Illinois savings and loan association, bank, or other authorized financial
38. institution, in the amount of (check one) ☐ $ _____ OR ☑ **85** %(percent) of the Purchase Price, the interest rate (or initial interest rate if an adjustable rate
39. mortgage) not to exceed **4.5** % per year, amortized over **30** years, payable monthly, loan fee not to exceed **0** %, plus appraisal and credit report fee, if any
40. ("*Required Commitment*"). Buyer shall pay for private mortgage insurance as required by the lending institution. If a FHA or VA mortgage is to be obtained, Rider 8 or
41. Rider 9 shall be attached to this Contract. (1) If Buyer is unable to obtain the Required Commitment by the First Commitment Date, Buyer shall so notify Seller in writing
42. on or before that Date. Thereafter, Seller may, within 30 Business Days after the First Commitment Date ("*Second Commitment Date*"), secure the Required Commitment
43. for Buyer upon the same terms, and may extend the Closing Date by 30 Business Days. The Required Commitment may be given by Seller or a third party. Buyer shall
44. furnish all requested credit information, sign customary documents relating to the application and securing of the Required Commitment, and pay one application fee as
45. directed by Seller. Should Seller choose not to secure the Required Commitment for Buyer, this Contract shall be null and void as of the First Commitment Date, and the
46. Earnest Money shall be returned to Buyer. (2) If Buyer notifies Seller on or before the First Commitment Date that Buyer has been unable to obtain the Required
47. Commitment, and neither Buyer nor Seller secures the Required Commitment on or before the Second Commitment Date, this Contract shall be null and void and the
48. Earnest Money shall be returned to Buyer. (3) If Buyer does not provide any notice to Seller by the First Commitment Date, Buyer shall be deemed to have waived this
49. contingency and this Contract shall remain in full force and effect.

50. 8. **Closing.** Buyer shall deliver the balance of the Purchase Price (less the amount of the Earnest Money, Closing Cost Credit, plus or minus prorations and escrow
51. fees, if any) to Seller and Seller shall execute and deliver the Deed (as defined below) to Buyer ("*Closing*"). Closing shall occur on or prior to **July 2018**
52. at a time and location mutually agreed upon by the Parties ("*Closing Date*"). Seller must provide Buyer with good and merchantable title prior to Closing.

as an agent for
American International
Relocation
Solutions, LLC

Buyer Initials: _____ Buyer Initials: _____
Page 1 of 4
Revised 2/2017
© 2017 – Chicago Association of REALTORS® All rights reserved
Seller Initials: _____ Seller Initials: _____

**EXHIBIT A**

dotloop signature verification: www.dotloop.com/my/verification/DL-ASL337725-3-1179
DocuSign Envelope ID: 097E6F1C-7090-4B1C-BB50-77350249A631

53 9. **Possession.** Unless otherwise agreed to in Rider 22 Post-Closing Possession Rider, Seller agrees to deliver possession of the property at Closing. If Seller does
54 not surrender possession at Closing, Seller shall be considered in default of this Contract.

55 10. **Deed.** At Closing, Seller shall execute and deliver to Buyer, or cause to be executed and delivered to Buyer, a recordable warranty deed ("*Deed*") with release
56 of homestead rights (or other appropriate deed if title is in trust or in an estate), or Articles of Agreement, if applicable, subject only to the following, if any: covenants,
57 conditions, and restrictions of record; public and utility easements; acts done by or suffered through Buyer; all special governmental taxes or assessments confirmed and
58 unconfirmed; homeowners or condominium association declaration and bylaws, if any; and general real estate taxes not yet due and payable at the time of Closing.

59 11. **Real Estate Taxes.** Seller represents that the total 20 _16_ general real estate taxes for the Property and all P.I.N.s referenced paragraph 1 of this Contract
60 were $ _6,145_. General real estate taxes for the Property are subject to the following exemptions (*check box if applicable*): ☐ Homeowner's. ☐ Senior
61 Citizen's. ☐ Senior Freeze. ☐ Historical Tax Freeze. General real estate taxes shall be prorated based on _110_ % of the most recent ascertainable full year tax bill,
62 unless mutually agreed to otherwise by the Parties in writing prior to the expiration of the Attorney Approval Period.

63 12. **Homeowners Association.** Parties represent that the Property is a part of a homeowners or condominium association and that either the Illinois Common Interest
64 Community Association Act, Illinois Condominium Property Act, or other applicable state association law applies ("*Governing Law*"). Seller represents that as of the
65 Acceptance Date, the regular monthly assessment pertaining to the Property is $ _215_; a special assessment (*check one*) ☐ [has] OR ☑ [has not] been levied.
66 The original amount of the special assessment pertaining to the Property was $ _____, and the remaining amount due at Closing will be $ _____ and
67 (*check one*) ☐ [shall] OR ☑ [shall not] be assumed by Buyer at Closing. Buyer acknowledges and agrees that (i) the representations in this Paragraph are provided as of
68 the Acceptance Date; (ii) this information may change, and these fees may increase, prior to Closing. Notwithstanding anything to the contrary contained in this Paragraph
69 12, Seller shall notify Buyer of any proposed special assessment, increase in any regular assessment, and amendments or revisions to any items stipulated by the resale
70 disclosure provisions of the Governing Law ("*Association Documents*"), including but not limited to the declaration, bylaws, rules and regulations, and the prior and
71 current years' operating budgets, between the Date of Acceptance and Closing. Seller shall notify Buyer within 5 Business Days (and in no event later than the Closing
72 Date) after Seller receives notice of any proposed special assessment, increase in any regular assessment, and amendments or revisions to any of the Association
73 Documents. Seller shall furnish Buyer a statement from the proper association representative certifying that Seller is current in payment of assessments, and, if
74 applicable, proof of waiver or termination of any right of first refusal or similar options contained in the bylaws of the association for the transfer of ownership. Seller
75 shall deliver to Buyer the Association Documents within _5_ Business Days of the Acceptance Date. In the event the Association Documents disclose that the Property
76 is in violation of existing rules, regulations, or other restrictions or that the terms and conditions contained within the documents would unreasonably restrict Buyer's use
77 of the Property or would increase the financial considerations which Buyer would have to extend in connection with owning the Property, then Buyer may declare this
78 Contract null and void by giving Seller written notice within 5 Business Days after the receipt of the Association Documents, listing those deficiencies which are
79 unacceptable to Buyer, and thereupon all Earnest Money deposited shall be returned to Buyer. If written notice is not served within the time specified, Buyer shall be
80 deemed to have waived this contingency, and this Contract shall remain in full force and effect. Seller agrees to pay any applicable processing/move-out/transferring fees
81 as required by the association, and Buyer agrees to pay the credit report and move-in fee if required by the association. If the right of first refusal or similar option is
82 exercised, this Contract shall be null and void and the Earnest Money shall be returned to Buyer, but Seller shall pay the commission pursuant to Paragraph U of the
83 General Provisions of this Contract.

84 13. **Disclosures.** Buyer has received the following (*check yes or no*): (a) Illinois Residential Real Property Disclosure Report: ☐ Yes/☑ No; (b) Heat Disclosure
85 (gas/electric): ☐ Yes/☑ No; (c) Lead Paint Disclosure and Pamphlet: ☐ Yes/☑ No; and (d) Radon Disclosure and Pamphlet: ☐ Yes/☑ No.

86 14. **Dual Agency.** Licensee (*check one*) ☐ [*is*] ☑ [*is not*] acting as a "Designated Agent" for both Buyer and Seller, ("Dual Agency"). If [*is not*] is checked this
87 paragraph 14 does not apply. The Parties confirm that they have previously consented and agreed to have _____ ("*licensee*") act
88 as *Dual Agent* in providing brokerage services on behalf of the Parties and specifically consent to Licensee acting as *Dual Agent* on the transaction covered by this
89 Contract. Initial below if Buyer and Seller consent to *Dual Agency* on the transaction covered by this Contract.

90 Buyer Initials: _____ Buyer Initials: _____ Seller Initials: _____ Seller Initials: _____

91 15. **Attorney Modification.** Within _5_ Business Days after the Acceptance Date ("*Attorney Approval Period*"), the attorneys for the respective Parties, by notice,
92 may: (a) approve this Contract in its entirety; or (b) propose modifications to this Contract ("*Proposed Modifications*"), which Proposed Modifications shall not include
93 modifications to the Purchase Price or broker's compensation. If written agreement is not reached by the Parties with respect to resolution of the Proposed Modifications,
94 then either Party may terminate this Contract by serving notice, whereupon this Contract shall be null and void and the Earnest Money returned to Buyer. *Unless
95 otherwise specified, all notices shall be provided in accordance with paragraph D of the General Provisions. In the absence of delivery of Proposed Modifications prior
96 to the expiration of the Attorney Approval Period, the provisions of this paragraph shall be deemed waived by the Parties and this Contract shall remain in full force
97 and effect.*

98 16. **Inspection.** Within _5_ Business Days after the Acceptance Date ("*Inspection Period*"), Buyer may conduct, at Buyer's sole cost and expense (unless
99 otherwise provided by law) home, radon, environmental, lead-based paint and/or lead-based paint hazards (unless separately waived), wood infestation, and/or mold
100 inspections of the Property ("*Inspections*") by one or more properly licensed or certified inspection personnel (each, an "*Inspector*"). The Inspections shall include only
101 major components of the Property, including, without limitation, central heating, central cooling, plumbing, well, and electric systems, roofs, walls, windows, ceilings,
102 floors, appliances, and foundations. A major component shall be deemed to be in operating condition if it performs the function for which it is intended, regardless of
103 age, and does not constitute a health or safety threat. Buyer shall indemnify Seller from and against any loss or damage to the Property or personal injury caused by the
104 Inspections, Buyer, or Buyer's Inspector. Prior to expiration of the Inspection Period, Buyer shall notify Seller or Seller's attorney in writing ("*Buyer's Inspection Notice*") of
105 any defects disclosed by the Inspections that are unacceptable to Buyer, together with a copy of the pertinent pages of the relevant Inspections report. Buyer agrees that
106 minor repairs and maintenance collectively costing less than $250 shall not constitute defects covered by this Paragraph. If the Parties have not reached written
107 agreement resolving the Inspection issues within the Inspection Period, then either Party may terminate this Contract by written notice to the other Party. In the event of
108 such notice, this Contract shall be null and void and the Earnest Money shall be returned to Buyer. *In the absence of written notice prior to the expiration of the
109 Inspection Period, this provision shall be deemed waived by all Parties, and this Contract shall be in full force and effect.*

Buyer Initials: _MS_    Buyer Initials: _____

© 2017 – Chicago Association of REALTORS® - All Rights Reserved

Seller Initials: _AF_

as an agent for Americ_ _n
International
Relocation Solutions,
LLC Seller Initials: _____

146 **GENERAL PROVISIONS**

147 **A. Prorations.** Rent, interest on existing mortgage, water, water taxes and other items shall be prorated as of the Closing Date. Security deposits, if any, shall be paid
148 to Buyer at Closing. Notwithstanding anything to the contrary in Paragraph 9 of this Contract, if the Property is improved, but the last
149 available tax bill is for a vacant land, Seller shall place in escrow an amount equal to 2% of the Purchase Price and the Parties shall prorate general real estate taxes within 30 days after the tax bill on
150 the improved property becomes available.

151 **B. Uniform Vendor and Purchaser Risk Act.** The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall be applicable to this Contract.

152 **C. Title.** At least 5 Business Days prior to the Closing Date, Seller shall deliver to Buyer or their agent, evidence of merchantable title in the intended grantor by
153 delivering a Commitment for Title Insurance of a title insurance company bearing a date on or subsequent to the Acceptance Date, in the amount of the Purchase Price,
154 subject to no other exceptions than those previously listed above in this Contract and to general exceptions contained in the commitment. Delay in delivery by Seller of a
155 Commitment for Title Insurance due to delay by Buyer's mortgagee in recording mortgage and bringing down title shall not be a default of this Contract. Every Commitment
156 for Title Insurance furnished by Seller shall be conclusive evidence of title as shown. If evidence of title discloses other exceptions, Seller shall have 30 days after Seller's
157 receipt of evidence of title to cure the exceptions and notify Buyer accordingly. As to those exceptions that may be removed at Closing by payment of money, Seller may have
158 those exceptions removed at Closing by using the proceeds of the sale.

159 **D. Notice.** All notices required by this Contract shall be in writing and shall be served on the Parties or their attorneys at the addresses provided in this Contract.
160 The mailing of notice by registered or certified mail, return receipt requested, shall be sufficient service. Notices may also be served by personal delivery or commercial
161 delivery service or by use of a facsimile machine. In addition, facsimile signatures or digital signatures shall be sufficient for purposes of executing this Contract and shall
162 be deemed originals. E-mail notice shall be deemed valid and received by the addressee when delivered by e-mail and opened by the recipient. Each Party shall retain a copy
163 or proof of facsimile transmission and shall make and provide such proof, if requested.

164 **E. Disposition of Earnest Money.** In the event no duty default by either Party, Escrowee may not distribute the Earnest Money without the joint written direction of
165 Seller and Buyer or their authorized agents. However, if Escrowee is not received the joint written direction of both Seller and Buyer or their authorized agents, then
166 Escrowee shall give written notice to Seller and Buyer of its intended disbursement of Earnest Money, indicating the manner in which Escrowee intends to disburse in the
167 absence of any written objection. If neither Party objects, in writing, to the proposed disposition of the Earnest Money within 30 days after the date of the notice, then
168 Escrowee shall proceed to disperse the Earnest Money as previously noticed by Escrowee. If either Seller or Buyer objects to the intended disposition within the 30
169 day period, then the Escrowee shall deposit the Earnest Money with the Clerk of the Circuit Court of the County in which the Property is located in the nature of an interpleader. Escrowee may
170 withdraw from the Earnest Money all costs, including reasonable attorney's fees, related to the filing of the interpleader, and the Parties shall indemnify and hold Escrowee
171 harmless from any and all claims and demands, including the payment of reasonable attorneys' fees, costs, and expenses arising out of those claims and demands. In the
172 event of default by Buyer, the Earnest Money, less expenses and commission of the listing broker, shall be paid to Seller. If Seller defaults, the Earnest Money, at the option of
173 Buyer, shall be refunded to Buyer, but such refunding shall not release Seller from the obligations of this Contract.

174 **F. Operational Systems.** Seller represents that the heating, plumbing, electrical, central cooling, ventilating systems, appliances, and fixtures on the Property are in
175 working order and will be so at the time of Closing. Buyer shall have the right to enter the Property during the 48-hour period immediately prior to Closing solely for the
176 purpose of verifying that the operational systems and appliances serving the Property are in working order and that the Property is in substantially the same condition, normal
177 wear and tear excepted, as of the Acceptance Date.

178 **G. Insulation and Heat Disclosure Requirements.** If the Property is new construction, Buyer and Seller shall comply with all insulation disclosure requirements as
179 provided in the Federal Trade Commission, Rule 13 is attached. If the Property is located in the City of Chicago, Seller and Buyer shall comply with any provisions of
180 Chapter 5-16-050 of the Municipal Code of Chicago concerning heating cost disclosure for the Property.

181 **H. Code Violations.** Seller warrants that no notice from any city, village, or other governmental authority of a dwelling code violation that currently exists on the
182 Property has been issued and received by Seller or Seller's agent ("Code Violation Notice"). If a Code Violation Notice is received after the Acceptance Date but before
183 Closing, Seller shall promptly notify Buyer of such Code Violation Notice.

184 **I. Escrow Closing.** At the written request of Buyer or Seller received prior to the Closing Date, this sale shall be closed through an escrow with a title
185 insurance company, in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by the title insurance
186 company, with such special provisions inserted in the escrow agreement as may be required to conform with this Contract. Upon the creation of an escrow, payment of
187 Purchase Price and delivery of deed shall be made through the escrow. This Contract and the Earnest Money shall be deposited in the escrow and the broker shall be made a
188 party to the escrow with regard to commission due. The cost of the escrow shall be divided equally between Buyer and Seller.

189 **J. Legal Description and Survey.** At least 5 Business Days prior to Closing, Seller shall provide Buyer with the legal description of the Property as set forth in the
190 recorded declaration of the condominium, if Buyer or Seller's mortgagee desires a more recent or extensive survey the survey may be obtained at Buyer's expense. The
191 Parties may amend this Contract to attach a complete and correct legal description of the Property.

192 **K. Affidavit of Title; ALTA.** Seller agrees to furnish an Affidavit of Title subject to those items set forth in this Contract, and an ALTA form if required by
193 Buyer's mortgagee, or the title insurance company, for extended coverage.

194 **L. RESPA.** Buyer and Seller shall make all disclosures and do all things necessary to comply with the applicable provisions of the Real Estate Settlement Procedures
195 Act of 1974, as amended.

196 **M. Transfer Taxes.** Seller shall pay the amount of any stamp tax imposed by the state and county on the transfer of title, and shall furnish a completed declaration
197 signed by Seller or Seller's agent in the form required by the state and county, and shall furnish any declaration signed by Seller or Seller's agent or meet other requirements
198 as established by any local ordinance with regard to a transfer or transaction tax. Any real estate transfer tax required by local ordinance shall be paid by the person
199 designated in that ordinance.

200 **N. Removal of Personal Property.** Seller shall remove from the Property all debris and Seller's personal property not conveyed by Bill of Sale to
201 Buyer.

202 **O. Surrender.** Seller agrees to surrender possession of the Property in broom-clean condition and in the same condition as it was on the Acceptance Date, ordinary
203 wear and tear excepted, subject to Paragraph 8 of the General Provisions of this Contract. To the extent Seller fails to comply with this paragraph, Seller shall not be
204 responsible for that portion of the total cost related to this violation that is below $250.00.

205 **P.** Time is of the essence for purposes of this Contract.

206 **Q. Number.** Wherever appropriate within this Contract, the singular includes the plural.

207 **R. Flood Plain Insurance.** In the event the Property is in a flood plain and flood insurance is required by Buyer's lender, Buyer shall pay for that insurance.

208 **S. Business Days and Time.** Business Days are defined as Monday through Friday, excluding Federal holidays. Business Hours are defined as 8:00 AM to 6:00 PM
209 Chicago Time.

210 **T. Patriot Act.** Seller and Buyer represent and warrant that they are not acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named
211 by Executive Order or the United States Treasury Department as a Specially Designated National and Blocked Person, or other banned or blocked person, entity, group, nation or
212 transaction pursuant to any law, order, rule or regulation which is enforced or administered by the Office of Foreign Assets Control ("OFAC"), and that they are not engaged in
213 this transaction directly or indirectly on behalf of, or facilitating this transaction directly or indirectly on behalf of, any such person, group, entity, or nation. Party shall
214 defend, indemnify, and hold harmless the other Party from and against any and all claims, damages, losses, risks, liabilities, and expenses (including reasonable attorneys' fees
215 and costs) arising from or related to any breach of the foregoing representation and warranty.

216 **U. Broker.** The real estate brokers named in this Contract shall be compensated in accordance with their agreements with their clients and/or any offer of
217 compensation made by the listing broker in a multiple listing service in which the listing and cooperating broker both participate.

**V. Executed Contract.** The listing broker shall hold the fully executed copy of this Contract.

© 2017 – Chicago Association of REALTORS® – All Rights Reserved

International ReLocar
Solutions, LLC
as an agent for Ameri

Productions.

DocuSign Envelope ID: 097EE6F1C-7090-481C-BB50-7735024949631
Dotloop signature verification

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

dotloop signature verification: www.dotloop.com/my/verification/DL-353377-25-3-1873
DocuSign Envelope ID: 097E6F1C-7090-4B1C-BB50-77350249A631

110 17.  **General Provisions, Riders and Addendums.** THIS CONTRACT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY BUYER AND SELLER AND
111 DELIVERED TO BUYER OR BUYER'S DESIGNATED AGENT. THIS CONTRACT INCLUDES THE GENERAL PROVISIONS ON THE LAST PAGE OF THIS CONTRACT AND THE
112 FOLLOWINGR RIDERS AND ADDENDUMS, *IF ANY,* __Aires Addendum to be made part of__
113 _____, WHICH ARE ATTACHED TO AND MADE A PART OF THIS CONTRACT.

114 This Contract shall be of no force or effect if not accepted by Seller on or before ~~May 29, 2018~~ June 8, 2018

115 OFFER DATE: __May 27, 2018__.

ACCEPTANCE DATE: __6/8/2018__ ("Acceptance Date").

116 **BUYER'S INFORMATION:**

117 Buyer's Signature _____
118 Buyer's Name (print) __Melinda Sgariglia__

119 Buyer's Signature _____
120 Buyer's Name (print): _____

121 Address: _____

122 Phone 1: _____ | Phone 2: _____
123 Email 1: __m.kadunc@comcast.net__
124 Email 2: _____

**SELLER'S INFORMATION:**

Seller's Signature: __Amanda Flucker__
Seller's Name (print): __Aires__

Seller's Signature: _____     as an agent for American
Seller's Name (print): __International Relocation__
                        __Solutions, LLC__

Address: _____

Phone 1: _____ Phone 2: _____
Email 1: _____
Email 2: _____

125

The names and addresses set forth below are for informational purposes only and subject to change

126 **Buyer's Broker's Information:**
127 Designated Agent: __Megan Caruso__
128 Agent MLS #: __875143__          Agent License #: _____
129 Brokerage: __@properties__
130 Brokerage MLS #: __84025__     Brokerage License #: _____
131 Address: __1875 N Damen Ave__
132 Agent Phone: __614.749.6149__     Agent Fax: _____
133 Email: __mc@atproperties.com__

**Seller's Broker's Information:**
Designated Agent: __Garrett Luehrs__
Agent MLS #: __880878__     Agent License #: _____
Brokerage: __Coldwell Banker__
Brokerage MLS #: __10115__     Brokerage License #: _____
Address: __1910 N Clybourn Ave__
Agent Phone: __847-209-0869__     Agent Fax: _____
Email: __garrett.luehrs@cbexchange.com__

134 **Buyer's Attorney's Information:**
135 Attorney Name: __Tom Hawbecker, Hawbecker & Garver__
136 Address: _____
137 Phone: _____ Fax: _____
138 Email: __thomas@hglegal.com__

**Seller's Attorney's Information:**
Attorney Name: _____
Address: _____
Phone: _____ Fax: _____
Email: _____

139 **Buyer's Lender's Information:**
140 Lender's Name: _____
141 Company Name: _____
142 Address: _____
143 Phone: _____ Fax: _____
144 Email: _____

FILED DATE: 6/20/2019 12:11 PM   2019CH07429





### Illinois REALTORS®
### RESIDENTIAL REAL PROPERTY DISCLOSURE REPORT
### (765 ILCS 77/35)

NOTICE: THE PURPOSE OF THIS REPORT IS TO PROVIDE PROSPECTIVE BUYERS WITH INFORMATION ABOUT MATERIAL DEFECTS IN THE RESIDENTIAL REAL PROPERTY. THIS REPORT DOES NOT LIMIT THE PARTIES' RIGHT TO CONTRACT FOR THE SALE OF RESIDENTIAL REAL PROPERTY IN "AS IS" CONDITION. UNDER COMMON LAW, SELLERS WHO DISCLOSE MATERIAL DEFECTS MAY BE UNDER A CONTINUING OBLIGATION TO ADVISE THE PROSPECTIVE BUYERS ABOUT THE CONDITION OF THE RESIDENTIAL REAL PROPERTY EVEN AFTER THE REPORT IS DELIVERED TO THE PROSPECTIVE BUYER. COMPLETION OF THIS REPORT BY THE SELLER CREATES LEGAL OBLIGATIONS ON THE SELLER; THEREFORE SELLER MAY WISH TO CONSULT AN ATTORNEY PRIOR TO COMPLETION OF THIS REPORT.

Property Address: 2726 West Cortez Street Unit 1

City, State & Zip Code: Chicago, IL 60622

Seller's Name: Nicholas Gonring and Kelsey Gonring

This Report is a disclosure of certain conditions of the residential real property listed above in compliance with the Residential Real Property Disclosure Act. This information is provided as of 05/17/2018 _____, and does not reflect any changes made or occurring after that date or information that becomes known to the seller after that date. The disclosures herein shall not be deemed warranties of any kind by the seller or any person representing any party in this transaction.

In this form, "am aware" means to have actual notice or actual knowledge without any specific investigation or inquiry. In this form, a "material defect" means a condition that would have a substantial adverse effect on the value of the residential real property or that would significantly impair the health or safety of future occupants of the residential real property unless the seller reasonably believes that the condition has been corrected.

The seller discloses the following information with the knowledge that even though the statements herein are not deemed to be warranties, prospective buyers may choose to rely on this information in deciding whether or not and on what terms to purchase the residential real property.

The seller represents that to the best of his or her actual knowledge, the following statements have been accurately noted as "yes" (correct), "no" (incorrect), or "not applicable" to the property being sold. If the seller indicates that the response to any statement, except number 1, is yes or not applicable, the seller shall provide an explanation, in the additional information area of this form.

|  | YES | NO | N/A |  |
|---|---|---|---|---|
| 1. | ☑ | ☐ | ☐ | Seller has occupied the property within the last 12 months. (No explanation is needed.) |
| 2. | ☐ | ☑ | ☐ | I am aware of flooding or recurring leakage problems in the crawl space or basement. |
| 3. | ☐ | ☑ | ☐ | I am aware that the property is located in a flood plain or that I currently have flood hazard insurance on the property. |
| 4. | ☐ | ☑ | ☐ | I am aware of material defects in the basement or foundation (including cracks and bulges). |
| 5. | ☐ | ☑ | ☐ | I am aware of leaks or material defects in the roof, ceilings, or chimney. |
| 6. | ☐ | ☑ | ☐ | I am aware of material defects in the walls, windows, doors, or floors. |
| 7. | ☐ | ☑ | ☐ | I am aware of material defects in the electrical system. |
| 8. | ☐ | ☑ | ☐ | I am aware of material defects in the plumbing system (includes such things as water heater, sump pump, water treatment system, sprinkler system, and swimming pool). |
| 9. | ☐ | ☑ | ☐ | I am aware of material defects in the well or well equipment. |
| 10. | ☐ | ☑ | ☐ | I am aware of unsafe conditions in the drinking water. |
| 11. | ☐ | ☑ | ☐ | I am aware of material defects in the heating, air conditioning, or ventilating systems. |
| 12. | ☐ | ☑ | ☐ | I am aware of material defects in the fireplace or wood burning stove. |
| 13. | ☐ | ☑ | ☐ | I am aware of material defects in the septic, sanitary sewer, or other disposal system. |
| 14. | ☐ | ☑ | ☐ | I am aware of unsafe concentrations of radon on the premises. |
| 15. | ☐ | ☑ | ☐ | I am aware of unsafe concentrations of or unsafe conditions relating to asbestos on the premises. |
| 16. | ☐ | ☑ | ☐ | I am aware of unsafe concentrations of or unsafe conditions relating to lead paint, lead water pipes, lead plumbing pipes or lead in the soil on the premises. |
| 17. | ☐ | ☑ | ☐ | I am aware of mine subsidence, underground pits, settlement, sliding, upheaval, or other earth stability defects on the premises. |
| 18. | ☐ | ☑ | ☐ | I am aware of current infestations of termites or other wood boring insects. |
| 19. | ☐ | ☑ | ☐ | I am aware of a structural defect caused by previous infestations of termites or other wood boring insects. |
| 20. | ☐ | ☑ | ☐ | I am aware of underground fuel storage tanks on the property. |
| 21. | ☐ | ☑ | ☐ | I am aware of boundary or lot line disputes. |
| 22. | ☐ | ☐ | ☐ | I have received notice of violation of local, state or federal laws or regulations relating to this property, which violation has not been corrected. |
| 23. | ☐ | ☑ | ☐ | I am aware that this property has been used for the manufacture of methamphetamine as defined in Section 10 of the Methamphetamine Control and Community Protection Act. |

Note: These disclosures are not intended to cover the common elements of a condominium, but only the actual residential real property including limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit.

Note: These disclosures are intended to reflect the current condition of the premises and do not include previous problems, if any, that the seller reasonably believes have been corrected.

FORM 108 (7/28/16) COPYRIGHT ILLINOIS REALTORS® **Page 1 of 4**

EXHIBIT B-1

FILED DATE: 6/20/2019 12:11 PM    2019CH07429

douloop signature verification: www.douloop.com/m/verification/DL-348094244-12-8461

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

# RESIDENTIAL REAL PROPERTY DISCLOSURE ACT
## ARTICLE 2: DISCLOSURES
### 765 ILCS 77/5 et seq.

**Section 5. Definitions:** As used in this Act, unless the context otherwise requires the following terms have the meaning given in this section:

"Residential real property" means real property improved with not less than one nor more than four residential dwelling units; units in residential cooperatives; or, condominium units including the limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit. The term includes a manufactured home as defined in subdivision (53) of Section 9102 of the Uniform Commercial Code that is real property as defined in the Conveyance and Encumbrance of Manufactured Homes as Real Property and Severance Act.

"Seller" means every person or entity who is an owner, beneficiary of a trust, contract purchaser or lessee of a ground lease, who has an interest (legal or equitable) in residential real property. However, "seller" shall not include any person who has both (i) never occupied the residential real property and (ii) never had the management responsibility for the residential real property nor delegated such responsibility for the residential real property to another person or entity.

"Prospective buyer" means any person or entity negotiating or offering to become an owner or lessee of residential real property by means of a transfer for value to which this Act applies.

**Section 10. Applicability.** Except as provided in Section 15, this Act applies to any transfer by sale, exchange, installment land sale-contract, assignment of beneficial interest, lease with an option to purchase, ground lease or assignment of ground lease of residential real property.

**Section 15. Applicability; Exceptions.** The provisions of this Act do not apply to the following:

(1) Transfers pursuant to court order, including, but not limited to, transfers ordered by a probate court in administration of an estate, transfers between spouses resulting from a judgment of dissolution of marriage or legal separation, transfers pursuant to an order of possession, transfers by a trustee in bankruptcy, transfers by eminent domain and transfers resulting from a decree for specific performance.

(2) Transfers from a mortgagor to a mortgagee by deed in lieu of foreclosure or consent judgment, transfer by judicial deed issued pursuant to a foreclosure sale to the successful bidder or the assignee of a certificate of sale, transfer by a collateral assignment of a beneficial interest of a land trust, or a transfer by a mortgagee or a successor in interest to the mortgagee's secured position or a beneficiary under a deed in trust who has acquired the real property by deed in lieu of foreclosure, consent judgment or judicial deed issued pursuant to a foreclosure sale.

(3) Transfers by a fiduciary in the course of the administration of a decedent's estate, guardianship, conservatorship, or trust.

(4) Transfers from one co-owner to one or more other co-owners.

(5) Transfers pursuant to testate or intestate succession.

(6) Transfers made to a spouse, or to a person or persons in the lineal line of consanguinity of one or more of the sellers.

(7) Transfers from an entity that has taken title to residential real property from a seller for the purpose of assisting in the relocation of the seller, so long as the entity makes available to all prospective buyers a copy of the disclosure form furnished to the entity by the seller.

(8) Transfers to or from any governmental entity.

(9) Transfers of newly constructed residential real property that has not been occupied.

**Section 20. Disclosure Report; Completion; Time of Delivery.** A seller of residential real property shall complete all applicable items in the disclosure document described in Section 35 of this Act. The seller shall deliver to the prospective buyer the written disclosure statement required by this Act before the signing of a written agreement by the seller and prospective buyer that would, subject to the satisfaction of any negotiated contingencies, require the prospective buyer to accept a transfer of the residential real property.

**Section 25. Liability of seller.**

(a) The seller is not liable for any error, inaccuracy, or omission of any information delivered pursuant to this Act if (i) the seller had no knowledge of the error, inaccuracy, or omission, (ii) the error, inaccuracy, or omission was based on a reasonable belief that a material defect or other matter not disclosed had been corrected, or (iii) the error, inaccuracy, or omission was based on information provided by a public agency or by a licensed engineer, land surveyor, structural pest control operator, or by a contractor about matters within the scope of the contractor's occupation and the seller had no knowledge of the error, inaccuracy, or omission.

(b) The seller shall disclose material defects of which the seller has actual knowledge.

(c) The seller is not obligated by this Act to make any specific investigation or inquiry in an effort to complete the disclosure statement.

**Section 30. Disclosure supplement.** If, prior to closing, any seller has actual knowledge of an error, inaccuracy, or omission in any prior disclosure document after delivery of that disclosure document to a prospective buyer, that seller shall supplement the prior disclosure document with a written supplemental disclosure.

**Section 35. Disclosure report form. . . .[omitted]**

**Section 40. Material defect.** If a material defect is disclosed in the Residential Real Property Disclosure Report, after acceptance by the prospective buyer of an offer or counter-offer made by a seller or after the execution of an offer made by a prospective buyer that is accepted by the seller for the conveyance of the residential real property, then the Prospective Buyer may, within three business days after receipt of that Report by the prospective buyer, terminate the contract or other agreement without any liability or recourse except for the return to prospective buyer of all earnest money deposits or down payments paid by prospective buyer in the transaction. If a material defect is disclosed in a supplement to this disclosure document, the prospective buyer shall not have a right to terminate unless the material defect results from an error, inaccuracy, or omission of which the seller had actual knowledge at the time the prior disclosure document was completed and signed by the seller. The right to terminate the contract, however, shall no longer exist after the conveyance of the residential real property. For purposes of this Act the termination shall be deemed to be made when written notice of termination is personally delivered to at least one of the sellers identified in the contract or other agreement or when deposited, certified or registered mail, with the United States Postal Service, addressed to one of the sellers at the address indicated in the contract or agreement, or, if there is not an address contained therein, then at the address indicated for the residential real property on the Report.

**Section 45. Effect of Act on Other Statutes or Common Law.** This Act is not intended to limit or modify any obligation to disclose created by any other statute or that may exist in common law in order to avoid fraud, misrepresentation, or deceit in the transaction.

**Section 50. Disclosure Report; Method of Delivery.** Delivery of the Residential Real Property Disclosure Report provided by this Act shall be by:

(1) personal or facsimile delivery to the prospective buyer;

(2) depositing the report with the United States Postal Service, postage prepaid, first class mail, addressed to the prospective buyer at the address provided by the prospective buyer or indicated on the contract or other agreement; or

(3) depositing the report with an alternative delivery service such as Federal Express, UPS, or Airborne, delivery charges prepaid, addressed to the prospective buyer at the address provided by the prospective buyer or indicated on the contract or other agreement.

dotloop signature verification: www.dotloop.com/my/verification/DL-348004254-12-5451

For purposes of this Act, delivery to one prospective buyer is deemed delivery to all prospective buyers. Delivery to an authorized individual acting on behalf of a prospective buyer constitutes delivery to all prospective buyers. Delivery of the Report is effective upon receipt by the prospective buyer. Receipt may be acknowledged on the Report, in an agreement for the conveyance of the residential real property, or shown in any other verifiable manner.

**Section 55. Violations and damages.** If the seller fails or refuses to provide the disclosure document prior to the conveyance of the residential real property, the buyer shall have the right to terminate the contract. A person who knowingly violates or fails to perform any duty prescribed by any provision of this Act or who discloses any information on the Residential Real Property Disclosure Report that he knows to be false shall be liable in the amount of actual damages and court costs, and the court may award reasonable attorney fees incurred by the prevailing party.

**Section 60. Limitation of Action.** No action for violation of this Act may be commenced later than one year from the earlier of the date of possession, date of occupancy or date of recording of an instrument of conveyance of the residential real property.

**Section 65. Disclosure Report Form; Contents; Copy of Act.** A copy of this Act, excluding Section 35, must be printed on or as a part of the Residential Real Property Disclosure Report form.

Date provided to Buyer: _____

Seller: _Nicholas Graving_    dotloop verified 05/21/18 12:29PM CDT DR7A-8PHR-43KI-QCCA    _Kelsey Graving_    dotloop verified 05/19/18 3:56PM CDT L47K-E6CH-RENT-SYFR

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

dotloop signature verification: www.dotloop.com/my/verification/DL-348004244-12-3451

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

If any of the above are marked "not applicable" or "yes", please explain here or use additional pages, if necessary: N/A

N/A

Check here if additional pages used: ☐

Seller certifies that seller has prepared this statement and certifies that the information provided is based on the actual notice or actual knowledge of the seller without any specific investigation or inquiry on the part of the seller. The seller hereby authorizes any person representing any principal in this transaction to provide a copy of this report, and to disclose any information in the report, to any person in connection with any actual or anticipated sale of the property.

Seller: _Nicholas Greening_   dotloop verified 05/21/18 12:29PM CDT MXBR-8CQT-DPWQ-TNDM Date:

Seller: _Kelsey Greening_   dotloop verified 05/19/18 3:56PM CDT ZGUT-H1VV-8USB-FHA0 Date:

THE PROSPECTIVE BUYER IS AWARE THAT THE PARTIES MAY CHOOSE TO NEGOTIATE AN AGREEMENT FOR THE SALE OF THE PROPERTY SUBJECT TO ANY OR ALL MATERIAL DEFECTS DISCLOSED IN THIS REPORT ("AS IS"). THIS DISCLOSURE IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THAT THE PROSPECTIVE BUYER OR SELLER MAY WISH TO OBTAIN OR NEGOTIATE. THE FACT THAT THE SELLER IS NOT AWARE OF A PARTICULAR CONDITION OR PROBLEM IS NO GUARANTEE THAT IT DOES NOT EXIST. THE PROSPECTIVE BUYER IS AWARE THAT HE MAY REQUEST AN INSPECTION OF THE PREMISES PERFORMED BY A QUALIFIED PROFESSIONAL.

Prospective Buyer: _____   Date: _____   Time: _____

Prospective Buyer: _____   Date: _____   Time: _____

A COPY OF ARTICLE 2 OF THE RESIDENTIAL REAL PROPERTY DISCLOSURE ACT IS AFFIXED HERETO AND SHOULD BE REVIEWED BY PROSPECTIVE BUYER.

Sign Envelope ID: 2B7C22F5-A3A0-45F0-B0AC-52FFE7E3CA41

FILED DATE: 6/20/2019 12:11 PM 2019CH07429



**Sellers Property Disclosure Statement**

Property Address: 202 W Cortex, #1 Chicago IL 60622
Seller: Nicholas & Kelsey Channing

A seller must disclose to a buyer all known material defects about the Property being sold. This disclosure is designed to assist a Seller in complying with disclosure requirements and to assist a buyer in evaluating the property being considered.

This statement discloses Seller's knowledge of the condition of the property as of the date signed by Seller and is not a substitute for any inspections or warranties that Buyer may wish to obtain. This Statement is not a warranty of any kind, by Seller, or a warranty of representation by any listing real estate broker, any selling real estate broker, or their licensees. Buyer is encouraged to address concerns about the conditions of the Property that may not be included in his Statement. This Statement does not relieve the obligation to disclose a material defect that may not be addressed on this form.

A material defect is a problem with the Property, or any portion of it, that would have a significant adverse impact on the value of the residential property or that involves an unreasonable risk to people on the land.

|  |  | Yes | No | Unknown/NA |
|---|---|---|---|---|
| 1. | **SELLER'S EXPERTISE** Seller does not possess expertise in contracting, engineering, architecture, or other areas related to the construction and conditions of the property and its improvements, except as follows: _____ |  |  |  |
| 2. | **OCCUPANCY** | | | |
| a) | Do you, Seller, currently occupy the property? If "no", when did you last occupy the property? | ☒ | ☐ | ☐ |
| b) | Have there been any pets living in the house or other structures during your ownership? If "yes", describe: Two miniature | ☒ | ☐ | ☐ |
| 3. | **ROOF** | | | |
| a) | Date roof installed: 2008 Documented? construction of building | | | |
| b) | Has the roof been replaced or repaired during your ownership? | ☐ | ☒ | ☐ |
| c) | If "yes", were the existing shingles removed? | ☐ | ☒ | ☐ |
| d) | Has the roof ever leaked during your ownership? | ☐ | ☒ | ☐ |
| e) | Do you know of any problems with the roof, gutters or downspouts? Explain any "yes" answers that you give this section: | ☐ | ☒ | ☐ |
| 4. | **BASEMENTS AND CRAWL SPACES (Complete only if applicable)** | | | |
| a) | Does the property have a sump pump? | ☐ | ☒ | ☐ |
| b) | Are you aware of any leakage, accumulation or dampness within the basement or crawl space? If "yes", describe in detail: | ☐ | ☒ | ☐ |
| c) | Do you know of any repairs or other attempts to control any water or dampness problems in the basement or crawl space? If "yes", describe the location, extent, date and name of the person who did the repair or control effort: | ☐ | ☒ | ☐ |

NS
06/07/18
7:10AM COT

**Aires**
6 Penn Center West, Pittsburgh, PA 15276
412-788-0481

Page 1 of 7

This document and any accompanying documents may contain information that is confidential or otherwise protected from disclosure. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender and then delete this message, including any attachments of this message. Distribution or other use of the contents of this message by anyone other than the intended recipient is strictly prohibited. Any

signature verification: www.dotloop.com/my/verification/DL-35533772E-4-1050
JSign Envelope ID: 2B7C22F5-A3A0-45F0-B0AC-52FFE7E3CA41

FILED DATE: 6/20/2019 12:11 PM   2019CH07429



## aires

### Sellers Property Disclosure Statement

| | Yes | No | Unknown/NA |
|---|---|---|---|
| **5. TERMITES/WOOD-DESTROYING INSECTS, DRYROT, PESTS** | | | |
| a) Are you aware of any termite/wood-destroying insects, dry rot, or pests affecting the property? | ☐ | ☒ | ☐ |
| b) Are you aware of any damage to the property caused by termite/wood-destroying insects, dry rot, or pests? | ☐ | ☒ | ☐ |
| c) Is your property currently under contract by a licensed pest control company? | ☐ | ☒ | ☐ |
| d) Are you aware of any termite/pest control reports or treatments for the property in the last five years? | ☐ | ☒ | ☐ |
| e) Explain any 'yes' answers that you give in this section, including the name of any service/treatment provider, if applicable | | | |

*HOA sealed building to resolve Unit 3 leak.*

| | Yes | No | Unknown/NA |
|---|---|---|---|
| **6. STRUCTURAL ITEMS** | | | |
| a) Are you aware of any past or present water leakage in the house or other structures? *Unit 3 had leaks on West fairy windows* | ☒ | ☐ | ☐ |
| b) Are you aware of any past or present movement, shifting, deterioration or other problems with walls, foundations or other structural components? | ☐ | ☒ | ☐ |
| c) Are you aware of any past or present problems with driveways, walkways, patios or retaining walls on the property? | ☐ | ☒ | ☐ |
| d) Is your property constructed with an Exterior Insulating Finishing System (EIFS), such as Dryvit or synthetic stucco or any type of masonry veneer? If "yes", describe any known problems: | ☐ | ☒ | ☐ |
| e) Is your property constructed with Chinese Drywall? If "yes", describe any known problems: | ☐ | ☒ | ☐ |
| f) Are there any defects in flooring, including stains? If "yes", explain: | ☐ | ☒ | ☐ |

Explain *any* 'yes' answers that you gave in this section. When explaining reports to control or repair, please describe the location and extent of the problem, and date and person by whom the work was done, if know:

| | Yes | No | Unknown/NA |
|---|---|---|---|
| **7. ADDITIONS/REMODELS (interior or exterior)** | | | |
| Have you made any additions, structural changes or other alternations to the property? If "yes", describe: | ☐ | ☒ | ☐ |
| Have you obtained the necessary permits or certificates of occupancy or approvals required for these items? | ☐ | ☒ | ☐ |

NOTE: If answered unknown, Aires will order a permit/C of O search. You will be responsible for obtaining the necessary permits and Certificate of Occupancy prior to Aires purchasing your home.

**8. WATER AND SEWAGE**

a) What is the source of your drinking water?
☒ Public Water   ☐ On-site Water (Well on Property)
☐ Community Water ☐ None       ☐ Other (explain):

b) If your drinking water source is not public;
When was your water last tested?       What were the test results?

| | Yes | No | Unknown/NA |
|---|---|---|---|
| Is the pumping system in working order? If "no", explain: | ☒ | ☐ | ☐ |

*NS*
06/07/18
7:10AM CDT

**Aires**
6 Penn Center West, Pittsburgh, PA 15276
412-768-0461

Page 2 of 7

This document and the accompanying documents may contain information that is confidential or otherwise protected from disclosure. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender and then delete this message, including any attachments. Any dissemination, distribution or other use of the contents of this message by anyone other than the intended recipient is strictly prohibited.

DocuSign Envelope ID: 2B7C22F5-A3A0-45F0-B0AC-52FFE7E3CA41

 aires

### Sellers Property Disclosure Statement

|  | | Yes | No | Unknown/NA |
|---|---|---|---|---|
| c) | Do you have a softener, filter or other purification system?<br>If "yes", is the system: ☐Leased ☐Owned | ☐ | ☒ | ☐ |
| d) | What is the type of sewage system?<br>☒Public Sewer ☐Individual On-Lot Sewage Disposal<br>☐Individual On-Lot Sewage Disposal System in Proximity to Well<br>☐Community Sewage Disposal System<br>☐Ten Acres Permit Exception ☐Holding Tank ☐None<br>☐None Available/Permit Limitations in Effect<br>If Individual On-Lot, what type? ☐Cesspool ☐Drain field ☐Unknown<br>☐Other (specify):<br>Is there a septic tank on the Property? | | | |
|  | | ☐ | ☒ | ☐ |
|  | If "yes", what is the type of tank? ☐Metal/steel ☐Cement/concrete<br>☐Fiberglass ☐Unknown ☐Other (specify):<br>Other type of sewage system (explain): | | | / |
| e) | When was the on-site sewage disposal system last serviced? | | | |
| f) | Is there a sewage pump?<br>If "yes", is it in working order? | ☐<br>☒ | ☒<br>☒ | ☐<br>☐ |
| g) | Is either the water or sewage system shared?<br>If "yes", explain: Shared by HOA | ☒ | ☒ | ☐ |
| h) | Are you aware of any leaks, backups, or other problems relating to any of the plumbing, water and sewage related items?<br>If "yes", explain: | ☐ | ☒ | ☐ |

### 9. PLUMBING SYSTEM

|  | | Yes | No | Unknown/NA |
|---|---|---|---|---|
| a) | Type of plumbing: ☐Copper ☐Galvanized ☐Lead ☐PVC/PBX<br>☐Unknown ☐Other (explain): | | | |
| b) | Are you aware of any problems with any of your plumbing fixtures (e.g. including, but not limited to: kitchen, laundry or bathroom fixtures; wet bars; hot water heater; etc.)?<br>If "yes", explain: | ☐ | ☒ | ☐ |

### 10. HEATING AND AIR CONDITIONING

|  | | Yes | No | Unknown/NA |
|---|---|---|---|---|
| a) | Type of air conditioning. ☐Central Electric ☒Central Gas ☐Wall<br>☐None<br>Number of window units included in sale:<br>Location: | | | |
| b) | List any areas of the house that are not air-conditioned: | | | |
| c) | Type of heating: ☐Electric ☐Fuel Oil ☒Natural Gas<br>☐Propane (On-Site)<br>Are there any fireplaces? If "yes", how many?<br>Are the fireplaces working?<br>Other type of heating systems (explain): | ☐<br>☐<br>☐ | ☒<br>☐<br>☒ | ☐<br>☒<br>☒ |
| d) | Are there chimneys?<br>If "yes", how many?     Are they working?<br>When were they last cleaned? | | | |
| e) | List any areas of the house that are not heated: | | | |
| f) | Type of water heating: ☐Electric ☒Gas ☐Solar ☐Other: | | | |
| g) | Are you aware of any underground fuel tanks on the property?<br>If "yes", describe:<br>If tanks are not owned, explain: | ☐ | ☒ | ☐ |
|  | Are you aware of any problems with any item in this section?<br>If "yes", explain: | ☐ | ☒ | ☐ |

MS
06/07/18
7:13AM CDT

This document and attachments are privileged and confidential or otherwise protected from disclosure. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please advise the sender and their delete this message, including any attachments. Any dissemination, distribution or other use of the contents of this message by anyone other than the intended recipient is strictly prohibited.

dotloop signature verification: www.dotloop.com/my/verification/DL-155337736-4-1010
DocuSign Envelope ID: 2B7C22F5-A3A0-45F0-B0AC-52FFE7E3CA41

FILED DATE: 6/20/2019 12:11 PM   2019CH07429


aires

### Sellers Property Disclosure Statement

**11. ELECTRICAL SYSTEM**
Are you aware of any problems or repairs needed in the electrical system?  Yes ☐  No ☒  Unknown/NA ☐
If "yes", explain:

**12. OTHER EQUIPMENT AND APPLIANCES INCLUDED IN SALE**
**(Complete only if applicable)**
Equipment and appliances ultimately included in the sale will be
determined by negotiations an according to the terms of the Agreement of
Sale.
a) ☒Electric Garage Door Opener   No. of Transmitters /
b) ☐Smoke Detectors   How many?   Location:
c) ☐Security Alarm System  ☐Owned  ☐Leased
Lease Information (if applicable):
d) ☐Lawn Sprinkler   No. of   ☐Automatic Timer
e) ☐Swimming Pool   ☐Pool Heater   ☐Spa/Hot Tub
Pool/Spa Equipment (list):
f) ☒Refrigerator  ☒Range  ☒Microwave Oven  ☒Dishwasher
☐Trash Compactor  ☒Garbage Disposal
g) ☒Washer  ☒Dryer
h) ☐Intercom
i) ☐Ceiling fans  No. of   Location:
j) ☐Any leased equipment (i.e. propane or natural gas tanks, etc.), if so
what?
k) ☐Other:
Are any items in this section in need of repair or replacement?   ☐  ☒  ☐
If "yes", explain:

**13. LAND (SOILS, DRAINAGE AND BOUNDARIES)**
a) Are you aware of any fill or expansive soil on the property?   ☐  ☒  ☐
b) Are you aware of any sliding, settling, earth movement, upheaval,   ☐  ☒  ☐
subsidence, or earth stability problems that have occurred on or affect
the property?
*Note to Buyer: The property may be subject to mine subsidence
damage. Maps of the counties and mines where mind subsidence
damage may occur and mine subsidence insurance are available
through: Department of Environmental Protection, Mine Subsidence
Insurance Fund, 3913 Washington Road, McMurray, PA 15317 (800)
922-1678 (within Pennsylvania) or (724) 941-7100 (outside of
Pennsylvania).*
c) Are you aware of any existing or proposed mining, strip mining. Or any   ☐  ☒  ☐
other excavations that might affect this property?
d) To your knowledge, is this property, or part of it, located in a flood   ☐  ☒  ☐
zone or wetlands area?
e) Do you know of any past or present drainage or flooding problems   ☐  ☒  ☐
affecting the property?
f) Do you know of any encroachments, boundary line disputes, or   ☐  ☒  ☐
easements?
*Note to Buyer: Most properties have easements running across them
for utility services and other reasons. In many cases, the easements
do not restrict the ordinary use of the property, and Seller may not be
readily aware of them. Buyers may wish to determine the existence of
easements and restrictions by examining the property and ordering an
Abstract of Title or searching the records in the Office of the Recorder
of Deeds for the county before entering into an Agreement of Sale.*

g) *AB*
06/07/18
7:10AM CDT

Aires
6 Penn Center West, Pittsburgh, PA 15276
412-788-0461

Page 4 of 7

This document and any accompanying documents may contain information that is confidential or otherwise protected from disclosure. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please be advised, alert the sender and then delete this message, including any attachments. Any dissemination, distribution or other use of the contents of this message by anyone other than the intended recipient is strictly prohibited

dotloop signature verification: www.dotloop.com/my/verification/DL-355337726-4-1010
DocuSign Envelope ID: 2B7C22F5-A3A0-45F0-B0AC-52FFE7E3CA41

FILED DATE: 6/20/2019 12:11 PM   2019CH07429



**Sellers Property Disclosure Statement**

|  | | Yes | No | Unknown/NA |
|---|---|---|---|---|
| h) | Are you aware of any shared or common areas (i.e. driveways, bridges, docks, walls, etc.) or maintenance agreements? | ☒ | ☐ | ☐ |

Explain any "yes" answers that you give in this section: *Tuckpointing : scaling of Building exterior*

**14. HAZARDOUS SUBSTANCES**

| | | Yes | No | Unknown/NA |
|---|---|---|---|---|
| a) | Are you aware of any underground tanks (other than fuel tanks) or hazardous substances present on the property (structure or soil) such as, but not limited to, asbestos, Polychlorinated biphenyls (PCB's), Urea Formaldehyde Foam Insulation (UFFI), etc.? | ☐ | ☒ | ☐ |
| b) | To your knowledge, has the property been tested for any hazardous substances? | ☐ | ☒ | ☐ |
| c) | Do you know of any other environmental concerns that might impact upon the property? | ☐ | ☒ | ☐ |

Explain any "yes" answers that you give in this section:

| | | Yes | No | Unknown/NA |
|---|---|---|---|---|
| d) | Do you know of any tests for radon gas that have been performed in any buildings on the property? | ☐ | ☒ | ☐ |

If "yes", list date, type, and results of all tests below:

| Date | Type of Test | Results (picocuries/liter or working levels) | Name of Testing Service |
|---|---|---|---|
| ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ |

| | | Yes | No | Unknown/NA |
|---|---|---|---|---|
| e) | Are you aware of any radon removal systems on the property? | ☐ | ☒ | ☐ |

If "yes", list date installed and type of system, and whether it is in working order below:

| Date Installed | Type of System | Provider | Working Order |
|---|---|---|---|
| ___ | ___ | ___ | ☐Yes ☐No |
| ___ | ___ | ___ | ☐Yes ☐No |
| ___ | ___ | ___ | ☐Yes ☐No |

| | | Yes | No | Unknown/NA |
|---|---|---|---|---|
| f) | If property was constructed, or if construction began before 1978, you must disclose any knowledge of lead-based paint on the property. Are you aware of any lead-based paint or lead-based paint hazards on the property? | ☐ | ☒ | ☐ |

If "yes", explain how you know it, where it is and the condition of any lead-based paint surface(s):

| | | Yes | No | Unknown/NA |
|---|---|---|---|---|
| g) | If property was constructed, or if construction began before 1978, you must disclose any reports or records of lead-based paint or lead-based paint hazards on the property. Are you aware of any reports or records regarding lead-based paint or lead-based paint hazards on the property? | ☐ | ☒ | ☐ |

If "yes", list all available reports and records:

**15. CONDOMINIUMS AND OTHER HOMEOWNER ASSOCIATIONS (Complete only if applicable)**

Type: ☐Condominium ☐Cooperative ☐Homeowner

Association or Planned Community ☐Other: _____

*Notice regarding Condominiums, Cooperatives, and Planned Communities: According to Section 3407 of the Uniform Condominium Act [68 Pa. C.S. §3407(relating to resale of units) and 68 Pa. C.S. &4409 (relating to resale of cooperative interests) and Section 5407 of the Uniform Planned Community Act [68 Pa. C.S. &5407 (relating to resale of units), a buyer of a resale unit in a condominium, cooperative, or planned community must receive a copy of the declaration (other than the plats*

NS
06/07/18
7:10AM CDT

**Aires**
6 Penn Center West, Pittsburgh, PA 15276
412-788-0461

Page 5 of 7

This document and any attachments may contain confidential information that is protected from disclosure. If you are not the intended recipient of this message you are hereby notified that any review, retransmission, conversion to hard copy, copying, circulation or other use of this message, including any attachments, is strictly prohibited. Any unauthorized use is strictly prohibited.

gnature Verification: www.docusco.com/my/verification/DL-353337728+1010
Sign Envelope ID: 2B7C22F5-A3A0-45F0-B0AC-52FFE7E3CA41

FILED DATE: 6/20/2019 12:11 PM   2019CH07429



## Sellers Property Disclosure Statement

| | Yes | No | Unknown/NA |
|---|---|---|---|

*and plans), the by-laws, the rules or regulations, and a certificate of resale issued by the association in the condominium, cooperative, or planned community. The buyer will have the option of cancelling the agreement, with return of all deposit monies, until the certificate has been provided to the buyer and for five days thereafter, or until conveyance, whichever occurs first.*

**18. MISCELLANEOUS**

a) Are you aware of any historic preservation restriction or ordinance or archeological designation associated with the property? — No

b) Are you aware of any existing or threatened legal action affecting the property? — No

c) Do you know of any violations of federal, state or local laws or regulations relating to this property? — No

d) Are you aware of any public improvement, condominium or homeowner association assessments against the property that remain unpaid or of any violations of zoning, housing, building, safety, or fire ordinances that remain uncorrected? — No

e) Are you aware of any judgment, encumbrance, lien (for example, co-maker or equity loan), overdue payment on a support obligation, or other debt against this property that cannot be satisfied by the proceeds of this sale? — No

f) Are you aware of any reason, including a defect in title, that would prevent you from giving a warranty deed or conveying title to the property? — No

g) Are you aware of any material defects to the property, dwelling or fixtures which are not disclosed elsewhere on this form? A material defect is a problem with the property or any portion of it that would have a significant adverse impact on the value of the residential real property or that involves an unreasonable risk to people on the land? — No

Explain any "yes" answers that you give in this section:

Was your home built or remodeled since 2001? ☒ Yes, complete remaining questions ☐ No, skip remaining questions — Yes

a) Are you or other occupants aware that the home or certain room(s) have either a sulfur-like odor or other unusual odors now or in the past?  No

b) Have there been repeated failures of the A/C evaporator coils (located in the air handler unit)? — No

c) Are you or other occupants aware of visual evidence of dark or black corrosion of copper Freon lines in the home? — No

d) Are you or other occupants aware of other metallic surfaces (silverware, mirrors, chrome fixtures, accessible plumbing lines, exposed plumbing fixtures, brass components, electrical wiring, metal door hinges and electrical components, etc.) showing signs of corrosion in the home? — No

f) Are you aware of the presence of Corrosive Imported drywall in your home? — No

NB
05/07/18
7:10AM CDT

Aires
6 Penn Center West, Pittsburgh, PA 15276
412-788-0461

Page 6 of 7

This message contains confidential information, which may also be privileged, and is intended only for the person(s) addressed above. Any unauthorized use, distribution, copying or disclosure is strictly prohibited...

oop signature verification: www.dotloop.com/my/verification/DL-35533772E-4-101O
DocuSign Envelope ID: 2B7C22F5-A3A0-45F0-B0AC-52FFE7E3CA41

FILED DATE: 6/20/2019 12:11 PM  2019CH07429



## Sellers Property Disclosure Statement

**The undersigned Seller represents that the information set forth in this disclosure statement is accurate and complete to the best of Seller's knowledge. Seller hereby authorizes the Listing Broker to provide this information to prospective buyers of the property and to other real estate licensees. SELLER ALONE IS RESPONSIBLE FOR THE ACCURACY OF THE INFORMATION CONTAINED IN THIS STATEMENT. Seller shall cause Buyer to be notified, in writing, of any information supplied on this form which is rendered inaccurate by a change in the condition of the property following completion of this form.**

SELLER _____ DATE 5-29-18   BUYER: AIRES, LLC

SELLER _____ DATE 5-33-18   _____

SELLER _____ DATE _____   As a representative of Aires      6/6/18

As an agent for
American International
Relocation Solutions, LLC

Buyer    *Melinda Sgariglia*    dotloop verified
05/07/18 7:19AM CDT
ORMK-3CBV-WPSG-B104

This document and any accompanying documents may contain information that is confidential or otherwise protected from disclosure. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender and then delete this message, including any attachments. Any dissemination, distribution or other use of the contents of this message by anyone other than the intended recipient is strictly prohibited

DocuSign Envelope ID: 2B7C22F5-A3A0-45F0-B0AC-52FFE7E3CA41

Addendum to Purchase and Sale Agreement: 1, March 1, 2011



American International Relocation Solutions
Addendum to Purchase and Sale Agreement

This is an addendum to a Purchase and Sale Agreement (the "Agreement") dated as of __June 6, 2018__ between American International Relocation Solutions, LLC (Aires), a Pennsylvania Corporation as Seller and __Melinda Sgariglia__ as Buyer, with respect to the land, buildings, improvements and contents located at:2726 W. Cortez Street Unit 1, Chicago, IL 60622 (the "Property"). In the event of any conflict between the provisions of this Rider and the provisions of the Agreement, the provisions of this Rider shall control.

**Ownership:** The terms and conditions of this agreement, which apply to the seller, are subject to the seller becoming contractual owner.

**Seller's Authority:** No Agreement for the sale of the Property shall be deemed effective unless executed in writing by Seller. Any offer or counter-offer executed by a real estate broker or agent on behalf of Seller (other than a corporate officer of Seller) shall not be binding on Seller unless and until confirmed in writing and signed by Seller.

**Seller's Representations:** Any representation by seller shall be to the best of the seller's knowledge and belief without inquiry or investigation. No representation shall survive the closing unless specifically expressed herein.

**Condition of Premises:** Buyer understands that Seller is a relocation management service and has never lived on or in the Property. The Property, including the contents (fixtures, appliances and personal property), being sold and purchased are not new, and are being sold "as is", in their present condition. Neither Seller nor any of its agents make any representations concerning the Property, including but not limited to, representations regarding the size of the buildings and improvements, the presence or absence of toxic or hazardous substances, or the presence or absence of any encroachments or unrecorded easements, except as follows:

**Tests, Inspections, and disclosures:** The following tests, inspections, and disclosure have been completed in, on or with respect to the Property and Buyer acknowledges receipt of the documentation specified below in regard to those tests or inspections:

| Type of Disclosure | Date | Done By |
|---|---|---|
| Aires Sellers Disclosure Form | 5/30/18 | Nicholas Gonring |
| State Disclosure Form | 5/18/18 | Nicholas Gonring |
| Aires Signed State Disclosure Form | 6/6/18 | Aires Relocation |

Other

The above documents are being given to Buyer for informational purposes only. They represent the opinions of the individuals or firms who prepared them. Seller makes no representations as to the accuracy of the information given and makes no agreement to undertake or perform any action recommended in any of the reports.

Unless specifically noted, Seller has no knowledge concerning the presence of radon gas, asbestos, mold, synthetic stucco, or other allergen, toxic or hazardous substances in the Property. However, Buyer shall not interpret Seller's lack of knowledge as a representation that the Property is free of these or other toxic or hazardous substances.

**Buyer's Duty to Inspect/Test:** Buyer agrees to inspect or to have the Property inspected by others on Buyer's behalf to determine the existence of defects, if any. All and any inspections shall be at Buyer's sole cost and expense. Seller encourages Buyer to secure such surveys, professional building inspection reports, any inspections or reports necessary to determine the presence of radon gas, asbestos, mold, synthetic stucco, or other toxic or hazardous substances in or about the

EXHIBIT C

FILED DATE: 6/20/2019 12:11 PM 2019CH07429



## HAWBECKER & GARVER, LLC

26 Blaine Street
Hinsdale, IL 60521

Phone: 630.789.6833
Fax: 630.230.1119
www.hglegal.com

FILED DATE: 6/20/2019 12:11 PM  2019CH07429

**Via facsimile  630-629-0580**

June 14, 2018

Ms. Sarah Wilkins
Attorney at Law

Re:     2726 W. Cortez Street, Unit 1, Chicago, IL 60622
       **Aires to Sgariglia**

Dear Ms. Wilkins,

Please be advised that our office is representing the Buyer, Melinda Sgariglia, in the above referenced real estate transaction.  This letterhead should provide you with our information.  Should you need anything else, please do not hesitate to contact our office.

Pursuant to the Attorney Modification Provision, I hereby approve of the contract subject to the following modifications:

1) If this unit comes with a parking space(s), please confirm that the parking space will be insured as a separate parcel on the title policy and please confirm whether said space is a limited common element, assigned or deeded.
2) If this unit comes with a storage space(s), please confirm that the storage space will be insured as a separate parcel on the title policy and please confirm whether said space is a limited common element, assigned or deeded.
3) Paragraph 3: To confirm, the sales price is $510,000.00.
4) Paragraph 6: All remaining earnest money shall be tendered within 3 business days after the parties reach agreement per paragraphs 15 and 16 of the purchase contract.
5) Paragraph 7: Mortgage Contingency
   a. Line 36: To confirm, the first commitment date is July 6, 2018.
   b. This contract is contingent upon the lender appraising the property for an amount at least equal to the purchase price.
   c. Please omit all references to seller procured financing.
   d. The term "written mortgage commitment" is hereby modified to state a "written mortgage commitment subject to only at closing conditions and matters of title and survey as determined in the sole discretion of the Buyer's lender."
   e. In the event seller fails to respond to or denies an extension under this provision, at Buyer's sole election, Buyer reserves the right to waive said extension and proceed under the previously agreed-upon terms or declare the contract null & void and receive the return of earnest money.
6) Paragraph 8: Closing
   a. To confirm, the closing date shall be July 25, 2018.
   b. The parties agree that in the event the closing is delayed for any reason due to the new TRID guidelines that the Buyer will not be considered in default of the contract and the Seller will agree to extend the closing date as necessary.

EXHIBIT D

FILED DATE: 6/20/2019 12:11 PM    2019CH07429

    c.   Closing shall take place at a title company of Seller's choosing at the office situated nearest to the Property or the Chicago Loop office of the Seller's chosen title company.

7) Paragraph 11: Seller shall pay the 2017 2nd installment at or prior to closing should said bill be issued. If not, the 2017 taxes shall be prorated at 110% of the last ascertainable full years tax bill. As 2018 is reassessment year in the city of Chicago,. The property is currently assessed at $33,177, which is well below the purchase price. The proration per the contract does not tax into account the pending increase in assessed value. 2018 taxes shall be prorated by taking the 10% of the purchase price, $51,000, multiplied by the most recent ascertainable tax rate and equalization factor.

8) Paragraph 12: Homeowners Association

    a.   If any special assessment is discussed, levied or approved prior to the date of closing, Seller shall be responsible for the full payment thereof.

    b.   Paragraph 12, Line 73: The following is added after the sentence ending with Association Documents. "This contract shall remain contingent upon Buyer's approval of those changes."

    c.   Please confirm the monthly assessment is $215.00 and please confirm what is included in the monthly assessment (gas, electric, water, cable, etc.).

    d.   Please have the Association complete a 22.1 disclosure. This contract is contingent upon Buyer's approval of same. Also, please provide a copy of the rules and regulations, the last 12 months association minutes, the association budget, and condo association declarations and bylaws including the plat which was recorded with the declaration. This contract shall remain contingent upon the satisfactory review thereof. In the event the property is not a condominium, but is part of a homeowner's or townhome association, then the Seller shall still cause the association to fill out a 22.1 form and provide the above requested documentation.

    e.   Please verify that the Condo Association has not experienced any instances of water (interior or exterior) leaking into the Property and/or any water damage during Seller's ownership of the Property. If there have been any such occurrences, please provide dates, locations, damage and any repairs made.

9) Seller represents and warrants that the following are true and shall remain true at the time of closing:

    a.   Sellers have not made any insurance claims within the last 5 years;

    b.   The real estate taxes for the subject property are not subject to a senior freeze discount, senior exemption, improvement waiver, unimproved or partially unimproved status or any other type of exemption or discount which may be dropped by virtue of this transaction;

    c.   Seller agrees that if the amount of the most recent tax bill reflects a homeowner, senior citizen or any other exemption, Seller has submitted all necessary documentation to the County Assessor's Office prior to closing to preserve said exemptions. In the event the necessary documentation cannot be submitted prior to closing, the tax credits shall prorated without such exemptions.

    d.   The Seller received all proper permits for any repairs completed during Seller's ownership of the property and will provide copies as well as a certificate of occupancy if applicable; and

    e.   There are no complaints, violations, suits, citations, notices or other citations of any kind whatsoever that are pending, concerning building code or zoning violations or in

FILED DATE: 6/20/2019 12:11 PM  2019CH07429

        any other matter concerning this property or the Seller or that may interfere with Buyer's enjoyment and marketability of the property.

10) Paragraph 13: If any additional items occur or if any inaccuracies occur before closing that would require a supplement to the Residential Real Property Disclosure, Buyer will have the right to accept the disclosure or inaccuracies or terminate the contract with the return of all earnest money if the parties cannot reach agreement on Seller's proposal to cure.

11) Paragraph C: At Seller's expense, Seller will deliver or cause to be delivered to Buyer or Buyer's attorney within customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a title commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended coverage by a title company licensed to operate in the State of Illinois, issued on or subsequent to the Date of Acceptance.

12) Seller represents and warrants that they are not a foreign citizen and that Section 1445 of the Internal Revenue Code does not apply to this transaction. Seller will present a signed FIRPTA document to Buyer at closing.

13) Please verify that, to the best of Seller's knowledge, the Property has not had any instances of water (interior or exterior) leaking into the Property and/or any water damage during Seller's ownership of the Property. If there have been any such occurrences, please provide dates, locations, damage and any repairs made.

14) Buyer respectfully requests an early morning closing (9:00 a.m.) on the July 25th if possible.

15) Please confirm if there are any rental restrictions with the Association.

Pursuant to the Professional Inspection, Buyer hereby requests the following:

A) Buyer requests a $4500 credit in lieu of repairing the items listed on the inspection Summary Page and Potential Safety Hazards page.

B) Can you please confirm the date the HVAC was last serviced? Are there any receipts available?

C) Seller to call ComEd (866-639-3532 option 2. Buyer can't put in this request) to notify them there is a safety issue and that the power run from the alley to the neighbor's property is too close to this unit's garage deck. Additionally, Seller to call customer care at 800-334-7661 and request that "sleeving" be put on the power run until the run is relocated per the above. There should be ample time to complete these items and it is Buyer's understanding that there is no charge for this work. However, given the significant safety issue, if this is not completed by July 25th 2018, the date of closing, Buyer respectfully requests that an escrow with sufficient funds be established to handle any charges resulting from the power run relocation.

D) Flickering Lights- Seller to call ComEd customer care and explain that the unit is experiencing flickering lights (800-334-7661). ComEd will determine if this issue is an inside/outside issue. If a building issue, Buyer respectfully requests that a licensed electrician properly repair this issue with a work order/receipt provided to Buyer prior to closing.

These issues are in no way to be construed as a counteroffer but merely suggested modifications to the contract. In the event that some or all of the suggested modifications are not acceptable, then our client reserves the right to either waive some or all of the aforementioned suggested modifications, proceed under the terms of the contract as originally drafted, or to declare the contract to be null and void. If Seller agrees to this, please sign and return a copy of this letter via facsimile. I look forward to working with you in this transaction.

Sincerely,

*Thomas B. Hawbecker*

Thomas B. Hawbecker

Agreed and accepted:
This _____ Day of _____, _____

_____

Attorney for Seller

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

FILED DATE: 6/20/2019 12:11 PM   2019CH07429



**ATTORNEY & COUNSELOR AT LAW**

TERRACE EXECUTIVE CENTER
1 SOUTH 376 SUMMIT AVENUE, COURT D
OAKBROOK TERRACE, ILLINOIS 60181

TELEPHONE   630.629.3203
FACSIMILE   630.629.0580

June 18, 2018

Via Facsimile:  630-230-1119

Mr. Thomas B. Hawbecker
Hawbecker & Garver, LLC
26 Blaine Street
Hinsdale, IL 60521

Re:   Sale of 2726 West Cortez Street Unit 1, Chicago, IL 60622 (the "Property") by American International
      Relocation Solutions, LLC (the "Seller") to Melinda Sgariglia (the "Buyer")

<u>**Attorney Modifications Response Letter**</u>

Dear Mr. Hawbecker:

As you are aware, my office represents the Seller, American International Relocation Solutions, LLC, with respect to
the subject real estate transaction. The Seller has reviewed your letter dated June 14, 2018 concerning contract
modifications and has provided the following response:

1. Seller reports that the Property's parking space, P-1, is a limited common element of which the exclusive
   right to use is included in the Property's legal description.

2. Seller reports that a storage space is not deeded or listed as a limited common element of which the
   exclusive right to use is included in the Property's legal description. Inquiry has been made with the
   condominium association regarding whether a storage space that has been assigned to the Property, and
   a further response will be provided.

3. Seller confirms that the contract purchase price is $510,000.00.

4. Seller agrees that Buyers shall tender the balance of earnest money no later than 3 business days
   following the conclusion of the attorney review/home inspection period.

5. With respect to Item 5:

   a. Seller confirms that the date specified at Line 36 reads July 6, 2018.

   b. Seller agrees to make the contract contingent upon the Property appraising for at least the
      purchase price. Should the Property fail to appraise, Seller reserves the option to renegotiate the
      purchase price with Buyer and proceed with the transaction.

   c. Seller agrees to strike from the contract all references to Seller obtaining financing on Buyer's
      behalf.

   d. Seller agrees to modify Lines 36-37; the phrase "written mortgage commitment" shall be
      replaced with the phrase "clear to close."

   e. Seller respectfully declines to limit Seller's contract termination rights as they relate to financing
      contingency extension requests. However, Seller generally considers extensions of the mortgage
      contingency in good faith.

Page 1 of 3

EXHIBIT E

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

Mr. Thomas B. Hawbecker
June 18, 2018
Page 2

6. With respect to Item 6:

   a. Seller confirms that the contract closing date is July 25, 2018.

   b. Seller agrees not to treat delays in the closing date due to a lender's compliance with TRID or other regulations as a default by Buyers, provided such delays are not intentionally caused by Buyers.

   c. Seller agrees that the closing may take place at the Chicago Loop location of Attorneys' Title Guaranty Fund, Inc.

7. Inquiry has been made with Seller regarding prorating the 2018 taxes, and a further response will be provided.

8. With respect to Item 8:

   a. Seller agrees to be responsible for those special assessments of which it is Seller's responsibility to pay, and of which are enacted and levied prior to closing.

   b. Seller respectfully declines to modify Paragraph 12, Line 73.

   c. Seller has made inquiry with the Property's condominium association regarding the amount and what is included in the Property's monthly assessment, and a further response will be provided.

   d. Seller agrees to abide by the Illinois Condominium Property Act and provide Buyer those required documents as delineated in 765 ILCS 605/22.1(a), with Buyer's approval of those documents to be consistent with Paragraph 12, Lines 75–79 of the contract.

   e. As a third-party corporate relocation company, Seller is unable to make verifications regarding whether the Property has experienced water leaking or water damage. However, Seller agrees to abide by the terms of the "Buyer's Duty to Inspect/Test" section of the Aires addendum with respect to possible leaks, seepage, or water infiltration of the Property, as Seller would have no knowledge of such matters unless raised during the home inspection process.

9. With respect to Item 9:

   a. As a third-party corporate relocation company that has never occupied the Property, Seller is unable to make representations or warranties regarding whether insurance claims have been made against the Property, as Seller would have no knowledge of such matters.

   b. Seller reports that the Property was only subject to a homeowner's exemption within the most recently ascertainable full year tax bill. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report.

   c. Please see Number 9(b) above. Additionally, as Seller understands Cook County's application for the homeowner's exemption, Buyer needs only to affirm that the Property was occupied by its current or previous owner as a principal residence as of January 1, 2018. Seller reports that the Property was owner-occupied at the beginning of the 2018 tax year. Thus, Buyer would be able to apply for a homeowner's exemption if the homeowners have vacated the Property before applying. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report.

   d. Seller reports that no work was done on the Property without obtaining the necessary permits. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report.

FILED DATE: 6/20/2019 12:11 PM    2019CH07429

Mr. Thomas B. Hawbecker
June 18, 2018
Page 3

> e.  Seller reports that the Property is not subject to any current or pending complaints, violations, suits, notices, or other citations. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report.

10.  Seller agrees to abide by Section 40 of the Illinois Residential Real Property Disclosure Act with respect to Buyer's rights to terminate the contract should Buyer receive a Residential Real Property Disclosure Report supplement from Seller.

11.  Seller agrees to follow the necessary procedures to ensure Buyer receives a title policy with extended coverage.

12.  Seller reports that it is not a foreign person and will provide said proof at closing.

13.  Please see Number 8(e) above.

14.  Seller acknowledges Buyer's request for an early morning closing.

15.  Inquiry has been made with the Property's condominium association regarding whether rental restrictions are in place, and a further response will be provided.

Seller is reviewing the home inspection issues, and a response will be provided under separate cover. Please sign and fax or email a copy of this letter to signify your client's agreement of the foregoing matters.

Very truly yours,

*Sarah M. Wilkins*

Sarah M. Wilkins
Attorney for Seller

cc:    Amanda Flucker – AIReS
       Gretchen Lombardi – RRERS
       Garrett Luehrs – Coldwell Banker (Lincoln Park)
       Megan Caruso - @ Properties (Bucktown)

AGREED: _____          DATED: _____

FILED DATE: 6/20/2019 12:11 PM   2019CH07429



**Sarah M Wilkins**
ATTORNEY & COUNSELOR AT LAW

TERRACE EXECUTIVE CENTER
1 SOUTH 376 SUMMIT AVENUE, COURT D
OAKBROOK TERRACE, ILLINOIS 60181

TELEPHONE   630.629.3203
FACSIMILE   630.629.0580

June 18, 2018

Via Facsimile: 630-230-1119

Mr. Thomas B. Hawbecker
Hawbecker & Garver, LLC
26 Blaine Street
Hinsdale, IL 60521

Re:     Sale of 2726 West Cortez Street Unit 1, Chicago, IL 60622 (the "Property") by American International
Relocation Solutions, LLC (the "Seller") to Melinda Sgariglia (the "Buyer")

**Attorney Modifications Response Letter**

Dear Mr. Hawbecker:

As you are aware, my office represents the Seller, American International Relocation Solutions, LLC, with respect to
the subject real estate transaction. The Seller has reviewed your letter dated June 14, 2018 concerning contract
modifications and has provided the following response:

Ok

1. Seller reports that the Property's parking space, P-1, is a limited common element of which the exclusive
   right to use is included in the Property's legal description.

Ok

2. Seller reports that a storage space is not deeded or listed as a limited common element of which the
   exclusive right to use is included in the Property's legal description. Inquiry has been made with the
   condominium association regarding whether a storage space that has been assigned to the Property, and
   a further response will be provided.

Ok

3. Seller confirms that the contract purchase price is $510,000.00.

Ok

4. Seller agrees that Buyers shall tender the balance of earnest money no later than 3 business days
   following the conclusion of the attorney review/home inspection period.

5. With respect to Item 5:

Ok

   a. Seller confirms that the date specified at Line 36 reads July 6, 2018.

Agreed

   b. Seller agrees to make the contract contingent upon the Property appraising for at least the
      purchase price. Should the Property fail to appraise, Seller reserves the option to renegotiate the
      purchase price with Buyer and proceed with the transaction.

Ok

   c. Seller agrees to strike from the contract all references to Seller obtaining financing on Buyer's
      behalf.

Agreed

   d. Seller agrees to modify Lines 36-37; the phrase "written mortgage commitment" shall be
      replaced with the phrase "clear to close."

Respectfully re-requested

   e. Seller respectfully declines to limit Seller's contract termination rights as they relate to financing
      contingency extension requests. However, Seller generally considers extensions of the mortgage
      contingency in good faith.

Page 1 of 3

EXHIBIT F

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

Mr. Thomas B. Hawbecker
June 18, 2018
Page 2

6. With respect to Item 6:

Ok

   a.   Seller confirms that the contract closing date is July 25, 2018.

Ok

   b.   Seller agrees not to treat delays in the closing date due to a lender's compliance with TRID or other regulations as a default by Buyers, provided such delays are not intentionally caused by Buyers.

Agreed

   c.   Seller agrees that the closing may take place at the Chicago Loop location of Attorneys' Title Guaranty Fund, Inc.

Please provide
the sellers response

7. Inquiry has been made with Seller regarding prorating the 2018 taxes, and a further response will be provided.

8. With respect to Item 8: In the event a special assessment is discussed and the parties cannot reach agreement regarding payment of such potential special assessment, the Purchaser may terminate the contract and the earnest money shall be returned to the purchaser

   a.   Seller agrees to be responsible for those special assessments of which it is Seller's responsibility to pay, and of which are enacted and levied prior to closing.

   b.   Seller respectfully declines to modify **Paragraph 12, Line 73.** re-requested. Changes to the association disclosures must be subject to the Purchasers review and approval.

   c.   Seller has made inquiry with the Property's condominium association regarding the amount and what is included in the Property's monthly assessment, and a further response will be provided. Please provide the association response.

   d.   Seller agrees to abide by the Illinois Condominium Property Act and provide Buyer those required documents as delineated in 765 ILCS 605/22.1(a), with Buyer's approval of those documents to be consistent with **Paragraph 12, Lines 75–79** of the contract.  Ok

   e.   As a third-party corporate relocation company, Seller is unable to make verifications regarding whether the Property has experienced water leaking or water damage. However, Seller agrees to abide by the terms of the "Buyer's Duty to Inspect/Test" section of the Aires addendum with respect to possible leaks, seepage, or water infiltration of the Property, as Seller would have no knowledge of such matters unless raised during the home inspection process. Please confirm the same with the prior owner as the seller has direct contact with the prior owner.

9. With respect to Item 9:

   a.   As a third-party corporate relocation company that has never occupied the Property, Seller is unable to make representations or warranties regarding whether insurance claims have been made against the Property, as Seller would have no knowledge of such matters. Please confirm the same with the prior owner as the seller has direct contact with the prior owner.

Ok

   b.   Seller reports that the Property was only subject to a homeowner's exemption within the most recently ascertainable full year tax bill. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report.

Ok

   c.   Please see Number 9(b) above. Additionally, as Seller understands Cook County's application for the homeowner's exemption, Buyer needs only to affirm that the Property was occupied by its current or previous owner as a principal residence as of January 1, 2018. Seller reports that the Property was owner-occupied at the beginning of the 2018 tax year. Thus, Buyer would be able to apply for a homeowner's exemption if the homeowners have vacated the Property before applying. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report.

   d.   Seller reports that no work was done on the Property without obtaining the necessary permits. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report. Please confirm the same with the prior owner as the seller has direct contact with the prior owner.

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

Mr. Thomas B. Hawbecker
June 18, 2018
Page 3

    e.  Seller reports that the Property is not subject to any current or pending complaints, violations, suits, notices, or other citations. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report.
    Please confirm the same with the prior owner as the seller has direct contact with the prior owner.

10. Seller agrees to abide by Section 40 of the Illinois Residential Real Property Disclosure Act with respect to Buyer's rights to terminate the contract should Buyer receive a Residential Real Property Disclosure Report supplement from Seller.   See below

11. Seller agrees to follow the necessary procedures to ensure Buyer receives a title policy with extended coverage.   Ok

12. Seller reports that it is not a foreign person and will provide said proof at closing.   Ok

13. Please see Number 8(e) above.
    Please confirm the same with the prior owner and or the association as the seller has direct contact with the prior owner.

14. Seller acknowledges Buyer's request for an early morning closing.   Ok

15. Inquiry has been made with the Property's condominium association regarding whether rental restrictions are in place, and a further response will be provided.
    Please provide a response

Seller is reviewing the home inspection issues, and a response will be provided under separate cover. Please sign and fax or email a copy of this letter to signify your client's agreement of the foregoing matters.

Very truly yours,

*Sarah M. Wilkins*

Sarah M. Wilkins
Attorney for Seller

10: Respectfully declined. The residential real property disclosure does not allow Purchasers to cancel in the event Seller determines there is an inaccuracy on the disclosure report.  Seller shall inform Purchasers of any change to the residential real property disclosure report and the parties shall then have three business days to try to come to an agreement on a cure and if the parties cannot come to an agreement on Seller's proposal to cure then either party may cancel the contract.

cc:    Amanda Flucker – AIReS
        Gretchen Lombardi – RRERS
        Garrett Luehrs – Coldwell Banker (Lincoln Park)
        Megan Caruso - @ Properties (Bucktown)

AGREED: _____          DATED: _____
as modified 6-22-18

FILED DATE: 6/20/2019 12:11 PM   2019CH07429



## Sarah M Wilkins
### ATTORNEY & COUNSELOR AT LAW

TERRACE EXECUTIVE CENTER
1 SOUTH 376 SUMMIT AVENUE, COURT D
OAKBROOK TERRACE, ILLINOIS 60181

TELEPHONE   630.629.3203
FACSIMILE   630.629.0580

July 2, 2018

Via Facsimile: 630-230-1119

Mr. Thomas B. Hawbecker
Hawbecker & Garver, LLC
26 Blaine Street
Hinsdale, IL 60521

Re:   Sale of 2726 West Cortez Street Unit 1, Chicago, IL 60622 (the "Property") by American International
Relocation Solutions, LLC (the "Seller") to Melinda Sgariglia (the "Buyer")

### Attorney Modifications 2nd Response Letter

Dear Mr. Hawbecker:

As you are aware, my office represents the Seller, American International Relocation Solutions, LLC, with respect to the subject real estate transaction. The Seller has reviewed your June 22, 2018 inline responses to my June 18, 2018 letter and has provided the following response:

1. Seller acknowledges Buyer's responses to Items 1–5(d); 6; 8(d); 9(b)–9(c); 10–12; and 14.

**Agreed**

2. With respect to Item 5(e), again, Seller respectfully declines to limit its contract termination rights as they relate to financing contingency extension requests. However, Seller generally considers extensions of the mortgage contingency in good faith and is not in the practice of failing to respond to requests.

**Agreed as modified**

3. With respect to Item 7, Seller agrees to prorate the general real estate taxes at ~~110%~~ 125% of the most recently ascertainable full year tax bill (now the 2017 full year tax bill). Furthermore, Seller acknowledges that the title company may request that the 2017 second installment be paid at closing if it is not paid prior.

**Ok**

4. With respect to Item 8(a), again, Seller agrees to be responsible for those special assessments of which it is Seller's responsibility to pay, and of which are enacted and levied prior to closing. Regarding the special assessment from May 2018, my office has been advised that Buyer and your office have received all pertinent information regarding that special assessment including a receipt that the assessment was paid in full within June 2018.

**Ok**

5. With respect to 8(b), again, Seller respectfully declines to modify Paragraph 12, Line 73. Seller agrees to abide by the terms of Lines 75–79 with respect to Buyer's approval of condominium association information.

**Ok**

6. With respect to Item 8(c), Seller has made an additional inquiry with the Property's condominium association regarding the amount and what is included in the Property's monthly assessment, and a further response will be provided.

**Ok**

7. With respect to Item 8(e), again, as a third-party corporate relocation company, Seller is unable to make verifications regarding whether the Property has experienced water leakage or water damage. However, Seller agrees to abide by the terms of the "Buyer's Duty to Inspect/Test" section of the Aires addendum with respect to possible leaks, seepage, or water infiltration of the Property, as Seller would have no knowledge of such matters unless raised during the home inspection process when the information reported in the Residential Real Property Disclosure Report or other homeowner provided disclosures makes no mention of water infiltration issues within the Property.

EXHIBIT G

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

Mr. Thomas B. Hawbecker
July 2, 2018
Page 2

**Ok**

8. With respect to Item 9(a), Seller reports that the homeowners made no claims against their homeowner's insurance within the last 5 years. As a third-party corporate relocation company that has never occupied the Property, Seller is unable to make representations or warranties regarding whether insurance claims have been made against the Property, as Seller would have no knowledge of such matters.

**Ok**

9. With respect to Item 9(d), again, Seller reports that no work was done on the Property without obtaining the necessary permits. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report.

**Ok**

10. With respect to Item 9(e), again, Seller reports that the Property is not subject to any current or pending complaints, violations, suits, notices, or other citations. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report.

**Ok**

11. With respect to Item 13, again, please see Number 7 above.

**Ok**

12. With respect to Item 15, another inquiry has been made with the Property's condominium association regarding whether rental restrictions are in place, and a further response will be provided. Please confirm that there are no rules and regulations.

Seller is reviewing the home inspection issues, and a response will be provided under separate cover. Please sign and fax or email a copy of this letter to signify your client's agreement of the foregoing matters. The buyer again requests a $3,000 credit. This is the buyers final position.

Very truly yours,

*Sarah M. Will*

Sarah M. Wilkins
Attorney for Seller

cc:     Amanda Flucker – AIReS
       Gretchen Lombardi – RRERS
       Garrett Luehrs – Coldwell Banker (Lincoln Park)
       Megan Caruso - @ Properties (Bucktown)

AGREED: _____     DATED: __7-3-18_____
as modified

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

## DISCLOSURE STATEMENT

The following statements are provided by the Board of Managers of the 2726 W Cortez
_____ Condominium Association as required by 765 ILCS 605/22.1
(Illinois Condominium Property Act):

1. Are there any liens against the Association?

    Yes _____       No X

    If yes, please give details concerning all such liens.

    _____
    _____
    _____

2. Amount of the reserves for capital expenditures: $2208

3. Are there any reserves designated by the Association for any specific projects?

    Yes _____       No X

    If yes, please identify the specific projects, their status and the amount of the reserves and/or
    funds being held for each such specific project.

    _____
    _____
    _____

4. Are there any capital expenditures anticipated by the Association for the current or next two
    fiscal years that would require a special assessment and/or increase in the monthly
    assessment to the unit owners?

    Yes _____       No X

    If yes, this will be [check one/both of the following and list estimated amount]:

    _____ Special Assessment
    _____ Increased Monthly

    If yes, please give the amount of the anticipated capital expenditures and the amount of the
    special assessment to this unit owner and/or the amount of increase in monthly assessment
    for this unit owner.

    _____
    _____
    _____

EXHIBIT H

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

5.  Any improvements or alterations in the above-referenced unit or in the limited common elements assigned to the unit by the current and any prior owners are in good faith believed to be in compliance with the Condominium Declaration.

    If not, please specify those items not in compliance with the Condominium Declaration.

    _____

    _____

    _____

6.  Are there any pending lawsuits, judgments or claims by or against the Association?

    Yes _____        No X

    If yes, please give details and status of any such pending lawsuit or judgment.

    _____

    _____

7.  A copy of the latest financial statement and operating budget of the Association is enclosed.

8.  A copy of the Board Minutes showing capital expenditures and/or approval of special assessments is enclosed.

9.  Please indicate the name of the insurance agent for the association.

    Name: Eric Insurance Group
    Address:
    Contact Name: Woodman Cison & Associates
    Telephone: 847-941-9041
    Facsimile:

10. How many Unit Owners are in foreclosure? 0

11. How many Units are more than 30 days past due on their assessments? 0

12. What is the owner occupancy percentage?   Unit 1- 44%

                                          THE BOARD OF MANAGERS

                                          By: _____
                                          Name: John Gorr
                                          Title: President
                                          Phone Number: 773-742-0596
                                          Dated: 6/14/2918

FILED DATE: 6/20/2019 12:11 PM    2019CH07429

I can meet any night this week after 6pm With Monday and Tuesday being my preference.

You are all welcome to come to my place.

In the meantime, would you mind collecting/sending me the following items:

- all previous correspondence with the board around this or other water issues
- any quotes for work you've had so far, or work you anticipate having
- any other information on work done to mitigate water intrusion other than the recent sealant this summer
- is the roof leaking at all?  Has any professional contractor looked at it?
-names of the contractors used
- anything else you think might be
relevant to the conversation.


Perhaps we can use this week's conversation to discuss the history of the building, mitigation done to date, work that you believe is necessary and next steps.

Sounds like we'll need to meet several times to discuss.

Ryan, Has this been disclosed to Your buyer?

Let me know which dates work.

Thanks again for touching base.

Melinda

Sent from my iPhone

On Sep 8, 2018, at 11:01 AM, Young, Melinda <Melinda.Young@nuveen.com> wrote:


Sent with BlackBerry Work
(www.blackberry.com)

From: john gorr <jgorr1@msn.com>
Date: Friday, Sep 07, 2018, 8:33 PM
To: Young, Melinda <Melinda.Young@nuveen.com>
Subject: Unit 3 - subfloor damage

Hey Melinda - this is going to be an unfortunate way for us to start talking.  I've been very busy trying to sell my place for the past few months and have had several setbacks.  I'm not sure what was communicated to you during closing but there has been a history of water intrusion to the building.  This has occurred primarily in my unit from leaks through the split face block.  The history of the

3

EXHIBIT I

water intrusion has been thoroughly documented over some years and was clearly communicated along the way to the other unit owners.

We had the building sealed with elastomeric sealant a few months back so we're fairly confident that the water has stopped getting into the building. However, with the recent inspections on my place a few items have been brought up that have shed light on a new problem. I recently tested positive for elevated levels of mold in my unit. That triggered me to look at replacing some floorboards. Upon removing the floorboards we discovered that the subfloor was severely damaged in many areas and there is mold behind some walls, please see the attached pictures. From what started out as me replacing some floorboards has turned into a large and costly problem that was caused by a building issue. I have spoken with a few contractors about the next steps and the appropriate resolve is to remove some of the subfloor, and much of the drywall on the perimeter of my unit, treat the mold, and then repair and repaint.

I have relayed this information to Ryan as well. I anticipate that you will be surprised and disappointed at this news, and I'm sorry to break it to you. I'll be out of town tomorrow but will be available by phone all weekend to discuss. Otherwise, we can set up a building meeting this week.

John
773-742-0596


<20180904_154205.jpg>
<20180904_154518.jpg>
<20180905_091212.jpg>

4

Date: Thu, 18 Apr 2013 19:00:46 -0500
To: jgorr1@msn.com

I seem to be ok.  I did find a little water by my front sliding glass door.  No leaks otherwise, far as I can see now.

Sent from my iPhone

On Apr 18, 2013, at 11:36 AM, john gorr <jgorr1@msn.com> wrote:

> yeah, all of my doorframes don't fit the doors anymore, i have to put my shoulder into
> my backdoor to close it.  My front door is so tight, i have to put my shoulder into it to
> open it.  I'm also a little worried about the water getting into walls that we can't see.  I'm
> keeping an eye on my ceiling for water marks, haven't seen any alarming issues, but
> there is one little spot in the doghouse on the roof that might have a little water
> seepage.  I'm gonna start to reach out to some people for advice.
>
>
>
> > From: matt@yamadapump.com
> > To: jgorr1@msn.com
> > CC: brown14702000@yahoo.com
> > Subject: Re: water damage
> > Date: Thu, 18 Apr 2013 16:17:45 +0000
> >
> > John,
> > We've had similar issues with the floor and trim. There's a spot on our ceiling under
> Ryan's bathroom that I've been keeping an eye on as well... As for the windows, I'll give
> it a thorough look through. That's BS Man. I'm painfully aware of the shoddy
> workmanship on this building.... Even down to the doors not latching.
> > Regardless of anything else, we'll definitely have to get that fixed. We can't have
> water getting into the walls. I'm wondering if this might be an insurance thing too?
> >
> > Sent from my iPhone
> > Matt Mulligan
> > OEM & National Accounts Mngr.
> > Yamada America, Inc.
> > 800-990-7867
> >
> > On Apr 18, 2013, at 10:55 AM, "john gorr" <jgorr1@msn.com<mailto:jgorr1@
> msn.com>> wrote:
> >
> > hey guys,
> >
> > With the shifting of the building over the year my place has been cracking alot, the
> floorboards are separating, the trim is separating, etc. It keeps getting worse, I'm not
> too worried about that, seems normal and there really isn't a way to prevent that without
> redoing the structure. However, with all of the rains, just about every window is leaking
> at the top of the sill. Either the window flashing wasn't installed properly or is cracking,
> or the window frame itself is cracked, because it's coming in through the frame. It leaks
> enough water that it creates a puddle on the bottom sill and spills onto the floor, so I
> have towels on all my window sills. Just wanted to see if you guys were having similar
> problems.

EXHIBIT J

FILED DATE: 6/20/2019 12:11 PM    2019CH07429

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

Please review the Condo bylaws and let me know what you're thinking. Section 9 (a) leads me to believe that this is a common element. This last year was rough with the water damage so I'm looking to get another few quotes and decide the best plan of action. Would like to secure a contractor by February and line up the work for early Spring so I don't get bombarded with spring rains and go through another summer living with towels under my windows.

It's been pretty stressful dealing with this problem and I'm hoping you guys can sympathize with my situation. Let me know if you want to discuss anything.

thanks
John

**From:** john gorr <jgorr1@msn.com>
**Sent:** Monday, December 4, 2017 8:51 PM
**To:** brown14702000@yahoo.com; kelseygonring@gmail.com; ngonring@uwmalumni.com
**Subject:** Fw: engineer report

Hey guys, just wanted to forward the results of the inspection from the building insurance claim I put in for the water damage at my unit. The conclusion that the engineer came to was that the water damage is due to improper flashing at my windows and doors. They recommend "exploratory openings in the masonry where the water infiltration is occurring and install proper flashing. All cracks in the masonry and other deficiencies should be addressed at that time."

Most of the water issues at my place are above windows and doors, which is where the water would collect and leak into my unit. There were also some cracks above my back door that caused significant damage above my back door.

I have a quote coming in any day from a masonry guy that specializes in this area and deals with alot of split-face block issues. Also I'm having another contractor come inspect on Saturday to give a quote, you guys should come up and see what he says. After 5 years of being unable to solve this with minor fixes, I believe we have to move forward with the large repair. Based on everything I've learned so far, my thought is the following:

1. Inspect flashing at windows and doors. Remove a few bricks at one window and determine if flashing is appropriate. If not adequate, repair flashing above all 3rd floor windows and doors.

2. Tuck-point the split-face block (north, west, and east sides) at 3rd floor level to repair masonry cracks. Determine if more tuck-pointing should be performed anywhere else.

3. Apply a warrantied sealant to the exterior at my level, at least, and potentially just seal the whole building.

Now, this could change based on the next few quotes. It's just what I believe is the best course of action right now.

I've done everything I can over the years to repair on my own and it's just getting worse every year. At this point I believe it needs to become a building issue. To the best of my knowledge, it appears to me that the Condo documents would include this as a common element repair and would be paid for by the association. This also means it breaks down by unit percentage. (44% Unit 1, 26% Unit 2, 30% Unit 3)



I understand that this is a big thing to drop on you guys and I'd like for everyone to weigh in on it. If I

9/28/2018

could pay for it myself I would love to, but it's a bit out of my hands at this point.  Let me know what you think.

John

**From:** Ehlers, Michael A. <Michael.Ehlers@ERieInsurance.com>
**Sent:** Wednesday, November 29, 2017 4:23 PM
**To:** john gorr
**Subject:** engineer report

Mr. Gorr,

I have been authorized to send out the report finalized by Engineering Systems, Inc.  Unfortunately based on this report there  is no coverage under the policy for the repairs to the building.  Our denial letter will be send out under separate cover.

Regards,

**Mike Ehlers, AIC**
Property Adjuster II
P.O. Box 2410
East Peoria, IL. 61611-0410
708/465-0235-cell
888/339-3743-fax
Michael.ehlers@erieinsurance.com


Above all in SERVICE - since 1925


Facebook

**Disclaimer**
This message (and any attachments) is confidential and is intended only for the addressee(s). This message may contain information that is protected by one or more legally recognized privileges. If the reader of this message is not the intended recipient, I did not intend to waive, and I do not waive, any legal privilege or the confidentiality of the message. If you receive this message in error, please notify me immediately by return e-mail and delete this message from your computer and network without saving it in any manner. The unauthorized use, dissemination, distribution, or reproduction of this message, including attachments, is prohibited and may be unlawful.

FILED DATE: 6/20/2019 12:11 PM    2019CH07429

9/21/2018                                          Mail - john gorr - Outlook

Re: Water Infiltration Issue

john gorr
Thu 2/22/2018, 9:06 AM
To: peter gorr <pagorr@comcast.net>

📎 13 attachments (3 MB)
1.pdf; 2.pdf; 3.pdf; 4.pdf; 5.pdf; 6.pdf; 7.pdf; 8.pdf; 9.pdf; 10.pdf; 11.pdf; 12.pdf; Water Damage History.pdf

Please review attachments and we can discuss when we meet.

Kelsey/Nick - I understand your position and it's unfortunate that this is all new information. I highly doubt that Matt/Stacy tried to hide any of this information, they probably just thought it was resolved or it slipped their mind. Unfortunately, their responsibility was to disclose knowledge of water damage. Whether or not they realized this, the issue is there. I'm not sure how that plays out or if they share some of the financial responsibility.

We also did not handle as a formal HOA issue due to inexperience. We discussed the problem through conversation and emails. The entire HOA was Ryan, Matt, Stacy, and myself - all copied on the emails. So the HOA was informed, and in my opinion, all were negligent by not acting on the information. I was forced to act on my own. Again, how this plays out to your financial responsibility and whether you were not given all the information, I'm not sure, maybe you're owed money from the seller. Maybe the HOA will owe you money, maybe I will owe you money, I'm not sure, its complex.

It's not a unit-specific problem, they just have to tear out the drywall in my unit to diagnose. The windows are not leaking, the building is leaking, the wall above my door is leaking, the vent on my ceiling is dripping water. It's most likely due to some of the following:

-Capstones on parapet.
-Improper flashing above windows and doors.
-Improper flashing between floors.
-Tuckpointing cracks.
-Lack of cavity wall. Improper weepholes. Water absorbed through split-face block.
-Roof damage.

Ryan - I'm really surprised that you are aligned on that last email, it appears that you guys are working together to argue against this stuff? That's very surprising given the 5-year history that you are copied on, what are your thoughts?

The plan that I propose is the following:

We fund the first exploratory quote as an HOA (not to exceed $5,000). Cost broken down by HOA percentages. If anything is determined to be my fault or responsibility, I will reimburse the other units the associated costs.

If I did anything wrong during these years, I will own up to it and be responsible for whatever the cost is. The fact remains we have a building that is leaking and appears to be getting worse, it leaked this week during the rains. This issue will only cause more damage to the building the longer we wait so I'm pushing hard to get something to happen here. If you think otherwise, please come with a plan or an alternative proposal or cost structure, not just a denial to move forward. Otherwise, you're basically asking me to pay for this whole repair again. This is what's been asked of me since 2013 because of building inaction. Now I'm asking you all to come together on this to resolve so I'm not forced to go out on my own. At this point, if you talk to a contractor they'll tell you its clearly a building issue. If you can prove to me otherwise I'll pay for what I have to do.

I apologize for being blunt on these issues, but as you can see there's a really long history here and it's been incredibly stressful and exhausting. I'm open to discussing the issues and I can get the contractor on the phone as well if we want to discuss the plan.

I look forward to meeting on Sunday at 3pm.

From: Kelsey Gonring <kelseygonring@gmail.com>
Sent: Tuesday, February 20, 2018 8:07 AM
To: John gorr; Ryan Brown; Nicholas Gonring
Subject: Water Infiltration Issue

John,

Thank you for passing along the details of the estimate. It seems that doing exploratory work on your west facing living room window is most important, as that has experienced the greatest amount of water infiltration over the years. Our understanding is that based on the exploratory work, Bral Restoration will be able to diagnose the issue and likely, grinding/re-pointing and/or sealing the building will be necessary. We agree that it would be wise to tackle this issue now before the spring rains start.

The issue we now face however is the cost of the exploratory work, with the current division of HOA common element costs being 44% (Unit 1) 26% (unit 2) and 30% (units 3).

Nick, Ryan, and I have spoken on several occasions and I'm sure you can understand that the extent and history of your water infiltration issues were quite alarming to us, once brought to our attention a few months back. We knew through passing conversation that you were experiencing some water infiltration in one window; however, not until you produced the "history of water infiltration" document, did we realize the magnitude of the problem. Your worsening but neglected water infiltration issues over the past 6 years are particularly concerning given that Nick and I were not made aware of this issue – present since 2012 – upon our purchase of our unit in 2016. In fact, as part of the purchase, we were given a signed document stating that no issues with any of the units had been raised with the HOA and no documented common element work had been done or was expected to be done in the next 2 years.

However, we came to realize through your reported history of the problem that self-repairs and hiring of others to make repairs had been completed without HOA knowledge. Of particular concern is the use of non-approved HOA methods for addressing these issues over the years. You state in your previous email, "I've done everything I can over the years to repair on my own and it's just getting worse every year." Followed by, "At this point I believe it needs to become a building issue." Unfortunately, it seems as though taking matters into your own hands (not permissible via HOA guidelines) and using contractors/companies without having them approved and or documented by the HOA (not permissible via HOA guidelines) has potentially worsened the issue. This became particularly evident when Ryan and I observed one of the walk-throughs recently and the gentleman noticed that your back door has been caulked, which he pointed out would never have been done by the builder, and that this type of "self-repair" is most definitely leading to additional damage as water has nowhere to go now that the door is sealed. Additionally, it's frustrating to hear that because the water infiltration issue has not been properly addressed and has gotten so bad and costly, you are now reaching out to the HOA. I'm sure you understand that if we were aware of this issue upon purchase, our negotiation would have been conducted quite differently.

Given the amount of interior, unit specific, exploratory work (drywall, windows) that needs to be completed, we are not comfortable with the HOA covering this cost. Once the issue is properly diagnosed, we intend to review each issue individually in the context of the HOA guidelines, specifically what is considered "common elements" and what is unit owner responsibility, and once that is agreed upon, we can determine the appropriate financial responsibility of each unit.

Kelsey, Nick, and Ryan

EXHIBIT K

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

- Unit #1 pay 44% of $4000 - $1760 and get reimbursement from legal settlement.

### Or

- If Unit #1 wants to pay the suggested 20% of $4000 - $800.  HOA account pay the difference of $960.  And as a HOA board we agree and sign loan agreement with payment options and with a full reimbursement due date of the $960 back to the HOA.

- I have been told to not do a personal loan (what was proposed) but rather as a HOA do a business loan for $960.  So a new agreement would need to be written.  I will look to revise John's document.
- Current HOA balance is $1,787

**Please let me know is you have questions or concerns about above.**

On Monday, March 12, 2018 9:52 AM, john gorr <jgorr1@msn.com> wrote:

Ok, let us know what the lawyer says about that.  I understand that position as well.  The fact is this would be a special agreement to modify the payment structure for the exploratory work and would probably not be recommended by any lawyer.  It is not what was signed off on for the bylaws.  In my eyes, this exploratory work is a common element and should be paid for by the HOA breakdown.  However, the other side of this is the fact that Kelsey/Nick were given false disclosure about the issues in their place.  So they have to pay up front for an issue that they have to try to recoup through legal means which is a mess and can tie things up.  They offered the 20% as a means to get things moving, I see that as a compromise and we all chip in to get this moving.  Legally, it's probably not the right way to do things but personally would like to get moving on this ASAP and I trust that I will see that money back.  So it's definitely tricky.  Let us know where you end up landing and we can discuss.

I spoke with Al and he described the following:

-They will start with the front window, remove bricks, cut out drywall. Then they will have an understanding of what the system is at that location. We will take that info and determine whether we have what we need or need to move on to back door location. We can stop at that point and make the bigger decision, or move on to 2nd exploratory location. The quote is for time/materials as they move forward. **If they don't use up the fee, they will give us it back.  We are only paying the $2500 deposit up front also.**

I asked about efficiency with scaffold setup and he explained the following:
-They can do the exploratory work at any temperature and think they can get possibly out next week or definitely the week after.
-Any application of sealant or Modac requires higher temperatures and we can't rely on that for at least a month.
-So we can get an answer sooner if we move forward now, we may lose a bit of efficiency with scaffold setup, but thats something I'm comfortable with.  I'd like the answer sooner than later.



**From:** Ryan Brown <brown14702000@yahoo.com>
**Sent:** Sunday, March 11, 2018 9:03 PM

9/28/2018

EXHIBIT L

FILED DATE: 6/20/2019 12:11 PM   2019CH07429



# Investigative Report – Structural Issues

## 2726 W. Cortez Street Water Intrusion
ESi Project No: 60191A
Client File No: A00000529765

EXHIBIT M



2726 W. Cortez Street Water Intrusion
ESI Project No: 60191A

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

# Introduction

Engineering Systems Inc. (ESi) was retained by Erie Insurance Group in regard to an issue with water infiltration occurring in a multi-family residential structure. The structure, managed by the 2726 W. Cortez Street Condo Association, was located at 2726 W. Cortez Street in Chicago, Illinois. ESi was retained to determine the cause of water infiltration occurring in Unit 3, which was owned by John Gorr.

# Site Inspection

ESi made a site inspection to the structure on October 19, 2017. The subject structure was a three-story condominium with a masonry exterior and a flat roof. Figure 1 provides a satellite view of the structure taken from Google Maps. Figure 2 provides an elevation view of the front of the structure taken at the time of the site inspection. It is estimated that the structure was constructed between 10 and 15 years ago.




Figure 1



Figure 2

The owner of Unit 3 (Mr. Gorr) was present during the site inspection and provided the following background information:

- He has owned the unit for approximately five years.
- He also stated that the water infiltration began approximately 6 months after he purchased the unit.
- The extent of water infiltration is based on the magnitude of the rain and the amount of wind forces that occurs on that date



2726 W. Cortez Street Water Intrusion
ESI Project No: 60191A

## Discussion & Conclusion

ESi was retained to determine the cause of water infiltration occurring in Unit 3 of a structure located at 2726 W. Cortez Street in Chicago, Illinois. The following is a summary of ESi's opinions regarding this matter:

- Water infiltration is occurring at various locations of the structure, but particularly at window and door openings.
- The water infiltration is occurring because of deficiencies in the original construction of the building with the predominate issue being improper flashing at wall openings.
- There are no indications of physical damages to the exterior of the building that would cause water intrusion to occur in the areas observed.
- There is no indication that any single weather event has compromised the integrity of the exterior building that would cause water intrusion to occur.
- This condition was not of recent origin and has been present since the building was constructed.
- ESi recommends that the owner retain a masonry contractor to make exploratory openings in the masonry where the water infiltration is occurring and install proper flashing. All cracks in the masonry and other deficiencies should be addressed at that time.
- The flashing detail shall be installed in a manner that allows for any infiltration water to flow out of the building and shall also contain proper end dams.
- Mr. Gorr requested contact information for a masonry contractor that specializes in this type of work. This information is provided below:

    Bral Restoration (Al Christoffer)
    2356 Hassell Rd., Suite G
    Hoffman Estates, IL 60169
    Phone: 847-839-1100

- Mr. Gorr also requested contact information for a concrete contractor that can provide services for the repair of the concrete steps at the front of the building. This information is provided below:

    Sitar Construction (Mark Sitar)
    199 Poplar Place, Suite 1
    North Aurora, IL 60542
    Phone 630-444-3559

### <<<  End of Report Text  >>>

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

EXHIBIT N

 ESI

Photographs 2 of 18



Date: Oct 19, 2017



ESI Project #60191A

FILED DATE: 5/20/2019 12:11 PM   2019CH07429

FILED DATE: 6/20/2019 2:11 PM 2019CH07429

*ESI Project #60191A*

*Date: Oct 19, 2017*



*Photographs 4 of 18*



*ESI Project #60191A*

*Date: Oct 19, 2017*





*Photographs 6 of 18*



*ESI Project #60191A*

*Date: Oct 19, 2017*



*Photographs 8 of 18*



FILED DATE: 6/20/2019 12:11 PM    2019CH07429

*ESI Project #60191A*                                                                 *Date:  Oct 19, 2017*



*Photographs 10 of 18*



ESI Project #60191A

Date: Oct 19, 2017



Photographs 12 of 18

ESI

FILED DATE: 6/20/2019 12:11 PM _2019CH07429

*ESI Project #G0191A*

*Date: Oct 19, 2017*



*Photographs 14 of 18*



FILED DATE: 6/20/2019 12:11 PM 2019CH07429

*ESI Project #60191A*

*Date: Oct 19, 2017*





*Photographs 16 of 18*



 

*ESI Project #60191A*

Date: Oct 19, 2017

FILED DATE: 6/20/2019 12:11 PM  2019CH07429





2726

*Photographs 18 of 18*





FILED DATE: 6/20/2019 12:11 PM    2019CH07429

Jacqueline Tirpak, CPCU, AIC, AIS, CIC, API
Vice President & Claims Manager

—Branch Office • 2409 North Main Street • Suite 200 • P.O. Box 2410 • East Peoria, IL 61611-0410
309.698.1825 • Toll Free 1.888.335.3743 • Fax 888.339.3743 • erieinsurance.com

November 30, 2017

2726 West Cortez Condominium Association
2726 West Cortez Street, Unit 2
Chicago, IL 60622-3419

Re:   **ERIE Claim**      #A00000529765
      **ERIE Insured:**   2726 West Cortez
                          Condominium Association
      Date of Loss:       10/9/17

Dear 2726 West Cortez Condominium Association:

We have completed our investigation into the claim you have submitted for water damage to the building which was discovered on October 9, 2017 to the property located at 2726 West Cortez Street, Chicago, Illinois 60622.

Your Commercial coverage is provided under the Ultrapack Plus Commercial Property Coverage Policy bearing Policy #Q97-0203667 with a policy period of July 20, 2017 to July 20, 2018.

As you are aware, we contacted Engineering Systems, Inc. to inspect the building and determine the cause of the damage. A copy of the structural engineer's report is included with this letter. A site inspection was completed on October 19, 2017. The structural engineer determined that the water infiltration is occurring because of deficiencies in the original construction of the building with the predominant issue being improper flashing at wall openings. There are no indications of physical damages to the exterior of the building that would cause water intrusion to occur at the area observed. There is no indication that any single weather event has compromised the integrity of the exterior building that would cause water intrusion to occur. This condition was not of recent origin and has been present since the building was constructed.

Your Commercial Policy contains the following provision:

ULTRAPACK PLUS
PK-00-01 (Ed. 2/17)

### ULTRAPACK PLUS COMMERCIAL PROPERTY COVERAGE PART

### SECTION II - PERILS INSURED AGAINST

### BUILDING(S) - COVERAGE 1

### BUSINESS PERSONAL PROPERTY AND PERSONAL PROPERTY OF OTHERS - COVERAGE 2

### INCOME PROTECTION - COVERAGE 3

Covered Cause of Loss

361783_1.docx

EXHIBIT O

The ERIE Is Above All in sERVICE® • Since 1925



Jacqueline Tirpak, CPCU, AIC, AIS, CIC, API
Vice President & Claims Manager

Branch Office • 2409 North Main Street • Suite 200 • P.O. Box 2410 • East Peoria, IL 61611-0410
309.698.1825 • Toll Free 1.888.335.3743 • Fax 888.339.3743 • erieinsurance.com

This policy insures against direct physical "loss", except "loss" as excluded or limited in this policy.

## SECTION III - EXCLUSIONS

### A. Coverages 1, 2, and 3

We do not cover under Building(s) - Coverage 1; Business Personal Property and Personal Property of Others - Coverage 2; and Income Protection - Coverage 3 "loss" or damage caused directly or indirectly by any of the following. Such "loss" or damage is excluded regardless of any cause or event that contributes concurrently or in any sequence to the "loss":

1. Deterioration or depreciation.

3. "Loss" or damage caused by or resulting from any of the following:

   a. By weather conditions, but only if weather conditions contribute in any way with a peril excluded in Part A. of Section III - Exclusions to produce the "loss";

   b. By acts or decisions, including the failure to act or decide, of anyone;

   c. By faulty, inadequate, or defective:

      1) Planning, zoning, development, surveying;

      2) Design, specifications, workmanship, repair, construction, renovating, remodeling, grading, or compaction;

      3) Materials used in repair, construction, renovation, remodeling; or

      4) Maintenance;

   of property whether on or off the insured premises by anyone, but if "loss" by a peril insured against results, we will pay for the ensuing "loss".

6. Water

   a. Flood, surface water, waves (including tidal water and tsunami), tides, tidal wave, or overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

   b. Mudslide or mudflow;

   c. By water or sewage which backs up through sewers or drains or which enters into and overflows or is otherwise discharged from a sewer, drain, sump pump, sump pump well, or any other system designed to remove subsurface water which is drained from the foundation area;

361783_1.docx

FILED DATE: 6/20/2019 12:11 PM   2019CH07429



Jacqueline Tirpak, CPCU, AIC, AIS, CIC, API
Vice President & Claims Manager

Branch Office • 2409 North Main Street • Suite 200 • P.O. Box 2410 • East Peoria, IL 61611-0410
309.698.1825 • Toll Free 1.888.335.3743 • Fax 888.339.3743 • erieinsurance.com

FILED DATE: 6/20/2019 12:11 PM    2019CH07429

    d.  Water under the ground surface pressing on, flowing, or seeping through:

        1)  Foundations, walls, floors, or paved surfaces;

        2)  Sidewalks or driveways;

        3)  Basements, whether paved or not; or

        4)  Doors, windows, or other openings.

    e.  Water from a broken water main. However, this exclusion does not apply to water flowing or seeping from a broken water main where the break occurs on the premises described in the "Declarations".

    f.  Waterborne material carried or otherwise moved by any of the water referred to in Paragraphs 6.a., 6.c., 6.d., or 6.e. or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs 6.a. through 6.f., is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam levee, seawall, or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if Water, as described in 6.a. through 6.f. results in fire, explosion, sprinkler leakage, volcanic action, or building glass breakage, we will pay for the "loss" or damage caused by such perils.

If covered electrical equipment requires drying out as a result of a flood, we will pay for the direct expenses of such drying out.

This exclusion does not apply to property being transported.

**B. Coverages 1, 2, and 3**

We do not cover under Building(s) - Coverage 1, Business Personal Property and Personal Property of Others - Coverage 2, and Income Protection - Coverage 3 "loss" or damage caused:

1.  By:

    a.  Wear and tear, rust, or corrosion;

    b.  Change in flavor, color, texture, or finish;

    c.  Damp or dry air;

361783_1.docx



Jacqueline Tirpak, CPCU, AIC, AIS, CIC, API
Vice President & Claims Manager

Branch Office • 2409 North Main Street • Suite 200 • P.O. Box 2410 • East Peoria, IL 61611-0410
309.698.1825 • Toll Free 1.888.335.3743 • Fax 888.339.3743 • erieinsurance.com

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

    d.  Inherent vice;

    e.  Smog;

    f.  Latent or hidden defect;

    g.  Marring or scratching;

    h.  Smoke, vapor, or gases from agricultural or industrial operations;

    i.  Settling, cracking, shrinking, bulging or expansion of pavements, foundations, walls, floors, roofs, or ceilings; or

    j.  Termites, vermin, insects, rodents, birds, skunks, raccoons, spiders, or reptiles;

    unless a covered "loss" ensues, and then only for ensuing "loss".

5.  By continuous or repeated seepage or leakage of water or the presence or condensation of humidity, moisture, or vapor, that occurs over a period of 14 days or more.

8.  To the interior of the building or the contents by rain, snow, sand, or dust, whether driven by wind or not, unless the exterior of the building first sustains damage to its roof or walls by a peril insured against. We will pay for "loss" caused by or resulting from the thawing of snow, sleet, or ice on the building.

PK-RA (Ed. 6/10)

## ILLINOIS AMENDATORY ENDORSEMENT

**B.  Suits Against Us of Section X – Commercial Property Conditions is replaced by the following:**

**Suits Against Us**

We may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within two years after the "loss" occurs.

However, this two year period is extended by the number of days between the date proof of loss is submitted and the date the claim is denied in whole or in part.

After considering the details of your loss, the report from Engineering Systems, Inc., and the language of your policy, Erie Insurance has determined that your claim must respectfully be denied. If you believe that our determination of your claim is incorrect, please provide any new information to us and we will assure you that it will be investigated and that if appropriate, we will reconsider our denial of your claim.

Erie Insurance specifically reserves the right to assert such other grounds for disclaiming coverage under the policy that may be discovered during the course of Erie Insurance's investigation of the facts underlying the claim

361783_1.docx

FILED DATE: 6/20/2019 12:11 PM   2019CH07429



Jacqueline Tirpak, CPCU, AIC, AIS, CIC, API
Vice President & Claims Manager

Branch Office • 2409 North Main Street • Suite 200 • P.O. Box 2410 • East Peoria, IL 61611-0410
309.698.1825 • Toll Free 1.888.335.3743 • Fax 888.339.3743 • erieinsurance.com

or any claim arising therefrom or which may be discovered during the course of the investigation. Erie Insurance also reserves the right to seek judicial resolution of the coverage issues by way of declaratory or other legal proceedings either during the pendency of or upon conclusion of the claim.

Nothing in this letter is intended to waive or alter any of the terms, conditions or defenses under the policy of insurance in question, all of which are expressly reserved and reaffirmed.

**Part 919 of the Rules of the Illinois Department of Insurance requires that our company advise you that, if you wish to take this matter up with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at 122 S. Michigan Ave., 19th Floor, Chicago, Illinois 60603 and in Springfield at 320 West Washington Street, Springfield, Illinois 62767.**

In the event that you have any questions concerning this letter, please contact me at (708) 465-0235.

Sincerely,

Michael Ehlers
Property Adjuster
Illinois Claims Office

ME:caw

Enclosure:
 Report from Engineering Systems, Inc.

By certified mail – return receipt requested

cc:  2726 West Cortez Condominium Association (By regular mail)
cc:  Agent

361783_1.docx

The ERIE is Above All in SERVICE® • Since 1925

FILED DATE: 6/20/2019 12:11 PM 2019CH07429

# BRAL RESTORATION, LLC

## BUILDING RESTORATION SPECIALISTS • CONSULTATION
## BUDGET PREPARATION • TECHNICAL SERVICES

March 6, 2018

Mr. John Gorr
2726 West Cortez Condominium Association
Unit 3
Chicago, IL 60622
Phone: 773-742-0596
Email: jgorr1@msn.com

**Job Address:** **2726 West Cortez**
**Chicago, IL 60622**

**Location of work:** Exterior/Interior Inspection

Bral Restoration, LLC agrees to furnish all labor, supervision, materials and equipment; to carry Workman's Compensation, Public Liability and Property Damage Insurance; and to use every reasonable caution to protect the public and any adjacent property during the performance of the following work:

**Scope of Work:** Masonry Inspection at Façade & Interior Units

**Item # 1:** Provide the necessary labor, equipment, materials & permits necessary
for the leak investigation, troubleshooting and required repairs to address the
façade water leaks at the specified unit as follows:

The work will be completed on a time and material basis as follows at these two locations:

We will provide inspection of masonry at the farthest South window on the West elevation top floor & the top floor door opening at the North elevation. Time and material costs not to exceed $4,000. Owner written approval required to exceed $4,000 if needed for further inspection or testing.

Labor will be invoiced at the following rates per hour.         $95.00 per man hour.

Materials will be invoiced at the following rate.         Cost plus 15%

EXHIBIT P

FILED DATE: 6/20/2019 12:11 PM 2019CH07429

We will return to the project after all monies owed for work completed to date are paid. This includes any additional cost to demobilize or remobilize the project, any additional permit or rental fees due to ceasing work, attorney's fees, and court costs. All invoices not paid when due shall bear interest at the rate of 2% per month and all costs of collections, including actual attorney's fee, which shall be paid by Owner/Owner's representative. We are not bound by the Davis-Bacon Act or any trade union regulations. All agreements contingent upon strikes, accidents or delays are beyond our control.

If this proposal meets with your approval, please sign and return the original.

I, _____, the condominium board president hereby provide authorization to complete all of the work as specified in this contract.

AGREED TO BY: _____     3/21/18
                    (Sign name)                (Date)

                BHW CORR              PRESIDENT HOA
                (Print name)               (Title)

I, Al Christoffer, General Manager agree to complete all the work as specified in this contract.

AGREED TO BY: _____     _____
                    (Sign name)                (Date)

                Al Christoffer          General Manager
                (Print name)               (Title)

NOTE: This proposal may be withdrawn if not accepted within 30 days. This proposal shall remain confidential between the owner/owner's representative and Bral Restoration, LLC

ACTHA
MEMBER



WWW.BRALRESTORATION.COM

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

# BRAL RESTORATION, LLC

### BUILDING RESTORATION SPECIALISTS • CONSULTATION
### BUDGET PREPARATION • TECHNICAL SERVICES

March 6, 2018

Mr. John Gorr
2726 West Cortez Condominium Association
Unit 3
Chicago, IL 60622
Phone: 773-742-0596
Email: jgorr1@msn.com

**Job Address: 2726 West Cortez**
**Chicago, IL 60622**

**Location of work:** Exterior/Interior Inspection

Bral Restoration, LLC agrees to furnish all labor, supervision, materials and equipment; to carry Workman's Compensation, Public Liability and Property Damage Insurance; and to use every reasonable caution to protect the public and any adjacent property during the performance of the following work:

**Scope of Work:** Masonry Inspection at Façade & Interior Units

**Item # 1:** Provide the necessary labor, equipment, materials & permits necessary for the leak investigation, troubleshooting and required repairs to address the façade water leaks at the specified unit as follows:

The work will be completed on a time and material basis as follows at these two locations:

We will provide inspection of masonry at the farthest South window on the West elevation top floor & the top floor door opening at the North elevation. Time and material costs not to exceed $4,000. Owner written approval required to exceed $4,000 if needed for further inspection or testing.

Labor will be invoiced at the following rates per hour.        $95.00 per man hour.

Materials will be invoiced at the following rate.        Cost plus 15%

FILED DATE: 6/20/2019 12:11 PM 2019CH07429

We will return to the project after all monies owed for work completed to date are paid. This includes any additional cost to demobilize or remobilize the project, any additional permit or rental fees due to ceasing work, attorney's fees, and court costs. All invoices not paid when due shall bear interest at the rate of 2% per month and all costs of collections, including actual attorney's fee, which shall be paid by Owner/Owner's representative. We are not bound by the Davis-Bacon Act or any trade union regulations. All agreements contingent upon strikes, accidents or delays are beyond our control.

If this proposal meets with your approval, please sign and return the original.

I, _____ _____, the condominium board president hereby provide authorization to complete all of the work as specified in this contract.

AGREED TO BY: _____          3/24/18_____
                    (Sign name)                        (Date)

              BHW GORR_____          PRESIDENT HOA____
                  (Print name)                       (Title)

I, Al Christoffer, General Manager agree to complete all the work as specified in this contract.

AGREED TO BY: _____          _____
                    (Sign name)                        (Date)

              Al Christoffer_____          General Manager___
                  (Print name)                       (Title)

NOTE: This proposal may be withdrawn if not accepted within 30 days. This proposal shall remain confidential between the owner/owner's representative and Bral Restoration, LLC

ACTHA

MEMBER

FILED DATE: 6/20/2019 12:11 PM 2019CH07429

# Mr. John Gorr

### Areas of Leak Inspection.



**BRAL**
RESTORATION, LLC

**2726 W. Cortez**
**Chicago, Illinois 60622**

Page 2

FILED DATE: 6/20/2019 12:11 PM  2019CH07429

# Mr. John Gorr

**Areas of Leak Inspection.**



**BRAL**
RESTORATION LLC

**2726 W. Cortez**
**Chicago, Illinois 60622**

Page 4

FILED DATE: 6/20/2019 12:11 PM  2019CH07429

# BRAL RESTORATION, LLC

## BUILDING RESTORATION SPECIALISTS • CONSULTATION
## BUDGET PREPARATION • TECHNICAL SERVICES

May 3, 2018

Mr. John Gorr
2726 West Cortez Condominium Association
Unit 3
Chicago, IL 60622
Phone: 773-742-0596
Email: jgorr1@msn.com

Water Leak Investigation Results:
We arrived on site at approximately 8am on May 2, 2018. A 3-man crew provided protection to the surrounding areas inside the 3rd floor. We removed the drapery and drywall as needed to inspect the back side at interior of wall during the water leak investigation. We accessed the west wall with built up pipe scaffolding. We conducted the water leak test with standard water pressure from the building.

We completed similar protection and opening above the North door of 3rd floor.

At both locations we were able to produce water leakage within 10 minutes of spraying water. We complete the test 2 x's with same results.

The removal of drywall allowed BRAL to confirm there is not a cavity wall system to be repaired and or reviewed. The existing flashing was through wall that allowed water to penetrate right into the back of block.

It was decided to not continue with reviewing any further window or door openings besides these two. It was explained that installing a cavity wall system over just the masonry openings and allowing a proper through wall flashing system to be installed would not prevent water from penetrating at locations in between the openings.

A previous proposal including as needed repointing and application of 2 coats of Modac was modified to include the application of 1 coat of Chem-Trete as an alternative.

The photo documentation, revised proposal, time & material sheet and credit invoice is herein included.

Please call with any questions. Thank you.

Regards,

*Al Christoffer*

Al Christoffer
Bral Restoration, LLC
847-456-5172

EXHIBIT Q



# BRAL
RESTORATION, LLC

2356 Hassell Rd., Suite G
Hoffman Estates, IL 60169
847-839-1100  Fax: 847-839-1101
www.bralrestoration.com

## TIME & MATERIAL WORKSHEET

| Contact: | Mr. John Gorr | | |
|---|---|---|---|
| Address | 2726 W. Cortez | | JOB: B1814 |
| Customer: | Mr. J. Gorr | | |
| Contact: | | | Description:  Leak Investigation |
| Rates: | Labor =$95.00 per man hour | | |

### INVOICE SUMMARY

| | | |
|---|---|---|
| Labor | | $1,615.00 |
| Materials | | $60.00 |
| Materials Markup | 15% | $9.00 |
| Equipment | | $75.00 |
| Equipment Markup | 15% | $11.25 |
| Delivery Truck | Hours 0 | $0.00 |
| Supplies & Misc | 0 | |
| **PAY THIS AMOUNT:** | **Total Amount Due** | **$1,770.25** |

| Position | LABOR: Week Summary | | Rate | Man Hours | Total | Materials | | | Equipment | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Company Name | Materials | Cost | Company Name | Equipment | Total |
| PM | AL Christoffer | | $100.00 | 2 | N/C | | | | | | |
| Mechanic | Peter | | $95.00 | 4 | $380.00 | | | | | | |
| Mechanic | Jarek | | $95.00 | 6.5 | $617.50 | | | | | | |
| Mechanic | Robert | | $95.00 | 6.5 | $617.50 | | | | | | |
| Mechanic | | | | 0 | $0.00 | | | | | | |
| Mechanic | | | | 0 | $0.00 | | | | | | |
| Mechanic | | | | 0 | $0.00 | | | | | | |
| Laborer | | | | | | | | | | | |
| Totals | | | | 19 | $1,615.00 | | | $0.00 | | | $0.00 |

| Date | | | | Describiton of Work | |
|---|---|---|---|---|---|
| 5/2/2018 | Al C. | 2 | | Leak Testing Inspection Time. | |
| " | Peter | 4 | | | |
| " | Jarek | 6.5 | | | |
| " | Robert | 6.5 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| Total Hours | 0 | 19 | 0 | 0 | 0 |

FILED DATE: 6/20/2019 12:11 PM    2019CH07429

- Provide two (2) coats of Modac coating utilizing a standard color.
- Complete all work per the manufacturers specifications (see attached).
- Take care to protect the surrounding windows, frames, doors, roofing and neighboring properties during the application of this work.

### COST OF WORK FOR ITEMS # 1 & 2        $49,821.00

**Option A:** Complete work as stated in Item #1 and apply Chem-Trete as specified in the attached specification sheet.

### COST OF WORK OPTION A:        $38,700.00

- The owner is to supply Bral Restoration, LLC with water, electric and clear access to the work area.

- All permits and expediting fees are in addition to this contract and shall be provided at our cost plus a 10% handling and management fee.

- The owner is responsible for any required interior protection, the removal of belongings from interior walls, balconies or any items that may interfere with the repair work.

- The owner is to provide the required access and permission to neighboring properties authorizing Bral Restoration to complete the necessary repairs and install any required equipment.

**TERMS:** We require a 50% deposit and this agreement approved with an authorized signature, prior to our scheduling or proceeding with this project. We will provide an invoice for work completed every 7 days. Invoices are due upon receipt. We will cease work without penalty if invoices are not paid as stated. We will return to the project after all monies owed for work completed to date are paid. This includes any additional cost to demobilize or remobilize the project, any additional permit or rental fees due to ceasing work, attorney's fees, and court costs. All invoices not paid when due shall bear interest at the rate of 2% per month and all costs of collections, including actual attorney's fee, which shall be paid by Owner/Owner's representative. We are not bound by the Davis-Bacon Act or any trade union regulations. All agreements contingent upon strikes, accidents or delays are beyond our control.

If this proposal meets with your approval, please sign and return the original.



WWW.BRALRESTORATION.COM

9/17/2018                                      Estimate 0001447 from Gralak Tuckpointing.Waterproofing and Masonry Sealing.

Gralak Tuckpointing.Waterproofing and Masonry
Sealing.
2502 N.Clark St
Chicago,IL.60614

email:gralak.construction@gmail.com
phone: 773.282.2332

Radoslaw Gralak - Licensed Mason Contractor
Certified by the City of Chicago
MC6354 GC23524
Established in 1991

John Gorr. Condominium Building Assocaition
2726 W. Cortez St., #3
Chicago, Illinois

773-742-0596

We would like to thank you for the opportunity to
provide a proposal for your Exterior Walls renovation
/waterproofing endeavor.

Our skilled tradesmen have over twenty years of
construction experience and they are long term
Gralak Team members.

They have been trained to pay special attention to
the precision ,quality and efficiency to your
Waterproofing/Renovation project to be completed
quickly ,safely and in full compliance with the City of
Chicago Building Codes requirements.

We will supply skilled labor ,effective equipment with
safe tools and best quality materials.



# ESTIMATE

| | |
|---|---|
| **Estimate #** | 0001447 |
| **Estimate Date** | 03/30/2018 |

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

| Item Description | Unit Price Quantity | Amount |
|---|---|---|

**SITE PREPARATION:**

*Owners of the house or the building ("Owners" : the customers/clients of the Gralak
Construction Co.) are responsible for removal and storage of personal property and
vehicles from in and around construction areas including access to constructions site,
and construction material storage areas.

*Gralak Team needs an access to the electrical and water outlets.

*Gralak Team needs the convenient setup space for trucks ,equipment and material.

*Gralak Team agrees to maintain a clean job site with appropriate waste containers and
daily clean up ,and remove all debris and leave the premises in broom clean conditions.

*All roof and ground areas around the work site will be protected with canvas tarps prior
to the start of work.

*Owners are responsible for posting notes to the tenants and associates of upcoming
work.

*Owners are responsible for notify their neighbors about upcoming project and to have
their permissions to use neighbor's property if necessary to complete the project.

• Owner is responsible for the disconnection any utility installations of gas, air
conditioning, water and electrical power lines which might cause risk of body injuries and
property and equipment of Gralak Construction Co. team members and the owners.

EXHIBIT R

9/17/2018                          Estimate 0001447 from Gralak Tuckpointing.Waterproofing and Masonry Sealing.

\*The tenants have to keep windows closed under construction.

\*Documentation and Expediting ;any additional requirements by the City of Chicago as :building permits, scaffold permits, canopy installation and canopy permits ,architecture drawings, attorneys fees ,expeditor's fees are not included in this estimate and will be cover as additional charge.

1. Regular price:$10,975.00                                    9975.00       1.00      9,975.00

Recommended System:

The two coats ("Wet on wet" application. Second coat must be applied within 2 hours of the first coat) of the BASF MasterProtect H 185 ( formely Enviroseal BASF PBT ) water repellent on the 3 CMU masonry walls (two side walls and the rear wall).
VOC (Volatile Organic Compound) BASF PBT 118g/L.
Competitors: Chem-Trete 375g/L , Loxon 350g/L.

ENVIROSEAL BASF PBT complies with the standards for residential concrete masonry walls: ASTM C140,ASTM E514.

A patented, high-performance, water-based repellent specifically formulated to provide protection for the most challenging CMU's (Concrete Masonry Units).

Duration time: 5 years .

Enviroseal PBT will not inhibit water penetration through unsound or cracked surfaces or surfaces with defective flashing, caulking ,or structural waterproofing defects and the warranties will not be guarantee at the parts of the walls affected by any faulty construction or deteriorated mortar.

Warranty will not apply to moisture penetration or damages caused by structural defects, cracks or expansion or contraction of all concrete/cement and mortar products, MISSING or Improperly Installed top and bottom WINDOW and DOOR flashing systems ,MISSING or Improperly Installed THRU –WALL flashing systems ,MISSING or Improperly Installed top of the PARAPET WALLS flashing systems ,or any SURFACE HAIR LINES MASONRY CRACKS, voids, slits or openings, faulty construction, severely deteriorated stones and severely abraded bricks or other causes which Gralak Construction Company has no control.

The most common cause of premature Enviroseal PBT failure on masonry walls is moisture.
Failure is normally due to elevated moisture levels which soften the exterior coatings.

Advantages of PBT:
\*Environmentally responsible (breathable).
\*Highest degree of water repellency for CMU's
\*Prevents moisture intrusion (high resistance to wind –driven rains)
\*Superior porous block treatment
\*No change in treated surface appearance (colorless) and will not alter texture
\*Deep penetration into substrate
\*Mildew/fungus resistance
\*Freeze-Thaw protection
\*Resistance to UV deterioration
\*Protection from Acid Rains and waterborne chemicals.
Enviroseal PBT for CMU's will not inhibit water penetration through unsound or cracked surfaces with defective flashing, caulking, or structural waterproofing.

CMU-Concrete Masonry Unit. Commonly known as the cinder block, split block.

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

9/17/2018                              Estimate 0001447 from Gralak Tuckpointing.Waterproofing and Masonry Sealing.

"The greenest and the safest water repellent on the market"

Coating specification:

*see attachments

*Time of completion : weather permitting

*Application conditions :Temperature :45 F minimum 90 F maximum
*Humidity :85% maximum

*Application method :Low pressure electrical pump sprayer or brush and roller
,accordingly to the surface and recommendation by coating manufacturer.
NOTE: Due to the extremely porous nature of the existing Split Face Blocks (CMU)
GRALAK CONSTRUCTION CO. makes no guarantee (written or implied) as to the
effectiveness chemical sealing against continuing water infiltration.

GRALAK CONSTRUCTION CO. will provide all necessary reasonable protection for the
containment of over-spray.

| | | | |
|---|---|---|---|
| 2. Application/ Installation/ installment/ positioning/ Only with the sealing of the Concrete Masonry Units | 350.00 | 1.00 | 350.00 |

-Application of a new caulking/sealant on the large masonry cracks (size-larger than
1/16 inch)
-Application of a new caulking/sealant on gaps and missing/loosed mortar
-Application of a new caulking/sealant on vents
-Application of a new caulking/sealant on utility pipes

Install new caulking sealant (VULKEM 116 or NP1 BASF) to 100% of the doors ,windows,
scones at the sealing parts of the building elevations as necessary.

Procedure as follows:
*remove any old caulking as necessary
*clean all joints of any remaining debris
*install new closed cell backer rod as necessary
*prime the joints as necessary

NOTE: Caulking application over hair line cracks mortar joints is not effective repair.
The only appropriate repair is to grind out and tuck pointing the deficient joints.
See: "Masonry Rehabilitation".

Out of scope for the project:
-Tuck-pointing on the hair line cracks.
Please see "Our Recommendations" section for additional masonry/waterproofing work
that might be needed for your building.

9/17/2018                                    Estimate 0001447 from Gralak Tuckpointing.Waterproofing and Masonry Sealing.

FILED DATE: 6/20/2019 12:11 PM  2019CH07429

| | | | |
|---|---|---|---|
| 3. Installation at the inner parapet wall counter flashing to protect termination bar. | 2250.00 | 1.00 | 2,250.00 |
| 4. Installation elastomeric flashing system underneath 3 sides of the parapet wall coping stones with stainless steel drip edges. The front wall is excluded. | 8500.00 | 1.00 | 8,500.00 |
| 5. Masonry Rehabilitation. | 11.50 | 1500.00 | 17,250.00 |

Tuck pointing of 3 sides of the parapet wall,inner wall 4 blocks down, outside 10 down from the top of the wall.

Total areas not exceed 1500 SQ FT

A. Rake out (grinding-out ) and re-tuck pointing joints to the following extent:
a) joints where mortar is missing or where they contain cracks or holes
b)joints where they are deteriorated to point that mortar can be easily removed by hand without tools
c) joints where they have been filled substances other than mortar

B. Brush ,vacuum ,or flush joints to remove dirt and loosed mortar.

C. Pointing with mortar color matching to existing .

NOTE :"Matching new mortar with old mortar".

Even with the best efforts at matching the existing mortar color, texture and materials, there will usually be a visible difference between old and new work.
This is generally because the new mortar has not weathered.
A slight color difference is acceptable.

6. Replacement one broken piece of the glass block at the 3rd floor west wall window opening. Free of charge with Estimate#001447

7.OUR RECOMMENDATIONS. –NOT INCLUDED IN THIS QUOTE

The services listed and priced in the quote are confined and agreed upon at the initiation of the project. Additional masonry/ waterproofing work might be required to guarantee the warranties of water repellent application and duration time.
Please find additional recommendations for your masonry /waterproofing project below.

Our recommendations include:

A. Masonry Rehabilitation: Complete tuck-pointing work that includes grinding-out and tuck-pointing all deteriorated joints and hairline cracks of the entire wall or partial sections of the wall.

B. Installing the flashing systems (top and bottom) at the top lintel beam areas of windows and door openings, bottom windows and doors stone sills and underneath the parapet walls coping stones.

C. Installing a new thru –wall flashing system at all building floor levels.

D. Applying a new caulking on all windows, doors and metal frames.

E. Grounding out and replacing the existing cement mortar joints with the appropriate backer rod and ASTM approved caulking. This includes all dissimilar elements on the exterior walls of the home/building such as: brick-to-stone, brick-to-concrete block, concrete block-to-glass block, etc. This should be joined by sealing against moisture through the use of a backer rod and urethane caulk, or equivalent material.

F. Installation a new counter flashing systems at the parapet wall.

Additional tuck pointing work–not included in this quote –may be necessary to complete in the sections of the walls not reachable during the time of our inspection, especially at the higher elevations.
As requested by the Homeowners a new quote for deteriorated sections of the walls will be prepared by GRALAK CONSTRUCTION CO.

All additional recommendations are not included in this quote.

======================================================
All work is guaranteed to be as specified. All work to be completed in a workmanlike manner according to standard practices.

All prices subject to change when the listed services will be done in different configurations and times of the season.

ONE Year Labor Warranty.
No Warranty on concrete and masonry cracks Repair.

FIVE Years Materials Warranty, excluding cement/concrete/mortar products.

GRALAK CONSTRUCTION CO. guarantees the highest quality workmanship.

GRALAK CONSTRUCTION CO. only certifies that materials will meet manufacturer's specifications. GRALAK CONSTRUCTION CO. disclaims any implied warranty of fitness for any particular purpose. Repair work is never warranted.
Warranty will not apply to moisture penetration or damages caused by structural defects, cracks or expansion or contraction of all concrete/cement products, MISSING top and bottom WINDOW and DOOR flashing systems ,MISSING THRU –WALL flashing systems ,MISSING or faulty installed top of the PARAPET WALLS flashing systems ,or any other surface cracks, voids, slits or openings, faulty construction, severely deteriorated stones and severely abraded bricks or other causes which Gralak Construction Company has no control.

GRALAK CONSTRUCTION CO. due to climate is not responsible for cracking, peeling or pitting and /or discoloration or scaling of concrete or mortar and damages appeared on the surface after excessive usage the salts during the Winter period.
Gralak Construction Company is not responsible for water leak problems, which are generated after pouring concrete surfaces; for
flooding /leaking due to poorly maintained or damaged drain pipes, downspouts, gutters, any flashings, catch basins, and damaged or leaking roofs, chimneys, etc.

Locating leaks in the entire wall system is a major task and is not included in the quote.

Gralak Construction Company does not locate all leaks in the entire masonry wall system during waterproofing project and does not provide any of four BASIC methods (tests) of measuring water penetration in masonry: the ASTM E514 test, the permeability test and the low pressure tube test (RILEM test) or a Patch test to assess coating compatibility.

In the event where moisture has entered into the building prior to Gralak Construction Co. installation or repair of the masonry walls and the roofing and may result in mold growth. GCC disclaim any and all responsibility for damages to persons or property arising from or relating to the presence of mold in the building. By executing the

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

9/17/2018                     Estimate 0001447 from Gralak Tuckpointing.Waterproofing and Masonry Sealing.

contract, Owner(s)1. releases Gralak Construction Co. from any and all claims Owner
and Owners' (a) family members,(b) employees,(c) tenants of (d)any other building
occupants that may have as a result of such mold growth and 2.agrees to defend
,indemnify and hold Gralak Construction Co. harmless from any and all penalties, actions
,liabilities ,costs ,expenses and damages arising from or relating to the presence of mold
on Owner's building.

Silane / Siloxane Water Repellents or Acrylic/Silicone/Elastomeric paints will not prevent
the water penetration through unsound or cracked surfaces (THE HAIR LINES CRACKS)
or structures with existing defective masonry walls, faulty and missing drainage
wall/window systems , missing thru-wall flashing, cap stones, metal ,clay flashing, etc.
Finish waterproofing paints and water repellents are not for use on walls with active
water leaks.

The sealers and paints will not inhibit water penetration through defective or missing
flashing ,caulking or structural waterproofing defects and all/any warranties (labor and
material) at the poorly established buildings will be voided.

Customer/Owner assumes all responsibility and liability for and releases
Contractor(GRALAK CONSTRUCTION CO.) from any liability for any damage to
improvements that are interfering with Contractor's performance.
Customer/Owner will provide access to the Contractor including a right of way for all
heavy equipment ,machinery and vehicles. Customer /Owner has a duty to disclose any
pre-existing conditions as to property including latent or unforeseen conditions that may
possibly be a safety hazard and injure Contractor or its employees.

Limitations of Contractor's liability: Contractor (GRALAK CONSTRUCTION CO.)disclaims
any and all liability except as specifically provided for in these Terms and Conditions.
Contractor's Limited Liability for any and all damages or claims for any cause or by any
person whatsoever, and regardless of the form of action, whether in contract, statute,
express or implied warranty or for negligence ,excepting only claims for injury to a
person ,SHALL be limited exclusively to Contractor's contract price and in no event
SHALL Contractor be liable for any greater amount .Contractor shall not ,in any event or
for any reason whatsoever be liable to Customer ,or any other party ,for any lost profits,
or expenses or any other special ,indirect ,secondary or consequential damages, loss or
expenses ,even if contractor has been of or should have known of the possibility of any
such loss, expense, or damage or for any claim against Customer by any other parties
based on the use of contractors materials.

All claims and disputes arising under or relating to this Estimate/Agreement are to be
settled by binding mandatory arbitration in the State of Illinois.
=================================================================

NOTES: PAYMENT TERMS: To SCHEDULE the START DAY of the job the 50 % DOWN –PAYMENT is required with the
SIGNED acceptance the quote.
Outstanding balance, including all extras necessary to complete the job, due on DATE of COMPLETION.

NOTE: The prices above do not include the municipalities (Cities or Villages ) permits fees , architectural and expediting
fees which will be charged at final invoice. GRALAK CONSTRUCTION CO. does not up-charge any fees necessary to
complete this project.

Our company is A+ Rated, Licensed Mason Contractors. Bonded and insured. BBB Member since 1997. Cost of the
permits, architecture drawings, attorney fees are not included but available for additional charge upon owner's request.
Money owed over 15 days, after work completion will cause an interest rate of 2% per month (24% APR). The quote
may be withdrawn by us if not accepted within 90 days. The 5% additional fee will be added with Visa ,MC and
Discovery cards transactions. The 3% is extra cost for using the Pal Pay account.

9/17/2018                          Estimate 0001447 from Gralak Tuckpointing.Waterproofing and Masonry Sealing.

Your assurance of quality is our established reputation.
We look forward to being of service to you!

| | Subtotal | 38,325.00 |
|---|---|---|
| | **Total** | 38,325.00 |
| | **Amount Paid** | 0.00 |
| | **Estimate** | $38,325.00 |

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

# ➤ *ARROW* ➤
## MASONRY AND EXTERIORS, INC.
515 S. Vermont • Palatine, IL 60067

| | CITY | 312-329-0750 |
| --- | --- | --- |
| → TUCKPOINTING | NORTH | 847-776-6400 |
| → MASONRY REPAIR | SOUTH | 630-629-4300 |
| → CHIMNEY REPAIR | FAX | 847-776-6403 |
| → PARAPET WALL REPAIR | | |

www.tuckpointing.com    arrow@tuckpointing.com

→ LINTEL REPLACEMENT
→ CHEMICAL CLEANING
→ WATERPROOFING
→ CAULKING

## CONTRACT

Kelsey Gonring
2726 W. Cortez
Chicago, IL

May 7, 2018
kelseygonring@gmail.com
920-901-2456

**SCOPE OF WORK: SPOT GRINDING, SPOT TUCKPOINTING, CAULKING, FLASHING INSTALLATION AND SEALING OF THE EAST (70' x 48'), WEST (70' x 48') AND NORTH (24' X 48') ELEVATIONS OF SPLIT FACE BLOCK**

1. All roof and ground areas around the worksite will be protected with canvas tarps prior to the start of work.
2. The north, east and west elevations of split face block will be visually inspected up close from swing stage scaffolding from the top of each wall to grade (the interior of all roof parapet walls included) and all open holes, voids, cracks or areas of loose, missing or defective mortar will be ground out to a ½" depth and spot tuckpointed (or primed, caulked and tooled if movement is suspected) in a color and joint profile to match the original as close as possible.
3. All light fixtures, wall outlets, wall piping, wall projections and roof flashing on all 3 elevations will be caulked with Dow Corning 795 in a color to match from the top of each wall to grade where necessary.
4. All window and door perimeter caulking will be inspected on all 3 elevations and all defective caulk will be removed and replaced with Dow Corning 795 or 799 dependent on usage from roof to grade where necessary.
5. A Pac-clad flashing will be installed above all 3 rear decks. The flashing will be a 24-gauge pre-finished aluminum Pac-clad 3" x 3" piece the complete length of each deck above the ledger boards caulked at both top and bottom for a complete watertight seal.
6. All Renaissance stone or limestone interface joints at the top of the parapet walls or above the window and door headers on the 3 elevations will be ground out, primed, caulked and tooled with Dow Corning 795 natural limestone caulk.
7. The north, east and west elevations of CMU block will be sealed from the top of each wall to grade (the interior of all parapet walls are included) using Pitt-Flex Elastomeric High Breathability waterproofing sealer (5-year guarantee on material and labor - see enclosed copy of guarantee).

**Total: $ 16,840.00**

Arrow will guarantee the walls against leaks after work is completed but any leaks attributed to the roof are not covered.

EXHIBIT S





# *ARROW*

## MASONRY AND EXTERIORS, INC.

### 515 S. Vermont • Palatine, IL 60067

| | | | |
|---|---|---|---|
| → TUCKPOINTING | CITY | 312-329-0750 | → LINTEL REPLACEMENT |
| → MASONRY REPAIR | NORTH | 847-776-6400 | → CHEMICAL CLEANING |
| → CHIMNEY REPAIR | SOUTH | 630-629-4300 | → WATERPROOFING |
| → PARAPET WALL REPAIR | FAX | 847-776-6403 | → CAULKING |

www.tuckpointing.com          arrow@tuckpointing.com

# CONTRACT

### Warranty/Guarantee

- Spot (selective) tuckpointing is guaranteed for 1 year only on mortar joints repaired by Arrow. Areas not tuckpointed are not guaranteed and are susceptible to future cracking.
- Solid (complete) tuckpointing is guaranteed for 3 years against cracking, chipping or popping unless there is still movement or settling of the masonry facade.
- Caulking is guaranteed for 3 years against peeling, delaminating or cracking.
- Brick replacement is guaranteed for 5 years only on actual bricks replaced by Arrow. Future spalling or defacing of brick not replaced by Arrow is not included.
- Lintel replacement is guaranteed for 5 years against bowing or corroding.
- Arrow does not guarantee leak prevention from the following sources: roof leaks, defective or improperly installed windows/doors, glass block condensation, foundation cracking, settling/movement cracks, steel lintel expansion/contraction, ice damming, faulty downspouts/gutters or any work performed by other tradesmen after Arrow's work was completed.
- Arrow is not liable for interior damage caused by water infiltration.
- Arrow guarantees are only transferable for the time period specified on the original contract.

### Terms/Conditions

The following terms and conditions (these "Terms") between Arrow Masonry and Exteriors, Inc. ("Arrow") and Arrow's customer identified in the Proposal to which these Terms are attached (Contracting Party) (Contracting Party is one of the following: "Property Owner" or "Management Company as Authorized Agent for Property Owner" or "General Contractor"), together with the Proposal, represent the agreement between the parties for construction and other contracted services to be performed at the location listed on the Proposal.

1. All material, labor, insurance, license, bonds will be furnished by Arrow unless otherwise agreed. Special orders / freight charges will be at the expense of the owner or owner's agent.

2. Contracting Party is responsible for securing permits. Upon request, Arrow will obtain all necessary permits but all associated permit fees are the responsibility of the owner or owner's agent.

3. Contracts are subject to revision or withdrawal by Arrow if not accepted within 60 days after the date on the proposal.

4. A deposit of 50% and/or bona fide purchase order is required with the acceptance of the contract and before any commencement of work.

5. Payment Amount: The amount due to Arrow from Contracting Party is the amount listed on the Proposal as the "Total Amount" plus the total sum of all change orders referenced in Paragraph 6, and any fees or Interest assessed pursuant to these Terms.

6. Payment Due Date: As agreed upon by the parties, Arrow may require periodic payments during the construction period. Payment in full must be received by Arrow no later than the 30th day after the work has been completed.

7. Late Payments: Any invoice amounts outstanding after the 30th day following the completion of the work will, result in a late payment fee of 1.5% of the outstanding balance, assessed monthly until paid in full. In addition to a late payment fee, Arrow reserves its right to pursue all available remedies, including filing and perfection of a lien as described in Paragraph 8.

8. LIEN NOTICE: AS REQUIRED BY THE ILLINOIS MECHANICS LIEN ACT, ARROW HEREBY NOTIFIES CONTRACTING PARTY AND PROPERTY OWNER THAT PERSONS OR COMPANIES PERFORMING, FURNISHING, OR PROCURING LABOR, SERVICES, MATERIALS, PLANS, OR SPECIFICATIONS FOR THE CONSTRUCTION ON PROPERTY OWNER'S LAND MAY HAVE LIEN RIGHTS ON PROPERTY OWNER'S LAND AND BUILDINGS IF NOT PAID. THOSE ENTITLED TO LIEN RIGHTS, IN ADDITION TO ARROW, ARE THOSE WHO CONTRACT DIRECTLY WITH THE CONTRACTING PARTY OR PROPERTY OWNER OR THOSE WHO GIVE THE CONTRACTING PARTY OR PROPERTY OWNER NOTICE WITHIN SIXTY (60) DAYS AFTER THEY FIRST PERFORM, FURNISH, OR PROCURE LABOR, SERVICES, MATERIALS, PLANS, OR SPECIFICATIONS FOR THE CONSTRUCTION. ACCORDINGLY, CONTRACTING PARTY OR PROPERTY OWNER PROBABLY WILL RECEIVE NOTICES FROM THOSE WHO PERFORM, FURNISH, OR PROCURE LABOR, SERVICES, MATERIALS, PLANS, OR SPECIFICATIONS FOR THE CONSTRUCTION, AND SHOULD GIVE A COPY OF EACH NOTICE RECEIVED TO CONTRACTING PARTY'S OR PROPERTY OWNER'S MORTGAGE LENDER, IF ANY. ARROW AGREES TO COOPERATE WITH THE OWNER AND THE OWNER'S LENDER, IF ANY, TO SEE THAT ALL POTENTIAL LIEN CLAIMANTS ARE DULY PAID.

FILED DATE: 6/20/2019 12:11 PM   2019CH07429



**➤ARROW➤**

**MASONRY AND EXTERIORS, INC.**

515 S. Vermont • Palatine, IL 60067

| | | |
|---|---|---|
| → TUCKPOINTING | CITY 312-329-0750 | → LINTEL REPLACEMENT |
| → MASONRY REPAIR | NORTH 847-776-6400 | → CHEMICAL CLEANING |
| → CHIMNEY REPAIR | SOUTH 630-629-4300 | → WATERPROOFING |
| → PARAPET WALL REPAIR | FAX 847-776-6403 | → CAULKING |

www.tuckpointing.com          arrow@tuckpointing.com

## CONTRACT

9. Work Performed: All work performed by Arrow is subject to the Proposal, which lists all of the work specifications, as well as all change orders (as of the date of the Proposal) contemplated in Paragraph 10.

10. Changes to Proposed Work: Any alterations or deviations from the work specifications included in the Proposal that result in additional costs shall be agreed to via written agreement between the parties. Any costs associated with the changes shall be paid by Contracting Party. All written change orders shall be considered a part of the original proposal.

11. Work Schedule: Work shall commence on a date agreed upon by both parties. Arrow shall perform the work during normal business hours. As the project progresses, the parties may agree to vary the work schedule and adjust the costs accordingly.

12. Work Completion: The completion date shall be date Contracting Party receives a final invoice from Arrow. Arrow shall provide such notice when the work specified in the Proposal has been completed, inclusive of all change orders contemplated in Paragraph 10, and Arrow has removed all of its materials from the project location.

13. Workmanlike Manner: Arrow shall complete all work in a workmanlike manner according to standard industry practices.

14. Agreement Applies to General Contractor: Where this agreement includes language making a section applicable to a general contractor, it is assumed that Arrow is acting as the subcontractor, was hired by, and will be paid by the general contractor. Where Arrow acts as the subcontractor, the guarantees in Paragraph 13 are assumed to be made to the general contractor and not to the property owner. In the event that the property owner pursues an action against Arrow based on those guarantees, general contractor agrees to indemnify and defend Arrow in such action. General Contractor guarantees that the property owner is aware of all responsibilities and liabilities listed in these terms and conditions.

15. Subcontractors: Arrow reserves the right to hire subcontractors at its discretion to fulfill the proposed work specifications and agrees to pay the subcontractors for their efforts at an agreed upon price.

16. Force Majeure: Arrow is not liable for the failure to complete the work specifications included in the Proposal when the failure is caused by acts of God, such as, but not limited to, fire, tornado, flooding, and other natural disasters, labor disputes, strikes, materials shortages, terrorist activities, or government action affecting construction.

17. Suspension at Work: Arrow may suspend work on account of weather or natural disasters, LATE PAYMENTS BY CONTRACTING PARTY, government action or other emergencies not anticipated by this agreement. Any additional charges that result from the suspension shall be paid for by Contracting Party.

18. Clean-up: Arrow shall dispose of materials used in construction, including hazardous materials, and will leave the worksite in a clean and orderly condition following completion of construction.

19. Arrow's Insurance and Hiring Practices: Arrow shall carry general liability insurance, employer's liability insurance, worker's compensation insurance, and automotive insurance. Arrow shall provide a certificate evidencing such policies upon request by Contracting Party. Arrow shall seek and retain qualified and skilled craftspeople to complete the proposed work and will not discriminate on the basis of race, color, sex, age, handicap, veteran's status, religious belief, or national origin when hiring its employees.

20. Information and Access: Contracting Party shall provide Arrow directly with all relevant information necessary to complete construction and shall do so in a timely manner. Contracting Party will be responsible for any resulting defects, damage, or additional costs caused by a failure to provide Arrow with such relevant information. Contracting Party shall provide Arrow and any subcontractors retained by Arrow with ready access to the work site.

21. Property Owner's Insurance: The property owner shall maintain general liability and property insurance, including waiver of subrogation, where applicable. The property owner shall provide a certificate evidencing such policies if requested by Arrow.

22. Termination: Arrow reserves the right to terminate this agreement, at its discretion, in the event that Contracting Party is late in procuring payment, or if Arrow has a reasonable belief that Contracting Party will not pay following the completion of the proposed work.

23. Governing Law and Dispute Resolution: This agreement is governed by the laws of the State of Illinois, irrespective of conflicts of laws principles. Any disputes or claims arising under the Proposal, these Terms, or any contract entered into thereunder shall be resolved by binding arbitration administered by a single arbitrator in accordance with the American Arbitration Association's Construction Industry Arbitration Rules in effect as of the date of submission of any such dispute or claim. All disputes or claims shall be aggregated and resolved in one arbitration proceeding. The arbitration proceeding shall take place in Lake County, IL

24. Attorney's Fees: Contracting Party shall be liable for Arrow's attorney's fees incurred in connection with enforcing these Terms and/or the Proposal, collecting payment, or defending or pursuing claims in which Arrow is found to be the prevailing party.

25. Waivers: Any exception made to any of the above Terms or any extension granted by Arrow to any of the deadlines described in these Terms shall not be considered as a waiver of that provision.



## ARROW

### MASONRY AND EXTERIORS, INC.

515 S. Vermont • Palatine, IL 60067

| | | |
|---|---|---|
| → TUCKPOINTING | CITY | 312-329-0750 |
| → MASONRY REPAIR | NORTH | 847-776-6400 |
| → CHIMNEY REPAIR | SOUTH | 630-629-4300 |
| → PARAPET WALL REPAIR | FAX | 847-776-6403 |

→ LINTEL REPLACEMENT
→ CHEMICAL CLEANING
→ WATERPROOFING
→ CAULKING

www.tuckpointing.com            arrow@tuckpointing.com

## CONTRACT

**26. Complete Agreement:** These Terms shall be read in conjunction with the accompanying Proposal, shall constitute the final and complete agreement of the parties, and shall supersede any conflicting terms contained in any other document, or expressed orally. Any amendments to the Proposal in the form of change orders shall be considered as part of the original agreement and also subject to these Terms.

**27. Execution of the Proposal:** By signing the Proposal, Contracting Party accepts both the Proposal and these Terms and consequently agrees to be bound by them. CONTRACTING PARTY MAY TERMINATE THIS AGREEMENT WITH ARROW BY PROVIDING WRITTEN NOTICE TO ARROW OF ITS ELECTION TO DO SO WITHIN THREE DAYS OF THE DATE OF THE PROPOSAL.

Total: ___$ 16,840.00___        Deposit: ___$ 8,420.00___        Balance: ___$ 8,420.00___

CONTRACTING PARTY:

By: _____

ARROW MASONRY and EXTERIORS, INC.:

Mike Galasinski

By: _____

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

FILED DATE: 6/20/2019 12:11 PM   2019CH07429

*Arrow Masonry & Exteriors, Inc.*

515 S. Vermont - Unit A
Palatine, IL 60067
847-776-6400

# Invoice

| DATE | INVOICE NO. |
|------|-------------|
| 6/4/2018 | 11326 |

**BILL TO**

Kelsey Gonring
2726 W. Cortez
Chicago, IL 60622

| TERMS | PROJECT |
|-------|---------|
| Upon receipt | |

| DESCRIPTION | AMOUNT |
|-------------|--------|
| SPOT GRINDING, SPOT TUCKPOINTING, CAULKING, FLASHING INSTALLATION AND SEALING OF THE EAST, WEST AND NORTH ELEVATIONS OF SPLIT FACE BLOCK | 16,840.00 |
| Deposit received on 05/30/18 | -2,190.00 |
| Deposit received on 05/30/18 | -6,231.00 |

| **Total** | $8,419.00 |