# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MELINDA SGARIGLIA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-5684 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| AMERICAN INTERNATIONAL RELOCATION SERVICES, LLC d/b/a AIRES, NICHOLAS GONRING, and KELSEY GONRING, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Melinda Sgariglia ("Plaintiff") brings suit against Defendants American International Relocation Services, LLC d/b/a AIRES ("AIRES") and Nicholas and Kelsey Gonring (the "Gonrings") for violation of Illinois' Residential Real Property Disclosure Act, 765 ILCS 77/1 *et seq.* ("Disclosure Act"), fraudulent concealment, and breach of contract. Currently before the Court are Defendants' motions to dismiss for failure to state a claim, [8] and [13]. For the following reasons, AIRES' motion to dismiss [8] is denied as to the Disclosure Act claim, because AIRES is not named as a Defendant in that claim. AIRES' motion to dismiss the fraudulent concealment and breach of contract claims is granted; however, Plaintiff is granted leave to file an amended complaint by March 25, 2020 with a revised claim against AIRES for fraudulent concealment, to the extent she can do so consistent with this opinion and Federal Rule of Civil Procedure 9(b). The Gonrings' motion to dismiss [13] is granted in part and denied in part. Plaintiff's claim against the Gonrings for breach of contract is dismissed. Plaintiff may proceed on her claims against the Gonrings for violation of the Disclosure Act and for fraudulent concealment. This case is set for status hearing on April 2, 2020 at 9:00 a.m.

**I.     Background**

This diversity action arises out of the sale of a condominium unit located at 2726 West Cortez in Chicago, Illinois (the "Building"). The Building includes 3 units and is governed by a condominium association called 2726 W. Cortez Avenue Condominiums ("Condo Association"). At issue here is Unit 1 (the "Unit"). The Gonrings purchased the Unit in May 2016. The Unit was listed for sale on May 21, 2018 for $475,000. It is not apparent from the complaint or the parties' briefs on Defendants' motions to dismiss whether the Gonrings or AIRES—a relocation company—listed the Unit.

On June 8, 2019, AIRES signed a Condominium Real Estate Purchase and Sale Contract ("Sales Contract") accepting Plaintiff's offer to purchase the Unit for $510,000. Although the Sales Contract and a subsequent addendum to the contract both list AIRES as the Seller, see [1-1] at 17, 32, according to the complaint, the Gonrings were the owners of the Unit as of the date those documents were executed.

Attached to the Sales Contract is a Residential Real Property Disclosure Report signed by the Gonrings on May 19 and May 21, 2018 ("Property Disclosure"). See [1-1] at 21-23. In it, they check the box "no" in response to questions concerning whether they are aware of certain defects, including "leaks or material defects in the roof, ceilings, or chimney" and material defects "in the walls, windows, doors or floors." *Id.* at 21. Plaintiff also received a Sellers Property Disclosure Statement ("Sellers Disclosure"). The Sellers Disclosure, which is on AIRES letterhead, is signed by the Gonrings as "Sellers" on May 29, and May 30, 2018. See [1-1] at 25-31. In response to the question, "Are you aware of any past or present water leakage in the house or other structures?," the Gonrings checked "Yes" and wrote "Unit 3 had leaks on West facing windows … HOA sealed building to resolve Unit 3 leak." *Id.* at 26. In response to the question,

2

"Are you aware of any past or present movement, shifting, deterioration or other problems with walls, foundations or other structural components," the Gonrings checked "No." *Id.* Plaintiff relied on the representations contained in the Property Disclosure and the Sellers Disclosure and proceeded with the purchase of the Unit.

On June 14, 2018, Plaintiff's attorney, Thomas Hawbecker ("Hawbecker"), sent an attorney review letter to Sarah Wilkins ("Wilkins"), see [1-1] at 33-36, an attorney who held herself out to be representing the "Seller," AIRES. *Id.* at 37. In paragraph 8, Hawbecker requests: "Please verify that the Condo Association has not experienced any instances of water (interior or exterior) leaking into the Property and/or any water damage during Seller's ownership of the Property. If there have been any such occurrences, please provide dates, locations, damage and repairs made." *Id*. at 34. In paragraph 9, Hawbecker asks "Seller" to represent and warrant "Sellers have not made any insurance claims within the last 5 years." *Id*.

On June 18, 2018, Wilkins responded. She stated, in part, that "[a]s a third-party corporate relocation company, Seller is unable to make verifications regarding whether the Property has experienced water leaking or water damage," or "representations or warranties regarding whether insurance claims have been made against the Property." [1-1] at 38.

On June 22, 2018, Hawbecker reiterated his request for information concerning water leakage/damage and insurance claims, and noted that "the seller has direct contact with the prior owner." [1-1] at 41. On July 2, 2018, Wilkins responded. As to water leakage/damage, she stated: "[A]s a third-party corporate relocation company, Seller is unable to make verifications regarding whether the Property has experienced water leakage or water damage. However, Seller agrees to abide by the terms of the 'Buyer's Duty to Inspect/Test' section of the AIRES addendum with respect to possible leaks, seepage, or water infiltration of the Property, as Seller would have no

3

knowledge of such matters unless raised during the home inspection process when the information reported in the Residential Real Property Disclosure Report or other homeowner provided disclosures makes no mention of water infiltration issues within the Property." *Id.* at 43. As to insurance claims, Wilkins stated: "Seller reports that the homeowners made no claims against their homeowner's insurance within the last 5 years. As a third-party corporate relocation company that has never occupied the Property, Seller is unable to make representations or warranties regarding whether insurance claims have been made against the Property, as Seller would have no knowledge of such matters." *Id*. at 44. Plaintiff alleges that she relied on these representations in deciding to proceed with the purchase of the Unit.

Prior to closing on the sale, Plaintiff was also provided with a disclosure statement from the Condo Association ("Association Disclosure"), dated June 14, 2018 and signed by the Association's President, John Gorr ("Gorr"). [1-1] at 4; see also *id.* at 45. Gorr checked "no" in response to the question, "Are there any capital expenditures anticipated by the Association for the current or next two fiscal years that would require a special assessment and/or increase in the monthly assessment to the unit owners?" *Id*.

On July 25, 2018, the Gonrings conveyed the Unit to Plaintiff by Warranty Deed. Approximately six weeks later, on September 7, 2018, Gorr emailed Plaintiff: "I'm not sure what was communicated to you during closing but there has been a history of water intrusion to the building. This has occurred primarily in my unit from leaks through the split face block. The history of the water intrusion has been thoroughly documented over some years and was clearly communicated along the way to the other unit owners. We had the building sealed with elastomeric sealant a few months back so we're fairly confident that the water has stopped getting into the building. However, with the recent inspections on my place a few items have been brought

4

up that have shed light on a new problem"—damage to his subfloor and mold behind the walls in Unit 3. [1-1] at 47-48.

Plaintiff demanded and received from Gorr documentation of the problem. The documents attached to the complaint show that in December 2017, Gorr informed Kelsey Gonring and other residents that there was water leakage and damage in his unit, particularly around windows and doors. See [1-1] at 49-51. Gorr stated that he thought the Building needed to be tuck-pointed at the third floor level, that there was also a need to "[d]etermine if more tuck-pointing should be performed anywhere else," as well as a need to "[a]pply a warrantied sealant to the exterior at my level, at least, and potentially just seal the whole building." *Id.* at 50. Gorr further wrote: "I've done everything I can over the years to repair on my own and it's just getting worse every year. At this point I believe it needs to become a building issue. To the best of my knowledge, it appears to me that the Condo documents would include this as a common element repair and would be paid for by the association." *Id*.

Emails between residents continued in February and March 2018. In a February 20, 2018 email, Kelsey Gonring wrote that "likely, grinding/re-pointing and/or sealing the building will be necessary." [1-1] at 52. She also claimed to be surprised about extent of problem experienced by Gorr and accused Gorr of making the problem worse by not bringing it to the attention of the Condo Association and instead hiring his own contractors. See *id.* She further wrote that, as part of the Gonring's purchase of the Unit, "we were given a signed document stating that no issues with any of the units had been raised with the HOA and no documented common element work had been done or was expected to be done in the next 2 years." *Id*.

During the Gonrings' ownership of the Condominium, the Condo Association received an ESI Investigative Report that was sent to Gorr on November 29, 2017. See [1-1] at 54-65. The

Investigative Report opined that water infiltration was occurring "at various locations of the structure, but particularly at window and door openings," with the problem due to deficiencies in the "original construction of the building with the predominate issue being improper flashing at wall openings." *Id*. at 56. The Condo Association made a claim on its insurance coverage, which was denied on November 30, 2017. See *id.* at 66-70.

The Condo Association received multiple quotes for exterior and interior inspection and repair work. Gorr accepted a proposal from Bral Restoration, LLC ("Bral"), which inspected the Building and determined in a report dated May 3, 2018 that "the exiting flashing was through wall that allowed water to penetrate right into the back of block." [1-1] at 77. On May 7, 2018, Kelsey Goring received a quote from Arrow Masonry and Exteriors, Inc. ("Arrow") for $16,840. *Id.* at 87-91. The "scope of work" proposed included: "SPOT GRINDING, SPOT TUCKPOINTING, CAULKING, FLASING INSTALLATION AND SEALING OF THE EAST (70' X 48'), EAST (70' X 48') AND NORTH (24' X 48') ELEVATIONS OF SPLIT FACE BLOCK." *Id.* at 87. The quote showed that work was needed on all three elevations of the Building. Among other things, the quote proposed that: "All window and door perimeter caulking will be inspected on all 3 elevations and all defective caulk will be removed and replaced"; "a Pac-clad flashing will be installed above all 3 rear decks"; "All Renaissance stone or limestone interface joints at the top of the parapet walls or above the window and door headers on the 3 elevations will be ground out, primed, caulked and tooled"; and "The north, east and west elevations of CMU block will be sealed from the top of each wall to grade." *Id*.

Once Plaintiff learned about the extent of the Building's problems, she obtained additional quotes for repairs. According to those estimates, the necessary repairs will cost the Condo Association $275,000. According to the Condo Association Bylaws, Plaintiff is responsible for

44% of that cost, or $121,000. Plaintiff alleges that the Unit has depreciated in value due to the Building's defects.

Plaintiff asserts three claims based on these facts. Count I is brought against the Gonrings for violation of the Disclosure Act. Plaintiff alleges that the Gonrings violated the Disclosure Act by failing to mention any of the defects that they knew existed in the Building. Count II, for fraudulent concealment, is brought against the Gonrings and AIRES. Plaintiff alleges that Defendants were aware of the problems with the Building's structure, had a duty to disclose all latent defects to Plaintiff, but concealed the latent defects by intentionally providing false information in the disclosures and letters to Plaintiff's attorney, while claiming minor issues had been resolved. Plaintiff further alleges that Defendants concealed the Condo Association's claim for insurance coverage and denied making any such claims. According to Plaintiff, Defendants' false statements and concealment of the insurance claim were made to induce Plaintiff to purchase the Unit, which she did in reliance on Defendants' statements. Although Plaintiff hired a professional inspector before closing on the purchase, the Building's defects were not readily visible to the inspector or Plaintiff. In Count III, for breach of contract, Plaintiff alleges that the Gonrings and AIRES breached the covenant of good faith and fair dealing that is included in every contract in Illinois by knowingly concealing the Building's structural problems, the insurance claim, and the complaints of water seepage. Plaintiff seeks an award of damages in excess of $100,000.

## II. Legal Standard

Defendants move to dismiss the complaint pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure. For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of

7

the plaintiff.'" *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2018) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). It is also proper for the Court to "consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir.2012)); see also Fed. R. Civ. P. 10(c). Further, although it is well established that a "complaint may not be amended by the briefs in opposition to a motion to dismiss," *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012), the Court may "consider additional facts set forth in" a brief opposing dismissal "so long as those facts are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (quoting *Geinosky*, 675 F.3d at 745 n.1); see also *In re Dealer Management Systems Antitrust Litigation*, 313 F. Supp. 3d 931, 938–39 (N.D. Ill. 2018).

Plaintiff's claim for fraudulent concealment is subject to the heightened federal pleading standard of Rule 9(b), which requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); see also *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012). Specifically, Rule 9(b) requires alleging with particularity: "the identity of the person making the misrepresentation, the time, place, and content of the

misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *U.S. ex rel. Grenadyor v. Ukranian Vill. Pharmacy, Inc*., 772 F.3d 1102, 1106 (7th Cir. 2014).

## III. Analysis

### A. Disclosure Act

Both AIRES and the Gonrings move to dismiss the Disclosure Act claim under Rule 12(b)(6). The Disclosure Act requires "[a] seller of residential real property" to complete the disclosure form set out at 765 ILCS 77/35. See 765 ILCS 77/20. "Residential real property" includes "condominium units, including the limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit." *Id*. A seller "who discloses any information on the Residential Real Property Disclosure Report that he knows to be false shall be liable in the amount of actual damages and court costs, and the court may award reasonable attorney fees incurred by the prevailing party." 765 ILCS 77/55. However, as is relevant here, a seller "is not liable for any error, inaccuracy, or omission of any information delivered pursuant to this Act if (i) the seller had no knowledge of the error, inaccuracy, or omission, [or] (ii) the error, inaccuracy, or omission was based on a reasonable belief that a material defect or other matter not disclosed had been corrected." 765 ILCS 77/25(a).

The complaint is clear that the Gonrings are the only Defendants to the Disclosure Act claim, see [1-1] at 12, and therefore AIRES' motion to dismiss the Disclosure Act claim is denied as moot.

The Gonrings argue that the Disclosure Act claim against them should be dismissed because the complaint "does not allege there are defects in the Unit or the limited common elements for the Unit." [13] at 5. According to the Gonrings, the exhibits attached to the complaint

"reveal that there were no alleged defects in the Unit and that the defects were entirely contained in Unit 3, the unit owned by Gorr," and that "the only issue with the Building [the Gonrings] were aware of was the water infiltration in Unit 3, which was resolved when the Building was sealed." *Id*. at 5-6. The Gonrings further contend that the Disclosure Act claim should be dismissed because "[t]he Seller Statement demonstrates that the[y] believed that any water infiltration in the Building was resolved" through the application of elastomeric sealant to the outside of the Building. *Id.* at 7.

All of the Gonrings' arguments are clearly belied by the documents that Plaintiff has attached to her complaint. In fact, these documents would go much further toward supporting a motion for summary judgment by Plaintiff than they do toward showing that Plaintiff's Disclosure Act claim against the Gonrings is implausible. The Court finds most notable the quote that Kelsey Gonring received from Arrow on May 7, 2018—just a few weeks before the Unit was placed on the market and the Gonrings completed and signed the Property Disclosure and Sellers Disclosure certifying that they were not aware of any "material defects" in the "walls, windows, [or] doors," [1-1] at 21, or any "problems with walls, foundations or other structural components," *id*. at 26. Drawing all reasonable inferences in Plaintiff's favor, the Arrow quote alone put Ms. Gonring on notice that repairs needed to be made to the limited common elements associated with the Unit— the deck, walls, windows and doors—and that those repairs included more than just the application of sealant, which the Gonrings noted in the Sellers Disclosure. It is also not an illogical jump to presume that Ms. Gonring informed her husband of these defects before both Gonrings signed the disclosure statements.

The Condo Association's governing Bylaws define "limited common elements" to include, among other things, "[t]he part of the Common Elements that are contiguous to and serving a

10

single Unit exclusively as an inseparable appurtenance thereto including specifically balconies, *decks*, porches, and such portions of the perimeter *walls*, floors and ceilings, *windows*, *doors* and all fixtures and structures therein which lie outside the Unit boundaries." [20-2] at 4-5. The Arrow quote showed that all of the window and door perimeter caulking "on all 3 elevations" of the Building needed to be inspected and any defective caulking removed and replaced; that flashing needed to be installed "above all 3 rear decks"; that joints in the stone above the window and door headers on all 3 elevations of the Building walls needed to be "ground out, primed, caulked and tooled"; and also that the North, East, and West elevations of the Building walls needed to be sealed. [1-1] at 87. The Gonrings do not contend that any of this work, other than the application of sealant, had been done before they signed the disclosures. They therefore are not entitled to dismissal based on the Disclosure Act's exemption for errors, inaccuracies, or omission that were "based on a reasonable belief" that any undisclosed defects had been corrected. 765 ILCS 77/25(a).

### B.     Fraudulent Concealment

AIRES and the Gonrings both move to dismiss Plaintiff's fraudulent concealment claim. "To plead this tort properly, in addition to meeting the elements of fraudulent misrepresentation, a plaintiff must allege that the defendant intentionally omitted or concealed a material fact that it was under a duty to disclose to the plaintiff." *Wigod*, 673 F.3d at 571. "The elements of a claim of fraudulent misrepresentation in Illinois are: '(1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance.'" *Id*. at 569 (quoting *Dloogatch v. Brincat*, 920 N.E.2d 1161, 1166 (Ill. App. 2009)). The additional "duty to disclose" element requires that "'plaintiff and defendant

11

are in a fiduciary or confidential relationship' or in a 'situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff.'" *Id*. at 571 (quoting *Connick v. Suzuki Motor Co.,* 675 N.E.2d 584, 593 (Ill. 1996)).

### 1. The Gonrings

The Gonrings argue that they cannot be held liable for any alleged misrepresentations made in the Property Disclosure, the Sellers Disclosure, the Association Disclosure, or Wilkins' correspondence with Plaintiff's attorney because "the Gonrings did not make any statement to Plaintiff"; rather, "Plaintiff negotiated and contracted solely with" AIRES. [13] at 8. The Court agrees that Plaintiff has not alleged any facts suggesting that the Gonrings should be held responsible for any misrepresentations made in the Association Disclosure, which was completed by Gorr, not the Gonrings. The attorney correspondence presents a closer case; it is not clear from the complaint or any of the briefs what communications, if any, the Gonrings had with AIRES' attorney or whether they provided her with any false or misleading information to pass on to Plaintiff. Regardless, Plaintiff has adequately alleged that the Gonrings made false statements in the Property Disclosure and Sellers Disclosure with the intent to induce Plaintiff to purchase the Unit (which she ultimately did, for $35,000 over the list price). For the same reasons discussed above in reference to the Disclosure Act claim, the Court cannot resolve at the motion to dismiss stage whether the Gonrings concealed any defects that they had a duty to disclose in the two disclosure forms.

The Gonrings also have not demonstrated as a matter of law that they are shielded from liability for their alleged false statements simply because they did not provide the disclosures to Plaintiff directly, but instead provided them to AIRES, which passed them on the Plaintiff. As an initial matter, the Gonrings' assertion that they "sold the Property to AIRES," [13] at 7, which in

12

turn sold it to Plaintiff, is called into question by the fact (which Plaintiff alleges and the Gonrings do not contradict) that the Unit was conveyed directly from the Gonrings to Plaintiff by Warranty Deed. See [1-1] at 9. This suggests that the Gonrings owned the Unit at all times relevant to the complaint and that title to the Unit never passed through AIRES.

Further, Plaintiff has alleged facts that support her position that the Gonrings knew that Plaintiff would rely on the alleged misrepresentations contained in the Property Disclosure and Sellers Disclosure. The entire purpose of providing the disclosures is to put potential buyers on notice of certain defects and problems with the property. The timing of all of the relevant events also supports the inference that the Gonrings did, in fact, know that the statements would be given to any party who made an offer to purchase the Unit. The Gonrings completed and signed the Property Disclosure on May 19 and May 21, 2018, concurrent with the listing of the Unit for sale on May 21, 2018. On May 29 and May 30, while the Unit was on the market, the Gonrings completed and signed the Sellers Disclosure. Notably, the Sellers Disclosure is on AIRES letterhead and identifies the Gonrings as the "Seller"—suggesting that the Gonrings were working alongside AIRES in an attempt to sell the Unit. [1-1] at 25. Just over a week later, on June 8, 2018, Plaintiff made an offer to purchase the Unit.

The Gonrings have identified no case law suggesting that property owners can absolve themselves of any responsibility for knowing misrepresentations about their property by passing them to a buyer via a third party "relocation" company. The Court's own quick research suggests that this would be an improper application of Illinois law concerning fraud and misrepresentation. Cf., e.g., *Hirsch v. Optima, Inc*., 920 N.E.2d 547, 561-63 (Ill. App. 2009) (townhouse purchaser alleged fraudulent misrepresentation and Illinois Consumer Fraud Act claims against builder for advising vendor, who originally bought townhouse from builder, that he did not have to disclose

the history of flooding, water seepage or defects in basement foundation to purchaser on real estate disclosure form because the problems had allegedly been resolved; though such alleged misrepresentation was not made directly to purchaser, purchaser had alleged that vendor's decision to not disclose the problems induced her to buy the townhouse, that vendor made such decision based on builder's representations, that builder's representation was made with the intention that it would be repeated to purchaser and influence her, and that purchaser was damaged as a result when the basement flooded after her purchase); *Perschall v. Raney*, 484 N.E.2d 1286, 1291 (Ill. App. 1985) (although termite inspector's inspection report was not delivered to purchasers directly, facts that inspector was aware that premises being inspected were being sold and that report would be provided to and relied upon by prospective purchasers made purchasers' reliance foreseeable and justifiable, for purposes of determining liability for negligent misrepresentation). For these reasons, the Gonrings' motion to dismiss the fraudulent concealment claim is denied.

## 2. AIRES

AIRES moves to dismiss the fraudulent concealment claim on the basis that Plaintiff has not adequately alleged (1) that AIRES had a duty to disclose any defects in the Unit or Building or (2) that AIRES breached such a duty. AIRES explains that, as a third-party relocation company, it "owes no duty to Plaintiff under the Disclosure Act, as long as [it] provided Plaintiff with the Gonrings' Disclosure Report, which it did." [9] at 6; see also 765 ILCS 77/15 ("The provisions of th[e] [Disclosure] Act do not apply to the following: … (7) Transfers from an entity that has taken title to residential real property from a seller for the purpose of assisting in the relocation of the seller, so long as the entity makes available to all prospective buyers a copy of the disclosure form furnished to the entity by the seller.").

14

In response, Plaintiff asserts that she has stated a plausible claim for fraudulent concealment against AIRES based on the facts that AIRES "misrepresented itself as the owner of the property when, in fact[,] it never owned the condominium." [20] at 10. More particularly, Plaintiff's attorney asked AIRES' counsel about the "prior owner," and was "clearly under the impression that the Gonrings [we]re no longer the owners," yet AIRES "never clarifie[d] that it was never the owner of the property." *Id*. Plaintiff contends that "[t]his is an important fact because AIRES used this belief to prevent [Plaintiff] from demanding direct correspondence with the Gonrings themselves." *Id*. Plaintiff also contends that AIRES concealed the fact the Condo Association had made a claim in the past five years under the Building's insurance policy by answering a broad question about "all insurance" with a narrow answer about "homeowner's insurance." *Id.* at 11. Plaintiff argues that, "[b]ased upon this, there is sufficient evidence to establish that the Gonrings made AIRES aware of the condominium insurance claim, but couched their answer in a way to deceive" Plaintiff, and further "threw sand in [Plaintiff]'s eyes by failing to clarify that the Gonrings were not in fact the 'prior owners' but the current owner, and by hiding behind their standard language of being a relocation company, unable to make any representations." *Id*.

The Court declines to evaluate whether these alleged misrepresentations are sufficient to state a claim against AIRES for fraudulent concealment, because they are not alleged in the governing complaint. Further, Plaintiff has not responded to AIRES' argument that it owed no duty to Plaintiff. Therefore, AIRES' motion to dismiss the fraudulent concealment claim is granted. However, the Court will give Plaintiff until March 25, 2020 to file an amended complaint with a revised fraudulent concealment claim against AIRES, to the extent that Plaintiff believes she can do so consistent with this opinion and Rule 9(b).

## C. Breach of Contract

Both AIRES and the Gonrings move to dismiss the breach of contract claim on a number of bases, only one of which is necessary to discuss here. The breach of contract claim is premised on the allegation that Defendants violated the duty of good faith and fair dealing that is implied in every contract in Illinois by "concealing the structural problems associated with the Condominium, the claim against insurance and the complaints of water seepage that were well known to Defendants." [1-1] at 14.

"To state a claim for breach of the implied covenant of good faith and fair dealing in Illinois, a plaintiff must plausibly allege (1) that the existence of an enforceable contract (2) 'breaching a specific duty imposed by the contract *other than the covenant of good faith and fair dealing*'; (3) that defendant failed to exercise its contractual discretion reasonably and with proper motive; and (4) resultant damages." *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 768 (N.D. Ill. 2019) (emphasis added) (quoting *AAA Gaming LLC v. Midwest Elecs. Gaming, LLC*, 2016 WL 6476549, at *3 (N.D. Ill. Nov. 2, 2016)); see also *McArdle v. Peoria School Dist. No. 150*, 705 F.3d 751, 755 (7th Cir. 2013) (explaining that "[t]he obligation of good faith and fair dealing is used as an aid in construing a contract under Illinois law, but does not create an independent cause of action" or "permit a party to enforce an obligation not present in the contract"); *Boone v. MB Fin. Bank, N.A.*, 375 F. Supp. 3d 987, 995 (N.D. Ill. 2019) (same). Here, Plaintiff has not identified any "specific duty imposed by" the Sales Contract which Defendants have allegedly breached; instead, the breach of contract claim is based solely on the implied covenant of good faith and fair dealing. Therefore, the breach of contract claim is dismissed as to all Defendants.

**IV. Conclusion**

For these reasons, both motions to dismiss, [8] and [13], are granted in part and denied in part. AIRES' motion to dismiss [8] is denied as to the Disclosure Act claim, because AIRES is not named as a Defendant in that claim. AIRES' motion to dismiss the fraudulent concealment and breach of contract claims is granted; however, Plaintiff is granted leave to file an amended complaint by March 25, 2020 with a revised claim against AIRES for fraudulent concealment, to the extent she can do so consistent with this opinion and Federal Rule of Civil Procedure 9(b). Plaintiff's claim against the Gonrings for breach of contract is dismissed. Plaintiff may proceed on her claims against the Gonrings for violation of the Disclosure Act and for fraudulent concealment. This case is set for status hearing on April 2, 2020 at 9:00 a.m.

Dated: February 26, 2020

_____
Robert M. Dow, Jr.
United States District Judge