# EXHIBIT D

# EXHIBIT C

# BYLAWS
## OF
## 2726 W. CORTEZ AVENUE CONDOMINIUM ASSOCIATION

These Bylaws are attached to and made a part of the Declaration of Condominium Ownership and Easements, Restrictions and Covenants for The 2726 W. Cortez Avenue Condominiums ("Declaration"). This document adopts the definitions of terms given in the Declaration and the Act.

## ARTICLE I
### General Provisions

The 2726 W. Cortez Avenue Condominiums Association (the "Association") is responsible for the overall administration of the property through its duly elected Board. Whether or not incorporated, the Association shall have such powers, not inconsistent with the Act, as are now and may hereafter be granted by the General Not-For-Profit Corporation Act of the State of Illinois. The Association shall have and exercise all powers necessary or convenient to effect any or all of the purposes for which the Association is organized and to do every other act not inconsistent with law which may be appropriate to promote and attain the purposes set forth in the Act or the Condominium Instruments.

## ARTICLE II
### Members

Section 2.1 **Classes of Members, Membership, and Termination Thereof.** The Association shall have one class of members. Each Unit Owner shall be a member of the Association, which membership shall terminate upon the sale or other disposition of such member's Unit, at which time the new Unit Owner shall automatically become a member of the Association. Such termination shall not relieve or release any such former Unit Owner from any liability or obligation incurred under or in any way connected with the condominium or the Association, during the period of such ownership and membership in the Association. Furthermore, such termination shall not impair any rights or remedies which the Board or others may have against such former Unit Owner arising from, or in any way connected with, such ownership and membership and the covenants and obligations incident thereto. No certificates of stock or other certificates evidencing membership shall be issued by the Association.

In the event that a Unit Owner other than the Declarant sells his or its Unit pursuant to an installment contract for purchase, the said purchaser shall, during such times as he or she resides in the Unit, (unless the seller of the Unit retains in writing any or all of said rights) have the following rights in connection with said Unit Ownership: the purchaser (i) shall be counted toward a quorum for purposes of election of members of the Board at any meeting of the Unit Owners called for said purpose, (ii) shall have the right to vote for the election of members of the Board, and (iii) may be elected to and serve on the Board. In no event may the seller and purchaser be counted towards a quorum simultaneously, or be permitted to vote for a particular office or be elected to and serve on the Board. Satisfactory evidence of the installment contract shall be made available to the Association or its agents. For purposes of this Section 2.1, "installment contract" shall have the same meaning as set forth in Section 1(e) of The Dwelling Unit Installment Contract Act (ILCS 75/0.01, et seq.), which is: "any contract or agreement, including contracts for deeds, bonds for deeds or any other sale or legal device, whereby a contract seller agrees to sell and a buyer agrees to buy a dwelling structure, wherein the consideration for such sale is payable in installments for a period of at least one year after buyer takes possession of the dwelling structure and the contract seller continues to have an interest, or security for the purchase price or otherwise in that property."

GONRING000025

**Section 2.2 <u>Votes and Voting Rights</u>.**

(a) Until the date of the first annual meeting of the members, as provided in Section 3.1 hereof, no member of the Association shall have the right to elect the Board of Managers. All such members of the Board of Managers shall be appointed and shall hold office as provided in Section 6.2 of these Bylaws, unless otherwise required by the Act.

(b) Commencing with the date of the said first annual meeting of the members, the total number of votes of all members shall be 100. Each member shall be entitled to the number of votes equal to his percentage ownership interest in the Common Elements (as defined in the Declaration) times 100 at the time any matter is submitted to a vote of the members.

(c) Except as otherwise provided in Section 2.2(d), there shall be one person with respect to each Unit Ownership who shall be entitled to vote at any meeting of the Unit Owners. Such person (the "Voting Member") may be the Unit Owner or one of the group composed of all the owners of a Unit Ownership, or be some person designated by such Unit Owner or Unit Owners or his duly authorized attorney-in-fact to act as proxy on his or their behalf as set forth in Section 3.6 of these Bylaws. The person(s) designated by the Declarant with respect to any Unit Ownership owned by the Declarant shall also have the right to vote at any meetings of the Board for so long as the Declarant shall retain the right to so designate a Board member. If a Unit Owner is a trust, then the voting rights of such Unit Owner may be exercised by a beneficiary of such trust, and if a Unit Owner or such a beneficiary is a corporation or partnership, then the voting rights of said Unit Owner or beneficiary may be exercised by an officer, partner or employee of such Unit Owner or beneficiary.

(d) If a Unit is owned by more than one person, the voting rights with respect to such Unit shall not be divided, but shall be exercised as if the Unit Owner consisted of only one person in accordance with the proxy or other designation made by the persons constituting such Unit Owner. If only one of such persons constituting such Unit Owner is present, he shall be entitled to cast the votes allocated to such Unit. If more than one of such persons constituting such Unit Owner are present, the votes allocated to such Unit may be cast only in accordance with the agreement of a majority in interest of such persons. Agreement by a majority in interest of such persons shall be deemed to exist if any of such persons casts the votes allocated to such Unit without protest being made promptly to the person presiding over the meeting by any such persons constituting such Unit Owner.

(e) Any specified percentage of the members, whether majority or otherwise, for purposes of voting or for any other purpose, wherever provided in these Bylaws, shall mean such percentage of the total number of votes hereinabove set forth. Such percentage shall be computed in the same manner as is a specified percentage of the Unit Owners of the Condominium as provided in the Declaration, provided, however, that when 30% or fewer of the Units, by number, possess over 50% in the aggregate of the votes as provided herein, any percentage vote of the members specified herein or in the Declaration shall require the specified percentage by number of Units rather than by percentage of interest in the Common Elements allocated to Units that would otherwise be applicable.

**Section 2.3 <u>Transfer of Membership</u>.** Membership in this Association is not transferable or assignable, except as provided in Section 2.1 hereof.

ARTICLE III

Meetings of Members

**Section 3.1 <u>Annual Meeting</u>.** Until the election of the initial Board, the same rights, titles, powers, privileges, trusts, duties and obligations vested in or imposed upon the Board by the Act and in the Declaration and Bylaws shall be held and performed by the Declarant through its agents or designees. The first annual meeting of the members shall be held on such date as is fixed by the Declarant, which date shall in no event be

New Exhibit C - Bylaws - Page 2

**GONRING000026**

later than the earlier of (a) three years from the date the Declaration is recorded in the Office of the Recorder of Cook County, Illinois, and (b) sixty (60) days from the date when 75% of the Units have been conveyed by the Declarant. The Declarant shall give at least twenty-one (21) days' notice of such meeting to elect the initial Board and shall provide to any Unit Owner within three (3) business days of the meeting, the names, addresses, telephone numbers (if available), and weighted vote of each Unit Owner entitled to Vote at such meeting. Any Unit Owner shall be provided with the same information within three (3) business days of the meeting, with respect to each subsequent meeting to elect members of the Board. After the first annual meeting, an annual meeting of the members for the purpose of electing Board members and for the transaction of such other business as may come before the meeting shall be held on such date as is selected by the Board which date is within thirty (30) days before or after the anniversary of the first annual meeting of the members. If the election of Members of the Board shall not be held on the day designated herein for any annual meeting, or at any adjournment thereof, the Board shall cause the election to be held at a special meeting of the members called as soon thereafter as may be convenient.

Section 3.2 **Special Meeting**. Special meetings of the members may be called by the Board, the President, or by the members, provided that at least two-thirds (2/3) of the members shall be required to join in or authorize any such call made by the members. All matters to be considered at such special meetings of the members that have been called by the members as aforesaid shall first be submitted in writing to the Board not less than ten (10) days prior to the date of such special meeting.

Section 3.3 **Place and Time of Meeting**. All meetings of the members shall take place at 7:30 P.M., in some section of the Property designated by the person or persons calling the meeting, or at such other reasonable place or time designated by the Board or the person or persons calling the meeting.

Section 3.4 **Notice of Meeting**. Written or printed notice stating the purpose, place, day and hour of any meeting of members shall be mailed or delivered to each member entitled to vote at such meeting, not less than ten (10) days nor more than thirty (30) days before the date of such meeting, by or at the direction of the President or the Secretary, or the officer or persons calling the meeting, except that notice of the first annual meeting of the members shall be given to the members at least twenty-one (21) days prior thereto. The notice of a meeting shall be deemed mailed when deposited in the United States mail addressed to the member at his address as it appears on the records of the Association (or to the Unit of such member if no other address has been given to the Board), with proper postage thereon prepaid.

Section 3.5 **Quorum**. The members present at a meeting in person or by proxy, holding 50% of the votes which may be cast at any meeting, shall constitute a quorum at such meeting. If a quorum is not present at the commencement of any meeting of members, the meeting shall be adjourned and may only be called again in accordance with the provisions of these Bylaws.

Section 3.6 **Proxies**. At any meeting of members, a member entitled to vote may vote either in person or by proxy executed in writing by the member or by his duly authorized attorney-in-fact. No proxy shall be valid after eleven (11) months from the date of its execution. Every proxy must bear the date of its execution. A proxy shall be revocable at any time by actual notice to the Board of the death or judicially declared incompetence of any designator, or by written notice to the Board by the Unit Owner or his duly authorized attorney-in-fact.

Section 3.7 **Manner of Acting**. Except as set forth below and except as otherwise required by the Declaration or the Act, any action to be taken at any meeting of the members at which a quorum is present shall be upon the affirmative vote of more than 50% of the members represented at such meeting. The following matters shall require the affirmative vote of 100% of all the Unit Owners at a meeting duly called for that purpose:

      (a)  Merger or consolidation of the Association;

      (b)  Sale, exchange, mortgage or other disposition of all, or substantially all, of the property and assets of the Association; or

GONRING000027

(c) The purchase and sale of land or Units on behalf of the Unit Owners.

## ARTICLE IV

### Board

**Section 4.1  In General.** The affairs of the Association shall be managed by the Board of Managers, which shall act as the board of managers of the Building as provided in the Act and the Declaration.

**Section 4.2  Tenure and Qualifications.** The number of members of the Board shall be three (3), it being intended that each Unit shall be represented on the Board by a Unit Owner or other person appointed by such Unit Owner. Until the date of the first annual meeting of the members as hereinabove provided, the members of the Board shall be the directors named in the Articles of Incorporation of the Association, if the Association is incorporated; otherwise, the members of the Board shall be as appointed by the Developer. Such members of the Board shall hold office until the first annual meeting of the members. Commencing with the date of the first annual meeting of the members, the members of the Board shall each be elected. Each member of the Board shall serve for a term of one year and until his successor shall have been elected and qualified. Board members may serve successive terms without limitation. The Board elected at such first annual meeting shall be the initial Board of Managers, as provided in the Act. Each member of the Board shall hold office without compensation. In the event that a member of the Association is a corporation, partnership, trust or other legal entity other than a natural person or persons, then any shareholder, officer or director of such corporation, partner of such partnership, beneficiary or individual trustee of such trust, or member of such other legal entity, may be eligible to serve as a member of the Board. Notwithstanding the above, only one person from each Unit may be a member of the Board. A Board member is entitled to one vote in making Board decisions regardless of his proportion of ownership in the Common Elements.

**Section 4.3  Election.** At each annual meeting of the members, the members shall be entitled to cast up to four votes for four different candidates and the four candidates receiving the highest number of votes with respect to the number of offices to be filled shall be deemed to be elected. In the event of a tie, and the tie must be broken to fill the seats on the Board, the incumbent Board (or the Declarant as the case may be) shall prescribe means reasonable under the circumstances to resolve the tie. A candidate for election to the Board or such candidate's representative shall have the right to be present at the counting of ballots at such election.

**Section 4.4  Regular Meeting.** A regular annual meeting of the Board shall be held immediately after, and at the same place as, the annual meeting of members. The Board shall, by regulations which the Board may, from time to time adopt, provide the time and place for the holding of additional regular meetings of the Board, provided that the Board shall meet at least four times per year.

**Section 4.5  Special Meetings.** Special meetings of the Board may be called by or at the request of the President or any member of the Board. The person or persons permitted to call special meetings of the Board may fix the time and place for holding any special meeting of the Board called by them.

**Section 4.6  Notice.** Written notice of any special meetings of the Board shall be mailed or delivered to all members of the Association and all members of the Board not calling the meeting at least 48 hours prior to date of such special meeting, unless a written waiver of such notice is signed by the person or persons entitled to such notice as hereinafter provided in Article XI. Written notices shall be deemed to be mailed when deposited in the United States mail addressed to each member at his address as it appears on the records of the Association, or his Unit if no other address has been given to the Board, with proper postage thereon prepaid. The business to be transacted at, or the purpose of any regular or special meeting of the Board need not be served on members of the Board.  However, copies of said notices of meetings of the Board shall be posted in entrance ways or other conspicuous places in the condominium designated by the Board at least 48 hours prior to the meeting.

**Section 4.7  Quorum.** A majority of the members of the Board shall constitute a quorum for the transaction of business at any meeting of the Board. If less than a majority of the members of the Board are

GONRING000028

present at the commencement of said meeting, the meeting shall be adjourned and may only be called again in accordance with the provisions of these Bylaws.

Section 4.8 **Manner of Acting**. The act of a majority of the members of the Board present at the meeting shall be the act of the Board, except where otherwise provided by law or in the Condominium Instruments.

Section 4.9 **Vacancies**. Any vacancy occurring in the Board by reason of death, removal or resignation of a member of the Board may be filled by the unanimous vote of the remaining members of the Board. In the alternative, the number of Board members may be reduced to two (2) until the next Annual Meeting if a Unit Owner declines to either serve on the Board or appoint a representative to serve on the Board. A member elected by the Board to fill a vacancy (if applicable) shall serve until the next meeting of the members provided that if a petition is filed with the Board signed by members holding 20% of the votes of the Association requesting a meeting of the members to fill the vacancy for the balance of the unexpired term of office of his predecessor, the term of the member so elected by the Board shall terminate 30 days after the filing of the petition and a meeting of the members for the purpose of filling such vacancy for such unexpired term shall be called no later than 30 days following the filing of such petition. Members of the Board, including those appointed by the Declarant, may resign at any time by written resignation delivered or mailed to any officer of the Association, which resignation shall be effective upon receipt of said resignation. If, as a result of the death, removal or resignation of a member of the Board, no member of the Board remains in office, a special meeting of members may be called to fill all vacancies for the unexpired terms of the member of the Board.

Section 4.10 **Removal**. From and after the date of the first annual meeting of the members, any member of the Board except a Unit Owner may be removed from office by the affirmative vote of 66-2/3% of all the members of the Association at a special meeting called for such purpose. A Unit Owner may not be removed from the Board.

Section 4.11 **Adoption of Rules and Regulations**. All rules and regulations or amendments thereto, shall be adopted by the Board after a meeting of the members called for the specific purpose of discussing the proposed rules and regulations, notice of which contains the full text of the proposed rules and regulations, which rules and regulations conform to the requirements of the Act and the Declaration and these Bylaws. Anything herein that may be deemed to the contrary notwithstanding, no quorum is required at such meeting of the Unit Owners (members). No rules or regulations may impair any rights guaranteed by the First Amendment to the Constitution of the United States or Section 4 of Article I of the Illinois Constitution. Such rules and regulations shall be effected sixty (60) days after their adoption, provided that the members may veto the rule or regulation at a special meeting of the members called for such purpose, and held before the effective date of the rule or regulation, by a vote of 66 2/3% of all the members of the Association.

Section 4.12 **Open Meetings**. All meetings of the Board, whether regular or special, shall be open to the members of the Association.

### ARTICLE V
### Officers

Section 5.1 **Officers**. The officers of the Association shall be a President, one or more Vice Presidents (the number thereof to be determined by the Board), a Treasurer and a Secretary.

Section 5.2 **Election and Term of Office**. The officers of the Association shall be elected annually by the Board at the regular annual meeting of the Board, from among the members of the Association provided that all officers must also be a member of the Board. If the election of officers shall not be held at such meeting, such election shall be held as soon thereafter as conveniently may be possible. Vacancies may be filled or new offices created and filled at any meeting of the Board. Each officer shall hold office until his successor shall have been duly elected and shall have qualified. An officer may succeed himself in office. Officers shall serve without compensation.

Section 5.3 **Removal**. Any officer elected by the Board may be removed by a majority vote of the members of the Board.

New Exhibit C - Bylaws - Page 5

GONRING000029

Section 5.4 <u>**Vacancies**</u>. A vacancy in any office because of death, resignation, removal, disqualification or otherwise, may be filled by the Board for the unexpired portion of the term.

Section 5.5 <u>**President**</u>. The President shall be the principal executive officer of the Association and shall in general supervise and control all of the business and affairs of the Association. He shall preside at all meetings of the members and of the Board. He may sign, with the Secretary or any other proper officer of the Association authorized by the Board, any deeds, mortgages, contracts, or other instruments which the Board has authorized to be executed and any amendment to the Declaration or Plat as provided in the Act, and, in general, shall perform all duties incident to the office of President and such other duties as may be prescribed by the Board from time to time.

Section 5.6 <u>**Vice-President**</u>. In the absence of the President or in the event of his inability or refusal to act, the Vice-President (or in the event there be more than one Vice-President, the Vice-Presidents, in order of their election) shall perform the duties of the President, and when so acting, shall have all the powers of, and be subject to all the restrictions upon, the President. Any Vice-President shall perform such other duties as from time to time may be assigned by the President or by the Board.

Section 5.7 <u>**Treasurer**</u>. The Treasurer shall have charge and custody of and be responsible for all funds and securities of the Association; receive and give receipts for moneys due and payable to the Association from any source whatsoever, and deposit all such moneys in the name of the Association in such banks, trust companies or other depositories as shall be selected in accordance with the provisions of Article VII of these Bylaws; and in general perform all the duties incident to the office of Treasurer and such other duties as from time to time may be assigned to him by the President or by the Board.

Section 5.8 <u>**Secretary**</u>. The Secretary shall keep the minutes of the meetings of the members and of the Board in one or more books provided for that purpose; see that all notices are duly given in accordance with the provisions of these Bylaws or as required by law; receive all mail and notices on behalf of the Association and, together with the President, execute on behalf of the Association amendments to the Condominium Instruments and other documents as required or permitted by the Declaration, these Bylaws or the Act; be custodian of the records and, if incorporated, of the seal of the Association and, if the Association is incorporated, see that the seal of the Association is affixed to all documents, the execution of which on behalf of the Association under its seal is duly authorized in accordance with the provisions of these Bylaws; and in general perform all duties incident to the office of Secretary and such other duties as from time to time may be assigned to him by the President or by the Board.

## ARTICLE VI
### Powers and Duties of the Association and Board

Section 6.1 <u>**General Duties and Powers of the Board**</u>. The Board shall exercise for the Association all powers, duties and authority vested in the Association by the Act and the Condominium Instruments (except for such powers, duties, and authority reserved by law to the members of the Association), including but not limited to the following:

(a) Operation, care, upkeep, maintenance, replacement and improvement of the Common Elements.

(b) Preparation, adoption and distribution of the annual budget for the Property.

(c) Levying and expending of assessments.

(d) Collection of assessments from Unit Owners.

(e) Employment and dismissal of the personnel necessary for the maintenance and operation of the Common Elements including a manager or managing agency.

(f) Obtaining adequate and appropriate kinds of insurance.

GONRING000030

(g) Owning, conveying, encumbering, leasing, and otherwise dealing with Units conveyed to or purchased by it.

(h) Adoption and amendment of rules and regulations covering the details of the operation and use of the Property.

(i) Keeping of detailed, accurate records of the receipts and expenditures affecting the use and operation of the Property.

(j) Having access to each Unit, from time to time, as may be necessary for the maintenance, repair or replacement of any Common Elements therein or accessible therefrom, or for making emergency repairs therein necessary to prevent damage to the Common Elements or to another Unit or Units.

(k) Borrowing money at such rates of interest as it may determine; issuing its notes, bonds and other obligations to evidence such borrowing; and securing any of its obligations by making a mortgage or giving a security interest encumbering all or substantially all of the assets of the Association, provided that the approval of the members shall first be obtained pursuant to Section 3.7 of these Bylaws.

(l) Paying real estate property taxes, special assessments, and any other special taxes or charges of the State of Illinois or of any political subdivision thereof, or other lawful taxing or assessing body, which are authorized by law to be assessed and levied upon the real property of the condominium (other than assessments of Units not owned by the Association).

(m) Imposing charges for late payments of a Unit Owner's proportionate share of the Common Expenses, or any other expenses lawfully agreed upon, and after notice and an opportunity to be heard, levying reasonable fines for violation of the Declaration, Bylaws, and rules and regulations of the Association.

(n) Assigning its rights to future income, including the rights to receive Common Expense assessments.

(o) Recording the dedication of a portion of the Common Elements to a public body for use, as, or in connection with, a street or utility where authorized by the members under the provision of Section 14.2 of the Act.

(p) Recording the granting of an easement for the laying of cable television cable or where authorized by the members under the provisions of Section 14.3 of the Act or where authorized under Section (b) of Article 6 of the Declaration.

(q) Reasonably accommodating the needs of a handicapped Unit Owner as required by the Human Rights Act (775 ILCS, 5/1-101, et seq.) in the exercise of its powers with respect to the use of Common Elements or approval of modifications in an individual Unit.

In the performance of their duties, the officers and members of the Board shall exercise, whether appointed by the Declarant or elected by the members, the care required of a fiduciary of the members.

Section 6.2 **Specific Powers and Duties**. Anything herein contained to the contrary notwithstanding, the Association shall have the power:

(a) to engage the services of a manager or managing agent, who may be any person, firm or corporation, upon such terms and compensation as the Association deems fit, and to remove such manager or managing agent at any time, provided any agreement with such manager or managing agent shall extend for not more than three years and must be terminable by either

New Exhibit C - Bylaws - Page 7

GONRING000031

party to such agreement without cause and without payment of a termination fee, upon ninety (90) days or less prior written notice.

(b) to engage the services of any person (including, but not limited to accountants and attorneys) deemed reasonable by the Association, in the operation, repair, maintenance and management of the Property, or in connection with any duty, responsibility or right of the Association and to remove, at any time, any such personnel.

(c) to establish or maintain one or more bank accounts for the deposit of any funds paid to, or received by, the Association.

(d) to invest any funds of the Association in certificates of deposits, money market funds, or comparable investments.

(e) upon authorization of a majority of the members of the Board or by affirmative vote of not less than a majority of the Unit Owners at a meeting duly called for such purpose, the Board acting on behalf of all Unit Owners shall have the power to seek relief from or in connection with the assessment or levy of any real property taxes, special assessments or charges of the State of Illinois or any political subdivision thereof or of any lawful taxing or assessing body and to charge and collect all expenses in connection therewith as Common Expenses.

Section 6.3 **Authorized Expenditures**. The Association shall acquire and make arrangements for, and pay for out of the Maintenance Fund, in addition to the compensation payable to the manager, managing agent or other personnel above provided for, the following:

(a) water, waste removal, heating, electricity, telephone or other necessary utility service for the Common Elements and such services to the Units as are not separately metered or charged to the owners thereof;

(b) such insurance as the Association is required or permitted to obtain as provided in the Declaration;

(c) landscaping, gardening, snow removal, painting, cleaning, tuckpointing, maintenance, decorating, repair and replacement of the Common Elements and Parking Spaces (but not including the Limited Common Elements which the Unit Owners enjoying the use thereof shall paint, clean, decorate, maintain and repair as set forth in the Declaration) and such furnishings and equipment for the Common Elements as the Association shall determine are necessary and proper, and the Association shall have the exclusive right and duty to acquire the same for the Common Elements. Anything in the foregoing to the contrary notwithstanding, and except where the need for repair or replacement is due to the act or omission of a Unit Owner, guest, occupant, family member or pet, the Association shall be responsible for the repair and replacement (and cleaning of the exterior surface) of all windows;

(d) any other materials, supplies, furniture, labor, services, maintenance, repairs, structural alterations, or assessments which the Association deems necessary or proper for the maintenance and operation of the Property or for the enforcement of any restrictions or provisions contained herein;

(e) any amount necessary to discharge any mechanic's lien or other encumbrance levied against the Property or any part thereof which may in the opinion of the Association constitute a lien against the property or against the Common Elements, rather than merely against the interest therein of particular Unit Owners. Where one or more Unit Owners are responsible for the existence of such lien, they shall be jointly and severally liable for the cost of discharging it and any costs incurred by the Association by reason of said lien or liens shall be specially assessed to said Unit Owners and shall, until paid by such Unit Owners, constitute a lien on the

GONRING000032

interest of such Unit Owners in the Property, which lien may be perfected and foreclosed in the manner provided in Section 9 of the Act with respect to liens for failure to pay a share of the Common Expenses;

(f) maintenance and repair of any Unit or any other portion of the Property which a Unit Owner is obligated to maintain or repair under the terms hereof, if such maintenance or repair is necessary, in the discretion of the Association, to protect the Common Elements, or any other portion of the Property, and the owner of said Unit has failed or refused to perform said maintenance or repair within a reasonable time after written notice of the necessity of said maintenance or repair is delivered by the Association to said Unit Owner; provided that the Association shall levy a special assessment against such Unit for the cost of said maintenance or repair and the amount of such special assessment shall constitute a lien on the interest of such Unit Owner in the Property, which lien may be perfected and foreclosed in the manner provided in Section 9 of the Act with respect to liens for failure to pay a share of the Common Expenses; and

(g) maintenance and repair (including payment of real estate taxes and Common Expenses) with respect to any Unit owned by the Association.

All expenses, charges and costs of maintenance, repair or replacement of the Common Elements, and any other expenses, charges or costs which the Association may incur or expend pursuant hereto, shall be approved by the Association, and a written memorandum thereof shall be prepared and signed by the Treasurer. There shall be no structural alterations, capital additions or improvements to, the Common Elements (other than for purposes of repairing, replacing and restoring portions of the Common Elements) requiring an expenditure in excess of Five Thousand Dollars ($5,000) without the prior approval of all of the Unit Owners.

Section 6.4 **Annual Budget**.

(a) Each year on or before November 1st, the Board shall estimate the annual budget of Common Expenses (the "Annual Budget") including: The total amount required for the cost of wages, material, insurance, services and supplies which will be required during the ensuing calendar year for the rendering of all services, together with a reasonable amount considered by the Association to be necessary for a reserve for contingencies and replacements, all anticipated assessments and income and each Unit Owner's proposed Common Expense assessment. The Board shall deliver a copy of the proposed Annual Budget (together with an indication of which portions are intended for capital expenditures or repairs or payment of real estate taxes) to each Unit Owner at least thirty (30) days prior to the adoption thereof. The Association shall give Unit Owners notice as provided in Section 3.4 of the Bylaws of the meeting of the Board at which the Board proposes to adopt the Annual Budget, or at which any increase or establishment of any assessment, regular or special, is proposed to be adopted. Said Annual Budget shall be assessed to the Unit Owners according to each Unit Owner's percentage of ownership in the Common Elements. Each Unit Owner shall he obligated to pay to the Association, or as it may direct, the portion of the Annual Budget assessed to such owner in equal monthly installments (subject to acceleration as hereinafter provided) on or before January 1st of the ensuing year, and the 1st day of each and every month of said year. The Association shall have no authority to forbear the payment of assessments by any Unit Owner.

The failure or delay of the Association to prepare or serve the annual or adjusted budget on the Unit Owners shall not constitute a waiver or release in any manner of the Unit Owner's obligation to pay the maintenance and other costs and necessary Reserves, as herein provided, whenever the same shall be determined, and in the absence of any annual or adjusted budget, the Unit Owners shall continue to pay the monthly assessment charges at the then existing monthly rate established for the previous period until the bill or voucher for the monthly assessment payment which is due more than ten (10) days after such new annual or adjusted budget shall have been mailed.

GONRING000033

(b) If an adopted Annual Budget requires assessments against the Unit Owners in a fiscal or calendar year exceeding 115% of the assessments for the preceding year, the Board, upon written petition by Unit Owners with 20% of the votes of the Association filed within 14 days of the Board action, shall Call a Special Meeting of the Unit Owners within 30 days of the date of filing of the petition to consider the Annual Budget. Unless a majority of the votes of the Unit Owners are cast at the meeting to reject the Annual Budget, it shall be deemed to be ratified, whether or not a quorum is present. If a majority of the votes of the Unit Owners are cast at the meeting to reject the Annual Budget, but a quorum is not present, a second Special Meeting of the Unit Owners will be called to consider the Annual Budget. If a quorum is not present at such second meeting, the Annual Budget shall be deemed to be ratified. If a majority of votes of the Unit Owners are cast to reject the Annual Budget at a Special Meeting of the Unit Owners, a meeting of the Board shall be held within 30 days of the date of such Special Meeting to prepare a revised Annual Budget to send to the Unit Owners together with a notice of the meeting of the Board at which adoption of such Annual Budget will be considered. In determining whether assessments exceed 115% of similar assessments in the preceding year, any authorized provisions for reasonable reserves for repair or replacement of the Common Elements, and anticipated expenses by the Association which are not anticipated to be incurred on a regular or annual basis, shall be excluded from the computation.

Anything herein or in the Declaration to the contrary notwithstanding, the Association may charge to fewer than all Unit Owners such portion of the insurance premium for insurance the Association is required or permitted to obtain which reflects increased charges for coverage on the Units owned by such Unit Owners, on such reasonable basis as the Association shall determine and such portion of insurance premiums relating to the roof deck and to alterations, additions or improvements to certain Units (as further set forth in Article 11 of the Declaration). Such charge shall be considered a common expense with respect to the Units owned by such Unit Owners for all purposes herein and under the Declaration.

Section 6.5 **Annual Accounting**. On or before the 1st day of April of each calendar year following the initial meeting of the voting members, the Association shall supply to all Unit Owners an itemized accounting of the Common Expenses for the preceding calendar year actually incurred or paid together with an indication of which portions were for capital expenditures or repairs or payment of real estate taxes and together with a tabulation of the amounts collected pursuant to the budget or assessment, and showing the net excess or deficit of income over expenditures plus Reserves. Upon the written request of any of FHLMC, FNMA, HUD, or VA, the Association shall prepare and furnish within a reasonable time an audited financial statement of the Association for the preceding calendar year. Any amount accumulated in excess of the amount required for actual expenses and Reserves shall be credited according to each Unit Owner's percentage of ownership in the Common Elements to the next monthly installments due from Unit Owners under the current year's Annual Budget, until exhausted, and any net shortage shall be added according to each Unit Owner's percentage of ownership of the Common Elements, to the installments due in the succeeding six months after rendering of the accounting.

Section 6.6 **Reserves**. The Association may build up and maintain a reasonable Reserve for operations, contingencies and replacement. To establish such Reserve, the Declarant shall collect from each Unit Owner upon conveyance by the Declarant of a Unit to such Unit Owner, an amount equal to two times the monthly assessment allocable to such Unit, and shall remit such amount to the Association. Extraordinary expenditures not originally included in the Annual Budget which may become necessary during the year shall be charged first against such Reserve. In addition, the Association shall have the right to segregate all or any portion of the Reserve for any specific replacement or contingency upon such conditions as the Association deems appropriate.

Section 6.7 **Special Assessments**. If said Annual Budget proves inadequate for any reason, including nonpayment of any Unit Owner's assessment, or any non-recurring Common Expense or any Common Expense not set forth in the Annual Budget as adopted, the Board may at any time levy a further assessment, which shall be assessed to the Unit Owners according to each Unit Owner's percentage of ownership in the Common Elements, and which may be payable in one lump sum or such installments as the Board may determine. The Board shall serve notice of such further assessment on all Unit Owners (as provided in Section 3.4 of the Bylaws)

GONRING000034

by a statement in writing giving the amount and reasons therefor, and such further assessment shall become effective and shall be payable at such time or times as determined by the Board provided, however, that in the event such further assessment with respect to any Unit exceeds the greater of five (5) times such Unit's most recent monthly installment of Common Expenses, such further assessment for all Units shall not be effective until approved by unanimous consent of the Unit Owners at a meeting of Unit Owners duly called for such purpose. All Unit Owners shall be obligated to pay the special assessment.

### Section 6.8 <u>Books of Account, Default, Statement of Account</u>.

(a) The Association shall keep full and correct books of account and the same shall be open for inspection by any Unit Owner or any representative of a Unit Owner duly authorized in writing, at such reasonable time or times during normal business hours as may be requested by the Unit Owner. All funds collected hereunder shall be held and expended solely for the purposes designated herein, and (except for such special assessments as may be levied hereunder against less than all the Unit Owners and for such special adjustments as may be required to reflect delinquent or prepaid assessments) shall be deemed to be held for the benefit, use and account of all the Unit Owners in their relative percentages of ownership interest in the Common Elements.

(b) If a Unit Owner is in default in the monthly payment of the aforesaid charges or assessments for thirty (30) days, the Association may assess a service charge of 10% (or such other percentage or amount as the Board shall determine, by rule or regulation enacted as set forth herein, to substitute as a service charge hereunder to be assessed for every month or part month that said balance remains unpaid) of the balance of the aforesaid charges and assessments for each month, or part thereof, that said balance, or any part thereof remains unpaid. In addition to any remedies or liens provided by law, if a Unit Owner is in default in the monthly payment of the aforesaid charges or assessments for sixty (60) days, all other monthly payments of charges and assessments due for the calendar year in which such default occurs shall accelerate and become immediately due and payable. The Association may bring suit for and on behalf of itself and as representative of all Unit Owners, to enforce collection thereof or to foreclose the lien therefor as provided by law; and there shall be added to the amount due, the costs of said suit, together with legal interest and reasonable attorneys' fees to be fixed by the Court. In addition, the Association may also take possession of such defaulting Unit Owner's interest in the Property and maintain an action for possession of the Unit in the manner provided by law. No Unit Owner may waive or otherwise avoid liability for the assessment provided for herein by nonuse of the Common Elements or abandonment of his Unit. Each such assessment, together with interest, costs and attorneys' fees shall also be the personal obligation of the person who was the Unit Owner at the time the assessment fell due. The personal obligation for delinquent assessments shall not pass to successors in title or interest unless assumed by them, or required by applicable law.

(c) Upon ten (10) days' notice to the Board, and the payment of a reasonable fee fixed by the Board not to exceed Fifteen Dollars ($15), any Unit Owner shall be furnished a statement of his account setting forth the amount of any unpaid assessments or other charges due and owing from such Unit Owner.

Section 6.9 <u>Priority of Liens</u>. Any mortgage or trust deed owned or held by a First Mortgagee and recorded prior to the recording or mailing of a notice by the Association of the amount owing by a Unit Owner who has refused or failed to pay his share of the monthly assessment when due shall be superior to the lien of such unpaid Common Expenses set forth in said notice and to all assessments for Common Expenses which become due and are unpaid subsequent to the date of recording of such first mortgage or first trust deed. Any First Mortgagee who comes into possession of a Unit pursuant to the remedies provided in the mortgage or trust deed or deed in lieu of foreclosure of the mortgage or trust deed or deed in lieu of foreclosure shall not be liable for, and shall take the Unit and its proportionate interest in the Common Elements free from, claims for unpaid common or special assessments levied by the Association which accrue prior to the date of possession as aforesaid.

GONRING000035

Section 6.10 **User Charges**. The Board, or the Declarant acting pursuant to Section 3.1 hereof, may establish, and each Unit Owner shall pay, user charges to defray the expense of providing services, facilities or benefits which may not be used proportionately by all of the Unit Owners or which, in the judgment of the Board, should not be charged to every Unit Owner. Such expenses may include, without limitation, fees for such services and facilities provided to Unit Owners which should not be reasonably allocated among all of the Unit Owners in the same manner as the Common Expenses. Such user charges may be billed separately to each Unit Owner benefitted thereby, or may be added to such Unit Owner's share of the Common Expenses, as otherwise determined, and collected as a part thereof. Nothing herein shall require the establishment of user charges, and the Board or Declarant may elect to treat all or any portion thereof as Common Expenses.

Section 6.11 **Other Powers and Duties**.

(a) The Association may number and assign to any Unit Owner the exclusive privilege to use for storage purposes any portion of the Property designated for such purposes; provided, however, that the Association shall have the right of access to all such storage spaces which contain pipes, or other portions of the Common Elements, which the Association has the duty or right to maintain, repair or replace. Any such designation by the Association shall not thereafter be changed except upon the affirmative vote of a majority of the Unit Owners. All property stored in any storage area shall be at the sole risk of the respective Unit Owner who has the privilege to use the same, and neither the Association nor any other Unit Owner shall be considered a bailee or otherwise responsible therefor.

(b) Nothing hereinabove contained shall be construed to give the Association authority to conduct an active business for profit on behalf of all the Unit Owners or any of them.

## ARTICLE VII
### Contracts, Checks, Deposits and Funds

Section 7.1 **Contracts**. The Board may authorize any officer or officers, agent or agents of the Association, in addition to the officers so authorized by these Bylaws, to enter into any contract or execute and deliver any instrument in the name of and on behalf of the Association and such authority may be general or confined to specific instances.

Section 7.2 **Checks and Drafts**. All checks, drafts or other orders for the payment of money, notes or other evidences of indebtedness issued in the name of the Association, shall be signed by such officer or officers, agent or agents of the Association and in such manner as shall from time to time be determined by resolution of the Association. In the absence of such determination by the Association, such instruments shall be signed by the Treasurer and countersigned by the President of the Association. The Treasurer, as well as any other officer, Board Member, or employee of the Association, who regularly handles Association funds, may obtain a fidelity bond, at the Association's expense, from an established bonding agency against fraud, forgery, embezzlement and gross negligence.

Section 7.3 **Deposits**. All funds of the Association shall be deposited from time to time to the credit of the Association in such banks, trust companies or other depositories as the Board may select.

Section 7.4 **Gifts**. The Board may accept on behalf of the Association any contribution, gift, bequest or devise for the general purposes or for any special purpose of the Association.

## ARTICLE VIII
### Books and Records

Section 8.1 **Maintaining Books and Records**. The Association shall keep correct and complete books and records of account and shall also keep minutes of the proceedings of its members, the Board and committees having any of the authority of the Board.

New Exhibit C · Bylaws · Page 12

**GONRING000036**

Section 8.2 <u>Availability for Examination</u>. The manager or Board shall maintain the following records of the Association available for examination and copy by the Unit Owners or their mortgagees and their duly authorized agents or attorneys:

(a) Copies of the recorded Declaration and Bylaws and any amendments; Articles of Incorporation of the Association if incorporated; annual reports, if incorporated; and any rules and regulations adopted by the Association or the Board. Prior to the first annual meeting of members of the Association, the Developer shall maintain and make available the records set forth in this subsection (a) for examination and copying;

(b) Detailed accurate records in chronological order of the receipt and expenditures affecting the Common Elements, specifying and itemizing the maintenance and repair expenses of the Common Elements and any other expenses incurred, and copies of all contracts, leases, or other agreements entered into by the Association;

(c) The minutes of all meetings of the Association and the Board shall be maintained. The Association shall maintain these minutes for a period of not less than seven (7) years;

(d) Such other records of the Association as are available for inspection by members of a not-for-profit corporation pursuant to Section 25 of the General Not-For-Profit Corporation Act, as amended; and

(e) A record giving the names and addresses of the members entitled to vote.

A reasonable fee may be charged by the Association or its Board for the cost of copying any such records.


## ARTICLE IX
### Fiscal Year

The fiscal year of the Association shall begin on the first day of January and end on the last day of December.


## ARTICLE X
### Seal

If the Association is incorporated, the Board may provide a corporate seal which shall be in the form of a circle and shall have inscribed thereof the name of the Association and the words "Corporate Seal, Illinois."


## ARTICLE XI
### Waiver of Notice

Whenever any notice is required to be given under the provisions of the General Not-For-Profit Corporation Act of Illinois or under the provisions of the articles of incorporation or Bylaws of the Association, or the Declaration, a waiver thereof (subject to all the provisions of such instruments) in writing signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.


## ARTICLE XII
### Amendments to Bylaws

These Bylaws, except Article II, Sections 6.4, 6.7 and 6.9 of Article VI, Article XII, and Article XIV may be altered, amended or repealed and new Bylaws may be adopted upon the affirmative vote of the members owning at least a sixty-six and two-thirds percent (66 2/3%) interest in the Common Elements at a regular meeting or at any special meeting called for such purpose, by recording an instrument in writing setting forth

New Exhibit C - Bylaws - Page 13

GONRING000037

such alteration, amendment or repeal, which is signed and acknowledged by an authorized member of the Board and which contains an affidavit by an officer of the Association certifying that the necessary affirmative vote of the members of the Association has been obtained. Article II, Sections 6.4, 6.7 and 6.9 of Article VI, Article XII and Article XIV may be amended as set forth in the first sentence of Article 19 of the Declaration requiring unanimous consent. No amendment to the Bylaws may remove therefrom any of the provisions required under Section 18 of the Act. Any amendments to or modifications of these Bylaws made in accordance with this Article XII shall become effective upon the recording of same.

## ARTICLE XIII
### Indemnification

The Association shall indemnify any person who was or is a party, or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Association) by reason of the fact that he is or was a member of the Board or officer of the Association, against expenses, fees (including reasonable attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in, or not opposed to, the best interest of the Association, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Association and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.

The Association may indemnify any person who was or is a party, or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Association to procure a judgment in its favor by reason of the fact that he is or was a member of the Board or an officer of the Association against expenses and fees (including attorneys' fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit, if he acted in good faith and in a manner he reasonably believed to be in, or not opposed to, the best interest of the Association and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct in the performance of his duty to the Association, unless and only to the extent that the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability, but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses as the court shall deem proper.

To the extent that a member of the Board or officer of the Association has been successful, on the merits or otherwise, in the defense of any action, suit or proceeding referred to in the foregoing two paragraphs, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses and fees (including attorneys' fees) actually and reasonably incurred by him in connection therewith. Any indemnification under the first two paragraphs of this Article shall be made by the Association only as authorized in the specific case, upon a determination that indemnification of the member of the Board or officer of the Association is proper under the circumstances because he has met the applicable standard of conduct set forth in the first two paragraphs of this Article.

## ARTICLE XIV
### Applicability to Tenants

The provisions of the Act, the Declaration, the Bylaws, other Condominium Instruments, and rules and regulations that relate to the use of the individual Units or the Common Elements shall be applicable to any person leasing a Unit and shall be deemed to be incorporated in any lease for any such Unit.

GONRING000038

## 2726 West Cortez Condominium Association Budget for 2018

| Expense | Provider | Cost |
|---|---|---|
| Insurance for Building | Erie | $2469 |
| Common Electric | ComEd | $400 |
| Water | City of Chicago | $600 |
| Misc. Expense | Misc | $250 |
| Monthly Bank Service Fees | PNC | $240 |
| **Total Yearly Budget** | | $3,959 |
| **Yearly Reserves** | | $1,909 |

### HOA

| Unit | Ownership % | Monthly Assessment |
|---|---|---|
| #1 | 44% | $215 |
| #2 | 26% | $142 |
| #3 | 30% | $152 |
| | | **Total:** $489 |

GONRING000039