2/4

This document prepared by
and after recording should
be returned to:

Steven K. Norgaard
Steven K. Norgaard, P.C.
493 Duane Street
Glen Ellyn, Illinois 60137

EXH 25

### FIRST AMENDMENT TO
### DECLARATION OF CONDOMINIUM OWNERSHIP
### FOR
### 2726 W. CORTEZ AVENUE CONDOMINIUMS

This First Amendment to Declaration of Condominium Ownership for 2726 W. Cortez, Chicago, Illinois 60622 is made and entered into this ___19th___ day of ~~May,~~ 2012, by 2726 Cortez, LLC, an Illinois limited liability company (hereinafter referred to as "Owner"): June

#### WITNESSETH:

WHEREAS, on February 20, 2007, 2726 W. Cortez, L.L.C. (hereinafter sometimes referred to as the "Declarant") caused to be recorded with the Recorder of Deeds fo Cook County, Illinois, that certain Declaration of Condominium Ownership for 2726 W. Cortez, Chicago, Illinois 60622 as Document No. 0705115001 (the "Declaration"), affecting the real property legally described as follows:

LOT 36 IN BLOCK 1 IN WATRISS' SUBDIVISION OF THE SOUTH ½ OF THE NORTHWEST 1/4 OF THE SOUTHEAST 1/4 (EXCEPT THE EAST 115 FEET) OF SECTION 1, TOWNSHIP 39 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS;

Street Address:      2726 W. Cortez, Units 1, 2 and 3
                     Chicago, Illinois 60622

PIN's        16-01-408-055-1001
             16-01-408-055-1002
             16-01-408-055-1003

WHEREAS, Section 16 of the Declaration authorizes the Unit Owners (as defined therein) to amend or modify the Declaration by written instrument signed and acknowledged by all members of the board of directors, Unit Owners and first mortgagees having a bona fide lien of record against any unit;

WHEREAS, Owner is the Unit Owner of all units and constitutes all of the board of directors of the condominium association established under the Declaration and desires to amend the Declaration as set forth herein, specifically to include replacing in full the body of the Declaration, Exhibit B thereto and Exhibit C thereto, but specifically *not* replacing Exhibit D thereto; and

NOW, THEREFORE, Owner, as Unit Owner of all units and as all of the directors of the condominium association established under the Declaration, states as follows:

1. Paragraphs 1-27 of the Declaration and Exhibits B and C (but *not* Exhibit D) are hereby deleted in their entirety and replaced by paragraphs 1-27 and Exhibits B and C which follow the signature page and lender's consent page of this instrument.

**2.** Exhibit D, the Plat of Survey for the Condominium is modified by designating the entire area over the garage roof as a limited common element appurtenant to Unit 1.

IN WITNESS WHEREOF, Owner has caused this instrument to be signed by its duly authorized manager on its behalf as of the date above first written.

2726 Cortez, LLC, an Illinois limited liability company

By: _____
James Murrin, Manager

STATE OF ILLINOIS ）
　　　　　　　　　 ） SS.
COUNTY OF _COOK_ ）

I, ~~STEV~~ *Joni Sierra*_____, Notary Public in and for said County and State, does hereby certify that _James Murrin_____, Manager of 2726 Cortez, LLC, an Illinois limited liability company, personally known to me to be the same person whose name is subscribed to the foregoing instrument as such Manager, appeared before me this day in person and acknowledged that he signed, sealed and delivered said instrument as his free and voluntary act, and as the free and voluntary act of said limited liability company, for the uses and purposes therein set forth.

GIVEN under my hand and Notarial Seal this _19_ day of _June_____, 2012.

_____
Notary Public

(Seal)

```
OFFICIAL SEAL
JONI E SIERRA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/20/12
```

2

## MORTGAGEE'S CONSENT

STEVEN K. NORGAARD, as mortgagee under that certain Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing recorded May 1, 2012, as Document Number 1212216016 recorded against the real estate commonly known as 2726 W. Cortez, Chicago, Illinois 60622, hereby consents to the foregoing Declaration of Condominium Ownership.

_____
Steven K. Norgaard

STATE OF ILLINOIS    )
                     )SS.
COUNTY OF _Cook____  )

I, _Joni Sierra____, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY THAT STEVEN K. NORGAARD, personally known to me to be the same person whose name is subscribed to the foregoing instrument appeared before me this day in person and acknowledged that he signed, sealed and delivered the said instrument as his own free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and Notarial Seal this __19__ day of __June__, 2012.

_____
Notary Public

OFFICIAL SEAL
JONI E SIERRA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/20/12

OFFICIAL SEAL
JONI E SIERRA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/20/12

OFFICIAL SEAL
JONI E SIERRA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/20/12

New Paragraphs 1-27 of Declaration:

"1.  <u>Definitions</u>. Certain words and terms used in this Declaration are defined as follows:

(a)  *Act*: The Condominium Property Act of the State of Illinois, 765 ILCS 605/1, et seq., as amended from time to time.

(b)  *Association*: The Association of all the Unit Owners acting pursuant to the Bylaws attached hereto as Exhibit C, through its duly elected Board.

(c)  *Board*: The board of managers of the Association as constituted at any time and from time to time.  In the event the Association is incorporated the Board shall mean the Board of Directors of the incorporated Association.

(d)  *Building*:  The building or buildings located on the parcel, forming a part of the Property and containing the Units (as shown by the surveys depicting the respective floors of the Building).

(e)  *Bylaws*: The Bylaws of the Association, being the provisions for the administration of the Property including but not limited to, assessment, maintenance, use, occupancy, sale and leasing (all as set forth in Exhibit C attached hereto) as the same may be from time to time duly amended.

(f)  *Common Elements*:  All portions of the Property except the Units, including the Limited Common Elements and the Parcel.  The Common Elements include, without limiting the generality of the foregoing, any of the following items located at the Property: the land, foundations, walls, entrances and exits, hallways, basement, mail boxes, roof, pipes, ducts, flues, shafts, electrical wiring and conduits (except pipes, ducts, flues, shafts, electrical wiring and conduits situated entirely within a Unit and serving only such Unit), public utility lines, structural pans of the Building, all outside walks and driveways, and all other portions of the property except the individual Units.  Structural columns located within the boundaries of a Unit shall be part of the Common Elements.  Any references to "Common Elements" appearing on the Plat (except references to Limited Common Elements) shall not be limiting in any way, nor shall any such reference define the Common Elements in any way.

(g)  *Common Expenses*:  The proposed or actual expenses affecting the Property, including Reserves, if any, lawfully assessed by the Board, including, without limitation, the expenses of maintenance, repair, administration and operation of the Common Elements.

(h)  *Condominium Instruments*:  All documents and authorized amendments thereto recorded pursuant to the provisions of the Act, including the Declaration, Bylaws and Plat.

(i)  *Declaration*:  This instrument by which the Property is submitted to the provisions of the Act, including such amendments, if any, to this instrument as may be from time to time adopted pursuant to the terms hereof.

(j)  *First Mortgagee*:  An owner of a bona fide first mortgage or first trust deed covering any portion of the Property.

(k)  *Limited Common Elements*:  (i) The part of the Common Elements contiguous to and serving a single Unit exclusively as an inseparable appurtenance thereto including specifically balconies, decks, porches and such portions of the perimeter walls, floors and ceilings, windows, doors and all fixtures and structures therein which lie outside the Unit boundaries; (ii) pipes, ducts, flues, shafts, electrical wiring or conduits or other systems or component parts thereof which serve a Unit exclusively to the extent such systems or component

parts are located outside the boundaries of a Unit; (iii) any portion of the Common Elements so designated in this Declaration or on the Plat (as hereinafter defined) as being reserved for the use of a certain Unit or Units to the exclusion of other Units; (iv) parking spaces as delineated on the Plat as, respectively, P-1 (which shall be appurtenant to Unit 1), P-2 (which shall be appurtenant to Unit 2) and P-3 (which shall be appurtenant to Unit 3); (v) roof top decks, rights to roof top areas or storage lockers assigned to a particular Unit either as shown on the Plat of Survey or delineated herein,; and (vi) any other portion of the Common Elements which by the terms of this Declaration or by its nature or location is clearly intended to serve exclusively a certain Unit or Units (but less than all of the Units).

(l) *Maintenance Fund*: All monies collected or received by the Association pursuant to the provisions of the Condominium Instruments.

(m) *Majority or Majority of Unit Owners*: Those Unit Owners, without regard to their numbers, who own more than fifty percent (50%) in the aggregate of the entire undivided ownership interest in the Common Elements. Any specified percentage of the Unit Owners shall mean those Unit Owners who, in the aggregate, own such percentage of undivided ownership interest in the Common Elements.

(n) *Occupant*: A person or persons, other than a Unit Owner, in possession of a Unit.

(o) *Parcel*: The lot or lots, tract or tracts of land, described in Section 2 hereof, submitted to the provisions of the Act.

(p) *Person*: A natural individual, corporation, partnership, trustee or other legal entity capable of holding title to real property.

(q) *Plat*: The plat or plats of survey of the Parcel and of all Units in the Property submitted to the provisions of the Act, which shall consist of a three dimensional, horizontal and vertical delineation of all such Units and such other data as may be required by the Act, and which is attached hereto as Exhibit D and made a part hereof and recorded with the recording of this Declaration.

(r) *Property*: All land, property and space comprising the Parcel, all improvements and structures erected, constructed or contained therein or thereon, including the Building and all easements, rights and appurtenances belonging thereto, and all fixtures and equipment intended for the mutual use, benefit and enjoyment of the Unit Owners, submitted to the provisions of the Act.

(s) *Record*: To record in the Office of the Recorder of Cook County, Illinois.

(t) *Reserves*: Those sums paid by Unit Owners which are separately maintained by the Board for purposes specified by the Board or the Condominium Instruments.

(u) *Unit*: A part of the Property within the Building including one or more rooms, occupying one or more floors or a part or parts thereof, designed and intended for any type of independent use as a dwelling unit and which is designated on the Plat as a Unit (e.g., Unit 1, 2, or 3) and more specifically described hereafter in Article 4.

(v) *Unit Owner*: The person or persons whose estate or interests, individually or collectively, aggregate fee simple absolute ownership of a Unit and its appurtenant undivided ownership interest in the Common Elements.

(w) *Unit Ownership*: A part of the Property consisting of one Unit and the undivided interest in the Common Elements appurtenant thereto.

(x)  *Voting Member.*  One person with respect to each Unit Ownership who shall be entitled to vote at any meeting of the Unit Owners.

2.  <u>Legal Description of Parcel</u>. The parcel hereby submitted to the provisions of the Act is legally described as follows:

LOT 36 IN BLOCK 1 IN WATRISS' SUBDIVISION OF THE SOUTH ½ OF THE NORTHWEST 1/4 OF THE SOUTHEAST 1/4 (EXCEPT THE EAST 115 FEET) OF SECTION 1, TOWNSHIP 39 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS;

Street Address:      2726 W. Cortez
                     Chicago, Illinois 60622

      P.I.N.:  16-01-408-036-0000

3.  <u>General Provisions as to Units</u>.

(a)  **Submission of Property to the Act.**  The Property is hereby submitted to the provisions of the Condominium Property Act of the State of Illinois, as The 2726 W. Cortez Avenue Condominiums, located in Chicago, Cook County, Illinois.

(b)  **No Severance of Ownership.**  No Unit Owner shall execute any deed, mortgage, lease or other instrument affecting title to his Unit Ownership without including therein both his interest in the Unit and his corresponding percentage of Ownership in the Common Elements, it being the intention hereof to prevent any severance of such combined ownership. Any such deed, mortgage, lease or other instrument purporting to affect the one without including also the other shall be deemed and taken to include the interest so omitted even though the latter is not expressly mentioned or described therein.

4.  <u>Description of Units</u>

(a)  **Legal Description.**  All units are delineated on the Plat attached hereto as Exhibit D and made a part of this Declaration.  The legal description of each Unit shall consist of the identifying number or symbol of such Unit as shown on the Plat.  Every deed, lease, mortgage or other instrument may legally describe a Unit by its identifying number or symbol as shown on Exhibit D, and every such description shall be deemed good and sufficient for all purposes. Said Units are legally described as follows:

Parcel 1: Units 1, 2 and 3 in The 2726 W. Cortez Avenue Condominiums as depicted on a Plat of Survey of the following described real estate:

LOT 36 IN BLOCK 1 IN WATRISS' SUBDIVISION OF THE SOUTH ½ OF THE NORTHWEST 1/4 OF THE SOUTHEAST 1/4 (EXCEPT THE EAST 115 FEET) OF SECTION 1, TOWNSHIP 39 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS;

Which Plat of Survey is attached as Exhibit "D" to the Declaration of Condominium Ownership, recorded on February 20, 2007, in the office of the Recorder of Deeds of Cook County, Illinois, as Document Number 0705115001 as amended from time to time, together with its undivided percentage interest in the common elements, in Cook County, Illinois.

Parcel 2: Exclusive use for parking purposes in and to parking space numbers P-1, P-2 and P-3, Limited Common Elements ("LCE"), as delineated on the Plat of Survey, and the rights and easements for the benefit of Unit _____, as set forth in the Declaration of Condominium;

the Grantor reserves to itself, its successors and assigns, the rights and easements as set forth in the Declaration for the remaining land described therein.

(b) **Inclusions and Exclusions.** Each Unit consists of the space enclosed and bounded by the horizontal and vertical planes set forth in the delineation thereof on Exhibit D including, without limitation, pipes, ducts, flues, chutes, conduits, wires, and other utility, heating, cooling or ventilation systems or equipment to the extent and only to the extent serving only such Unit; and (anything herein to the contrary notwithstanding) excluding all structural components of the Building, the term "structural components" including structural columns or pipes, wires, conduits, ducts, flues, shafts, or public utility lines running through the Unit and forming a part of any system serving more than the Unit, or any components of communication or master antenna system, if any, located in the Unit, whether or not any such items shall be located in the floors, ceilings or perimeter or interior walls of the Unit.

(c) **No Subdivision of Units.** Except as provided by the Act, no Unit Owner shall, by deed, plat, court decree or otherwise, subdivide or in any other manner cause his Unit to be separated into any tracts or parcels different from the whole Unit as shown on Exhibit D.

5.   <u>Use and Ownership of the Common Elements (Including the Limited Common Elements)</u>.

(a) **Governing Law.** The use of the Common Elements and the right of the Unit Owners with respect thereto shall be subject to and governed by the Act, the Condominium Instruments and the rules and regulations of the Board.

(b) **Use and Ownership Generally.** Each Unit Owner shall own an undivided interest in the Common Elements, in the percentage set forth in Exhibit B attached hereto and made a part hereof, as a tenant in common with all other Unit Owners. Except for (i) portions of the Common Elements which have been assigned to the Unit Owners by the Board pursuant to the provisions of the Condominium Instruments and (ii) the Limited Common Elements, each Unit Owner shall have the nonexclusive right to use the Common Elements for all purposes (including ingress and egress) incident to the use and occupancy of his Unit as a place of residence and a place for such other incidental uses permitted by the Condominium Instruments, and applicable zoning laws and regulations, which right shall be appurtenant to, and run with, his Unit.

(c) **Use of Limited Common Elements.** Each Unit Owner and occupant shall have the right to (i) the exclusive use and possession of the Limited Common Elements contiguous to and serving only the Unit of such Unit Owner or Occupant which right shall be appurtenant to, and run with the title to such Unit and shall not be separated from such unit, which shall specifically include any parking spaces which have been designated as limited common elements for the exclusive use of particular Unit Owners; and (ii) the use and possession of the Limited Common Elements serving the Unit of such Unit Owner or Occupant in common with one or more (but not all) other Units, which use or possession shall be to the exclusion of all other persons except the Unit Owner and Occupant of any such other Unit to which such Limited Common Elements shall respectively appertain, and (iii) the exclusive use and possession of any Limited Common Elements so designated and allocated in this Declaration or the Plat.

(d) **Transfer of Limited Common Elements.** The use of Limited Common Elements may be transferred between Unit Owners at their expense, provided that the transfer may be made only in accordance with the Condominium Instruments and the provisions of the Declaration. Each transfer shall be made by an amendment to the Declaration executed by all Unit Owners who are parties to the transfer and consented to by all other Unit Owners who have any right to use the Limited Common Elements affected. The amendment shall contain a certificate showing that a copy of the amendment has been delivered to the Board. The amendment shall contain a statement from the parties involved in the transfer which sets forth any changes in the

parties' proportionate shares. If the parties cannot agree upon a reapportionment of their respective shares, the Board shall decide such reapportionment. No transfer shall become effective until the amendment has been recorded. Rights and obligations in respect to any Limited Common Element shall not be affected, nor shall any transfer of it be effective unless a transaction is in compliance with the requirements of this Section and of the Act.

(e) **Guest Privileges.** The rights described in this Article, in and to the Common Elements (and the Limited Common Elements) shall extend to the Unit Owners and members of their immediate families and authorized Occupants, tenants, guests, visitors, agents, servants, invitees, customers and licensees of the Unit Owners, subject to reasonable rules and regulations of the Board with respect thereto.

(f) **Disclaimer of Bailee Liability.** Notwithstanding anything to the contrary contained in this Declaration, neither the Board, the Association, any Unit Owner, nor the Declarant or its beneficiary shall be considered a bailee of any personal property stored in the Common Elements and shall not be responsible for the security of such personal property or for any loss or damage thereto, whether or not due to negligence.

6. <u>Encroachments and Easements.</u>

(a) **Encroachments.** If as a result of the construction, repair, reconstruction, settlement or shifting of the Building, any part of the Common Elements encroaches or shall hereafter encroach upon any part of any Unit, or any part of any Unit encroaches or shall hereafter encroach upon any part of the Common Elements, or any portion of any Unit encroaches upon any part of any other Unit, valid easements for the maintenance of such encroachment and for use of such Common Elements are hereby established and shall exist for the benefit of such Unit or Common Elements so encroaching so long as all or any part of the Building containing such Unit or Common Elements so encroaching shall remain standing; provided, however, that in no event shall a valid easement for any encroachment or use of the Common Elements be created in favor of any Unit Owner if such encroachment or use is detrimental to or interferes with the reasonable use and enjoyment of the Property by any other Unit Owner or has been created by the Unit Owner or his agent through intentional, willful or negligent conduct.

(b) **Easements.**

(i) Easements are hereby declared and granted for utility purposes to the applicable telephone company, Commonwealth Edison Company, Peoples Gas and/or all other suppliers of utilities serving the Property and any person providing cable television or other commercial entertainment to any Unit Owners or the Property, including the right to install, lay, maintain, repair and replace water mains and pipes, sewer lines, gas mains, telephone wires and equipment, and electrical conduits, wires and equipment over, under, along and on any part of the Common Elements for the purpose of providing the Property with utility and commercial entertainment services together with the reasonable right of ingress to and egress from the Property for said purpose; and the Declarant, Board or Association may hereafter grant other or additional easements for utility purposes and for other purposes (including commercial entertainment purposes) including such easements as the Declarant may from time to time request including, but not limited to, such easements as may be required to construct, keep and maintain improvements upon the Common Elements, for the benefit of the Property, over, under, along and on any portion of said Common Elements, and each Unit Owner hereby grants the Board or Association an irrevocable power of attorney coupled with an interest to execute, acknowledge and record for and in the name of such Unit Owner, such instruments as may be necessary to effectuate the foregoing (provided that with

respect to all easements granted hereby or pursuant hereto, no Unit Owner shall be deprived of, or be subjected to material interference with, the use of his Unit or any Limited Common Element serving this Unit, other than reasonably and temporarily). Easements are also hereby declared and granted to install, lay, operate, maintain, repair and replace any pipes, wire, ducts, conduits, public utility lines, commercial entertainment lines, components of the communications systems, if any, or structural components, which may run through the walls of a Unit and which constitute or will constitute Common Elements, whether or not such walls lie in whole or in part within the Unit boundaries. Furthermore, easements are hereby granted to the suppliers of water to the Units to maintain and repair the meter located in a Unit, together with the reasonable right of ingress to and egress from the Unit for said purpose.

(ii) An easement is hereby granted in favor of the Association for access through any Unit to the extent reasonably required to read common electric meters and water meters, to inspect and service any sump pump and sewage ejector pump and to service common electric and water lines which provide electric and water service to the Building. The foregoing easement is limited by the requirement hereby imposed upon the Association to provide reasonable notice to the Unit Owner and Occupant of the Unit prior to obtaining access to the Unit; provided, however, such notice shall not be required in the case of emergency circumstances.

(iii) The Declarant hereby reserves to itself and the Association, and their respective successors and assigns, the right, without notice to, or the consent of, any Unit Owner or mortgagee of a Unit: (A) to record a supplement to the Plat showing the location of any or all such utility or commercial entertainment conduits, cables, pipes, electrical wiring, transformers and switching apparatus and other equipment "as built" and (B) to record, from time to time, additional supplements, showing additions, modifications and deletions to any or all of such conduits, cables, pipes, electrical wiring, transformers and switching apparatus and other equipment. Once the location of the easement to any such utility or other entity is shown by any supplement or additional supplement to the Plat as aforesaid, the easement granted by this Section (b) of Article 6 to such utility or other entity shall be limited to the area or areas located within ten (10) feet on either side of the equipment of such utility or other entity shown on such supplement or additional supplement. A power coupled with an interest is hereby granted to the Declarant and the Association, acting by and through their respective duly authorized officers, their respective successors, assigns, agents and designees, and each of them singly without the other's concurrence, as attorney-in-fact to do or cause the foregoing to be done. The acceptance of each deed, mortgage, trust deed or other instrument with respect to a Unit shall be deemed a grant to each said attorney-in-fact of the power to record any and all such supplements.

The cost of , perpetual Easements in, to, under, over, upon, through and about portions of the Residential Parcels, to use the Association for access through The Declarant hereby reserves to itself, and its successors and assigns, the right, without notice to, or the consent of, the Association.

(c) **Easements Appurtenant.** All easements and rights described herein are easements appurtenant, running with the Parcel, and shall inure to the benefit of and be binding on the undersigned, its successors and assigns, and any owner, purchaser, mortgagee and other person having an interest in said Parcel, or any part or portion thereof.

(d) **Deeds of Conveyance and Related Documents.** Reference in the respective deeds of conveyance, or in any mortgage or trust deed or other evidence of obligation, to the easements and rights described in the Declaration, shall be sufficient to create and reserve such easements and rights to the respective grantees, mortgagees and trustees of such parcels as fully and completely as though such easements and rights were recited fully and set forth in their entirety in such documents.

(e) **Public Dedication.** Upon approval by one hundred (100%) percent of the Unit Owners, portions of the Common Elements may be dedicated to a public body for purposes of streets or utilities. Any action pursuant to this Section (e) of Article 6 must be taken at a meeting of Unit Owners duly called for that purpose.

7. <u>Transfer of Individual Units.</u>

(a) **Unrestricted Transfers.** Subject to Section (b) below, a Unit Owner may, without restriction under the Declaration, sell, give, devise, lease or otherwise transfer his entire Unit. Notice of the transfer of an individual Unit, in the form of a true and correct copy of the executed contract between the Unit Owner and the Purchaser shall be given to the Board, in the manner provided in this Declaration for giving notices, within five (5) days following consummation of such transfer. In the event of the conveyance or transfer of any Unit to a trustee, the trustee or the beneficiary of the trust shall furnish a true and correct copy of the instrument or agreement creating the trust and any amendments thereto within five (5) days of any such transfer or of the amendment of any such trust instrument or agreement.

(b) **Limits on Lease Terms.** No Unit shall be leased by a Unit Owner for hotel or transient purposes or for a term less than six (6) months and no portion of a Unit which is less than the entire Unit shall be leased. Each lease of any one or more Units shall be in writing and a copy of every such lease, as and when executed, shall be furnished to the Board. The lessee under every such lease shall be bound by and subject to all of the obligations under the Declaration and Bylaws, of the Unit Owner making such lease and the failure of the lessee to comply therewith shall constitute a default under the lease which shall be enforceable by the Board or the Association, and the lease shall be deemed to expressly so provide. The Unit Owner making such lease shall not be relieved thereby from any of said obligations.

(c) **Financing of Purchase by Association.** The Board shall have authority to make such mortgage arrangements and other financing arrangements, and to authorize such special assessments proportionately among the respective Unit Owners, as the Board may deem desirable, in order to close and consummate the purchase or lease of any Unit, or interest therein, by the Association in the event the Association shall choose to acquire such Unit or interest therein. In no event, however, may financing of the purchase be secured by an encumbrance on any interest in the Property other than the Unit, or interest therein to be purchased or leased, and the percentage interest in the Common Elements appurtenant thereto.

(d) Miscellaneous.

(i) A transfer or lease of a Unit, or interest therein, by or to the Board or the Declarant shall not be subject to the provisions of this Article 7. This Section (d)(i) cannot be amended or deleted without the prior written consent of Declarant, so long as Declarant owns any Units.

(ii) The Association shall hold title to or lease any Unit, pursuant to the terms hereof, in the name of the Association, or a nominee thereof delegated by the Board, for the sole benefit of all Unit Owners. The Board shall have the authority at any time to sell, lease or sublease said Unit on behalf of the Association upon such terms as the Board shall deem desirable, but in no event

shall a Unit be sold for less than the amount paid by the Association to purchase said Unit unless Unit Owners owning not less than fifty-one percent (51%) of the total ownership of the Common Elements first authorize the sale for such lesser amount. All of the net proceeds from such sale, lease, or sublease shall be applied in such manner as the Board shall determine.

(iii) The Board may adopt rules and regulations, from time to time, not inconsistent with the provisions of this Article 7 for the purpose of implementing and effectuating said provisions.

8.    Association.

(a)  Not-For-Profit Corporation.  The Declarant or its agent, prior to the first annual meeting of Unit Owners, or the Association, thereafter, may cause the formation of an Illinois not-for-profit corporation for the purpose of facilitating the administration and operation of the Property and to act as the Association.

(b)  General Provisions.  Whether or not the Association is incorporated:

(i)  each Unit Owner shall be a member of such Association, which membership shall terminate upon the sale or other disposition by such member of his Unit, and at such time the new Unit Owner shall automatically become a member therein;

(ii)  the provisions of Exhibit C of this Declaration shall be adopted as the Bylaws of such Association; and

(iii)  the name of such Association shall be "The 2726 W. Cortez Avenue Condominiums Association", or a similar name.

9.    Maintenance, Repair and Replacement of the Units and the Common Elements.

(a)  Association Responsibility; Common Expenses.  The Association, at its expense, shall be responsible for the maintenance, repair, and replacement of those portions, if any, of each Unit which contribute to the support of the Building, excluding, however, all windows and window frames, all exterior doors and the interior surfaces of walls, ceilings and floors.  In addition, the Association shall maintain, repair, and replace all pipes, wires, conduits, ducts, flues, shafts and other facilities for the furnishing of utility services which may be located within the Unit boundaries and forming part of any system servicing more than one Unit, exclusive of any portions of the foregoing which may be located at or beyond the wall outlets, or which may be the responsibility of an individual Unit Owner under Section (b) below, or any other provision of this Declaration. Maintenance, repairs, and replacements of the Common Elements shall be performed by the Association acting by and through the Board as part of the Common Expenses, subject to the Bylaws of the Association.

Each Unit Owner shall pay his proportionate share of the expenses of administration and maintenance of the Common Elements and of any other expenses incurred in conformance with this Declaration and the By-Laws, or otherwise lawfully agreed upon (which expenses are sometimes hereinafter referred to as "Common Expenses"), including specifically, but not by way of limitation, expenses for the maintenance and repair of the Common Elements and any and all replacements and additions thereto and the costs of insurance procured by the Board and the reserves established in accordance with this Declaration and the By-Laws. Such proportionate share of the Common Expenses shall be in such amounts and at such times as determined in the manner provided in the By-Laws.  If any Unit Owner shall fail or refuse to make any such payment of the Common Expenses when due, the amount thereof shall constitute a lien on the

interest of such Unit Owner in the Property as provided in the Act; provided, however, that such lien shall be subordinate to the lien of a prior recorded first mortgage or trust deed on the interest of such Unit Owner, owned or held by a bank, insurance company, savings and loan association, or other lender, except for the amount of the proportionate share of Common Expenses which become due and payable from and after the date on which the said mortgage or trust deed owner or holder either takes possession of the Unit, accepts a conveyance of any interest therein (other than as security), or causes a receiver to be appointed.

(b) **Unit Owner Responsibility.** Except as otherwise provided in Section (a) above or Section (c) below, each Unit Owner shall furnish and be responsible for, at his own expense:

(i) All of the maintenance, repairs and replacements within his own Unit, all doors and outside windows and frames appurtenant thereto, and all internal installations of such Unit such as refrigerators, ranges, and other kitchen appliances, lighting fixtures and other electrical fixtures and plumbing, and any portion of any other utility service facilities located within the Unit, provided, however, that such maintenance, repairs and replacements as may be required for the bringing of water, gas and electricity to the Units, shall be furnished by the Board as part of the Common Expenses;

(ii) All of the decorating within his own Unit (initially and thereafter from time to time), including painting, wall papering, washing, cleaning, paneling, floor covering, draperies, window shades, curtains, lamps and other furnishings and interior decorating. Each Unit Owner shall be entitled to the exclusive use of the interior surfaces of the common walls and the interior surfaces of the vertical perimeter walls, floors and ceiling of his Unit, and such Unit Owner shall maintain such portions in good conditions at his sole expense as may be required from time to time;

(iii) All of the maintenance, repair, and replacements of the Limited Common Elements benefitting his Unit, in whole or in part (including, specifically, roof-top deck areas), except to the extent as otherwise directed by the Board or as is otherwise provided herein or in the Bylaws attached hereto, shall be performed by the respective Unit Owner benefitted thereby. In addition, each Unit Owner shall be individually responsible for the repair, maintenance and replacement of all door and window locks and hardware with respect to which each Unit Owner is entitled to the exclusive use. At the discretion of the Board, the Board may perform, or cause to be performed, such maintenance, repairs, and replacements of the Limited Common Elements and the cost thereof shall be assessed in whole or in part to Unit Owners benefitted thereby, and further, at the discretion of the Board, the Board may direct such Unit Owners, in the name and for the account of such Unit Owners, to arrange for such maintenance, repairs, and replacements, to pay the cost thereof with the funds of the Unit Owner, and to procure and deliver to the Board such lien waivers and contractor's or subcontractor's sworn statements as may be required to protect the Property from all mechanics' or materialmen's lien claims that may arise therefrom.

(c) **Effect of Insurance.** In the event that any repair or replacement to the Common Elements (including the Limited Common Elements) is made necessary by reason of any act or occurrence for which insurance is maintained by the Board pursuant to Article 11 hereof and for which insurance proceeds are available as provided in said Article 11, the Association, at its expense to the extent of such proceeds, and subject to Section (e) hereof, shall be responsible for the repair or replacement of such Common Elements.

(d)  Limitation of Association's Liability.  Nothing herein contained shall be construed to impose a contractual liability upon the Association for maintenance, repair and replacement, but the Association's liability shall be limited to damages resulting from negligence.  The respective obligations of the Association and Unit Owners set forth in this Declaration shall not be limited, discharged or postponed by reason of the fact that any such maintenance, repair or replacement is required to cure a latent or patent defect in material or workmanship in the construction or renovation of the building, nor because they may become entitled to proceeds under policies of insurance.  In addition, and notwithstanding anything hereinabove to the contrary, no Unit Owner shall have a claim against the Board or Association (or against the Declarant) for any work ordinarily the responsibility of the Board or Association, but which the Unit Owner himself has performed or paid for, unless the same shall have been agreed to in advance by the Board or Association or Declarant.

(e)  Damages Caused By Unit Owner and Related Parties.  If, due to the willful misconduct or negligent act or omission of a Unit Owner, or of a member of his family or household pet or of a guest or other authorized Occupant, customer, invitee or visitor of such Unit Owner, damage shall be caused to the Common Elements or to a Unit owned by others, or maintenance, repairs or replacements shall be required which would otherwise be a Common Expense, then such Unit Owner shall pay for such damage and such maintenance, repairs and replacements as may be determined by the Board.

(f)  Use of Common Equipment, Facilities and Fixtures.  To the extent that equipment, facilities and fixtures within any Unit or Units shall be connected to similar equipment, facilities or fixtures affecting or serving other Units or the Common Elements, then the use thereof by the individual Unit Owner shall be in all respects reasonable as it affects the other Unit Owners. The authorized representatives of the Association or the Board, or of the manager or managing agent for the Building, if any, shall be entitled to reasonable access to the individual Units as may be required in connection with maintenance, repairs or replacements of or to the Common Elements or any equipment, facilities or fixtures affecting or serving other Units or the Common Elements.

10.  Additions, Alterations or Improvements.

(a)  To The Common Elements.  The Board may authorize and charge as a Common Expense (or in the case of Limited Common Elements may charge the Unit Owners benefitted thereby) the cost of additions, alterations, or improvements to the Common Elements. The cost of any such work to the Common Elements may be paid out of a special assessment.

(b)  Made By Unit Owners.  Except as otherwise provided in this Section Article 10 below or Section (a) of Article 13 hereof, no additions, alterations or improvements shall be made by a Unit Owner to any part of the Common Elements and no additions, alterations or improvements shall be made by a Unit Owner to his Unit (where such work alters the structure of the Unit or increases the cost of insurance required to be carried by the Board hereunder) without the prior written consent of the Board.  The Board may but shall not be required to) condition its consent to the making of an addition, alteration or improvement by a Unit Owner upon the Unit Owner's agreement either (i) to be solely responsible for the maintenance of such addition, alteration or improvement, subject to such standards as the Board may from time to time set, or (ii) to pay to the Association from time to time the additional cost of maintenance and/or insurance as a result of the addition, alteration or improvement. If an addition, alteration or improvement is made by a Unit Owner without the prior written consent of the Board, then the Board may, in its discretion, take any of the following actions:

(i)  Require the Unit Owner to remove the addition, alteration or improvement and restore the Property to its original condition, all at the Unit Owner's expense; or

(ii) If the Unit Owner refuses or fails to properly perform the work required under (i), the Board may cause such work to be done and may charge the Unit Owner for the cost thereof as determined by the Board; or

(iii) Ratify the action taken by the Unit Owner, and the Board may (but shall not be required to) condition such ratification upon the same conditions which it may impose upon the giving of its prior consent under this Section.

11. **Insurance, Repair and Reconstruction.**

(a) **Insurance.** The Association shall acquire and pay for out of the Maintenance Fund herein provided for, the following:

(i) Such insurance as the Association is required to obtain under the provisions of the Act and such other insurance as the Association deems advisable in the operation, and for the protection, of the Common Elements and the Units. Any losses under such policies of insurance shall be payable, and all insurance proceeds recovered thereunder shall be applied and disbursed, in accordance with the provisions of this Declaration and the Act.

Such insurance shall include, without limitation, physical damage insurance on the Property (but excluding additions, alterations, improvements and betterments to the Units), subject to the following conditions: (A) such insurance shall be "bare wall" insurance with respect to the Units; (B) the Property shall be insured for an amount not less than one hundred percent (100%) of its full insurable replacement cost on a blanket basis; (C) replacement cost values are to be reviewed periodically by an independent appraiser, and the insurance policy or policies shall be endorsed with an agreed amount clause; and (D) perils to be covered by such policies shall be no less than "all risk" or "special form" on real property and "broad form" named perils on personal property, and such other perils as may be deemed appropriate by the Board. The cost of any and all appraisals for insurance purposes shall be Common Expenses.

The Association may engage the services of any bank or trust company authorized to do business in Illinois to act as trustee or agent on behalf of the Association for the purpose of receiving and disbursing the insurance proceeds resulting from any loss, upon such terms as the Association shall determine consistent with the provisions of this Declaration.

Each Unit Owner, other than the Declarant, shall notify the Association, in writing, of any additions, alterations or improvements to his Unit and he shall be responsible for any deficiency in any insurance loss recovery resulting from his failure so to notify the Association. The Association shall use its reasonable efforts to obtain insurance on any such additions, alterations or improvements, if such Unit Owner requests it to do so and if such Unit Owner shall make arrangements satisfactory to the Association to reimburse it for any additional premiums attributable thereto (and any increased premium charge therefor shall be assessed to that Unit Owner under the provisions of Section 9 of the Act); and in the absence of insurance on such additions, alterations or improvements, the Association shall not be obligated to apply any insurance proceeds to restore the affected Unit to a condition better than the condition existing prior to the making of such additions, alterations or improvements. If a Unit Owner fails to inform the Board as provided herein of any additions, alterations or improvements made by him and a penalty is assessed in the

adjustment of loss settlement, the Unit Owner shall be responsible for any such penalty.

All such policies of insurance shall contain standard mortgage clause endorsements in favor of the first mortgagee of each Unit and shall provide that such policies shall not be terminated, cancelled or substantially modified without at least thirty (30) days prior written notice to the mortgagee of each Unit.

(ii)   Comprehensive public liability and property damage insurance in such limits as the Association shall deem desirable, provided that such limits shall not be less than One Million Dollars ($1,000,000) per occurrence, for personal injury and/or property damage insuring the Association, the members of the Board, the managing agent, if any, and their respective agents and employees, and the Unit Owners from any liability in connection with the Property. The Declarant and its beneficiary shall be included as an additional insured in its capacity as Unit Owner. The Unit Owners shall be included as additional insureds but only with respect to that portion of the Property not reserved for their exclusive use.

(iii)   Such other forms of insurance as the Association shall elect to maintain in such amounts as the Board shall deem desirable or reasonable, including but not limited to such workmen's compensation insurance as may be necessary to comply with applicable laws; directors and officers liability insurance; fidelity coverage; and plate glass insurance.

(b)   **Premiums.**   Except as otherwise provided in this Declaration, premiums for all insurance obtained or maintained by the Association, and the cost of any appraisal which the Association deems advisable in connection with any insurance, shall be Common Expenses.

(c)   **General Policy Provisions.**  The insurance policies secured by the Association shall provide for the following:

(i)   with respect to the insurance provided for in (a)(ii) of this Article, for coverage of cross liability claims of one insured against another;

(ii)   a waiver of any rights to subrogation by the insuring company against any named insured; and

(iii)   that the insurance, as to the interest of the Board, shall not be invalidated by any act or neglect of any Unit Owner.

(d)   **Additional Policy Provisions.**   The Association may, but shall not be required to, secure policies providing:

(i)   with respect to the insurance provided for in Section (a)(i) of this Article 11, that the policy cannot be cancelled, invalidated or suspended on account of the conduct of one or more individual Unit Owners;

(ii)   with respect to the insurance provided for in Section (a)(i) of this Article 11, that the insurer shall not have the option to restore the Property, if the Property is sold or removed from the provisions of the Act.

(e)   **Unit Owners' Insurance.**   Each Unit Owner shall be responsible for insurance coverage on the furnishings and other items of personal property belonging to a Unit Owner, and any additions, alterations and improvements to his Unit (whether installed by such Unit Owner

or any prior Unit Owner or whether originally in his Unit); insurance for his personal liability to the extent not covered by insurance maintained by the Association; and his additional living expense. All policies of casualty insurance carried by each Unit Owner shall be without contribution with respect to the policies of casualty insurance obtained by the Board for the benefit of all Unit Owners as provided herein.

(f) **Definition of "Additions, Alterations and Improvements".** For purposes of the insurance requirements herein, "additions, alterations and improvements" shall mean any property (excluding personal property readily removable without damage to the Unit) attached to the Unit, including without limitation carpeting, flooring, wall covering, paint and paneling.

The Board shall not be responsible for obtaining physical damage insurance on any additions, alterations and improvements to a Unit or any personal property of a Unit Owner or any other insurance for which a Unit Owner is responsible hereunder.

(g) **Cancellation of Insurance.** Upon the cancellation of any policy of insurance which the Association is required to obtain hereunder, the Association shall notify each party insured thereunder of such cancellation.

(h) **Casualty - Sufficient Insurance Proceeds.** In the event of fire or other disaster, the insurance proceeds, if sufficient to reconstruct the Building, shall be applied to restore the Building to substantially the same condition in which it existed prior to the fire or other disaster, with each Unit and Common Elements to have the same vertical and horizontal boundaries as before the fire or other disaster.

(i) **Casualty Insufficient Insurance Proceeds.** If, in the event of fire or other disaster, the insurance proceeds are insufficient to restore the Building as set forth in the preceding Section (h) then:

(i) The Board shall call a meeting of Unit Owners to be held not later than the first to occur of (1) the expiration of thirty (30) days after the final adjustments of the insurance claims, or (2) the expiration of ninety (90) days after the fire or other disaster which caused the damage.

(ii) At such meeting, the Board shall present an estimate of the costs of repair or reconstruction, together with an estimate of the part thereof which must be raised by way of special assessment.

(iii) The Building shall be restored and the proposed special assessment shall be levied only upon the vote of the Unit Owners whose Ownership constitutes seventy-five percent (75%) of the Ownership of the Common Elements.

(iv) If the Unit Owners do not vote to restore the Building at the meeting provided for in Subsection (i) above, then the Board may, at its discretion, call another meeting or meetings of Unit Owners to reconsider the question. If the Unit Owners do not vote to restore the Building within 180 days after the fire or other disaster, then the Board may (but shall not be required to) record a notice as permitted under Section 14 of the Act.

(v) If the Unit Owners do not vote to restore the Building under the provisions of the immediately preceding Subsection (iv) and the Board does not record a notice as permitted under Section 14 of the Act, then the Unit Owners may, with the consent of all first Mortgagees, withdraw any portion of the Building so affected by such fire or other disaster from the Act. Upon the

withdrawal of any Unit or portion thereof, the percentage of interest in the Common Elements appurtenant to such Unit shall be reallocated among the remaining Units on the basis of the relative percentage interest of the remaining Units. If only a portion of a Unit is withdrawn, the percentage of interest appurtenant to the Unit shall be reduced accordingly, upon the basis of diminution of the market value of the Unit, as determined by the Board. The allocation of any insurance, or other proceeds to any withdrawing or remaining Unit Owners shall be on an equitable basis, which need not be a Unit's percentage interest in the Common Elements. Any insurance or other proceeds available in connection with the withdrawal of any portion of the Common Elements, not necessarily including the Limited Common Elements, shall be allocated on the basis of each Unit Owner's percentage interest in the Common Elements. Any such proceeds available from the withdrawal of Limited Common Elements shall be distributed in accordance with the interest of those entitled to their use. Upon the withdrawal of any Unit or portion thereof, the responsibility for the payment of assessments on such Unit or portion thereof so withdrawn shall cease or shall be equitably reduced.

12. <u>**Separate Real Estate Taxes.**</u> It is understood that real estate taxes are to be separately taxed to each Unit Owner for his Unit and its corresponding percentage of Ownership of the Common Elements, as provided in the Act. In the event that for any year such taxes are not separately taxed to each Unit Owner, but are taxed on the Property as a whole, then the Association shall collect from each Unit Owner his proportionate share thereof in accordance with his respective percentage of Ownership of the Common Elements, and such taxes, levied on the Property as a whole, shall be considered a Common Expense.

13. <u>**Use and Occupancy of Units and Common Elements.**</u> The Units and Common Elements shall be occupied and used as follows:

(a) **Permitted Uses.** No Unit of the Property shall be used for other than housing and such other purposes as may be permitted by relevant zoning laws, and the related common purposes for which the Property was designed. Each Unit or any two or more adjoining Units used together shall be used as a residence for a single family and such permitted uses under zoning law or such other uses permitted by this Declaration and for no other purposes. That part of the Common Elements separating any two or more adjoining Units used together may be altered to afford ingress and egress to and from such adjoining units in accordance with the rules and regulations of the Association and upon such conditions as shall reasonably be determined by the Association, provided that a Unit Owner intending to so alter the Common Elements as aforesaid, shall notify the Association at least twenty-one (21) days prior to the commencement of any such alteration.

(b) **Signs.** No "For Sale" or "For Rent" signs, advertising or other displays shall be maintained or permitted on any part of the Property except at such location and in such form as shall be determined by the Association. The right is reserved by the Declarant or its agent or agents, to place "For Sale" or "For Rent" signs on any unsold or unoccupied Units, and on any part of the Common Elements, and the right is hereby given to any mortgagee, who may become the owner of any Unit, to place such signs on any Unit owned by such mortgagee. Until all the Units are sold and conveyed, the Declarant shall be entitled to such access, ingress and egress, to the Property as it shall deem necessary in connection with the sale of or work in the Building or any Unit. The Declarant shall have the right to use any unsold Unit or Units as a model apartment or for sales or display purposes, and to relocate the same from time to time, and to maintain on the Property, until the sale of the last Unit, all models, sales offices and advertising signs or banners, if any, and lighting in connection therewith.

(c) **Obstructions, Maintenance.** There shall be no obstruction of the Common Elements nor shall anything be stored in the Common Elements without prior consent of the Association

except as herein expressly provided. Each Unit Owner shall be obligated to maintain and keep his own Unit and the Limited Common Elements appurtenant thereto (except where otherwise provided in the Condominium Instruments) in good, clean order and repair. The use and the covering of the interior surfaces of windows, whether by draperies, shades or other items visible on the exterior of the Building, shall be subject to the rules and regulations of the Association.

(d) **Impact on Insurance**. Nothing shall be done or kept in any Unit or in the Common Elements which will increase the rate of insurance on the Property, or contents thereof, applicable for residential and permitted commercial uses, without the prior written consent of the Association. No Unit Owner shall permit anything to be done or kept in his Unit or in the Common Elements which will result in the cancellation of any insurance maintained by the Association, or which would be in violation of any law. No waste shall be committed in the Common Elements.

(e) **Outside Displays**. Unit Owners shall not cause or permit anything to be hanged or displayed on the outside of the windows or placed on the outside walls of the Building and no sign, awning, canopy, shutter, radio or television antenna (except as installed as of the date this Declaration is recorded or except as thereafter reinstalled by Declarant or the Association) shall be affixed to or placed upon the exterior walls or roof or any part thereof or on the Common Elements, without the prior written consent of the Association. All through-wall air conditioners and sleeves in which said air conditioners are inserted, installed as of the date this Declaration is recorded, may be maintained, removed and replaced and shall be repaired as necessary by the Unit Owner owing the Unit which such air conditioner and sleeve serves. No air conditioning unit of whatever type other than those installed as of the date this Declaration is recorded or those thereafter installed by the Declarant or the Association may be installed without the prior written permission of the Association.

(f) **Animals**. No animals, livestock, fowl or poultry of any kind shall be raised, bred, or kept in any Unit or in the Common Elements, except that household pets, such as dogs, cats and birds, may be kept in Units, subject to rules and regulations adopted by the Association, which rules or regulations may exclude any kind of pet by type or category, provided that permitted household pets are not kept, bred, or maintained for any commercial purpose; and provided further that any such authorized pet causing or creating a nuisance or unreasonable disturbance, after at least two (2) separate written notices from the Association, shall be permanently removed from the Property upon five (5) days' prior written notice from the Association.

(g) **Offensive Activities** No noxious or offensive activity shall be carried on in any Unit or in the Common Elements, nor shall anything be done therein, either willfully or negligently, which may be or become an annoyance or nuisance to the other Unit Owners or occupants.

(h) **Structural Integrity**. Except as constructed or altered by or with the permission of the Declarant or the Association, nothing shall be done in any Unit or in, on or to the Common Elements which would impair the structural integrity, safety or soundness of the Building or which would structurally change the Building.

(i) **Miscellaneous Restrictions**. No clothes, sheets, blankets, laundry or other articles of any kind shall be hung out or exposed on any part of the Common Elements. The Common Elements shall be kept free and clear of rubbish, debris and other unsightly materials.

(j) **Personal Property Restrictions**. No benches, chairs or other personal property shall be left on, nor shall any playing, lounging, parking of baby carriages, playpens, bicycles, wagons, toys or vehicles be permitted on, any part of the Common Elements without prior consent of, and subject to any rules and regulations of the Association.

(k)  **Alterations.**  Nothing shall be altered or constructed in or removed from the Common Elements except as constructed or altered by or with the permission of the Declarant at any time prior to the first annual meeting of the Unit Owners and thereafter the written consent of the Association shall be required.

(l)  **Release and Waiver.**  Each Unit Owner and the Association hereby waive and release any and all claims which he or it may have against any other Unit Owner, the Association, members of the Board, the Declarant, its beneficiary, and their respective employees and agents, for damage to the Common Elements, the Units, or to any personal property located in the Units or Common Elements, caused by fire or other casualty or any act or omission referred to in Section (m) of this Article 13, to the extent that such damage is covered by fire or other form of hazard insurance.

(m)  **Liability of Unit Owner.**  If the act or omission of a Unit Owner, or of a member of his family, household pet, guest, occupant or visitor of such Unit Owner, shall cause damage to the Common Elements or to a Unit or Units owned by others, or maintenance, repairs or replacements shall be required which would otherwise be a Common Expense, then such Unit Owner shall pay for such damage and such maintenance, repairs and replacements, as may be determined by the Association, to the extent such payment is not waived or released under the provisions of Section (l) of this Article 13.

(n)  **Restriction on Release and Waiver.**  Any release or waiver referred to in Sections (l) or (m) of this Article 13 shall be valid only if such release or waiver does not affect the right of the insured under the applicable insurance policy to recover thereunder.

(o)  **Electrical, Mechanical Equipment.**  No Unit Owner shall overload the electric wiring in the Building, or operate any machines, appliances, accessories or equipment in such manner as to cause, in the judgment of the Association, an unreasonable disturbance to others.  No Unit Owner shall connect any machine, appliance, accessory or equipment to the heating system or plumbing system, without the prior written consent of the Association.

14.  <u>Violation of Declaration</u>.  The violation of any rule or regulation adopted by the Association or the breach of any covenant or provision herein or in the Bylaws, shall, in addition to any other rights provided for in this Declaration or the Bylaws, give the Association the right: (a) to enter upon the Unit, or any portion of the Property upon which, or as to which, such violation or breach exists and to summarily abate and remove, at the expense of the defaulting Unit Owner, any structure, thing or condition that may exist thereof contrary to the intent and meaning of the provisions hereof, and neither the Association nor the officers, employees or agents thereof shall thereby be deemed guilty in any manner of trespass; (b) to enjoin, abate or remedy by appropriate legal proceedings, either at law or in equity, the continuance of any breach (or any other nuisance for which the board deems appropriate to secure abatement); or (c) to take possession of such Unit Owner's interest in the Property and to maintain an action for possession of such Unit in the manner provided by law.

Provided, however, that, except in cases of emergency where damage to persons or property is threatened, the Association shall not take any such action unless it has (a) first given the Unit Owner alleged to have violated any restriction, condition or regulation adopted by the Association or to be in breach of any covenant or provision herein or in the Bylaws contained, a hearing on such allegations pursuant to rules and regulations adopted by the Association, (b) the Association shall have determined such allegations to be true and (c) the Unit Owner shall not have desisted from such violation or breach or shall not have taken such steps as shall be necessary to correct such violation or breach within such reasonable period of time as determined by the Association and communicated to the Unit Owner. Any and all costs and expenses incurred by the Association in the exercise of its authority as granted in this Article 14, including but not limited to court costs, reasonable attorneys' fees, and costs of labor and materials shall be paid by the Unit Owner in violation, and, until paid by such Unit Owner, shall constitute a lien on the interest of such Unit Owner in the Property, which lien may be perfected and foreclosed in the manner provided in Section 9 of the Act with respect to liens for

failure to pay a share of the Common Expenses. Any such lien shall be junior and subordinate to any previously recorded lien of a First Mortgagee with respect to such Unit.

Furthermore, if after hearing and finding as aforesaid and failure of the Unit Owner to desist from such violation or to take such corrective action as may be required, the Association shall have the power to issue to the defaulting Unit Owner a ten (10) days' notice in writing to terminate the rights of the said defaulting Unit Owner to continue as a Unit Owner and to continue to occupy, use or control his Unit and thereupon an action in equity may be filed by the Association against the defaulting Unit Owner for a decree declaring the termination of the defaulting Unit Owner's right to occupy, use or control the Unit owned by him on account of the violation of a rule or breach of covenant or provision as aforesaid and ordering that all the right, title and interest of the Unit Owner in the Property shall be sold at a judicial sale upon such notice and terms as the court shall establish, except that the court shall enjoin and restrain the defaulting Unit Owner from re-acquiring his interest at such judicial sale or by virtue of the exercise of any right of redemption which may be established, and except that the court shall direct that any existing first mortgage be retired out of the proceeds of such judicial sale. The proceeds of any such judicial sale shall first be paid to discharge court costs, reasonable attorneys' fees and all other expenses of the proceeding and sale, and all such items shall be taxed against the defaulting Unit Owner in said decree. Any balance of proceeds after satisfaction of such charges and any unpaid assessments hereunder or any liens shall be paid to the Unit Owner. Upon the confirmation of such sale, the purchaser at the sale shall thereupon be entitled to a deed to the Unit and to immediate possession of the Unit sold and may apply to the court for a writ of assistance for the purpose of acquiring such possession and it shall be a condition of any such sale, and the decree shall so provide, that the purchaser shall take the interest in the Property sold subject to this Declaration. Any Unit Owner in default hereunder or under the provisions of the Bylaws or any rule or regulation adopted by the Association shall pay to the Association, as an agreed Common Expense with respect to his Unit, all attorneys' fees incurred by the Association in enforcing the provisions of the Bylaws, this Declaration or the rules and regulations of the Association as to which the Unit Owner is in default. Until such fees are paid by the Unit Owner, the amount thereof shall constitute a lien on the interest of the Unit Owner in the Property, which lien may be perfected and foreclosed in the manner provided in Section 9 of the Act with respect to liens for failure to pay a share of the Common Expenses. Any such lien shall be junior and subordinate to any previously recorded lien of a First Mortgage with respect to such Unit.

15. **Entry by Association**. The Association or its officers, agents or employees may enter any Unit when necessary in connection with any painting, maintenance, repair or construction for which the Association is responsible, or which the Association had the right or duty to do. Such entry shall be made with as little inconvenience to the Unit Owner as practicable, and except in the event of emergency shall be done upon reasonable notice to the Unit Owner. Any damage caused thereby shall be repaired by the Association as a Common Expense.

16. **Grantees**. Each grantee of the Declarant, each purchaser under Articles of Agreement for Deed and each tenant under a lease accepts the same subject to all easements, restrictions, conditions, covenants, reservations, liens and charges, the Bylaws, the rules and regulations of the Association, and the jurisdiction, rights and powers created or reserved by this Declaration, and the provisions of the Act, as at any time amended, and all easements, rights, benefits and privileges of every character hereby granted, created, reserved or declared, and all impositions and obligations hereby imposed shall be deemed and taken to be covenants running with the land, and shall bind any person having at any time any interest or estate in said land, and shall inure to the benefit of each grantee in like manner as though the provisions of this Declaration were recited and stipulated at length in each and every deed of conveyance.

17. **Failure to Enforce**. No terms, obligations, covenants, conditions, restrictions or provisions imposed hereby or contained herein shall be abrogated or waived by any failure to enforce the same, no matter how many violations or breaches may occur.

18. **Notices**. Whenever any notice is required to be given under the provisions of this Declaration, or the Bylaws, a waiver thereof in writing by the person or persons entitled to such notice, whether before or at the time stated therein, shall be deemed equivalent to the giving of such notice, provided such waiver or the time of giving same is not contrary to the provisions of the Act. Notices required to be given to any devisee or personal

representative of a deceased Unit Owner shall be delivered by mail to such party at his or its address appearing in the records of the court wherein the estate of such deceased owner is being administered.

**19.** **Amendments**. Except as herein otherwise provided, the provisions of Articles 1, 2, 3, 4, 5, 6, 7, 9, 13, 26, 27 and this Article 19 of this Declaration, may be amended, changed or modified by an instrument in writing setting forth such amendment, change or modification, signed and acknowledged by all members of the Board, all of the Unit Owners and each First Mortgagee having a bona fide lien of record against any Unit.

The other provisions of this Declaration may be amended, changed or modified, upon approval of the Unit Owners having at least two thirds (2/3) of the total vote called for that purpose by an instrument in writing setting forth such amendment, change or modification, signed and acknowledged by an authorized officer of the Board and containing an affidavit by an officer of the Association certifying that (i) one hundred percent (100%) (or sixty-six and two-thirds percent (66 2/3%), as the case may be) of the Unit Owners have approved such amendment, change or modification and (ii) a copy of the amendment, change or modification has been mailed by certified mail to all First Mortgagees having bona fide liens of record against any Unit, not less than ten (10) days prior to the date of such affidavit.

**20.** **Arbitration**. Any controversy between Unit Owners or any claim by a Unit Owner against the Association or another Unit Owner arising out of or relating to the Declaration, Bylaws, or rules and regulations of the Association shall be settled by arbitration, and judgment upon the award rendered by the arbitrator may be entered in court having jurisdiction thereof.

**21.** **Condemnation**. In the event of a taking or condemnation by competent authority of any part of the Property, the Association shall, if necessary, restore the improvements on the remaining portion of the Property to conform as closely as possible to the general design, structure and material used with respect to the improvements as they existed prior to the taking or condemnation. In the event that part or all of one or more Units is taken or condemned, then the portions so taken or condemned shall be deemed to have been removed from the provisions of the Act and the percentage of the Ownership interest in the Common Elements allocated to such Unit or portion thereof (as determined by the Board on the basis of diminution in market value of the Unit) shall be reallocated among the remaining Units on the basis of the relative percentage of Ownership interest in the Common Elements of the remaining Units.. In such cases, this Declaration and the Plat shall be amended accordingly, pursuant to the provisions of the Act. The allocation of any condemnation award, or other proceeds to any withdrawing or remaining Unit Owner shall be on an equitable basis, which need not be a Unit's percentage interest in the Common Elements. Any condemnation award or other proceeds available in connection with the withdrawal of any portion of the Common Elements, not necessarily including the Limited Common Elements, shall be allocated on the basis of each Unit Owner's percentage interest in the Common Elements. Any such proceeds available from the withdrawal of Limited Common Elements shall be distributed in accordance with the interests of those entitled to their use. Upon the withdrawal of any Unit or portion thereof, the responsibility for the payment of assessments on such Unit or portion thereof so withdrawn shall cease or shall be equitably reduced.

**22.** **Violation of Certain Rules**. If any of the options, privileges, covenants or agreements set forth in this Declaration shall be unlawful or void for violation of (a) the rule against perpetuities or some analogous statutory provision, (b) any rule prohibiting restraints on alienation, or (c) any other statutory or common law rules imposing time limits, then such provisions shall continue only until twenty-one (21) years after the death of the survivor of the now living lawful descendants of George W. Bush, the now incumbent President of the United States.

**23.** **Severability**. The invalidity of any restriction hereby imposed, or of any provision hereof, or of any part of such restriction or provision, shall not impair or affect in any manner the validity, enforceability or effect of the rest of this Declaration and all of the terms hereof are hereby declared to be severable.

**24.** **Construction**. The provisions of this Declaration shall be liberally construed to effectuate its purpose of creating a uniform plan for the development and operation of a condominium development.

25.    **Changes or Modifications by the Declarant**.  Until the first annual meeting of Unit Owners is called, the Declarant, or its successors or assigns, shall have the right to change or modify the Condominium Instruments, which change or modification shall be effective upon the recording thereof; provided, however, that such right shall only be exercised (i) to bring the Declaration into compliance with the Act, (ii) to correct clerical or typographical errors in the Declaration, or (iii) to conform the Condominium Instruments to the requirements of FHLMC or the Federal National Mortgage Association with respect to condominium projects.  In furtherance of the foregoing, a power coupled with an interest is hereby reserved and granted to the Declarant to make any change or modification as authorized hereunder on behalf of each Unit Owner as attorney-in-fact for such Unit Owner.  Each deed, mortgage, trust deed, other evidence or obligation or other instrument affecting a Unit and the acceptance thereof shall be deemed to be a grant and acknowledgment of, and a consent to the reservation of, the power of the Declarant as aforesaid.  The limitations contained in this Article 25 shall not affect other amendment rights specifically given to the Declarant in the Condominium Instruments, or which Declarant has under the Act or the Condominium Instruments as a result of being a Unit Owner or acting in the place of the Board.

26.    **Mortgages.**  The following provisions are intended for the benefit of each holder of a recorded first mortgage or trust deed encumbering a Unit Ownership ("First Mortgagee") and to the extent, if at all, that any other provisions of this Declaration conflict with the following provisions, the following provisions shall control:

(a)    Upon request in writing to the Association identifying the name and address of the First Mortgagee or the insurer or guarantor of a recorded first mortgage or trust deed on a Unit ("Insurer or Guarantor") and the Unit number, the Association shall furnish each First Mortgagee, Insurer or Guarantor a written notice of any Unit Owner's obligations under this Declaration which is not cured within thirty (30) days.  Any First Mortgagee of a Unit, as well as any other holder of a prior recorded mortgage on a Unit Ownership, who comes into possession of the said Unit Ownership pursuant to the remedies provided in the mortgage, foreclosure of the mortgage, or deed (or assignment) in lieu of foreclosure shall, to the extent permitted by law, take such Property free of any claims for unpaid assessments or charges in favor of the Association against the mortgaged Unit Ownership which became due prior to (i) the date of the transfer of title or (ii) the date on which the holder comes into possession of the Unit Ownership, whichever occurs first.

(b)    Upon request in writing, each First Mortgagee, Insurer or Guarantor shall have the right:

(i) to examine current copies of this Declaration, all amendments, the By-Laws, rules and regulations and the books and records of the Association during normal business hours;

(ii) to receive, without charge and within a reasonable time after such request, any annual audited or unaudited financial statements which are prepared and distributed by the Association to the Unit Owners at the end of each of its respective fiscal years;

(iii) to receive written notices of all meetings of the Association and to designate a representative to attend all such meetings;

(iv) to receive written notice of any decision by the Unit Owners to make a material amendment to the Declaration (except the Amendments described in Section 25), By-Laws or Articles of Incorporation;

(v) to receive written notice of any lapse, cancellation or modification of any insurance policy or fidelity bond maintained by the Association;

(vi)  to receive written notice of any action which would require the consent of a specified percentage of First Mortgagees;

(vii)  to receive written notice of any change in the boundaries in any Unit or in the percentage interest in the Common Elements or Limited Common Elements of any Unit Owner; and

(viii)  to receive written notice of any delinquency in payment by the Unit Owner of his or her share of Common Expenses or any other delinquency under this Declaration which may have continued uncured for more than sixty (60) days.

(c)  No provision of this Declaration or the Articles of Incorporation of the Association or any similar instrument pertaining to the Property or the Units therein shall be deemed to give a Unit Owner or any other party priority over the rights of the First Mortgagees pursuant to their mortgages in the case of distribution to Unit Owners of insurance proceeds or condemnation awards for losses to or a taking of the Units, or the Common Elements, or any portion thereof or interest therein.  In such event, the First Mortgagees, Insurers or Guarantors of the Units affected shall be entitled, upon specific written request, to timely written notice of any such loss.

(d)  Unless the First Mortgagees of sixty-seven percent (67%) of the Unit Ownerships which are a part of the Property have given their prior written approval, neither the Association nor the Unit Owners shall be entitled to:

(i)  by act or omission seek to abandon or terminate the condominium regime, except for abandonment provided by the Act in case of substantial loss to or condemnation of the Units or the Common Elements.

(ii)  change the pro rata interest or obligations of any Unit Owner for (1) purposes of levying assessments or charges or allocating distributions of hazard insurance proceeds or condemnation awards and (2) determining the pro rata share of ownership of each Unit Owner in the Common Elements, except as provided in Section 25 hereof;

(iii)  use hazard insurance proceeds for losses to any portion of the Property (whether to Units or to Common Elements) for other than the repair, replacement, or reconstruction of such improvements, except as provided by the Act in case of substantial loss to the Units or the Common Elements.

27.  **Sale of the Property**.  At a meeting duly called for such purpose and attended by all Unit Owners, the Unit Owners by affirmative vote of one hundred percent (100%) of the Unit Owners, may elect to sell the Property as a whole.  Within ten (10) days after the date of the meeting at which such sale was approved the Board shall give written notice of such action to the holder of any duly recorded mortgage or trust deed against any Unit. Such action shall be binding upon all Unit Owners, and it shall thereupon become the duty of every Unit Owner to execute and deliver such instruments and to perform all acts as in manner and form may be necessary to effect such sale."

# EXHIBIT B

## LIST OF UNITS AND PERCENTAGE OWNERSHIP

## INTEREST IN THE COMMON ELEMENTS

| Unit | Ownership Percentage | Parking Space LCE |
|---|---|---|
| 1 | 44.00% | P-1 |
| 2 | 26.00% | P-2 |
| 3 | 30.00% | P-3 |
| TOTAL | 100.00% | |

New Exhibit B · Percentage Interest

# EXHIBIT C

# BYLAWS
## OF
## 2726 W. CORTEZ AVENUE CONDOMINIUM ASSOCIATION

These Bylaws are attached to and made a part of the Declaration of Condominium Ownership and Easements, Restrictions and Covenants for The 2726 W. Cortez Avenue Condominiums ("Declaration"). This document adopts the definitions of terms given in the Declaration and the Act.

## ARTICLE I
### General Provisions

The 2726 W. Cortez Avenue Condominiums Association (the "Association") is responsible for the overall administration of the property through its duly elected Board. Whether or not incorporated, the Association shall have such powers, not inconsistent with the Act, as are now and may hereafter be granted by the General Not-For-Profit Corporation Act of the State of Illinois. The Association shall have and exercise all powers necessary or convenient to effect any or all of the purposes for which the Association is organized and to do every other act not inconsistent with law which may be appropriate to promote and attain the purposes set forth in the Act or the Condominium Instruments.

## ARTICLE II
### Members

**Section 2.1  Classes of Members, Membership, and Termination Thereof.** The Association shall have one class of members. Each Unit Owner shall be a member of the Association, which membership shall terminate upon the sale or other disposition of such member's Unit, at which time the new Unit Owner shall automatically become a member of the Association. Such termination shall not relieve or release any such former Unit Owner from any liability or obligation incurred under or in any way connected with the condominium or the Association, during the period of such ownership and membership in the Association. Furthermore, such termination shall not impair any rights or remedies which the Board or others may have against such former Unit Owner arising from, or in any way connected with, such ownership and membership and the covenants and obligations incident thereto. No certificates of stock or other certificates evidencing membership shall be issued by the Association.

In the event that a Unit Owner other than the Declarant sells his or its Unit pursuant to an installment contract for purchase, the said purchaser shall, during such times as he or she resides in the Unit, (unless the seller of the Unit retains in writing any or all of said rights) have the following rights in connection with said Unit Ownership: the purchaser (i) shall be counted toward a quorum for purposes of election of members of the Board at any meeting of the Unit Owners called for said purpose, (ii) shall have the right to vote for the election of members of the Board, and (iii) may be elected to and serve on the Board. In no event may the seller and purchaser be counted towards a quorum simultaneously, or be permitted to vote for a particular office or be elected to and serve on the Board. Satisfactory evidence of the installment contract shall be made available to the Association or its agents. For purposes of this Section 2.1, "installment contract" shall have the same meaning as set forth in Section 1(e) of The Dwelling Unit Installment Contract Act (ILCS 75/0.01, et seq.), which is: "any contract or agreement, including contracts for deeds, bonds for deeds or any other sale or legal device, whereby a contract seller agrees to sell and a buyer agrees to buy a dwelling structure, wherein the consideration for such sale is payable in installments for a period of at least one year after buyer takes possession of the dwelling structure and the contract seller continues to have an interest, or security for the purchase price or otherwise in that property."

Section 2.2 <u>Votes and Voting Rights</u>.

(a) Until the date of the first annual meeting of the members, as provided in Section 3.1 hereof, no member of the Association shall have the right to elect the Board of Managers. All such members of the Board of Managers shall be appointed and shall hold office as provided in Section 6.2 of these Bylaws, unless otherwise required by the Act.

(b) Commencing with the date of the said first annual meeting of the members, the total number of votes of all members shall be 100. Each member shall be entitled to the number of votes equal to his percentage ownership interest in the Common Elements (as defined in the Declaration) times 100 at the time any matter is submitted to a vote of the members.

(c) Except as otherwise provided in Section 2.2(d), there shall be one person with respect to each Unit Ownership who shall be entitled to vote at any meeting of the Unit Owners. Such person (the "Voting Member") may be the Unit Owner or one of the group composed of all the owners of a Unit Ownership, or be some person designated by such Unit Owner or Unit Owners or his duly authorized attorney-in-fact to act as proxy on his or their behalf as set forth in Section 3.6 of these Bylaws. The person(s) designated by the Declarant with respect to any Unit Ownership owned by the Declarant shall also have the right to vote at any meetings of the Board for so long as the Declarant shall retain the right to so designate a Board member. If a Unit Owner is a trust, then the voting rights of such Unit Owner may be exercised by a beneficiary of such trust, and if a Unit Owner or such a beneficiary is a corporation or partnership, then the voting rights of said Unit Owner or beneficiary may be exercised by an officer, partner or employee of such Unit Owner or beneficiary.

(d) If a Unit is owned by more than one person, the voting rights with respect to such Unit shall not be divided, but shall be exercised as if the Unit Owner consisted of only one person in accordance with the proxy or other designation made by the persons constituting such Unit Owner. If only one of such persons constituting such Unit Owner is present, he shall be entitled to cast the votes allocated to such Unit. If more than one of such persons constituting such Unit Owner are present, the votes allocated to such Unit may be cast only in accordance with the agreement of a majority in interest of such persons. Agreement by a majority in interest of such persons shall be deemed to exist if any of such persons casts the votes allocated to such Unit without protest being made promptly to the person presiding over the meeting by any such persons constituting such Unit Owner.

(e) Any specified percentage of the members, whether majority or otherwise, for purposes of voting or for any other purpose, wherever provided in these Bylaws, shall mean such percentage of the total number of votes hereinabove set forth. Such percentage shall be computed in the same manner as is a specified percentage of the Unit Owners of the Condominium as provided in the Declaration, provided, however, that when 30% or fewer of the Units, by number, possess over 50% in the aggregate of the votes as provided herein, any percentage vote of the members specified herein or in the Declaration shall require the specified percentage by number of Units rather than by percentage of interest in the Common Elements allocated to Units that would otherwise be applicable.

Section 2.3 <u>Transfer of Membership</u>. Membership in this Association is not transferable or assignable, except as provided in Section 2.1 hereof.

ARTICLE III
Meetings of Members

Section 3.1 <u>Annual Meeting</u>. Until the election of the initial Board, the same rights, titles, powers, privileges, trusts, duties and obligations vested in or imposed upon the Board by the Act and in the Declaration and Bylaws shall be held and performed by the Declarant through its agents or designees. The first annual meeting of the members shall be held on such date as is fixed by the Declarant, which date shall in no event be

later than the earlier of (a) three years from the date the Declaration is recorded in the Office of the Recorder of Cook County, Illinois, and (b) sixty (60) days from the date when 75% of the Units have been conveyed by the Declarant. The Declarant shall give at least twenty-one (21) days' notice of such meeting to elect the initial Board and shall provide to any Unit Owner within three (3) business days of the meeting, the names, addresses, telephone numbers (if available), and weighted vote of each Unit Owner entitled to Vote at such meeting. Any Unit Owner shall be provided with the same information within three (3) business days of the meeting, with respect to each subsequent meeting to elect members of the Board. After the first annual meeting, an annual meeting of the members for the purpose of electing Board members and for the transaction of such other business as may come before the meeting shall be held on such date as is selected by the Board which date is within thirty (30) days before or after the anniversary of the first annual meeting of the members. If the election of Members of the Board shall not be held on the day designated herein for any annual meeting, or at any adjournment thereof, the Board shall cause the election to be held at a special meeting of the members called as soon thereafter as may be convenient.

Section 3.2 **Special Meeting**. Special meetings of the members may be called by the Board, the President, or by the members, provided that at least two-thirds (2/3) of the members shall be required to join in or authorize any such call made by the members. All matters to be considered at such special meetings of the members that have been called by the members as aforesaid shall first be submitted in writing to the Board not less than ten (10) days prior to the date of such special meeting.

Section 3.3 **Place and Time of Meeting**. All meetings of the members shall take place at 7:30 P.M., in some section of the Property designated by the person or persons calling the meeting, or at such other reasonable place or time designated by the Board or the person or persons calling the meeting.

Section 3.4 **Notice of Meeting**. Written or printed notice stating the purpose, place, day and hour of any meeting of members shall be mailed or delivered to each member entitled to vote at such meeting, not less than ten (10) days nor more than thirty (30) days before the date of such meeting, by or at the direction of the President or the Secretary, or the officer or persons calling the meeting, except that notice of the first annual meeting of the members shall be given to the members at least twenty-one (21) days prior thereto. The notice of a meeting shall be deemed mailed when deposited in the United States mail addressed to the member at his address as it appears on the records of the Association (or to the Unit of such member if no other address has been given to the Board), with proper postage thereon prepaid.

Section 3.5 **Quorum**. The members present at a meeting in person or by proxy, holding 50% of the votes which may be cast at any meeting, shall constitute a quorum at such meeting. If a quorum is not present at the commencement of any meeting of members, the meeting shall be adjourned and may only be called again in accordance with the provisions of these Bylaws.

Section 3.6 **Proxies**. At any meeting of members, a member entitled to vote may vote either in person or by proxy executed in writing by the member or by his duly authorized attorney-in-fact. No proxy shall be valid after eleven (11) months from the date of its execution. Every proxy must bear the date of its execution. A proxy shall be revocable at any time by actual notice to the Board of the death or judicially declared incompetence of any designator, or by written notice to the Board by the Unit Owner or his duly authorized attorney-in-fact.

Section 3.7 **Manner of Acting**. Except as set forth below and except as otherwise required by the Declaration or the Act, any action to be taken at any meeting of the members at which a quorum is present shall be upon the affirmative vote of more than 50% of the members represented at such meeting. The following matters shall require the affirmative vote of 100% of all the Unit Owners at a meeting duly called for that purpose:

    (a) Merger or consolidation of the Association;

    (b) Sale, exchange, mortgage or other disposition of all, or substantially all, of the property and assets of the Association; or

(c) The purchase and sale of land or Units on behalf of the Unit Owners.

## ARTICLE IV

## Board

**Section 4.1  In General**. The affairs of the Association shall be managed by the Board of Managers, which shall act as the board of managers of the Building as provided in the Act and the Declaration.

**Section 4.2  Tenure and Qualifications**. The number of members of the Board shall be three (3), it being intended that each Unit shall be represented on the Board by a Unit Owner or other person appointed by such Unit Owner. Until the date of the first annual meeting of the members as hereinabove provided, the members of the Board shall be the directors named in the Articles of Incorporation of the Association, if the Association is incorporated; otherwise, the members of the Board shall be as appointed by the Developer. Such members of the Board shall hold office until the first annual meeting of the members. Commencing with the date of the first annual meeting of the members, the members of the Board shall each be elected. Each member of the Board shall serve for a term of one year and until his successor shall have been elected and qualified. Board members may serve successive terms without limitation. The Board elected at such first annual meeting shall be the initial Board of Managers, as provided in the Act. Each member of the Board shall hold office without compensation. In the event that a member of the Association is a corporation, partnership, trust or other legal entity other than a natural person or persons, then any shareholder, officer or director of such corporation, partner of such partnership, beneficiary or individual trustee of such trust, or member of such other legal entity, may be eligible to serve as a member of the Board. Notwithstanding the above, only one person from each Unit may be a member of the Board. A Board member is entitled to one vote in making Board decisions regardless of his proportion of ownership in the Common Elements.

**Section 4.3  Election**. At each annual meeting of the members, the members shall be entitled to cast up to four votes for four different candidates and the four candidates receiving the highest number of votes with respect to the number of offices to be filled shall be deemed to be elected. In the event of a tie, and the tie must be broken to fill the seats on the Board, the incumbent Board (or the Declarant as the case may be) shall prescribe means reasonable under the circumstances to resolve the tie. A candidate for election to the Board or such candidate's representative shall have the right to be present at the counting of ballots at such election.

**Section 4.4  Regular Meeting**. A regular annual meeting of the Board shall be held immediately after, and at the same place as, the annual meeting of members. The Board shall, by regulations which the Board may, from time to time adopt, provide the time and place for the holding of additional regular meetings of the Board, provided that the Board shall meet at least four times per year.

**Section 4.5  Special Meetings**. Special meetings of the Board may be called by or at the request of the President or any member of the Board. The person or persons permitted to call special meetings of the Board may fix the time and place for holding any special meeting of the Board called by them.

**Section 4.6  Notice**. Written notice of any special meetings of the Board shall be mailed or delivered to all members of the Association and all members of the Board not calling the meeting at least 48 hours prior to date of such special meeting, unless a written waiver of such notice is signed by the person or persons entitled to such notice as hereinafter provided in Article XI. Written notices shall be deemed to be mailed when deposited in the United States mail addressed to each member at his address as it appears on the records of the Association, or his Unit if no other address has been given to the Board, with proper postage thereon prepaid. The business to be transacted at, or the purpose of any regular or special meeting of the Board need not be served on members of the Board.  However, copies of said notices of meetings of the Board shall be posted in entrance ways or other conspicuous places in the condominium designated by the Board at least 48 hours prior to the meeting.

**Section 4.7  Quorum**. A majority of the members of the Board shall constitute a quorum for the transaction of business at any meeting of the Board. If less than a majority of the members of the Board are

present at the commencement of said meeting, the meeting shall be adjourned and may only be called again in accordance with the provisions of these Bylaws.

Section 4.8 **Manner of Acting.** The act of a majority of the members of the Board present at the meeting shall be the act of the Board, except where otherwise provided by law or in the Condominium Instruments.

Section 4.9 **Vacancies.** Any vacancy occurring in the Board by reason of death, removal or resignation of a member of the Board may be filled by the unanimous vote of the remaining members of the Board. In the alternative, the number of Board members may be reduced to two (2) until the next Annual Meeting if a Unit Owner declines to either serve on the Board or appoint a representative to serve on the Board. A member elected by the Board to fill a vacancy (if applicable) shall serve until the next meeting of the members provided that if a petition is filed with the Board signed by members holding 20% of the votes of the Association requesting a meeting of the members to fill the vacancy for the balance of the unexpired term of office of his predecessor, the term of the member so elected by the Board shall terminate 30 days after the filing of the petition and a meeting of the members for the purpose of filling such vacancy for such unexpired term shall be called no later than 30 days following the filing of such petition. Members of the Board, including those appointed by the Declarant, may resign at any time by written resignation delivered or mailed to any officer of the Association, which resignation shall be effective upon receipt of said resignation. If, as a result of the death, removal or resignation of a member of the Board, no member of the Board remains in office, a special meeting of members may be called to fill all vacancies for the unexpired terms of the member of the Board.

Section 4.10 **Removal.** From and after the date of the first annual meeting of the members, any member of the Board except a Unit Owner may be removed from office by the affirmative vote of 66-2/3% of all the members of the Association at a special meeting called for such purpose. A Unit Owner may not be removed from the Board.

Section 4.11 **Adoption of Rules and Regulations.** All rules and regulations or amendments thereto, shall be adopted by the Board after a meeting of the members called for the specific purpose of discussing the proposed rules and regulations, notice of which contains the full text of the proposed rules and regulations, which rules and regulations conform to the requirements of the Act and the Declaration and these Bylaws. Anything herein that may be deemed to the contrary notwithstanding, no quorum is required at such meeting of the Unit Owners (members). No rules or regulations may impair any rights guaranteed by the First Amendment to the Constitution of the United States or Section 4 of Article I of the Illinois Constitution. Such rules and regulations shall be effected sixty (60) days after their adoption, provided that the members may veto the rule or regulation at a special meeting of the members called for such purpose, and held before the effective date of the rule or regulation, by a vote of 66 2/3% of all the members of the Association.

Section 4.12 **Open Meetings.** All meetings of the Board, whether regular or special, shall be open to the members of the Association.

ARTICLE V
Officers

Section 5.1 **Officers.** The officers of the Association shall be a President, one or more Vice Presidents (the number thereof to be determined by the Board), a Treasurer and a Secretary.

Section 5.2 **Election and Term of Office.** The officers of the Association shall be elected annually by the Board at the regular annual meeting of the Board, from among the members of the Association provided that all officers must also be a member of the Board. If the election of officers shall not be held at such meeting, such election shall be held as soon thereafter as conveniently may be possible. Vacancies may be filled or new offices created and filled at any meeting of the Board. Each officer shall hold office until his successor shall have been duly elected and shall have qualified. An officer may succeed himself in office. Officers shall serve without compensation.

Section 5.3 **Removal.** Any officer elected by the Board may be removed by a majority vote of the members of the Board.

**Section 5.4  Vacancies**. A vacancy in any office because of death, resignation, removal, disqualification or otherwise, may be filled by the Board for the unexpired portion of the term.

**Section 5.5  President**. The President shall be the principal executive officer of the Association and shall in general supervise and control all of the business and affairs of the Association. He shall preside at all meetings of the members and of the Board. He may sign, with the Secretary or any other proper officer of the Association authorized by the Board, any deeds, mortgages, contracts, or other instruments which the Board has authorized to be executed and any amendment to the Declaration or Plat as provided in the Act, and, in general, shall perform all duties incident to the office of President and such other duties as may be prescribed by the Board from time to time.

**Section 5.6  Vice-President**. In the absence of the President or in the event of his inability or refusal to act, the Vice-President (or in the event there be more than one Vice-President, the Vice-Presidents, in order of their election) shall perform the duties of the President, and when so acting, shall have all the powers of, and be subject to all the restrictions upon, the President. Any Vice-President shall perform such other duties as from time to time may be assigned by the President or by the Board.

**Section 5.7  Treasurer**. The Treasurer shall have charge and custody of and be responsible for all funds and securities of the Association; receive and give receipts for moneys due and payable to the Association from any source whatsoever, and deposit all such moneys in the name of the Association in such banks, trust companies or other depositories as shall be selected in accordance with the provisions of Article VII of these Bylaws; and in general perform all the duties incident to the office of Treasurer and such other duties as from time to time may be assigned to him by the President or by the Board.

**Section 5.8  Secretary**. The Secretary shall keep the minutes of the meetings of the members and of the Board in one or more books provided for that purpose; see that all notices are duly given in accordance with the provisions of these Bylaws or as required by law; receive all mail and notices on behalf of the Association and, together with the President, execute on behalf of the Association amendments to the Condominium Instruments and other documents as required or permitted by the Declaration, these Bylaws or the Act; be custodian of the records and, if incorporated, of the seal of the Association and, if the Association is incorporated, see that the seal of the Association is affixed to all documents, the execution of which on behalf of the Association under its seal is duly authorized in accordance with the provisions of these Bylaws; and in general perform all duties incident to the office of Secretary and such other duties as from time to time may be assigned to him by the President or by the Board.

## ARTICLE VI
### Powers and Duties of the Association and Board

**Section 6.1  General Duties and Powers of the Board**. The Board shall exercise for the Association all powers, duties and authority vested in the Association by the Act and the Condominium Instruments (except for such powers, duties, and authority reserved by law to the members of the Association), including but not limited to the following:

(a)  Operation, care, upkeep, maintenance, replacement and improvement of the Common Elements.

(b)  Preparation, adoption and distribution of the annual budget for the Property.

(c)  Levying and expending of assessments.

(d)  Collection of assessments from Unit Owners.

(e)  Employment and dismissal of the personnel necessary for the maintenance and operation of the Common Elements including a manager or managing agency.

(f)  Obtaining adequate and appropriate kinds of insurance.

(g)  Owning, conveying, encumbering, leasing, and otherwise dealing with Units conveyed to or purchased by it.

(h)  Adoption and amendment of rules and regulations covering the details of the operation and use of the Property.

(i) Keeping of detailed, accurate records of the receipts and expenditures affecting the use and operation of the Property.

(j)  Having access to each Unit, from time to time, as may be necessary for the maintenance, repair or replacement of any Common Elements therein or accessible therefrom, or for making emergency repairs therein necessary to prevent damage to the Common Elements or to another Unit or Units.

(k)  Borrowing money at such rates of interest as it may determine; issuing its notes, bonds and other obligations to evidence such borrowing; and securing any of its obligations by making a mortgage or giving a security interest encumbering all or substantially all of the assets of the Association, provided that the approval of the members shall first be obtained pursuant to Section 3.7 of these Bylaws.

(l)  Paying real estate property taxes, special assessments, and any other special taxes or charges of the State of Illinois or of any political subdivision thereof, or other lawful taxing or assessing body, which are authorized by law to be assessed and levied upon the real property of the condominium (other than assessments of Units not owned by the Association).

(m)  Imposing charges for late payments of a Unit Owner's proportionate share of the Common Expenses, or any other expenses lawfully agreed upon, and after notice and an opportunity to be heard, levying reasonable fines for violation of the Declaration, Bylaws, and rules and regulations of the Association.

(n)  Assigning its rights to future income, including the rights to receive Common Expense assessments.

(o)  Recording the dedication of a portion of the Common Elements to a public body for use, as, or in connection with, a street or utility where authorized by the members under the provision of Section 14.2 of the Act.

(p)  Recording the granting of an easement for the laying of cable television cable or where authorized by the members under the provisions of Section 14.3 of the Act or where authorized under Section (b) of Article 6 of the Declaration.

(q)  Reasonably accommodating the needs of a handicapped Unit Owner as required by the Human Rights Act (775 ILCS, 5/1-101, et seq.) in the exercise of its powers with respect to the use of Common Elements or approval of modifications in an individual Unit.

In the performance of their duties, the officers and members of the Board shall exercise, whether appointed by the Declarant or elected by the members, the care required of a fiduciary of the members.

Section 6.2  **Specific Powers and Duties**. Anything herein contained to the contrary notwithstanding, the Association shall have the power:

(a) to engage the services of a manager or managing agent, who may be any person, firm or corporation, upon such terms and compensation as the Association deems fit, and to remove such manager or managing agent at any time, provided any agreement with such manager or managing agent shall extend for not more than three years and must be terminable by either

party to such agreement without cause and without payment of a termination fee, upon ninety (90) days or less prior written notice.

(b) to engage the services of any person (including, but not limited to accountants and attorneys) deemed reasonable by the Association, in the operation, repair, maintenance and management of the Property, or in connection with any duty, responsibility or right of the Association and to remove, at any time, any such personnel.

(c) to establish or maintain one or more bank accounts for the deposit of any funds paid to, or received by, the Association.

(d) to invest any funds of the Association in certificates of deposits, money market funds, or comparable investments.

(e) upon authorization of a majority of the members of the Board or by affirmative vote of not less than a majority of the Unit Owners at a meeting duly called for such purpose, the Board acting on behalf of all Unit Owners shall have the power to seek relief from or in connection with the assessment or levy of any real property taxes, special assessments or charges of the State of Illinois or any political subdivision thereof or of any lawful taxing or assessing body and to charge and collect all expenses in connection therewith as Common Expenses.

Section 6.3 **Authorized Expenditures**. The Association shall acquire and make arrangements for, and pay for out of the Maintenance Fund, in addition to the compensation payable to the manager, managing agent or other personnel above provided for, the following:

(a) water, waste removal, heating, electricity, telephone or other necessary utility service for the Common Elements and such services to the Units as are not separately metered or charged to the owners thereof;

(b) such insurance as the Association is required or permitted to obtain as provided in the Declaration;

(c) landscaping, gardening, snow removal, painting, cleaning, tuckpointing, maintenance, decorating, repair and replacement of the Common Elements and Parking Spaces (but not including the Limited Common Elements which the Unit Owners enjoying the use thereof shall paint, clean, decorate, maintain and repair as set forth in the Declaration) and such furnishings and equipment for the Common Elements as the Association shall determine are necessary and proper, and the Association shall have the exclusive right and duty to acquire the same for the Common Elements. Anything in the foregoing to the contrary notwithstanding, and except where the need for repair or replacement is due to the act or omission of a Unit Owner, guest, occupant, family member or pet, the Association shall be responsible for the repair and replacement (and cleaning of the exterior surface) of all windows;

(d) any other materials, supplies, furniture, labor, services, maintenance, repairs, structural alterations, or assessments which the Association deems necessary or proper for the maintenance and operation of the Property or for the enforcement of any restrictions or provisions contained herein;

(e) any amount necessary to discharge any mechanic's lien or other encumbrance levied against the Property or any part thereof which may in the opinion of the Association constitute a lien against the property or against the Common Elements, rather than merely against the interest therein of particular Unit Owners. Where one or more Unit Owners are responsible for the existence of such lien, they shall be jointly and severally liable for the cost of discharging it and any costs incurred by the Association by reason of said lien or liens shall be specially assessed to said Unit Owners and shall, until paid by such Unit Owners, constitute a lien on the

interest of such Unit Owners in the Property, which lien may be perfected and foreclosed in the manner provided in Section 9 of the Act with respect to liens for failure to pay a share of the Common Expenses;

(f) maintenance and repair of any Unit or any other portion of the Property which a Unit Owner is obligated to maintain or repair under the terms hereof, if such maintenance or repair is necessary, in the discretion of the Association, to protect the Common Elements, or any other portion of the Property, and the owner of said Unit has failed or refused to perform said maintenance or repair within a reasonable time after written notice of the necessity of said maintenance or repair is delivered by the Association to said Unit Owner; provided that the Association shall levy a special assessment against such Unit for the cost of said maintenance or repair and the amount of such special assessment shall constitute a lien on the interest of such Unit Owner in the Property, which lien may be perfected and foreclosed in the manner provided in Section 9 of the Act with respect to liens for failure to pay a share of the Common Expenses; and

(g) maintenance and repair (including payment of real estate taxes and Common Expenses) with respect to any Unit owned by the Association.

All expenses, charges and costs of maintenance, repair or replacement of the Common Elements, and any other expenses, charges or costs which the Association may incur or expend pursuant hereto, shall be approved by the Association, and a written memorandum thereof shall be prepared and signed by the Treasurer. There shall be no structural alterations, capital additions or improvements to, the Common Elements (other than for purposes of repairing, replacing and restoring portions of the Common Elements) requiring an expenditure in excess of Five Thousand Dollars ($5,000) without the prior approval of all of the Unit Owners.

Section 6.4 **Annual Budget.**

(a) Each year on or before November 1st, the Board shall estimate the annual budget of Common Expenses (the "Annual Budget") including: The total amount required for the cost of wages, material, insurance, services and supplies which will be required during the ensuing calendar year for the rendering of all services, together with a reasonable amount considered by the Association to be necessary for a reserve for contingencies and replacements, all anticipated assessments and income and each Unit Owner's proposed Common Expense assessment. The Board shall deliver a copy of the proposed Annual Budget (together with an indication of which portions are intended for capital expenditures or repairs or payment of real estate taxes) to each Unit Owner at least thirty (30) days prior to the adoption thereof. The Association shall give Unit Owners notice as provided in Section 3.4 of the Bylaws of the meeting of the Board at which the Board proposes to adopt the Annual Budget, or at which any increase or establishment of any assessment, regular or special, is proposed to be adopted. Said Annual Budget shall be assessed to the Unit Owners according to each Unit Owner's percentage of ownership in the Common Elements. Each Unit Owner shall he obligated to pay to the Association, or as it may direct, the portion of the Annual Budget assessed to such owner in equal monthly installments (subject to acceleration as hereinafter provided) on or before January 1st of the ensuing year, and the 1st day of each and every month of said year. The Association shall have no authority to forbear the payment of assessments by any Unit Owner.

The failure or delay of the Association to prepare or serve the annual or adjusted budget on the Unit Owners shall not constitute a waiver or release in any manner of the Unit Owner's obligation to pay the maintenance and other costs and necessary Reserves, as herein provided, whenever the same shall be determined, and in the absence of any annual or adjusted budget, the Unit Owners shall continue to pay the monthly assessment charges at the then existing monthly rate established for the previous period until the bill or voucher for the monthly assessment payment which is due more than ten (10) days after such new annual or adjusted budget shall have been mailed.

(b) If an adopted Annual Budget requires assessments against the Unit Owners in a fiscal or calendar year exceeding 115% of the assessments for the preceding year, the Board, upon written petition by Unit Owners with 20% of the votes of the Association filed within 14 days of the Board action, shall Call a Special Meeting of the Unit Owners within 30 days of the date of filing of the petition to consider the Annual Budget. Unless a majority of the votes of the Unit Owners are cast at the meeting to reject the Annual Budget, it shall he deemed to be ratified, whether or not a quorum is present. If a majority of the votes of the Unit Owners are cast at the meeting to reject the Annual Budget, but a quorum is not present, a second Special Meeting of the Unit Owners will be called to consider the Annual Budget. If a quorum is not present at such second meeting, the Annual Budget shall be deemed to be ratified. If a majority of votes of the Unit Owners are cast to reject the Annual Budget at a Special Meeting of the Unit Owners, a meeting of the Board shall be held within 30 days of the date of such Special Meeting to prepare a revised Annual Budget to send to the Unit Owners together with a notice of the meeting of the Board at which adoption of such Annual Budget will be considered. In determining whether assessments exceed 115% of similar assessments in the preceding year, any authorized provisions for reasonable reserves for repair or replacement of the Common Elements, and anticipated expenses by the Association which are not anticipated to be incurred on a regular or annual basis, shall be excluded from the computation.

Anything herein or in the Declaration to the contrary notwithstanding, the Association may charge to fewer than all Unit Owners such portion of the insurance premium for insurance the Association is required or permitted to obtain which reflects increased charges for coverage on the Units owned by such Unit Owners, on such reasonable basis as the Association shall determine and such portion of insurance premiums relating to the roof deck and to alterations, additions or improvements to certain Units (as further set forth in Article 11 of the Declaration). Such charge shall be considered a common expense with respect to the Units owned by such Unit Owners for all purposes herein and under the Declaration.

Section 6.5  **Annual Accounting**. On or before the 1st day of April of each calendar year following the initial meeting of the voting members, the Association shall supply to all Unit Owners an itemized accounting of the Common Expenses for the preceding calendar year actually incurred or paid together with an indication of which portions were for capital expenditures or repairs or payment of real estate taxes and together with a tabulation of the amounts collected pursuant to the budget or assessment, and showing the net excess or deficit of income over expenditures plus Reserves. Upon the written request of any of FHLMC, FNMA, HUD, or VA, the Association shall prepare and furnish within a reasonable time an audited financial statement of the Association for the preceding calendar year. Any amount accumulated in excess of the amount required for actual expenses and Reserves shall be credited according to each Unit Owner's percentage of ownership in the Common Elements to the next monthly installments due from Unit Owners under the current year's Annual Budget, until exhausted, and any net shortage shall be added according to each Unit Owner's percentage of ownership of the Common Elements, to the installments due in the succeeding six months after rendering of the accounting.

Section 6.6  **Reserves**. The Association may build up and maintain a reasonable Reserve for operations, contingencies and replacement. To establish such Reserve, the Declarant shall collect from each Unit Owner upon conveyance by the Declarant of a Unit to such Unit Owner, an amount equal to two times the monthly assessment allocable to such Unit, and shall remit such amount to the Association. Extraordinary expenditures not originally included in the Annual Budget which may become necessary during the year shall be charged first against such Reserve. In addition, the Association shall have the right to segregate all or any portion of the Reserve for any specific replacement or contingency upon such conditions as the Association deems appropriate.

Section 6.7  **Special Assessments**. If said Annual Budget proves inadequate for any reason, including nonpayment of any Unit Owner's assessment, or any non-recurring Common Expense or any Common Expense not set forth in the Annual Budget as adopted, the Board may at any time levy a further assessment, which shall be assessed to the Unit Owners according to each Unit Owner's percentage of ownership in the Common Elements, and which may be payable in one lump sum or such installments as the Board may determine. The Board shall serve notice of such further assessment on all Unit Owners (as provided in Section 3.4 of the Bylaws)

by a statement in writing giving the amount and reasons therefor, and such further assessment shall become effective and shall be payable at such time or times as determined by the Board provided, however, that in the event such further assessment with respect to any Unit exceeds the greater of five (5) times such Unit's most recent monthly installment of Common Expenses, such further assessment for all Units shall not be effective until approved by unanimous consent of the Unit Owners at a meeting of Unit Owners duly called for such purpose. All Unit Owners shall be obligated to pay the special assessment.

Section 6.8  **Books of Account, Default, Statement of Account.**

(a)  The Association shall keep full and correct books of account and the same shall be open for inspection by any Unit Owner or any representative of a Unit Owner duly authorized in writing, at such reasonable time or times during normal business hours as may be requested by the Unit Owner. All funds collected hereunder shall be held and expended solely for the purposes designated herein, and (except for such special assessments as may be levied hereunder against less than all the Unit Owners and for such special adjustments as may be required to reflect delinquent or prepaid assessments) shall be deemed to be held for the benefit, use and account of all the Unit Owners in their relative percentages of ownership interest in the Common Elements.

(b)  If a Unit Owner is in default in the monthly payment of the aforesaid charges or assessments for thirty (30) days, the Association may assess a service charge of 10% (or such other percentage or amount as the Board shall determine, by rule or regulation enacted as set forth herein, to substitute as a service charge hereunder to be assessed for every month or part month that said balance remains unpaid) of the balance of the aforesaid charges and assessments for each month, or part thereof, that said balance, or any part thereof remains unpaid. In addition to any remedies or liens provided by law, if a Unit Owner is in default in the monthly payment of the aforesaid charges or assessments for sixty (60) days, all other monthly payments of charges and assessments due for the calendar year in which such default occurs shall accelerate and become immediately due and payable. The Association may bring suit for and on behalf of itself and as representative of all Unit Owners, to enforce collection thereof or to foreclose the lien therefor as provided by law; and there shall be added to the amount due, the costs of said suit, together with legal interest and reasonable attorneys' fees to be fixed by the Court. In addition, the Association may also take possession of such defaulting Unit Owner's interest in the Property and maintain an action for possession of the Unit in the manner provided by law. No Unit Owner may waive or otherwise avoid liability for the assessment provided for herein by nonuse of the Common Elements or abandonment of his Unit. Each such assessment, together with interest, costs and attorneys' fees shall also be the personal obligation of the person who was the Unit Owner at the time the assessment fell due. The personal obligation for delinquent assessments shall not pass to successors in title or interest unless assumed by them, or required by applicable law.

(c)  Upon ten (10) days' notice to the Board, and the payment of a reasonable fee fixed by the Board not to exceed Fifteen Dollars ($15), any Unit Owner shall be furnished a statement of his account setting forth the amount of any unpaid assessments or other charges due and owing from such Unit Owner.

Section 6.9  **Priority of Liens.** Any mortgage or trust deed owned or held by a First Mortgagee and recorded prior to the recording or mailing of a notice by the Association of the amount owing by a Unit Owner who has refused or failed to pay his share of the monthly assessment when due shall be superior to the lien of such unpaid Common Expenses set forth in said notice and to all assessments for Common Expenses which become due and are unpaid subsequent to the date of recording of such first mortgage or first trust deed. Any First Mortgagee who comes into possession of a Unit pursuant to the remedies provided in the mortgage or trust deed or deed in lieu of foreclosure of the mortgage or trust deed or deed in lieu of foreclosure shall not be liable for, and shall take the Unit and its proportionate interest in the Common Elements free from, claims for unpaid common or special assessments levied by the Association which accrue prior to the date of possession as aforesaid.

**Section 6.10** <u>User Charges</u>. The Board, or the Declarant acting pursuant to Section 3.1 hereof, may establish, and each Unit Owner shall pay, user charges to defray the expense of providing services, facilities or benefits which may not be used proportionately by all of the Unit Owners or which, in the judgment of the Board, should not be charged to every Unit Owner. Such expenses may include, without limitation, fees for such services and facilities provided to Unit Owners which should not be reasonably allocated among all of the Unit Owners in the same manner as the Common Expenses. Such user charges may be billed separately to each Unit Owner benefitted thereby, or may be added to such Unit Owner's share of the Common Expenses, as otherwise determined, and collected as a part thereof. Nothing herein shall require the establishment of user charges, and the Board or Declarant may elect to treat all or any portion thereof as Common Expenses.

**Section 6.11** <u>Other Powers and Duties</u>.

(a) The Association may number and assign to any Unit Owner the exclusive privilege to use for storage purposes any portion of the Property designated for such purposes; provided, however, that the Association shall have the right of access to all such storage spaces which contain pipes, or other portions of the Common Elements, which the Association has the duty or right to maintain, repair or replace. Any such designation by the Association shall not thereafter be changed except upon the affirmative vote of a majority of the Unit Owners. All property stored in any storage area shall be at the sole risk of the respective Unit Owner who has the privilege to use the same, and neither the Association nor any other Unit Owner shall be considered a bailee or otherwise responsible therefor.

(b) Nothing hereinabove contained shall be construed to give the Association authority to conduct an active business for profit on behalf of all the Unit Owners or any of them.

## ARTICLE VII
### Contracts, Checks, Deposits and Funds

**Section 7.1** <u>Contracts</u>. The Board may authorize any officer or officers, agent or agents of the Association, in addition to the officers so authorized by these Bylaws, to enter into any contract or execute and deliver any instrument in the name of and on behalf of the Association and such authority may be general or confined to specific instances.

**Section 7.2** <u>Checks and Drafts</u>. All checks, drafts or other orders for the payment of money, notes or other evidences of indebtedness issued in the name of the Association, shall be signed by such officer or officers, agent or agents of the Association and in such manner as shall from time to time be determined by resolution of the Association. In the absence of such determination by the Association, such instruments shall be signed by the Treasurer and countersigned by the President of the Association. The Treasurer, as well as any other officer, Board Member, or employee of the Association, who regularly handles Association funds, may obtain a fidelity bond, at the Association's expense, from an established bonding agency against fraud, forgery, embezzlement and gross negligence.

**Section 7.3** <u>Deposits</u>. All funds of the Association shall be deposited from time to time to the credit of the Association in such banks, trust companies or other depositories as the Board may select.

**Section 7.4** <u>Gifts</u>. The Board may accept on behalf of the Association any contribution, gift, bequest or devise for the general purposes or for any special purpose of the Association.

## ARTICLE VIII
### Books and Records

**Section 8.1** <u>Maintaining Books and Records</u>. The Association shall keep correct and complete books and records of account and shall also keep minutes of the proceedings of its members, the Board and committees having any of the authority of the Board.

Section 8.2  <u>**Availability for Examination**</u>. The manager or Board shall maintain the following records of the Association available for examination and copy by the Unit Owners or their mortgagees and their duly authorized agents or attorneys:

(a)  Copies of the recorded Declaration and Bylaws and any amendments; Articles of Incorporation of the Association if incorporated; annual reports, if incorporated; and any rules and regulations adopted by the Association or the Board. Prior to the first annual meeting of members of the Association, the Developer shall maintain and make available the records set forth in this subsection (a) for examination and copying;

(b)  Detailed accurate records in chronological order of the receipt and expenditures affecting the Common Elements, specifying and itemizing the maintenance and repair expenses of the Common Elements and any other expenses incurred, and copies of all contracts, leases, or other agreements entered into by the Association;

(c)  The minutes of all meetings of the Association and the Board shall be maintained. The Association shall maintain these minutes for a period of not less than seven (7) years;

(d)  Such other records of the Association as are available for inspection by members of a not-for-profit corporation pursuant to Section 25 of the General Not-For-Profit Corporation Act, as amended; and

(e)  A record giving the names and addresses of the members entitled to vote.

A reasonable fee may be charged by the Association or its Board for the cost of copying any such records.

## ARTICLE IX
### Fiscal Year

The fiscal year of the Association shall begin on the first day of January and end on the last day of December.

## ARTICLE X
### Seal

If the Association is incorporated, the Board may provide a corporate seal which shall be in the form of a circle and shall have inscribed thereof the name of the Association and the words "Corporate Seal, Illinois."

## ARTICLE XI
### Waiver of Notice

Whenever any notice is required to be given under the provisions of the General Not-For-Profit Corporation Act of Illinois or under the provisions of the articles of incorporation or Bylaws of the Association, or the Declaration, a waiver thereof (subject to all the provisions of such instruments) in writing signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.

## ARTICLE XII
### Amendments to Bylaws

These Bylaws, except Article II, Sections 6.4, 6.7 and 6.9 of Article VI, Article XII, and Article XIV may be altered, amended or repealed and new Bylaws may be adopted upon the affirmative vote of the members owning at least a sixty-six and two-thirds percent (66 2/3%) interest in the Common Elements at a regular meeting or at any special meeting called for such purpose, by recording an instrument in writing setting forth

such alteration, amendment or repeal, which is signed and acknowledged by an authorized member of the Board and which contains an affidavit by an officer of the Association certifying that the necessary affirmative vote of the members of the Association has been obtained. Article II, Sections 6.4, 6.7 and 6.9 of Article VI, Article XII and Article XIV may be amended as set forth in the first sentence of Article 19 of the Declaration requiring unanimous consent. No amendment to the Bylaws may remove therefrom any of the provisions required under Section 18 of the Act. Any amendments to or modifications of these Bylaws made in accordance with this Article XII shall become effective upon the recording of same.

## ARTICLE XIII
### Indemnification

The Association shall indemnify any person who was or is a party, or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Association) by reason of the fact that he is or was a member of the Board or officer of the Association, against expenses, fees (including reasonable attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in, or not opposed to, the best interest of the Association, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Association, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.

The Association may indemnify any person who was or is a party, or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Association to procure a judgment in its favor by reason of the fact that he is or was a member of the Board or an officer of the Association against expenses and fees (including attorneys' fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit, if he acted in good faith and in a manner he reasonably believed to be in, or not opposed to, the best interest of the Association and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct in the performance of his duty to the Association, unless and only to the extent that the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability, but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses as the court shall deem proper.

To the extent that a member of the Board or officer of the Association has been successful, on the merits or otherwise, in the defense of any action, suit or proceeding referred to in the foregoing two paragraphs, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses and fees (including attorneys' fees) actually and reasonably incurred by him in connection therewith. Any indemnification under the first two paragraphs of this Article shall be made by the Association only as authorized in the specific case, upon a determination that indemnification of the member of the Board or officer of the Association is proper under the circumstances because he has met the applicable standard of conduct set forth in the first two paragraphs of this Article.

## ARTICLE XIV
### Applicability to Tenants

The provisions of the Act, the Declaration, the Bylaws, other Condominium Instruments, and rules and regulations that relate to the use of the individual Units or the Common Elements shall be applicable to any person leasing a Unit and shall be deemed to be incorporated in any lease for any such Unit.