dotloop signature verification: www.dotloop.com/myverification/DL-355337725-3-1873
DocuSign Envelope ID: 097E6F1C-7090-4B1C-BB50-77350249A631



# CHICAGO ASSOCIATION OF REALTORS®
## Condominium Real Estate Purchase and Sale Contract
(including condominium townhomes and commercial condominiums)
### This Contract is Intended to be a Binding Real Estate Contract



1  **1. Contract.** This Condominium Real Estate Purchase and Sale Contract ("*Contract*") is made by and between
2  __Melinda Sgariglia_____ ("*Buyer*"), and —OOR— Aires_____ ("*Seller*")
3  (Buyer and Seller collectively, ("*Parties*"), with respect to the purchase and sale of the real estate and improvements located at
4  __2726 W Cortez St, Unit 1, Chicago, IL 60622_____ ("*Property*").
5  The Property P.I.N. # is __16014080551001_____.
6  The Property includes parking space number(s) __tbd__, which is (*check all that apply*) ☐ deeded, ☐ limited common element, ☒ assigned, ☐ indoor, ☐ outdoor.
7  If deeded, the parking P.I.N.# is: _____. The Property includes storage space/locker number(s) __tbd__, which
8  is (*check all that apply*) ☐ deeded, ☐ limited common element, ☒ assigned. If deed, the storage space/locker P.I.N.# is: _____.

9  **2. Fixtures and Personal Property.** At Closing (as defined in Paragraph 8 of this Contract), in addition to the Property, Seller shall transfer to Buyer by a Bill of Sale
10 all heating, cooling, electrical and plumbing systems, and the following checked and enumerated items (collectively, "*Fixtures and Personal Property*"), which Fixtures and
11 Personal Property are owned by Seller, and to Seller's knowledge, are currently present on the Property and in operating condition as of the Acceptance Date:

12 ☒ Refrigerator     ☒ Sump Pump            ☒ Central air conditioner   ☐ Fireplace screen         ☐ Built-in or attached
13 ☒ Oven/Range       ☒ Smoke and carbon monoxide  ☐ Window air conditioner   and equipment             shelves or cabinets
14 ☒ Microwave             detectors         ☐ Electronic air filter     ☐ Fireplace gas log        ☒ Ceiling fan(s)
15 ☒ Dishwasher       ☐ Intercom system         ☐ Central humidifier       ☐ Firewood                 ☐ Radiator covers
16 ☒ Garbage disposal ☒ Security system (☐ rented or ☐ owned) (*check one*)  ☐ Attached gas grill       ☒ All planted vegetation
17 ☐ Trash compactor  ☐ Satellite Dish          ☒ Lighting fixtures        ☒ Existing storms          ☐ Outdoor play set/swings
18 ☒ Washer           ☒ Attached TV(s)          ☒ Electronic garage door(s)  and screens             ☐ Outdoor shed
19 ☒ Dryer            ☐ TV Antenna              with ___ remote unit(s)    ☒ Window treatments
20 ☐ Water Softener   ☐ Multimedia equipment    ☒ Tacked down carpeting    ☐ Other Equipment

21 Seller shall also transfers the following: __All furniture currently in the home with the exception of the den and the master bedroom furniture.__
22 The following items are excluded: _____

23 **3. Purchase Price.** The purchase price for the Property (including the parking and storage space, if applicable, Fixtures and Personal Property) is
24 $ ~~475,000~~ ~~495,000~~ 510,000 ("*Purchase Price*").

25 **4. Closing Cost Credit (Optional).** Check if applicable ☐ Seller agrees to credit to Buyer at Closing (*check one*) ☐ $_____ OR ☐ ____% of Purchase Price
26 ("*Closing Cost Credit*"), to be applied to prepaid expenses, closing costs or both as lender permits, and that such credit appears on the Master Statement or Closing
27 Disclosure.

28 **5. Home Warranty (Optional).** Check if applicable ☐ Seller agrees to provide Buyer with a Home Warranty at Closing, at a cost of no less than: $_____

29 **6. Earnest Money.** Upon the Parties execution and delivery of this Contract, Buyer shall deposit with __Coldwell Banker Residential__ ("*Escrowee*"),
30 earnest money in the amount of $ __3,000__, in the form of __personal check__ within __3__ Business Days after the Acceptance Date. The
31 earnest money shall be increased to (*check one*) ☒ __5__ % [percent] of the Purchase Price, OR ☐ a total of $_____ ("*Earnest Money*")
32 within __3__ Business Days after the conclusion of the Attorney Approval Period (as established in Paragraph 15 of this Contract). The Parties acknowledge and agree that
33 (i) the Parties shall execute all necessary documents with respect to the handling of the Earnest Money in form and content mutually agreed upon between the Parties
34 and (ii) unless otherwise agreed, Buyer shall pay all expenses incurred in opening an escrow account for the Earnest Money.

35 **7. Mortgage Contingency.** Parties agree that this Contract (*check one*) ☒ [is] ☐ [is not] subject to Paragraph 7, Mortgage Contingency. If [is not] is checked,
36 then this paragraph 7 does not apply. This Contract is contingent upon Buyer securing by ~~June 30~~ July 6 ("*First Commitment Date*") a written mortgage
37 commitment for a fixed rate or an adjustable rate mortgage permitted to be made by a U.S. or Illinois savings and loan association, bank, or other authorized financial
38 institution, in the amount of (*check one*) ☐ $_____ OR ☒ 85 % [percent] of the Purchase Price, the interest rate (or initial interest rate if an adjustable rate
39 mortgage) not to exceed __4.5__ % per year, amortized over __30__ years, payable monthly, loan fee not to exceed __0__ %, plus appraisal and credit report fee, if any
40 ("*Required Commitment*"). Buyer shall pay for private mortgage insurance as required by the lending institution. **If a FHA or VA mortgage is to be obtained, Rider 8 or**
41 **Rider 9 shall be attached to this Contract.** (1) If Buyer is unable to obtain the Required Commitment by the First Commitment Date, Buyer shall so notify Seller in writing
42 on or before that Date. Thereafter, Seller may, within 30 Business Days after the First Commitment Date ("*Second Commitment Date*"), secure the Required Commitment
43 for Buyer upon the same terms, and may extend the Closing Date by 30 Business Days. The Required Commitment may be given by Seller or a third party. Buyer shall
44 furnish all requested credit information, sign customary documents relating to the application and securing of the Required Commitment, and pay one application fee as
45 directed by Seller. Should Seller choose not to secure the Required Commitment for Buyer, this Contract shall be null and void as of the First Commitment Date, and the
46 Earnest Money shall be returned to Buyer. (2) If Buyer notifies Seller on or before the First Commitment Date that Buyer has been unable to obtain the Required
47 Commitment, and neither Buyer nor Seller secures the Required Commitment on or before the Second Commitment Date, this Contract shall be null and void and the
48 Earnest Money shall be returned to Buyer. (3) If Buyer does not provide any notice to Seller by the First Commitment Date, Buyer shall be deemed to have waived this
49 contingency and this Contract shall remain in full force and effect.

50 **8. Closing.** Buyer shall deliver the balance of the Purchase Price (less the amount of the Earnest Money, Closing Cost Credit, plus or minus prorations and escrow
51 fees, if any) to Seller and Seller shall execute and deliver the Deed (as defined below) to Buyer ("*Closing*"). Closing shall occur on or prior to __July __, 2018__
52 at a time and location mutually agreed upon by the Parties ("*Closing Date*"). Seller must provide Buyer with good and merchantable title prior to Closing

Buyer Initials: __MS__  Buyer Initials: _____  Page 1 of 4  Revised 09/2017  as an agent for American International Relocation Solutions, LLC  Seller Initials: __at__  Seller Initials: _____

© 2017 – Chicago Association of REALTORS® – All Rights Reserved

EXH 31

Case: 1:19-cv-05684 Document #: 209-6 Filed: 06/22/23 Page 2 of 4 PageID #:2684

dotloop signature verification: www.dotloop.com/my/verification/DL-355337725-3-1873
DocuSign Envelope ID: 097E6F1C-7090-4B1C-BB50-77350249A631

53  9.      **Possession.** Unless otherwise agreed to in Rider 22 Post-Closing Possession Rider, Seller agrees to deliver possession of the property at Closing. If Seller does
54  not surrender possession at Closing, Seller shall be considered in default of this Contract.

55  10.     **Deed.** At Closing, Seller shall execute and deliver to Buyer, or cause to be executed and delivered to Buyer, a recordable warranty deed ("**Deed**") with release
56  of homestead rights (or other appropriate deed if title is in trust or in an estate), or Articles of Agreement, if applicable, subject only to the following, if any: covenants,
57  conditions, and restrictions of record; public and utility easements; acts done by or suffered through Buyer; all special governmental taxes or assessments confirmed and
58  unconfirmed; homeowners or condominium association declaration and bylaws, if any; and general real estate taxes not yet due and payable at the time of Closing.

59  11.     **Real Estate Taxes.** Seller represents that the total 20 _16_ general real estate taxes for the Property and all P.I.N.s referenced paragraph 1 of this Contract
60  were $ _6,145_____. General real estate taxes for the Property are subject to the following exemptions (**check box if applicable**): ☐ Homeowner's. ☐ Senior
61  Citizen's. ☐ Senior Freeze. ☐ Historical Tax Freeze. General real estate taxes shall be prorated based on _110_ % of the most recent ascertainable full year tax bill,
62  unless mutually agreed to otherwise by the Parties in writing prior to the expiration of the Attorney Approval Period.

63  12. **Homeowners Association.** Parties agree that the Property is a part of a homeowners or condominium association and that either the Illinois Common Interest
64  Community Association Act, Illinois Condominium Property Act, or other applicable state association law applies ("**Governing Law**"). Seller represents that as of the
65  Acceptance Date, the regular monthly assessment pertaining to the Property is $ _215_____; a special assessment (**check one**) ☐ [has] OR ☒ [has not] been levied.
66  The original amount of the special assessment pertaining to the Property was $_____, and the remaining amount due at Closing will be $_____ and
67  (**check one**) ☐ [shall] OR ☒ [shall not] be assumed by Buyer at Closing. Buyer acknowledges and agrees that (i) the representations in this Paragraph are provided as of
68  the Acceptance Date; (ii) this information may change, and these fees may increase, prior to Closing. Notwithstanding anything to the contrary contained in this Paragraph
69  12, Seller shall notify Buyer of any proposed special assessment, increase in any regular assessment, and amendments or revisions to any items stipulated by the resale
70  disclosure provisions of the Governing Law ("**Association Documents**"), including but not limited to the declaration, bylaws, rules and regulations, and the prior and
71  current years' operating budgets, between the Date of Acceptance and Closing. Seller shall notify Buyer within 5 Business Days (and in no event later than the Closing
72  Date) after Seller receives notice of any proposed special assessment, increase in any regular assessment, and amendments or revisions to any of the Association
73  Documents. Seller shall furnish Buyer a statement from the proper association representative certifying that Seller is current in payment of assessments, and, if
74  applicable, proof of waiver or termination of any right of first refusal or similar options contained in the bylaws of the association for the transfer of ownership. Seller
75  shall deliver to Buyer the Association Documents within _5_ Business Days of the Acceptance Date. In the event the Association Documents disclose that the Property
76  is in violation of existing rules, regulations, or other restrictions or that the terms and conditions contained within the documents would unreasonably restrict Buyer's use
77  of the Property or would increase the financial considerations which Buyer would have to extend in connection with owning the Property, then Buyer may declare this
78  Contract null and void by giving Seller written notice within 5 Business Days after the receipt of the Association Documents, listing those deficiencies which are
79  unacceptable to Buyer, and thereupon all Earnest Money deposited shall be returned to Buyer. If written notice is not served within the time specified, Buyer shall be
80  deemed to have waived this contingency, and this Contract shall remain in full force and effect. Seller agrees to pay any applicable processing/move-out/transferring fees
81  as required by the association, and Buyer agrees to pay the credit report and move-in fee if required by the association. If the right of first refusal or similar option is
82  exercised, this Contract shall be null and void and the Earnest Money shall be returned to Buyer, but Seller shall pay the commission pursuant to Paragraph U of the
83  General Provisions of this Contract.

84  13.     **Disclosures.** Buyer has received the following (**check yes or no**): (a) Illinois Residential Real Property Disclosure Report: ☐ Yes/☒ No; (b) Heat Disclosure
85  (gas/electric): ☐ Yes/☒ No; (c) Lead Paint Disclosure and Pamphlet: ☐ Yes/☒ No; and (d) Radon Disclosure and Pamphlet: ☐ Yes/☒ No.

86  14.     **Dual Agency.** Licensee (**check one**) ☐ [is] ☒ [is not] acting as a "Designated Agent" for both Buyer and Seller, ("Dual Agency"). If [is not] is checked this
87  paragraph 14 does not apply. The Parties confirm that they have previously consented and agreed to have _____ ("**Licensee**") act
88  as *Dual Agent* in providing brokerage services on behalf of the Parties and specifically consent to Licensee acting as *Dual Agent* on the transaction covered by this
89  Contract. Initial below if Buyer and Seller consent to *Dual Agency* on the transaction covered by this Contract.

90  Buyer Initials: _____  Buyer Initials: _____  Seller Initials: _____  Seller Initials: _____

91  15.     **Attorney Modification.** Within _5_ Business Days after the Acceptance Date ("**Attorney Approval Period**"), the attorneys for the respective Parties, by notice,
92  may: (a) approve this Contract in its entirety; or (b) propose modifications to this Contract ("**Proposed Modifications**"), which Proposed Modifications shall not include
93  modifications to the Purchase Price or broker's compensation. If written agreement is not reached by the Parties with respect to resolution of the Proposed Modifications,
94  then either Party may terminate this Contract by serving notice, whereupon this Contract shall be null and void and the Earnest Money returned to Buyer. *Unless*
95  *otherwise specified, all notices shall be provided in accordance with paragraph D of the General Provisions. In the absence of delivery of Proposed Modifications prior*
96  *to the expiration of the Attorney Approval Period, the provisions of this paragraph shall be deemed waived by the Parties and this Contract shall remain in full force*
97  *and effect.*

98  16.     **Inspection.** Within _5_ Business Days after the Acceptance Date ("**Inspection Period**"), Buyer may conduct, at Buyer's sole cost and expense (unless
99  otherwise provided by law) home, radon, environmental, lead-based paint and/or lead-based paint hazards (unless separately waived), wood infestation, and/or mold
100 inspections of the Property ("**Inspections**") by one or more properly licensed or certified inspection personnel (each, an "**Inspector**"). The Inspections shall include only
101 major components of the Property, including, without limitation, central heating, central cooling, plumbing, well, and electric systems, roofs, walls, windows, ceilings,
102 floors, appliances, and foundations. A major component shall be deemed to be in operating condition if it performs the function for which it is intended, regardless of
103 age, and does not constitute a health or safety threat. Buyer shall indemnify Seller from and against any loss or damage to the Property or personal injury caused by the
104 Inspections, Buyer, or Buyer's Inspector. Prior to expiration of the Inspection Period, Buyer shall notify Seller or Seller's attorney in writing ("**Buyer's Inspection Notice**") of
105 any defects disclosed by the Inspections that are unacceptable to Buyer, together with a copy of the pertinent pages of the relevant Inspections report. **Buyer agrees that**
106 **minor repairs and maintenance collectively costing less than $250 shall not constitute defects covered by this Paragraph.** If the Parties have not reached written
107 agreement resolving the inspection issues within the Inspection Period, then either Party may terminate this Contract by written notice to the other Party. In the event of
108 such notice, this Contract shall be null and void and the Earnest Money shall be returned to Buyer. *In the absence of written notice prior to the expiration of the*
109 *Inspection Period, this provision shall be deemed waived by all Parties, and this Contract shall be in full force and effect.*

Buyer Initials: _MS_  Buyer Initials: _____  Seller Initials: _af_  Seller Initials: _____

as an agent for American International Relocation Solutions, LLC

Case: 1:19-cv-05684 Document #: 209-6 Filed: 06/22/23 Page 3 of 4 PageID #:2685

dotloop signature verification: www.dotloop.com/my/verification/DL-355337725-3-1873
DocuSign Envelope ID: 097E6F1C-7090-4B1C-BB50-77350249A631

145 **GENERAL PROVISIONS**
146  A.    **Prorations.** Rent, interest on existing mortgage, if any, water taxes and other items shall be prorated as of the Closing Date. Security deposits, if any, shall be paid to Buyer at Closing. Notwithstanding anything to the contrary contained in Paragraph 9 of this Contract, if the Property is improved as of the Closing Date, but the last available tax bill is on vacant land, Seller shall place in escrow an amount equal to 2% of the Purchase Price and the Parties shall reprorate taxes within 30 days after the bill on the improved property becomes available.

150  B.    **Uniform Vendor and Purchaser Risk Act.** The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall be applicable to this Contract.

151  C.    **Title.** At least 5 Business Days prior to the Closing Date, Seller shall deliver to Buyer or his agent evidence of merchantable title in the intended grantor by delivering a Commitment for Title Insurance of a title insurance company bearing a date on or subsequent to the Acceptance Date, in the amount of the Purchase Price, subject to no other exceptions than those previously listed within this Contract and to general exceptions contained in the commitment. Delay in delivery by Seller of a Commitment for Title Insurance due to delay by Buyer's mortgagee in recording mortgage and bringing down title shall not be a default of this Contract. Every Commitment for Title Insurance furnished by Seller shall be conclusive evidence of title as shown. If evidence of title discloses other exceptions, Seller shall have 30 days after Seller's receipt of evidence of title to cure the exceptions and notify Buyer accordingly. As to those exceptions that may be removed at Closing by payment of money, Seller may have those exceptions removed at Closing by using the proceeds of the sale.

158  D.    **Notice.** All notices required by this Contract shall be in writing and shall be served upon the Parties or their attorneys at the addresses provided in this Contract. The mailing of notice by registered or certified mail, return receipt requested, shall be sufficient service. Notices may also be served by personal delivery or commercial delivery service or by the use of a facsimile machine. In addition, facsimile signatures or digital signatures shall be sufficient for purposes of executing this Contract and shall be deemed originals. E-mail notices shall be deemed valid and received by the addressee when delivered by e-mail and opened by the recipient. Each Party shall retain a copy of proof of facsimile transmission and email notice and provide such proof, if requested.

163  E.    **Disposition of Earnest Money.** In the event of any default by either Party, Escrowee may not distribute the Earnest Money without the joint written direction of Seller and Buyer or their authorized agents. However, if Escrowee has not received the joint written direction of both Seller and Buyer or their authorized agents, then Escrowee may give written notice to Seller and Buyer of the intended disbursement of Earnest Money, indicating the manner in which Escrowee intends to disburse in the absence of any written objection. If neither Party objects, in writing, to the proposed disposition of the Earnest Money within 30 days after the date of the notice, then Escrowee shall proceed to dispense the Earnest Money as previously noticed by Escrowee. If either Seller or Buyer objects in writing to the intended disposition within the 30 day period, then the Escrowee may deposit the Earnest Money with the Clerk of the Circuit Court by the filing of an action in the nature of an Interpleader. Escrowee may withdraw from the Earnest Money all costs, including reasonable attorney's fees, related to the filing of the Interpleader, and the Parties shall indemnify and hold Escrowee harmless from any and all claims and demands, including the payment of reasonable attorneys' fees, costs, and expenses arising out of those claims and demands. In the event of default by Buyer, the Earnest Money, less expenses and commission of the listing broker, shall be paid to Seller. If Seller defaults, the Earnest Money, at the option of Buyer, shall be refunded to Buyer, but such refunding shall not release Seller from the obligations of this Contract.

173  F.    **Operational Systems.** Seller represents that the heating, plumbing, electrical, central cooling, ventilating systems, appliances, and fixtures on the Property are in working order and will be so at the time of Closing. Buyer shall have the right to enter the Property during the 48-hour period immediately prior to Closing solely for the purpose of verifying that the operational systems and appliances serving the Property are in working order and that the Property is in substantially the same condition, normal wear and tear excepted, as of the Acceptance Date.

177  G.    **Insulation and Heat Disclosure Requirements.** If the Property is new construction, Buyer and Seller shall comply with all insulation disclosure requirements as provided by the Federal Trade Commission, and Rider 13 is attached. If the Property is located in the City of Chicago, Seller and Buyer shall comply with the provisions of Chapter 5-16-050 of the Municipal Code of Chicago concerning heating cost disclosure for the Property.

180  H.    **Code Violations.** Seller warrants that no notice from any city, village, or other governmental authority of a dwelling code violation that currently exists on the Property has been issued and received by Seller or Seller's agent ("**Code Violation Notice**"). If a Code Violation Notice is received after the Acceptance Date and before Closing, Seller shall promptly notify Buyer of the Code Violation Notice.

183  I.    **Escrow Closing.** At the written request of Seller or Buyer received prior to the delivery of the Deed, this sale shall be closed through an escrow with a title insurance company, in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by the title insurance company, with such special provisions inserted in the escrow agreement as may be required to conform with this Contract. Upon the creation of an escrow, payment of Purchase Price and delivery of deed shall be made through the escrow, this Contract and the Earnest Money shall be deposited in the escrow, and the Broker shall be made a party to the escrow with regard to commission due. The cost of the escrow shall be divided equally between Buyer and Seller.

188  J.    **Legal Description and Survey.** At least 5 Business Days prior to Closing, Seller shall provide Buyer with the legal description of the Property as set forth in the recorded declaration of the condominium. If Buyer or Buyer's mortgagee desires a more recent or extensive survey the survey shall be obtained at Buyer's expense. The Parties may amend this Contract to attach a complete and correct legal description of the Property.

191  K.    **Affidavit of Title; ALTA.** Seller agrees to furnish to Buyer an affidavit of title subject only to those items set forth in this Contract, and an ALTA form if required by Buyer's mortgagee, or the title insurance company, for extended coverage.

193  L.    **RESPA.** Buyer and Seller shall make all disclosures and do all things necessary to comply with the applicable provisions of the Real Estate Settlement Procedures Act of 1974, as amended.

195  M.    **Transfer Taxes.** Seller shall pay the amount of any stamp tax imposed by the state and county on the transfer of title, and shall furnish a completed declaration signed by Seller or Seller's agent in the form required by the state and county, and shall furnish any declaration signed by Seller or Seller's agent or meet other requirements as established by any local ordinance with regard to a transfer or transaction tax. Any real estate transfer tax required by local ordinance shall be paid by the person designated in that ordinance.

199  N.    **Removal of Personal Property.** Seller shall remove from the Property by the Closing Date all debris and Seller's personal property not conveyed by Bill of Sale to Buyer.

201  O.    **Surrender.** Seller agrees to surrender possession of the Property in broom-clean condition and in the same condition as it was on the Acceptance Date, ordinary wear and tear excepted, subject to Paragraph B of the General Provisions of this Contract. To the extent that Seller fails to comply with this paragraph, Seller shall not be responsible for that portion of the total cost related to this violation that is below $250.00.

204  P.    **Time.** Time is of the essence for purposes of this Contract.

205  Q.    **Number.** Wherever appropriate within this Contract, the singular includes the plural.

206  R.    **Flood Plain Insurance.** In the event the Property is in a flood plain and flood insurance is required by Buyer's lender, Buyer shall pay for that insurance.

207  S.    **Business Days and Time.** Business Days are defined as Monday through Friday, excluding Federal holidays. Business Hours are defined as 8:00 AM to 6:00 PM Chicago Time.

209  T.    **Patriot Act.** Seller and Buyer represent and warrant that they are not acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named by Executive Order or the United States Treasury Department as a Specially Designated National and Blocked Person, or other banned or blocked person, entity, nation or transaction pursuant to any law, order, rule or regulation which is enforced or administered by the Office of Foreign Assets Control ("OFAC"), and that they are not engaged in this transaction directly or indirectly on behalf of, or facilitating this transaction directly or indirectly on behalf of, any such person, group, entity, or nation. Each Party shall defend, indemnify, and hold harmless the other Party from and against any and all claims, damages, losses, risks, liabilities, and expenses (including reasonable attorneys' fees and costs) arising from or related to any breach of the foregoing representation and warranty.

215  U.    **Brokers.** The real estate brokers named in this Contract shall be compensated in accordance with their agreements with their clients and/or any offer of compensation made by the listing broker in a multiple listing service in which the listing and cooperating broker both participate.

217  V.    **Executed Contract.** The listing broker shall hold the fully executed copy of this Contract.

as an agent for Ameri
International Relocat[ion]
Solutions, LLC

Buyer Initials: _MS_  Buyer Initials: _____  Seller Initials: _af_  Seller Initials: _____

Case: 1:19-cv-05684 Document #: 209-6 Filed: 06/22/23 Page 4 of 4 PageID #:2686

dotloop signature verification: www.dotloop.com/my/verification/DL-355337725-3-1873
DocuSign Envelope ID: 097E6F1C-7090-4B1C-BB50-77350249A631

110 17.  **General Provisions, Riders and Addendums.** THIS CONTRACT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY BUYER AND SELLER AND
111  DELIVERED TO BUYER OR BUYER'S DESIGNATED AGENT. THIS CONTRACT INCLUDES THE GENERAL PROVISIONS ON THE LAST PAGE OF THIS CONTRACT AND THE
112  FOLLOWINGR RIDERS AND ADDENDUMS, IF ANY, __Aires Addendum to be made part of__
113  _____, WHICH ARE ATTACHED TO AND MADE A PART OF THIS CONTRACT.

[MS initials 06/07/18 7:10AM CDT]

114 This Contract shall be of no force or effect if not accepted by Seller on or before ~~May 29, 2018~~ June 8, 2018 [MS 06/07/18 7:10AM CDT]

115 OFFER DATE: __May 27, 2018__        ACCEPTANCE DATE: __6/8/2018__ ("Acceptance Date").

116 BUYER'S INFORMATION:                 SELLER'S INFORMATION:
117 Buyer's Signature: [DocuSigned]      Seller's Signature: [DocuSigned] __Amanda Flucker__
118 Buyer's Name (print): __Melinda Sgariglia__   Seller's Name (print): __Aires__ 1354FE4D2C9C461...
                                                  as an agent for American
119 Buyer's Signature: _____   Seller's Signature: _____ International Relocation
120 Buyer's Name (print): _____   Seller's Name (print): _____ Solutions, LLC

121 Address: _____   Address: _____
122 Phone 1: _____ Phone 2: _____   Phone 1: _____ Phone 2: _____
123 Email 1: __m.kadunc@comcast.net__     Email 1: _____
124 Email 2: _____   Email 2: _____

125                 The names and addresses set forth below are for informational purposes only and subject to change

126 Buyer's Broker's Information:         Seller's Broker's Information:
127 Designated Agent: __Megan Caruso__    Designated Agent: __Garrett Luehrs__
128 Agent MLS #: __875143__ Agent License #: ____   Agent MLS #: __880878__ Agent License #: ____
129 Brokerage: __@properties__            Brokerage: __Coldwell Banker__
130 Brokerage MLS #: __84025__ Brokerage License #: ____   Brokerage MLS #: __10115__ Brokerage License #: ____
131 Address: __1875 N Damen Ave__         Address: __1910 N Clybourn Ave__
132 Agent Phone: __614.749.6149__ Agent Fax: ____   Agent Phone: __847-209-0869__ Agent Fax: ____
133 Email: __mc@atproperties.com__        Email: __garrett.luehrs@cbexchange.com__

134 Buyer's Attorney's Information:       Seller's Attorney's Information:
135 Attorney Name: __Tom Hawbecker, Hawbecker & Garver__   Attorney Name: _____
136 Address: _____   Address: _____
137 Phone: _____ Fax: _____   Phone: _____ Fax: _____
138 Email: __thomas@hglegal.com__         Email: _____

139 Buyer's Lender's Information:
140 Lender's Name: _____
141 Company Name: _____
142 Address: _____
143 Phone: _____ Fax: _____
144 Email: _____

Buyer Initials: [MS]  Buyer Initials: ____     Page 3 of 4
                                                Revised 09/2017                Seller Initials: ____  Seller Initials: ____
                        © 2017 – Chicago Association of REALTORS® - All Rights Reserved