## Re: Previous 22.1

**john gorr <jgorr1@msn.com>**

Thu 6/14/2018 1:50 PM

**To:** Nicholas Gonring <nick.gonring@gfs.com>; Kelsey Gonring <kelseygonring@gmail.com>

Sending it now. No prob. Figures were all gonna need this done soon!

Please shoot me a copy of what you send him as well. Thanks

---

**From:** Kelsey Gonring <kelseygonring@gmail.com>
**Sent:** Thursday, June 14, 2018 1:37:24 PM
**To:** john gorr; Nicholas Gonring
**Subject:** Re: Previous 22.1

Looks great, thanks so much for completing that.

Probably best if Garrett gets it from you, so if you don't mind quick sending it his way and letting him know that I will provide the minutes, financials, and budget, we should be all set!

On Thu, Jun 14, 2018 at 1:28 PM, john gorr <jgorr1@msn.com> wrote:
> Yeah, that seems right for the minutes, good call. Here's the 22.1 for you to review. Please review and let me know what else you need.
>
> Ryan sent the financials, so that looks good.

---

> **From:** Kelsey Gonring <kelseygonring@gmail.com>
> **Sent:** Thursday, June 14, 2018 1:10 PM
> **To:** john gorr; Nicholas Gonring
> **Subject:** Previous 22.1
>
> Hey John,
>
> Attached is the 22.1 filed out by Ryan when we purchased.
>
> Doesn't seem like there is question pertaining to leaks so there would be no need to go into detail about issues in your unit or the building.
>
> Question 8 asks for board meeting minutes showing approval of special assessments. We can provide minutes for the meeting where we decided on hiring Arrow. No need to go into a detailed history of how and why we came to that conclusion since that is not what they are asking for. I will draft a very brief document stating our decision to hire Arrow following a recommendation to seal the building and the percentage breakdown per unit for that work.
>
> Thoughts?

EXH 33

Gorr 00229

Kelsey

Gorr 00230

DocuSign Envelope ID: 2B7C22F5-A3A0-45F0-B0AC-52FFE7E3CA41

Addendum to Purchase and Sale Agreement: 1, March 1, 2011

 aires

### American International Relocation Solutions
### Addendum to Purchase and Sale Agreement

This is an addendum to a Purchase and Sale Agreement (the "Agreement") dated as of _June 6, 2018_ between American International Relocation Solutions, LLC (Aires), a Pennsylvania Corporation as Seller and _Melinda Sgariglia_ as Buyer, with respect to the land, buildings, improvements and contents located at:2726 W. Cortez Street Unit 1, Chicago, IL 60622 (the "Property"). In the event of any conflict between the provisions of this Rider and the provisions of the Agreement, the provisions of this Rider shall control.

**Ownership:** The terms and conditions of this agreement, which apply to the seller, are subject to the seller becoming contractual owner.

**Seller's Authority:** No Agreement for the sale of the Property shall be deemed effective unless executed in writing by Seller. Any offer or counter-offer executed by a real estate broker or agent on behalf of Seller (other than a corporate officer of Seller) shall not be binding on Seller unless and until confirmed in writing and signed by Seller.

**Seller's Representations:** Any representation by seller shall be to the best of the seller's knowledge and belief without inquiry or investigation. No representation shall survive the closing unless specifically expressed herein.

**Condition of Premises:** Buyer understands that Seller is a relocation management service and has never lived on or in the Property. The Property, including the contents (fixtures, appliances and personal property), being sold and purchased are not new, and are being sold "as is", in their present condition. Neither Seller nor any of its agents make any representations concerning the Property, including but not limited to, representations regarding the size of the buildings and improvements, the presence or absence of toxic or hazardous substances, or the presence or absence of any encroachments or unrecorded easements, except as follows:

**Tests, Inspections, and disclosures:** The following tests, inspections, and disclosure have been completed in, on or with respect to the Property and Buyer acknowledges receipt of the documentation specified below in regard to those tests or inspections:

| Type of Disclosure | Date | Done By |
|---|---|---|
| Aires Sellers Disclosure Form | 5/30/18 | Nicholas Gonring |
| State Disclosure Form | 5/18/18 | Nicholas Gonring |
| Aires Signed State Disclosure Form | 6/6/18 | Aires Relocation |

**Other**

The above documents are being given to Buyer for informational purposes only. They represent the opinions of the individuals or firms who prepared them. Seller makes no representations as to the accuracy of the information given and makes no agreement to undertake or perform any action recommended in any of the reports.

Unless specifically noted, Seller has no knowledge concerning the presence of radon gas, asbestos, mold, synthetic stucco, or other allergen, toxic or hazardous substances in the Property. However, Buyer shall not interpret Seller's lack of knowledge as a representation that the Property is free of these or other toxic or hazardous substances.

**Buyer's Duty to Inspect/Test:** Buyer agrees to inspect or to have the Property inspected by others on Buyer's behalf to determine the existence of defects, if any. All and any inspections shall be at Buyer's sole cost and expense. Seller encourages Buyer to secure such surveys, professional building inspection reports, any inspections or reports necessary to determine the presence of radon gas, asbestos, mold, synthetic stucco, or other toxic or hazardous substances in or about the

EXH 34

**HG** HAWBECKER & GARVER, LLC

26 Blaine Street
Hinsdale, IL 60521

Phone: 630.789.6833
Fax: 630.230.1119
www.hglegal.com

**Via facsimile  630-629-0580**

June 14, 2018

Ms. Sarah Wilkins
Attorney at Law

Re:     2726 W. Cortez Street, Unit 1, Chicago, IL 60622
        **Aires to Sgariglia**

Dear Ms. Wilkins,

Please be advised that our office is representing the Buyer, Melinda Sgarigilia, in the above referenced real estate transaction.  This letterhead should provide you with our information.  Should you need anything else, please do not hesitate to contact our office.

Pursuant to the Attorney Modification Provision, I hereby approve of the contract subject to the following modifications:

1) If this unit comes with a parking space(s), please confirm that the parking space will be insured as a separate parcel on the title policy and please confirm whether said space is a limited common element, assigned or deeded.
2) If this unit comes with a storage space(s), please confirm that the storage space will be insured as a separate parcel on the title policy and please confirm whether said space is a limited common element, assigned or deeded.
3) Paragraph 3: To confirm, the sales price is $510,000.00.
4) Paragraph 6: All remaining earnest money shall be tendered within 3 business days after the parties reach agreement per paragraphs 15 and 16 of the purchase contract.
5) Paragraph 7: Mortgage Contingency
   a. Line 36: To confirm, the first commitment date is July 6, 2018.
   b. This contract is contingent upon the lender appraising the property for an amount at least equal to the purchase price.
   c. Please omit all references to seller procured financing.
   d. The term "written mortgage commitment" is hereby modified to state a "written mortgage commitment subject to only at closing conditions and matters of title and survey as determined in the sole discretion of the Buyer's lender."
   e. In the event seller fails to respond to or denies an extension under this provision, at Buyer's sole election, Buyer reserves the right to waive said extension and proceed under the previously agreed-upon terms or declare the contract null & void and receive the return of earnest money.
6) Paragraph 8: Closing
   a. To confirm, the closing date shall be July 25, 2018.
   b. The parties agree that in the event the closing is delayed for any reason due to the new TRID guidelines that the Buyer will not be considered in default of the contract and the Seller will agree to extend the closing date as necessary.

EXH 35

    c. Closing shall take place at a title company of Seller's choosing at the office situated nearest to the Property or the Chicago Loop office of the Seller's chosen title company.

7) Paragraph 11: Seller shall pay the 2017 2nd installment at or prior to closing should said bill be issued. If not, the 2017 taxes shall be prorated at 110% of the last ascertainable full years tax bill.  As 2018 is reassessment year in the city of Chicago,.  The property is currently assessed at $33,177, which is well below the purchase price. The proration per the contract does not tax into account the pending increase in assessed value. 2018 taxes shall be prorated by taking the 10% of the purchase price, $51,000, multiplied by the most recent ascertainable tax rate and equalization factor.

8) Paragraph 12: Homeowners Association

    a. If any special assessment is discussed, levied or approved prior to the date of closing, Seller shall be responsible for the full payment thereof.

    b. Paragraph 12, Line 73: The following is added after the sentence ending with Association Documents. "This contract shall remain contingent upon Buyer's approval of those changes."

    c. Please confirm the monthly assessment is $215.00 and please confirm what is included in the monthly assessment (gas, electric, water, cable, etc.).

    d. Please have the Association complete a 22.1 disclosure.  This contract is contingent upon Buyer's approval of same.  Also, please provide a copy of the rules and regulations, the last 12 months association minutes, the association budget, and condo association declarations and bylaws including the plat which was recorded with the declaration.  This contract shall remain contingent upon the satisfactory review thereof.  In the event the property is not a condominium, but is part of a homeowner's or townhome association, then the Seller shall still cause the association to fill out a 22.1 form and provide the above requested documentation.

    e. Please verify that the Condo Association has not experienced any instances of water (interior or exterior) leaking into the Property and/or any water damage during Seller's ownership of the Property.  If there have been any such occurrences, please provide dates, locations, damage and any repairs made.

9) Seller represents and warrants that the following are true and shall remain true at the time of closing:

    a. Sellers have not made any insurance claims within the last 5 years;

    b. The real estate taxes for the subject property are not subject to a senior freeze discount, senior exemption, improvement waiver, unimproved or partially unimproved status or any other type of exemption or discount which may be dropped by virtue of this transaction;

    c. Seller agrees that if the amount of the most recent tax bill reflects a homeowner, senior citizen or any other exemption, Seller has submitted all necessary documentation to the County Assessor's Office prior to closing to preserve said exemptions.  In the event the necessary documentation cannot be submitted prior to closing, the tax credits shall prorated without such exemptions.

    d. The Seller received all proper permits for any repairs completed during Seller's ownership of the property and will provide copies as well as a certificate of occupancy if applicable; and

    e. There are no complaints, violations, suits, citations, notices or other citations of any kind whatsoever that are pending, concerning building code or zoning violations or in

any other matter concerning this property or the Seller or that may interfere with Buyer's enjoyment and marketability of the property.

10) Paragraph 13: If any additional items occur or if any inaccuracies occur before closing that would require a supplement to the Residential Real Property Disclosure, Buyer will have the right to accept the disclosure or inaccuracies or terminate the contract with the return of all earnest money if the parties cannot reach agreement on Seller's proposal to cure.

11) Paragraph C: At Seller's expense, Seller will deliver or cause to be delivered to Buyer or Buyer's attorney within customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a title commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended coverage by a title company licensed to operate in the State of Illinois, issued on or subsequent to the Date of Acceptance.

12) Seller represents and warrants that they are not a foreign citizen and that Section 1445 of the Internal Revenue Code does not apply to this transaction. Seller will present a signed FIRPTA document to Buyer at closing.

13) Please verify that, to the best of Seller's knowledge, the Property has not had any instances of water (interior or exterior) leaking into the Property and/or any water damage during Seller's ownership of the Property. If there have been any such occurrences, please provide dates, locations, damage and any repairs made.

14) Buyer respectfully requests an early morning closing (9:00 a.m.) on the July 25th if possible.

15) Please confirm if there are any rental restrictions with the Association.

Pursuant to the Professional Inspection, Buyer hereby requests the following:

A) Buyer requests a $4500 credit in lieu of repairing the items listed on the inspection Summary Page and Potential Safety Hazards page.

B) Can you please confirm the date the HVAC was last serviced? Are there any receipts available?

C) Seller to call ComEd (866-639-3532 option 2. Buyer can't put in this request) to notify them there is a safety issue and that the power run from the alley to the neighbor's property is too close to this unit's garage deck. Additionally, Seller to call customer care at 800-334-7661 and request that "sleeving" be put on the power run until the run is relocated per the above. There should be ample time to complete these items and it is Buyer's understanding that there is no charge for this work. However, given the significant safety issue, if this is not completed by July 25th 2018, the date of closing, Buyer respectfully requests that an escrow with sufficient funds be established to handle any charges resulting from the power run relocation.

D) Flickering Lights- Seller to call ComEd customer care and explain that the unit is experiencing flickering lights (800-334-7661). ComEd will determine if this issue is an inside/outside issue. If a building issue, Buyer respectfully requests that a licensed electrician properly repair this issue with a work order/receipt provided to Buyer prior to closing.

These issues are in no way to be construed as a counteroffer but merely suggested modifications to the contract. In the event that some or all of the suggested modifications are not acceptable, then our client reserves the right to either waive some or all of the aforementioned suggested modifications, proceed under the terms of the contract as originally drafted, or to declare the contract to be null and void. If Seller agrees to this, please sign and return a copy of this letter via facsimile. I look forward to working with you in this transaction.

Sincerely,

Thomas B. Hawbecker

Agreed and accepted:

This _____ Day of _____, _____

_____

Attorney for Seller

# Sarah M Wilkins
### ATTORNEY & COUNSELOR AT LAW

TERRACE EXECUTIVE CENTER
1 SOUTH 376 SUMMIT AVENUE, COURT D
OAKBROOK TERRACE, ILLINOIS 60181

TELEPHONE   630.629.3203
FACSIMILE   630.629.0580

June 18, 2018

Via Facsimile: 630-230-1119

Mr. Thomas B. Hawbecker
Hawbecker & Garver, LLC
26 Blaine Street
Hinsdale, IL 60521

Re:   Sale of 2726 West Cortez Street Unit 1, Chicago, IL 60622 (the "Property") by American International
Relocation Solutions, LLC (the "Seller") to Melinda Sgariglia (the "Buyer")

### Attorney Modifications Response Letter

Dear Mr. Hawbecker:

As you are aware, my office represents the Seller, American International Relocation Solutions, LLC, with respect to
the subject real estate transaction. The Seller has reviewed your letter dated June 14, 2018 concerning contract
modifications and has provided the following response:

1.  Seller reports that the Property's parking space, P-1, is a limited common element of which the exclusive
    right to use is included in the Property's legal description.

2.  Seller reports that a storage space is not deeded or listed as a limited common element of which the
    exclusive right to use is included in the Property's legal description. Inquiry has been made with the
    condominium association regarding whether a storage space that has been assigned to the Property, and
    a further response will be provided.

3.  Seller confirms that the contract purchase price is $510,000.00.

4.  Seller agrees that Buyers shall tender the balance of earnest money no later than 3 business days
    following the conclusion of the attorney review/home inspection period.

5.  With respect to Item 5:

    a.  Seller confirms that the date specified at **Line 36** reads July 6, 2018.

    b.  Seller agrees to make the contract contingent upon the Property appraising for at least the
        purchase price. Should the Property fail to appraise, Seller reserves the option to renegotiate the
        purchase price with Buyer and proceed with the transaction.

    c.  Seller agrees to strike from the contract all references to Seller obtaining financing on Buyer's
        behalf.

    d.  Seller agrees to modify **Lines 36-37**; the phrase "written mortgage commitment" shall be
        replaced with the phrase "clear to close."

    e.  Seller respectfully declines to limit Seller's contract termination rights as they relate to financing
        contingency extension requests. However, Seller generally considers extensions of the mortgage
        contingency in good faith.

EXH 36

Mr. Thomas B. Hawbecker
June 18, 2018
Page 2

6. With respect to Item 6:

    a. Seller confirms that the contract closing date is July 25, 2018.

    b. Seller agrees not to treat delays in the closing date due to a lender's compliance with TRID or other regulations as a default by Buyers, provided such delays are not intentionally caused by Buyers.

    c. Seller agrees that the closing may take place at the Chicago Loop location of Attorneys' Title Guaranty Fund, Inc.

7. Inquiry has been made with Seller regarding prorating the 2018 taxes, and a further response will be provided.

8. With respect to Item 8:

    a. Seller agrees to be responsible for those special assessments of which it is Seller's responsibility to pay, and of which are enacted and levied prior to closing.

    b. Seller respectfully declines to modify **Paragraph 12, Line 73**.

    c. Seller has made inquiry with the Property's condominium association regarding the amount and what is included in the Property's monthly assessment, and a further response will be provided.

    d. Seller agrees to abide by the Illinois Condominium Property Act and provide Buyer those required documents as delineated in 765 ILCS 605/22.1(a), with Buyer's approval of those documents to be consistent with **Paragraph 12, Lines 75–79** of the contract.

    e. As a third-party corporate relocation company, Seller is unable to make verifications regarding whether the Property has experienced water leaking or water damage. However, Seller agrees to abide by the terms of the "Buyer's Duty to Inspect/Test" section of the Aires addendum with respect to possible leaks, seepage, or water infiltration of the Property, as Seller would have no knowledge of such matters unless raised during the home inspection process.

9. With respect to Item 9:

    a. As a third-party corporate relocation company that has never occupied the Property, Seller is unable to make representations or warranties regarding whether insurance claims have been made against the Property, as Seller would have no knowledge of such matters.

    b. Seller reports that the Property was only subject to a homeowner's exemption within the most recently ascertainable full year tax bill. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report.

    c. Please see Number 9(b) above. Additionally, as Seller understands Cook County's application for the homeowner's exemption, Buyer needs only to affirm that the Property was occupied by its current or previous owner as a principal residence as of January 1, 2018. Seller reports that the Property was owner-occupied at the beginning of the 2018 tax year. Thus, Buyer would be able to apply for a homeowner's exemption if the homeowners have vacated the Property before applying. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report.

    d. Seller reports that no work was done on the Property without obtaining the necessary permits. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report.

To:    Page: Case: 1:19-cv-05684 Document #: 210 Filed: 06/22/23 Page 10 of 43 PageID #:2874  From: Sarah Wilkins

Mr. Thomas B. Hawbecker
June 18, 2018
Page 3

> e.  Seller reports that the Property is not subject to any current or pending complaints, violations, suits, notices, or other citations. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report.

10. Seller agrees to abide by Section 40 of the Illinois Residential Real Property Disclosure Act with respect to Buyer's rights to terminate the contract should Buyer receive a Residential Real Property Disclosure Report supplement from Seller.

11. Seller agrees to follow the necessary procedures to ensure Buyer receives a title policy with extended coverage.

12. Seller reports that it is not a foreign person and will provide said proof at closing.

13. Please see Number 8(e) above.

14. Seller acknowledges Buyer's request for an early morning closing.

15. Inquiry has been made with the Property's condominium association regarding whether rental restrictions are in place, and a further response will be provided.

Seller is reviewing the home inspection issues, and a response will be provided under separate cover. Please sign and fax or email a copy of this letter to signify your client's agreement of the foregoing matters.

Very truly yours,

Sarah M. Wilkins
Attorney for Seller

cc:     Amanda Flucker – AIReS
        Gretchen Lombardi – RRERS
        Garrett Luehrs – Coldwell Banker (Lincoln Park)
        Megan Caruso - @ Properties (Bucktown)

AGREED: _____     DATED: _____

**Sarah M Wilkins**
ATTORNEY & COUNSELOR AT LAW

TERRACE EXECUTIVE CENTER
1 SOUTH 376 SUMMIT AVENUE, COURT D
OAKBROOK TERRACE, ILLINOIS 60181

TELEPHONE   630.629.3203
FACSIMILE   630.629.0580

June 18, 2018

Via Facsimile: 630-230-1119

Mr. Thomas B. Hawbecker
Hawbecker & Garver, LLC
26 Blaine Street
Hinsdale, IL 60521

Re:   Sale of 2726 West Cortez Street Unit 1, Chicago, IL 60622 (the "Property") by American International
      Relocation Solutions, LLC (the "Seller") to Melinda Sgariglia (the "Buyer")

### Attorney Modifications Response Letter

Dear Mr. Hawbecker:

As you are aware, my office represents the Seller, American International Relocation Solutions, LLC, with respect to the subject real estate transaction. The Seller has reviewed your letter dated June 14, 2018 concerning contract modifications and has provided the following response:

Ok

1.  Seller reports that the Property's parking space, P-1, is a limited common element of which the exclusive right to use is included in the Property's legal description.

Ok

2.  Seller reports that a storage space is not deeded or listed as a limited common element of which the exclusive right to use is included in the Property's legal description. Inquiry has been made with the condominium association regarding whether a storage space that has been assigned to the Property, and a further response will be provided.

Ok

3.  Seller confirms that the contract purchase price is $510,000.00.

Ok

4.  Seller agrees that Buyers shall tender the balance of earnest money no later than 3 business days following the conclusion of the attorney review/home inspection period.

5.  With respect to Item 5:

Ok

    a.  Seller confirms that the date specified at **Line 36** reads July 6, 2018.

Agreed

    b.  Seller agrees to make the contract contingent upon the Property appraising for at least the purchase price. Should the Property fail to appraise, Seller reserves the option to renegotiate the purchase price with Buyer and proceed with the transaction.

Ok

    c.  Seller agrees to strike from the contract all references to Seller obtaining financing on Buyer's behalf.

Agreed

    d.  Seller agrees to modify **Lines 36-37**; the phrase "written mortgage commitment" shall be replaced with the phrase "clear to close."

Respectfully re-requested

    e.  Seller respectfully declines to limit Seller's contract termination rights as they relate to financing contingency extension requests. However, Seller generally considers extensions of the mortgage contingency in good faith.

Page **1** of **3**

EXH 37

EXHIBIT F

Mr. Thomas B. Hawbecker
June 18, 2018
Page 2

6.  With respect to Item 6:

Ok

    a.  Seller confirms that the contract closing date is July 25, 2018.

Ok

    b.  Seller agrees not to treat delays in the closing date due to a lender's compliance with TRID or other regulations as a default by Buyers, provided such delays are not intentionally caused by Buyers.

Agreed

    c.  Seller agrees that the closing may take place at the Chicago Loop location of Attorneys' Title Guaranty Fund, Inc.

Please provide
the sellers resposne

7.  Inquiry has been made with Seller regarding prorating the 2018 taxes, and a further response will be provided.

8.  With respect to Item 8:

In the event a special assessment is discussed and the parties cannot reach agreement regarding payment of such potential special assessment, the Purchaser may terminate the contract and the earnest money shall be returned to the purchaser

    a.  Seller agrees to be responsible for those special assessments of which it is Seller's responsibility to pay, and of which are enacted and levied prior to closing.

    b.  Seller respectfully declines to modify **Paragraph 12, Line 73**.
re-requested. Changes to the association disclosures must be subject to the Purchasers review and approval.

    c.  Seller has made inquiry with the Property's condominium association regarding the amount and what is included in the Property's monthly assessment, and a further response will be provided.
Please provide the association response.

    d.  Seller agrees to abide by the Illinois Condominium Property Act and provide Buyer those required documents as delineated in 765 ILCS 605/22.1(a), with Buyer's approval of those documents to be consistent with **Paragraph 12, Lines 75–79** of the contract.   Ok

    e.  As a third-party corporate relocation company, Seller is unable to make verifications regarding whether the Property has experienced water leaking or water damage. However, Seller agrees to abide by the terms of the "Buyer's Duty to Inspect/Test" section of the Aires addendum with respect to possible leaks, seepage, or water infiltration of the Property, as Seller would have no knowledge of such matters unless raised during the home inspection process.
Please confirm the same with the prior owner as the seller has direct contact with the prior owner.

9.  With respect to Item 9:

    a.  As a third-party corporate relocation company that has never occupied the Property, Seller is unable to make representations or warranties regarding whether insurance claims have been made against the Property, as Seller would have no knowledge of such matters.
Please confirm the same with the prior owner as the seller has direct contact with the prior owner.

Ok

    b.  Seller reports that the Property was only subject to a homeowner's exemption within the most recently ascertainable full year tax bill. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report.

Ok

    c.  Please see Number 9(b) above. Additionally, as Seller understands Cook County's application for the homeowner's exemption, Buyer needs only to affirm that the Property was occupied by its current or previous owner as a principal residence as of January 1, 2018. Seller reports that the Property was owner-occupied at the beginning of the 2018 tax year. Thus, Buyer would be able to apply for a homeowner's exemption if the homeowners have vacated the Property before applying. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report.

    d.  Seller reports that no work was done on the Property without obtaining the necessary permits. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report.
Please confirm the same with the prior owner as the seller has direct contact with the prior owner.

Mr. Thomas B. Hawbecker
June 18, 2018
Page 3

  e. Seller reports that the Property is not subject to any current or pending complaints, violations, suits, notices, or other citations. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report.
    Please confirm the same with the prior owner as the seller has direct contact with the prior owner.

10. Seller agrees to abide by Section 40 of the Illinois Residential Real Property Disclosure Act with respect to Buyer's rights to terminate the contract should Buyer receive a Residential Real Property Disclosure Report supplement from Seller. See below

11. Seller agrees to follow the necessary procedures to ensure Buyer receives a title policy with extended coverage. Ok

12. Seller reports that it is not a foreign person and will provide said proof at closing. Ok

13. Please see Number 8(e) above.
   Please confirm the same with the prior owner and or the association as the seller has direct contact with the prior owner.

14. Seller acknowledges Buyer's request for an early morning closing. Ok

15. Inquiry has been made with the Property's condominium association regarding whether rental restrictions are in place, and a further response will be provided.
   Please provide a response

Seller is reviewing the home inspection issues, and a response will be provided under separate cover. Please sign and fax or email a copy of this letter to signify your client's agreement of the foregoing matters.

Very truly yours,

*Sarah M. Wilk*

Sarah M. Wilkins
Attorney for Seller

10: Respectfully declined. The residential real property disclosure does not allow Purchasers to cancel in the event Seller determines there is an inaccuracy on the disclosure report.  Seller shall inform Purchasers of any change to the residential real property disclosure report and the parties shall then have three business days to try to come to an agreement on a cure and if the parties cannot come to an agreement on Seller's proposal to cure then either party may cancel the contract.

cc: Amanda Flucker – AIReS
  Gretchen Lombardi – RRERS
  Garrett Luehrs – Coldwell Banker (Lincoln Park)
  Megan Caruso - @ Properties (Bucktown)

AGREED: _____   DATED: _____
as modified 6-22-18

# Sarah M Wilkins
### ATTORNEY & COUNSELOR AT LAW

TERRACE EXECUTIVE CENTER
1 SOUTH 376 SUMMIT AVENUE, COURT D
OAKBROOK TERRACE, ILLINOIS 60181

TELEPHONE   630.629.3203
FACSIMILE   630.629.0580

July 2, 2018

Via Facsimile: 630-230-1119

Mr. Thomas B. Hawbecker
Hawbecker & Garver, LLC
26 Blaine Street
Hinsdale, IL 60521

Re:     Sale of 2726 West Cortez Street Unit 1, Chicago, IL 60622 (the "Property") by American International
        Relocation Solutions, LLC (the "Seller") to Melinda Sgariglia (the "Buyer")

### Attorney Modifications 2nd Response Letter

Dear Mr. Hawbecker:

As you are aware, my office represents the Seller, American International Relocation Solutions, LLC, with respect to
the subject real estate transaction. The Seller has reviewed your June 22, 2018 inline responses to my June 18,
2018 letter and has provided the following response:

1. Seller acknowledges Buyer's responses to Items 1–5(d); 6; 8(d); 9(b)–9(c); 10–12; and 14.

[Agreed] 2. With respect to Item 5(e), again, Seller respectfully declines to limit its contract termination rights as they
relate to financing contingency extension requests. However, Seller generally considers extensions of the
mortgage contingency in good faith and is not in the practice of failing to respond to requests.

[Agreed as modified] 3. With respect to Item 7, Seller agrees to prorate the general real estate taxes at ~~XXX%~~ 125% of the most recently
ascertainable full year tax bill (now the 2017 full year tax bill). Furthermore, Seller acknowledges that the
title company may request that the 2017 second installment be paid at closing if it is not paid prior.

[Ok] 4. With respect to Item 8(a), again, Seller agrees to be responsible for those special assessments of which it
is Seller's responsibility to pay, and of which are enacted and levied prior to closing. Regarding the special
assessment from May 2018, my office has been advised that Buyer and your office have received all
pertinent information regarding that special assessment including a receipt that the assessment was paid
in full within June 2018.

[Ok] 5. With respect to 8(b), again, Seller respectfully declines to modify **Paragraph 12, Line 73**. Seller agrees to
abide by the terms of **Lines 75–79** with respect to Buyer's approval of condominium association
information.

[Ok] 6. With respect to Item 8(c), Seller has made an additional inquiry with the Property's condominium
association regarding the amount and what is included in the Property's monthly assessment, and a
further response will be provided.

[Ok] 7. With respect to Item 8(e), again, as a third-party corporate relocation company, Seller is unable to make
verifications regarding whether the Property has experienced water leakage or water damage. However,
Seller agrees to abide by the terms of the "Buyer's Duty to Inspect/Test" section of the Aires addendum
with respect to possible leaks, seepage, or water infiltration of the Property, as Seller would have no
knowledge of such matters unless raised during the home inspection process when the information
reported in the Residential Real Property Disclosure Report or other homeowner provided disclosures
makes no mention of water infiltration issues within the Property.

Page **1** of **2**

EXHIBIT G

EXH 38

Mr. Thomas B. Hawbecker
July 2, 2018
Page 2

Ok

8.  With respect to Item 9(a), Seller reports that the homeowners made no claims against their homeowner's insurance within the last 5 years. As a third-party corporate relocation company that has never occupied the Property, Seller is unable to make representations or warranties regarding whether insurance claims have been made against the Property, as Seller would have no knowledge of such matters.

Ok

9.  With respect to Item 9(d), again, Seller reports that no work was done on the Property without obtaining the necessary permits. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report.

Ok

10. With respect to Item 9(e), again, Seller reports that the Property is not subject to any current or pending complaints, violations, suits, notices, or other citations. As a third-party corporate relocation company, Seller is unable to make representations or warranties beyond its factual report.

Ok

11. With respect to Item 13, again, please see Number 7 above.

Ok

12. With respect to Item 15, another inquiry has been made with the Property's condominium association regarding whether rental restrictions are in place, and a further response will be provided. Please confirm that there are no rules and regulations.

Seller is reviewing the home inspection issues, and a response will be provided under separate cover. Please sign and fax or email a copy of this letter to signify your client's agreement of the foregoing matters. The buyer again requests a $3,000 credit. This is the buyers final position.

Very truly yours,

Sarah M. Wilkins

Sarah M. Wilkins
Attorney for Seller

cc:    Amanda Flucker – AlReS
       Gretchen Lombardi – RRERS
       Garrett Luehrs – Coldwell Banker (Lincoln Park)
       Megan Caruso - @ Properties (Bucktown)

AGREED: _____          DATED: ___7-3-18_____
as modified

8/14/2019          Gordon Food Service Mail - Re: AIRES (GONRING): Buyer resp - 2726 W. Cortez Street, Unit 1 - Aires to Sgariglia


FOOD SERVICE

Nicholas Gonring <nick.gonring@gfs.com>

---

## Re: AIRES (GONRING): Buyer resp - 2726 W. Cortez Street, Unit 1 - Aires to Sgariglia
20 messages

---

**Luehrs, Garrett** <garrett.luehrs@cbexchange.com>                                    Tue, Jul 3, 2018 at 6:37 PM
To: Terry Denise Wilkins <terry.wilkins@swilklaw.com>, Amanda Flucker <Aflucker@aires.com>
Cc: Sarah Wilkins <sarah.wilkins@swilklaw.com>, Gretchen Lombardi <glombardi@riefberglaw.com>, Nicholas Gonring <nick.gonring@gfs.com>,
"Kelsey_Gonring@rush.edu" <Kelsey_Gonring@rush.edu>

Hi All,

Given the holiday tomorrow and the mortgage contingency coming up on July 6th, I am CC'ing Nick and Kelsey
Gonring on this email thread to expedite the decision making process.

Garrett

Garrett Luehrs, Broker
**Coldwell Banker**
1910 N Clybourn Ave
Chicago, Illinois 60614
P: (847) 209-0869
E: mailto:garrett.luehrs@cbexchange.com

---

**From:** Terry Denise Wilkins <terry.wilkins@swilklaw.com>
**Sent:** Tuesday, July 3, 2018 4:30:02 PM
**To:** Amanda Flucker
**Cc:** Sarah Wilkins; Gretchen Lombardi; Luehrs, Garrett
**Subject:** Fwd: AIRES (GONRING): Buyer resp - 2726 W. Cortez Street, Unit 1 - Aires to Sgariglia

Good Afternoon Amanda,

Attached is an additional modification from the buyers' attorney with a reiterated request for a
$3,000.00 closing cost credit (their final position), and a higher percentage for tax proration. I will ask
the association again for additional information concerning rules and regulations and advise. Please
advise our office how you would like our office to respond on your behalf concerning the outstanding
requests.

Thank you,

**Terry Denise Wilkins**
**Senior Paralegal**
Sarah M. Wilkins, Attorney & Counselor at Law
1 South 376 Summit Avenue, Court D
Oakbrook Terrace, IL 60181
630.629.3203 (main)
630.629.0580 (fax)
terry.wilkins@swilklaw.com                              EXH 39

Wire Fraud and Email Phishing Advisory: Law firms, real estate brokerage offices, and title companies have been targeted by hackers using savvy methods to intercept client
communications to commit wire fraud. If you have a closing transaction with our office and you receive an email offering you wiring instructions, please do not respond to that email.
Immediately call your title company closing officer using a method not contained within the fraudulent email. Please be advised that our office will never provide wiring instructions through
unsecured email. Our office will also never provide fully executed contracts through unsecured email as well.

--------- Forwarded message ---------
From: **Kirk Langefeld** <kirk@hglegal.com>
Date: Tue, Jul 3, 2018 at 4:21 PM
Subject: RE: AIRES (GONRING): Buyer resp - 2726 W. Cortez Street, Unit 1 - Aires to Sgariglia
To: Arianna Listecki <arianna@hglegal.com>, Terry Denise Wilkins <terry.wilkins@swilklaw.com>
Cc: "Luehrs, Garrett" <garrett.luehrs@cbexchange.com>, "5846@hglegal.actionstep.com"

**GONRING000122**

Case: 1:19-cv-05684 Document #: 210 Filed: 06/22/23 Page 17 of 43 PageID #:2881

8/14/2019                    Gordon Food Service Mail - Re: AIRES (GONRING): Buyer resp - 2726 W. Cortez Street, Unit 1 - Aires to Sgariglia

<5846@hglegal.actionstep.com>, **Megan Caruso** <mcaruso.realtor@gmail.com>

Please see the byers response attached.  Please also provide title to our office and the lender.  Thanks.


Sincerely,


**Kirk D. Langefeld** | Attorney-at-Law

**HAWBECKER & GARVER, LLC**

26 Blaine Street, Hinsdale, IL 60521

Phone: (630) 789-6833 | Fax: (630) 230-1119

kirk@hglegal.com | www.hglegal.com



REAL ESTATE & ESTATE PLANNING

---

*Wire Fraud is Real*.  Before wiring any money, call the intended recipient at a number you know is valid to confirm the instructions. Additionally, please note that the sender does not have authority to bind a party to a real estate contract via written or verbal communication.

 **Buyer resp sent 7-3 Sgariglia.pdf**
1229K

---

**Kelsey Gonring** <Kelsey_Gonring@rush.edu>                                  Tue, Jul 3, 2018 at 6:59 PM
To: "Luehrs, Garrett" <garrett.luehrs@cbexchange.com>, Terry Denise Wilkins <terry.wilkins@swilklaw.com>, Amanda Flucker <Aflucker@aires.com>
Cc: Sarah Wilkins <sarah.wilkins@swilklaw.com>, Gretchen Lombardi <glombardi@riefberglaw.com>, Nicholas Gonring <nick.gonring@gfs.com>

Hello everyone,


Thank you for looping us in ahead of time given the holiday. Nick and I have reviewed the buyer's response and have decided to agree to the buy's terms ($3,000 closing credit and 125% tax proration) outlined in the attached document.


To address item #12 stating "With respect to item 15, another inquiry has been made with the property's condominium association regarding whether rental restrictions are in place, and a further response will be provided".  – There are no rules or regulations regarding renting of the property. This information can be found in the association documents that are attached.


Please provide Nick and I with the necessary documentation to sign at your earliest convenience in order to finalize the sale.


Thank you,

Kelsey & Nick

GONRING000123

**From:** Luehrs, Garrett [mailto:garrett.luehrs@cbexchange.com]
**Sent:** Tuesday, July 03, 2018 5:37 PM
**To:** Terry Denise Wilkins; Amanda Flucker
**Cc:** Sarah Wilkins; Gretchen Lombardi; 'Nicholas Gonring'; Kelsey Gonring
**Subject:** Re: AIRES (GONRING): Buyer resp - 2726 W. Cortez Street, Unit 1 - Aires to Sgariglia

---

**Rush Email Security**

**\*\*WARNING\*\*** This email originated from outside of Rush University Medical Center. **\*\*DO NOT CLICK\*** links or attachments unless you
recognize the sender and know the content is safe. Remember, Rush IS will never ask for user ID information via email communication.

---

[Quoted text hidden]

 **2726 W. Cortez HOA docs.pdf**
3135K

---

**Amanda Flucker** <Aflucker@aires.com>                                          Thu, Jul 5, 2018 at 10:07 AM
To: Kelsey Gonring <Kelsey_Gonring@rush.edu>, "Luehrs, Garrett" <garrett.luehrs@cbexchange.com>
Cc: Nicholas Gonring <nick.gonring@gfs.com>

Hello,

Thank you for jumping in.

As a reminder, throughout this home sale process, you are not to sign anything with the bueyr's name on it. Aires is to sign any
applicable addendum as Aires is listed as the seller on the contract.

Many thanks!

**Amanda Flucker**

Tel +1.412.677.1813
[Quoted text hidden]

---

**Kelsey Gonring** <Kelsey_Gonring@rush.edu>                                       Thu, Jul 5, 2018 at 10:17 AM
To: Nicholas Gonring <nick.gonring@gfs.com>

Good morning,

We are aware that through the home sale process that Aires is to sign the addendum.

Given the time sensitivity of this sale, we are hopeful and confident that Aires can take our verbal agreement of the buyer's addendum
($3,000 closing credit and 125% tax proration) and finalize the sale today.

---

**From:** Amanda Flucker [mailto:Aflucker@aires.com]
**Sent:** Thursday, July 05, 2018 9:07 AM
**To:** Kelsey Gonring; 'Luehrs, Garrett'
**Cc:** 'Nicholas Gonring'
**Subject:** RE: AIRES (GONRING): Buyer resp - 2726 W. Cortez Street, Unit 1 - Aires to Sgariglia

**GONRING000124**

8/14/2019    Gordon Food Service Mail - Re: AIRES (GONRING): Buyer resp - 2726 W. Cortez Street, Unit 1 - Aires to Sgariglia

[Quoted text hidden]

[Quoted text hidden]

---

**Nicholas Gonring** <nick.gonring@gfs.com>    Thu, Jul 5, 2018 at 11:25 AM
To: Amanda Flucker <Aflucker@aires.com>
Cc: Kelsey Gonring <Kelsey_Gonring@rush.edu>, "Luehrs, Garrett" <garrett.luehrs@cbexchange.com>, terry.wilkins@swilklaw.com

Good Morning,

Is it common for us to have zero contact with the attorneys that are working on our behalf through Aires? This seems to be a definitive bottleneck in closing this deal in any sort of timely fashion. We are aware that through the home sale process Aires is to sign the addendum. Given the time sensitivity of this sale, we are hopeful and confident that you can take our verbal agreement of the buyer's addendum ($3,000 total closing credit and 125% tax proration) and finalize the sale today. This process has been stalemated with "too many hands" in the pot and our potential buyer is threatening to walk away from this deal. This whole experience has been anything but expeditious and needs to get finalized ASAP. Call me live with any questions.

[Quoted text hidden]
--

My Best -

Nicholas E. Gonring



**Nicholas Gonring** | nick.gonring@gfs.com
Culinary Specialist | Chicago Metro Region | p: 262.573.6772
1146 W. Kinzie Ave #103 | Chicago, IL 60642

gfs.com

*This email may contain confidential information. If you are not the intended recipient, please promptly notify the sender, then dispose of the email.*

---

**2 attachments**

 **image001.jpg**
3K

 **image001.jpg**
3K

---

**Amanda Flucker** <Aflucker@aires.com>    Thu, Jul 5, 2018 at 1:47 PM
To: Nicholas Gonring <nick.gonring@gfs.com>
Cc: Kelsey Gonring <Kelsey_Gonring@rush.edu>, "Luehrs, Garrett" <garrett.luehrs@cbexchange.com>, "terry.wilkins@swilklaw.com"
<terry.wilkins@swilklaw.com>

Hello Nick,

GFS's policy directs Aires on how to manage all benefits provided to you, including the home sale. Per policy, the home sale program is meant to be conducted in two separate transactions.

-    You sell the home to Aires

-    Aires sells the home to the buyer

GONRING000125

8/14/2019
Gordon Food Service Mail - Re: AIRES (GONRING): Buyer resp - 2726 W. Cortez Street, Unit 1 - Aires to Sgariglia

Case: 1:19-cv-05684 Document #: 210 Filed: 06/22/23 Page 20 of 43 PageID #:2884

Policy also instructs that you as the transferring employee would be responsible for contract negotiations for the initial offer and any inspection requests. Aires is listed as the seller on the contract with the buyer and would need to sign any required paperwork with the buyer. If you were to sign any documentation with the buyer directly, it could be grounds for the disqualification from the home sale program.

With that being said, it's important to maintain the two separate transactions to avoid blurring the lines. Therefore Aires must be the main point of contact for the attorney that Aires has orchestrated on behalf of GFS. Attorney review is a required step of a real estate transaction in Illinois.

As soon as I have received any update from the attorney, the update has been passed on to you. I apologize that you feel that this is a hindrance in the process. However, to remain complaint with the home sale program offered by GFS, the correct process must be followed to maintain your benefits.

Regards,

**Amanda Flucker**

Tel +1.412.677.1813

[Quoted text hidden]

My Best –

Nicholas E. Gonring

**Nicholas Gonring | nick.gonring@gfs.com**
Culinary Specialist | Chicago Metro Region | p: 262.573.6772

1146 W. Kinzie Ave #103 | Chicago, IL 60642

gfs.com

[Quoted text hidden]

---

**Nicholas Gonring** <nick.gonring@gfs.com>
To: Amanda Flucker <Aflucker@aires.com>
Cc: Kelsey Gonring <Kelsey_Gonring@rush.edu>, "Luehrs, Garrett" <garrett.luehrs@cbexchange.com>, "terry.wilkins@swiklaw.com" <terry.wilkins@swiklaw.com>

Thu, Jul 5, 2018 at 2:02 PM

Thank you for the response. It sounds like GFS needs to hear my candid feedback about working with Aires to better the experience of our employees relocating . This process has been clearly frustrating on our side.

When can we expect our attorneys to approve the addendum that we have verbally come to terms with. We have been compliant with my company's protocol and have not signed anything. We are once again waiting on you. We need this done today.

[Quoted text hidden]

My Best –

Nicholas E. Gonring



**Nicholas Gonring** | nick.gonring@gfs.com
Culinary Specialist | Chicago Metro Region | p: 262.573.6772
1146 W. Kinzie Ave #103 | Chicago, IL 60642

gfs.com



[Quoted text hidden]

---

**Amanda Flucker** <Aflucker@aires.com>            Thu, Jul 5, 2018 at 2:29 PM
To: Nicholas Gonring <nick.gonring@gfs.com>
Cc: Kelsey Gonring <Kelsey_Gonring@rush.edu>, "Luehrs, Garrett" <garrett.luehrs@cbexchange.com>

I did not know that the buyer was threatening to walk away. That was a detail not shared with Aires.

Aires closed early on Tuesday. The Attorney let me know today that your response on 7/2 was insufficient since you are not the seller to the buyer's transaction. I have provided them with the approval they needed based on your email from 7/2.

I know the appraisal value was an important details to you before making a reply to the buyer's request to the concession. Hence, why the issue regarding the credit was not pushed.

Please advise how you would like me to handle moving forward.

[Quoted text hidden]


[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

ERROR! FILENAME NOT SPECIFIED.

REAL ESTATE & ESTATE PLANNING

---

*Wire Fraud is Real*. Before wiring any money, call the intended recipient at a number you know is valid to confirm the instructions. Additionally, please note that the sender does not have authority to bind a party to a real estate contract via written or verbal communication.

--

My Best -

**GONRING000127**

Case: 1:19-cv-05684 Document #: 210 Filed: 06/22/23 Page 22 of 43 PageID #:2886

8/14/2019    Gordon Food Service Mail - Re: AIRES (GONRING): Buyer resp - 2726 W. Cortez Street, Unit 1 - Aires to Sgariglia

Nicholas E. Gonring

---

**Nicholas Gonring | nick.gonring@gfs.com**
Culinary Specialist | Chicago Metro Region | p: 262.573.6772

1146 W. Kinzie Ave #103 | Chicago, IL 60642

gfs.com

*This email may contain confidential information. If you are not the intended recipient, please promptly notify the sender, then dispose of the email.*

[Quoted text hidden]

---

**Amanda Flucker <Aflucker@aires.com>**     Thu, Jul 5, 2018 at 2:32 PM
To: Nicholas Gonring <nick.gonring@gfs.com>
Cc: Kelsey Gonring <Kelsey_Gonring@rush.edu>, "Luehrs, Garrett" <garrett.luehrs@cbexchange.com>

> Thu 7/5/2018 2:30 PM
> Terry Denise Wilkins <terry.wilkins@swilklaw.com>
> Re: AIRES (GONRING): UPDATE - 2726 W. Cortez Street, Unit 1 - Aires to Sgariglia
>
> To   Amanda Flucker
> Cc   Gretchen Lombardo; Sarah Wilkins
>
> ℹ You replied to this message on 7/5/2018 2:30 PM.
> If there are problems with how this message is displayed, click here to view it in a web browser.

Good Afternoon Amanda,

Our office receives direction from you (AIRES). We are not authorized to take direction directly from a transferee without your input.

We will inform the buyer's side.

Thank you for your time.

Terry

Terry Denise Wilkins
Senior Paralegal
Sarah M. Wilkins, Attorney & Counselor at Law
1 South 376 Summit Avenue, Court D
Oakbrook Terrace, IL 60181
630.629.3203 (main)
630.629.0580 (fax)
terry.wilkins@swilklaw.com

**Amanda Flucker**

Tel +1.412.677.1813

---

From: Amanda Flucker
Sent: Thursday, July 05, 2018 2:30 PM
To: 'Nicholas Gonring' <nick.gonring@gfs.com>

GONRING000128

Cc: Kelsey Gonring <Kelsey_Gonring@rush.edu>; Luehrs, Garrett <garrett.luehrs@cbexchange.com>
Subject: RE: AIRES (GONRING): Buyer resp - 2726 W. Cortez Street, Unit 1 - Aires to Sgariglia

I did not know that the buyer was threatening to walk away. That was a detail not shared with Aires.

Aires closed early on Tuesday. The Attorney let me know today that your response on 7/2 was insufficient since you are not the seller to the buyer's transaction. I have provided them with the approval they needed based on your email from 7/2.

I know the appraisal value was an important details to you before making a reply to the buyer's request to the concession. Hence, why the issue regarding the credit was not pushed.

Please advise how you would like me to handle moving forward.

Regards,
[Quoted text hidden]

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

ERROR! FILENAME NOT SPECIFIED.

REAL ESTATE & ESTATE PLANNING

*Wire Fraud is Real*.  Before wiring any money, call the intended recipient at a number you know is valid to confirm the instructions. Additionally, please note that the sender does not have authority to bind a party to a real estate contract via written or verbal communication.

--

My Best -

Nicholas E. Gonring

**Nicholas Gonring** | nick.gonring@gfs.com
Culinary Specialist | Chicago Metro Region | p: 262.573.6772

8/14/2019  Gordon Food Service Mail - Re: AIRES (GONRING): Buyer resp - 2726 W. Cortez Street, Unit 1 - Aires to Sgariglia

1146 W. Kinzie Ave #103 | Chicago, IL 60642

**gfs.com**

*This email may contain confidential information. If you are not the intended recipient, please promptly notify the sender, then dispose of the email.*

[Quoted text hidden]

---

**Nicholas Gonring** <nick.gonring@gfs.com>                    Thu, Jul 5, 2018 at 2:35 PM
To: Amanda Flucker <Aflucker@aires.com>
Cc: Kelsey Gonring <Kelsey_Gonring@rush.edu>, "Luehrs, Garrett" <garrett.luehrs@cbexchange.com>

What we need moving forward is for Aires to sign and approve the addendum today. Since we are on the cusp of losing this deal, the seller needs to get the approval on paper today.

[Quoted text hidden]

My Best -

**Nicholas E. Gonring**



**Nicholas Gonring** | nick.gonring@gfs.com
Culinary Specialist | Chicago Metro Region | p: 262.573.6772
1146 W. Kinzie Ave #103 | Chicago, IL 60642

gfs.com



[Quoted text hidden]

---

**Amanda Flucker** <Aflucker@aires.com>                    Thu, Jul 5, 2018 at 2:52 PM
To: Nicholas Gonring <nick.gonring@gfs.com>
Cc: Kelsey Gonring <Kelsey_Gonring@rush.edu>, "Luehrs, Garrett" <garrett.luehrs@cbexchange.com>

The credit has been approved. At this time, there is no addendum for Aires to sign.

[Quoted text hidden]

---

**Kelsey Gonring** <Kelsey_Gonring@rush.edu>                    Thu, Jul 5, 2018 at 2:57 PM
To: Amanda Flucker <Aflucker@aires.com>, Nicholas Gonring <nick.gonring@gfs.com>
Cc: "Luehrs, Garrett" <garrett.luehrs@cbexchange.com>

Has the attorney modification letter been signed by Aires?

**From:** Amanda Flucker [mailto:Aflucker@aires.com]
**Sent:** Thursday, July 05, 2018 1:52 PM
**To:** Nicholas Gonring
**Cc:** Kelsey Gonring; Luehrs, Garrett
**Subject:** RE: AIRES (GONRING): Buyer resp - 2726 W. Cortez Street, Unit 1 - Aires to Sgariglia

**GONRING000130**

Case: 1:19-cv-05684 Document #: 210 Filed: 06/22/23 Page 25 of 43 PageID #:2889

8/14/2019          Gordon Food Service Mail - Re: AIRES (GONRING): Buyer resp - 2726 W. Cortez Street, Unit 1 - Aires to Sgariglia

[Quoted text hidden]

[Quoted text hidden]

---

**Kelsey Gonring** <Kelsey_Gonring@rush.edu>                    Thu, Jul 5, 2018 at 3:01 PM
To: Amanda Flucker <Aflucker@aires.com>, Nicholas Gonring <nick.gonring@gfs.com>
Cc: "Luehrs, Garrett" <garrett.luehrs@cbexchange.com>, Terry Denise Wilkins <terry.wilkins@swilklaw.com>

[Quoted text hidden]

---

**Amanda Flucker** <Aflucker@aires.com>                    Thu, Jul 5, 2018 at 3:05 PM
To: Kelsey Gonring <Kelsey_Gonring@rush.edu>, Nicholas Gonring <nick.gonring@gfs.com>
Cc: "Luehrs, Garrett" <garrett.luehrs@cbexchange.com>

Aires' attorney has not received. I just double checked with them. Per the below snipped, the addendum would be circulated on the buyer's end first then sent to Aires' attorney for our signature.



Thu 7/5/2018 3:05 PM
Terry Denise Wilkins <terry.wilkins@swilklaw.com>
Re: AIRES (GONRING): UPDATE - 2726 W. Cortez Street, Unit 1 - Aires to Sgariglia
To    Amanda Flucker
Cc    Gretchen Lombardi;    Sarah Wilkins
ⓘ If there are problems with how this message is displayed, click here to view it in a web browser.

Message          image007.jpg (624 B)

The addendum is typically circulated on their side.  The addendum will be circulated.

Thanks

- Sent from my Android device.

Terry Denise Wilkins
Senior Paralegal
Sarah M. Wilkins, Attorney & Counselor at Law
1 South 376 Summit Avenue, Court D
Oakbrook Terrace, IL 60181


**Amanda Flucker**

Tel +1.412.677.1813


[Quoted text hidden]

---

**Kelsey Gonring** <Kelsey_Gonring@rush.edu>                    Thu, Jul 5, 2018 at 3:09 PM
To: Amanda Flucker <Aflucker@aires.com>, Nicholas Gonring <nick.gonring@gfs.com>
Cc: "Luehrs, Garrett" <garrett.luehrs@cbexchange.com>, Terry Denise Wilkins <terry.wilkins@swilklaw.com>

Please explain why Aires sent the buyer an addendum when we were agreeing to all of the terms in the addendum that they provided on Tuesday.

[Quoted text hidden]

---

**Amanda Flucker** <Aflucker@aires.com>                    Thu, Jul 5, 2018 at 3:48 PM
To: Kelsey Gonring <Kelsey_Gonring@rush.edu>, Nicholas Gonring <nick.gonring@gfs.com>
Cc: "Luehrs, Garrett" <garrett.luehrs@cbexchange.com>, Terry Denise Wilkins <terry.wilkins@swilklaw.com>

Terry,

GONRING000131

8/14/2019          Gordon Food Service Mail - Re: AIRES (GONRING): Buyer resp - 2726 W. Cortez Street, Unit 1 - Aires to Sgariglia

Can you please answer the question below?

Regards,

**Amanda Flucker**

Tel +1.412.677.1813

[Quoted text hidden]

---

Amanda Flucker <Aflucker@aires.com>                                    Thu, Jul 5, 2018 at 4:18 PM
To: Kelsey Gonring <Kelsey_Gonring@rush.edu>, Nicholas Gonring <nick.gonring@gfs.com>
Cc: "Luehrs, Garrett" <garrett.luehrs@cbexchange.com>

Throughout the process, Aires expects the buyer to sign off on documents first.

I did sign the Attorney Modification Letter and sent to Terry. Note: This is outside of the normal process but since it's causing so much frustration, I did obtain approval from my manger in order to do so.

[Quoted text hidden]

---

Terry Denise Wilkins <terry.wilkins@swilklaw.com>                      Thu, Jul 5, 2018 at 4:28 PM
To: Amanda Flucker <Aflucker@aires.com>
Cc: Kelsey Gonring <Kelsey_Gonring@rush.edu>, Nicholas Gonring <nick.gonring@gfs.com>, "Luehrs, Garrett" <garrett.luehrs@cbexchange.com>,
Sarah Wilkins <sarah.wilkins@swilklaw.com>

Good Afternoon Amanda,

This is a question better addressed by Attorney Sarah M. Wilkins whom I have included here on this e-mail.

Thank you,

**Terry Denise Wilkins**
**Senior Paralegal**
Sarah M. Wilkins, Attorney & Counselor at Law
1 South 376 Summit Avenue, Court D
Oakbrook Terrace, IL 60181
630.629.3203 (main)
630.629.0580 (fax)
terry.wilkins@swilklaw.com

**Wire Fraud and Email Phishing Advisory:** Law firms, real estate brokerage offices, and title companies have been targeted by hackers using savvy methods to intercept client communications to commit wire fraud. If you have a closing transaction with our office and you receive an email offering you wiring instructions, please do not respond to that email. Immediately call your title company closing officer using a method not contained within the fraudulent email. Please be advised that our office will never provide wiring instructions through unsecured email. Our office will also never provide fully executed contracts through unsecured email as well.

On Thu, Jul 5, 2018 at 2:48 PM, Amanda Flucker <Aflucker@aires.com> wrote:

> Terry,
>
> Can you please answer the question below?
>
> Regards,
>
> **Amanda Flucker**
>
> Tel +1.412.677.1813
>
> ---
>
> **From:** Kelsey Gonring [mailto:Kelsey_Gonring@rush.edu]
>
> [Quoted text hidden]

GONRING000132

> [Quoted text hidden]
> [Quoted text hidden]

---

**Sarah Wilkins** <sarah.wilkins@swilklaw.com>                                      Thu, Jul 5, 2018 at 4:45 PM
To: Amanda Flucker <Aflucker@aires.com>, Kelsey Gonring <Kelsey_Gonring@rush.edu>, Nicholas Gonring <nick.gonring@gfs.com>, "Luehrs, Garrett" <garrett.luehrs@cbexchange.com>
Cc: Terry Denise Wilkins <terry.wilkins@swilklaw.com>, Gretchen Lombardi <glombardi@riefberglaw.com>

Hello all -

In explanation . . .

What the EEs agreed to (and was not legally binding) was simply an attorney modification letter.  Under the the IL Statute of Frauds, oral agreements to contract modifications involving real estate are never binding.  Agreements must be in writing.  And, because IL is an attorney state, those modifications to a form-based contract, must be from a lawyer.

The addendum is a amendment to the contract and supersedes the contract's terms.  We no longer simply cross out/add terms within the contract.  We have formal addenda.  Most importantly, the addendum is usually necessary as proof to a lender that the Seller is not providing a "repair credit" even though that is exactly what is occurring.  Lenders feel better to see that the credit is for apparent closing costs.

A hold harmless agreement, the document that the Buyer's attorney wanted to see before they could respond back to us, is an outside agreement that does not amend the contract.  A hold harmless agreement protects Aires and the EEs in the event a Buyer uses the closing cost credit for matters not related to repairs.  Some buyers have no scruples, and they later try to sue sellers by claiming the seller never addressed repair issues.  Without proof that the closing cost credit was a repair credit, a seller becomes vulnerable to claims of this nature.

Please note, I chose to make the matters more succinct in a new letter that the buyer's side does not need to sign.  The Buyer only needs to sign the addendum.  My letter of today only served to tie all matters into one letter so that later if questions arose, we attorneys have one letter to view and not a dozen emails through which to comb.

Additionally, what should be noted is that the buyer's response came in at 4:21 p.m. CST on July 3, after Aires had closed.  Though the EE gave us a response at 5:59 p.m. CST on July 3, Aires is addressing the matter on the next business day . . . July 5.  My office also did not receive any information that the Buyer was "ready to walk."  The most we received was a veiled threat that their insistence on a higher closing cost credit would be their last response.  Buyers often use these tactics to make it seem as if they are ready to walk, but they often bluff.

Thank you,

SMW

Sarah M. Wilkins
**Attorney & Counselor at Law**
1 South 376 Summit Avenue, Court D
Oakbrook Terrace, Illinois 60181
630.629.3203 (main)
630.629.0580 (fax)
sarah.wilkins@swilklaw.com

EXH 40

Wire Fraud and Email Phishing Advisory:  Law firms, real estate brokerage offices, and title companies have been targeted by hackers using savvy methods to intercept client communications to commit wire fraud.  If you have a closing transaction with our office and you receive an email offering you wiring instructions, please do not respond to that email. Immediately call your title company closing officer using a method not contained within the fraudulent email.  Please be advised that our office will never provide wiring instructions through unsecured email.  Our office will also never provide fully executed contracts through unsecured email as well.

> [Quoted text hidden]

## 2726 building issues

### john gorr <jgorr1@msn.com>

Fri 7/13/2018 5:04 PM

**To:** ngonring@uwmalumni.com <ngonring@uwmalumni.com>; kelseygonring@gmail.com <kelseygonring@gmail.com>;
brown14702000@yahoo.com <brown14702000@yahoo.com>

As President of the HOA, I need to make sure you all are informed of the current status. Moisture was
detected in the SW window area after that last hard rain. Due to that, my buyer backed out so I'm back
on the market and disclosing the previous water issues ahead of time. After the last inspection, Arrow
masonry came back and applied a second layer of sealant at the entire west-facing wall above the 3rd
floor windows, and they applied the same elastomeric sealant to the capstones. I have a moisture
meter and will be monitoring the moisture levels in the wood over the next few weeks. I'll also be
looking at if there are any other areas of water infiltration. I hope the secondary work resolved it for
good, the moisture monitoring will help me to determine that.

Regardless, if I'm able to sell I'll be taking a hit on the selling price and will be putting money in escrow
to cover any future problems. Being that it has been documented as a building issue, this escrowed
money would cover unit #3's portion of future work. I'm not entirely sure how this will work out or how
it affects any other units, and would rather resolve the issue and make no concessions. I have not
received any responses from anyone so I'm just proceeding as I'm advised. I recommend talking to your
realtors and lawyers, or let me know if you have any input.

On request we are giving the potential buyers the background of the issues and how we handled them
as best as possible, similar to the italicized wording below.

*We did file a claim with the building insurance. The insurance hired ESI to inspect building. Based on the
report, the claim was denied but we utilized their scope of work.*

1. *2014 - Unit 3 used The Building Doctor to seal around windows on west elevation.*
2. *10/20/2017 - ESI Engineering report summarizing the water issues, and steps to resolve.*
3. *11/29/2017 - Erie Insurance letter stating no coverage for issue.*
4. *3/6/2018 - Bral contract to do exploratory work to determine the scope of work for repairs.*
5. *5/3/2018 - Bral conclusion from exploratory work - need to grind/tuckpoint and add elastomeric
   sealant.*
6. *5/7/2018 - Arrow proposal for grind/tuckpoint and add elastomeric sealant to all sides of building
   and inside parapet.*
7. *6/4/2018 - Arrow concluded the work.*

EXH 41

***ESI Engineering Report***
*-The report recommends to retain a masonry contractor to make exploratory openings in the masonry to
determine cause of the water infiltration.*
*-The report recommends to retain Bral Restoration.*

***Bral Restoration***
*-As recommended in ESI report, Bral restoration was hired to complete exploratory openings. After
exploratory inspection, they concluded that flashing is not the cause of the problem. Their
recommendation was to grind/tuckpoint and apply an elastomeric sealant.*

***Arrow Masonry***

Gorr 00239

*-Arrow masonry was contracted to complete all of the recommendations based on the Bral report. They tuckpointed and applied elastomeric sealant with 5-year warranty.*

Gorr 00240

Doc#. 1821349041 Fee: $52.00
Karen A.Yarbrough
Cook County Recorder of Deeds
Date: 08/01/2018 09:24 AM Pg: 1 of 3

Dec ID 20180701637621
ST/CO Stamp 0-693-327-648 ST Tax $510.00 CO Tax $255.00
City Stamp 1-213-085-472   City Tax: $5,355.00

**MAIL TO:**
Thomas Hawbecker, Esq
26 Blaine Street
Hinsdale, IL 60521

**SEND TAX BILLS TO:**
Melinda Sgariglia
2726 West Cortez St.
Unit 1
Chicago, IL 60622

**ILLINOIS WARRANTY DEED**

The GRANTOR(S), Nicholas Gonring and Kelsey Gonring, husband and wife, as tenants by the entirety, of the city of Chicago, the County of Cook, and the State of Illinois, for and in consideration of Ten Dollars ($10.00) and other good and valuable consideration receipt whereof is acknowledged, in hand paid, **CONVEYS** and **WARRANTS** to the GRANTEE(S), Melinda Sgariglia, a married person, of 1012 North California, Unit 3, Chicago, IL 60622,

the following described Real Estate situated in the County of **Cook**, State of Illinois:

See Legal Description Attached

PERMANENT INDEX NUMBER(S): <u>16-01-408-055-1001</u>
PROPERTY ADDRESS: <u>2726 West Cortez Street Unit 1 and P-1, Chicago, IL 60622</u>

The Grantor(s) release(s) and waive(s) the right of homestead under the laws of Illinois. TO HAVE AND TO HOLD said premises forever.

Subject to covenants, conditions, easements and restrictions of record, if any, provided they do not interfere with the current use and enjoyment of real estate; and taxes for the year _2018_ and subsequent years.

Dated this: 21 day of June 2018.

NICHOLAS GONRING

EXG 42

KELSEY GONRING

STATE OF ___*IL*___ )
                                    ) ss
COUNTY OF ___*Cook*___ )

I, *Greg Tovar*, the undersigned, certify that, **Nicholas Gonring and Kelsey Gonring**, personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that they signed and delivered the instrument as their free and voluntary act, for the uses and purposes set forth in the instrument, including the release and waiver of the rights of homestead.

Given under my hand and official seal, this ___21___ day of ___June___, 201_8_.

_____                          (Seal)
Notary Public

My commission expires ___9/24/19___

**PREPARED BY:**
Sarah M. Wilkins
Attorney & Counselor at Law
1 South 376 Summit Avenue, Court D
Oakbrook Terrace, Illinois 60181

OFFICIAL SEAL
GREG TOVAR
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:09/24/19

# ATTORNEYS' TITLE GUARANTY FUND, INC.

## LEGAL DESCRIPTION

**Permanent Index Number:**
Property ID: 16-01-408-055-1001

**Property Address:**
 2726 West Cortez Street Unit 1
 Chicago, IL 60622

**Legal Description:**
PARCEL 1:

UNIT 1 IN THE 2726 WEST CORTEZ CONDOMINIUM, AS DELINEATED ON A SURVEY OF THE FOLLOWING TRACT OF LAND: LOT 36 IN BLOCK 1 IN WATRISS' SUBDIVISION OF THE SOUTH 1/2 OF THE NORTHWEST 1/4 OF THE SOUTHEAST 1/4 (EXCEPT THE EAST 115 FEET) OF SECTION 01, TOWNSHIP 39 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS; WHICH PLAT OF SURVEY IS ATTACHED AS AN EXHIBIT TO THE DECLARATION OF CONDOMINIUM RECORDED AS DOCUMENT NO. 0705115001, TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS, IN COOK COUNTY, ILLINOIS.

PARCEL 2:

EXCLUSIVE USE FOR PARKING PURPOSES IN AND TO PARKING SPACE NUMBER P-1, A LIMITED COMMON ELEMENT ("LCE"), AS DELINEATED ON THE PLAT OF SURVEY, AND THE RIGHTS AND EASEMENTS FOR THE BENEFIT OF UNIT 1, AS SET FORTH IN THE DECLARATION OF CONDOMINIUM, IN COOK COUNTY, ILLINOIS.

DocuSign Envelope ID: 665E0445-1C81-4828-98D9-8E03E7BF2629

Aires Offer: 1, March 1, 2011

RELOCATION REAL ESTATE PURCHASE AND SALE AGREEMENT

THIS AGREEMENT is entered into this __25__ day of ___July___, 20_18_ between American International Relocation Solutions, LLC ("BUYER"), a Pennsylvania limited liability company having its principal office at 6 Penn Center West, Suite 200, 2nd Floor, Pittsburgh, PA 15276, and Nicholas Gonring, Kelsey Gonring ("SELLER"), an individual or individuals having a mailing address of2726 W. Cortez Street Unit 1, Chicago, IL 60622

## I. PREMISES

A.  SELLER is the owner of certain real estate located at 2726 W. Cortez Street Unit 1, Chicago, IL 60622 , having erected thereon a personal residence, as more specifically described in paragraph 1 and Appendix A hereto.

B.  SELLER is an employee of Gordon Food Service ("EMPLOYER"), and EMPLOYER has entered into an agreement for BUYER to provide certain services in connection with the relocation of SELLER, including the purchase of SELLER's residence as provided herein.

C.  SELLER has agreed to sell the property to BUYER and BUYER has agreed to purchase the property from SELLER upon the terms and conditions set forth herein.

## II. TERMS AND CONDITIONS

In consideration of the mutual covenants and promises herein contained, the parties, intending to be legally bound, agree, represent and warrant as follows:

1. Covenant to Sell. BUYER agrees to purchase and SELLER agrees to sell good and marketable title (and such as will be insurable by any responsible title insurance company at regular rates) to the real estate located at the address indicated in paragraph I.A. above, as more fully described in Appendix A (which may be modified to correct any non-material inaccuracies in the legal description that are determined by an accurate survey), together with the following (all of which hereinafter are referred to collectively as the "property"):

1.1SELLER's personal residence and all buildings and other improvements situated upon the real estate;

1.2All of the rights and appurtenances pertaining to the real estate, including any right, title and interest of SELLER in and to adjacent easements, streets, roads, alleys and rights-of-way;and

1.3All included terms referred to in paragraph 3 below.

2. Purchase Price. BUYER will pay to SELLER for the property the total sum offive hundred ten thousand and no/100 ($ 510,000.00) Dollars ("Purchase Price").  This Purchase Price is based on the relocation policy of EMPLOYER.  The Purchase Price shall be adjusted as provided in paragraph 5 below and the adjusted amount shall be paid to SELLER at the time and in the manner provided below.

3. Fixtures and Personal Property  Included or Excluded From Sale. The sale shall include all personal property and fixtures permanently installed in the property, and all such property which was considered to be part of the property, including, but not limited to (strike if not applicable): plumbing, heating and lighting fixtures (including chandeliers, ceiling fans and shades); ranges, refrigerators and built-in microwave ovens; wall-to-wall carpeting; water treatment systems; pool and spa equipment; air conditioning units; garage door openers and transmitters; window treatments and rods; television antennas and satellite dishes; awnings, storm doors and windows, and window screens; shrubbery, plantings and unpotted trees; any remaining heating fuels stored in built-in appliances; central vacuum systems and equipment; as well as the following items specifically included:refrigerator, oven/range, microwave, dishwasher, garbage disposal, washer, dryer, attached tv, window treatments

The following items are not included in the sale and shall be removed from the Premises by the SELLER prior to delivering possession to the BUYER:N/A

SELLER Initials _____ _____ BUYER Initials _____

AIRES000346

DocuSign Envelope ID: 665E0445-1C81-4838-88D9-8F03E7BF2629

4. Possession. SELLER will vacate and deliver possession of the property to BUYER on or before July 25, 2018  provided that BUYER, its authorized agents, brokers, employees, appraisers, surveyors, engineers, architects and other designated individuals may enter upon the property at reasonable times and with notice to SELLER prior to delivery of possession for purposes of inspecting the property and conducting environmental or other testing and examinations, and for purposes of showing the property to prospective purchasers.  The date on which possession of the property is delivered to BUYER, (or, if later, the date of this Agreement), shall be the "Possession Date" for purposes of the Agreement.  The Possession Date shall be determined by mutual agreement of BUYER and SELLER.

4.1Until the Possession Date, SELLER will be responsible for all maintenance, repairs and replacements, mortgage payments (principal, interest and escrow), taxes, insurance, utilities and all other costs associated with the ownership and operation of the property.

4.2On the Possession Date, SELLER will deliver possession of the property in the same physical condition as existed on the date SELLER signed this contract, that is broom clean, with all included items referred to in paragraph 3 above in good working order, together with all keys, garage door openers, security and entry codes  and all other means of entering and securing the property.

4.3SELLER will arrange for the transfer of all utilities into the name of BUYER or its nominee and may cancel its insurance coverage on the property as of the Possession Date.

4.4SELLER will assign to BUYER all of its right, title and interest in and to any leases and security deposits affecting the property if such leases are approved and assumed by BUYER in writing and can be terminated by BUYER on not more than thirty (30) days notice to the tenant.  In the event of assignment and assumption by BUYER, BUYER shall be responsible for all obligations under such leases accruing and arising on or after the Possession Date or, if later, the effective date of the written assignment.  SELLER shall not enter into any new leases, written extensions of existing leases, if any, or additional leases for the property without the expressed written consent of BUYER.

4.5BUYER will assume all benefits and burdens of ownership of the property from and after the Possession Date until sale and transfer of title.


5. Adjustments to Purchase Price. The amount to be paid by BUYER to SELLER hereunder ("SELLER's Equity") shall be the Purchase Price provided for in paragraph 2 above, subject to reductions and adjustments as of the Possession Date, in the manner which is customary in the jurisdiction which the property is located, as follows:

5.1. Loans. The unpaid balance of principal and interest due on all loans applicable to the property, including, but not limited to, all mortgages, home equity loans, home improvement loans and equity "bridge" loans.

5.2. Real Estate Taxes. All county, local and school, real estate, and any other taxes applicable to the  property, together with any special assessments which have been levied or approved for levy.

5.3. Liens and Fees. All monetary liens, judgments, unpaid dues or assessments owing to any homeowners' association or similar body, fees, maintenance, capital improvement or similar charges applicable to the property.

5.4. Pest Control Costs. The estimated cost of termite or pest control treatment.

5.5. Repairs. The estimated cost of repairs or replacement required as a result of
termite or pest damage, work required to meet applicable building code requirements, remediation of radon gas problems, removal of lead-based paint, repairs necessary to support the Purchase Price or other repairs deemed necessary by BUYER.

5.6. Fuel. Utility and fuel charges.

5.7. Rent. Rent, rent deposits, security deposits or pre-paid rent under any leases  assigned to and assumed by BUYER.

5.8. Employer Deductions. Any deductions required by the relocation policy of EMPLOYER.

5.9. Other Proration Items. All other charges customarily apportioned where the property is located.


If any amount to be prorated is not ascertainable as of the Possession Date, the adjustment thereof shall be based on the most recent ascertainable amount or reasonable estimates thereof, and shall be subject to subsequent adjustment.  BUYER and SELLER each agree to promptly pay any amounts determined to be due as a result of such subsequent adjustments including over-payments. The provisions of this paragraph shall apply regardless of the reason for the adjustment whether or not, the original calculation contained errors caused by SELLER, BUYER or others.

SELLER Initials _____   BUYER Initials _____

AIRES000347

6. Payment of SELLER's Equity Amount. The SELLER's Equity shall be paid within ten (10) business days after SELLER has complied with all requirements of this Agreement and of EMPLOYER's relocation policy,including the following:

6.1BUYER has received from SELLER and dated a fully executed original, facsimile transmission and/or scanned email copy of this Agreement.

6.2BUYER has received a title report and commitment satisfactory to BUYER and its attorneys.

6.3BUYER has received all other documents and information which SELLER is required to provide.

6.4All of the conditions precedent set forth in paragraph 10 below have been satisfied and upon satisfaction of all contingencies in this Agreement.

6.5 Seller's satisfactory compliance with any other requirements of EMPLOYER'S relocation program and this Agreement.


7. Mortgages. BUYER agrees to purchase the property subject to any existing mortgages disclosed on Appendix A and deducted in determining SELLER's Equity(Disclosed Mortgages). Upon sale of the property by BUYER to a third party buyer, BUYER must either satisfy any Disclosed Mortgages on or prior to the closing date of such sale or obtain the unconditional release of any and all liability of SELLER and EMPLOYER with respect to such Disclosed Mortgages. BUYER may pay off and satisfy the Disclosed Mortgage(s) on the property on or after the Possession Date, or it may continue to maintain the Disclosed Mortgage(s) and make all payments due until the Disclosed Mortgages are paid off and satisfied, provided that if SELLER so requests in writing, BUYER, with EMPLOYER's agreement will pay off any Veterans Administration mortgage in order to enable SELLER to retain its Veterans Administration mortgage eligibility, provided that SELLER refunds any portion of BUYER's offer attributable to the assumability of the Veterans Administration mortgage. When BUYER pays off any Disclosed Mortgage, SELLER shall be responsible for obtaining from the mortgage lender any deposit or escrow fund held by the lender for real estate taxes, insurance or other items, but if the BUYER continues to maintain the mortgage after the Possession Date, SELLER will receive credit for any escrow funds, will assign its right to receive such amounts to BUYER and will otherwise cooperate in having any such amounts paid to BUYER when the Disclosed Mortgage is paid off including, if necessary, SELLER'S authorization of the BUYER to endorse any checks in your name for money properly due the BUYER.


8. Warranties and Representations of SELLER. As an inducement to BUYER to enter into this agreement, SELLER represents, warrants and guarantees to BUYER that the statements contained in this paragraph are true, correct and complete:

8.1. Authority. SELLER is an individual who holds lawful title to the property, the property is not subject to any options to purchase, rights of first refusal, written or oral agreements of sale or other commitments or obligations of purchase and SELLER has the full power and authority to transfer the property to BUYER. This agreement and the sale of the property hereunder are not subject to the approval of any party (other than any lender of a Disclosed Mortgage).

8.2. Good and Marketable Title to Property. SELLER warrants that the warranty deed to be issued by SELLER will vest good and marketable title to the property, in fee simple, (and such as will be insurable by any responsible title company at regular rates) free and clear of all liens, encumbrances, bankruptcies, judgments, mortgages, security interests, title retention agreements, restrictions, conditions, charges, equities and claims and any other encumbrances affecting the property whether or not they are
of record, including common walls, fences, driveways and other common areas or facilities shared with a neighbor, encroachments, easements and rights of way. except for any Disclosed Mortgages.

8.3. Outstanding Claims and Disputes. There have been no repairs, additions or improvements made, ordered or contracted to be made to the premises, nor are there any appliances or fixtures attached to said premises which have not been paid for in full, and there are no outstanding or disputed claims for any such work or items.

8.4. Possession. No person or entity other than SELLER is in possession or entitled to possession of the property other than pursuant to any leases assumed by BUYER pursuant to subparagraph 4.4 above.

8.5. No Restrictions on Use.There are no liabilities, causes of action, unpaid taxes, zoning restrictions, encumbrances, or other claims or conditions, either pending or threatened, which would affect BUYER or its ability to use the property as a residence and for any related purposes, nor is the present use of the property subject to the approval of any party.

SELLER Initials _____        BUYER Initials _____

8.6. <u>Purchase Money Obligations.</u> There are no purchase money obligations being created in this transfer.

8.7. <u>Accessibility of Utilities, Etc.</u> All water, public sewage or septic systems for sanitary sewage, storm sewers, electricity, gas service and any and all public utilities are available on the property.  The property is served by a community sewage system, or if no community sewage system is available, all necessary permits, approvals, etc. for the operation of the septic system or other private sewage system on the property have been obtained.  If there is a well, the water supply to the property is both potable and ample under local standards.  There has been no work done, or notice received that work is to be done, by any governmental body or authority or at its direction, in connection with the installation of sewer lines or water lines, or for improvements such as paving or repairing of streets, curbs or sidewalks or similar improvements.

8.8. <u>Condemnation.</u> SELLER has received no written or official notice and has no knowledge of any condemnation, eminent domain, abatement or any other legal or equitable proceeding against the whole or any part of the property.

8.9. <u>Improvements.</u> There are no material defects in the physical condition or structure of the property, all operational components and systems are in good working order, and the property is not infested with termites or other pests.  The basement, crawl space and any similar lower level of the property is not subject to water penetration.  All improvements on the property conform to and comply with all applicable codes, laws and ordinances.  SELLER has received no notice from any governmental agencies or authorities and has no knowledge of any violations concerning the condition and/or use of the property which have not been corrected by SELLER.

8.10. <u>Zoning and Other Ordinances.</u> The property is zoned "RESIDENTIAL" in accordance with the applicable effective zoning ordinance which permits the use of the property as a single-family residence and related activities.  SELLER has not received any notice and has no knowledge of any violations of any zoning, housing, building, safety or fire ordinances or regulations and all zoning permits or variances, building permits, setback agreements, and all other similar documents required for the property and the improvements thereon have been obtained.

8.11. <u>Certificate of Occupancy.</u> A certificate permitting occupancy of the property may be required by the municipality and/or governmental authority.  If a certificate is required, SELLER shall, at SELLER's expense and within ten (10) days of the execution of this agreement, order the certificate for delivery to BUYER on the Possession Date.

8.12. <u>Litigation; Compliance with Law.</u> There is no litigation, proceeding, investigation or claim pending or threatened, including, but not limited to, any bankruptcy or foreclosure proceedings, which would affect: (a) the property; (b) SELLER's title to the property; (c) the financial condition of SELLER; or (d) SELLER's ability to perform this agreement, and SELLER has no reasonable grounds to know of any basis for any such litigation, proceeding, investigation or claim.

8.13. <u>Marital Status.</u> SELLER(s), if husband and wife, have never been divorced from each other; are not separated from each other and no divorce proceedings are pending.  If the SELLER acquired title alone, he/she has not been married since the date of acquiring title.  If SELLER (or either of them) were previously divorced, no support payments are due and owing under the terms of any existing marital settlement agreement and the divorce proceedings filed of No._____ in the _____ and the decree dated _____ disposed of all marital property, equitable distribution, alimony, child support and any other matters of a marital nature involving the SELLER(s).  Any details will be kept confidential and used only as necessary to complete the sale of the property.

8.14. <u>No Default.</u> SELLER is not in default under any mortgage, land contract, deed or any other financing instrument encumbering the property, and from the date hereof through the Possession Date SELLER shall make all payments required to be made under such obligations in the manner and at the times provided thereunder and shall perform all of his other obligations thereunder as mortgagor, vendee or otherwise as the case may be.

8.15. <u>Boundaries.</u> The structures and improvements are within the boundaries of the property, and there is no dispute with adjoining property owners as to the location of boundary lot lines.



SELLER Initials_____  BUYER Initials_____

DocuSign Envelope ID: 665E0445-1C81-4833-98D9-8E02E7BF2529

8.16. Hazardous Substances. The property does not contain asbestos, lead paint, radon gas or urea formaldehyde foam insulation, any mold , any allergen nor any other hazardous or toxic materials or gas. If it is discovered that the property does contain any such substances, SELLER will indemnify, defend and hold harmless BUYER (and its officers, directors, members, employees and affiliates) from any and all costs which any of them may incur and any and all liabilities, obligations, debts, causes of action, lawsuits or other claims, whether asserted directly against BUYER or as a successor to SELLER or any present or prior owner in the chain of title to the property (including reasonable attorney's fees and expenses incurred in the defense thereof) arising out of or resulting from the presence of such substances and the cost of removal or remediation thereof.

8.17. Flood Plain of Flood Zone. The property is not located within a so-called "flood plain area" or flood zone, and surface storm waters drain from the property in such manner as is permissible by government agencies having jurisdiction.

8.18. Insurability. The property is insurable at standard rates for normal hazards of fire, extended coverage and liability.

8.19. Disclosures. All material information regarding the property, including, but not limited to, its physical condition and legal title, any known pest infestation or presence of radon gas, lead-based paint or other hazardous substances, has been disclosed by SELLER or its agents to BUYER in this agreement or in an addendum attached hereto. SELLER will pay any costs, damages or expenses incurred by BUYER as the result of any failure of SELLER or its agents to disclose such material information, and BUYER reserves the right to terminate this agreement without further liability to SELLER in the event of any failure to fully disclose any material information regarding the property.

8.20. The warranties and representations of SELLER contained in this document shall be correct and complete in all material respects on and as of the Possession Date with the same force and effect as though such warranties and representations were made on and as of the Possession Date, and SELLER shall deliver to BUYER a certificate dated as of the Possession Date to that effect. Any fact or information which modifies or contradicts any of these representations and warranties must be in writing and

attached to this Agreement. If any such statement or disclosure is unacceptable to BUYER, BUYER reserves the right to not countersign this Agreement and not pay the equity until such matter is resolved to the BUYER'S satisfaction.

8.21. Encumbrances. SELLER has not taken any action which would create an additional encumbrance of any kind against the property.

8.22. Mechanics' Lien. All labors and materials supplied in connection with any repairs, alterations, additions or other work affecting the property have been paid in full and no mechanics' or similar liens have been or can be filed against SELLER or the property.

8.23. Corrective Work. SELLER knows of no corrective work performed or agreements signed in the past to bring the property into compliance with these representations and warranties.


9. Title to the Property.

9.1. Conveyance of Title. Within ten (10) days of receipt of Deed Document Package SELLER will execute and deliver to BUYER or its nominee a Power of Attorney, a warranty deed or its equivalent conveying good, clear and marketable title to the property to the BUYER or its nominee. The obligation to execute and deliver the deed will be binding upon SELLER and SELLER's guardians, heirs, executors, personal representatives or assigns.

9.2. Defects in Title. BUYER will notify SELLER if it discovers any liens, encumbrances, encroachments or other defects in title which would prevent BUYER from re-selling and conveying good and marketable title to the property. SELLER will have thirty (30) days after notice to remove any such defects to the satisfaction of BUYER, any potential third party purchaser or lender, and their respective attorneys, provided that if the title defect can be removed or resolved at an expense of Two Thousand ($2,000) Dollars or less, BUYER may, at its option, remove the title defects and recover the cost of removal from SELLER. If such title defects cannot be removed within thirty (30) days, BUYER may terminate this agreement and SELLER will repay to BUYER any SELLER's Equity or other amounts received from BUYER hereunder and SELLER will indemnify, defend and hold harmless BUYER (and its officers, directors, members, employees and affiliates) from any and all costs which any of them may incur and any and all liabilities, obligations, debts, causes of action, lawsuits or other claims, whether asserted directly against BUYER (and its officers, directors, members, employees and affiliates), including reasonable attorney's fees and expenses incurred in the defense thereof) arising out of or resulting

SELLER Initials NG kG        BUYER Initials AF

DocuSign Envelope ID: 665E0445-1C81-4833-98D9-8F02E7BF2529

from this agreement or any agreement entered into by BUYER for the resale of the property.

10. Conditions Precedent to BUYER's Obligations. The obligations of BUYER to consummate this transaction are subject to the satisfactory fulfillment and completion of the following conditions precedent prior to the closing date:

10.1. Good Title to Property. On the Possession Date, SELLER will own and have good and marketable title to the property, in fee simple, (and such as will be insurable by any responsible title company at regular rates) free and clear of all liens, encumbrances, bankruptcies, judgments, mortgages, security interests, title retention agreements, restrictions, conditions, charges, equities and claims, except for Disclosed Mortgages and those encumbrances, rights of way, etc. that do not adversely affect the property. Any and all defects in the title to the property shall have been cured by SELLER. The description of the property set forth in Appendix A is consistent in all respects with the survey and contains all of the property.

10.2. Right to Sell. The property is not subject to any options to purchase, rights of first refusal, written or oral agreements of sale, or other commitments or obligations of purchase and SELLER has the full power and right to execute, deliver and implement this agreement.

10.3. Inspections and Reports. BUYER has had an opportunity to inspect the property and is satisfied with the results and/or reports received from all such inspections, surveys, tests and studies and any remediation or repair required as a result of such inspections, surveys, tests and studies has been completed to the satisfaction of BUYER.

10.4. Warranties and Representations. The warranties and representations of SELLER hereunder shall be true and correct in all material respects on and as of the Possession Date and SELLER shall deliver to BUYER a signed certificate confirming that fact.

10.5. Compliance. SELLER shall have complied with all of its warranties and representations and duly performed in all material respects all of the terms and conditions set forth in this agreement, including the delivery of documents, properties and other materials and instruments required or contemplated by this agreement.

10.6. Default. SELLER shall not be in default under any provisions of this agreement or any related agreements.

10.7. Satisfactory Actions. All actions to be taken by SELLER in connection with the consummation of the transactions contemplated hereby and all agreements, instruments and other documents necessary or appropriate to consummate the transactions contemplated by this agreement and any related agreements have or will be taken or delivered and such actions and documents and all other related legal matters have been approved by counsel for BUYER.

10.8. Insolvency. SELLER has not, on or prior to the Possession Date, become insolvent or filed a voluntary petition in bankruptcy, or a voluntary petition seeking reorganization, had an involuntary petition in bankruptcy filed against it, made an assignment for the benefit of creditors or applied for the appointment of a receiver or trustee of all or a substantial portion of its assets.

10.9. Material Change. There shall not be any facts or circumstances discovered which substantially or adversely affect the property or BUYER's obligations under this agreement.

10.10. In the event that any of the foregoing conditions precedent are not satisfied, BUYER shall have the option to either (1) waive the same by an appropriate writing delivered to SELLER on or prior to the Possession Date and proceed to consummate the transaction contemplated herein; or (2) declare this agreement null and void, in which case the BUYER shall have no further rights or obligations hereunder and any amounts paid by BUYER to SELLER shall be promptly repaid by SELLER to BUYER.

11. Default. In the event of default by SELLER or BUYER, the following shall determine their respective rights and obligations:

11.1. By SELLER. BUYER, at BUYER's sole option, may elect to:



SELLER Initials _____ | _____    BUYER Initials _____

11.1.1. Waive any claim for loss of bargain, in which event SELLER agrees to reimburse BUYER for all direct, out-of-pocket costs and expenses incurred by BUYER in connection with the proposed transaction including, but not limited to, the costs of any environmental investigations or remediation, title examination fees and reasonable attorney's fees and expenses, in which event this agreement shall terminate and be of no further force and effect.

11.1.2. In lieu thereof, BUYER may elect either or both of the following remedies: (a) an action for specific performance; and/or (b) an action at law for damages, including loss of bargain, all consequential damages and all direct out-of-pocket costs and expenses incurred by BUYER, provided, however, that no such election shall be final or exclusive until full satisfaction shall have been received by BUYER.

11.2. By BUYER. SELLER, at SELLER's sole option, may elect to terminate the agreement and refund to BUYER any SELLER's Equity or other amounts previously paid to SELLER by BUYER, in which event the agreement shall be of no further force and effect.

12. Residential Lead-Based Paint Hazard Reduction Act Notice Required For Properties Built Before 1978.

 X   NOT APPLICABLE

___   APPLICABLE – PROPERTY BUILT BEFORE 1978

12.1  SELLER represents that:  (check 1 or 2)

___  1.  SELLER has no knowledge concerning the presence of lead-based paint and/or lead-based paint hazards in or about the property.

___  2.  SELLER has knowledge of the presence of lead-based paint and/or lead-based paint hazards in or about the property.  (Provide the basis for determining that lead-based paint and/or hazards exist, the location(s), the condition of the painted surfaces, and other available information concerning SELLER's knowledge of the presence of lead-based paint and/or lead based paint hazards.)

_____

_____

12.2.  Records/Reports  (check 1 or 2)

___1.  SELLER has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in or about the property.

___2.  SELLER has provided BUYER with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in or about the property.

(List

documents)_____

_____

12.3.  BUYER's Acknowledgment

 X _1.  BUYER has received the pamphlet Protect Your Family From Lead in Your Home and has read the Lead Warning Statement contained in this Agreement (See Environmental Notices).

BUYER's Initials ___*AF*_____         Date ___7/25/2018_____

 x _2.  BUYER has reviewed SELLER's disclosure of known lead-based paint and/or lead-based paint hazards, as identified in paragraph 12.1 and has received the records and reports pertaining to lead-based paint and/or lead-based paint hazards identified in paragraph 12.2.

BUYER's Initials ___*AF*_____         Date ___7/25/2018_____

13. No Brokerage Commission. SELLER represents and warrants that any listing agreement covering the property has an exclusion clause that provides that no commission is payable to any broker as a result of the sale of the property by SELLER to BUYER.  SELLER shall indemnify, defend and hold harmless BUYER from any claim for a brokerage commission.

SELLER Initials ___NG___ & ___kG___     BUYER Initials ___AF___

DocuSign Envelope ID: 665E0445-1C81-4838-98D9-8F02E7BF2529

14. SELLER's Acceptance. This agreement shall not be binding upon BUYER unless BUYER shall have received (1) one original or copy hereof executed and acknowledged by SELLER on or before the expiration date specified in BUYER's offer letter to SELLER and BUYER shall have executed and dated the originals. If the agreement has been modified or is otherwise not acceptable to BUYER, BUYER may terminate this agreement and shall have no further obligations to SELLER hereunder.

15. Survival of Warranties and Representations. The warranties, representations, terms and conditions of this agreement shall not merge into the deed and all of the warranties and representations contained herein shall survive the closing of this transaction.

16. Governing Law. This agreement and the transactions contemplated herein shall be governed and construed in accordance with the laws of the state in which the property is located.

17. Rights of Successors and Assigns. This agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors, assigns and legal representatives. This agreement may not be assigned by either party without the prior written consent of the other party.

18. Tender and Notices. Formal tender of deed and purchase price are hereby waived by the parties. All notices, tenders, demands or other communications delivered or tendered under this agreement shall be in writing and shall be sufficient if sent by registered or certified mail with return receipt requested or by a recognized courier service to the parties at the addresses shown in the first paragraph hereof. Such notice shall be sufficient, whether accepted at the address referred to or not, if tendered at such address during the normal business hours. The addresses may from time to time be changed by either party giving written notice pursuant to the terms of this paragraph.

19. Entire Agreement of Parties/Misceleneous. This agreement cannot be changed orally and constitutes the entire contract between the parties hereto. Any prior written or oral agreements, letters or other documents shall be considered to have been merged in this agreement and shall be of no further force and effect. This agreement shall not be modified nor changed by any expressed or implied promises, warranties, guaranties, representations or other information unless expressly and specifically set forth in this agreement or an addendum or amendment thereto properly executed by the parties. Failure of any party to insist upon strict performance of this Agreement at any given time will not act as a waiver of default. If there are two or more persons signing this Agreement as SELLER, each signer designates and authorizes the other as his/her agent to receive notices and payments and also give receipts for such payments under this Agreement. This Agreement can not be assigned by the SELLER. This is not a Third Party Agreement meaning the SELLER, BUYER and EMPLOYER are the only parties having any enforceable rights in this Agreement.

20. Paragraph Headings. The headings referring to the contents of paragraphs of this agreement are inserted for convenience and are not to be considered as part of this agreement nor a limitation on the scope of the particular paragraphs to which they refer.

21. FIRPTA Certification. SELLER, and each of them, hereby certify under penalties of perjury that:
a. SELLER, and each of them, are not nonresident alien(s) for purposes of U.S. income taxation. If any SELLER IS a nonresident alien for purposes of U.S. income taxation, please initial the following blank ████████████        ████████████
b. SELLER'S taxpayer identification (social security) number(s) is(are)_____.
c. SELLER'S home address is  2726 W. Cortez Street Unit 1, Chicago, IL 60622 .
SELLER understands that this certification may be disclosed to the Internal Revenue Service by the BUYER and that any false statement you have made here could be punished by fine, imprisonment or both (Section 1445 of the Internal Revenue Code provides that the buyer of U.S. real property interests must withhold tax if the seller is a foreign person. SELLER, and each of them make the foregoing certification to inform the buyer that no withholding is required.)

SELLER Initials _NG_ _kG_    BUYER Initials _AF_

AIRES000353

22. Facsimile Execution This Agreement may be executed by the facsimile transmission and/or scanned email copy, and/or exchange, of a document or documents signed by the parties to be obligated, which shall be binding upon the transmission thereof. The parties agree to promptly provide one another with originals of any documents thus transmitted, as applicable.

<u>III.  EXECUTION</u>

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have read and duly executed this agreement the day and year first above written.

_DocuSigned by:_
_Nicholas Gonring_
_DocuSigned by:_
_____
8B8FD3A77547403...
_Kelsey Gonring_
_____
FFA0EBD9BAA6434...

SELLER
Nicholas Gonring
Kelsey Gonring

BUYER
AMERICAN INTERNATIONAL
RELOCATION SOLUTIONS, LLC
By:_____ _Amanda Flucker_
Duly authorized

**LEAD NOTICES:  (For Properties built before 1978)**

**Lead Warning Statement:** Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning.  Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory.  Lead poisoning also poses a particular risk to pregnant women.  The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards.  A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**Lead Hazard Disclosure Requirements:** In accordance with the Residential Lead-Based Paint Hazard Reduction Act, any seller of property built before 1978 must provide the buyer with an EPA-approved lead hazards information pamphlet titled Protect Your Family From Lead in Your Home and must disclose to the buyer and the seller's agent the known presence of lead-based paint and/or lead-based paint hazards in or on the property being sold, including the basis used for determining that lead-based paint and/or lead-based paint hazards exist, the location of lead-based paint and/or lead-based paint hazards, and the condition of painted surfaces.  Any seller of a pre-1978 structure must also provide the buyer with any records or reports available to the seller pertaining to lead-based paint and/or lead-based paint hazards in or about the property being sold, the common areas, or other residential dwellings in multi-family housing.  The Act further requires that before a buyer is obligated to purchase any housing constructed prior to 1978, the seller shall give the buyer 10 days (unless buyer and seller agree in writing to another time period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.  The opportunity to conduct a risk assessment or inspection may be waived by the buyer, in writing.  Neither testing nor abatement is required of the seller.  Housing built in 1978 or later is not subject to the Act.



SELLER Initials _____ _____      BUYER Initials _____

APPENDIX A

Description of Property

Street Address:            2726 W. Cortez Street Unit 1

                           Chicago, IL 60622

Recording Reference:_____  Tax Parcel Numbers:_____

Legal Description:

Liens, Encumbrances, Mortgages, Security Interests, Title Retention Agreements Restrictions, Conditions, Charges, Equities and Other

Claims on Property



SELLER Initials_____ ____    BUYER Initials _____

AIRES000355

Ryan, Has this been disclosed to Your buyer?

Let me know which dates work.

Thanks again for touching base.

Melinda

Sent from my iPhone

On Sep 8, 2018, at 11:01 AM, Young, Melinda <Melinda.Young@nuveen.com> wrote:

Sent with BlackBerry Work
(www.blackberry.com)

**From:** john gorr <jgorr1@msn.com>
**Date:** Friday, Sep 07, 2018, 8:33 PM
**To:** Young, Melinda <Melinda.Young@nuveen.com>
**Subject:** Unit 3 - subfloor damage

Hey Melinda - this is going to be an unfortunate way for us to start talking. I've been very busy trying to sell my place for the past few months and have had several setbacks. I'm not sure what was communicated to you during closing but there has been a history of water intrusion to the building. This has occurred primarily in my unit from leaks through the split face block. The history of the water intrusion has been thoroughly documented over some years and was clearly communicated along the way to the other unit owners.

We had the building sealed with elastomeric sealant a few months back so we're fairly confident that the water has stopped getting into the building. However, with the recent inspections on my place a few items have been brought up that have shed light on a new problem. I recently tested positive for elevated levels of mold in my unit. That triggered me to look at replacing some floorboards. Upon removing the floorboards we discovered that the subfloor was severely damaged in many areas and there is mold behind some walls, please see the attached pictures. From what started out as me replacing some floorboards has turned into a large and costly problem that was caused by a building issue. I have spoken with a few contractors about the next steps and the appropriate resolve is to remove some of the subfloor, and much of the drywall on the perimeter of my unit, treat the mold, and then repair and repaint.

I have relayed this information to Ryan as well. I anticipate that you will be surprised and disappointed at this news, and I'm sorry to break it to you. I'll be out of town tomorrow but will be available by phone all weekend to discuss. Otherwise, we can set up a building meeting this week.

John
773-742-0596

<20180904_154205.jpg>

<20180904_154518.jpg>

<20180905_091212.jpg>

EXH 44

Gorr 00245