**IN THE UNITED STATES DISRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| MELINDA SGARIGLIA,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN INTERNATIONAL RELOCATION SERVICES, LLC, D.B.A. AIRES, AN ILLINOIS LIMITED LIABILITY CORPORATION, NICHOLAS GONRING & KELSEY GONRING,<br><br>Defendants. | ) | 1:19-cv-05684<br><br>Honorable Robert Gettleman |
| NICHOLAS GONRING & KELSEY GONRING,<br><br>Third-Party Plaintiffs,<br><br>v.<br><br>2726 WEST CORTEZ CONDOMINIUM, AN ILLINOIS CORPORATION, & JOHN GORR,<br><br>Third-Party Defendants. | ) | |

**THIRD-PARTY DEFENDANTS' RENEWED MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT MOTION AS TO THIRD-PARTY COMPLAINT**

This is an exceedingly simple case. Melinda Sgariglia ("Sgariglia" or "Plaintiff"), Plaintiff in the underlying lawsuit, purchased the Gonrings' condominium and is suing the Gonrings and the Gonrings' agent for allegedly failing to disclose known defects in the condo building.

Not ones to be left holding the bag, the Gonrings have filed a Third-Party Complaint against their erstwhile neighbor, Gorr, and the Condominium Association (the "Association"). It is worth noting that the Association is made up of the three condominiums in the building and is exceedingly small. The gravamen of the Gonrings' Complaint is that the Association and its President, Gorr, submitted to Plaintiff a fraudulent Section 22.1 Disclosure Statement (the

"Disclosure Statement") that failed to disclose the need for a future special assessment for mold remediation in Gorr's unit.

For this alleged infraction, the Gonrings have filed claims against the Association for: (1) Breach of 765 ILCS 605/22.1, (2) Breach of contract and contribution. In addition, the Gonrings contend that Gorr, as the Association president, breached his fiduciary duty to the Association members.

The Gonrings' claims for breach of 765 ILCS 605/22.1, breach of fiduciary duty and contribution are all based upon the assertion that the Association and/or Gorr knew or should have known that a future special assessment for mold remediation was likely to be needed and should have been disclosed in ¶ 4 of the Disclosure Statement. In fact, the indisputable evidence demonstrates that neither Gorr nor the Association knew or could have known about the existence of mold in Gorr's unit at the time that the Statement was issued.

The Gonrings' breach of contract claim asserts that "[t]he Association breached their duties under the Declaration when it failed to remediate the issues with the limited common elements associated with Gorr's unit." (Third-Party Cplt. ¶ 59.) The evidence, however, is indisputable that the Association took steps to remediate the infiltration of water into Gorr's unit when it became clear that the water was coming through a flaw in a common element; and, has taken steps to remediate the mold as soon as the existence of the mold was known.

Finally, the Gonrings' claim for contribution is banned by Illinois law. Each of Sgariglia's claims against the Gonrings asserts a knowing or deliberate misrepresentation. However, the Illinois Supreme Court has held that there is no right of contribution in Illinois for intentional torts.

## RELEVANT MATERIAL FACTS

Prior to July 25, 2018, Third-Party Plaintiffs, the Gonrings, owned Unit 1 in a three-condo building located at 2726 W. Cortez Ave., Chicago, IL (the "building"). (Third-Party Defendants'

Renewed Statement of Uncontested Material Facts, "TPDSUMF", attached hereto as Exhibit A, at ¶ 1.) Third-Party Defendant, Gorr, was their neighbor, the owner of Unit 3 in the building, and the president of the Association. (TPDSUMF ¶ 2.)

In December 2017, Gorr sent an email to the Gonrings and the other condo owner that his unit was experiencing water infiltration from a common element in the building, and requested that the Association pay for remediation. (TPDSUMF ¶ 3.)

In the spring of 2018, the Gonrings relocated to Michigan for work and retained the relocation firm of American International Relocation Services ("AIRES") to handle aspects of their relocation, including the sale of their condo unit. (TPDSUMF ¶ 4.)[1]

On May 7, 2018, after retaining a restoration firm to determine the source of the water infiltration, the Association hired the firm of Arrow Masonry and Exteriors, Inc. ("Arrow") to remediate water infiltration into Gorr's unit. (TPDSUMF ¶ 5.) Because the restoration firm had determined that the water was entering Gorr's unit through a flaw in one of the common areas, the Association agreed to treat the cost of repair as an Association expense and declared a special assessment to be paid by the three condo owners based upon their *pro rata* shares of ownership in the building, thereby fully funding the cost of repair. (TPDSUMF ¶ 6.)

Arrow completed its work on June 4, 2018. (TPDSUMF ¶ 7.) After the water infiltration was remediated, Gorr believed that the problem with his unit had been fully remediated and that no further work was needed. (*Id.*)

Four days after Arrow completed its work, on June 8, 2018, Plaintiff, Sgariglia, signed a contract to purchase the Gonrings' unit. (TPDSUMF ¶ 8.) In connection with the sale, the Gonrings submitted a written disclosure statement ("Sellers Property Disclosure Statement") to Sgariglia,

[1] The scope of AIRES's work is not at issue as it relates to either Gorr or the Association.

which the Gonrings signed on or about May 29-30, 2018, and made additional representations to Plaintiff regarding the Unit Plaintiff was purchasing. (TPDSUMF ¶¶ 8, 31.) The Sellers Property Disclosure Statement included a handwritten statement that "Unit 3 had leaks on West Facing windows HOA sealed building to resolve Unit 3 leak." (TPDSUMF ¶ 30.) Gorr never reviewed nor signed the Sellers Property Disclosure Statement. (TPDSUMF ¶ 32.)

On June 14, 2018, as part of the contract, and as statutorily required by 765 ILCS 605/22.1, Gorr, as the Association president, signed a Disclosure Statement. (TPDSUMF ¶ 9.) The Disclosure Statement was provided to Gorr from Kelsey Gonring earlier that day via email in which Kelsey Gonring wrote as follows:

> "Attached is the 22.1 filed out by Ryan when we purchased. Doesn't seem like there is question pertaining to leaks so there would be no need to go into detail about issues in your unit or the building. Question 8 asks for board meeting minutes showing approval of special assessments. We can provide minutes for the meeting where we decided on hiring Arrow. No need to go into a detailed history of how and why we came to that conclusion since that is not what they are asking for. I will draft a very brief document stating our decision to hire Arrow following a recommendation to seal the building and the percentage breakdown per unit for that work."

(TPDSUMF ¶ 28.) 27 minutes later, having reviewed the Disclosure Statement Gorr prepared, Kelsey Gonrings directed Gorr to send the Disclosure Statement to Plaintiff's representative explaining "[p]robably best if [Plaintiff's representative] gets it from you…" (TPDSUMF ¶ 29.)

The Disclosure Statement stated, among other things, that there were no "capital expenditures anticipated by the Association for the current or next two fiscal years that would require a special assessment and/or increase in the monthly assessment to the unit owners." (TPDSUMF ¶ 10.)

Five days after issuing the Disclosure Statement, on June 19, 2018, Gorr listed his unit for sale. (TPDSUMF ¶ 11.) On June 26, 2019, nearly two weeks after issuing the Disclosure Statement

to Sgariglia, Gorr entered into a sales contract for his unit. (TPDSUMF ¶ 12.) The sales contract provided that the sale was contingent upon a satisfactory home inspection. (TPDSUMF ¶ 13.) However, three days after signing the contract, the inspector hired by the buyer for Gorr's unit found an excessive amount of moisture in the unit. (TPDSUMF ¶ 14.) That buyer notified Gorr of the inspector's findings and voided the sale. (TPDSUMF ¶ 15.)

Still unaware of the existence of mold in his unit, Gorr relisted the unit. (TPDSUMF ¶ 16.) However, a second contract also failed, based upon an inspection report issued on July 22, 2018, which also found an excessive amount of moisture in Gorr's unit. (TPDSUMF ¶ 17.) While both of the inspection reports found evidence of excessive moisture, neither report identified mold growth in Gorr's unit. (TPDSUMF ¶ 18.)

On July 30, 2018, as a result of the two failed inspection reports, Gorr hired MI&T Mold Inspection & Testing, who found that the unit tested positive for mold. (TPDSUMF ¶ 19.) As a result, Gorr decided to replace some of the floorboards in his unit. (TPDSUMF ¶ 20.) On September 7, 2018, the floor boards were removed and Gorr first discovered that the subflooring was severely damaged and that mold was growing behind the walls. (TPDSUMF ¶ 21.) Gorr transmitted this information to Plaintiff and the owner of Unit 2 in the building the same day. (TPDSUMF ¶ 22.)

On June 20, 2019, Sgariglia filed a three-count Complaint against both the Gonrings and AIRES. (TPDSUMF ¶ 23.) Count I alleged a knowing violation of the Illinois Residential Real Property Disclosure Act by the Gonrings for failing to disclose known defects in the building or the existence of prior insurance claims within the prior five years. (TPDSUMF ¶ 24.) Count II alleged fraudulent concealment by all Defendants. (TPDSUMF ¶ 25.) Count III alleged an intentional breach of contract through a breach of the covenant of good faith and fair dealing by

all Defendants. (TPDSUMF ¶ 26) Each of the three claims alleges an intentional tort. (TPDSUMF ¶¶ 24-26.)

On August 23, 2019, Defendant AIRES removed the case from the Circuit Court of Cook County to this Court. (ECF. Doc. 1.)

The Gonrings filed the Third-Party Complaint on June 12, 2020. (TPDSUMF ¶ 27.)

**Legal Standard**

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. A*nderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In making such determination the Court views the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997).

The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See* A*nderson v. Liberty Lobby, Inc.,* 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).

Moreover, "[i]f the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

**ARGUMENT**

## I. COUNTS I, II AND IV OF THE THIRD-PARTY COMPLAINT SHOULD BE DISMISSED FOR FAILURE OF PROOF OF A MATERIAL FACT.

### A. THE GONRINGS' CLAIM AGAINST THE ASSOCIATION FOR VIOLATION OF 765 ILCS 605/22.1 (COUNT I) SHOULD BE DISMISSED BECAUSE ALL RELEVANT EVIDENCE INDICATES THAT THE DISCLOSURE STATEMENT WAS ACCURATE AT THE TIME IT WAS ISSUED.

As the Gonrings aver in their Third-Party Complaint, 765 ILCS 605/22.1 imposes an obligation on a condo reseller to obtain from the association and make available to the purchaser, on demand, a statement which among other things: (a) specifies any anticipated capital expenditures in the current and succeeding two years and (b) states the status and amount of the current condo reserve fund and whether any portion of that fund is earmarked for a specific capital project. (765 ILCS 605/22.1(c) & (d); *see also* Third-Party Cplt. ¶ 42.)

In their claim against the Association for violating 765 ILCS 605/22.1 (Count I), the Gonrings allege:

> The Board of Managers of the Association breached its obligations under 765 ILCS 605/22.1(a)(3) and (4) and (b) by failing to disclose in the 22.1 Statement the expenditures planned for Gorr's unit and the limited common elements associated with Gorr's unit with regard to the mold issues.

(Third-Party Cplt. ¶ 43.)

The Gonrings' statutory claim involves the Association's responses in ¶¶ 3 & 4 of the Disclosure Statement. In those two paragraphs, the Association states that none of the reserves for capital expenditures have been designated by the Association for specific projects (Disclosure Statement ¶ 3, ECF Doc. 55-2) and that there were no capital expenditures anticipated by the Association for the current or next two fiscal years that would require a special assessment and/or increase in the monthly assessment to the unit owners (*id.* ¶ 4).

The Gonrings allege:

> The Board of Managers of the Association breached its obligations under 765 ILCS 605/22.1(a)(3) and (4) and (b) by failing to disclose in the 22.1 Statement the

> expenditures planned for Gorr's unit and the limited common elements associated with Gorr's unit with regard to the mold issues.

(Third-Party Cplt., ECF 55, ¶ 43.)

This claim by the Gonrings is flatly contradicted by the timing of the material events. Gorr and the Association issued the Disclosure Statement on June 14, 2018. (TPDSUMF ¶ 9.) Arrow, the firm hired to correct water intrusion into Gorr's unit, had completed their work on June 4, 2018. (TPDSUMF ¶ 7.) Both Gorr, and the Gonrings, believed that this ended the problems with Gorr's unit. (Third-Party Cplt. ¶ 25; TPDSUMF ¶ 7.) Thus, on June 14 when the Disclosure Statement was issued, there was no reason for the Association or Gorr to believe that any further special assessment or increase in condo dues would be needed to perform further remediation work on Gorr's unit. Moreover, Kelsey Gonring played an instrumental role in the drafting and sending of the Disclosure Statement. (TPDSUMF ¶¶ 28-29.)

In fact, Gorr was so certain that Arrow's work had remediated the problem that he listed his unit for sale on June 19, 2018. (TPDSUMF ¶ 14.) It was not until the contract to sell his unit fell through on June 29, 2018 that Gorr found out that his unit had excessive moisture. (TPDSUMF ¶¶ 12-15.) Even then, Gorr had only been told that there was excessive moisture -- not that the unit had mold. (TPDSUMF ¶ 16.)

Gorr did not find out that his unit had mold until July 31, 2018, when the mold test indicated that there were elevated levels of mold in the unit. (TPDSUMF ¶¶ 16-22.) The source of the mold was discovered on September 7, 2018 when he removed the floorboards after a second prospective purchaser produced another inspection report finding excessive moisture. (TPDSUMF ¶¶ 16-22.) All of this occurred 6 weeks after Gorr and the Association had issued the Disclosure Statement to Sgariglia. (TPDSUMF ¶¶ 9 & 21.)

Thus, the undisputed time-line of this case demonstrates that, on June 14, 2018, when the Disclosure Statement was issued, Gorr, the Association, and even the Gonrings had no idea that a future special assessment to remedy the mold in Gorr's unit was even a possibility.

Overlaying all of this is the fact that Gorr had no incentive whatsoever to conceal the need for mold remediation. Assuming that, on June 14, 2018 (the date of the Disclosure Statement), Gorr had any inkling that there was mold in his unit, such information on the Disclosure Statement might have voided Sgariglia's contract with the Gonrings, but it would not have had any financial impact on Gorr at all.

In fact, it was in Gorr's best interest to find and remediate the mold as soon as possible. Since the cost of remediating the mold has been determined to be an Association expense, Gorr was only responsible for his *pro rata* share based on his percentage ownership of the building. Further, since Gorr had intended to list his condo for sale, which he did on June 19, 2018, it was in Gorr's best interest to have the remediation performed as soon as possible -- particularly since it was an association expense.

Thus, any notion that either Gorr or the Association knew that mold remediation was going to be necessary and simply failed to disclose it on the Disclosure Statement is completely at odds with the timeline of this case and with Gorr's own economic interest.

Even assuming *arguendo* that Gorr had some motivation to hide his own knowledge of mold, which he obviously did not, the Gonrings own conduct conclusively demonstrates that Gorr had no intention of withholding anything to the detriment of the Gonrings. Documentation obtained in discovery shows that it was Kelsey Gonring that provided the initial draft of the Disclosure Statement, reviewed the final draft of the Disclosure Statement, and directed Gorr to

send the Disclosure Statement to Plaintiff's representative because it "[p]robably best if [Plaintiff's representative] gets it from you…" (TPDSUMF ¶¶ 28-29.)

B. THE GONRINGS' CLAIM AGAINST GORR FOR BREACH OF FIDUCIARY DUTY (COUNT II) FAILS TO IDENTIFY ANY FIDUCIARY DUTY THAT GORR FAILED TO PERFORM.

Under Illinois law, a claim for breach of fiduciary duty requires proof: (a) that a fiduciary duty exists; (b) that the fiduciary duty was breached; and, (c) that such breach proximately caused the injury of which the plaintiff complains. *Neade v. Portes*, 193 Ill. 2d 433, 444, 739 N.E.2d 496, 501 (2000). The existing evidence demonstrates that there was no breach.

In attempting to plead a breach of fiduciary duty, the Gonrings aver:

> Gorr, as a member of the board of the Association and as owner of unit 3 of the Condominium Building, owed fiduciary duties of good faith and fair dealing, and care to the Association and its unit owners.
>
> Such fiduciary duties included, but were not limited to, the duty to fully disclose all issues with the Condominium Building to prospective unit purchasers in the 22.1 Statement.
>
> Gorr breached his fiduciary duties under the Bylaws when he, failed to disclose all issues with regard to the Condominium Building, misrepresented and the concealed the work to be performed on his unit to remediate the mold issues and how such repair work would be paid pro rata by the members of the Association via special assessment.

(Third-Party Cplt. ¶¶ 50-52.)

Gorr's duties viz-a-viz the Disclosure Statement are statutorily specified in 765 ILCS 605/22.1(a), which entitles a condo seller to obtain the following information from the Association and requires the seller to make this information available to the seller on demand:

(1) A copy of the Declaration, by-laws, other condominium instruments and any rules and regulations.

(2) A statement of any liens, including a statement of the account of the unit setting forth the amounts of unpaid assessments and other charges due and owing as authorized and limited by the provisions of Section 9 of this Act or the condominium instruments.

(3) A statement of any capital expenditures anticipated by the unit owner's association within the current or succeeding two fiscal years.

(4) A statement of the status and amount of any reserve for replacement fund and any portion of such fund earmarked for any specified project by the Board of Managers.

(5) A copy of the statement of financial condition of the unit owner's association for the last fiscal year for which such statement is available.

(6) A statement of the status of any pending suits or judgments in which the unit owner's association is a party.

(7) A statement setting forth what insurance coverage is provided for all unit owners by the unit owner's association.

(8) A statement that any improvements or alterations made to the unit, or the limited common elements assigned thereto, by the prior unit owner are in good faith believed to be in compliance with the condominium instruments.

(9) The identity and mailing address of the principal officer of the unit owner's association or of the other officer or agent as is specifically designated to receive notices.

765 ILCS 605/22.1(a). Examination of the Disclosure Statement issued by Gorr and the Association on June 14, 2018 demonstrates that each of these categories was either addressed in the Disclosure Statement or provided in documentary form. (See Disclosure Statement, Exhibit B to Third-Party Cplt.)

The Gonrings' grievance appears to be that Gorr did not indicate on the Disclosure Statement that a future capital expenditure for mold remediation in his unit would be needed and that a future special assessment and/or dues increase might be needed. (Third-Party Cplt. ¶¶ 50-52). As previously explained, Kelsey Gonring provided the initial draft Disclosure Statement, reviewed the final draft Disclosure Statement and directed it to be sent to Plaintiff's representative. (TPDSUMF ¶¶ 28-29.) The Gonrings' grievance falls flat.

More specifically as to the Association and Gorr, as detailed above, neither the existence of mold in Gorr's unit nor the potential need for a special assessment or dues increase was known

until September 7, 2018, when Gorr removed some of the floorboards in his unit. (*See supra* at 6-8; TPDSUMF ¶ 19.) In fact, Gorr was unaware that his unit even had excessive moisture until the first prospective purchaser voided the contract to purchase Gorr's unit on June 29, 2018 -- two weeks after the Disclosure Statement was issued. (*Supra* at 6-8; TPDSUMF ¶¶ 9-15.) Neither the Association nor Gorr could disclose the future need for mold remediation on the Disclosure Statement because they did not learn of the mold until months after the Disclosure Statement was issued.

Further, as discussed above, Gorr himself had absolutely no incentive to conceal the existence of mold in his own unit. (*Supra* at 8.) The cost of mold remediation was already an approved Association expense and the disclosure would have had no adverse financial consequences to Gorr. (*Id.*)

C. THE GONRINGS' REQUEST FOR CONTRIBUTION BY THE ASSOCIATION (COUNT IV) IS NOT ONLY FACTUALLY UNSUPPORTED BUT IS BARRED BY ILLINOIS LAW.

In Count IV, the Gonrings seek contribution from the Association in the event that they are found liable to Sgariglia. (Third-Party Cplt. ¶¶ 63-66). In support of this count, the Gonrings aver:

> Sgariglia has been damaged by the Association's tortious conduct, including its breach of 765 ILCS 605/22.1 and its breach of its fiduciary duties owed to the members of the Association.

(*Id.* ¶ 64.)

As discussed in detail above, neither the Association nor Gorr has engaged in any tortious conduct. (*Supra* at 7 & 8,) To the knowledge of the Association and to the owners of each condo in the building, each of the representations in the Disclosure Statement was accurate when made. (*Id.*)

Moreover, with respect to the Gonrings' request for contribution, there is an independent reason why Count IV should be dismissed. The Illinois Supreme Court has held that there is no

right of contribution with respect to an intentional tort. *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 206, 538 N.E.2d 530, 542 (1989) ("We conclude, therefore, that intentional tortfeasors are not entitled to contribution under the Illinois Contribution Among Joint Tortfeasors Act.").

Each of Sgariglia's three claims against the Gonrings involves an allegation of an intentional tort. (TPDSUMF ¶¶ 24-26.) In Count I, claiming that the Gonrings violated the Illinois Residential Property Disclosure Act, Sgariglia averred:

> Under the pertinent portions of the Disclosure Act, "A person who knowingly violates or fails to perform any duty prescribed by any provision of this Act or who discloses any information on the Residential Real Property Disclosure Report that he knows to be false shall be liable in the amount of actual damages and court costs, and the court may award reasonable attorney fees incurred by the prevailing party. (765 ILCS 77/55).
>
> Defendants violated the Disclosure Act by failing to mention any of the defects that they were well aware of.

(Cplt. ¶¶ 37 & 38.) Thus, Sgariglia claims that the Gonrings knowingly concealed defects in the building.

Count II avers that the Gonrings engaged in fraudulent concealment, itself an intentional tort. (*Id.* ¶¶ 39-46.)

In Count III, Sgariglia claims that the Gonrings breached the covenant of good faith and fair dealing "by concealing the structural problems associated with the Condominium, the claims against insurance and the complaints of water seepage that were well known to Defendants." (*Id.* ¶¶ 47-49.)

Each of these claims alleges deliberate concealment or fraud. As such, the Gonrings have no right to claim contribution by Gorr or the Association. *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, *supra*.[2]

## II. THE GONRINGS' BREACH OF CONTRACT CLAIM IS CONTRADICTED BY ALL OF THE PERTINENT EVIDENCE.

The Gonrings also claim that the Association breached its contract to maintain the common elements of the condo building by "failing to remediate the issues with the limited common elements associated with Gorr's unit." (Third-Party Cplt. ¶¶ 54-62.) This is patently untrue as shown by all pertinent evidence.

As the Gonrings themselves aver, it was not until December 2017 that even Gorr concluded that the water infiltration into his unit was likely to be an Association issue. (Third-Party Cplt. ¶ 15.) After so notifying the Association and the other unit owner, it is undisputed that in early March 2018 the Association hired Bral Restoration Services, Inc. to determine the source of the infiltration. (*Id.* ¶¶ 16-18.) Subsequently, after Bral concluded that the source of the infiltration was a common element, it is also undisputed that the Association hired Arrow on May 7, 2018 to remediate the infiltration. (*Id.* ¶¶ 20-21.)

According to the Gonrings, the contract stated Arrow would perform spot grinding, spot tuckpointing, caulking, flashing installation and sealing of the east, west, and north elevations of split-face block and would guarantee the walls against leaks after work was completed. (Third-

[2] It is also worth noting that Sgariglia's Complaint avers numerous concealments and misrepresentations made by the Gonrings or their representatives regarding leaks and damage to the condo building and insurance claims made within the previous five years. (Cplt. ¶¶ 8-15.) These averments involve documents and orals representations made directly to Sgariglia from the Gonrings or their representatives and have nothing to do with the Disclosure Statement issued by Gorr or the Association. (*Id.*; Exhibit B-2 to Cplt; see also DSUMF ¶ 8.) Thus, the acts of concealment alleged in Sgariglia's Complaint do not conform to the Gonrings' allegations in the Third-Party Complaint.

Party Cplt. ¶¶ 21 & 22.) The work was completed on June 4, 2018, less than a month after Arrow was hired. (TPDSUMF ¶ 7.). Importantly the work was completed prior to the Disclosure Statement being signed and provided to Plaintiff's representative.

There are no allegations that the work performed by Arrow failed to remediate the infiltration issue. It is unclear what more the Association could have done to correct this defect. It is not alleged what more the Association could have done to correct this defect. It is not alleged what the Association had reason to know at the time the Disclosure Statement was signed and provided to Plaintiff's representative. The Association hired a firm, as promptly as possible, to investigate the source of the infiltration and then promptly hired a firm to correct the problem.

Regarding the existence of mold in Gorr's unit, that was unknown until July 31, 2018, when Gorr received the results of the mold inspection test. (TPDSUMF ¶ 20.) There are no allegations in this case that the Association has failed to address the mold issue. It is not even alleged that the Association had reason to know of the mold prior to July 31, 2018.

The Gonrings have not averred any facts indicating that the Association breached the condo bylaws or declaration in the manner in which they dealt with the water infiltration or, later, with the presence of mold. To the contrary, all available evidence indicates that the Association acted promptly and effectively. As such, there is no evidence supporting the Gonrings' claim for breach of contract.

WHEREFORE, for the reasons stated herein, Third-Party Defendants, 2726 WEST CORTEZ CONDOMINIUM and JOHN GORR, respectfully ask this Court to grant summary judgment in their favor on the Third-Party Complaint and to grant such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

**2726 WEST CORTEZ CONDOMINIUM and JOHN GORR**
Third-Party Defendants

By:__*/s/ Ross M. Good*_____________
One of Their Attorneys

David Eisenberg, Esq.
Alexander Loftus, Esq.
Ross M. Good, Esq.
LOFTUS & EISENBERG, LTD.
161 N. Clark St., Suite 1600
Chicago, Illinois 60601
T: 312.899.6625
david@loftusandeisenberg.com
alex@loftusandeisenberg.com
ross@loftusandeisenberg.com

Dated: July 27, 2023