**In the United States District Court
for the Northern District of Illinois
Eastern Division**

| | |
|---|---|
| Melinda Sgariglia, | |
|        Plaintiff, | Case No.: 1:19-cv-05684 |
| vs. | Honorable Robert W. Gettleman |
| American International Relocation Solutions, LLC, et al., | Honorable Gabriel A. Fuentes |
|        Defendants. | |

# Motion for Summary Judgment

Defendant American International Relocation Solutions, LLC d/b/a Aires submits this motion for summary judgment and states as follows:

## Introduction

Plaintiff asserts a single count for common law fraudulent concealment against Aires.[1] Sgariglia claims that Aires had a duty to disclose three pieces of information during the sale: (1) that Aires was not the titled holder on the Property; (2) that Aires acted as an agent for the Gonrings; and (3) that Aires improperly limited its disclosure of insurance claims on the Property to homeowner's insurance claims alone. Aires never concealed the true owner of the Property, was not the Gonrings' agent, and never withheld information about insurance claims on the Property. But even if Aires did conceal all that information, the undisputed facts show that Sgariglia still failed to prove her case against Aires. Sgariglia failed to prove that: (1) any of these facts were material in her decision to buy the condo; (2) Aires intended that Sgariglia rely on any false information; (3) Aires had duty to disclose this information to her; (4) she could not

---

[1] Sgariglia also filed a breach of contract claim against Aires that the Court dismissed with prejudice (Dkt. 31).

1

discover these facts through reasonable inquiry; (5) she would have acted any differently with this information; and (6) she relied on any concealment to her detriment. The evidence and undisputed facts in this case prove that Aires provided all this information to Sgariglia before the closing. Therefore, Sgariglia's claim against Aires fails as a matter of law, and Aires respectfully requests that the Court grant its Motion for Summary Judgment.

## Statement of Facts

Aires is a relocation company. (Aires Stmt. Mat. Facts, ¶ 34.) In spring 2018, Aires was hired by defendant Nicholas Gonring's employer, Gordon Food Services (GFS), to facilitate his and defendant Kelsey Gonring's relocation from Chicago to Michigan. (Aires Stmt. Mat. Facts, ¶¶ 6, 8.) As part of their services, Aires handled the sale and closing of the Gonrings' condominium at 2726 West Cortez Street, Unit 1, Chicago (the "Property"), to Melinda Sgariglia. (Aires Stmt. Mat. Facts, ¶ 8.) Aires never occupied the Property. (Aires Stmt. Mat. Facts, ¶ 9.)

Sgariglia was represented by attorneys Thomas Hawbecker and Kirk Langefeld during the sale and closing of the Property. (Aires Stmt. Mat. Facts, ¶ 10.) Aires was represented by attorney Sarah Wilkins. (Aires Stmt. Mat. Facts, ¶ 15.) Pursuant to the Illinois Residential Real Property Disclosure Act (765 ILCS 77/35), the Gonrings completed and signed a Disclosure Form attesting to the condition and history of the Property. (Aires Stmt. Mat. Facts, ¶ 17.) As a relocation company, Aires is not subject to these disclosures. 765 ILCS 77/5. Throughout the closing process, Aires advised that "We are a relocation company, and as such, have never occupied this property. We make no guarantee, warranty, or representation about the condition of this property." (Aires Stmt. Mat. Facts, ¶ 34.)

From June 14, 2018 until July 25, 2018, the closing date, the attorneys for Aires and Sgariglia exchanged multiple correspondence, including attorney review letters, requests for extensions to obtain loan commitments, and other topics common to a real estate closings (Aires Stmt. Mat. Facts, ¶¶ 37-43, 45-47, 58.) On July 12, 2018, Wilkins sent Hawbecker a title commitment for the Property that identified the Gonrings as the title holders. (Aires Stmt. Mat. Facts, ¶ 55.) During the closing process, Sgariglia, Hawbecker, and Langefeld never contacted the Gonrings about any issues with the Property. (Aires Stmt. Mat. Facts, ¶¶ 63-64.) On July 25, 2018, Sgariglia took possession of the deed to the Property. (Aires Stmt. Mat. Facts, ¶ 67.)

## Legal Standard

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find for the nonmovant on the admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A disputed fact is material if it "might affect the outcome of the suit under the governing law." *Hoffman-Dombrowski v. Arlington Intern. Racecourse, Inc.*, 254 F.3d 644, 650 (7th Cir. 2001). An issue is "genuine" only if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The movant bears the initial burden of proving that no genuine issue of material fact exists. *Id.* Then, the nonmovant must do more than simply point to the allegations in her complaint. *Estate of Perry v. Wenzel*, 872 F.3d 439, 461 (7th Cir. 2017). Rather, the party opposing the motion must respond with specific references

to the affidavits, parts of the record, and other supporting materials relied on. *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004).

In Illinois, to succeed on a fraudulent concealment claim, a plaintiff must plead and prove that: (1) the defendant concealed a material fact when it had a duty to speak; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through her own reasonable inquiry, or was prevented from making a reasonable inquiry, and she justifiably relied on the defendant's silence as a representation that the fact did not exist; (4) the plaintiff would have acted differently had she been aware of the concealed information; and (5) the plaintiff's reliance resulted in damages. *Abazari v. Rosalind Franklin Univ. of Med. and Sci.*, 2015 IL App (2d) 140952, ¶ 27. As a general rule, a fraud claim cannot be based on a matter of opinion. *Id.* at ¶ 19.

## Argument

1. **Aires did not conceal the true owner of the Property from Sgariglia, and Aires disclosed to Sgariglia multiple times that it did not own the Property.**

A plaintiff must prove that the defendant concealed a material fact to prove her claim for fraudulent concealment. *Schrager v. N. Cmty. Bank,* 328 Ill. App. 3d 696, 706 (1st Dist. 2002). A misrepresentation is material if the plaintiff would have acted differently if she knew about it, or if the defendant expected that the plaintiff would rely on that information when making her decision. *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 740 (7th Cir. 2017).

Sgariglia claims that Aires hid the Property's true owner from her, but the evidence in this case proves otherwise. During the closing process on the Property, Sgariglia was represented by Hawbecker & Garver, LLC, and Aires was represented by Sarah Wilkins (Aires Stmt. Mat. Facts, ¶¶ 10, 15.) Sgariglia used two attorneys from Hawbecker & Garver: Thomas Hawbecker and Kirk Langefeld. (Aires Stmt. Mat. Facts, ¶ 10.) Hawbecker has done thousands of real estate

closings over 20 years, hundreds of which were with relocation companies. (Aires Stmt. Mat. Facts, ¶ 11.) Similarly, Langefeld has done approximately 5,000 real estate closings, about 100 of which were with relocation companies. (Aires Stmt. Mat. Facts, ¶ 13.) According to Hawbecker, the overall nature of closings with relocation companies is the same as when such a company is not involved. (Aires Stmt. Mat. Facts, ¶ 12.) Wilkins represented Aires only and was not the Gonrings' attorney. (Aires Stmt. Mat. Facts, ¶¶ 15, 61; Dkt. 205, ¶¶ 67, 68, 78.)

On June 14, 2018, Hawbecker sent Wilkins an attorney review letter regarding the sale of the Property. (Aires Stmt. Mat. Facts, ¶ 37; Dkt. 205, ¶ 56.) The attorneys exchanged letters and emails through at least July 25, 2018. (Aires Stmt. Mat. Facts, ¶ 67; Dkt. 205, ¶¶ 78-79.) Hawbecker wrote and signed only one letter during the attorney review period. (Aires Stmt. Mat. Facts, ¶¶ 37, 49.) Langefeld handled the other attorney review letters. (Aires Stmt. Mat. Facts, ¶¶ 45, 47.)

On June 18, 2018, Wilkins sent an Attorney Modifications Response Letter where she identified herself as the attorney for Seller, American International Relocation Solutions, LLC. (Aires Stmt. Mat. Facts, ¶¶ 38, 50; Dkt. 205, ¶ 57.) She never identified Aires as the owner of the Property, and she never identified herself as an attorney for the Gonrings. (Aires Stmt. Mat. Facts, ¶¶ 38, 50; Dkt. 205, ¶ 57.) Wilkins's letter also noted that Aires is a relocation company, and it could not verify whether the Property had experienced water leaking or water damage; whether insurance claims had been made against the Property; whether work was done on the Property without obtaining necessary permits; or whether there were any pending complaints or violations against the Property. (Aires Stmt. Mat. Facts, ¶¶ 39, 50, 54; Dkt. 205, ¶ 57.)

On June 22, 2018, Langefeld responded to the June 18 Attorney Modifications Response Letter and asked Aires to verify certain information with the Gonrings: "Please confirm the same

with the prior owner as the seller has direct contact with the prior owner." (Aires Stmt. Mat. Facts, ¶ 45; Dkt. 205, ¶ 65.) On July 2, 2018, Wilkins responded and reiterated that Aires was a third-party relocation company and could not verify any water leaks or damage on the Property. (Aires Stmt. Mat. Facts, ¶¶ 46, 52, 54; Dkt. 205, ¶ 67.) But Aires did agree to abide by the terms of the "Buyer's Duty to Inspect/Test" section of the Aires addendum to the contract. (Aires Stmt. Mat. Facts, ¶ 46.) Aires also restated that it was reported that no work was done on the Property without the necessary permits and that the Property was not subject to any pending complaints, violations, or the like. (Aires Stmt. Mat. Facts, ¶ 54; Dkt. 205, ¶ 67.) On July 3, 2018, Langefeld accepted every one of Aires's statements. (Aires Stmt. Mat. Facts, ¶¶ 47, 53.)

On July 12, 2018, Wilkins sent Hawbecker a Title Commitment that stated Title was vested in Nicholas Gonring and Kelsey Gonring, husband and wife, as Tenants By The Entirety. (Aires Stmt. Mat. Facts, ¶ 55.) The closing took place on July 25, 2018. (Aires Stmt. Mat. Facts, ¶ 67; Dkt. 205, ¶ 78.) Therefore, Sgariglia and her attorneys had the title commitment for more than two weeks before closing, yet neither Sgariglia nor her attorneys made any inquiries about homeownership during that time. The issue was certainly not a material one to them at the time.

Langefeld and Hawbecker testified that they never contacted the Gonrings or attempted to contact them, nor did they ask if the Gonrings had their own attorneys. (Aires Stmt. Mat. Facts, ¶ 63.) Likewise, Sgariglia never contacted or attempted to contact the Gonrings, despite knowing that the Gonrings still lived in the Property during the closing process. (Aires Stmt. Mat. Facts, ¶ 64.) Sgariglia was never told that she could not contact the Gonrings. (Aires Stmt. Mat. Facts, ¶ 65.)

Also, the issue of who held title to the Property is immaterial to the Property's condition, which is the entire reason Sgariglia brought this lawsuit. Sgariglia and her attorneys knew that

Aires was a third-party relocation company that never occupied the Property and could not attest to the Property's condition. Any information Sgariglia wanted about the Property's condition necessarily had to come from the Gonrings. But instead of contacting the Gonrings directly, her attorneys accepted the statements Wilkins made in the attorney review letters confirming that Aires, as a relocation company, could not verify any water leaks or damage to the Property. (Aires Stmt. Mat. Facts, ¶¶ 43, 47, 53.)

Furthermore, Sgariglia's allegation that Aires would be the one executing and delivering the deed is both false and immaterial. (Dkt. 44, ¶ 57; Aires Stmt. Mat. Facts, ¶ 26.) Sgariglia cited to paragraph 8 of the contract, but she ignored that "Deed" is defined in paragraph 10:

> Deed. At closing, Seller shall execute and deliver to Buyer, *or cause to be executed and delivered to Buyer,* a recordable warranty deed ("Deed") with release of homestead rights…

(Aires Stmt. Mat. Facts, ¶ 26 (emphasis added).) Sgariglia seems to use paragraph 8 of the contract as evidence that Aires held itself out as the Property owner, and therefore that Sgariglia's attorneys were reasonable in assuming the Gonrings transferred title to Aires, but the contract language proves otherwise. The contract guarantees that Aires would deliver a "recordable warranty deed" to Sgariglia, but the contract makes no guarantee about who would sign that deed. (Aires Stmt. Mat. Facts, ¶ 26.) And it makes no difference in any event who holds the deed to be transferred. The issue is the Property's condition and not the deed holder. Aires did not fraudulently conceal any material facts about the Property's ownership.

2. **Sgariglia did not prove that Aires had a duty to speak.**

To prove fraudulent concealment, a plaintiff must show that the defendant concealed a material fact when it was under a duty to disclose to the plaintiff. *Guvenoz v. Target Corp.*, 2015 IL App (1st) 133940, ¶ 106. A plaintiff could sue a defendant for concealing a material fact

during a business transaction if the defendant intended to deceive the plaintiff and the defendant had a duty to speak. *Id.* A defendant may have a duty to speak if the parties were in a fiduciary or confidential relationship or when a plaintiff places trust and confidence in a defendant, putting them in a position of influence and superiority over the plaintiff. *Id.* This position may arise through friendship, agency, or experience. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 500-01 (1996). But absent these unusual circumstances, the duty would not arise. *Id.*

Sgariglia never alleged, proved, nor could ever prove, that she had a fiduciary relationship with Aires. A fiduciary relationship's essence is one party's dominance over the other. *Benson v. Stafford*, 407 Ill. App. 3d 902, 913 (1st Dist. 2010). Simply because the parties entered into a contract, it does not follow that they have a fiduciary relationship. *Id.* A court looks at the degree of kinship between the parties; their disparity in age, health, education, or business experience; and whether the servient party trusted the dominant party to handle its business to determine if the parties have a fiduciary relationship. *Id.* Generally, when parties capable of handling their business affairs deal with each other at arm's length, no fiduciary relationship will be deemed to exist. *Id.*

The parties were both represented by attorneys in an arm's-length business transaction. No kinship factors are relevant, and Sgariglia did not allege any differences in age, health, education, or business experience between the parties. Additionally, Sgariglia did not allege, and did not prove, that Aires somehow dominated Sgariglia during the deal. Sgariglia was represented by experienced real estate attorneys. (Aires Stmt. Mat. Facts, ¶¶ 11, 16.) Hence, there can be no fiduciary relationship between Aires and Sgariglia.

Sgariglia also never proved, nor could prove, that Aires was in a position of superiority over her, as there was no friendship, agency, or experience between the parties. The special

relationship threshold is a high one: the defendant must be clearly dominant, either because of superior knowledge of the matter derived from overmastering influence on the one side, or from weakness, dependence, or trust justifiably reposed on the other side. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 572 (7th Cir. 2012).

Here, Sgariglia alleged that Aires "had superior knowledge as to its ownership of the Condominium and whether it had executed a deed between itself and the Gonrings." (Dkt. 44, ¶ 55.) She further alleged that Aires "gained influence over [her] because she reposed such trust and confidence in Defendant AIRES and its counsel to provide truthful responses to her inquires." (*Id.* at ¶ 56.) But that is not what happened here. As mentioned above, Sgariglia's closing attorneys were highly experienced. Aires could not have been in a position of dominance over Sgariglia, nor was Sgariglia so weak or dependent on Aires. Moreover, superior knowledge as to immaterial facts is irrelevant and all of Wilkins's responses were in fact truthful. Both parties were represented by legal counsel during the entire sale of the Property. Hawbecker can testify that he "trusted" Wilkins all he wanted, but it is of no matter to this case. (Dkt. 205, ¶ 55.)

3. **Sgariglia failed to prove that she could not have discovered the facts she claims were withheld from her through reasonable inquiry.**

Even if the Court determines that Aires actively concealed the ownership of the Property or failed to disclose the whole truth, which Aires disputes, Sgariglia could have discovered it through reasonable inquiry, thereby freeing Aires from liability. To prove a fraudulent concealment claim, a plaintiff must show they could not have discovered the truth through reasonable inquiry. *Vandenberg v. Brunswick Corporation,* 2017 IL App (1st) 170181, ¶ 31.

Illinois courts have held that failure to volunteer information does not constitute fraud, and a party that does not avail herself of readily available public information cannot claim that she was the victim of fraud. *Ill. C. Gulf R.R. Co.*, *v. Dep't of Local Gov't,* 169 Ill. App. 3d 683,

689-90 (1st Dist. 1988); *Zanbetiz v. Trans World Airlines, Inc.*, 72 Ill. App. 2d 192, 201-02 (1st Dist. 1966). Mere silence as to ownership is not fraudulent misrepresentation. *Zanbetiz*, 72 Ill. App. 2d at 201-02; *see also Heider*, 245 Ill. App. 3d at 270 (court distinguished its case from *Zanbetiz* but recognized that mere silence as to property ownership was not fraud when such information was available via public record).

Here, Sgariglia knew before the closing that Aires was a third-party corporate relocation company that never occupied or managed the property. (Aires Stmt. Mat. Facts, ¶¶ 19, 29, 34, 46, 50, 52, 57; Dkt. 205, ¶¶ 38, 44, 53, 56, 57, 65-67.) On July 12, 2023, Aires gave Sgariglia a copy of title commitment. (Aires Stmt. Mat. Facts, ¶ 55.) That title commitment clearly states that the Gonrings, and not Aires, are the current title holders to the Property. (Aires Stmt. Mat. Facts, ¶ 55.) All Sgariglia or her attorneys had to do was read the commitment, which is far from an unreasonable inquiry.

But even if that was not enough, Sgariglia had other reasonable options that she failed to exercise. For instance, she could have asked Wilkins or the Gonrings who currently owned the property, or she could have run her own title search. (Aires Stmt. Mat. Facts, ¶¶ 64, 65.) None of the attorney letters from Sgariglia's counsel asked who owned the property. (Aires Stmt. Mat. Facts, ¶¶ 37, 43, 45, 47, 51, 53; Dkt. 205, ¶¶ 56, 65.) Sgariglia testified that no one told her she was prohibited from directly contacting the Gonrings. (Aires Stmt. Mat. Facts, ¶ 65.) Sgariglia's lawyers likewise testified that they could have contacted the Gonrings directly. (Aires Stmt. Mat. Facts, ¶ 63.) Furthermore, Sgariglia never proved that Aires told her that it was title owner of the property. If the identity of the title owner of the property was indeed material, as Sgariglia alleges, Sgariglia or her real estate attorney could have asked directly for that information, read it on the title commitment Aires produced, sought it from public records at the office of the Cook

County Recorder of Deeds, or ran her own title search. Sgariglia and her lawyers failed to make any of these reasonable inquires.

4. **Sgariglia failed to prove that she would have acted differently if she was aware of the supposed concealed material facts.**

Sgariglia must prove she would have acted differently had she known about the concealed information. *Vandenberg,* 2017 IL App (1st) 170181 at ¶ 31. Sgariglia alleged that she "relied upon Defendant AIRES' representation that it was the current owner and that The Gonrings (sic) were the prior owners, which caused her attorney to refrain from demanding direct communication with the actual owners of the Condominium." (Dkt. 44, ¶ 61.) While Sgariglia does not explicitly allege that her attorneys would have reached out to the Gonrings directly, assuming Sgariglia meant to allege as much, her proof is nonexistent.

Sgariglia never testified that is what they would have done differently. Sgariglia testified that neither she nor her real estate attorney were ever informed that they could not contact the Gonrings directly, contradicting her allegation that they were prevented from doing so. (Aires Stmt. Mat. Facts, ¶¶ 63–65.) Additionally, Sgariglia does not specify how she would have acted differently if she had known that the Gonrings were the actual title owners of the Property. Most tellingly, Langefeld, the attorney who called the Gonrings "the prior owner" and penned all but one of Sgariglia's attorney review letters, testified that he would not have done anything differently if he knew that the Gonrings were the current owners. (Aires Stmt. Mat. Facts, ¶ 68.)

The undisputed facts prove that Sgariglia did not meet her burden to show that she would have done anything differently had she known that the Gonrings were the current owners, which also means that this fact is immaterial. *See Fleury v. General Motors LLC*, 2023 WL 3792411, at *6 (N.D. Ill. 2023) (a fact is material if the buyer would have acted differently knowing the information).

> **5. Sgariglia failed to prove that her reliance on this "false belief" resulted in any injury**.

Any damages that Sgariglia suffered were the result of the Gonrings' alleged withholding of information, not from a question about title ownership. Even if Sgariglia could prove the other elements of her fraudulent concealment count, she failed to prove that she suffered any damages by relying on Aires's alleged concealment. Aires never could have given Sgariglia the information she claims caused the damages in this case. Understanding who owned the Property did not injure Sgariglia; she claims the water infiltration did. Aires never had any information on the condition of the Property and never could have had that information. Aires is a relocation company, which Sgariglia and her attorneys fully understood. Aires made that abundantly clear throughout the sales and closing processes. Sgariglia and her attorneys accepted Aires lack of knowledge of the Property many times over.

> **6. Sgariglia failed to prove that Aires was the Gonrings' agent.**

Sgariglia made a single conclusory allegation that Aires was an agent for the Gonrings and that Aires had a duty but failed to disclose that relationship.[2] (Dkt. 44, ¶ 51.) But she has offered no facts or other evidence to prove this allegation. In Illinois, the test to determine whether a principal-agent relationship exists is whether the alleged principal has the right to control the alleged agent, and whether the agent can affect the legal relationships of the principal. *Wilcosky v. Amazon.com, Inc.*, 517 F. Supp. 3d 751, 770 (N.D. Ill. 2021). An independent contractor is a person hired for a particular purpose or project, who is compensated on a project-by-project basis, and who exercises his own discretion over the manner and method of carrying

---

[2] Sgariglia appears to have abandoned this claim. She has produced no evidence or testimony in this case to support her allegation. Sgariglia's own motion for summary judgment (Dkt. 206) and statement of facts (Dkt. 205) do not mention a principal-agent relationship between Aires and the Gonrings, nor does she argue that she has proven such a relationship.

out the work. *Stewart v. Jones*, 318 Ill. App. 3d 552, 561 (2d Dist. 2001). An agent, on the other hand, is one whose actions are controlled by a principal. *Kirckruff v. Wisegarver*, 297 Ill. App. 3d 826, 830 (4th Dist. 1998).

Sgariglia failed to prove that Aires was an agent for the Gonrings during the sale of the Property. Likewise, Sgariglia fails to prove any facts that demonstrate a principal-agent relationship between the Gonrings and Aires. (Aires Stmt. Mat. Facts, ¶ 15.) Here, Aires entered into a contract with GFS, Nicholas Gonring's employer, not the Gonrings. (Aires Stmt. Mat. Facts, ¶ 6.) That contract clearly states that "The relationship between [GFS] and AIReS…is that of independent contractor and not that of principal and agent. (Aires Stmt. Mat. Facts, ¶ 7.)

But even if Sgariglia did prove that Aires was acting as the Gonrings' agent, which it was not, such a relationship between the defendants would necessarily defeat Sgariglia's fraudulent concealment claim against Aires. To prove her fraudulent concealment claim, Sgariglia must show that she would have acted differently had she known the information kept from her. Sgariglia's claim rests on the argument that she would have posed her questions about the condition of the property to the Gonrings directly. (Dkt. 44, ¶¶ 60, 61.) But, if Aires told Sgariglia that it was the Gonrings' agent (which it was not), Sgariglia could not have communicated with the Gonrings more easily. Instead, if Aires was acting as the Gonrings' agent, that would have further insulated the Gonrings from Sgariglia given the nature of the principal-agent relationship. Thus, by arguing that Aires hid the principal-agent relationship from her, Sgariglia, then, would have been free to contact the Gonrings directly during the closing period. In fact, however, Sgariglia and her attorneys chose not to contact the Gonrings. The Court should find that Aires was not the Gonrings' agent and that Aires did not fraudulently conceal any material facts related to this nonexistent principal-agent relationship.

**7. Sgariglia failed to prove that Aires concealed insurance claims from her.**

Sgariglia's allegations about Aires's lack of disclosure of insurance claim information plainly conflicts with the exhibits to her complaint. Furthermore, Sgariglia has offered no more evidence to prove this claim.[3] Sgariglia alleges several times that her attorney asked if there had been "any insurance claims within the last 5 years," implying that Sgariglia was seeking insurance claims on both the Property and the common areas of the condo building. (Aires Stmt. Mat. Facts, ¶¶ 49, 51; Dkt. 205, ¶¶ 56, 65.) But this allegation is false on its face. The full statement from Sgariglia's attorney was as follows: "Seller represents and warrants that the following are true and shall remain true at the time of closing: *Sellers have not made* any insurance claims within the last 5 years" (emphasis added). (Aires Stmt. Mat. Facts, ¶ 49.) The Gonrings had made no insurance claims within the five years before the sale.

In the case of a conflict between written exhibits and the allegations of a pleading, the exhibits control. *F.H. Prince & Co.*, 275 Ill. App. 3d 792, 797 (1st Dist. 1995). Sgariglia's attorney was clearly seeking information on any claims made by the Gonrings and not, as the Second Amended Complaint alleges, any and all insurance claims, including those made by the condo association. There is no reason to believe Sgariglia's attorney was seeking information on the condo association insurance claims when the question asked specifically about the insurance claims by the sellers, and Sgariglia failed to prove otherwise. Also, information about insurance claims on the entire building would have to come from the condo association.

Sgariglia also failed to prove and cannot prove that Aires intended to induce Sgariglia into a false belief about insurance claim.[4] Likewise, Sgariglia also failed to prove if or how she

---

[3] Like her agency claim, Sgariglia seems to have also abandoned her disclosure of insurance claim information argument. Indeed, Sgariglia does not argue this point in her own motion for summary judgment (Dkt. 206).
[4] Sgariglia did not depose any defendant in this case, nor did she depose Aires's closing attorney, and so there is no testimony about Aires's "intent."

was denied access to this information or that Sgariglia could not have discovered this information through her own reasonable inquiry. There is no evidence that Aires instructed Sgariglia not to contact the Gonrings directly or that all communications regarding the condo association must go through Aires's attorney. Sgariglia failed to prove and cannot prove that Aires prevented her from contacting the condo association. In fact, Sgariglia had access to the condo association's 22.1 Disclosure Statement, the name and contact information of the condo association board president, and the name and contact information of the condo association's insurance agent. (Aires Stmt. Mat. Facts, ¶ 36.) She could have easily, and without impediment from Aires, inquired about any previous condo association insurance claims from sources that would actually have that information. As Sgariglia was well aware throughout the process, Aires is a third-party corporate relocation company, it never occupied the property, and it neither was requested to provide nor had information regarding common area insurance claims. (Aires Stmt. Mat. Facts, ¶¶ 39, 46, 50, 52; Dkt. 205, ¶¶ 57, 66.)

      Aires did, however, give Sgariglia's attorney the information she actually requested: "Seller reports that the homeowners made no claims against their homeowner's insurance within the last 5 years." (Aires Stmt. Mat. Facts, ¶ 52.) A fraudulent concealment claim requires that a defendant first conceal material information. Sgariglia has failed to prove and cannot prove that Aires concealed information about the Gonrings' insurance claims on the Property or any other elements of a fraudulent concealment claim. The Court should find that Sgariglia failed to prove that Aires fraudulently concealed any material fact related to insurance claims on the Property.

      WHEREFORE, Aires requests that this Court grant its Motion for Summary Judgment and dismiss Sgariglia's claim for fraudulent concealment against Aires.

Date: July 28, 2023							Respectfully submitted,

									American International Relocation Solutions, LLC


									/s/ Arthur J. McColgan

									Arthur J. McColgan
									Matthew W. Casey
									Walker Wilcox Matousek LLP
									One N. Franklin Street, Suite 3200
									Chicago, IL 60606
									amccolgan@walkerwilcox.com
									mcasey@walkerwilcox.com
									*Attorneys for American International Relocation Solutions, LLC*

**Certificate of Service**

I hereby certify that on July 28, 2023, a copy of the foregoing document was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Valerie Hosek