**In the United States District Court
for the Northern District of Illinois
Eastern Division**

| | |
|---|---|
| Melinda Sgariglia, | |
| Plaintiff, | Case No.: 1:19-cv-05684 |
| vs. | Honorable Robert W. Gettleman |
| American International Relocation Solutions, LLC, et al., | Honorable Gabriel A. Fuentes |
| Defendants. | |

**Defendant American International Relocation Solutions, LLC's
LR. 56.1 Statement of Material Undisputed Facts**

1.      Plaintiff, Melinda Sgariglia, is a citizen of Illinois and resides in Cook County, Illinois. (Dkt. 44, ¶ 1.)

2.      Sgariglia owns a condominium located at 2726 West Cortez Street, Unit 1, Chicago, Illinois 60622 (the "Condo"). (Dkt. 44, ¶ 1.)

3.      Defendant, American International Relocation Solutions, LLC d/b/a Aires ("Aires"), is a limited liability company headquartered at 6 Penn Center West, Suite 200, Pittsburgh, Pennsylvania 15276. (Dkt. 117, ¶ 2.)

4.      Defendants Nicholas Gonring and Kelsey Gonring ("the Gonrings") are the former owners of the Condo. (Dkt. 44, ¶ 3.)

5.      The Gonrings owned the Condo from May 5, 2016 until July 25, 2018. (Dkt. 91-1, ¶ 2; Dkt. 91-2, ¶ 2; Ex. 1.)

6.      Aires contracted  with Gordon Food Service, Inc. ("Gordon Foods") on September 30, 2015 to "provide certain services to [Gordon Foods] Employees and their families in connection with the relocation of its employees." (Ex. 2, ¶ I.A.)

7.      Per their contract, the relationship between Aires and Gordon Foods is "not that of principal or agent." (Ex. 2, ¶ 6.)

8.      Through Gordon Foods, Aires provided relocation services for the Gonrings' move to Michigan and facilitated the sale of the Condo as part of the benefits provided to Nicholas Gonring by his employer, Gordon Foods. (Dkt. 91-1, ¶¶ 18-19; Ex. 3.)

9.      Aires never occupied the Condo. (Ex. 4.)

10.     Thomas Hawbecker and Kirk Langefeld are attorneys that represented Sgariglia during her purchase of the Condo from the Gonrings. (Ex. 5 at 13:4-9; Ex. 6 at 14:22-24.)

11.     Hawbecker testified that he has done thousands of real estate closings over his career and that hundreds of them were with relocations companies. (Ex. 6 at 10:18-24, 11:1-6.)

12.     Hawbecker testified that the overall nature of the transaction is the same with relocation companies. (Ex. 6 at 12:6-12.)

13.     Langefeld testified that he has done approximately five thousand real estate closings over his career and that approximately one hundred of them were with relocation companies. (Ex. 5 at 10:13-17.)

14.     Amanda Flucker is an agent for Aires who was assigned to work on Nicholas Gonring's relocation. (Ex. 7.)

15.     Sarah Wilkins is an attorney who represented Aires during the sale of the Condo. (Ex. 7.)

16.     On or around May 18, 2018, the Gonrings completed an Exclusive Authorization and Right To Sell/Lease agreement with Coldwell Banker Realty. (Ex. 8.)

17.     On or around May 21, 2018, the Gonrings completed and signed an Illinois Realtors Residential Real Property Disclosure Form ("Disclosure Form") as required under the Residential Real Property Disclosure Act. 765 ILCS 77/35. (Ex. 9.)

18.      The Disclosure Form requested information only with regard to the Unit and not the common elements of 2726 West Cortez Street, Chicago, IL 60622. (Ex. 10).

19.     The Disclosure Form identifies the Gonrings as the "Seller" of the Condo. (Ex. 9.)

20.     In the Disclosure Form, the Gonrings indicate that they were not aware of "leaks or material defects in the roof, ceilings, or chimney" at the Condo. (Ex. 9.)

21.     In the Disclosure Form, the Gonrings indicate that they were not aware of "material defects in the walls, windows, doors, or floors" at the Condo. (Ex. 9.)

22.     On June 7, 2018, Sgariglia signed the Disclosure Form. (Ex. 9.)

23.     On May 27, 2018, Sgariglia signed the Condominium Real Estate Purchase and Sale Contract (the "Contract"). (Ex. 11.)

24.     On June 8, 2018, Amanda Flucker, as an agent for Aires, signed the Contract. (Ex. 11.)

25.     Paragraph 8 of the Contract states the following:

**Closing.** Buyer shall deliver the balance of the Purchase Price (less the amount of Earnest Money, Closing Cost Credit, plus or minus preparations and escrow fees, if any) to Seller and Seller shall execute and deliver the Deed (as defined below) to buyer ("***Closing***"). Closing shall occur on or prior to July 25, 2018 at a time and location mutually agreed upon by Parties ("***Closing Date***"). Seller must provide Buyer with good and merchantable title prior to Closing.

(Ex. 11, ¶ 8.)

26.     Paragraph 10 of the Contract defines the Deed, as referenced in Paragraph 8, and states the following:

**Deed.** At closing, Seller shall execute and deliver to Buyer, or cause to be executed and delivered to Buyer, a recordable warranty deed ("***Deed***") with release of homestead rights (or other appropriate deed if title is in trust or in an estate), or Articles of Agreement, if applicable, subject only to the following, if any: covenants, conditions, and restrictions of record; public and utility easements; acts done by or suffered through Buyer; all special governmental taxes or assessments confirmed and unconfirmed; homeowners or condominium association declarations and bylaws, if any; and general real estate taxes not yet due and payable at the time of closing.

(Ex. 11, ¶ 10.)

27. The Contract included an Attorney Modification provision and an Inspection provision. (Ex. 11, ¶¶ 15, 16.)

28. On or around May 30, 2018, the Gonrings signed a Sellers Property Disclosure Statement ("Sellers Statement"). (Ex. 10, Ex. 12.)

29. The Sellers Statement again identifies the Gonrings as the "Seller" of the Condo. (Ex. 12.)

30. In the Sellers Statement, the Gonrings indicate that they were aware of "past or present water leakage in the house or other structures." The Gonrings noted "Unit 3 had leaks on west facing windows—HOA sealed building to resolve Unit 3 leak." (Ex. 12.)

31. In the Sellers Statement, the Gonrings indicate that they were aware of "any shared or common areas…or maintenance agreements." (Ex. 12.) Here, the Gonrings noted "tuckpointing & sealing of building exterior." (Ex. 12.)

32. On June 7, 2018, Sgariglia initialed each page of the Sellers Statement and signed it at the bottom. (Ex. 12.)

33. On June 6, 2018, Amanda Flucker, on behalf of Aires, also completed and signed an Illinois Realtors Residential Real Property Disclosure Form ("Aires Disclosure Form"). (Ex. 4.)

4

34.     The Aires Disclosure Form included large Xs across the form with a statement that reads, "We are a relocation company, and as such, have never occupied this property. We make no guarantee, warranty, or representation about the condition of this property. American Internal Relocation Solutions, LLC." (Ex. 4.)

35.     Sgariglia signed and initialed each page of the Aires Disclosure Form on June 7, 2018. (Ex. 4.)

36.     Sgariglia also received a Disclosure Statement completed by the condominium association, which included the name and contact information of the condo association board president, and the name and contact information of the condo association's insurance agent. (Ex. 13 at 123:24, 124:1-4.)

37.     On June 14, 2018, Hawbecker sent an attorney modification letter to Wilkins. (Ex. 14.) In this letter, Hawbecker proposed modifications to the Contract. (Ex. 14.) In Paragraph 8(e), Sgariglia, through her attorney, requested: "Please verify that the Condo Association has not experienced any instances of water (interior or exterior) leaking in the Property and/or any water damage during Seller's ownership of the Property. If there have been any such occurrences, please provide dates, locations, damage and any repairs made." (Ex. 14.) The letter never refers to any "prior owner." (Ex. 14.)

38.     On June 18, 2018, Wilkins responded to Hawbecker's attorney modification letter. In that letter, she identified herself as the attorney for American International Relocation Solutions, LLC. (Ex. 15, p. 1) She never identifies Aires as the owner of the property. (Ex. 15.)

39.     In that same letter and in response to Paragraph 8(e), Wilkins states:

> As a third-party corporate relocation company, Seller is unable to make verifications regarding whether the Property has experienced water leaking or water damage. However, Seller agrees to abide by the terms of the "Buyer's Duty to Inspect/Test" section of the Aires addendum with respect to leaks,

5

seepage, or water infiltration of the Property, as Seller would have no
knowledge of such matters unless raised during the home inspection process.

(Ex. 15, p. 2.)

40.     In the Home Inspection Response Letter from Wilkins to Hawbecker dated June

18, 2018 and revised on June 19, 2018, Wilkins again states that she represents "the Seller,

American International Relocation Solutions, LLC." (Ex. 16.)

41.     In the Home Inspection Response Letter, Wilkins made the following statements:

Seller Reports that the Property's HVAC has never been serviced by the
homeowners.

With respect to the flickering lights issue, as the homeowners report, the
flickering of one light in the main living space is not the result of a building issue.

(Ex. 16, ¶¶ 2, 4.)

42.     Nowhere in the Home Inspection Response Letter does Wilkins mention a "prior

homeowner." (Ex. 16.)

43.     On June 22, 2018, Langefeld responded to the Home Inspection Response Letter.

In response to Paragraphs 2 and 4, Langefeld wrote "Ok."  (Ex. 17.)

44.     Plaintiff's closing attorney, Hawbecker, stated that Aires saying it could not

provide the information because it was a relocation company was "not surprising" and "a typical

response that we would receive with a relocation company." (Ex. 6, at 20:12-24, 21:1-6.)

45.     On June 22, 2018, Sgariglia, through her attorney, Langefeld, responded to

Wilkin's letter. Regarding Paragraph 8(e), Sgariglia asked: "Please confirm the same with the

prior owner as the seller has direct contact with the prior owner." (Ex. 18.)

46.     On July 2, 2018, Wilkins responded to Langefeld. Wilkins's letter stated:

With respect to Item 8(e), again, as a third-party corporate relocation
company, Seller is unable to make verifications regarding whether the
Property has experienced water leakage or water damage. However, Seller

> agrees to abide by the terms of the "Buyer's Duty to Inspect/Test" section of the Aires addendum with respect to possible leaks, seepage, or water infiltration of the Property, as Seller would have no knowledge of such matters unless raised during the home inspection process when the information reported in the Residential Real Property Disclosure Report or other homeowner provided disclosures makes no mention of water infiltration issues within the Property.

Second Amended Compl. (Doc. 44, ¶ 41; Ex. 18.)

47.     With respect to Item 8(e), Sgariglia, through her attorney, Langefeld, responded "Ok." (Ex. 18; Ex. 13 at 67:4-6.)

48.     Langefeld has never talked to the homeowners in a relocation closing, despite receiving similar responses in other closings involving relocation companies. (Ex. 5, at 29:8-13.)

49.     In the same June 14, 2018 letter, Sgariglia, through her attorney, Hawbecker, requested the following under paragraph 9, subparagraph a: "Seller represents and warrants that the following are true and shall remain true at the time of closing: Sellers have not made any insurance claims within the last 5 years." (Ex. 14.)

50.     On June 18, 2018, Wilkins responded:

> As a third-party corporate relocation company that has never occupied the Property, Seller is unable to make representations or warranties regarding whether insurance claims have been made against the Property, as Seller would have no knowledge of such matters. (Ex. 15.)

51.     Sgariglia's attorney responded with the following: Please confirm the same with the prior owner as the seller has direct contact with the prior owner. (Ex. 18.)

52.     On July 2, 2018, Wilkins responded:

> With respect to item 9(a), Seller reports that the homeowners made no claims against their homeowner's insurance within the last 5 years. As a third-party corporate relocation company that has never occupied the Property, Seller is unable to make representations or warranties regarding whether insurance claims have been made against the Property, as Seller would have no knowledge of such matters. (Ex. 19.)

53.     Again, Sgariglia, through her attorney, responded "Ok." (Ex. 20.)

7

54.     Aires also reported multiple times that no work was done on the property without necessary permits and that the Property was not subject to any pending complaints, violations, or the like. (Ex. 15, ¶¶ 9(d), 9(e); Ex. 1, ¶ 9.)

55.     On July 12, 2018, Wilkins sent Hawbecker a Title Commitment dated June 13, 2018. (Ex. 21.) In that Title Commitment, the Title was vested in Nicholas Gonring and Kelsey Gonring, husband and wife, as Tenants By The Entirety. (Ex. 22, p. 5.)

56.     On July 12, Hawbecker forwarded a copy of the title commitment to Annie Gibson at Mutual Federal Bank (Ex. 23.)

57.     Aires and Sgariglia both executed an Addendum to Purchase and Sale Agreement dated as of June 6, 2020, which listed multiple disclosures completed by "Nicholas Gonring". (Ex. 24.)

58.     Sgariglia requested three extensions to obtain a loan commitment. (Ex. 25, Ex. 26, Ex. 27.) The first request was sent on July 6, 2018. (Ex. 25.)

59.     On July 23, 2018, Langefeld requested that Terry Wilkins, a paralegal for Sarah Wilkins, confirm what personal property would be left in the Condo. (Ex. 28.) Langefeld provided a list and requested that Terry "forward to the owners." (Ex. 28.)

60.     The same day, Terry Wilkins explained that the Wilkins office "would not have contact with the homeowners. BUT we will forward the List to AIRES to have them forward same." (Ex. 28.) Terry Wilkins further explained the "List has been forwarded on to Aires to be sent to the homeowner. For Aires transactions, our office has no contact with a Transferee." (Ex. 28.)

61.     On July 24, 2018, Langefeld asked the Wilkins law office if they were able to confirm that all the items Sgariglia expected to be left at the Condo were indeed left. (Ex. 28.)

Sarah Wilkins responded "No. Aires was not a party to that separate agreement…despite attempts to loop them in. Therefore, my office cannot confirm anything about the furniture because we represent Aires and Aires only. Perhaps the agents can shed more light." (Ex. 28.)

62.    On July 24, 2018, Arianna Listecki, a paralegal at Hawbecker & Garver, LLC, and Langefeld both emailed John Gorr, president of the homeowner's association, directly. (Ex. 29.)

63.    Neither Langefeld nor Hawbecker ever contacted the Gonrings or attempted to contact them. (Ex 5 at 28:12-14; 28:20-24; 29:1-7, Ex. 6 at 48:3-12.) Langefeld also never asked if the Gonrings were represented by counsel. (Ex. 5 at 29:2-4.) Both attorneys testified that they could have contacted the Gonrings. (Ex 5 at 28:20-24; 29:1-7; Ex. 6 at 48:10-12, 63:1-20.)

64.    Sgariglia also never contacted or attempted to contact the Gonrings, despite knowing the Gonrings lived in the building during the sale process. (Ex. 13 at 172:16-24; 173: 1-10.)

65.    Sgariglia was never told by anyone that she could not contact the Gonrings. (Ex. 13 at 175:3-7.)

66.    On July 25, 2018, Sgariglia signed a Hold Harmless Agreement in which Sgariglia "does release, acquit, and forever discharge [Aires], Nicholas and Kelsey Gonring" from any and all claims on account of an agreement to accept a $3,000 credit at closing. (Ex. 30.)

67.    On July 25, 2018, Sgariglia took possession of the deed to the Condo. (Ex. 13 at 23:12-15; Dkt. 44 ¶ 19.)

68.    When asked at his deposition if he had known that the Gonrings were the owners, would he have acted differently, Langefeld testified "I would say no." (Ex. 5, at 35:17-23.)

Date: July 28, 2023

Respectfully submitted,

American International Relocation Solutions, LLC


/s/ Arthur J. McColgan

Arthur J. McColgan
Matthew W. Casey
Walker Wilcox Matousek LLP
One N. Franklin Street, Suite 3200
Chicago, IL 60606
amccolgan@walkerwilcox.com
mcasey@walkerwilcox.com
*Attorneys for American International Relocation Solutions, LLC*

**Certificate of Service**

I hereby certify that on July 28, 2023, a copy of the foregoing document was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Valerie Hosek