# Exhibit 8




**COLDWELL BANKER RESIDENTIAL BROKERAGE**
**EXCLUSIVE AUTHORIZATION & RIGHT TO SELL/LEASE AGREEMENT**

This is an Agreement between <u>Nicholas Gonring and Kelsey Gonring</u> ("Seller") and Coldwell Banker Residential Real Estate LLC ("Broker") (collectively, the "Parties"), concerning the Property located at

<u>2726 West Cortez Street Unit 1</u>
Street                              Unit #                              Garage #
<u>Chicago, IL 60622</u>                                       <u>Cook County</u>               (the "Property").
City                State        Zip                  County

**TERMS AND CONDITIONS:** This Agreement commences at 12:01 A.M. on <u>05/21/2018</u>,
20<u>18</u> and terminates at 11:59 P.M. on <u>08/21/2018</u> ("Term" of the Agreement). In consideration of the following provisions and of Broker's efforts to procure an acquiring party for the Property, Seller gives Broker the exclusive right to market, sell, option or exchange the Property to qualified purchasers and to share the Property with participants of any multiple listing service ("MLS") in which the Broker is a member in accordance with the applicable rules and regulations of such service as set forth below. This Agreement may be cancelled on or after 180 days by 30 days advanced written notice of either Party to the other.

Property will be marketed at $<u>499,900</u>           or annual rental of $ _____

Possession <u>Closing</u>

If a lease, indicate terms of lease: _____

_____

Permanent Index No. (Tax ID #)<u>16014080551001</u>

Lot Dimensions (approximately) _____

Seller represents that the most recent ascertainable tax bill for the year 20<u>16</u> is $<u>6,145</u>, which reflects the following exemptions: (strike inapplicable) homeowner, senior citizen, homestead, or none.

In this document, all references to "Seller" include Lessor/Landlord and all references to "Buyer" include Lessee/Tenant where appropriate.

Seller shall pay for all assessments, regular or special, due or levied prior to closing. The current monthly assessment is $<u>215</u>, which includes: <u>Parking, Common Insurance, Scavenger</u>
_____.

In the event that the Property is a condominium, the Seller shall comply with all requirements as set forth in the Illinois Condominium Property Act.

**COMMISSION:** For the sale of the Property or execution of an offer to exchange, Seller shall pay to Broker **6% (six percent)** of the sale price and **$495.00** as a total commission. Broker shall be the exclusive leasing agent of the Seller. Upon execution of a lease for the Property, Seller shall pay Broker a total commission of ~~$495.00~~, plus an amount equal to one month's rent for the first year and a half month's rent for each year thereafter. If the Property is leased, and the Lessee subsequently purchases the Property during the lease or any renewal, or within 365 days after the termination of a lease executed or secured during the Term of this Agreement, or any renewal thereof ("the Protection Period"), Broker shall, in addition to the Commission

Page 1 of 6

CBRB /Form #1101NWR5 – Rev 10/2016

dotloop signature verification: www.dotloop.com/my/verification/DL-348004248-7-S2Y1

for leasing the Property, have earned and be paid the Commission for the sale of the Property as described above.

The Commission is payable if Broker, Seller, or any other person sells, gifts or exchanges the Property during the Term of this Agreement; or if the Property is optioned during the Term of this Agreement and the option is subsequently exercised; or if the Property is leased during the Term of this Agreement and lessee subsequently purchases the Property; or if the Property is sold directly or indirectly within six (6) months (180 days) ("Protection Period") after termination of this Agreement to a buyer to whom it was offered, shown or introduced during the Term of this Agreement. However, Seller is not obligated to pay such Commission if a valid listing agreement is entered into during the Protection Period with another licensed Illinois Broker. This Protection Period will survive any subsequent listing agreement by another Broker which terminates for any reason.

The Commission is earned upon the execution of a sales contract, Articles of Agreements, lease or lease with purchase option, by the Seller and Buyer. The Commission is to be paid at the time of closing of any sale or exchange; at the execution of any lease, initial closing of Articles of Agreement, at the time an option is exercised, or upon a default as discussed below. If Seller fails to pay the Commission, Seller is responsible for all costs and expenses, including reasonable attorney's fees incurred by Broker to collect the Commission.

Seller authorizes Broker to utilize other brokers as cooperating brokers in completing Broker's obligations, and to share its Commission with such cooperating brokers for any such assistance provided as Broker deems appropriate.

**COOPERATING COMMISSION:** Seller acknowledges that Broker will share the Commission with cooperating Brokers, if any.

**DESIGNATED AGENT/LICENSEE:** Broker designates Garrett Luehrs ("Seller's Designated Agent/Licensee"), a sales associate(s) affiliated with Broker, as the only legal agent(s) of the Seller. Broker reserves the right to name additional designated agents when Broker determines it is necessary. If additional designated agents are named, Seller shall be informed in writing within a reasonable time. Seller acknowledges that Seller's Designated Agent may from time to time have another sales associate, who is not an agent of the Seller, sit an open house of the Property or provide similar support in the marketing of the property. Seller understands and agrees that this Agreement is a contract for Broker to market the Property, and that Seller's Designated Agent will be primarily responsible for the direct marketing and sale of the Property.

**NON-DISCRIMINATION:** THE PARTIES UNDERSTAND AND AGREE THAT IT IS ILLEGAL FOR EITHER OF THE PARTIES TO REFUSE TO DISPLAY OR SELL SELLER'S PROPERTY TO ANY PERSON ON THE BASIS OF RACE, COLOR, RELIGION, NATIONAL ORIGIN, SEX, ANCESTRY, AGE, MARITAL STATUS, PHYSICAL OR MENTAL HANDICAP, MILITARY STATUS, SEXUAL ORIENTATION, UNFAVORABLE DISCHARGE FROM MILITARY SERVICE, FAMILIAL STATUS, ORDER OF PROTECTION STATUS OR ANY OTHER CLASS PROTECTED BY ARTICLE 3 OF THE ILLINOIS HUMAN RIGHTS ACT. THE PARTIES AGREE TO COMPLY WITH ALL APPLICABLE FEDERAL, STATE AND LOCAL FAIR HOUSING LAWS.

**PERSONAL PROPERTY:** The following is the personal property, if any, which is now located on the Property: ventilating and central air conditioning equipment, heating, lighting and plumbing fixtures, cabinets, planted vegetation, screens, storm windows and doors, drapery rods, blinds, curtain rods, tacked down carpeting, garage door opener(s) and transmitter(s) #(1_____), and the following items:_____

The following is personal property, which is now located on the Property, but is excluded from the sale of the Property:_____
_____.

If Personal Property is being sold, a bill of sale shall be furnished at closing.

dotloop signature verification: www.dotloop.com/my/verification/DL-348004248-7-S2Y1

**BROKER RESPONSIBILITIES:**
    1. Broker shall market the Property and disseminate information about the Property to the MLS of which Broker is a participant in accordance with the applicable rules and regulations of that service within 48 hours from the date of this Agreement. If initialed herein, Seller has chosen the delay exposure of the Property to the MLS for 4 days, [NY 05/18/18] / [KY 05/18/18]. Seller authorizes placement of the street address of the Property on any electronic medium and/or Internet advertising medium or home page to which Broker may subscribe.
    2. Seller understands that any contribution of funds by Broker to a Cooperating Agent shall not create an agent relationship between the Buyer's Cooperating Agent and Broker or Seller.
    3. Broker may hold earnest money deposits according to the law of the State of Illinois and the terms of any sales contract or any other agreement between Seller and Buyer, and disburse those funds in accordance with the provisions of such sales contract, agreement or law.
    4. Through its Designated Agent, Broker shall perform the following minimal services: accept delivery of and present offers and counteroffers to buy, sell or lease the Property or the property the Seller seeks to purchase or lease; assist Seller in developing, communicating, negotiating, and presenting offers, counteroffers, and notices that relate to the offers and counteroffers until a lease or purchase agreement is signed and all contingencies are satisfied or waived; and answer Sellers' questions relating to the offers, counteroffers, notices and contingencies unless otherwise prohibited by law.

**SELLER RESPONSIBILITIES**:
    1. Cooperate fully with Broker, refer all inquiries to Broker, provide access to Property for showings, and conduct all negotiations through Broker.
    2. Execute or cause to be executed a sales contract, Articles of Agreements, lease or lease with purchase option, upon agreed terms and conditions.
    3. Complete all actions necessary to complete the closing of the transaction, including but not limited to, furnishing a commitment for title insurance in the amount of the purchase price, furnishing a current survey, executing documents of conveyance and other usual and customary forms, declarations, and closing statements which may include probations for general and special taxes, assessments and association, homeowners and association dues, if any.
    . 4. Authorize Broker to report the sale price, type of financing, and other appropriate statistical information to any MLS to which the Property has been submitted in accordance with that service's rules and regulations.
    5. Indemnify, save and hold the Broker and Agents harmless from all claims, disputes, litigations, judgments and costs, including reasonable attorney's fees arising from any misrepresentations made by Seller, incorrect information supplied by Seller and latent defects and latent material adverse facts with the Property which the Seller fails to disclose.
    6. Damages for any fault or breach of this contract on the part of the Broker and/or Designated Agent shall be limited to the amount of the Commission that the Broker actually received for the transaction from which the claim arises. In no regard shall Seller receive any exemplary damage.
    7. Seller shall complete, simultaneously with this Agreement, the RESIDENTIAL REAL PROPERTY DISCLOSURE REPORT, if required by law, and agrees to respond completely and truthfully to all questions included therein.
    8. If the Property is a condominium, townhome, or any other property subject to a homeowner's association, the Seller will provide Buyer with the following documents at the time of contracting, if applicable: Declaration of Condominium or Declaration of Covenants, Conditions and Easements, current budget, bylaws, financial statements, and any rules and regulations in effect.

**DEFAULT:** SELLER UNDERSTANDS AND AGREES THAT, IN THE EVENT OF A DEFAULT OF ANY AGREEMENT BY A BUYER WITH THE SELLER, BUYER'S EARNEST MONEY, LESS BROKER'S EXPENSES AND COMMISSION, SHALL BE PAID TO THE SELLER. IF SELLER DEFAULTS, THE EARNEST MONEY, AT THE OPTION OF BUYER, SHALL BE REFUNDED TO BUYER, BUT SUCH REFUNDING SHALL NOT RELEASE SELLER FROM THE OBLIGATION OF THIS AGREEMENT OR FROM THE OBLIGATION TO PAY THE COMMISSION AS SET FORTH IN THIS AGREEMENT. SELLER AGREES THAT, IF A DISPUTE BETWEEN SELLER AND ANY BUYER ARISES AS TO WHETHER A DEFAULT HAS OCCURRED, BROKER MAY, IF ACTING AS ESCROWEE OF EARNEST MONEY PURSUANT TO A CONTRACT BETWEEN SELLER AND A BUYER, BUT IS NOT REQUIRED TO, INITIATE AN ACTION IN THE NATURE

dotloop signature verification: www.dotloop.com/my/verification/DL-348004248-7-S2Y1

OF INTERPLEADER AND DEPOSIT ALL DISPUTED ESCROWED FUNDS WITH THE CLERK OF THE CIRCUIT COURT. IN SUCH EVENT, SELLER AGREES TO HOLD BROKER HARMLESS AND INDEMNIFY BROKER FROM ANY CLAIMS, DEMANDS OR JUDGMENTS OF A BUYER, INCLUDING ALL REASONABLE ATTORNEY'S FEES AND COSTS INCURRED TO DEFEND ANY ACTION BROUGHT BY A BUYER OR TO FILE AN INTERPLEADER ACTION OR SIMILAR ACTION.

**DUAL AGENT:** Seller's Designated Agent may undertake a dual representation (represent both the Seller/Landlord and the buyer/tenant) for the sale or lease of the Property. Seller acknowledges he/she is informed of the possibility of this type of representation. BEFORE INITIALLING THE DUAL AGENCY CONSENT PROVISION BELOW, PLEASE READ THE FOLLOWING:

Representing more than one party to a transaction presents a conflict of interest since both buyers and sellers may rely upon Designated Agent's advice and the buyers and sellers respective interests may be adverse to each other. Designated Agent will undertake this representation only with the written consent of ALL clients in the transaction. Any agreement between the client as to a final contract price and other terms is a result of negotiations between the clients acting in their own best interest and on their own behalf. Seller acknowledges that Designated Agent explained the implications of dual representations, including the risks involved, and understands that Seller has been advised to seek independent advice from advisors or attorneys before signing any document in this transaction.

WHAT A LICENSEE CAN DO FOR THE CLIENTS WHEN ACTING AS A DUAL AGENT:
1. Treat all clients honestly.
2. Provide information about the Property to the buyer or tenant.
3. Disclose all latent material defects in the Property that are known to Licensee.
4. Disclose financial qualification of the buyer or tenant to the Seller or landlord.
5. Explain real estate terms.
6. Help the buyer or tenant to arrange for property inspections.
7. Explain closing costs and procedures.
8. Help the buyer compare financing alternatives.
9. Provide information about comparable properties that have sold so both clients may make educated decisions on what price to accept or offer.

WHAT LICENSEE CANNOT DISCLOSE TO CLIENTS WHEN ACTING AS DUAL AGENT:
1. Confidential information that Licensee may know about the clients, without the client's permission.
2. The price or terms the Seller or landlord will take other than the listing price without permission of the Seller or Landlord.
3. The price or terms the buyer or tenant is willing to pay without permission of the buyer or tenant.
4. A recommended or suggested price or terms the buyer or tenant should offer.
5. A recommended or suggested price or terms the Seller or landlord should counter with or accept.

If either client is uncomfortable with this dual representation and the agent acting as a dual agent, please let Licensee know. Seller acknowledges that he/she has been advised as to alternative agency relationship available through the Broker.

**DUAL AGENCY CONSENT:** The concept of dual agency is explained above. As part of that explanation, Seller has been cautioned that when a Licensee acts as a dual agent, the dual agency creates an inherent conflict of interest. By initialing, Seller acknowledges that he/ she has read and understands the dual agency provision above and voluntarily waives the conflict and consents to the Licensee acting as a Dual Agent (that is, representing BOTH the Seller or Landlord and the buyer or tenant) should that become necessary. (Initials)



_____ /  _____
05/18/18      05/18/18
2:35PM CDT    10:41AM CDT

**MISCELLANEOUS:** The Seller understands and agrees that Broker may enter into agreements with other prospective buyers and sellers as legal agents of those buyers and sellers.

Page **4** of **6**

CBRB /Form #1101NWR5 – Rev 10/2016

It is mutually understood and agreed that, by law, Broker is only permitted to prepare a contract of sale or lease. Seller agrees to furnish or have his attorney furnish all legal documents necessary to close the transaction.

Broker's sole duty is to affect a sale of the Property. Broker is not responsible for the custody of the Property, its management, maintenance, upkeep or repair; nor is Broker responsible for the status or condition of the Property or any appliances contained therein.

It is mutually understood and agreed that no alterations in the terms of this Agreement, including but not limited to the amount of the Commission or time of payment, shall be valid and binding unless made in writing and signed by the parties. This Agreement shall take precedence over any other listing Agreement (whether exclusive or not) which is prior in time or which has expired.

Seller acknowledges that all advertising materials, including photographs, art and design work, including logos and brochures created by Broker and/or Seller's Designated Agent are and shall remain the property of the Broker to be used by them in their sole discretion.

**EARLY CANCELLATION:** If Seller cancels this Agreement or renders the Property unavailable, unless mutually agreed to in writing by the Broker and the Seller, the Seller shall pay Broker, within four (4) business days of Broker's written demand, reimbursement of out-of-pocket expenses in an amount not less than **$400,** including but not limited to: marketing, advertising, office expenses, multiple listing services fees, printing, etc. However, such payment shall not release the Seller of his/her obligations under this Agreement to pay the Commission.

**LOCKBOX:** Seller (initial one) DOES _____ / _____ DOES NOT [NG 05/18/18] [KG 05/18/18] authorize Broker and its agents to place an electronic or combination lockbox on the Property in accordance with the terms and conditions of this Agreement, for the purpose of keeping a key to the Property for access by cooperating real estate agents.

**LOCK BOX TERMS & PROVISIONS**: Seller shall hold Broker, its agents, and any multiple listing service of which Broker is a participant, harmless from any and all liability, claims, judgments, obligations, or demands against Broker and/or agent as a result of the authorization to use a lockbox, including but not limited to any and all liabilities and costs, including reasonable attorney's fees incurred by Broker and/or agents as a result of such authorization. Broker advised Seller on the safeguarding or removal of valuables from the Property and the need to obtain personal property insurance through the Seller's insurance company. Broker is not the insurer of any loss of Seller's personal property. If the Property is leased, Seller acknowledges that he has notified and advised the tenant/occupant of the lockbox and the provisions of this paragraph concerning safeguarding personal property and that the tenant/occupant agrees to the foregoing terms and provisions.

**HOME WARRANTY:**
☐Yes (initial one), _____/_____Seller agrees to provide a limited home warranty program from _____ at a charge of $_____. Seller acknowledges that a home warranty program is a limited warranty with a deductible.
☒No (initial one), [NG 05/18/18 2:35PM CDT] / [KG 05/18/18 10:41AM CDT] Seller will not provide a home warranty.

**TITLE INSURANCE SERVICES:** By initialing below, Seller agrees that he/she is ordering title insurance and related title services in connection with the above described property from Broker's affiliated business, Burnet Title LLC. Seller agrees and directs Broker to provide Burnet Title LLC with a copy of this Agreement to facilitate Burnet Title's processing of Sellers' title order. Burnet Title LLC is an affiliated business of Broker. Included with this contract is the Affiliated Business Disclosure Statement required under the Real Estate Settlement Procedures Act ("RESPA"). [NG 05/18/18 2:35PM CDT] [KG 05/18/18 10:41AM CDT] Seller(s) initials

**RIDERS, TERMS AND GENERAL CONDITIONS:** This Agreement is subject to the Terms and Conditions on the following page(s) and the following attached Rider(s) labeled: _____.
Such Riders, and Terms and Conditions are made a part of this Agreement.

Page **5** of **6**

CBRB /Form #1101NWR5 – Rev 10/2016

dotloop signature verification: www.dotloop.com/my/verification/DL-348004248-7-S2Y1

Seller warrants that he/she has full authority to execute this Agreement, to bind all parties who have an ownership interest in this Property, and to deal with and on behalf of the Property, including providing evidence of good, insurable and merchantable title. Seller warrants that any prior brokerage agreements have been cancelled, expired, terminated and are no longer in effect upon the signing of this Agreement.

**COLDWELL BANKER RESIDENTIAL REAL ESTATE LLC**

BY: _____  |  *Nicholas Gonring*  dotloop verified 05/18/18 2:35PM CDT HSXD-ETEU-VZIG-43TJ

AUTHORIZED BROKER SIGNATURE / DATE  |  SELLER / LESSOR / BENEFICIARY / DATE

*Garrett Luehrs*  dotloop verified 05/17/18 11:25AM CDT F7E8-INBM-IOH2-AWHY  |  *Kelsey Gonring*  dotloop verified 05/18/18 10:41AM CDT MAEP-GOO2-T7UR-DZZI

DESIGNATED AGENT/ LICENSEE SIGNATURE / DATE  |  SELLER / LESSOR / BENEFICIARY / DATE

1910 N Clybourn Ave, Chicago, IL 60614  |  2726 W Cortez St Chicago, IL 60622

ADDRESS / CITY / STATE / ZIP  |  ADDRESS / CITY / STATE / ZIP

847-209-0869  |  262-573-6772      920-901-2456

COMPANY PHONE / AGENT'S PHONE NUMBER  |  WORK PHONE / HOME PHONE / MOBILE PHONE

E-MAIL ADDRESS: nick.gonring@gfs.com; kelsey_g

©2016 Coldwell Banker Residential Real Estate LLC. All Rights Reserved. Coldwell Banker Residential Brokerage fully supports the principles of the Fair Housing Act and the Equal Opportunity Act. Operated by a subsidiary of NRT LLC. Coldwell Banker and the Coldwell Banker Logo are registered service marks owned by Coldwell Banker Real Estate LLC. Real estate agents affiliated with Coldwell Banker Residential Brokerage are independent contractor sales associates and are not employees of Coldwell Banker Residential Brokerage.

Copy - Branch Office • Copy – Sellers