# Exhibit 10

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MELINDA SGARIGLIA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-cv-05684 |
| v. | ) | |
| | ) | Honorable Robert M. Dow, Jr. |
| AMERICAN INTERNATIONAL RELOCATION SERVICES, LLC, d/b/a AIRES, an Illinois limited liability company, NICHOLAS GONRING, and KELSEY GONRING, | ) ) ) ) ) | Magistrate Judge Young B. Kim  Jury Demanded |
| Defendants. | ) ) | |
| NICHOLAS GONRING and KELSEY GONRING, | ) ) ) | |
| Third Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| 2726 WEST CORTEZ CONDOMINIUM and JOHN GORR, | ) ) ) | |
| Third Party Defendants. | ) ) | |

## AFFIDAVIT OF NICHOLAS GONRING

I, Nicholas Gonring, hereby declare pursuant to 28 U.S.C. §1746:

1. I am over 18 years of age and competent to testify to the matters set forth below, of which I have personal knowledge.

2. At all times relevant up until July 25, 2018, I along with my wife Kelsey Gonring, owned unit 1 (the "Unit"), in a three-condo building located at 2726 W. Cortez Ave., Chicago, IL (the "Building").

3. By way of my ownership in the Unit, I was a member of the Building's condominium association (the "Condo Association").

4. The Condo Association was governed by its Declaration and Bylaws which were kept as part of the ordinary course of business of the Condo Association. A true and correct copy of the Declaration and Bylaws of the Condo Association is attached to the Rule 56.1 Statement as Exhibit E.

5. During the course of my ownership of the Unit, I was not aware of any structural damage to the Unit, or any leaking in the Unit including to the windows of the Unit.

6. Upon information and belief, to this date, no structural damages or leaks have been discovered in the Unit.

7. On December 4, 2017, I received an email from John Gorr ("Gorr"), the owner of unit 3 of the Building.

8. The December 4, 2017 email documented the history of water infiltration into unit 3 and how Gorr believed the remediation of same to be a common element repair of the Condo Association.

9. The December 4, 2017 email was the first time that I became aware of any significant water infiltration into Gorr's unit at the Building.

10. On March 11, 2018, the Condo Association held a meeting whereby the water infiltration within unit 3 of the Building was discussed.

11. At the March 11, 2018 special meeting of the Condo Association, my wife Kelsey Gonring and I, along with Gorr, voted in favor of moving forward with exploratory work to determine the repair responsibility pursuant to the declaration and bylaws of the Condo Association.

12. The exploratory work was conducted by Bral Restoration Services, Inc. and was paid for by the members of the Condo Association based on our *pro rata* share of ownership in the Building.

13. Bral Restoration Services, Inc. determined that the water infiltration into unit 3 of the Building was occurring through the wall of unit 3, the walls being a common element to be taken care of by the Condo Association.

14. On May 7, 2018, the Condo Association held another special association meeting at which times meeting minutes were taken. The meeting minutes were made at the time of the special meeting and were kept as part of the ordinary course of the Condo Association's business. A true and correct copy of the May 7, 2018 special meeting minutes are attached to the Rule 56.1 Statement of Facts as Exhibit F.

15. At the May 7, 2018 special meeting of the Condo Association it was determined that Arrow Masonry and Exteriors, Inc. ("Arrow Masonry") would be contracted to remediate the water infiltration into unit 3 of the Building and that the members of the Condo Association would pay for such work via special assessment based on their *pro rata* shares of ownership in the Building.

16. Arrow Masonry completed its work to remediate the water infiltration into unit 3 of the Building on or before June 4, 2018.

17. Upon completion of the work by Arrow Masonry, I believed that the water infiltration into unit 3 including any issues with unit 3's windows or other common elements of the Building were resolved.

18. In the Spring of 2018, I was relocated to Michigan as part of my job.

19. One of the benefits of the relocation, my employer contracted with American Relocations Services, LLC ("AIRES") to provide relocation services for our move to Michigan and to facilitate the sale of my Unit.

20. On May 21, 2018, I filled out and signed an ILLINOIS REALTORS ® RESIDENTIAL REAL PROPERTY DISCLOSURE REPORT pursuant to 765 ILCS 77/35 (the "First Disclosure Report"). A true and correct copy of the First Disclosure Report is attached to the Rule 56.1 Statement of Facts as Exhibit G.

21. I signed the First Disclosure Report knowing that such disclosures were only with regard to the Unit and not the common elements of the Building or any other units at the Building, pursuant to the Illinois Residential Real Property Disclosure Act.

22. As the Unit did not have any leaks or material defects in the roof, ceilings, or chimney, I represented in the First Disclosure Report that I was not aware of any defects regarding same.

23. As the Unit did not have any material defects in the walls, windows, doors, or floors, I represented in the First Disclosure Report that I was not aware of any defects regarding same.

24. On information and belief, on May 21, 2018, AIRES listed the Unit for sale.

25. On May 30, 2018, I signed the Seller's Property Disclosure Statement that was a form prepared by AIRES (the "Second Disclosure Report"). A true and correct copy of the Second Disclosure Report is attached to the Rule 56.1 Statement of Facts as Exhibit H.

26. As the Second Disclosure Report sought information about the Building and not just the Unit, as part of the Second Disclosure Report, I disclosed that I was aware of past water

leakage at the Building and specifically stated that "Unit 3 had leaks on west facing windows → HOA sealed building to resolve Unit 3 leak."

27. Additionally, in the Second Disclosure Report I disclosed that I was aware of shared or common areas or maintenance agreements for the Building and further stated in explanation "Tuckpointing & sealing of Building exterior."

28. Arrow Masonry completed its work at the Building, and I believed that such work fully remediated the leaks experienced by Gorr in unit 3 of the Building through the common elements of the Building, prior to Plaintiff's purchase of the Unit.

29. As an additional part of AIRES' marketing of the Unit, I disclosed to Aires that in the past five years neither myself nor my spouse had filed any insurance claim on our homeowner's insurance policy on the Unit.

30. Upon information and belief, as part of AIRES's sale of the Unit to the Plaintiff, AIRES provided Plaintiff with both the First Disclosure Report and the Second Disclosure Report.

31. At no time prior to the filing of this litigation was I informed by anyone, including Gorr that mold was discovered in his unit.

Declarant further sayeth naught.

I, Nicholas Gonring, declare under penalty of perjury that the foregoing is true and correct.

Executed on December 28, 2020

_____
Nicholas Gonring

PFS:008071.0001.2454905.2