**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MELINDA SGARIGLIA, ) | |
|         Plaintiff, ) | |
| v. ) | Case No. 1:19-cv-05684 |
| ) | |
| AMERICAN INTERNATIONAL ) | Honorable Robert W. Gettleman |
| RELOCATION SERVICES, LLC, d/b/a ) | |
| AIRES, an Illinois limited liability ) | Magistrate Judge Gabriel A. Fuentes |
| company, NICHOLAS GONRING, and ) | |
| KELSEY GONRING, ) | Jury Demanded |
| ) | |
|         Defendants. ) | |
| ) | |
| ) | |
| NICHOLAS GONRING and KELSEY ) | |
| GONRING, ) | |
| ) | |
|         Third Party Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| 2726 WEST CORTEZ CONDOMINIUM and ) | |
| JOHN GORR, ) | |
| ) | |
|         Third Party Defendants. ) | |

**DEFENDANTS NICHOLAS GONRING AND KELSEY GONRING'S
STATEMENT OF ADDITIONAL MATERIAL FACTS**

**I.    ACKNOWLEDGEMENTS AND ADMISSIONS OF PLAINTIFF
THROUGH HER REAL ESTATE ATTORNEY, THOMAS HAWBECKER**

    1.    Plaintiff, through her real estate attorney Thomas Hawbecker, knew "from the inception of this matter that this was a relocation situation where the relocation company [American International Relocation Services, or " "] is going to be the buyer from the Gonrings and then the relocation company [AIRES] is going to be the seller to Melinda [Plaintiff]." (Plaintiff's Exhibit 32, Hawbecker Dep., p. 56, lines 7-11). This knowledge was derived from the

AIRES disclosure form that lists the Gonrings as sellers and both AIRES and the Plaintiff as buyer. (Plaintiff's Exhibit 32, Hawbecker Dep., p. 55, line 23 to p. 56, line 6).

2. On sales involving relocation companies, sometimes the deed is issued directly from the owner to the new buyer and title does not go through the relocation company. (Plaintiff's Exhibit 32, Hawbecker Dep., p. 59, lines 1-15). And from the beginning of this transaction Plaintiff's real estate counsel Thomas Hawbecker knew this was a transaction where the Gonrings were going to be sellers to AIRES and AIRES was going to be the seller to Plaintiff. (Plaintiff's Exhibit 32, Hawbecker Dep., p. 59, lines 16-21).

3. The AIRES disclosure form filled out by the Gonrings identifies, as to past or present water leakage as to "structural items," that "**Unit 3 had leaks on west facing windows. HOA sealed the building to resolve Unit 3 leak**." (Plaintiff's Exhibit 29, AIRES disclosure, section 6(a))(emphasis added). The AIRES disclosure form filled out by the Gonrings further reveals, on page 5, "**tuckpointing & sealing of building exterior**." *Id*. (emphasis added). Accordingly, Thomas Hawbecker acknowledged that the Plaintiff had knowledge that Unit 3 had leaks on the west-facing windows and that action was taken by the HOA to seal the building to resolve the Unit 3 leak. (Plaintiff's Exhibit 32, Hawbecker Dep., p. 61, lines 8-20).

4. Further, Plaintiff signed two Illinois Residential Real Property Disclosure Reports, one filled out by the Gonrings, see **Exhibit 1**, and one filled out by AIRES, see **Exhibit 2**. Accordingly, Plaintiff and her counsel were on notice that there were two deals going on: one between the Gonrings and AIRES, and another one between AIRES and the Plaintiff. (Plaintiff's Exhibit 32, Hawbecker Dep., p. 65, lines 6-11).

5. The Illinois Residential Real Property Disclosure Report make clear, on its face:

> Note: These disclosures are **not** intended to cover the common elements of a condominium, **but only the actual residential real property**

> **including limited common elements <u>allocated to the exclusive use thereof that form an integral part of the condominium unit</u>**.
>
> Note: These disclosures are intended to reflect the current condition of the premises and do not include previous problems, if any, that the seller reasonably believes have been corrected.

(See, **Exhibit 1** and **Exhibit 2**) (emphasis added).

6. The condominium building at issue in this case was built out of split-faced-block. Thomas Hawbecker has owned three condominiums built using split-faced-block and he understands that split-faced-block needs to be maintained because it can be porous. (Plaintiff's Exhibit 32, Hawbecker Dep., p. 67, lines 5-13; p. 68, lines 10-19). Further, Mr. Hawbecker stated that split-faced-block requires proper maintenance, specifically sealing the split-faced-block. (Plaintiff's Exhibit 32, Hawbecker Dep., p. 68 lines 20-22). Out of the three condominiums Mr. Hawbecker owned that were constructed out of split-faced-block, two of them had minor leakage issues involving leaks around the windows. (Plaintiff's Exhibit 32, Hawbecker Dep., p. 69, lines 8-14).

7. The Purchase Agreement for this transaction utilizes a form agreement created by the Chicago Association of Realtors that is unique to condominium units. (Plaintiff's Exhibit 31, Purchase Agreement; Plaintiff's Exhibit 32, Hawbecker Dep., p. 71, lines 14-21). The term "Property" as used in the Purchase Agreement is defined as Unit 1. (Plaintiff's Exhibit 31, Purchase Agreement; Plaintiff's Exhibit 32, Hawbecker Dep., p. 71, line 22 to p. 72, line 1). While the purchaser is Plaintiff and the seller is AIRES, Mr. Hawbecker knew, consistent with the disclosures, that two transactions were taking place: one transaction between the Gonrings and AIRES and another transaction between AIRES and Plaintiff. (Plaintiff's Exhibit 32, Hawbecker Dep., p. 72, lines 5-12).

8. The 22.1 Disclosure Statement required of condominium associations pursuant to 765 ILCS 506/22.1 is an important document addressing threshold questions for a condominium purchaser, explains Plaintiff's real estate attorney Thomas Hawbecker. A copy of the 22.1 Disclosure Statement provided to Plaintiff by John Gorr, President of the 2726 W. Cortez Condominium Association, is attached as **Exhibit 3**. The 22.1 Disclosure Statement, among other things, revealed a $2,208 reserve balance for capital expenditures and indicated that no capital expenditures were anticipated by the association for the current or next two fiscal years that would require a special assessment and/or increase in the monthly assessment to the unit owners. *Id*. The 22.1 Disclosure Form is "the single most important condominium document" in Mr. Hawbecker's opinion, the disclosures themselves being self-explanatory. (Plaintiff's Exhibit 32, Hawbecker Dep., p. 78, lines 14-24).

9. On June 29, 2018, Mr. Hawbecker's office circulated to the Plaintiff meeting minutes, rules and regulations, declaration, and bylaws. See email and meeting minutes attached as **Exhibit 4**. (Plaintiff's Exhibit 32, Hawbecker Dep., p. 81, line 24 to p. 82, line 6). The attached May 7, 2018 condominium board meeting minutes indicated that the building was last sealed in 2012 and that Arrow Masonry's quote was accepted for the following scope of work: "[s]pot grinding, spot tuckpointing, caulking, flashing installation and sealing of the east, west, and north elevations of split face block." **Exhibit 4**.

10. Attorney Paul Garver from Mr. Hawbecker's office attended the closing on Plaintiff's purchase of Unit 1. (Plaintiff's Exhibit 32, Hawbecker Dep., p. 90, lines 6-9). At closing, the deed provided to Plaintiff was from the Gonrings and not AIRES. (See Plaintiff's Exhibit 42). At closing, the Plaintiff and her real estate counsel accepted a deed directly from the Gonrings to Plaintiff and did not demand a deed be issued to AIRES and from AIRES to Plaintiff. (Plaintiff's

4

Exhibit 32, Hawbecker Dep., p. 94, line 22 to p. 95 line 9; p. 97, lines 2-6). At the closing, had attorney Paul Garver seen this as a problem, he could have said "no, we've got to do something else." (Plaintiff's Exhibit 32, Hawbecker Dep., p. 95, lines 1-9; p. 97, lines 2-20).

11. Plaintiff, through her real estate counsel Thomas Hawbecker, acknowledges that the Gonrings have no duty to disclose, for their Unit 1, moisture on a window in Unit 3; the Illinois Real Property Disclosures are not intended to cover common elements of the building and are limited to the unit. (Plaintiff's Exhibit 32, Hawbecker Dep., p. 131, lines 1-22).

12. Plaintiff, through her real estate counsel Thomas Hawbecker, admits that there is no duty to disclose building issues under Illinois Real Property Disclosure Report; rather, the **duty to disclose is exclusively limited to the actual unit** and does not relate to other units or common elements. (Plaintiff's Exhibit 32, Hawbecker Dep., p. 132, lines 8-19) (emphasis added).

## II. JOHN GORR, OWNER OF UNIT 3

13. In September of 2018, weeks after Plaintiff purchased the at-issue condominium unit, John Gorr discovered a new problem. Gorr explained the new problem in his September 7, 2018 email to Plaintiff, where he explained as follows:

> "**We had the building sealed with elastomeric sealant a few months back so we're fairly confident that the water has stopped getting into the building**. However, with the recent inspections on my place a few items have been brought up that have **shed light on a new problem**. I recently tested positive for elevated levels of mold in my unit. That triggered me to look at replacing some floorboards. **Upon removing the floorboards, we discovered** that the subfloor was severely damaged in many areas and there is mold behind some walls, please see the attached pictures [which are not attached to Plaintiff's Exhibit 82]. From what started out as me replacing some floorboards has turned into a large and costly problem that was caused by a building issue. I have spoken with a few contractors about the next steps and the appropriate resolve is to remove some of the subfloor, and much of the drywall on the perimeter of my unit, treat the mold, and then repair and repaint." (Plaintiff's Exhibit 44) (emphasis added).

5

14. John Gorr's affidavit, attached as **Exhibit 5**, attests: "On September 7, 2018, the floorboards were removed in my unit **and I first discovered** that the subflooring in my unit was severely damaged and that mold was growing behind the walls of my unit." (**Exhibit 5**, para. 25) (emphasis added).

15. John Gorr further attests that, "'[t]he 'history of water intrusion' I discuss in my September 7 Email [Plaintiff's Exhibit 44] is a reference to the water intrusion in my unit referenced in my December 4, 2017 email [Plaintiff's Exhibit 13, bottom of Gorr-00181 to Gorr-00182]. **It is not a reference to the mold I first discovered on September 7, 2018**." (**Exhibit 5**, para. 28) (emphasis added).

### III. THE GONRINGS

16. The Gonrings purchased Unit 1 on or about May 10, 2016. By way of ownership of Unit 1, the Gonrings became members of the condominium association, the Declaration and Bylaws of which are attached as **Exhibit 6**. (**Exhibit 7**, Affidavit of Kelsey Gonring, ¶¶ 2, 3, 4).

17. The Gonrings never experienced water infiltration or leaking in Unit 1 during their ownership and occupancy of the condominium. (**Exhibit 7**, Affidavit of Kelsey Gonring, ¶ 5). Similarly, the Gonrings were not aware of any structural damage or issues relating to Unit 1 over the course of their ownership. (**Exhibit 7**, Affidavit of Kelsey Gonring, ¶ 6).

18. The Plaintiff misrepresents Bral's recommendations following its exploratory work. Bral concluded that the issue was not related to the wall flashing system. Bral's May 3, 2018 cover letter that accompanied its quote for tuck-pointing and sealing the block (but no flashing work) explained as follows:

> The removal of drywall allowed BRAL to confirm there is not a cavity wall system to be repaired and or reviewed. The existing flashing was through wall that allowed water to penetrate right into the back of block.

6

> It was decided to not continue with reviewing any further window or door openings besides these two. It was explained that installing a cavity wall system over just the masonry openings **and allowing a proper through wall flashing system to be installed <u>would not prevent</u>** water from penetrating at locations in between the openings.
>
> A previous proposal including as needed repointing and application of 2 coats of Modac was modified to include the application of 1 coast of Chem-Trete as an alternative.

(**Exhibit 7**, Affidavit of Kelsey Gonring, ¶ 10).

19. Accordingly, Bral's proposal outlined work for tuck-pointing, power washing, the application of Modac coating (for cost of $49,821.00) and "Option A" work to apply Chem-Trete water repellant (for an additional cost of $38,700.00). Bral did **not** include in its proposal any flashing work, having determined that it was not needed. (Plaintiff's Exhibit 21, Gorr-00217-Gorr-00211). (**Exhibit 7**, Affidavit of Kelsey Gonring, ¶ 11).

20. On behalf of the Condominium Association, Kelsey Gonring reached out to Arrow Masonry ("Arrow") and discussed Bral's exploratory work and requested Arrow to evaluate and provide a quotation for appropriate tuck-pointing and sealing the split-faced-block. Arrow's proposed contract was less expensive than Bral's and, unlike Bral, was backed by a 5-year warranty on material and labor and related guarantee on leak prevention. (Plaintiff's Exhibit 23).

21. The Arrow Masonry contract outlined its scope of work, including spot grinding, spot tuckpointing, caulking, flashing installation over decks and sealing of the east, west, and north elevations of the split-faced-block. (Plaintiff's Exhibit 23). (**Exhibit 7**, Affidavit of Kelsey Gonring, ¶ 16).

22. It was Kelsey Gonring's understanding that sealing of the split-faced-block was routine maintenance that should be performed approximately every five years due to the nature of split-faced-block. (**Exhibit 7**, Affidavit of Kelsey Gonring, ¶ 17).

PFS:008071.0001.3142083.1

23. Upon completion of the work by Arrow Masonry, Kelsey Gonring believed that the water infiltration into Unit 3, including any issues with Unit 3's windows or other common elements of the Building, was resolved.

24. John Gorr's email of July 13, 2018 did not change Kelsey Gonring's belief that the work by Arrow Masonry remediated the leaks in Unit 3. It was Ms. Gonring's understanding that Gorr's buyer was utilizing a moisture monitoring system in Gorr's Unit 3 and that this monitoring system detected moisture "in the SW window area" after a hard rain. (Plaintiff's Exhibit 41, first paragraph) (Exhibit 6, Kelsey Gonring Affidavit, ¶ 29). Gorr was not reporting water intrusion, just moisture detection. Further, Kelsey Gonring believed that Arrow Masonry had addressed any possible issue through its additional work (backed by its 5-year warranty). As Gorr explained:

> After the last inspection, Arrow masonry came back and applied a second layer of sealant at the entire west-facing wall above the 3rd floor windows, and they applied the same elastomeric sealant to the capstones. I have a moisture meter and will be monitoring the moisture levels in the wood over the next several weeks. I'll also be looking at if there are any other areas of water infiltration. I hope the secondary work resolved it for good the moisture monitoring will help me to determine that.

Plaintiff's Exhibit 41, para. 1) (**Exhibit 7**, Kelsey Gonring Affidavit, ¶ 29).

25. After Gorr's July 13, 2018 email, Kelsey Gonring never received further communication from John Gorr regarding any further moisture readings or any water intrusion in Unit 3. (**Exhibit 7**, Kelsey Gonring Affidavit, ¶ 30).

26. At no time prior to Plaintiff's filing of this litigation was Kelsey Gonring informed by anyone, including John Gorr, that mold was discovered in Unit 3. (**Exhibit 7**, Kelsey Gonring Affidavit, ¶ 31).

PFS:008071.0001.3142083.1

Dated: July 28, 2023

Respectfully submitted,
Nicholas and Kelsey Gonring

By:<u>    /s/  Jordan Finfer         </u>,

One of their attorneys

Jordan Finfer (jfinfer@pfs-law.com)
ARDC #6296373
Elizabeth Archerd (earcherd@pfs-law.com)
ARDC #6329394
Patzik, Frank & Samotny Ltd.
200 South Wacker Drive, Suite 2700
Chicago, IL 60606
Phone:312-1551-8300

9

CERTIFICATE OF SERVICE

The undersigned, a non-attorney, under penalty of perjury, hereby certifies that DEFENDANTS NICHOLAS GONRING AND KELSEY GONRING'S STATEMENT OF ADDITIONAL MATERIAL FACTS was electronically filed on July 28, 2023 using the court's CM/ECF system and will then send same to all ECF-registered counsel of record.

*/s/ Melissa Siedlecki*