# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MELINDA SGARIGLIA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-cv-05684 |
| v. | ) | |
| | ) | Honorable Robert M. Dow, Jr. |
| AMERICAN INTERNATIONAL | ) | |
| RELOCATION SERVICES, LLC, d/b/a | ) | Magistrate Judge Young B. Kim |
| AIRES, an Illinois limited liability | ) | |
| company, NICHOLAS GONRING, and | ) | Jury Demanded |
| KELSEY GONRING, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| NICHOLAS GONRING and KELSEY | ) | |
| GONRING, | ) | |
| | ) | |
| Third Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| 2726 WEST CORTEZ CONDOMINIUM | ) | |
| and JOHN GORR, | ) | |
| | ) | |
| Third Party Defendants. | ) | |

## AFFIDAVIT OF JOHN GORR

I, John Gorr, hereby declare pursuant to 28 U.S.C. §1746:

1. I am over 18 years of age and competent to testify to the matters set forth below, of which I have personal knowledge.

2. At all times relevant, I have owned Unit 3 in a three-condo building located at 2726 W. Cortez Ave., Chicago, IL (the "Building") and was the president of the Building's condo association (the "Association").

3. Shortly before December 2017, I notified the other unit owners that my unit was experiencing water infiltration from a common element in the Building.

4. Prior to December 2017, I, on behalf of the Association, filed an insurance claim with the Association's insurance carrier.

5. On December 4, 2017, I forwarded a denial of coverage letter from the Association's insurance company and requested that the Association pay for remediation. A true and correct copy of my December 4, 2017 email is attached hereto as Exhibit 1.

6. My December 4, 2017 email only referred to water infiltration into the Building at my unit, Unit 3 of the Building, and not any other unit.

7. On March 11, 2018, the Association held a meeting whereby the water infiltration within my unit was discussed.

8. At the March 11, 2018 special meeting of the Association, the Gonrings – the owners of Unit 1 of the Building at the time – and I voted in favor of moving forward with exploratory work to determine the repair responsibility pursuant to the declaration and bylaws of the Association.

9. The exploratory work was conducted by Bral Restoration Services, Inc. and was paid for by the members of the Association based on our *pro rata* share of ownership in the Building.

10. Bral Restoration Services, Inc. determined that the water infiltration into my unit at the Building was a common element issue to be dealt with by the Association.

11. On May 7, 2018, after a vote during a special meeting of the Association, the Association decided to hire Arrow Masonry and Exteriors, Inc. ("Arrow") to remediate water infiltration into my unit of the Building.

12. Because the restoration firm had determined that the water was entering my unit through a flaw in one of the common areas, the Association agreed to treat the cost of repair as an

Association expense and declared a special assessment to be paid by the three condo owners based upon their *pro rata* shares of ownership in the Building, thereby fully funding the cost of repair.

13. On June 4, 2018, when Arrow completed its work, I believed that the water infiltration problem with my unit, including but not limited to the windows in my unit, had been fully remediated and that no further work was needed.

14. On June 14, 2018, as part of Plaintiff, Melinda Sgariglia's purchase of Unit 1 in the Building, and as statutorily required by 765 ILCS 605-22.1, as the Association president, I prepared and signed a Section 22.1 Disclosure Statement (the "Disclosure Statement").

15. The Disclosure Statement stated, among other things, that there were no "capital expenditures anticipated by the Association for the current or next two fiscal years that would require a special assessment and/or increase in the monthly assessment to the unit owners."

16. On June 19, 2018, I listed my unit for sale.

17. On June 26, 2018, I entered into a sales contract to sell my unit.

18. The sales contract provided that the sale was contingent upon a satisfactory home inspection.

19. However, three days after signing the contract, the inspector hired by the buyer found an excessive amount of moisture in my unit.

20. The purchaser notified me of the inspector's findings and voided the sale. I was never provided a copy of the inspection report.

21. Still unaware of the existence of mold in my unit, I relisted the unit for sale.

22. However, a second contract also failed, based upon an inspection report issued on July 22, 2018, which also found excessive amount of moisture in my unit.

23. While both of the inspection's found evidence of excessive moisture in my unit, neither report identified mold growth in the unit.

24. On July 31, 2018, as a result of the two failed inspection reports, I hired MI&T Mold Inspection Testing, who found that my unit tested positive for mold.

25. On September 7, 2018, the floorboards were removed in my unit and I first discovered that the subflooring in my unit was severely damaged and that mold was growing behind the walls of my unit.

26. On September 7, 2018, I transmitted this information to Sgariglia and the owner of Unit 2 in the Building (the "September 7 Email").

27. The September 7 Email provided, in part, "We had the building sealed with elastomeric sealant a few months back so we're fairly confident that the water has stopped getting into the building."

28. The "history of water intrusion" I discuss in my September 7 Email is a reference to the water intrusion to my unit referenced in my December 4, 2017 email. It is not a reference to the mold I first discovered on September 7, 2018.

Executed on December 23, 2020

_____
John Gorr