**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

MELINDA SGARIGLIA,          )
                                      )
            Plaintiff,         )     Case No. 1:19-cv-05684
v.                               )
                                      )     Honorable Robert W. Gettleman
AMERICAN INTERNATIONAL     )
RELOCATION SERVICES, LLC, d/b/a   )     Magistrate Judge Gabriel A. Fuentes
AIRES, an Illinois limited liability    )
company, NICHOLAS GONRING, and  )     Jury
Demanded KELSEY GONRING,      )
                                      )
Defendants.                   )

**DEFENDANTS NICHOLAS AND KELSEY GONRING'S RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants, Nicholas and Kelsey Gonring (the **"Gonrings"**), by their attorneys, Jordan Finfer and Elizabeth Archerd with the law firm of Patzik, Frank & Samotny Ltd., hereby request this Court deny Plaintiff's Motion for Partial Summary Judgment Based upon Liability (the **"Motion"**) with prejudice and in support thereof state as follows:

### Introduction

In 2018, Plaintiff purchased condominium unit 1 (**"Unit 1"**) at the property located at 2726 West Cortez Street, Chicago, Illinois (the **"Building"**) from the Gonrings through a relocation company, Defendant American International Relocation Services, LLC, d/b/a AIRES (**"AIRES"**). Unhappy that mold was later discovered in a *different* unit in the Building, prompting repairs, Plaintiff seeks to shift liability for repairs to the common elements to the Gonrings and AIRES, based on allegations that these Defendants failed to disclose material facts.

As relevant to this response, in her Second Amended Complaint (**"SAC"**) Plaintiff asserts two claims against the Gonrings: Count I, for violation of the Residential Real Property Disclosure

Act, 765 ILCS 77/5 *et seq*. (the **"Disclosure Act"**); and Count II, for fraudulent concealment. In Count I, Plaintiff claims that the Gonrings failed to disclose material defects in the Building of which they were aware when they completed the form required by the Disclosure Act. Based on the evidence, however, a reasonable mind could conclude that the only defects of which the Gonrings were aware were not material, not in Unit 1, and had been resolved; accordingly, these issues were not required to be disclosed pursuant to the Disclosure Act.

Count II, for fraudulent concealment, similarly fails. Plaintiff claims that the Gonrings fraudulently concealed the condition of the Building by not disclosing the water infiltration into Unit 3. However, the evidence demonstrates that the Gonrings did disclose the issues of which they were aware, as well as the work that was done to resolve the water infiltration in this other unit. The Gonrings additionally did not conceal the true ownership of Unit 1, as Plaintiff now claims. To the contrary, the evidence shows that throughout the transaction, Plaintiff and her attorney were made fully aware that the Gonrings were selling Unit 1 through AIRES, a relocation company. Plaintiff's counsel could have easily determined whether the transaction was being completed in two deeds—from the Gonrings to AIRES, and then AIRES to Plaintiff—or only one, as transpired; however, Plaintiff, through her counsel, did not ask. As a matter of law, there was no fraudulent concealment.

Drawing all reasonable inferences in favor of the Gonrings, as the Court must in ruling on the Motion, Plaintiff's Motion for Partial Summary Judgment Based upon Liability should be denied.

### Material Facts

From May 10, 2016 until July 25, 2018, the Gonrings owned Unit 1 of the Building. (The Gonrings' Response to Plaintiff's LR 56.1 Statement of Material Undisputed Facts (**"Pl. Stmt.**

**Mat. Fact"**, Dkt. #205), filed concurrently herewith (cited herein as **"Defs. Resp. Pl. Stmt. Mat. Facts"**), ¶7). The Building was built from split-faced-block, a material that requires proper maintenance, specifically sealing, to prevent water infiltration. (The Gonrings' Statement of Additional Material Facts (cited herein as **"Defs. Stmt. Addl. Facts"**), filed concurrently herewith pursuant to Local Rule 56.1, ¶6).

On October 15, 2017, the Association filed a claim with Erie Insurance Group, to determine the cause of water infiltration in the top floor of the Builidng (**"Unit 3"**), which was owned by John Gorr (**"Gorr"**). (Defs. Resp. Pl. Stmt. Mat. Facts, ¶¶9-10). Based upon this claim, on October 19, 2017, Engineering Systems, Inc. inspected Unit 3 and generated a report regarding the cause of water infiltration into that unit. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶10).

Following this time, the Association voted to move forward with exploratory work from Bral Restoration to determine whether the water infiltration in Unit 3 was a Common Element or unit-specific issue. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶¶24-25). Bral Restoration recommended tuckpointing and sealing to resolve the water infiltration, and specifically determined that installing a through wall flashing system would not resolve the water infiltration. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶27); (Defs. Stmt. Addl. Facts, ¶¶18-19). Kelsey Gonring, on behalf of the Association, received a second quote from Arrow Masonry for the tuckpointing and sealing work, which the Association voted to move forward with as it was less expensive and came with a five-year warranty, which the Bral Restoration quote did not. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶¶28, 33); (Defs. Stmt. Addl. Facts, ¶¶20-21). It was Kelsey Gonring's understanding that sealing of the split-faced-block was routine maintenance that should be performed approximately every five years due to the nature of split-faced-block. (Defs. Stmt. Addl. Facts, ¶22). Upon completion of the work by Arrow Masonry, the Gonrings believed that the water infiltration into Unit 3 was resolved.

(Defs. Stmt. Addl. Facts, ¶23).  On July 13, 2018, Gorr emailed the Gonrings, to tell them he detected moisture in his window after a rain, but not water infiltration; however, Arrow Masonry applied a second layer of sealant, and he believed the water infiltration problem was resolved. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶76); (Defs. Stmt. Addl. Facts, ¶24).  The Gonrings did not receive any further communication from Gorr regarding moisture or water infiltration in his unit. (Defs. Stmt. Addl. Facts, ¶25).

On May 18, 2018, the Gonrings listed Unit 1 for sale.  (Defs. Resp. Pl. Stmt. Mat. Facts, ¶37).  On May 19 and 21, 2018, the Gonrings completed and executed a disclosure form pursuant to the Disclosure Act (**"Disclosure Form"**).  (Defs. Resp. Pl. Stmt. Mat. Facts, ¶38); (Disclosure Form, attached as Ex. 27 to Pl. Stmt. Mat. Facts).  The scope of the Disclosure Form covered only Unit 1, including limited common elements allocated to the exclusive use of Unit 1.  (Defs. Resp. Pl. Stmt. Mat. Facts, ¶39); (Pl. Stmt. Mat. Facts, Ex. 27).  The Gonrings marked that they were not aware of any leaks or material defects in the roof, ceilings, chimney, walls, doors, or floors of Unit 1.  (Defs. Resp. Pl. Stmt. Mat. Facts, ¶39); (Pl. Stmt. Mat. Facts, Ex. 27).  During the course of their ownership of Unit 1, the Gonrings did not experience any water infiltration or leaking in Unit 1.  (Defs. Stmt. Addl. Facts, ¶17).  On May 29 and 30, 2019, the Gonrings also completed an AIRES Seller's Disclosure Statement (the **"AIRES Disclosure"**).  (Pl. Stmt. Mat. Facts, ¶44; AIRES Disclosure, attached as Ex. 29 to Pl. Stmt. Mat. Facts).  In the AIRES Disclosure, when asked if they were aware of any past or present water leakage in the "house or other structures", the Gonrings truthfully answered that Unit 3 had water leaks, and that the Association performed the routine maintenance of sealing the Building in order to resolve the Unit 3 leaks.  (Defs. Resp. Pl. Stmt. Mat. Facts, ¶45); (Defs. Stmt. Addl. Facts, ¶3).  On June 14, 2018, the Association provided a disclosure pursuant to 765 ILCS 605/22.1 (the **"Association Disclosure"**), pursuant to

which the Association disclosed the amount in reserves and that the Association did not expect any capital expenditures in the current or next two years. (Defs. Stmt. Addl. Facts, ¶8); (Association Disclosure, attached as Ex. 3 to Defs. Stmt. Addl. Facts). The Association also provided May 7, 2018 meeting minutes, which approved a special assessment for the Arrow Masonry work. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶52).

On June 8, 2018, AIRES entered into a Condominium Real Estate Purchase and Sale Contract with Plaintiff for the sale of Unit 1 to Plaintiff from the Gonrings (the **"Sale"**). (Defs. Resp. Pl. Stmt. Mat. Facts, ¶49). Throughout the Sale, Plaintiff, through her counsel, was provided notice through multiple documents and correspondences that AIRES was a relocation company that was purchasing Unit 1 from the Gonrings, to sell to Plaintiff. (Defs. Stmt. Addl. Facts, ¶¶1-2, 4, 7). Plaintiff's attorney, Thomas Hawbecker, was aware of the nature of this transaction from the beginning. (Defs. Stmt. Addl. Facts, ¶2). Such transactions can be accomplished through two deeds or one, directly from the Gonrings to Plaintiff. (Defs. Stmt. Addl. Facts, ¶2). During this time, Plaintiff's attorney could have asked AIRES or the Gonrings who retained title to Unit 1, but did not. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶64). At the closing of the Sale, on July 25, 2018, Plaintiff accepted a deed directly from the Gonrings without objection. (Pl. Stmt. Mat. Facts, ¶78); (Defs. Stmt. Addl. Facts, ¶10).

More than a month after the Sale, on Septmeber 7, 2018, Gorr contacted Plaintiff to inform her that he had discovered mold in Unit 3, which was a new problem. (Pl. Stmt. Mat. Facts, ¶82); (Defs. Stmt. Addl. Facts, ¶13). In this communication, he also informed Plaintiff that the work performed by Arrow Masonry was successful at stopping the water infiltration of which the Gonrings were aware. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶82); (Defs. Stmt. Addl. Facts, ¶13).

**Summary Judgment Standard**

"Summary judgment is proper when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)).  "In making this determination, we view all evidence in the light most favorable to, and derive all reasonable inferences in favor of, the nonmoving party." *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 644 (7th Cir. 2016).  "Summary judgment is warranted only if, after doing so, we determine that no jury could reasonably find in the nonmoving party's favor." *Id.*

**Argument**

**I.   A reasonable fact-finder could find that the Gonrings did not violate the Disclosure Act.**

As to Count I of the SAC, Plaintiff argues that the Gonrings violated the Disclosure Act by failing to disclose certain defects in the Building.  Mot., 2-8.  Importantly, however, the Disclosure Act does not require a seller to disclose defects in the common elements of a building, or limited common elements that are <u>not</u> exclusively allocated to the unit being sold.  Plaintiff has presented no evidence that the Gonrings were aware of any material defects to Unit 1 or the limited common elements exclusive to Unit 1 prior to the sale of that unit.

Under the Disclosure Act, a seller who provides information on the Disclosure Report that he **<u>knows</u>** to be false is liable to the purchaser for damages.  765 ILCS 77/55 (emphasis added). The Disclosure Act further provides: "The seller is not liable for any error, inaccuracy, or omission of any information delivered pursuant to this Disclosure Act if (ii) the error, inaccuracy, or omission was based on a reasonable belief that a material defect or other matter not disclosed had been corrected." 765 ILCS 77/25(a).

The Disclosure Report also contains two significant notes that limit what information a

seller is required to disclose:

> **Note:** These disclosures are not intended to cover the common elements of a condominium, but only the actual residential real property including limited common elements allocated to the exclusive use thereof that form an integral party of the condominium unit.

> **Note:** These disclosures are intended to reflect the current condition of the premises and do not include previous problems, if any, that the seller reasonably believes have been corrected.

765 ILCS 77/35; *Id*. at Ex. B-1. Under the Act, a seller does not need to make any disclosures that do not pertain to his unit, and does not need to make any disclosures about problems that he believes had been corrected.

As is relevant to this lawsuit, the Disclosure Report at issue asked the Gonrings to disclose whether they were aware of material defects in the foundation, and "leaks or defects in the roof," and also, "material defects in the walls, windows, doors or floors." (Def. Resp. Pl. Stmt. Mat. Facts, ¶39). The Disclosure Act defines a material defect as one that "would have a substantial adverse effect on the value of the residential real property." 765 ILCS 77/35. Since Unit 1 does not have a roof, and because the Gonrings were unaware of any material defects in the walls, windows, doors or floors of Unit 1, they answered "no," which is consistent with the scope of the questions per the explicit language in the notes of the Disclosure Form. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶39); (Defs. Stmt. Addl. Facts, ¶¶11-12).

While Plaintiff claims that it is undisputed that the Gonrings had notice of material defects relating to Unit 1, this is simply untrue. Instead, the only alleged defects that Plaintiff has pointed to concern the common elements or limited common elements of Unit 3—areas which are explicitly not covered by the Disclosure Form. 765 ILCS 77/35. In order to determine the source of the water infiltration into Unit 3, on or about October 15, 2017, the Association filed a claim with Erie Insurance Group. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶9). Based upon this claim, on

7

October 19, 2017, Engineering Systems, Inc. (**"ESi"**) inspected Unit 3 and generated a report (the **"ESi Report"**). (Defs. Resp. Pl. Stmt. Mat. Facts, ¶10). Plaintiff attempts to expand the scope of the ESi Report to the entire Building, but the ESi Report specifically states: "ESi was retained to determine the cause of water infiltration **occurring in Unit 3**, which is owned by John Gorr." *Id*. Further, nothing in the report indicates that there were material defects to Unit 1's walls, windows, and wall openings. In fact, the ESi investigators inspected only Unit 3. (ESi Report, attached as Exhibit 8 to Pl. Stmt. Mat. Facts, p. 3). Therefore, the window and door photos and comments made in the report were undoubtedly exclusive to Unit 3, not the remaining units. It was reasonable for the Gonrings, who had no water infiltration problems with Unit 1 during their ownership, to understand the defects noted in the ESi report to be exclusive to Unit 3. Therefore, while Plaintiff argues that "the [ESi] Report never limits its finding to the 3rd floor unit," a reasonable person could find that the report, which was based on an inspection of Unit 3 alone, failed to put the Gonrings on notice of any defects outside of those specific to Unit 3.

Following the ESi Report, Gorr, as the owner of Unit 3, obtained a quote from Bral Restoration (**"Bral"**) to repair the issues causing water infiltration into his unit. (Def. Resp. Pl. Stmt. Mat. Facts, ¶24). Bral specifically concluded that the issue was <u>not</u> related to the wall flashing system, which Steve Hier alleges is a "construction defect". (Def. Resp. Pl. Stmt. Mat. Facts, ¶27); (Defs. Stmt. Addl. Facts. ¶18); (Affidavit of Steve Hier, attached as Exhibit 24 to Pl. Stmt. Mat. Facts, ¶5). Instead, Bral recommended tuck-pointing and sealing to resolve the issues into Unit 3. (Def. Resp. Pl. Stmt. Mat. Facts, ¶27); (Defs. Stmt. Addl. Facts. ¶¶18-19). At the same time, Gorr obtained an estimate from Gralak Tuckpointing, Waterproofing and Masonry Sealing (**"Gralak"**). (Defs. Resp. Pl. Stmt. Mat. Facts, ¶26). The Gralak estimate does not state what—if any—portions of the Building it inspected, or what specific issues it was intended to fix.

8

(Gralak estimate, attached as Exhibit 20 to Pl. Stmt. Mat. Facts). Following these reports, Kelsey Gonring, on behalf of the Association, reached out to Arrow Masonry to provide a quotation for tuck-pointing and sealing, as determined by Bral were necessary to resolve the water infiltration into Unit 3. (Def. Resp. Pl. Stmt. Mat. Facts, ¶¶28-29); (Defs. Stmt. Addl. Facts. ¶20). The Association moved forward with the Arrow work as the proposed contract was less expensive than Bral's and, unlike Bral, was backed by a 5-year warranty on material and labor and related guarantee on leak prevention. (Defs. Stmt. Addl. Facts. ¶20).

The Gonrings understood that sealing of the split-faced-block was not a "material defect" with the Building, but routine maintenance that should be performed every five years due to the nature of the split-faced-block. (Defs. Stmt. Addl. Facts. ¶22). Thomas Hawbecker (**"Hawbecker"**), Plaintiff's attorney in the Sale, acknowledged that due to its porous nature, split-faced-block buildings needed to be sealed for proper maintenance. (Defs. Stmt. Addl. Facts. ¶6). In fact Hawbecker, who owns three split-faced-block condominium buildings himself, recognized that it is not uncommon for leaks to occur in these buildings. *Id*.

After the work that was performed by Arrow, the Gonrings believed that the water infiltration into Unit 3 was resolved. (Defs. Stmt. Addl. Facts. ¶23). In fact, the evidence confirms that the water infiltration into Unit 3 was resolved following the Arrow repairs. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶82); (Defs. Stmt. Addl. Facts, ¶13). Gorr informed the Gonrings on July 13, 2018, that he was monitoring the moisture levels (and not water infiltration) in his unit, Unit 3. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶76); (Defs. Stmt. Addl. Facts, ¶24). As this pertained to Unit 3 only, the Gonrings were not required to update the Disclosure Form based upon this information. 765 ILCS 77/35.

During the course of addressing the water infiltration in Unit 3, Gorr informed the Gonrings

that the previous owners of Unit 1 were aware of water infiltration into the Building. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶23). However, those owners believed the issues were resolved prior to selling Unit 1 to the Gonrings. *Id*. During their ownership of Unit 1, the Gonrings did not experience any water infiltration or leaking into Unit 1, or otherwise encounter any structural issues or damages relating to Unit 1. (Defs. Stmt. Addl. Facts, ¶17). Therefore, since—as noted on the Disclosure Form—"the disclosures [were] intended to reflect *the current condition* of the premises and do *not include previous problems, if any, that the seller reasonably believes have been corrected*," the Gonrings undoubtably, and justifiably, believed there to be no remaining water issues or material defects relating to Unit 1 that they were required to disclose.

Plaintiff has not sustained her burden to show that the Gonrings violated the Disclosure Act. Under the Disclosure Act, the Gonrings were required to disclose only material defects, only those material defects that affected Unit 1 (or the limited common elements that are exclusively allocated to Unit 1), and only those material defects that had not been corrected. Instead, Plaintiff has only pointed to defects which a reasonable jury could find constituted routine maintenance; only affected Unit 3; and were resolved. Accordingly, Plaintiff's Motion for Partial Summary Judgment should be denied as to Count I.

## II. A reasonable fact-finder could find that the Gonrings did not fraudulently conceal ownership and construction defects from Plaintiff.

In Count II of the SAC, Plaintiff alleges that the Gonrings are liable to her for fraudulently concealing the condition of Unit 1, and for otherwise not disclosing the true ownership of Unit 1. Plaintiff has failed to meet her burden to prove that no genuine issue of material fact exists as to this claim. "To prove fraudulent concealment, a plaintiff must establish that (1) the defendant concealed a material fact under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through

reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages." *Wolff v. Bethany N. Suburban Group*, 2021 IL App (1st) 191858, ¶51, 197 N.E.3d 77, 89, *appeal denied*, 175 N.E.3d 88 (Ill. 2021) (internal quotations omitted). As explained below, the Gonrings filled out the Disclosure Form in compliance with Illinois law, and otherwise truthfully described the condition of the property; Plaintiff has pointed to no evidence to the contrary. In addition, although Plaintiff contends that the Gonrings and AIRES "concealed" the true ownership of Unit 1, Plaintiff and her attorney were at all times aware of the nature of the Sale, and could have discovered any remaining questions through a reasonable inquiry (which they did not perform). Accordingly, summary judgment on Count II should be denied.

### A. A genuine dispute of material fact exists regarding whether the Gonrings fraudulently concealed the condition of the property, precluding summary judgment.

Plaintiff first claims that the Gonrings "engaged in a pattern to fraudulently conceal essential elements of the conveyance" in an "effort that commenced in" the Disclosure Form. Mot., 8. As explained above, however, the Gonrings were required to disclose only material defects, specific to Unit 1, that had not been resolved. The issues that Plaintiff complains of, however, involve routine maintenance, concerning Unit 3, that had been resolved and accordingly, which the Gonrings had no duty to disclose.

Without explanation or any citation to evidence, Plaintiff also argues that the Gonrings intentionally concealed issues in the AIRES Disclosure, attached to Plaintiff's Statement of Material Facts as Exhibit 29. The AIRES Disclosure, which was not required by statute, asked the

Gonrings if they were aware of any past or present water leakage in the "house or other structures". (Pl. Stmt. Mat. Facts, Ex. 29, ¶6(a)). The Gonrings truthfully answered that Unit 3 had water leaks, and that the Association performed the routine maintenance of sealing the Building in order to resolve the Unit 3 leaks. *Id.* Drawing all reasonable inferences in the Gonrings' favor, they truthfully completed the AIRES Disclosure.

Further, the Gonrings did not conceal any information in relation to the Association Disclosure, required under 765 ILCS 605/22.1. As Plaintiff points out, the Gonrings and Gorr— as members of the Board of the Association—discussed what was required to be disclosed pursuant to statute. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶¶51-52). After this discussion, the Association truthfully disclosed: (i) the amount of reserves for capital expenditures; (ii) that no reserves were designated for any specific projects; and (iii) that no capital expenditures were anticpated in the current or next two fiscal years. (Defs. Stmt. Addl. Facts, Ex. 3). These answers were not changed when Gorr sent his email dated July 13, 2018, in which he stated that Arrow came back to apply a second later of sealant near the windows to Unit 3, and that he believed the issues to Unit 3 were resolved for good. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶76). The Association then provided meeting minutes dated May 7, 2018, in which the Association approved a capital expenditure of the Arrow work. (Pl. Stmt. Mat. Facts, ¶9). The Condominium Property Act does not require that these meeting minutes be produced. 765 ILCS 605/22.1. However, the May 7, 2018 minutes that the Association produced reflected the only capital expenditure or special assessment that was then pending. The March 19, 2018 minutes that Plaintiff complains of relate to work that had previously been performed and paid for. (Defs. Resp. Pl. Stmt. Mat Facts, ¶52). The November 9, 2017 meeting minutes do not approve any capital expenditure or special assessment and have no relevance to the Association Disclosure. *Id.*

12

For these reasons, a jury could reasonably find that the Gonrings truthfully completed the Disclosure Form, AIRES Disclosure, and Association Disclosure, precluding summary judgment on Count II of the SAC.

**B. The facts do not support Plaintiff's claim that the Gonrings fraudulently concealed the true ownership of Unit 1.**

As a matter of law, Plaintiff's claim that the Gonrings fraudulently concealed the ownership of Unit 1 must fail. Plaintiff alleges that the Gonrings and AIRES "never admitted that the [Gonrings] owned titled to the Unit." Mot., 9. This statement is entirely unsupported by the evidence. To the contrary, throughout the Sale transaction, Plaintiff and her attorney were aware that the Gonrings were selling Unit 1 through AIRES, a third party relocation company. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶¶57-61); (Defs. Stmt. Addl. Facts, ¶¶1-2, 4, 7). In connection with the Sale, the Gonrings issued a deed directly to Plaintiff, bypassing AIRES, as Hawbecker admits sometimes occurs in a sale involving relocation companues. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶¶61, 78); (Defs. Stmt. Addl. Facts, ¶2). Hawbecker testified that he could have asked AIRES or the Gonrings about who retained title to Unit 1, but never confirmed with AIRES that they possessed legal title to Unit 1 and admits that. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶64).

Plaintiff next alleges that the Gonrings were "the ultimate decision makers on the Sgariglia's attorney review proposals," and provides citation to ¶55, which in no way supports this allegation. To the contrary, throughout the attorney review process for the Sale, the Gonrings had only one communication with AIRES, attached to Plaintiff's Statement of Material Facts as Exhibit 39. Garrett Luehrs, agent for the Gonrings, copied the Gonrings to the communication only as Plaintiff's mortgage contingency deadline was approaching following the fourth of July holiday. (Pl. Stmt. Mat. Facts, Ex. 39, p. 1). Moreover, this communication establishes that the Gonrings were *not* the "ultimate decision makers"; to the contrary, on July 5, counsel for AIRES

wrote: "Our office receives direction from you (AIRES). We are not authorized to take direction directly from a transferee without your input." (Pl. Stmt. Mat. Facts, Ex. 39, p. 22).

Plaintiff then argues that "the Gonrings and AIRES . . . colluded" with one another to "brush off" Hawbecker's requests for additional information. Mot., 9. The citations referenced, however, do not show that any collusion occurred and to the contrary, show evidence of truthful responses. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶¶56-57, 65-67). Further, Hawbecker admitted that after failing to receive information from AIRES, he could have asked for the Gonrings' contact information from AIRES, and that he could have contacted the Gonrings directly since he was aware that they, not AIRES, were the "prior owners"—but did not. (Defs. Resp. Pl. Stmt. Mat. Facts, ¶65). Plaintiff cannot prove fradulent concealment where her attorney was fully aware of the nature of the transaction, and could have reached out to the Gonrings directly, but chose not to.

Plaintiff has failed to establish that there is no question of material fact that the Gonrings concealed their ownership of Unit 1—to the contrary, the evidence establishes that Plaintiff and her counsel were aware throughout the Sale, and could have—but didn't—inquire as to any questions they may have had. Summary judgment on Count II should be denied.

## Conclusion

Plaintiff has not shown that there is no question of material fact, as required to prevail on a motion for summary judgment. Based on the evidence presented, a reasonable jury could find that the Gonrings did not violate the Disclosure Act where they did not divulge water leaks in Unit 3 that had been repaired on the Disclosure Form; the Disclosure Act requires a condominium unit owner to disclose only material defects that are in the unit being sold, or its exclusive limited common elements, that have not been resolved. A reasonable jury could also find that Plaintiff did

14

not conceal the condition of Unit 3, where the Gonrings did disclose the water leaks in Unit 3 and provided information regarding the work performed by Arrow to address those leaks.  Plaintiff has also not met her burden for summary judgment regarding ownership of Unit 1 where throughout the Sale transaction, she and her counsel were aware that the Sale was taking place through a relocation company; if it was material to the purchaser to know whether the Sale was going to be consummated through one deed or two, Plaintiff's counsel could have asked, but did ntp/

Wherefore, the Gonrings respectfully ask that this Honorable Court denying Plaintiff's Motion for Partial Summary Judgment on Based Upon Liability on Counts I and II of the Second Amended Complaint, with prejudice; and for such other and further relief as this Court deems equitable and just.

Dated: <u>July 28, 2023</u>                                                  Respectfully submitted,

Nicholas and Kelsey Gonring

By:<u>    /s/ Jordan Finfer              </u>,
            One of their attorneys

Jordan Finfer (jfinfer@pfs-law.com)
ARDC #6296373
Elizabeth Archerd (earcherd@pfs-law.com)
ARDC #6329394
Patzik, Frank & Samotny Ltd.
200 South Wacker Drive, Suite 2700
Chicago, IL 60606
Phone: 312-551-8300

<u>CERTIFICATE OF SERVICE</u>

The undersigned, a non-attorney, under penalty of perjury, hereby certifies that DEFENDANTS NICHOLAS AND KELSEY GONRING'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT was electronically filed on July 28, 2023 using the court's CM/ECF system and will then send same to all ECF-registered counsel of record.


*/s/ Melissa Siedlecki*

PFS:008071.0001.3142207.1