**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MELINDA SGARIGLIA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-cv-05684 |
| v. | ) | |
| | ) | Honorable Robert W. Gettleman |
| AMERICAN INTERNATIONAL | ) | |
| RELOCATION SERVICES, LLC, d/b/a | ) | Magistrate Judge Gabriel A. Fuentes |
| AIRES, an Illinois limited liability | ) | |
| company, NICHOLAS GONRING, and | ) | |
| KELSEY GONRING, | ) | Jury Demanded |
| | ) | |
| Defendants. | ) | |
| | ) | |
| NICHOLAS GONRING and KELSEY | ) | |
| GONRING, | ) | |
| | ) | |
| Third Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| 2726 WEST CORTEZ CONDOMINIUM and | ) | |
| JOHN GORR, | ) | |
| | ) | |
| Third Party Defendants. | ) | |

**THIRD-PARTY PLAINTIFFS', NICHOLAS AND KELSEY GONRING, RESPONSE TO
THIRD PARTY DEFNDANTS' RENEWED STATEMENT OF
UNCONTESTED MATERIAL FACTS, PARTIES, AND JURISDICTION**

1.     Prior to July 25, 2018, the Gonrings owned Unit 1 in a three-condo building located

at 2726 W. Cortez Ave., Chicago, IL (the "building"). (Third-Party Cplt. ¶¶ 9 &10 ECF 55.)

**RESPONSE: Admitted.**

2.     Gorr is the owner of Unit 3 in the building and, at relevant times, the president of

the Association. (Id. ¶ 3.)

**RESPONSE: Admitted.**

3.     In December 2017, Gorr notified the other condo owners that his unit was

experiencing water infiltration from a common element in the building, and requested that the condo association pay for remediation. (Id. ¶¶ 14 & 15.)

**RESPONSE: Admitted.  Further answering, in this correspondence, Gorr informed the Gonrings that the water infiltration in his unit had existed for at least five years, and that Gorr had attempted "minor fixes", which did not resolve the issues. (See Gonrings' Statement of Additional Material Facts, Exhibit 3).**

4.      In the spring of 2018, the Gonrings relocated to Michigan for work and retained the relocation firm of American International relocation Services ("AIRES") to handle aspects of their relocation, including the sale of their condo unit. (Id. ¶ 26.)

**RESPONSE: Admitted.**

5.      On May 7, 2018, after retaining a restoration firm to determine the source of the water infiltration, the Association hired the firm of Arrow Masonry and Exteriors, Inc. ("Arrow") to remediate water infiltration into Gorr's unit. (Id. ¶ 20.)

**RESPONSE: Admitted.**

6.      Because the restoration firm had determined that the water was entering Gorr's unit through a flaw in one of the common areas, the Association agreed to treat the cost of repair as an Association expense and declared a special assessment to be paid by the three condo owners based upon their *pro rata* shares of ownership in the Building, thereby fully funding the cost of repair. (Id.)

**RESPONSE: Disputed.  While the Association agreed to treat the cost of repair as a common expense and declared a special assessment based upon their *pro rata* shares of ownership in the Building, the Gonrings dispute that the cause was "a flaw in one of the common areas".**

7.      On June 4, 2018, when Arrow completed its work, Gorr believed that the water infiltration problem with his unit had been fully remediated and that no further work was needed. (Gorr Decl. ¶ 6 attached hereto as Exhibit 1).

**RESPONSE: The Gonrings dispute the allegations in Paragraph 7 and believe that Gorr had**

2

**knowledge of additional issues requiring repair in Unit 3, which he did not disclose to the Gonrings.**

8.      Four days after Arrow completed its work, on June 8, 2018, Plaintiff, Sgariglia, signed a contract to purchase the Gonrings' unit, in connection with the Gonrings submitted a written disclosure form to the Sgariglia, which the Gonrings signed on or about May 29-30, 2018, and made additional representations through their attorney. (Third-Party Cplt. ¶ 28; Cplt. ¶¶ 8-15 & Exhibit B-1 & B-2 thereto, ECF Docs. 1 & 1-1.)

**RESPONSE:  Disputed.  The Gonrings did not make representations to Plaintiff.  Answering further, the written disclosure that the Gonrings signed on or about May 29-30, 2018 was a "Seller's Property Disclosure Statement" form prepared by AIRES, which was not required by any statute.**

9.      On June 14, 2018, as part of the contract, and as statutorily required by 765 ILCS 605/22.1, Gorr, as the Association president, prepared and signed a Section 22.1 Disclosure Statement (the "Disclosure Statement"). (Third-Party Cplt. ¶¶ 31-33 & Exhibit B thereto at 2.)

**RESPONSE: Admitted.**

10.      The Disclosure Statement stated, among other things, that there were no "capital expenditures anticipated by the Association for the current or next two fiscal years that would require a special assessment and/or increase in the monthly assessment to the unit owners." (Exhibit B to Third-Party Cplt. ¶ 4.)

**RESPONSE: Admitted.**

11.      Five days after issuing the Disclosure Statement, on June 19, 2018, Gorr listed his unit for sale. (Exhibit "1" ¶ 9.)

**RESPONSE:  Admitted.**

12.      On June 26, 2019, nearly two weeks after issuing the Disclosure Statement to Sgariglia, Gorr entered into a sales contract for his unit. (Id. ¶ 10.)

**RESPONSE:  Disputed upon the belief that the correct date is June 26, 2018.**

13.    The sales contract provided that the sale was contingent upon a satisfactory home inspection. (Id. ¶ 11.)

**RESPONSE: Admitted.**

14.    However, three days after signing the contract, the inspector hired by the buyer found an excessive amount of moisture in the unit. (Id. ¶ 12.)

**RESPONSE:  Admitted.  Answering further, Gorr did not inform the Gonrings of this finding until July 13, 2018.  (See Gonrings' Statement of Additional Material Facts, Exhibit 5).**

15.    The purchaser notified Gorr of the inspector's findings and voided the sale. (Id. 13.)

**RESPONSE: Admitted.**

16.    Still unaware of the existence of mold in his unit, Gorr relisted the unit. (Id. ¶ 14.)

**RESPONSE:  The Gonrings dispute the allegations of Paragraph 16 and believe that Gorr had knowledge of additional issues requiring repair in Unit 3, which he did not disclose to the Gonrings.**

17.    However, a second contract for the sale of Gorr's unit also failed, based upon an inspection report issued on July 22, 2018, which also found excessive amount of moisture in Gorr's unit. (Id. ¶ 15 & Exhibit "A" thereto at 1, 4, 6, 8, 12, 16.)

**RESPONSE:  Admitted.   Answering further, the Third-Party Defendants have failed to attach any Exhibit "A" to the Ex. 1 as indicated.**

18.    While both of the inspection reports found evidence of excessive moisture, neither report identified mold growth in Gorr's unit. (Id. ¶ 16 & Exhibit "A" thereto.)

**RESPONSE:  The Gonrings dispute the allegations of Paragraph 18, which is not supported by documentary evidence, including the Exhibit "A" indicated.**

19.    On July 31, 2018, as a result of the two failed inspection reports, Gorr hired MI&T Mold Inspection Testing, who found that the unit tested positive for mold. (Id. ¶ 17.)

Error! Unknown document property name.

**RESPONSE: Admitted.**

20.     As a result, Gorr decided to replace some of the floorboards in his unit. (Id. ¶ 18.)

**RESPONSE: Admitted.**

21.     On September 7, 2018, the floorboards were removed, and Gorr first discovered that the subflooring was severely damaged and that mold was growing behind the walls. (Exhibit "1" ¶ 19.)

**RESPONSE:  Admitted.**

22.     On September 7, 2018, Gorr transmitted this information to Plaintiff and the owner of Unit 2 in the building. (Exhibit C to Third-Party Cplt. at 4.)

**RESPONSE: Admitted.  Answering further, Gorr did not inform the Gonrings that mold was discovered in Unit 3 prior to the filing of this lawsuit.**

23.     On June 20, 2019, Sgariglia filed a Complaint against both the Gonrings and AIRES, alleging claims of: statutory violation of the Illinois Residential Real Property Disclosure Act by the Gonrings (ECF Doc. 1-1 ¶¶ 35-38); fraudulent concealment by both Defendants (id. ¶¶ 39-46); and, breach of contract through breach of the covenant of good faith and fair dealing by both Defendants (id. ¶¶ 47-49).

**RESPONSE:  The Gonrings admit that the Complaint asserted claims against the Gonrings for violation of the Illinois Residential Real Property Disclosure Act, fraudulent concealment, and breach of contract, but dispute that they are liable to Plaintiff under any claim.  Answering further, the claim for breach of contract against the Gonrings was dismissed on February 26, 2020.  Dkt. #31.**

24.     Count I alleged a knowing violation of the Illinois Residential Real Property Disclosure Act by the Gonrings for failing to disclosure known defects in the building or the existence of prior insurance claims within the prior five years. (ECF Doc. 1-1 ¶¶ 35-38.)

**RESPONSE:  The Gonrings admit that in Count I of the Second Amended Complaint Plaintiff alleges that the Gonrings violated 765 ILCS 77/35, but the Gonrings**

**dispute the allegations of that claim and dispute that they are liable thereunder.**

25. Count II alleged fraudulent concealment by all Defendants. (ECF Doc. 1-1 ¶¶ 39-46.)

**RESPONSE: The Gonrings admit that in Count I of the Second Amended Complaint Plaintiff alleges fraudulent concealment of that claim, but the Gonrings dispute the allegations of that claim and dispute that they are liable thereunder.**

26. Count III alleged an intentional breach of contract through a breach of the covenant of good faith and fair dealing by all Defendants; each of the three claims alleges an intentional tort. (ECF Doc. 1-1 ¶¶ 47-49.)

**RESPONSE: Disputed. Count III, for breach of contract, against the Gonrings was dismissed on February 26, 2020. Dkt. #31.**

27. The Gonrings filed their Third-Party Complaint on June 12, 2020. (ECF Doc. 55 at 1.)

**RESPONSE: Admitted.**

28. On June 14, 2018, Kelsey Gonring specifically sent an email to Gorr stating in part: "Attached is the 22.1 filed out by Ryan when we purchased. Doesn't seem like there is question pertaining to leaks so there would be no need to go into detail about issues in your unit or the building. Question 8 asks for board meeting minutes showing approval of special assessments. We can provide minutes for the meeting where we decided on hiring Arrow. No need to go into a detailed history of how and why we came to that conclusion since that is not what they are asking for. I will draft a very brief document stating our decision to hire Arrow following a recommendation to seal the building and the percentage breakdown per unit for that work." (ECF. Doc. 210 at Gorr00229; Gorr Decl. ¶ 7)

**RESPONSE: Admitted that Paragraph 28 selectively quotes from the referenced email. Answering further, Gorr completed the disclosure form required by 765 ILCS**

**605/22.1. (See Dkt. #210 at GORR00229).**

29.     27 minutes later, Kelsey Gonring directs Gorr to send the Disclosure Statement to Plaintiff's representative explaining "[p]robably best if [Plaintiff's representative] gets it from you…" (ECF. Doc. 210 at Gorr00229; Gorr Decl. ¶ 7)

**RESPONSE: The Gonrings dispute that Kelsey Gonring "directed" Gorr to send the Disclosure Statement. Answering further, Gorr completed the disclosure form required by 765 ILCS 605/22.1. (See Dkt. #210 at GORR00229).**

30.     The Sellers Property Disclosure Statement answer to Question 6(a) which has a handwritten statement from Third-Party Plaintiffs that "Unit 3 had leaks on West Facing windows HOA sealed building to resolve Unit 3 leak." (ECF Doc. 1-1 Exhibit B-2).

**RESPONSE: Admitted. Further answering, the referenced "Seller's Property Disclosure Statement" was a form prepared by AIRES, which was not required by any statute.**

31.     The Sellers Property Disclosure Statement was signed by Gonrings on May 29-30, 2018. (*Id*.)

**RESPONSE: Admitted.**

32.     The Sellers Property Disclosure Statement was never reviewed nor signed by Gorr. (*Id*.)

**RESPONSE: Admitted. Answering further, the Gonrings relied upon information provided by Gorr relating to the condition of Unit 3 in completing the Seller's Property Disclosure Statement.**

Dated: August 18, 2023                    Respectfully submitted,

                                          **Nicholas and Kelsey Gonring**

                                          By:_____/s/  Jordan A. Finfer_____
                                                  One of their attorneys

Jordan Finfer (jfinfer@pfs-law.com)
ARDC #6296373
Elizabeth Archerd (earcherd@pfs-law.com)
ARDC #6329394
Patzik, Frank & Samotny Ltd.
200 South Wacker Drive, Suite 2700
Chicago, IL 60606
Phone: 312-551-8300
Firm I.D. No.: 35160

<u>CERTIFICATE OF SERVICE</u>

The undersigned, a non-attorney, under penalty of perjury, hereby certifies that THIRD PARTY PLAINTIFFS' RESPONSE TO THIRD PARTY DEFNDANTS' RENEWED STATEMENT OF UNCONTESTED MATERIAL FACTS PARTIES AND JURISDICTION was electronically filed on August 18, 2023 using the court's CM/ECF system and will then send same to all ECF-registered counsel of record.

*/s/ Melissa Siedlecki*

9