IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| MELINDA SGARIGLIA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-cv-05684 |
| v. | ) | |
| | ) | Honorable Robert W. Gettleman |
| AMERICAN INTERNATIONAL RELOCATION SERVICES, LLC, d/b/a AIRES, an Illinois limited liability company, NICHOLAS GONRING, and KELSEY GONRING, | ) ) ) ) ) | Magistrate Judge Gabriel A. Fuentes  Jury Demanded |
| Defendants. | ) ) | |
| NICHOLAS GONRING and KELSEY GONRING, | ) ) ) | |
| Third Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| 2726 WEST CORTEZ CONDOMINIUM and JOHN GORR, | ) ) ) | |
| Third Party Defendants. | ) ) | |

**DEFENDANTS NICHOLAS AND KELSEY GONRING'S RESPONSE IN OPPOSITION TO THIRD PARTY DEFENDANTS' RENEWED SUMMARY JUDGMENT MOTION AS TO THIRD PARTY COMPLAINT**

Defendants, Nicholas and Kelsey Gonring (collectively, the **"Gonrings"**), by their attorneys, Jordan Finfer and Elizabeth Archerd with the law firm of Patzik, Frank & Samotny Ltd., for their response in opposition to Third-Party Defendants' Renewed Summary Judgment Motion as to Third-Party Complaint (the **"Motion"**) state as follows:

### Introduction

The issues in this case stems from the history of water infiltration into Unit 3 of 2726 W. Cortez Ave., Chicago, IL (the **"Building"**), the unit owned by Third-Party Defendant John Gorr

("**Gorr**"). Although Gorr was aware of the water infiltration in his unit dating back to 2012, he failed to disclose this information to his neighbors the Gonrings until 2017, when he wanted to pass the repair costs on to all members of Third-Party Defendant, 2726 West Cortez Condominium Association (the "**Association**"). Relying on Gorr, the Gonrings believed that work performed by a contractor hired by the Association had resolved the issues in Gorr's Unit 3. The evidence creates a question of fact, however, that Gorr had knowledge of continuing issues that he did not divulge, including in the statutory disclosure that he completed on behalf of the Association. Ultimately, the Association's prolonged failure to repair the issues in Unit 3—all while Gorr served as its President—allowed mold to develop in Unit 3's floors and walls, as discovered after the Gonrings left, leading to the instant litigation. While Gorr argues that he had no motive to hide the condition of Unit 3, his motive is clear and explained in the Motion itself. At the same time the Gonrings were selling Unit 1 to Plaintiff, Gorr was marketing and attempting to sell Unit 3 as well. In pushing for this sale, Gorr hid the extent of the problems, which only he knew—and which only he, as the resident of Unit 3, could know.

Drawing all reasonable inferences in favor of the Gonrings, as the Court must in ruling on the Third-Party Defendants' Renewed Summary Judgment Motion as to Third-Party Complaint, questions of fact preclude an entry of summary judgment as to Counts I, II, and III of the Third-Party Complaint.

**Material Facts**

From about May 10, 2016, until July 25, 2018 the Gonrings owned Unit 1 in the Building, a three-condo building located in Chicago. (The Gonrings' Statement of Additional Material Facts, cited herein as "**Gonrings' Stmt. Addl. Facts**" and filed contemporaneously herewith, ¶1). By way of owning Unit 1, the Gonrings became members of the Association, which is governed

by its Declaration and Bylaws. (*Id*., ¶2). When the Gonrings moved into the Building, Gorr owned Unit 3 in the Building. (Third-Party Defendants' Renewed Statement of Uncontested Material Facts, Parties, and Jurisdiction (Dkt. #216-1), cited herein as **"TPD Stmt. Mat. Facts"**, ¶2; Gonrings' Stmt. Addl. Facts, ¶3). Gorr served as President of the Association from before the time the Gonrings purchased Unit 1, until after they sold Unit 1 in July 2018. (TPD Stmt. Mat. Facts, ¶2; Gonrings' Stmt. Addl. Facts, ¶3).

On December 4, 2017, Gorr informed the Gonrings for the first time of water infiltration into Unit 3. (Gonrings' Stmt. Addl. Facts, ¶4). In this same email, Gorr stated that this water infiltration dated back at least five years, and that Gorr had made attempts to "resolve [the water infiltration] with minor fixes", which were ineffective at remediating the water infiltration. (*Id*.). Only after Gorr brought these issues to the Gonrings' attention did the Association engage Arrow Masonry and Exterior, Inc. (**"Arrow"**) in 2018 to resolve the water infiltration by sealing the Building. (TPD Stmt. Mat. Facts, ¶15).

After Arrow completed its work, in connection with the Gonrings' sale of Unit 1 to Plaintiff, the Gonrings and Gorr, as members of the Association, discussed what information the Association was required to disclose pursuant to 765 ILCS 605/22.1 (the **"Association Disclosure"**). (The Gonrings' Response to the TPD Stmt. Mat. Facts, cited herein as **"Gonrings' Resp. TPD Stmt. Mat. Facts"** and filed contemporaneously herewith, ¶¶28-29; Gonrings' Stmt. Addl. Facts, ¶5). During this discussion, Gorr did not inform the Gonrings of any additional or continuing issues to Unit 3. (Gonrings' Stmt. Addl. Facts, ¶5). The Association Disclosure stated that the Association did not anticipate any capital expenditures for the current or next two fiscal years that would require a special assessment and/or increase in the monthly assessment to the unit owners. (TPD Stmt. Mat. Facts, ¶10). The Association Disclosure was completed and signed by

3

Gorr, as President of the Association. (TPD Stmt. Mat. Facts, ¶10; Gonrings' Stmt. Addl. Facts, ¶6; Dkt. #55, Exhibit B).

Five days after signing the Association Disclosure, Gorr listed Unit 3 for Sale. (TPD Stmt. Mat. Facts, ¶11). On June 29, 2018, an inspector hired by a prospective buyer discovered an excessive amount of moisture in Unit 3, and the buyer voided the sale. (TPD Stmt. Mat. Facts, ¶¶14-15). At some point, Gorr had Arrow return to the Building to apply a second coat of sealant—a repair designed to stop water infiltration. (Gonrings' Stmt. Addl. Facts, ¶7). Gorr did not inform the Gonrings of the excessive moisture finding, or the additional work that he had Arrow perform, until July 13, 2018. (*Id*.).

Shortly after, Gorr entered a second contract for the sale of Unit 3. (TPD Stmt. Mat. Facts, ¶17). This contract failed when a second inspection also found excessive amounts of moisture in Unit 3. (*Id*.). Gorr had Unit 3 tested for mold on July 31, 2018, which tested positive, and mold was discovered under floorboards and behind walls of Unit 3 a week later. (*Id*., ¶¶19-21). After Gorr's July 13, 2018 email, the Gonrings did not receive any additional communications regarding further moisture readings or any water intrusion in Unit 3 and did not know that mold was discovered in Unit 3 until the filing of this litigation. (Gonrings' Stmt. Addl. Facts, ¶¶8-10).

**Summary Judgment Standard**

"Summary judgment is proper when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). "On a motion for summary judgment, the Court considers the evidentiary record in the light most favorable to the nonmovant and draws all reasonable inferences in its favor." *U.S. ex rel. Pileco, Inc. v. Slurry Sys., Inc.*, 872 F. Supp. 2d 710, 715 (N.D. Ill. 2012). "The party moving for summary judgment

4

bears the initial burden of submitting affidavits or other evidentiary material to show the absence of a genuine material issue of fact and that judgment as a matter of law should be granted in its favor." *Agrexco USA, Ltd. v. Benny's Farm Fresh Distrib. Co., Inc.*, 01 C 9478, 2003 WL 722232, at *1 (N.D. Ill. Mar. 3, 2003). The party opposing summary judgment must then 'designate specific facts showing that there is a genuine [material] issue for trial.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Summary judgment is warranted only if, after doing so, we determine that no jury could reasonably find in the nonmoving party's favor." *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 644 (7th Cir. 2016).

## Argument

I. **Questions of material fact regarding whether Gorr truthfully completed the 22.1 Disclosure on behalf of the Association preclude summary judgment on Count I.**

Drawing all inferences in the Gonrings' favor, questions of fact exist regarding whether Gorr truthfully all information available to him regarding the condition of his unit, as required for the Association to accurately complete the Association Disclosure, preclude an entry of summary judgment on Count I of the Third-Party Complaint.

Pursuant to 765 ILCS 605/22.1, in connection with the resale of Unit 1, the Board of Managers was to provide a statement of any capital expenditures anticipated by the Association within the current or succeeding two fiscal years. 765 ILCS 605/22.1(a)(3). In her Second Amended Complaint against the Gonrings, Plaintiff alleges that the Association Disclosure, which stated that the Association did not anticipate any capital expenditures that would require any special assessments and/or increase in the monthly assessments in the current or next two fiscal years, was false. Dkt. #44, ¶18.

The Gonrings and Gorr, as members of the Association's Board, discussed what was required to be disclosed pursuant to the statute. (Gonrings' Resp. TPD Stmt. Mat. Facts, ¶¶28-

5

29; Gonrings' Stmt. Addl. Facts, ¶5). Following this discussion, Gorr completed the Association Disclosure, and Gorr, as President of the Association, signed this document. (Gonrings' Resp. TPD Stmt. Mat. Facts, ¶¶28-29; Gonrings' Stmt. Addl. Facts, ¶6).

The evidence creates a question of fact, however, regarding whether Gorr had reason to believe that there were other issues in Unit 3 that would need Association attention. On June 29, 2019, only two weeks after filling out the Association Disclosure, an inspection by a prospective buyer uncovered an excessive amount of moisture in his unit. (TPD Stmt. Mat. Facts, ¶14). Gorr then waited another two weeks, until July 13, to inform the Gonrings that he had Arrow return to the Building to apply a second later of sealant—a repair designed to stop water infiltration. (Gonrings' Stmt. Addl. Facts, ¶7). By having Arrow return to seal the Building a second time, the evidence suggests that Gorr himself suspected that water infiltration into his unit had not stopped – although he did not inform the Gonrings of this belief but rather, kept silent throughout the completion of the Association Disclosure and Gonrings' sale of Unit 1. (Gonrings' Stmt. Addl. Facts, ¶¶8-10).

Based upon the information available to him, and him alone, the evidence creates a question regarding Gorr's knowledge that more expenditures would be required of the Association to repair additional issues in Unit 3, which he chose not to disclose in order to push forward the sale of his own unit. Drawing all reasonable inferences in favor of the Gonrings, this evidence shows that due to Gorr's choice not to disclose this information to the Gonrings, Gorr, as President of the Association, falsely completed the Association Disclosure. Accordingly, summary judgment on Count I of the Third-Party Complaint should be denied.

PFS:008071.0001.3155447.1

**II. Based upon the evidence, the Third-Party Defendants have not met their burden to show that there is no question of material fact regarding whether Gorr breached his fiduciary duties as President of the Association.**

As alleged in the Third-Party Complaint and suggested by the undisputed evidence, Gorr breached the fiduciary duties that he owed as President of the Association. "To state a claim for breach of fiduciary duty, a plaintiff must establish: (1) a fiduciary duty on the part of the defendant; (2) the defendant's breach of that duty; and (3) damages that were proximately caused by the defendant's breach." *AYH Holdings, Inc. v. Avreco, Inc.*, 357 Ill. App. 3d 17, 32, 826 N.E.2d 1111, 1125 (1st Dist. 2005).

At all times relevant, including prior to the time the Gonrings purchased Unit 1, Gorr served as President of the Association. (TPD Stmt. Mat. Facts, ¶2; Gonrings' Stmt. Addl. Facts, ¶3). There is no dispute that by virtue of this role, Gorr owed fiduciary duties to the unit owners in the Association. Specifically, the Illinois Condominium Property Act provides: "In the performance of their duties, the officers and members of the board, whether appointed by the developer or elected by the unit owners, shall exercise to the care required of a fiduciary of the unit owners." 765 ILCS 605/18.4. Similarly, Section 6.1 of the Bylaws of the Association states: "In the performance of their duties, the officers and members of the Board shall exercise, whether appointed by the Declarant or elected by the members, the care required of a fiduciary of the members." (Gonrings' Stmt. Addl. Facts, Ex. 2 at Bylaws, §6.1).

Gorr's failure to disclose the true extent of work required to remediate the issues in Unit 3 predates the events in the lawsuit. It was not until December 2017, nineteen months after the Gonrings moved into the Building, that Gorr for the first time informed the Gonrings of the five-year history of water infiltration into his unit. (Gonrings' Stmt. Addl. Facts, ¶4). Before disclosing these issues, and unbeknownst to the Gonrings, Gorr performed "minor fixes", without

7

resolving the underlying issues and prolonging the water infiltration into Unit 3. (*Id*.). Ultimately, only Gorr has knowledge of the full extent of the years-long water infiltration in his unit, which he has historically chosen to hide from other unit owners in the Building until these issues become unmanageable.

In discussing how the Association should complete the Association Disclosure, Gorr had a duty to the members of the Association to disclose all knowledge he had of the work that would be required to remediate the issues in his unit. As discussed above, questions of fact exist regarding whether Gorr (again) concealed the true extent of issues with Unit 3, in order to bolster his attempts to sell that unit. These fact issues preclude summary judgment on Count II of the Third-Party Complaint.

### III. The Association's failure to make repairs to Unit 3 was in violation of the Declaration, precluding summary judgment on Count III.

The Association's failure to repair the issues in Unit 3, in violation of the Declaration that governs the Association, is well-documented and dates back to prior to the Gonrings moving into the Building. "The declaration is the contract between the association and the unit owners governing the operation of the condominium property and association and sets forth the board's duties related to management of the property and association." *Palm v. 2800 Lake Shore Drive Condo. Ass'n*, 2014 IL App (1st) 111290, ¶75, 10 N.E.3d 307, 327. Pursuant to Section 9(a) of the Declaration:

> Association Responsibility; Common Expenses. The Association, at its expense, shall be responsible for the maintenance, repair, and replacement of those portions, if any, of each Unit which contribute to the support of the Building, excluding, however, all windows and window frames, all exterior doors and the interior surfaces of walls, ceiling and floors…Maintenance, repairs, and replacements of the Common Elements shall be performed by the Association acting by and through the Board as part of the Common Expenses, subject to the Bylaws of the Association.

8

(Gonrings' Stmt. Addl. Facts, Ex. 2 at Declaration, ¶9(a)).

As Gorr himself admitted, the history of water infiltration, of which he was fully aware, in his unit spanned years before the Gonrings move in. (Gonrings' Stmt. Addl. Facts, ¶4). However, the Association—helmed by Gorr—failed to take any action until after Gorr disclosed these issues, and under the direction of Kelsey Gonring, the Association finally engaged Arrow to perform repairs. (Gonrings' Stmt. Addl. Facts, ¶5). While the Arrow work stopped the water infiltration into Unit 3, the Association's years-long delay in remediating the issues with the limited common elements associated with Gorr's unit allowed water to build, ultimately allowing mold to grow in the floor and walls in Unit 3, as discovered after the Gonrings moved out of the Building. (TPD Stmt. Mat. Facts, ¶¶19-21). Drawing all inferences in favor of the Gonrings, as the Court must, summary judgment on Count III of the Third-Party Complaint, for breach of contract by the Association, should be denied.

**Conclusion**

The Third-Party Defendants have not shown that there is no question of material fact, as required to prevail on a motion for summary judgment. Based on the evidence presented, a reasonable jury could find that Gorr failed to truthfully inform the Gonrings about continuing issues in his unit, in breach of his fiduciary duty to the Association, and as President of the Association, falsely completed the Association Disclosure that was provided to Plaintiff. In addition, a reasonable jury could find that the Association breached the Declaration by allowing water to infiltrate Unit 3 without repair for five years—resulting in mold damage to Gorr's unit. In light of the questions of material fact that remain, the Third-Party Defendants' Motion should be denied.

Wherefore, the Gonrings respectfully ask that this Honorable Court denying the Third-Party Defendants' Renewed Summary Judgment Motion as to Third Party Complaint as to Counts

I, II, and III, with prejudice; and for such other and further relief as this Court deems equitable and just.

Dated: August 18, 2023

Respectfully submitted,

Nicholas and Kelsey Gonring

By: /s/ Jordan A, Finfer ,
 One of their attorneys

Jordan Finfer (jfinfer@pfs-law.com)
ARDC #6296373
Elizabeth Archerd (earcherd@pfs-law.com)
ARDC #6329394
Patzik, Frank & Samotny Ltd.
200 South Wacker Drive, Suite 2700
Chicago, IL 60606
Phone: 312-551-8300

PFS:008071.0001.3155447.1

CERTIFICATE OF SERVICE

The undersigned, a non-attorney, under penalty of perjury, hereby certifies that DEFENDANTS NICHOLAS GONRING AND KELSEY GONRING'S RESPONSE IN OPPOSITION TO THIRD PARTY DEFENDANTS RENEWED SUMMARY JUDGMENT MOTION AS TO THIRD PARTY COMPLAINT was electronically filed on August 18, 2023 using the court's CM/ECF system and will then send same to all ECF-registered counsel of record.

*/s/ Melissa Siedlecki*