IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MELINDA SGARIGLIA, ) | |
| ) | |
| Condominium Owner, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2019 CV 05684 |
| ) | |
| AMERICAN INTERNATIONAL RELOCATION ) | DISTRICT JUDGE |
| SERVICES, LLC, D.B.A. AIRES, AN ILLINOIS ) | ROBERT M. DOW, JR. |
| LIMITED LIABILITY COROPORATION, ) | |
| NICHOLAS GONRING & KELLY GONRING, ) | |
| ) | |
| Defendants. ) | |

**Plaintiff Responses to Defendant American International
Relocation Solutions, LLC's
LR. 56.1 Statement of Material Undisputed
Facts**

1. Plaintiff, Melinda Sgariglia, is a citizen of Illinois and resides in Cook County, Illinois. (Dkt. 44, ¶ 1.)

    RESPONSE: Admit

2. Sgariglia owns a condominium located at 2726 West Cortez Street, Unit 1, Chicago, Illinois 60622 (the "Condo"). (Dkt. 44, ¶ 1.)

    RESPONSE: Admit

3. Defendant, American International Relocation Solutions, LLC d/b/a Aires ("Aires"), is a limited liability company headquartered at 6 Penn Center West, Suite 200, Pittsburgh, Pennsylvania 15276. (Dkt. 117, ¶ 2.)

    RESPONSE: Admit

4.      Defendants Nicholas Gonring and Kelsey Gonring ("the Gonrings") are the former owners of the Condo. (Dkt. 44, ¶ 3.)

RESPONSE:  Admit

5.      The Gonrings owned the Condo from May 5, 2016 until July 25, 2018. (Dkt. 91-1, ¶ 2; Dkt. 91-2, ¶ 2; Ex. 1.)

RESPONSE:  Admit.

6.      Aires contracted with Gordon Food Service, Inc. ("Gordon Foods") on September 30, 2015 to "provide certain services to [Gordon Foods] Employees and their families in connection with the relocation of its employees." (Ex. 2, ¶ I.A.)

RESPONSE:  Admit

7.      Per their contract, the relationship between Aires and Gordon Foods is "not that of principal or agent." (Ex. 2, ¶ 6.)

RESPONSE:  Admit that contract states this.  Stating further, the parties were to transfer the property to Aires, but this never occurred.

8.      Through Gordon Foods, Aires provided relocation services for the Gonrings' move to Michigan and facilitated the sale of the Condo as part of the benefits provided to Nicholas Gonring by his employer, Gordon Foods. (Dkt. 91-1, ¶¶ 18-19; Ex. 3.)

RESPONSE:  Deny.  Aires did not facilitate the sale.  It signed the contract and represented itself as the owner.  Furthermore, the contract states that Seller are Nicholas and Kelsey Gonring and that Buyer is Aires.  Paragraph 2 and 3 of the contract states that for $510,000, "BUYER agrees to purchase and SELLER agrees to sell good and

marketable title (and such as will be insurable by any responsible title insurance company at regular rates) to the real estate located at the address indicated in paragraph I.A. above, as more fully described in Appendix A (which may be modified to correct any non-material inaccuracies in the legal description that are determined by an accurate survey), together with the following (all of which hereinafter are referred to collectively as the "property"):" .1 SELLER's personal residence and all buildings and other improvements situated upon the real estate; 1.2All of the rights and appurtenances pertaining to the real estate, including any right, title and interest of SELLER in and to adjacent easements, streets, roads, alleys and rights-of-way;and 1.3All included terms referred to in paragraph 3 below (See Aires Exhibit 3). Paragraph 8 further obliges Seller to convey to Aires a Warranty Deed, while paragraph 9.1 requires Seller to convey a Warranty Deed to Buyer or its nominee. The agreement explicitly identifies Aires as a Buyer, and this was contractual relationship between the parties.

    9.    Aires never occupied the Condo. (Ex. 4.)

    RESPONSE: Admit.

    10.    Thomas Hawbecker and Kirk Langefeld are attorneys that represented Sgariglia during her purchase of the Condo from the Gonrings. (Ex. 5 at 13:4-9; Ex. 6 at 14:22-24.)

    RESPONSE: Admit.

    11.    Hawbecker testified that he has done thousands of real estate closings over his career and that hundreds of them were with relocations companies. (Ex. 6 at 10:18-24, 11:1-6.)

    RESPONSE: Admit.

12. Hawbecker testified that the overall nature of the transaction is the same with relocation companies. (Ex. 6 at 12:6-12.)

RESPONSE: Admit.

13. Langefeld testified that he has done approximately five thousand real estate closings over his career and that approximately one hundred of them were with relocation companies. (Ex. 5 at 10:13-17).

RESPONSE: Admit.

14. Amanda Flucker is an agent for Aires who was assigned to work on Nicholas Gonring's relocation. (Ex. 7.)

RESPONSE: Admit.

15. Sarah Wilkins is an attorney who represented Aires during the sale of the Condo. (Ex. 7.)

RESPONSE: Admit.

16. On or around May 18, 2018, the Gonrings completed an Exclusive Authorization and Right To Sell/Lease agreement with Coldwell Banker Realty. (Ex. 8.)

RESPONSE: Admit.

17. On or around May 21, 2018, the Gonrings completed and signed an Illinois Realtors Residential Real Property Disclosure Form ("Disclosure Form") as required under the Residential Real Property Disclosure Act. 765 ILCS 77/35. (Ex. 9.)

RESPONSE: Admit although Kelsey Gonring signed it on May 19, 2018 and the effective date is May 17, 2018.

18. The Disclosure Form requested information only with regard to the Unit and not the common elements of 2726 West Cortez Street, Chicago, IL 60622. (Ex. 10).

RESPONE:  Deny.  The disclosure form also requests information as to the roof in paragraph 5, which is a common element.  Paragraph 4 asks for foundation, which is also a common element.

19. The Disclosure Form identifies the Gonrings as the "Seller" of the Condo. (Ex. 9.)

RESPONSE:  Admit.

20. In the Disclosure Form, the Gonrings indicate that they were not aware of "leaks or material defects in the roof, ceilings, or chimney" at the Condo. (Ex. 9.)

RESPONSE:  Admit.

21. In the Disclosure Form, the Gonrings indicate that they were not aware of "material defects in the walls, windows, doors, or floors" at the Condo. (Ex. 9.)

RESPONSE:  Admit.

22. On June 7, 2018, Sgariglia signed the Disclosure Form. (Ex. 9.)

RESPONSE:  Admit.

23. On May 27, 2018, Sgariglia signed the Condominium Real Estate Purchase and Sale Contract (the "Contract"). (Ex. 11.)

RESPONSE: Admit.

24. On June 8, 2018, Amanda Flucker, as an agent for Aires, signed the Contract. (Ex. 11.)
RESPONSE:  Admit but she also signed it for the Gonrings, as AIRES was not the owner and had no authority to convey the real estate in question.

25. Paragraph 8 of the Contract states the following:

**Closing.** Buyer shall deliver the balance of the Purchase Price (less the amount of Earnest Money, Closing Cost Credit, plus or minus preparations and escrow fees, if any) to Seller and Seller shall execute and deliver the Deed (as defined below) to buyer ("*Closing*"). Closing shall occur on or prior to July 25, 2018 at a time and location mutually agreed upon by Parties ("*Closing Date*"). Seller must provide Buyer with good and

merchantable title prior to

Closing. (Ex. 11, ¶ 8.)

RESPONSE: Admit.

26. Paragraph 10 of the Contract defines the Deed, as referenced in Paragraph 8, and states the following:

> **Deed.** At closing, Seller shall execute and deliver to Buyer, or cause to be executed and delivered to Buyer, a recordable warranty deed ("***Deed***") with release of homestead rights (or other appropriate deed if title is in trust or in an estate), or Articles of Agreement, if applicable, subject only to the following, if any: covenants, conditions, and restrictions of record; public and utility easements; acts done by or suffered through Buyer; all special governmental taxes or assessments confirmed and unconfirmed; homeowners or condominium association declarations and bylaws, if any; and general real estate taxes
> not yet due and payable at the time of closing.

(Ex. 11, ¶ 10.)

RESPONSE: Admit

27. The Contract included an Attorney Modification provision and an Inspection provision. (Ex. 11, ¶¶ 15, 16.)

RESPONSE: Admit

28. On or around May 30, 2018, the Gonrings signed a Sellers Property Disclosure Statement ("Sellers Statement"). (Ex. 10, Ex. 12.)

RESPONSE: Admit.

29. The Sellers Statement again identifies the Gonrings as the "Seller" of the Condo. (Ex. 12.)

RESPONSE: Admit. Stating further, the same document identifies Aires, LLC as the "Buyer" and it is signed by Amanda Flucker.

30. In the Sellers Statement, the Gonrings indicate that they were aware of "past or

present water leakage in the house or other structures." The Gonrings noted "Unit 3 had leaks on west facing windows—HOA sealed building to resolve Unit 3 leak." (Ex. 12.)

RESPONSE: Admit.

31. In the Sellers Statement, the Gonrings indicate that they were aware of "any shared or common areas…or maintenance agreements." (Ex. 12.) Here, the Gonrings noted "tuckpointing & sealing of building exterior." (Ex. 12.)

RESPONSE: Admit.

32. On June 7, 2018, Sgariglia initialed each page of the Sellers Statement and signed it at the bottom. (Ex. 12.)

RESPONSE: Admit.

33. On June 6, 2018, Amanda Flucker, on behalf of Aires, also completed and signed an Illinois Realtors Residential Real Property Disclosure Form ("Aires Disclosure Form"). (Ex. 4.)

RESPONSE: Deny as to completed. Ms Flucker signed it as the "Buyer" as "agent for" Aires..

34. The Aires Disclosure Form included large Xs across the form with a statement that reads, "We are a relocation company, and as such, have never occupied this property. We make no guarantee, warranty, or representation about the condition of this property. American Internal Relocation Solutions, LLC." (Ex. 4.)

RESPONSE: Admit. Stating further, it also identifies Aires, LLC as the Buyer.

35. Sgariglia signed and initialed each page of the Aires Disclosure Form on June 7, 2018. (Ex. 4.)

RESPONSEL Admit.

36. Sgariglia also received a Disclosure Statement completed by the condominium association, which included the name and contact information of the condo association board president, and the name and contact information of the condo association's insurance agent. (Ex. 13 at 123:24, 124:1-4.)

RESPONSE: Admit.

37. On June 14, 2018, Hawbecker sent an attorney modification letter to Wilkins. (Ex. 14.) In this letter, Hawbecker proposed modifications to the Contract. (Ex. 14.) In Paragraph 8(e), Sgariglia, through her attorney, requested: "Please verify that the Condo Association has not experienced any instances of water (interior or exterior) leaking in the Property and/or any water damage during Seller's ownership of the Property. If there have been any such occurrences, please provide dates, locations, damage and any repairs made." (Ex. 14.) The letter never refers to any "prior owner." (Ex. 14.)

RESPONSE: Admit. Stating further, Mr. Hawbecker assumed Aires was the owner. (See Sgariglia Stmt. Of Material Facts, ¶59).

38. On June 18, 2018, Wilkins responded to Hawbecker's attorney modification letter. In that letter, she identified herself as the attorney for American International Relocation Solutions, LLC. (Ex. 15, p. 1) She never identifies Aires as the owner of the property. (Ex. 15.)

RESPONSE: Admit Wilkins responded on June 18, 2018. Admit that she identified herself as attorney for Aires. Deny that she never identified Aires as the owner. The letter identifies the Seller as Aires. A seller has the ability to convey title, and only an owner or owner's agent may convey property. Furthermore, the Aires disclosure form accompanied with the documents indicated that Aires was the Buyer. Furthermore, in paragraph 5b, Seller reserves the right to renegotiate the purchase price with Buyer. Only an owner or authorized

agent for the owner has the authority to convey property has the legal authority to negotiate a purchase price. Furthermore, in paragraph 8a, they agree that "Seller" is responsible for the special assessments. Typically, only owners pay assessments for property and are responsible for them. Agents for sellers are not responsible for assessments and nowhere in any of their documents does Aires agree to pay any special assessments on behalf of the Gonrings.

      39.    In that same letter and in response to Paragraph 8(e), Wilkins states:

> As a third-party corporate relocation company, Seller is unable to make verifications regarding whether the Property has experienced water leaking or water damage. However, Seller agrees to abide by the terms of the "Buyer's Duty to Inspect/Test" section of the Aires addendum with respect to leak, seepage, or water infiltration of the Property, as Seller would have no knowledge of such matters unless raised during the home inspection process.

(Ex. 15, p. 2.)

    RESPONSE: Admit.

      40.    In the Home Inspection Response Letter from Wilkins to Hawbecker dated June 18, 2018 and revised on June 19, 2018, Wilkins again states that she represents "the Seller, American International Relocation Solutions, LLC." (Ex. 16.)

    RESPONSE: Admit. Stating further, Ms. Wilkins failed to disclose that she was also representing the Gonrings, was taking direction from them and communicating with them as the deal was progressing. See Plaintiff Statement of Material Facts, ¶69-75).

      41.    In the Home Inspection Response Letter, Wilkins made the following statements:

> Seller Reports that the Property's HVAC has never been serviced by the homeowners.
>
> With respect to the flickering lights issue, as the homeowners report, the flickering of one light in the main living space is not the result of a building

issue. (Ex. 16, ¶¶ 2, 4.)

RESPONSE: Admit. Stating further, Aires does not identify who is the "homeowner." Sellers are either the homeowners, per the documents, or they are agents of the homeowners, which they did not disclose. Such agency or ownership is evident in the real estate contract. Per the real estate contract, the Seller is required to convey or cause to be conveyed a recordable warranty deed. (See paragraph 10 of Real Estate Contract executed on June 8, 2018 as Aires Exhibit 11). The contract also states that in the event possession is not delivered, the Seller shall be in default. (See paragraph 9 of Real Estate Contract executed on June 8, 2018 as Aires Exhibit 11). The identification of homeowner is not a clear representation that Aires is not the owner of title at the time, as title is typically recorded at closing. (See Plaintiff Stmt. Of Material Facts, ¶59-60). However, Aires was under a duty to disclose that it is either the agent for the Seller or it is the Seller. Here, they represented themselves as Seller. Homeowner could reasonably be interpreted as the prior homeowner, as the Aires disclosure identified Aires as "Buyer." (See Aires Exhibit 12).

42. Nowhere in the Home Inspection Response Letter does Wilkins mention a "prior homeowner." (Ex. 16.)

RESPONSE: Admit. Stating further, nowhere in any letters does Wilkins deny that Aires is the Buyer of the condominium, as it so represents in its own disclosure form. (Aires Exhibit 12). Further, in no letters does Wilkins disclose that she is in communication with The Gonrings and taking direction from them. (See Plaintiff Statement of Material Facts, ¶69-75).

43. On June 22, 2018, Langefeld responded to the Home Inspection Response Letter. In response to Paragraphs 2 and 4, Langefeld wrote "Ok." (Ex. 17.)

RESPONSE: Admit.

44. Plaintiff's closing attorney, Hawbecker, stated that Aires saying it could not

provide the information because it was a relocation company was "not surprising" and "a typical response that we would receive with a relocation company." (Ex. 6, at 20:12-24, 21:1-6).

      RESPONSE: Admit.

      45.      On June 22, 2018, Sgariglia, through her attorney, Langefeld, responded to Wilkin's letter. Regarding Paragraph 8(e), Sgariglia asked: "Please confirm the same with the prior owner as the seller has direct contact with the prior owner." (Ex. 18.)

      RESPONSE: Admit as to contents and deny as to who responded. Langefeld testified that he did not specifically recall if Mr. Hawbecker also worked with him on the letters, but it was possible he did. (Exh. 5, page 34, 1-17).

      46.      On July 2, 2018, Wilkins responded to Langefeld. Wilkins's letter stated:

> With respect to Item 8(e), again, as a third-party corporate relocation company, Seller is unable to make verifications regarding whether the Property has experienced water leakage or water damage. However, Seller agrees to abide by the terms of the "Buyer's Duty to Inspect/Test" section of the Aires addendum with respect to possible leaks, seepage, or water infiltration of the Property, as Seller would have no knowledge of such matters unless raised during the home inspection process when the information reported in the Residential Real Property Disclosure Report or other homeowner provided disclosures makes no mention of water infiltration issues within the Property.

Second Amended Compl. (Doc. 44, ¶ 41; Ex. 18.)

      RESPONSE: Admit as to contents and deny as to who responded and that this was a response to Langefeld. Langefeld testified that he did not specifically recall if Mr. Hawbecker also worked with him on the letters, but it was possible he did. (Exh. 5, page 34, 1-17).

      47.      With respect to Item 8(e), Sgariglia, through her attorney, Langefeld, responded "Ok." (Ex. 18; Ex. 13 at 67:4-6.)

RESPONSE: Admit. Stating further, as of July 3, 2018, attorney Wilkins began corresponding with the Gonrings about the attorney review process and taking direction from them. This was never disclosed to Plaintiff of her attorneys.

48. Langefeld has never talked to the homeowners in a relocation closing, despite receiving similar responses in other closings involving relocation companies. (Ex. 5, at 29:8-13).

RESPONSE: Admit. Stating further, lawyers are seeking legally binding statements per the attorney review process. Statements from prior owners are not legally binding.

49. In the same June 14, 2018 letter, Sgariglia, through her attorney, Hawbecker, requested the following under paragraph 9, subparagraph a: "Seller represents and warrants that the following are true and shall remain true at the time of closing: Sellers have not made any insurance claims within the last 5 years." (Ex. 14.)

RESPONSE: Admit.

50. On June 18, 2018, Wilkins responded:

> As a third-party corporate relocation company that has never occupied the Property, Seller is unable to make representations or warranties regarding whether insurance claims have been made against the Property, as Seller would have no knowledge of such matters. (Ex. 15.)

> RESPONSE: Admit. Stating further, attorney Wilkins never informed Plaintiff counsel that Aires was not the owner, would never be the owner and never informed him that she was in communication with the Gonrings and taking direction from them.

51. Sgariglia's attorney responded with the following: Please confirm the same with the prior owner as the seller has direct contact with the prior owner. (Ex. 18.)

RESPONSE: Admit.

52. On July 2, 2018, Wilkins responded:

> With respect to item 9(a), Seller reports that the homeowners made no claims against their homeowner's insurance within the last 5 years. As a third-party corporate relocation company that has never occupied the Property, Seller is unable to make

representations or warranties regarding whether insurance claims have been made against the Property, as Seller would have no knowledge of such matters. (Ex. 19.)

RESPONSE: Admit. Stating further, see Response 50.

53. Again, Sgariglia, through her attorney, responded "Ok." (Ex. 20.)

RESPONSE: Admit.

54. Aires also reported multiple times that no work was done on the property without necessary permits and that the Property was not subject to any pending complaints, violations, or the like. (Ex. 15, ¶¶ 9(d), 9(e); Ex. 1, ¶ 9.)

RESPONSE: Admit. Stating further, this response is consistent with ownership, as they would be on notice as owners as to any repairs conducted during their ownership or notices received .

55. On July 12, 2018, Wilkins sent Hawbecker a Title Commitment dated June 13, 2018. (Ex. 21.) In that Title Commitment, the Title was vested in Nicholas Gonring and Kelsey Gonring, husband and wife, as Tenants By The Entirety. (Ex. 22, p. 5.)

RESPONSE: Admit. Stating further, attorney for Plaintiff stated testified that at closing there are typically two deeds. (See Plaintiff Statement of Material Facts, ¶60).

56. On July 12, Hawbecker forwarded a copy of the title commitment to Annie Gibson at Mutual Federal Bank (Ex. 23.)

RESPONSE: Admit.

57. Aires and Sgariglia both executed an Addendum to Purchase and Sale Agreement dated as of June 6, 2020, which listed multiple disclosures completed by "Nicholas Gonring". (Ex. 24.)

RESPONSE: Deny. This is dated June 6, 2018. As to a document on that date, the document describes 2 disclosures by Nicholas Gonring and 1 by Aires. Stating further, this

document in paragraph titled, "Ownership" states that the terms and conditions of the agreement are "subject to the seller becoming the contractual owner." This is further evidence that Aires represented itself as the owner of the property.

58. Sgariglia requested three extensions to obtain a loan commitment. (Ex. 25, Ex. 26, Ex. 27.) The first request was sent on July 6, 2018. (Ex. 25.)

RESPONSE: Admit.

59. On July 23, 2018, Langefeld requested that Terry Wilkins, a paralegal for Sarah Wilkins, confirm what personal property would be left in the Condo. (Ex. 28.) Langefeld provided a list and requested that Terry "forward to the owners." (Ex. 28.)

RESPONSE: Admit. Stating further, on July 23, 2023, Terry Denise Wilkins as paralegal states that Aires' attorneys "would not have contact with the homeowners." Later, she states, "For Aires transactions, our office has no contact with a Transferee." This was further evidence of fraud, as the attorneys were communicating and taking direction from the Gonrings from July 3, 2018. (See Plaintiff Statement of Material Facts, ¶68-75). In addition, this alleged lack of communication connotes that the Gonrings are no longer part of the transaction, and not the owners with the power to make decisions or the ability to disclose.

60. The same day, Terry Wilkins explained that the Wilkins office "would not have contact with the homeowners. BUT we will forward the List to AIRES to have them forward same." (Ex. 28.) Terry Wilkins further explained the "List has been forwarded on to Aires to be sent to the homeowner. For Aires transactions, our office has no contact with a Transferee." (Ex. 28.)

RESPONSE: Admit. Stating further, see Response 59.

61. On July 24, 2018, Langefeld asked the Wilkins law office if they were able to

confirm that all the items Sgariglia expected to be left at the Condo were indeed left. (Ex. 28.) Sarah Wilkins responded "No. Aires was not a party to that separate agreement…despite attempts to loop them in. Therefore, my office cannot confirm anything about the furniture because we represent Aires and Aires only. Perhaps the agents can shed more light." (Ex. 28.)

    RESPONSE: Admit. Stating further, this was a misrepresentation, as they had been in communication with the Gonrings and taking direction from them. Furthermore, the June 21, 2018 deed conveying the property came from The Gonrings to Plaintiff directly, demonstrating that indeed they had to be in communication only days before.

    62.    On July 24, 2018, Arianna Listecki, a paralegal at Hawbecker & Garver, LLC, and Langefeld both emailed John Gorr, president of the homeowner's association, directly. (Ex. 29.)

    RESPONSE: Admit.

    63.    Neither Langefeld nor Hawbecker ever contacted the Gonrings or attempted to contact them. (Ex 5 at 28:12-14; 28:20-24; 29:1-7, Ex. 6 at 48:3-12.) Langefeld also never asked if the Gonrings were represented by counsel. (Ex. 5 at 29:2-4.) Both attorneys testified that they could have contacted the Gonrings. (Ex 5 at 28:20-24; 29:1-7; Ex. 6 at 48:10-12, 63:1-20.)

    RESPONSE: Admit. Stating further, the attorney review letters are legally binding documents. Purchasers and Sellers are the ones in privity of contract, and not previous owners. As Plaintiff attorney Hawbecker testified, had they known that the Gonrings were the owners, they would have acted differently and refused to accept Aires representations. (See Plaintiff

Statement of Material Facts, ¶64).

64. Sgariglia also never contacted or attempted to contact the Gonrings, despite knowing the Gonrings lived in the building during the sale process. (Ex. 13 at 172:16-24; 173: 1-10.)

RESPONSE: Admit. See Response to paragraph 63.

65. Sgariglia was never told by anyone that she could not contact the Gonrings. (Ex. 13 at 175:3-7.)

RESPONSE: Admit. See Response to paragraph 63.

66. On July 25, 2018, Sgariglia signed a Hold Harmless Agreement in which Sgariglia "does release, acquit, and forever discharge [Aires], Nicholas and Kelsey Gonring" from any and all claims on account of an agreement to accept a $3,000 credit at closing. (Ex. 30.)

RESPONSE: Admit. .

67. On July 25, 2018, Sgariglia took possession of the deed to the Condo. (Ex. 13 at 23:12-15; Dkt. 44 ¶ 19.)

RESPONSE: Admit.

68. When asked at his deposition if he had known that the Gonrings were the owners, would he have acted differently, Langefeld testified "I would say no." (Ex. 5, at 35:17-23.)

RESPONSE: Admit. Stating further, Mr. Langefeld in his deposition testified that he used the term, "prior owner" in his attorney review letters, because he assumed that the Gonrings were (Ex. 5 at 22:1-12; 23: 1-13). Mr. Langefeld goes on to state that had he known that the

Gonrings were communicating with Aires attorneys, he would have pushed further to get a response from the Gonrings. (Aires Ex. 5, at 36:1-9; 40: 1-24; 41: 1-24; 42: 1-17). Further, the initial letter for attorney review was signed by Thomas Hawbecker, not Langefeld. Thomas Hawbecker stated he would have acted differently had he known that the Gonrings were the owners. (See Plaintiff Statement of Material Facts, ¶64).

    Melinda Sgariglia,

    By: /s/ Carol Oshana One of her attorneys

Carol Oshana
OSHANA LAW
20 N. Clark Street, Suite 3000
Chicago, IL 60602
Oshanalaw@yahoo.com
ARDC #: 6243613

11