nt

**In the   United States District Court
for the Northern District of Illinois
Eastern Division**

| | |
|---|---|
| Melinda Sgariglia, | |
| Plaintiff, | Case No.:   1:19-cv-05684 |
| vs. | HonorableRobert W. Gettleman |
| American International Relocation Solutions, LLC, et al., | Honorable Gabriel A. Fuentes |
| Defendants. | |

PLAINTIFF RESPONSES TO

**Defendant American International Relocation Solutions, LLC's LR 56.1(b)(3) Statement of Additional Material Undisputed Facts**

1.       Aires entered into a contract with Gordon Food Service Inc. ("GFS"), to provide relocation services to its employees. (Ex.1, GFS Contract, ¶ I.A.). However, the contract states that "[t]he   relationship between [GFS] and Aires…is that of independent contractor and not that of principal and agent." (Ex.1, ¶ I.A.).

RESPONSE:  Admit.  Stating further, the contract also designates Aires as the "Buyer" and requires conveyance of the property to Aires or its designee, in exchange for Aires payment. Conveyance occurred only to Plaintiff, and the deed never transferred to Aires or its designee. The contract further requires that Seller deliver possession to Buyer on or before July 25, 2023, instead possession was delivered to Plaintiff.   (See Exhibit 1, ¶4).

2.          Nicholas Gonring was one such employee of GFS, but there is no contractual attorney-

agency relationship between Aires and the Gonrings. (Dkt. 91-1, ¶¶ 18-19; Ex. 2, Real Estate

Purchase and Sale Agreement.)

      RESPONSE:  Admit that there is no written agency agreement.  However in practice, there

was, as Aires was not the owner of the Property owned by the Gonrings, but acted as the Seller on

their behalf.  (See Real Estate Contract, attached as Plaintiff Exhibit 31).


1

3.          Sgariglia had two attorneys from the same firm participating in the

review process, Mr. Thomas Hawbecker and Mr. Kirk Langefeld. (Ex. 3, Deposition of K.

Langefeld, at 13:4-9; Pl. MSJ[1] Ex. 32 at 14:22-24.)

RESPONSE:  Admit.

4.          Mr. Hawbecker testified that attorneys will fully disclose information to one

another, to the extent that they get that information from their clients. (Ex. Pl. MSJ Ex. 32 at

106:2-14.)

RESPONSE:  Deny.  Mr. Hawbecker testified that he would anticipate attorneys will fully

disclose.

5.          Sarah Wilkins was the real estate attorney involved in the closing and attorney-

review process with Sgariglia. (Ex. 4, Aires Answers to Plaintiff's Interrogatories, Ex. 4.)

RESPONSE: Admit.

6.          Wilkins' client was Aires. (Ex. 4.) Wilkins represented "Aires and Aires only," as

she told Sgariglia's attorney. (Ex. 5, July 24, 2018 Email.)

RESPONSE: Admit as to first sentence.  Deny as to second sentence.  Stating further, the emails

exchanged between Wilkins and The Gonrings evidence that counsel was taking orders from the Gonrings, who assumed that Wilkins represented them. Nowhere in the email correspondence disclosed by Aires does Wilkins disabuse The Gonrings of this belief.

7.     Neither Mr. Hawbecker, Mr. Langfeld, nor Sgariglia ever contacted the Gonrings. (Ex. 3 at 28:12-14; Pl. MSJ Ex. 32 at 48:3-12; Pl. MSJ Ex. 45 at 172:16-24; 173: 1-10.)
,

RESPONSE: Admit. Stating further, Defendants never informed Plaintiff's counsel that they were taking direction and communicating with the Gonrings, who assumed Wilkins was their attorney. (See Plaintiff's Exhibit 39.). In addition, counsel for Sgariglia assumed that AIRES was the owner and was seeking legal modifications to the contract, under the attorney review process. (See Plaintiff Exh. 32, Hawbecker Dep, page 30-31; 50, 56; page 36-37; 106, pages 99-101).

8.     Neither Mr. Hawbecker, Mr. Langfeld, nor Sgariglia ever asked if they could contact the Gonrings. (Ex. 3 at 29:2-4; Pl. MSJ Ex. 32 at 48:3-12; Pl. MSJ Ex. 45 at 172:16-24; 173: 1-10.)
RESPONSE: Admit. Stating further, see Response to paragraph 7.

9.     Neither Mr. Hawbecker, Mr. Langfeld, nor Sgariglia ever attempted to contact the Gonrings. (Ex. 3 at 28:12-14; 28:20-24; 29:1-7; Pl. MSJ Ex. 32 at 48:3-12; Pl. MSJ Ex. 45 at 172:16-24; 173: 1-10.)                                      speaking to the

RESPONSE: Admit. Stating further, see Response to paragraph 7.

10.    Neither Mr. Hawbecker, Mr. Langfeld, nor Sgariglia ever asked Sarah Wilkins or anyone  involved in the attorney-review process whether they or Aires were

_____

Gornings as part of the closing process. (Ex. 3 at 41:5-12; Pl. MSJ Ex. 32 at 48:3-12; Pl. MSJ

Response to 10: Admit. Stating further, counsel Hawbecker testified that he expects counsels to be honest and forthcoming. (See Exh. 32, Hawbecker Dep, page 105-106).

11. No 1-10.)

one informed Sgariglia that she could not contact the Gonrings directly. (Pl.

MSJ Ex. 45 at 175:3-7.)

Response: Admit. Stating further, see Responses to paragraph 7and 10.

12. Aires referred to the Gonrings as the homeowners multiple times in its

correspondence with Sgariglia's attorneys. (*See e.g.,* Pl. MSJ Ex. 36; Pl. MSJ Ex. 38; Ex. 6,

Home Inspection Response Letter.)

RESPONSE: Admit. Stating further, counsel for Plaintiff, Mr. Hawbecker, assumed

Aires was the owner of the property. (See Plaintiff Exh. 32, Hawbecker Dep, page 30-31, 33-34; 49-50, 56; 111). In addition, Aires admits it never disabused counsel for Plaintiff of his belief that Aires was the owner when he referred to the Gonrings as prior owners. See Aires Response to Plaintiff's Motion for Partial Summary Judgment, page 8, wherein Defendant Aires argues, "Aires was under no obligation to correct Sgariglia's attorneys use of 'prior owners'."

13. In a June 18, 2018 letter, Wilkins, attorney for Aires, twice referred to the

Gonrings as the "homeowners" and not the "prior homeowners." (Ex. 6.)

RESPONSE: Admit. Stating further, attorney Wilkins failed to clarify that as of July 3, 2018, she taking direction and communicating with the Gornings, and that they were making decisions. Furthermore, on July 23, 2018, Wilkins office also lied to Sgariglia's attorneys, when her office falsely claimed, "Our office would not have contact with the homeowners." Wilkins office further falsely corresponded, "For Aires transactions, our office has no contact with Transferee." (Aires Exh. 28).

14. On June 22, 2018, Kirk Langefeld, another Sgariglia attorney, responded to the

Home Inspection Response Letter and wrote "Ok" next to the paragraphs where Wilkins referred to the Gonrings as the "homeowners." (Ex. 6.)

RESPONSE:  Admit.

15.	Langefeld again accepted Aires' statements that "homeowners made no claims against their homeowner's insurance within the last five years" in a July 3, 2018 letter to Wilkins. (Ex. 7, July 3, 2018 letter.)

RESPONSE:  Admit.

16.	Langefeld was the only attorney to sign the attorney review letters after Hawbecker's initial June 14, 2018 letter. (Pl. MSJ Ex. 37; Ex. 7.)

RESPONSE:  Admit.  Stating further, Langefeld testified that he and Mr. Hawbecker would work together on attorney review letters, although he has no specific recollection as to this closing.  (See Aires Ex. 5, p. 34: 1-17).

17.	On July 12, 2018, Wilkins sent Hawbecker a Title Commitment dated June 13, 2018. (Ex. 8, Title Commitment.)

RESPONSE:  Admit.

18.	In that Title Commitment, the Title was vested in Nicholas Gonring and Kelsey Gonring, husband and wife, as Tenants by The Entirety. (Ex. 8.)

RESPONSE:  Admit.  Stating further, attorney Hawbecker testified that in relocation closings, there are simultaneous deeds at closing.  (See Plaintiff Exh. 32, 31-32, 56).  He also testified that he assumed that as a relocation company, the Gonrings would have

transferred the property to AIRES and that AIRES was the owner. (See Exh. 32, Hawbecker Dep, page 30-31; 50, 56).

19.     Around that same time, Sgariglia requested three extensions to obtain a loan commitment. (Ex. 9, Extension Requests.)

RESPONSE: Admit.

20.     In deposition testimony, Sgariglia's attorney Hawbecker testified that if he had known that the Gonrings were the owners of the condominium, the attorney review process would have

Langefeld, when asked at his deposition if he had known that the Gonrings were the owners, would he have acted differently, he testified "I would say no." (Ex. 3, at 35:17-23.)

RESPONSE: Admit. Stating further, Mr. Langefeld in his deposition testified that he used the term, "prior owner" in his attorney review letters, because he assumed that the Gonrings were no longer the owners. (Ex. 5 at 22:1-12; 23: 1-13). Mr. Langefeld goes on to state that had he known that the Gonrings were communicating with Aires attorneys, he would have pushed further to get a response from the Gonrings. (Aires Ex. 5, at 36:1-9; 40: 1-24; 41: 1-24; 42: 1-17). Further, the initial letter for attorney review was signed by Thomas Hawbecker, not Langefeld. Thomas Hawbecker testified he would have acted differently had he known that the Gonrings were the owners. (See Plaintiff Statement of Material Facts, ¶64).

Respectfully submitted,

Melinda Sgariglia,

By: /s/ Carol Oshana

One of her attorneys

Carol Oshana
OSHANA LAW
20 N. Clark Street, Suite 3000
Chicago, IL 60602
Oshanalaw@yahoo.com
ARDC #: 6243613

September 14, 2023

.

I  hereby