IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MELINDA SGARIGLIA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-cv-05684 |
| v. | ) | |
| | ) | |
| AMERICAN INTERNATIONAL RELOCATION SERVICES, LLC, d/b/a AIRES, an Illinois limited liability company, NICHOLAS GONRING, and KELSEY GONRING, | ) | Honorable Robert M. Dow, Jr. |
| | ) | |
| | ) | Magistrate Judge Young B. Kim |
| | ) | |
| | ) | Jury Demanded |
| | ) | |
| Defendants. | ) | |
| | ) | |
| NICHOLAS GONRING and KELSEY GONRING, | ) | |
| | ) | |
| Third Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| 2726 WEST CORTEZ CONDOMINIUM and JOHN GORR, | ) | |
| | ) | |
| Third Party Defendants. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT GONRINGS' MEMORANDUM AGAINST SUMMARY JUDGMENT BASED UPON ON LIABILITY**

1. <u>The Evidence Shows That The Failure to Disclose Defects Was a Violation of the Disclosure Act, As They Were Material, In Unit 1 and Had Not Been Resolved.</u>

Defendants ask this honorable Court to close its eyes on the mountain of evidence that Plaintiff discovered after she purchased her unit. The evidence is overwhelming. There is no dispute that Defendants received the ESI report. They wish, however, for this honorable Court to ignore the English language, where the report describes defects in the "structure." The report is not limited to Unit 1, and specifically states so. (See Plaintiff's Statement of Material Facts, ¶14-16).

Despite their protests to the contrary, the report is not limited to Unit 3 and defines the word "structure" to include the entire building. Kelsey Gonring admitted that she was aware of leaks in the building as late as June 14, 2018, as she completed the 22.1 Report. Kelsey Gonring writes to Nicholas Gonring and John Gorr, "Doesn't seem like there is question pertaining to leaks so there would be no need to go into detail about issues in your unit **or the building**. (See Plaintiff's Exhibit 33, emphasis added.) This email was drafted 7 days before they signed the Warranty Deed to Plaintiff Sgariglia. (See Exhibit 42, deed dated June 21, 2018). Furthermore, their own quotes showed that leaks were occurring in their unit. The obtained the cheapest quote they could, from Arrow Masonry, that recommended flashing for all 3 decks, including the one belonging to The Gongrings. (See Plaintiff's Exhibit 23; see also Defendant's statement of Additional Material Facts, ¶20, where Defendants admit they took a quote that "was less expensive than Bral's" ). Every quote they received addressed the problems for the entire building, not simply Unit 3. Even Bral's quote, which Defendants do not understand but rely upon heavily, quotes work for the entire structure, not just Unit 3. This is consistent with John Gorr's email to the Gonrings on February 22, 2018, where he writes to all owners, "It's not a unit-specific problem, they just have to tear out the drywall in my unit to diagnose. The windows are not leaking, the building is leaking…" The Gonrings understood full well that the problems were not unit specific, as they admitted.

  The Gonrings speciously argue that they "thought" the disclosure was only for Unit 1. Yet they ignore the timeline that implicates them with a smoking gun. The Gonrings signed the disclosure on May 27 and 28, 2018, before Arrow did any work. (See Plaintiff's Exhibit 27; see also Plantiff's Statement of Undisputed Material Facts, ¶38). The work Arrow performed states as follows: "4. All window and door perimeter caulking will be inspected on all 3 elevations and

all defective caulk will be removed and replaced..rdquo; The quote also states, "5. A Pac-clad flashing will be installed in above all 3 rear decks."  The Gonrings admit that the work started on May 31, 2018.  (See Gonrings' Response to Plaintiff's 56.1 Statement of Facts, ¶42).

The Bylaws are admitted by the Defendants to contain the following definition:  (k) Limited Common Elements. (i) The part of the Common Elements contiguous to andserving a single Unit exclusively as an inseparable appurtenance thereto including specifically balconies, decks, **porches** and such portions of the perimeter walls, floors and ceilings, **windows, doors** and all fixtures and structures therein which lie outside the Unit boundaries; (See Gonrings' Response to Plaintiff's 56.1 Statement of Facts, ¶36).  [Emphasis added].  The Arrow quote specifically references defective caulk and repairs to flashing in the limited common element of unit 1 when it identifies all 3 porches.  Nowhere does Defendant allege that unit 1 has 3 porches.  (See Gonrings' Response to Plaintiff's 56.1 Statement of Facts, ¶8, where they do not deny that the building is comprised of 3 stories.  See also ESI report, "The subject structure was athree-story condominium…" attached as Exhibit 8 ).

Despite being told *ad nasueum* that the entire structure was suffering from water leaks, despite an engineering report, multiple quotes, emails from John Gorr, and even their own hired contractor, Defendants marked "no" on the Illinois Real Property Disclosure Report for line 6, which seeks knowledge on "material defects in the walls, window, doors, or floors."  (See Plaintiff's Exhibit 27).  No reasonable finder of fact could find that the Gonrings did not violate the Act with such a blatant mistruth.

   2.   <u>Defendants Do Not Understand The Bral Report.</u>

Despite their protests to the contrary, the Bral Report does not state that there are no problems with the flashing. As the Gonrings are not versed in construction, they do not understand its meaning. Steve Hier, however, explains its meaning. As Plaintiff's expert, he explains that, "A finding of by Bral Restoration, LLC that 'existing flashing was though wall that allowed water to penetrate right into the back of block' means the flashing was not installed properly to deflect water from the inside. This is a construction defect." (See Plaintiff's Statement of Material Facts,¶27). As the Gonrings failed to retain an expert to dispute Mr. Hier's affidavit, then this Court should consider it undisputed. Nowhere in the Bral report does it state that flashing is not a problem.

3. <u>The Gonrings Were Aware of Problems Associated in the Building, Including Window and Door Openings, Up Through Closing.</u>

On June 14, 2018, days before they signed the deed transferring title to Plaintiff, the Gonrings received an email from John Gorr, complaining of water infiltration in his window. (See Plaintiff's Exhibit 41.). Indeed, a In addition, they admitted even days before closing in an email to John Gorr, where they write, "Doesn't seem like there is question pertaining to leaks so there would be no need to go into detail about issues in your unit or the building." (Plaintiff's Exhibit 33). Indeed, the email shows they agreed to conceal meeting minutes from Plaintiff, The email states, "Question 8 asks for board meeting minutes showing approval of special assessments. We can provide minutes for the meeting where we decided on hiring Arrow. No need to go into a detailed history of how and why we came to that conclusion since that is not what they are asking for." (Plaintiff's Exhibit 33). They hid the two meeting minutes from March 19, 2018 or from November 9, 2017. These meeting minutes demonstrate the seriousness of the situation, as Plaintiff would have been notified of water "infiltration." (See Exhibit 19).

This is inconsistent with the word "leak" used in the 2nd disclosure. (See Exhibit 29, para. 6). Regardless, they were required to be disclosed but the Gonrings are explicitly acknowledging that they are concealing information about the building, it's problems and those associated with the unit itself.

The Gonrings are ignoring an important part of the exculpatory language, that "the disclosures [were] intended to reflect the current condition of the premises and do not include previous problems, if any, that the seller reasonably believes have been corrected." Even if we assume the Gonrings are not being dishonest, regardless it is preposterous to assume that serious construction deficiencies can be simply sprayed away with sealant. It is even more preposterous to assume that there were no construction defects when the quote is seeking to repair construction defects, and he work had not yet commenced. Truth is, the Gonrings are not honest. There is no way they could have reasonably believed that the construction defects were repaired before work began, and when the work that is quoted is seeking repairs to openings such as decks, and tuckpointing windows and doors.

Under Count II, the Gonrings are Liable.

The extreme nature of deceit came about when Plaintiff learned that Defendant Gonrings were in communication with the Aires attorneys, who were abiding by their instructions. Unbeknownst to Plaintiff's attorneys, the Gonrings were not just record owners, they were the drivers of the closing. (See Plaintiff's Exhibit 39-40). Counsel for Plaintiff expressed his dismay at being so bamboozled by the 'sneaky' conduct. (See Plaintiff's Statement of Undisputed Facts, ¶72), And worse, the Aires attorneys lied twice, claiming that they had never spoken to the Gonrings. (See Aires Exh. 28; see also Plaintiff's Response to Defendant Aires'

5

Statement of Facts, ¶59-60). The Gonrings never mentioned to anyone that they were the drivers of the closing, owning it, completing the 22.1 and determining which documents to hide. The Defendants' conduct is beyond the pale, with evidence showing clearly that the Gonrings dumped this defective property on Plaintiff, who immediately thereafter incurred over $100,000.00 in repairs.

I. CONCLUSION

Plaintiff Sgariglia respectfully asks this honorable Court to enter judgment against Defendants Kelsey and Nicholas Gonring (Count I) for liability. In addition, Plaintiff asks this honorable Court to enter judgment against Defendant AIRES and The Gonrings for Fraudulent Concealments (Counts II and III) as to liability. Plaintiff Gonring asks that this honorable Court enter an Order to allow the matter to go to trial only on the issue of Plaintiff's damages, court costs, and attorney fees.

Respectfully submitted,

Melinda Sgariglia,

By: /s/ Carol Oshana

One of her attorneys

Carol Oshana
OSHANA LAW
20 N. Clark Street, Suite 3000
Chicago, IL 60602
Oshanalaw@yahoo.com
ARDC #: 6243613