IN THE UNITED STATES DISRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| MELINDA SGARIGLIA, | ) | 1:19-cv-05684 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Honorable Robert Gettleman |
| | ) | |
| AMERICAN INTERNATIONAL | ) | |
| RELOCATION SERVICES, LLC, D.B.A. | ) | |
| AIRES, AN ILLINOIS LIMITED LIABILITY | ) | |
| CORPORATION, | ) | |
| NICHOLAS GONRING & KELSEY GONRING, | ) | |
| | ) | |
| Defendants. | ) | |
| NICHOLAS GONRING & KELSEY GONRING, | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| 2726 WEST CORTEZ CONDOMINIUM, AN | ) | |
| ILLINOIS CORPORATION, & JOHN GORR, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**THIRD-PARTY DEFENDANTS' REPLY IN SUPPORT OF SUMMARY JUDGMENT MOTION AS TO THIRD-PARTY COMPLAINT**

Third-Party Defendants, 2726 West Cortez Condominium, an Illinois Corporation (the "Association) and John Gorr ("Gorr") (collectively "Third-Party Defendants"), by and through their attorneys, Ross Good and David Eisenberg of the law firm Loftus & Eisenberg, submit this Reply in Support of their Renewed Motion for Summary Judgment as to the Third-Party Complaint. (Doc. 216, Third-Party Defendants' Motion for Summary Judgment ("TPDMSJ")) In support thereof state as follows:

**INTRODUCTION**

Third-Party Plaintiffs, the Gonrings ("Gonrings"), have filed a Third-Party Complaint against their erstwhile neighbor, Gorr, and the "Association that is made up of three condominiums. (Doc. 55, Third-Party Complaint). As previously explained, "the gravamen of the Gonrings' Complaint is that the Association and its President, Gorr, submitted to Plaintiff a fraudulent Section 22.1 Disclosure Statement (the 'Disclosure Statement') that failed to disclose the need for a future special assessment for mold remediation in Gorr's unit." (TPDMSJ at 1). The Disclosure Statement was signed by Gorr on behalf of the Association on June 14, 2018. (Doc. 216-1, Third-Party Defendants' Renewed Statement of Uncontested Material Facts ("TPDSUMF") at ¶ 9).

The Gonrings acknowledge that "Gorr served as President of the Association from before the time the Gonrings purchased Unit 1, until after they sold Unit 1 in July 2018." (Doc. 229, Thid-Party Plaintiffs' Response in Opposition to Defendants' Renewed Motion for Summary Judgment (TPPOMSJ) at ¶ 3). The Gonrings further acknowledge that "[f]ive days after signing the Association Disclosure [Statement], Gorr listed Unit 3 for sale." (*Id.* at 4). Finally, the Gonrings acknowledge that Gorr's attempt to sell his unit "failed when a second inspection also found excessive amounts of moisture" in Gorr's unit and on July 31, 2018 his unit tested positive for mold which was subsequently "discovered under floorboards and behind walls of Unit 3." (*Id.* at 4). None of this is disputed between Third-Party Plaintiffs and Third-Party Defendants.

Third-Party Plaintiffs do not, and cannot, allege that Third-Party Defendants had any knowledge beyond Third Party Plaintiffs' on June 14, 2018 when signing the Disclosure Statement at issue. Moreover, Third-Party Plaintiffs fail to acknowledge that Third-Party Plaintiff Kelsey

Gonring provided the Disclosure Statement at issue to Gorr for his signature with the following statement:

> "Attached is the 22.1 filed out by Ryan when we purchased. Doesn't seem like there is question pertaining to leaks so there would be no need to go into detail about issues in your unit or the building. Question 8 asks for board meeting minutes showing approval of special assessments. We can provide minutes for the meeting where we decided on hiring Arrow. No need to go into a detailed history of how and why we came to that conclusion since that is not what they are asking for. I will draft a very brief document stating our decision to hire Arrow following a recommendation to seal the building and the percentage breakdown per unit for that work."

(TPDSUMF at ¶ 28). 27 minutes later, having reviewed the Disclosure Statement Gorr prepared, Kelsey Gonring directed Gorr to send the Disclosure Statement to Plaintiff's representative explaining "[p]robably best if [Plaintiff's representative] gets it from you…" (TPDSUMF at ¶ 29.) Gorr had no knowledge what communications, if any, were happening at this time between the Gonrings and Plaintiff Melinda Sgariglia ("Plaintiff"), the buyer of their condominium. Regardless, the Gonrings have not put forth any factual basis to believe that Third-Party Defendants had reason to know that any portion of the Disclosure Statement was inaccurate at the time it was signed by Gorr on June 14, 2018.

## ARGUMENT

**I. No Questions of Material Fact Exist Regarding Gorr's Knowledge at the Time He Signed the Disclosure Statement.**

The timeline put forth by the Gonrings in support of the proposition that a question of fact exists regarding whether Gorr had reason to believe that there were other issues that would need Association attention falls flat. As previously stated, Gorr signed the Disclosure Statement, which was provided by Kelsey Gonring, on June 14, 2018. (TPDSUMF at ¶ 9). "[F]ive days after signing the Association Disclosure [Statement], Gorr listed Unit 3 for sale." (*Id.* at ¶ 4). "On June 29, 201[8], only two weeks after filling out the Association Disclosure [Statement], an inspection by

a prospective buyer [of Gorr's Unit] uncovered an excessive amount of moisture." (TPPOMSJ at 6). Gorr did not find out that his unit had mold until July 31, 2018, when the mold test indicated that there were elevated levels of mold in the unit. (TPDSUMF at ¶¶ 16-22). The source of the mold was discovered on September 7, 2018 when he removed the floorboards after a second prospective purchaser produced another inspection report finding excessive moisture. (TPDSUMF at ¶¶ 16-22). All of this occurred 6 weeks after Gorr and the Association had issued the Disclosure Statement to Plaintiff. (TPDSUMF at ¶¶ 9 & 21). The Gonrings make no allegation that Gorr had this knowledge at the time the Disclosure Statement was signed.

**II. The Gonrings' Allegations that Gorr prolonged water infiltration into his own Unit are Baseless.**

It is undisputed that Gorr was both (1) the owner of Unit 3, and (2) the president of the 3-unit Association. (TPDSUMF at ¶ 2). The Gonrings allegation that "Gorr's failure to disclose the true extent of the work required to remediate the issues in Unit 3 predates the events in the lawsuit" is misleading at best. Specifically, the Gonrings cite to no document or testimony for the proposition that Gorr was aware of the work required to remediate the issues described at the time the Disclosure Statement was signed.

Moreover, the Gonrings create the false impression that Unit 3 was not in fact Gorr's own unit that Gorr actively occupied. The Court views the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997). It is facially unreasonable to infer that Gorr, occupying his own unit, failed to disclose remediation work necessary to the Association to inaccurately sign a Disclosure Statement that benefitted only the Gonrings to the detriment of

4

Plaintiff, the buyer of the Gonrings' unit. All testimony and documentation obtained to date shows that Gorr had no knowledge beyond what was in the Disclosure Statement at the time it was signed.

**III. The Association Did Not Breach Its Contract to the Gonrings.**

The Gonrings' claim against The Association fails for the same lack of evidence. The Gonrings' breach of contract claim asserts that "[t]he Association breached their duties under the Declaration when it failed to remediate the issues with the limited common elements associated with Gorr's unit." (Third-Party Complaint at ¶ 59). The Gonrings further allege that they "have been damaged as a result of the Association's breach of its duties under the Declaration." (*Id.* at ¶ 60).

In fact, a review of the TPPOMSJ shows no dispute regarding the steps the Association took to remediate the infiltration of water into Gorr's unit when it became clear that the water was coming through a flaw in a common element; and, has taken steps to remediate the mold as soon as the existence of the mold was known. (TPDSUMF at ¶¶ 3, 5, 6, 7).

The Gonrings have not averred any facts indicating that the Association breached the applicable bylaws or declaration in the manner in which they dealt with the water infiltration or, later, with the presence of mold. To the contrary, all available evidence indicates that the Association acted promptly and effectively. As such, there is no evidence supporting the Gonrings' claim for breach of contract.

## **CONCLUSION**

WHEREFORE, for the reasons stated herein, Third-Party Defendants, 2726 WEST CORTEZ CONDOMINIUM and JOHN GORR, respectfully ask this Court to grant summary judgment in their favor on the Third-Party Complaint and to grant such other relief as the Court deems appropriate under the circumstances.

          Respectfully submitted,
          **2726 WEST CORTEZ CONDOMINIUM and JOHN GORR**
          Third-Party Defendants

          By: __/s/ Ross M. Good_____
               One of Their Attorneys

David Eisenberg, Esq.
Alexander Loftus, Esq.
Ross M. Good, Esq.
LOFTUS & EISENBERG, LTD.
161 N. Clark St., Suite 1600
Chicago, Illinois 60601
T: 312.899.6625
david@loftusandeisenberg.com
alex@loftusandeisenberg.com
ross@loftusandeisenberg.com

Dated: September 28, 2023

## **CERTIFICATE OF SERVICE**

I, Ross M. Good, an attorney, hereby certify that on September 28, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to all counsel of record.

                                                      /s/ *Ross M. Good*