# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MELINDA SGARIGLIA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-cv-05684 |
| v. | ) | |
| | ) | Honorable Robert M. Dow, Jr. |
| AMERICAN INTERNATIONAL | ) | |
| RELOCATION SOLUTIONS, LLC, d/b/a | ) | Magistrate Judge Gabriel A. Fuentes |
| AIRES, an Illinois limited liability | ) | |
| company, NICHOLAS GONRING, and | ) | Jury Demanded |
| KELSEY GONRING, | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT STATUS REPORT ON DAMAGES

Plaintiff Melinda Sgariglia (**"Plaintiff"**), together with Defendants Nicholas and Kelsey Gonring (together, the **"Gonrings"**), file their Joint Status Report on Damages pursuant to Dkt. #245, Dkt. #247, and Dkt. 249, and state as follows:

**A. Plaintiff Claims of Damages.**

Plaintiff Sgariglia submitted to Defendants an Excel Spreadsheet containing her damages. The entire building at 2726 W Cortez required extensive repairs, and Plaintiff was responsible for 44%, per the condo bylaws. The summary of damages will be filed by Plaintiff contemporaneously and Excel Spreadsheet can be emailed to the Court.

The work repairing the masonry for the building cost $140,725.00, and Plaintiff paid $61,919.00.

Contractor Mold Solutions charged $13,469.00 and Plaintiff paid $5,926.36.

Structural exploratory work cost $10,530.00 and Plaintiff paid $4628.80.

Truss work and roof replacement cost $95,720.00 and Plaintiff paid $42,116.80.

South facing terrace roof replacement cost $6,435.00 and Plaintiff paid $2831.40.

The front door refinishing cost $1150.00 and Plaintiff paid $490.60.

The total work already performed cost $267,984.00 and Plaintiff has paid $117,912.96 in building repairs alone.

Steve Hier, building inspector and masonry expert, charged the Associiation a consulting fee to oversee the repair work and ensure quality. Plaintiff paid her share, for a total of $2574.10.

The HOA was also involved in a lawsuit due to the insurance claim and demand letter to Arrow Masonry, of which Plaintiff paid $2,530.00 in lawyer fees as her share.

In addition, the insurance premiums for the building increased after their original insurer, Erie, dropped the Association. Plaintiff pays an additional $2646.00 per year and has been doing it since July 2021 to date. The new policies are with State Farm and Cincinnati Insurance. There are two insurance policies due to the lawsuit against John Gorr, as President, by the Gonrings.

In addition, Plaintiff has to replace her front windows that are leaking and she received an estimate for $19,750.00.

Steve Hier also recommends that heat trace cables must be installed to prevent water seepage between down spouts and the roof membrane. The freeze thaw cycle is forcing water into the building, which is affecting Unit 3's ceiling and walls. Plaintiff's portion of this is $2,882.00.

Bob Kelly, a masonry contractor with Wickwright, charged the Association $150 to create a quote and Plaintiff paid $66.00.

To pay for these repairs, Plaintiff took a loan of approximately $20,000.00 against her 401k and withdrew an additional $100,000, and paid $33,333.00 in taxes. Plaintiff's IRS payments were made over the course 3 years.

Plaintiff was also forced to obtain a HELOC of $100,000.00 to pay for repairs with a variable interest rate. There is ongoing interest accruing and as of Nov 28, 2023, her interest

payments are $18,855.74.

In addition, Unit 3, John Gorr, is demanding repairs to his unit that is caused by the original structural damages. This work was fully completed on his unit and his claim is $12,672.00 for Unit 1 only.

At this point, excluding fees and costs, the damages amount to $225,550.01.

Plaintiff is also incurring attorney fees and court costs, and continues to accrue interest. Plaintiff has no way of eliminating her debt without selling her unit. Her real estate agent, Connie Grunwaldt of At Properties and Joseph Hermiz with Connie Dornan of At Properties, advised her that she cannot sell her unit for fair market value during the pendency of this lawsuit. In addition, the agent informed her that most lenders will not finance the purchase of a property that is in litigation.

**B. Gonrings' Position on Plaintiff's Claimed Damages.**

The Gonrings dispute Plaintiff's claimed damages as largely unconnected to any conduct attributable to the Gonrings. Under the Illinois Residential Real Property Disclosure Act, 765 ILCS 77/1 *et seq.* (**"Act"**), a home seller who violates a provision of the Act is liable to the purchaser in the amount of actual damages and court costs. 765 ILCS 77/55. A claim for fraudulent concealment similarly requires a plaintiff to prove damages; specifically, "that reliance by the person from whom the fact was concealed led to his injury." *Iron Workers Tri-State Welfare Plan v. Jaraczewski*, 02 C 2596, 2002 WL 31854972, at *4 (N.D. Ill. Dec. 19, 2002) (quoting *Trustees of AFTRA Health Fund v. Biondi,* 303 F.3d 765, 777 (7th Cir.2002)). This requires more than just proof that the plaintiff incurred expenditures; the damages must be caused by the fraudulent concealment itself. *See Linkepic Inc. v. Vyasil, LLC*, 370 F. Supp. 3d 906, 920 (N.D.

Ill. 2019) (declining to enter summary judgment on the issue of damages where plaintiff failed to show that injuries resulted from defendant's silence).

In ruling on Plaintiff's Motion for Summary Judgment, the Court found that the Gonrings fraudulently concealed water infiltration issues in the Building when, on May 19 and 21, 2018, they completed their Residential Real Property Disclosure Form, pursuant to the Act, and on May 29 and 30, completed a Seller Property Disclosure Statement, stating that the Building had been sealed to resolve leaks in Unit 3 when Arrow's work was not completed until June 6, 2018. Dkt. #244 at 18. The Court further found that the Gonrings violated the Act by not disclosing "material construction defects", created by the porous nature of the split-face block in the Building, which were unresolved at the time the Residential Real Property Disclosure Form was completed as Arrow had not completed its work.. Dkt. #244 at 20. Plaintiff signed the Seller Property Disclosure Statement, indicating that she received the document, on June 7, 2018, after the Arrow work was completed. In addition, the Gonrings provided Plaintiff with the Arrow contract and HOA meeting minutes, disclosing the work to be completed and timing of the same.

As explained below, the vast majority – if not all – of Plaintiff's claimed damages did not result from any concealment by the Gonrings. Instead, Plaintiff is seeking to recover amounts spent on issues that the Gonrings were not aware of and other work, entirely unrelated to this litigation, that the Association has chosen to perform. Plaintiff cannot recover for home repair costs that are in no way connected to the Gonrings' conduct and instead, simply related to her ownership of Unit 1.

1. **Any potential damage arising out of the Gonrings' adjudged concealment was resolved before the Plaintiff moved into Unit 1.**

There is no dispute that Arrow completed its work on the Building on June 6, 2018, before the Gonrings closed on their sale of Unit 1 to Plaintiff. Based on the undisputed evidence, the

water infiltration into the Building was resolved once Arrow completed its masonry work; this has been confirmed by testimony from the owner of Unit 3, John Gorr (**"Gorr"**). Although the Court found that the Gonrings' statements were not true at the time made because the Arrow work was not completed, the evidence shows that Plaintiff suffered no damages as a result of these statements.

No evidence has ever been produced, at any point in this case, to demonstrate that any water infiltration into the Building continued after the masonry work was completed by Arrow. Despite this, the Association chose to move forward with additional masonry work, claimed by Plaintiff above. As the Arrow work resolved the issues of which the Gonrings and all members of the Association were aware, the Gonrings dispute that any additional masonry work to the Building, or the fees charged by masonry contractor Bob Kelly, were necessary. Similarly, in light of the fact that the Arrow work resolved the issues, the lawsuit that the Association filed against Erie Insurance and the demand letter that it sent to Arrow were unnecessary expenses, not caused by their concealment.

### 2. Plaintiff's remaining damages are not the result of any concealment or violation by the Gonrings.

The Gonrings are not liable for Plaintiff's share of all work that the Association chooses to perform at the Building, *ad inifinitum*; only for those repairs caused by their concealment. The remaining items, discussed below, are unconnected to the issues that the Court found the Gonrings concealed from Plaintiff. Instead, these damages are specific to Unit 3 and were discovered long after the closing of the sale to Plaintiff.

**Mold.** In granting the Third-Party Defendants' Motion for Summary Judgment, the Court found that Gorr did not discover the presence of mold in Unit 3 of the Building until July 31, 2018, and did not discover the location of this mold until he removed his floorboards on September 7,

2018.  Dkt. #244 at 21.  The Gonrings' sale of Unit 1 to Plaintiff closed on July 25, 2018.  The Gonrings could not conceal an issue that was not discovered in the Building until after they had closed on the sale of Unit 1 to Plaintiff  All work connected to mold remediation is unrelated to the Gonrings' liability in this lawsuit.

**Structural Exploratory Work.**  The documents produced by Plaintiff, including the Excel Spreadsheet referenced above, reveal that the structural exploratory work which Plaintiffs is claiming as damages was performed <u>after</u> the Association completed the additional masonry work claimed by Plaintiff.  This work bears no relation to the work completed by Arrow or water infiltration in the Building – the only matters that this Court found the Gonrings concealed – but solely concerns work for unrelated repairs that the Association chose to perform after it completed all masonry work at the Building.

**Truss work, roof replacement, and south facing terrace roof replacement.**  Following the "structural exploratory work", the Association repaired ceiling joists in Unit 2 and Unit 3 of the Building; replaced the roof of the Building; and replaced the roof on the south facing terrace roof for the terraces on Unit 2 and Unit 3.  There is no evidence that the Gonrings had any knowledge of any issues to these elements.  These repairs are unrelated to the water infiltration which the Gonrings are aware of and are located in units in which the Gonrings did not live, and could not have concealed issues relating to the same.

**Front door refinishing.**  Plaintiff claims that the Gonrings are liable to her for amounts spent refinishing the front door.  Based on the documents produced by Plaintiff, Plaintiff is referring to the front door of the Building, not any door connected to Unit 1.  The evidence does not show that this work was performed to remediate any water infiltration, but for cosmetic reasons.  Moreover, the front door of the Building was not identified as a defect in either the Bral

or Arrow reports, and there is no evidence that the Gonrings were aware of any defects in this front door.

**Heat trace cables.** Plaintiff writes that Steve Hier, the contractor hired by the Association, has recommended heat trace cables, which Plaintiff contends is to "prevent water seepage between down spouts and the roof membrane". As an initial matter, Plaintiff has failed to produce any documents to support this claimed damage. Moreover, there is no evidence that the Gonrings had knowledge of any defects in either the down spouts or the roof, including water infiltration through the roof.

**Front windows leaking.** While Plaintiff claims that her front windows are leaking and need to be replaced, there is no evidence that the Gonrings had knowledge of or experienced any leaks from the windows during their ownership of Unit 1. Prior to the sale, Plaintiff obtained an inspection of Unit 1. Pursuant to this inspection report, the windows of Unit 1 did not have any issues at the time of the sale.

**Additional damages.** The additional damages claimed by Plaintiff relate not to the Gonrings' concealment, but the unrelated repairs that the Association chose to undertake. These unrelated expenses include the fee charged by Steve Hier; the insurance premiums; Plaintiff's loan; taxes incurred by Plaintiff; and the HELOC.

3. **The Gonrings are not liable for an unspecified claim asserted by the owner of Unit 3 for issues in Unit 3.**

Plaintiff claims, for the first time in this report, that the owner of Unit 3, John Gorr, is demanding repairs to his unit "that is caused by the original structural damages." Plaintiff has produced no documentation relating to either this claimed work or Gorr's demand that the Association cover the same. No explanation is given for either what the work is or why it would be the Association's responsibility to cover the cost of the same. Without this critical information,

Plaintiff cannot prove that these claimed damages – damages arising five years after the Gonrings conveyed Unit 1 to Plaintiff, and arising out of a different unit – are caused by, or related in any way to, the Gonrings' conduct.

Dated: December 15, 2023

Respectfully submitted,

/s/ Carol Oshana
Carol Oshana (ARDC #6243613)
OSHANA LAW
20 N. Clark Street, Suite 3000
Chicago, IL 60602
Oshanalaw@yahoo.com
**Counsel for Melinda Sgariglia**

/s/ Elizabeth L. Archerd

Jordan A. Finfer (ARDC #6296373)
Elizabeth L. Archerd (ARDC #6329394)
Patzik, Frank & Samotny Ltd.
200 S. Wacker Drive, Suite 2700
Chicago, IL 60606
jfinfer@pfs-law.com
earcherd@pfs-law.com
**Counsel for Nicholas and Kelsey Gonring**

<u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, under penalty of perjury, hereby certifies that the foregoing **Joint Status Report on Damages** was electronically filed on December 15, 2023 using the court's CM/ECF system and will then send same to all ECF-registered counsel of record.

*/s/ Elizabeth L. Archerd*