IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELINDA SGARIGLIA, ) ) Plaintiff, ) v. ) ) AMERICAN INTERNATIONAL RELOCATION SERVICES, LLC, d/b/a AIRES, an Illinois limited liability company, NICHOLAS GONRING, and KELSEY GONRING, ) ) ) ) ) ) ) Defendants. ) ) NICHOLAS GONRING and KELSEY GONRING, ) ) ) Third Party Plaintiffs, ) ) v. ) ) 2726 WEST CORTEZ CONDOMINIUM and JOHN GORR, ) ) ) Third Party Defendants. ) | Case No. 1:19-cv-05684 Honorable Robert M. Dow, Jr. Magistrate Judge Young B. Kim Jury Demanded |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FOR DAMAGES AND FOR LEAVE TO FILE A PETITION FOR ATTORNEY FEES & COSTS**

**I.      STANDARD OF REVIEW**

Summary judgment is appropriate there is no genuine issue of as to any material fact and … the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Factual disputes are 'material' only when they might affect the outcome of the suit under the governing law." *Oest v. Illinois Dept. of Corrections*, 240 F3d 605, 610 (7th Cir. 2001). While the court must take the facts in the light most favorable to the party opposing the motion, the nonmoving party cannot rest on the pleadings alone, but must identify specific facts that raise more than a

mere scintilla of evidence to show a genuine issue of triable fact. See *Cornfield v. Consolidated High School District No. 230*, 991 F.2d 1316, 1320 (7th Cir. 1993); see also *Murphy v. ITT Technical Services*, 176 F.3d 934, 936 (7th Cir. 1999)

**II.     ARGUMENT**

    A.   THERE IS NO GENUINE ISSUE OF FACT THAT PLAINTIFF INCURRED DAMAGES AS A RESULT OF THE FRAUD , AND THAT SUCH DAMAGE REPAIRS ARE REMEDIAL.

In an action for fraud based on defects in property, Illinois courts have recognized two appropriate methods for measuring damages. "The first method is granting the plaintiff the benefit of the bargain, i.e., subtracting the value the property actually had at the time of the sale, given thedefects, from the value the property would have had at the time of the sale had the defects not existed." *Napcor Corp. v. JPMorgan Chase Bank, NA*, 406 111. App. 3d 146, 157 (2d Dist. 2010). The second method is to determine "the cost of fixing the property to make it conform to the condition it would have had without the defects." Id. (citing *Posner v. Davis*, 76 111. App. 3d 638, 645 (1st Dist. 1979)). "Such evidence may also be probative of the value the property actually had at the time of sale." *Posner*, 76 111. App. 3d at 645. Absolute certainty concerning the amount of damage is not necessary to justify a recovery where the existence ofdamage is established; the evidence need only tend to show a basis for the computation of damages with a fair degree of probability. *DeKoven Drug Co. v. First National Bank* (1975), 27 Ill. App. 3d 798, 327 N.E.2d 378.

In addition to actual damages, certain consequential damages proximately resulting from the fraud are recoverable. *Home Savings & Loan Association v. Schneider*, 127 Ill.App.3d 689, 469 N.E.2d 585, 589; 82 Ill.Dec. 941, 945 (3d Dist.1984), aff'd in part & rev'd in part on other grounds, 108 Ill.2d 277, 483 N.E.2d 1225, 91 Ill.Dec. 590 (1985); Tan v. Boyke, 156 Ill.App.3d

49, 508 N.E.2d 390, 394; 108 Ill.Dec. 229, 233 (2d Dist.1987); Restatement (Second) of Torts § 549 (1977) (in a business transaction, additional damages to give plaintiff the benefit of his or her bargain may be recovered if properly proved).See also Restatement (Second) of Torts § 549(1) (b) (1977) (expenses incurred in preparing to use property in a manner the defendant has represented as appropriate are recoverable).

Plaintiff Sgariglia's recoverable damages are those that pertain to defects in construction in the original construction of the Property. Ms.Sgariglia and the Cortez Property Association retained Mr. Hier to ensure the work the work that contractors would bring the Cortez Property to the condition it would have been in without the concealed construction defects. (See Undisp. Stmt of Facts, ¶8-13). Mr. Hier noted in his initial inspection that the Cortez Property suffered from water intrusion. (Undisp. Stmt of Facts, ¶12). With Mr.Hier's oversight, the Cortez Property Association set out to retain contractors and bids to do the necessary repairs. (Undisp. Stmt of Facts, ¶12, 14).

The Association initially undertook the work of mold remediation in Unit 3. (Undisp. Stmt of Facts, ¶19). The Association paid $13,469.00 for mold remediation work to Mold Solutions. (Undisp. Stmt of Facts, ¶19, 31; see also Exh. 18). In addition, the Association hired B. Allendorfer, which began the process of remedying problems that could be seen during the representative's initial site visit. (Undisp. Stmt of Facts, ¶15-18). B. Allendorfer's agreed to reduce their initial quote to $120,000.00 to be on par with competing bids. (Undisp. Stmt of Facts, ¶18). The Association fully paid this invoice. (Undisp. Stmt of Facts, ¶30; see also Exh. 8-9).

As B. Allendorfer worked, they opened the 3rd floor walls and ceiling at the behest of Mr. Hier. (Undisp. Stmt of Facts, ¶21-23). This exploratory work cost the Association $10,530.00.

(Undisp. Stmt of Facts, ¶21-23). After the exploratory work, both Mr. Hier and Mr. Allendorfer concluded that the Cortez Property roof was in danger of collapsing, and set out to repair it. (Undisp. Stmt of Facts, ¶12, 14). B. Allendorfer quoted $64,690.00 for truss repairs, and $27,500.00 for roof removal and repairs to facilitate the truss repairs. (Undisp. Stmt of Facts, ¶21-23; see also Exh. 8-9).

Thereafter, B. Allendorfer continued the necessary work to ensure that the Cortez Property prevented further water infiltration. (Undisp. Stmt of Facts, ¶24-25). For instance, The Association paid $7,500.00 for sealant, $2,400.00 for tuckpointing the front exterior brick, $2,125.00 for the exterior glass block window replacement, and $3,000.00 to repair deteriorated stairs. (Undisp. Stmt of Facts, ¶21-13; see also Exh. 24-25). Mr. Hier and Mr. Allendorfer later discovered that additional leaks were coming from the terrace roofs. (Undisp. Stmt of Facts, ¶26). The Association paid $5,700.00 to repair the terrace roofs. (Undisp. Stmt of Facts, ¶21-26; see also Exh. 14).

Additional construction defects to the Cortez Property Association garage necessitated repairs. (Undisp. Stmt of Facts, ¶28). The Association paid $17,400.00 to Classic Restoration, $9,400.00 to Renner & Renner to repair the garage roof, and Ms. Sgariglia paid $9,810.00 to build a new wooden deck on the roof. (Undisp. Stmt of Facts, ¶21-13; see also Exh. 46).

Ms. Sgariglia's front facing windows have deterioration that that was caused by bad caulking, bad flashing or bad installation. (Undisp. Stmt of Facts, ¶27). In April 2021, B. Allendorfer provided a quote of $19,750.00 for window replacement, however that price has now increased to $24,000.00 at least. (Undisp. Stmt of Facts, ¶21-13; see also Exh. 15; see also Exh. 50, ¶30).

In applying the he second method is to determine "the cost of fixing the property to make it conform to the condition it would have had without the defect," it is determined by both experts, Mr. Hier

4

and Mr. Allendorfer, that the masonry, roof and garage work was remedial in nature. (Undisp. Stmt of Facts, ¶21-28; 47). All the work performed by Mr. Allendorfer's company was to either prevent the roof from collapsing or to repair defective portions of the Cortez Property while preventing further water infiltration. Even the quotes to repair Ms. Sgariglia's windows are remedial, as they are currently leaking.

Additionally, the cost to repair the mold was remedial and in conformity with Mr. Hier's initial Cortez Property report, wherein her recommended a mold inspector evaluate possible mold. (Undisp. Stmt of Facts, ¶12; see also Exh. 1). Based upon this recommendation, the Association retained a mold company to evaluate and remedy the mold, while Ms. Sgariglia visited the site on a daily basis to observe the repairs. (Undisp. Stmt of Facts, ¶19). Removing mold is remedial in nature. Furthermore, replacing the glass blocks was remedial to prevent further water intrusion into the Cortez Property, while fixing deteriorating stairs is essential for the integrity of the Cortez Property. All of these issues directly relate to conforming the Cortez Property to the condition it would have been in had the defects not existed. Indeed, given that Defendant Sgariglia disclosed none of the defective conditions, the work was done to conform with how they represented the Cortez Property's condition.

Furthermore, Ms. Cortez should be entitled to her consequential damages to the benefit of her bargain. Ms. Sgariglia was forced to incur debt that she would never would have needed but for the Defendant Gonrings fraud. (Undisp. Stmt of Facts, ¶46). Specifically, Ms. Gonring had to borrow $100,000.00 from her 401k, resulting in a tax penalty of $33,333.00. (Undisp. Stmt of Facts, ¶41; see also Exh. 15; see also Exh. 39, 49). She incurred interest in the amount of $17,794.76 on her home equity line of credit and loan against her 401k. (Undisp. Stmt of Facts, ¶41, 49). She also paid $2,105.43 in interest for her $35,000 loan against her 401k. (Undisp. Stmt of

5

Facts, ¶42.) All this money was a consequence of the fraud perpetrated by the Gonrings. It would be fundamentally unfair to require Ms. Sgariglia to incur all this debt, as it would not give her the benefit of her bargain. Ms. Sgariglia purchased a home from the Defendant Gonrings that was free from structural defects. Even professionals like Ms. Sgariglia cannot typically afford to purchase a condominium and immediately thereafter, pay over $100,000 to contractors to repair work that they did not anticipate. Borrowing funds was her only option, as she only had money saved for normal, regular maintenance. . (Undisp. Stmt of Facts, ¶ 46). She should recover all her penalties and interest payments from the Gonrings as compensation for their fraud.

Ms. Sgariglia should also be permitted to recover the expenses that she incurred from the Gonrings' failure to disclose the ESI report, minutes pertaining to the matters the led to retaining Arrow masonry and past insurance claims. (Undisp. Stmt of Facts, ¶ 38). As a result, the Association paid attorneys to recover some of their losses from both Erie Insurance and Arrow Masonry. (Undisp. Stmt of Facts, ¶ 38; see also Exh. 32, 37). Melinda paid $2,640.00 of this. . (Undisp. Stmt of Facts, ¶ 38; see also Exh. 32, 37, 49).

Ms. Sgariglia also had to pay increased insurance premiums, thanks to Defendant Gonrings hapless lawsuit against the Association. Ironically, they spearheaded the fraud against Ms. Sgariglia, while claiming to be victims at the hands of an Association they largely controlled. (Undisp. Stmt of Facts, ¶ 36). Ms. Sgariglia should be compensated for the insurance premium increase that she paid, in the amount of $7,276.83, which only abated after Defendant Gonrings lost their case. (Undisp. Stmt of Facts, ¶ 36; see also Exh 41-43, 45).

Indeed, Ms. Sgariglia should be allowed to recover all of deposition costs, as she was forced to pursue this case against the Gonrings thanks to their malfeasance. She should be entitled to the $1895.30 that she paid to Veritext Court Reporting. (Undisp. Stmt of Facts, ¶ 36; see also Exh. 45).

Finally, Ms. Sgariglia should be entitled to all her reasonable attorney fees and court, and her counsel should be given leave to file a Petition for Attorney fees and court costs.

For the reasons stated herein, Plaintiff asks this honorable Court to enter an Order awarding Plaintiff $211,131.78 in past damages and an additional $24,000.00 for her window replacement. Furthermore, Plaintiff asks this honorable Court to permit Plaintiff to file her Petition for Attorney Fees & Costs.

> B. THERE IS NO GENUINE ISSUE OF FACT THAT PLAINTIFF INCURRED DAMAGES AS A RESULT OF THE VIOLATONS UNDER THE IL RESIDENTIAL REAL PROPERTY DISCLOSURE ACT, AND THAT PLAINTIFF SHOULD BE ENTITLED TO FILE A PETITION FOR ATTORNEY FEES UNDER BOTH COUNTS.

The Illinois Residential Real Property Disclosure Act states, Under 765 ILCS 77/55 Violations and damages.

> If the seller fails or refuses to provide the disclosure report prior to the conveyance of the residential real property, the prospective buyer shall have the right to terminate the contract. A seller who knowingly violates or fails to perform any duty prescribed by any provision of this Act or who discloses any information on the Residential Real Property Disclosure Report that the seller knows to be false shall be liable in the amount of actual damages and court costs, and the court may award reasonable attorney's fees incurred by the prevailing party

Plaintiff incorporates her arguments in subsection "A" herein. The IL Act allows the Plaintiff to recover "actual damages." Due to Defendant Gonrings' failure to complete the Disclosure Report with honesty, Ms. Sgariglia was left with over $200,000.00 in damages. (See Exh 48). Specifically, she has spent $211,131.78 in repairs, attorney fees, increased insuance fees, consulting fees, interest and penalties, and is will spend at least $24,000 to repair her front windows. (Undisp. Stmt of Facts, ¶21-13; see also Exh. 15; see also Exh. 50, ¶30; see also Exh. 48). These are actual damages directly attributable to the Gonrings' failure to properly check the appropriate boxes in the report, which would have revealed that the property indeed had structural problems in the doors and window openings.

Furthermore, the Act permits the recovery of attorney fees. Section 55 of the Residential Real Property Disclosure states: "the court may award reasonable attorney fees incurred by the prevailing party." 765 ILCS 77/55 (West 2012). Additionally, actions for common law fraud provide for the award of attorney fees. *Father & Sons, Inc. v. Taylor*, 301 Ill. App. 3d 448, 455, 703 N.E.2d 532, 234 Ill. Dec. 671 (1998). The award of attorney fees is not mandatory but lies within the sound discretion of the trial court. *Miller v. Bizzell*, 311 Ill. App. 3d 971, 976, 726 N.E.2d 175, 244 Ill. Dec. 579 (2000).

For this reason, Plaintiff asks this honorable Court to enter an Order awarding Plaintiff $211,131.78 in incurred damages and an additional $24,000.00 for her window replacement. Furthermore, Plaintiff asks this honorable Court to permit Plaintiff to file her Petition for Attorney Fees & Costs.

### III. CONCLUSION

Plaintiff Sgariglia respectfully asks this honorable Court to enter judgment against Defendants Kelsey and Nicholas Gonring (Count I) in the amount of $235,131.78. Plaintiff also asks this honorable Court to allow her to file her petition for attorney fees and costs.

              Melinda Sgariglia,

              By: /s/ Carol Oshana
              One of her attorneys

Carol Oshana
OSHANA LAW
20 N. Clark Street, Suite 3000
Chicago, IL 60602
Oshanalaw@yahoo.com
ARDC #: 6243613

May 23, 2024