IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELINDA SGARIGLIA, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> AMERICAN INTERNATIONAL ) <br> RELOCATION SERVICES, LLC, d/b/a ) <br> AIRES, an Illinois limited liability ) <br> company, NICHOLAS GONRING, and ) <br> KELSEY GONRING, ) <br> ) <br> Defendants. ) <br> ) <br> NICHOLAS GONRING and KELSEY ) <br> GONRING, ) <br> ) <br> Third Party Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> 2726 WEST CORTEZ CONDOMINIUM and ) <br> JOHN GORR, ) <br> ) <br> Third Party Defendants. ) | Case No. 1:19-cv-05684 <br><br> Honorable Robert M. Dow, Jr. <br><br> Magistrate Judge Young B. Kim <br><br> Jury Demanded |

**PLAINTIFF'S LR 56.1 STATEMENT OF MATERIAL
UNDISPUTED FACTS**

1. Plaintiff is a resident of the State of Illinois and owner of the property located at 2726 West Cortez Street, Unit 1, Chicago, Illinois (hereinafter, "Unit 1"). (See Affidavit of Melinda Sgariglia, attached as Exhibit 51).

2. On July 25, 2018, Defendants Nicholas and Kelsey Gonring sold Unit 1 to Plaintiff Sgariglia. (See Nov. 2, 2023 Order, page 12).

3. On April 29, 2020, Plaintiff filed a 2nd Amended Verified Complaint, alleging in Count I violation of the Illinois Residential Real Property Disclosure Act, 76 ILCS 77/35 et seq.,

1

("Disclosure Act") against the Defendants Nicholas and Kelsey Gonring; Count II as Fraudulent Concealment against Nicholas and Kelsey Gonring. (See 2nd Am. Complaint, attached as Exhibit 52).

4. On November 2, 2023, this Honorable Court entered an Order granting Plaintiff's Two Counts against Nicholas Gonring and Kelsey Gonring as to liability.

5. Plaintiff now brings her Motion for Summary Judgment for Damages.

## COSTS OF REPAIRS TO 2726 WEST CORTEZ STREET

6. Under the Condominium Declaration for the Property located at 2726 W. Cortez, Chicago, IL (hereinafter, "Cortez Property"), Plaintiff is responsible for 44% of the common element repairs, corresponding with her proportionate share of the condo association. (See Bylaws, attached as Exh. 17, page 25; see Affidavit of Melinda Sgariglia, attached as Exh. 41, ¶51, ¶21 and cited Exhibits[1]).

7. Shortly after purchasing her condo, Plaintiff became the Board President and worked on retaining professionals to repair the Cortez Property. She was also the records keeper for the Cortez Property Association. (See Exh. 51, ¶7-8 and cited Exhibits).

8. In September 2018, Melinda Sgariglia retained Steve Hier, who provided his initial assessment of the Property. (See Steve Hier Affidavit, attached as Exhibit 49, ¶¶13-27; see Exh. 51, ¶9).

9. Steve Hier is a veteran in the masonry experience who has inspected thousands of properties over his 30 years, while also having consulted on hundreds of projects. (See Exh. 49, ¶¶2-11)

10. Mr. Hier has seen hundreds of masonry and roofing quotes in the Chicagoland area, while also observing prices in material. (Exh 49, ¶¶7, 11).

11. Melinda paid Steve Hier $850 for the initial inspection for the Cortez Property. (See

---

[1] References to the Affidavits are also citing the Exhibits 1-47, and that are incorporated in this Motion for Summary Judgment on Damages.

2

Exhibit 51, ¶58; see Hier Affidavit Exhibit 49, ¶27; see also Exh.1, page 4).

12. During his initial visit, Mr. Hier observed numerous deficiencies in the Cortez Property. (See Exh. 49, ¶¶16-18; Exh. 51, ¶10). He also recommended a mold inspector evaluate possible mold. (See Exh. 49, ¶¶26, 27).

13. Thereafter, Mr. Hier made a series of site visits to the Cortez Property and conducted meetings with the members of the Cortez Property Association to oversee the proposals and determine if the work was done in a good and workmanlike manner. (See Exh 49, ¶28-56; Exh. 51, ¶59).

14. To obtain 3 quotes, in September 2018, the Cortez Property Association contacted B. Allendorfer to review the property and provide a proposal. (See Exh. 50, ¶18; Exh. 51, 20-¶21, 24).

15. The Cortez Property Association retained Mr. Brian Allendorfer's company, B. Allendlorfer, to repair the masonry at the Cortez Property. (See Exh. 49, ¶31; Affidavit of Brian Allendorfer, attached as Exh. 50; Exh. 51, ¶21).

16. Mr. Allendorfer is a mason and roofing veteran who has worked on hundreds of roofing and masonry projects, large and small for decades. (See Exh. 50, ¶¶1, 3-16).

17. In his initial inspection, Mr. Allendorfer found deficiencies in Cortez Property. (See Exh. 50, ¶18).

18. B. Allendorfer provided the Cortez Property Association with a proposal of $120,000 to repair the masonry as to what he could observe at the time. (Exh. 49, ¶ 43; Exh. 50, ¶19; Exh. 51, ¶¶21, 24). This price was reduced from his initial quote to match the bids of other competing contractors. (See Exh. 51, ¶21).

19. The first order of repairs made by the Cortez Property Association was to pay a contractor to remedy the mold in the 3rd floor unit. Ms. Sgariglia performed daily site visits while this work was being performed. (Exh. 51, ¶¶12-13). The Association took on the cost due to what the members viewed

as negligence on the part of the Association. (Exh. 51, ¶¶11-16).

20. B. Allendorfer began to repair the Cortez Property in Spring 2019. (Exh 49, ¶33; Exh. ¶50, 19-20).

21. Both Mr. Hier and Mr. Allendorfer determined that the roof of the Cortez Property was in danger of collapsing, and needed repair. (Exh. 49, ¶¶18, 35; Exh. 50, ¶¶20-24).

22. The roof repair was part of the process for remedying the construction defects of the Cortez Property. (Exh. 49, ¶¶32, 35; Exh 50, ¶20-24).

23. Mr. Allendorfer opened up the ceilings and walls of the 3rd floor unit and determined that the Property roof was in danger of collapsing. (Exh. 49, ¶35; Exh 51, ¶¶20-21).

24. Exterior sealant was also required to prevent water infiltration in the Cortez Property. (Exh. 49, ¶36, 37; Exh 50, ¶25).

25. As work continued, B. Allendorfer continued to repair various portions of the Cortez Property to prevent water infiltration. (Exh 49, ¶¶49-52; Exh 50, ¶¶26-28).

26. Eventually additional leaks in Plaintiff Sgariglia's unit showed deficiencies in the terrace roofs, which B. Allendorfer addressed. (Exh. 49, ¶3; Exh 50; ¶29).

27. Plaintiff Sgariglia's windows require replacement and are damaged. In 2021, B. Allendorfer provided a quote to replace them, however Sgariglia has not replaced them to date and since then, the price as increased. (Exh. 49, ¶54; Exh. 50, ¶30; Exh. 51, ¶¶54-55).

28. The garage to the Cortez Property also had deficiencies due to the original construction, and that the Association repaired while fully paying the invoices for the work and materials. (Exh. 49, ¶56; Exh. 51, ¶69).

29. The Cortez Property Association paid all the invoices for work performed by Steve Hier. (Exh. Ex. 49, ¶55; Exh. 51,¶58-59.)

30. The Cortez Property Association paid all the invoices for work performed by B. Allendorfer. (Exh. Ex. 50, ¶19, 22-29; Exh. 51,¶¶25, 28-38, 45, 48, 52).

31. The Cortez Property Association paid all invoices for work performed by Mold Solutions. (Exh. 51, ¶16).

32. Melinda Sgariglia paid her 44% proportionate share to Mr. Steve Hier for the work performed for the Cortez Property Association. (Exh. 51, ¶59, 71, 73; see also Exh. 48).

33. Melinda Sgariglia paid her 44% proportionate share to B. Allendorfer for the work performed for the Cortez Property Association. (Exh. 51, ¶23, 26-27, 39, 45, 49, 53, 59, 73; see also Exh. 48).

34. Melinda Sgariglia paid her 44% proportionate share to Mold Solutions for the work performed for the Cortez Property Association. (Exh. 51, ¶16, 73; see also Exh. 48).

35. In the future, Ms. Sgariglia also has to pay 100% to replace her front windows, which are damaged. (Exh. 49, ¶54; Exh. 50, ¶30; Exh. 51, ¶¶55-56; see Exh. 17, Bylaws, ¶9, pages 8-9 of document; see also Exh. 48).

36. Ms. Sgariglia paid her 44% proportionate share to the building insurance increases that resulted from the Gonring's lawsuit against the Cortez Property Association. (Exh. 51, ¶62-65, 73; see also Exh. 48).

37. Ms. Sgariglia paid her 44% and 100% proportionate share to B. Allendorfer for garage and deck repairs for the Cortez Property Association. (Exh. 51, ¶62-65, 69-70, 73; see also Exh. 48; see also Exh. 17, Bylaws, ¶9, pages 8-9 of document).

38. Ms. Sgariglia paid her 44% proportionate share lawyers to pursue a case against Erie Insurance and collections against Arrow Masonry on behalf of the Cortez Property Association. (Exh. 51, ¶57, 73; see also Exh. 48).

39. Ms. Sgariglia paid or must pay Steve Hier for his consultation and work for this case. (Ex. 49, ¶57; Exh. 51, ¶60, 71).

40. Ms. Sgariglia borrowed $100,000 from her 401k to pay for the Cortez Property repairs, resulting in a $33,333.00 tax penalty. (Exh. 51,¶61, 73; see also Exh. 48).

41. Ms. Sgariglia took out a $102,000 home equity line of credit to pay for the Cortez Property repairs, incurring $17,794.76 in interest. (Exh. 51,¶18, 66, 73; see also Exh. 48).

42. Ms. Sgariglia took out a $35,000, 401k loan to pay for the Cortez Property repairs, incurring $2,105.43 in interest. (Exh. 51,¶68, 73; see also Exh. 48).

43. Ms. Sgariglia paid costs for deposition transcripts for this case. (Exh. 51, ¶67, 73; see also Exh. 48).

44. Ms. Sgariglia paid her 44% proportionate to obtain competitive quotes for masonry repair on behalf of the Cortez Property Association. (Exh. 51, ¶40, 73; see also Exh. 48).

45. Ms. Sgariglia has also paid attorney fees, which are not articulated in her spreadsheet. (Exh. 51, ¶73).

46. Had Ms. Sgariglia received her condominium in accordance with Defendants' disclosure, she would not have borrowed funds for everyday repairs to her unit and common maintenance. (Exh. 51, ¶72).

47. Mr. Hier has opined that all of the B. Allendorfer masonry, roof and garage repairs performed for the Cortez Property was remedial in nature, performed in a good and workmanlike manner, and that the charges were within industry standards for the Chicagoland area. (Exh. 49, ¶¶40-54, 56).

48. Mr. Allendorder has opined that his prices are in conformity within the industry and the Chicagoland area, while Ms. Sgariglia negotiated down Mr. Allendorfer's initial quote to conform with another competitive quote. (Exh. 50, ¶15, 16, 22-30; Exh. 51, ¶21).

49. From the time Plaintiff Sgariglia purchased her condo to date, she has spent $211,131.78 on repairs, consulting fees, Association attorney fees, increased insurance, interest, penalties, and deposition transcripts. (Exh. 51, ¶73; Exh. 48).

        Melinda Sgariglia,

        By: /s/ Carol Oshana
        One of her attorneys

Carol Oshana
OSHANA LAW
20 N. Clark Street, Suite 3000
Chicago, IL 60602
Oshanalaw@yahoo.com
ARDC #: 6243613

May 23, 2024