IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| MELINDA SGARIGLIA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-cv-05684 |
| v. | ) | |
| | ) | Honorable Robert W. Gettleman |
| AMERICAN INTERNATIONAL RELOCATION SERVICES, LLC, d/b/a AIRES, an Illinois limited liability company, NICHOLAS GONRING, and KELSEY GONRING, | ) ) ) ) ) | Jury Demanded |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS NICHOLAS AND KELSEY GONRING'S
MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR SUMMARY
JUDGMENT ON DAMAGES AND OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT FOR DAMAGES**

Defendants, Nicholas and Kelsey Gonring (collectively, the **"Gonrings"**), by their attorneys, Jordan Finfer and Elizabeth Archerd with the law firm of Patzik, Frank & Samotny Ltd., for their Cross-Motion for Summary Judgment on Damages and response in opposition to Plaintiff's Motion for Summary Judgment on Damages (**"Plaintiff's Cross-Motion"**) (Dkt. #261) state as follows:

**Introduction**

This case arises out of the Gonrings' sale of condominium unit 1 (**"Unit 1"**) at the property located at 2726 West Cortez Street, Chicago, Illinois (the **"Building"**) in 2018 (the **"Sale"**). In the months leading up to the Sale, the owner of Unit 3 in the Building, John Gorr (**"Gorr"**), informed the Gonrings that he was experiencing water infiltration through the windows and doors of his unit, which the Building's condominium association (the **"Association"**) engaged Arrow Masonry (**"Arrow"**) to resolve.

In connection with the sale, the Gonrings completed two disclosure forms: one pursuant to the Illinois Residential Real Property Disclosure Act (the **"Disclosure Form"**) and one through the relocation company they used, the AIRES Seller's Disclosure Statement (the **"AIRES Disclosure"**). On the AIRES Disclosure, the Gonrings wrote that the work performed by Arrow had resolved the water infiltration. At the time the Gonrings made that statement, the Association had scheduled for Arrow to perform remediation work; that work, however, was not performed until a few days later. As a result, this Court found the Gonrings liable for fraudulent concealment and the Illinois Residential Real Property Disclosure Act.

This water infiltration issue that Gorr raised to the Gonrings, however, is the only defect that the Court found the Gonrings liable for concealing. The undisputed evidence confirms that shortly after the Gonrings completed the AIRES Disclosure, this defect was resolved by the work performed by Arrow. Nevertheless, Plaintiff brought this lawsuit, seeking to recover repairs costs and purported consequential damages for issues wholly unrelated to the Gonrings' concealment that were discovered months and even years after the Gonrings moved out of the Building. As a matter of law, the Gonrings are not liable for repair costs that are entirely unrelated to the concealment for which they were found liable.

As demonstrated below, and as the Gonrings have maintained from the start of this litigation, there is no genuine dispute of material fact that the damages that Plaintiff seeks are completely unrelated to the Gonrings' actions. Accordingly, the Gonrings ask that this Court enter summary judgment in their favor and against Plaintiff on the issue of damages.

## Summary Judgment Standard

"Summary judgment is proper when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Runkel v. City of*

*Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). "The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment: we construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). "Cross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute." *Bloodworth v. Vill. of Greendale*, 475 Fed. Appx. 92, 95 (7th Cir. 2012). "If [the plaintiff] 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' summary judgment [for defendant] must be granted." *Blow* at 797-98 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

## Argument

**I. There is no genuine dispute of material fact that Plaintiff's claimed damages are wholly unrelated to the issue this Court found the Gonrings liable of concealing.**

This Court found the Gonrings liable to Plaintiff on two claims: Count I, for violation of the Illinois Residential Real Property Disclosure Act (the **"Disclosure Act"**), 765 ILCS 77/1, *et seq.*; and Count II, for fraudulent concealment. Memorandum Opinion & Order dated November 2, 2023, Dkt. #244, 23. Both claims are based upon the same defects that this Court found that the Gonrings concealed – namely, construction defects that caused water infiltration into the Building that were resolved on June 4, 2018, prior to Plaintiff ever moving into Unit 1. Dkt. #244, 17-21; the Gonrings' Statement of Additional Undisputed Material Facts (**"Gonrings' Statement of Additional Facts"**), filed contemporaneously herewith, ¶¶17-18; Affidavit of Kelsey Gonring (**"K. Gonring Aff."**), attached to the Gonrings' Statement of Material Facts as **Exhibit A**, ¶16; Affidavit of Nicholas Gonring (**"N. Gonring Aff."**), attached to the Gonrings'

3

Statement of Additional Facts as **Exhibit B**, ¶16; Declaration of John Gorr dated July 27, 2023 (**"Gorr Dec."**), attached to the Gonrings' Statement of Additional Facts a**s Exhibit C**, ¶6.

In order to recover damages under a theory of fraudulent concealment or the Disclosure Act, Plaintiff must prove that the damages she claims she suffered were caused by the Gonrings' concealment. "To sustain a claim of fraudulent concealment under Illinois law, a plaintiff must meet the requirements for a claim of fraudulent misrepresentation and must also demonstrate that the defendant intentionally omitted or concealed a material fact that he was under a duty to disclose to the plaintiff. " *Mullen v. GLV, Inc.*, 488 F. Supp. 3d 695, 708–09 (N.D. Ill. 2020), *aff'd,* 37 F.4th 1326 (7th Cir. 2022). An essential element of this claim is that Plaintiff "suffered injury as a direct result" of the concealment. *Fox v. Heimann*, 375 Ill. App. 3d 35, 47, 872 N.E.2d 126, 138 (1st Dist. 2007). "In cases of fraud, the damages recoverable must have proximately resulted from the fraud." *Gold v. Dubish*, 193 Ill. App. 3d 339, 351, 549 N.E.2d 660, 666 (5th Dist. 1989).

Similarly, the Disclosure Act provides that a buyer may recover actual damages stemming from a knowing violation of the statute. 765 ILCS 77/55. "Section 55 [of the Disclosure Act] provides for an award of *actual* damages." *Woods v. Pence*, 303 Ill. App. 3d 573, 577, 708 N.E.2d 563, 565 (3d Dist. 1999) (emphasis in original). To prevail on a claim for violation of the Disclosure Act, then, a Plaintiff must show that she suffered damages from the violation, rather than "merely receiv[ed] a disclosure report containing false information." *Provenzale v. Forister*, 318 Ill. App. 3d 869, 877, 743 N.E.2d 676, 682 (2d Dist. 2001).

In ruling on the Gonrings' Motion for Summary Judgment in 2021, the Court explained two methods by which Plaintiff could calculating damages:

> Under Illinois law, "[t]here are two methods for measuring damages resulting from fraudulently concealing defects in property. The first method is granting the plaintiff the benefit of the bargain, *i.e.*, subtracting the value the property actually had at the time of the sale, given the defects, from the value the property would

4

> have had at the time of the sale had the defects not existed. The second method considers 'the cost of fixing the property to make it conform to the condition it would have had without the defects.'

Memorandum Opinion and Order dated September 16, 2021, Dkt. #107 (*quoting Napcor Corp. v. JP Morgan Chase Bank, NA*, 938 N.E.2d 1181, 1191 (Ill. App. 2010)). As the Gonrings stated in their Motion for Summary Judgment filed in 2021, Plaintiff brought this lawsuit not because she suffered damages stemming from their concealment, but to recover costs for issues uncovered after the Gonrings moved out of the Building. Memorandum of Law in Support of the Gonrings' Motion for Summary Judgment against Plaintiff, Dkt. #89, 15. The Court denied the Gonrings' Motion at that time, in part because it was possible that Plaintiff could prove her damages using the first method – that is, by producing evidence of what the value of Unit 1 actually was at the time of the sale.

Plaintiff has not done so. Instead, Plaintiff has only presented evidence relating to the costs she has spent on repairs – repairs that, as made clear by Plaintiff's Cross-Motion, are wholly unrelated to the Gonrings' concealment, but are instead for new issues discovered long after the Gonrings moved out. Plaintiff's Cross-Motion, 3-5. As these costs are unrelated to any concealment by the Gonrings, they are not recoverable damages under either fraudulent concealment theory or the Disclosure Act and accordingly, summary judgment on damages should be granted in favor of the Gonrings.

**A. Plaintiff's claimed actual damages are not related to the defects that the Gonrings concealed.**

The bulk of Plaintiff's claimed damages are for work that she and the Association chose to perform based on issues discovered only after the Gonrings no longer lived in the Building – specifically, for mold, structural defects in the roof, issues with exterior glass block windows, defects in the stoop, leaks in the terrace roofs, defects in the garage, issues in the roof deck, and

5

issues in the windows located in Unit 1 that were not discovered until contractors retained by the Association performed new inspections months, and even years, after the Gonrings sold Unit 1. Plaintiff's Cross-Motion, 3-5. But the Gonrings are not responsible for all amounts that Plaintiff puts towards the Building, into perpetuity and without limitation: "Illinois law permits recovery for out-of-pocket losses as a result of fraud if they directly result from the purported misrepresentation." *Triumph Packaging Group v. Ward*, 877 F. Supp. 2d 629, 648 (N.D. Ill. 2012).

In support of her claimed damages, Plaintiff relies on two cases. Plaintiff's Cross-Motion, 3; *Napcor Corp. v. JP Morgan Chase Bank, NA*, 406 Ill. App. 3d 146, 938 N.E.2d 1181 (2d Dist. 2010); *Posner v. Davis*, 76 Ill. App. 3d 638, 395 N.E.2d 133 (1st Dist. 1979). The holdings in these cases differ from Plaintiff's position in a key way – in those cases, the court found that the plaintiff could recover damages for the costs to repair the defect that the defendant had concealed. *Napcor* at 154-55 (affirming award of damages to replace roof where defendant misrepresented that building had a new roof with a 10-year warranty); *but see Posner* at 645-46 (reversing and remanding cause for evidentiary hearing on damages where basis for award was not supported by evidence). In neither case was a plaintiff able to recover repair costs for unrelated issues. This Court found that the Gonrings concealed water infiltration that was discovered, but not yet repaired, at the time the Gonrings completed their relevant disclosures. Dkt. #244, 20-21. Plaintiff's claimed damages bear no relation to this concealment.

1. **There is no dispute that the water infiltration that the Gonrings were aware of was resolved before Plaintiff moved into Unit 1.**

The undisputed evidence confirms that the defects that the Gonrings were aware of were resolved by the work performed by Arrow Masonry, which the Gonrings paid for prior to the Sale. In December 2017, Gorr first notified the Gonrings that he was experiencing water infiltration in his unit of the Building, Unit 3. Gonrings' Statement of Additional Facts, ¶5. The

6

water infiltration was occurring at the windows and doors to his unit. *Id*., ¶5 and Ex. D. When selling Unit 1 the next year, the Gonrings completed the AIRES Disclosure and wrote: "Unit 3 had leaks on west facing windows → HOA sealed building to resolve Unit 3 leak." K. Gonring Aff., ¶14; N. Gonring Aff., ¶13; AIRES Disclosure, attached to the Gonrings; Statement of Additional Facts as **Exhibit H**. At the time the Gonrings completed this disclosure on May 29 and 30, 2018, the Association had hired Arrow to perform spot grinding, spot tuckpointing, caulking, flashing installation over decks and sealing of the east, west, and north elevations of the split-faced block, on all three floors of the Building. Gonrings' Statement of Additional Facts, ¶¶7 and 14. The work had not started at the time the Gonrings made the disclosure; however, there is no dispute that Arrow did complete this work a few days later, on June 4, 2018, months before Plaintiff moved into Unit 1. Gonrings' Statement of Additional Facts, ¶17. Gorr, the owner of Unit 3, confirmed that the Arrow work fixed the water infiltration he was experiencing. Gorr Dec., ¶6. He verified this is an email he sent to Plaintiff on September 7, 2018, in which he disclosed the new, previously-unknown mold that was discovered in Unit 3. Gonrings' Statement of Additional Facts at **Exhibit I**.

Months after the Arrow work, in early 2019, a contractor hired by the Association, Brian Allendorfer (**"Allendorfer"**) observed new leakage in the Building. Affidavit of Brian Allendorfer (**"Allendorfer Aff."**), Plaintiff's LR 56.1 Statement of Material Undisputed Facts (**"Plaintiff's Statement of Facts"**), Dkt. #262, at Ex. 50, ¶18. This time, he noted that the leakage was occurring at the top of the ceilings, near the perimeter of the walls. *Id*. By contrast, the leakage that Gorr experienced while the Gonrings lived was entering the Building through the windows and doors to Unit 3. Allendorfer's work wasn't performed to address the defects that the Gonrings concealed; instead, it was work to correct an issue that wasn't discovered until

more than six months after the Sale. Plaintiff cannot recover for correcting damage that was unknown to the Gonrings.

> **2. As a matter of law, the Gonrings cannot be liable for issues that they had no actual knowledge of, which were discovered after they moved out.**

The bulk of Plaintiff's claimed damages bear no relation to water infiltration. Instead, they stem from defects uncovered by Plaintiff and the Association long after the Gonrings moved out of the Building. Plaintiff's Cross-Motion, 3-5. Plaintiff makes no attempt to demonstrate that the Gonrings had knowledge of these newly-discovered defects, raised for the first time in her Cross-Motion.

Knowledge is an essential element for both fraudulent concealment and a violation of the Disclosure Act. *See Fox v. Heimann*, 375 Ill. App. 3d 35, 47, 872 N.E.2d 126, 138 (1st Dist. 2007) ("The defendants' knowledge of the falsity of the statement, or a deliberate concealment with the intent to deceive, is an essential element of common law fraud"); *see also Hahn v. McElroy*, 2023 IL App (2d) 220403 (affirming judgment for previous homeowners where purchaser failed to establish that previous homeowners had actual knowledge of alleged defects). As established, the Gonrings had knowledge of water infiltration into Unit 3 at the doors and windows of that unit. But Plaintiff has presented no evidence, either in her motion for summary judgment on liability (Dkt. #206) or her current Cross-Motion, that the Gonrings i) had actual knowledge of the issues detailed below or ii) made any misrepresentation or concealments of these unknown issues. And she can't – the evidence confirms that no one discovered these issues until long after the Gonrings moved out of the Building. Plaintiff has no basis to recover these claimed costs.

> **a. Mold Remediation.**

The Gonrings sold Unit 1 to Plaintiff on July 25, 2018. Plaintiff's Statement of Facts, ¶2; Gonrings' Statement of Additional Facts, ¶19; K. Gonring Aff., ¶17; N. Gonring Aff., ¶18.

Weeks later, on September 7, 2018, Gorr discovered mold in his Unit. Gorr Dec., ¶¶17-19. As Gorr's email to Plaintiff plainly states, however, neither the Gonrings nor anyone else in the Building had any knowledge of this defect until that date. Gorr Dec., ¶20; Gonrings' Statement of Additional Facts, Ex. I. In granting summary judgment in favor of the Third-Party Defendants in this matter, this Court ruled that the Association could not have anticipated a special assessment to address mold remediation when it completed a 22.1 statement on June 14, 2018 because the mold had not yet been uncovered. Dkt. #244, 21. "The evidence shows that Gorr did not discover mold in his unit until he hired MI&T on July 31, and did not know the location of the mold until he removed the floorboards on September 7." *Id*. Likewise, the Gonrings could not have concealed this mold, which was not discovered until after the Sale. In the absence of evidence that the Gonrings either knew of or concealed yet-undiscovered mold issues, Plaintiff is not entitled to recover the costs that the Association expended to remediate the same.

    b. **Roof Replacement and Related Siding.**

Similarly, there is no evidence that the Gonrings had knowledge, much less concealed, issues with the roof. Steve Hier (**"Hier"**), a contractor hired by the Association, first suspected issues with the roof when he inspected the Building September 14, 2018. Affidavit of Steve Hier (**"Hier Aff."**), Plaintiff's Statement of Facts at Ex. 49, ¶¶14-18. Seven months later, on April 25, 2019, Allendorfer opened the ceilings and discovered deterioration in the roof trusses. Allendorfer Aff., ¶¶20-21. Prior to these investigations, there is no evidence that any resident of the Building was aware of these issues. The Gonrings are not liable for the costs to replace the roof or the extra siding that was necessitated by this roof replacement. Allendorfer Aff., ¶28.

    c. **Glass Block Windows and Mortar Joints.**

Allendorfer first discovered leaks to the glass block windows and "compromised" mortar

9

joints (the source of which is not explained) July 8, 2020 – more than two years after the Gonrings moved out of the Building. Allendorfer Aff., ¶27. There is no evidence that the Gonrings experienced any issues with, much less concealed defects in, these elements. The Gonrings are not obligated to reimburse Plaintiff to fix such newly-discovered defects.

      **d. Stoop and Stairs.**

Allendorfer states that after July 2020, his company repaired the stoop, along with its deteriorated stairs, which were poorly constructed. Allendorfer Aff., ¶27. Prior to this date, there is no evidence that anyone, including Plaintiff, had knowledge of these issues – and certainly not the Gonrings, who moved out two years prior.

      **e. Terrace Roofs.**

A whopping three years after the Gonrings moved out of the Building, on March 16, 2021, Allendorfer discovered leaking in the roof of the terrace for Unit 2. Allendorfer Aff., ¶29. The Gonrings only lived in Unit 1 for two years. Gonrings' Statement of Additional Facts, ¶¶1, 9. Yet, Plaintiff seeks to hold them liable for issues that arose after she's lived in the Building for longer than this span. In the absence of evidence that the Gonrings had knowledge of or concealed this issue – or that this issue even arose during their residency in the Building – Plaintiff cannot recover the costs to replace the terrace roofs from the Gonrings.

      **f. Garage and Roof Deck.**

Plaintiff next claims that the Gonrings should be responsible for the Association's choice to re-build the garage. Nowhere in Plaintiff's Cross-Motion does she try to relate this issue to the water infiltration in Unit 3 that the Gonrings concealed. To the contrary, Hier testified that he was the person who informed the Association about these issues. Hier Aff., ¶56. Hier did not visit the Building until September 2018, after the Gonrings moved out. *Id.*, ¶14. These costs are

not recoverable.

### g. Front-Facing Windows in Unit 1.

Plaintiff's contractor testifies that three years after she moved into the Building, an employee of Allendorfer first noticed leakage in the front-facing windows to Unit 1. Allendorfer Aff., ¶30. There is no evidence of leakage prior to this time, including when the Gonrings lived in the Building. They could not have concealed an issue that arose three years after they moved out.

**B. As Plaintiff's claimed consequential damages are unrelated to the concealment and could not have been contemplated by the Gonrings at the time they entered the contract, summary judgment must be granted for the Gonrings.**

Plaintiff next claims that she is entitled to so-called "consequential damages" stemming from her fraud claim.[1] Plaintiff's Cross-Motion, 5-6. "[I]n order to recover consequential damages, it must reasonably be supposed to have been within the contemplation of the parties at the time of making the contract as a probable result of a breach thereof." *In re Polo Builders, Inc.*, 388 B.R. 338, 374 (Bankr. N.D. Ill. 2008) (holding that plaintiff could not recover as consequential damages attorney's fees that plaintiff incurred in separate state court litigation where defendants could not have contemplated that plaintiff would pursue state court litigation at the time of signing the contract). In her Motion, Plaintiff claims that she should be entitled to recover certain debt and expenses incurred by the Association long after the Gonrings moved out. She makes no attempt, however, to show that these damages are either related to the Gonrings' concealment or were contemplated by the parties at the time they entered the Sale contract, necessitating judgment for the Gonrings.

---

[1] While Plaintiff does not identify her basis for claiming consequential damages, consequential damages are not available under the Disclosure Act. *See* 765 ILCS 77/55 (providing for actual damages).

11

1. **Debt.**

Plaintiff argues that the Gonrings should have to repay her for tax penalties and interest that she was "forced" to incur to complete the work detailed in her Cross-Motion. Plaintiff's Cross-Motion, 5-6. As discussed above, however, Plaintiff was not forced to incur *any* costs to fix the defects concealed by the Gonrings, which were addressed by the Arrow Masonry work before she moved in. Instead, Plaintiff took on this debt to address issues discovered long after the Gonrings had moved to Michigan. As this category of damages has no relation to the Gonrings' concealment, summary judgment must be granted for the Gonrings.

2. **Association Expenses.**

Plaintiff next claims that the Gonrings should have to pay for her share of attorney's fees that the Association chose to incur to recoup losses from Erie Insurance and Arrow. Plaintiff's Cross-Motion, 6. The Association did not discuss this decision until after the Gonrings moved out. At the time the parties entered the sale contract, the Gonrings could not have contemplated that the Association would have incurred these costs; accordingly, Plaintiff cannot recover these amounts as consequential damages. *See In re Polo Builders, Inc.*, 388 B.R. 338, 374 (Bankr. N.D. Ill. 2008); *see also A. Kush & Associates, Ltd. v. Am. States Ins. Co.*, 927 F.2d 929, 938 (7th Cir. 1991) (affirming district court's decision, in action alleging against insurer for breach of duty to defend, to deny award of lost interest on receivables that accrued during pendency of underlying litigation where damages were not in contemplation of the parties at the time the insurance contract was executed).

3. **Third Party Defendant's Attorney's Fees.**

As her last category of claimed consequential damages, Plaintiff asserts that the Gonrings should have to pay her back for her share of the Association's increased insurance premiums.

Plaintiff's Cross-Motion, 6. This premium increase was attributable to the Association's defense as a Third-Party Defendant in *this* lawsuit – in other words, attorney's fees. *Id*. This improper attempt to pass off attorney's fees should be rejected. "But in the American legal system, '[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.'" *Berkshire Hathaway Homestate Ins. Co. v. Chicago Metro. Hosp., LLC*, 430 F. Supp. 3d 553, 558 (N.D. Ill. 2020) (citing *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 135 S. Ct. 2158, 192 L.Ed.2d 208 (2015)) (holding that defendants were not entitled to attorney's fees on breach of contract claim in insurance coverage action). As there is no statute or contract that provides for these fees, the Association has made no attempt to recover them from the Gonrings. Plaintiff, likewise has no basis to pass this expense on to the Gonrings.

## II. Plaintiff is not entitled to attorney's fees.

### A. Plaintiff is not entitled to attorney's fees under the Disclosure Act for seeking to recover damages unrelated to the Gonrings' actions.

Plaintiff is not entitled to recover her attorney's fees in connection with this matter. The Disclosure Act provides that "the court *may* award reasonable attorney's fees incurred by the prevailing party." 765 ILCS 77/55 (emphasis added). Illinois courts interpreting this language have found that it is permissive, not mandatory, for a court to award fees:

> Based on our discussion above, the term "may" in the fee-shifting provision provided the trial with discretion as to whether to award fees and the amount awarded. In multicount cases, where the parties have each won and lost on different claims, it may be inappropriate to award attorney fees to either party.

*Cantrall v. Bergner*, 2016 IL App (4th) 150984, ¶23, 78 N.E.3d 959, 965. As described above, Plaintiff brought this action not to recover damages stemming from the Gonrings' concealment, but to recover costs to repair wholly unrelated issues of which the Gonrings had no knowledge.

13

As the Gonrings are entitled to summary judgment on damages, it would be inappropriate to award Plaintiff attorney's fees under the Disclosure Act.

### B. Plaintiff is not entitled to attorney's fees for her fraudulent concealment claim.

Contrary to Plaintiff's assertion, under Illinois law, attorney's fees are not recoverable under a claim for common law fraud. Plaintiff's Cross-Motion, 8. In her Motion, Plaintiff relies on a single case, in which the court affirmed an arbitrator's decision to award attorney's fees. *Father & Sons, Inc. v. Taylor*, 301 Ill. App. 3d 448, 456, 703 N.E.2d 532, 537 (1st Dist. 1998). In that case, the plaintiff brought a claim not just for common law fraud, but a claim under the Illinois Consumer Fraud Act, a statute which provides that a court may award fees to the prevailing party. *Id*., 455; 815 ILCS 505/10a(c). The Northern District of Illinois analyzed this and similar holdings in *McKeown v. Sun Life Assurance Co. of Canada*, 16 C 748, 2021 WL 916079 (N.D. Ill. Mar. 10, 2021). Ultimately, the court concluded: "Thus, the Court is left with binding authority that Illinois common law does not allow a party to recover attorneys' fees and costs incurred in the same action as damages from an opponent." *McKeown* at *6 (granting motion to dismiss defendant's counterclaims for fraudulent misrepresentation and fraudulent concealment where defendant alleged only attorney's fees as damages). Accordingly, Plaintiff's demand for attorney's fees under her claim for fraudulent concealment must be denied.

### Conclusion

This Court found that the Gonrings were liable for concealing water infiltration entering at the doors and windows of Unit 3 – an issue which, the evidence confirms, was resolved before Plaintiff moved into the Building. The damages that Plaintiff now seeks bear no relation to this concealment, but are instead new issues discovered by the Association long after the Gonrings moved out. As there is no evidence that the Gonrings had actual knowledge of the damages that

14

Plaintiff claims in her Cross-Motion – and in fact, they could not have known of these defects, which were only discovered much later – summary judgment must be granted for the Gonrings.

Wherefore, the Gonrings respectfully ask that this Honorable Court enter an Order grating their Cross-Motion for Summary Judgment on Damages and denying Plaintiff's Cross-Motion; denying Plaintiff's request for leave to file a petition for attorney's fees; deny Plaintiff's request for fees; and for such other and further relief as this Court deems equitable and just.

Dated: July 29, 2024

Respectfully submitted,

Nicholas and Kelsey Gonring

By: /s/ Jordan A, Finfer ,
      One of their attorneys

Jordan Finfer (jfinfer@pfs-law.com)
ARDC #6296373
Elizabeth Archerd (earcherd@pfs-law.com)
ARDC #6329394
Patzik, Frank & Samotny Ltd.
200 South Wacker Drive, Suite 2700
Chicago, IL 60606
Phone: 312-551-8300

15

CERTIFICATE OF SERVICE

    The undersigned, a non-attorney, under penalty of perjury, hereby certifies that DEFENDANTS NICHOLAS AND KELSEY GONRING'S MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT ON DAMAGES AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT FOR DAMAGES was electronically filed on July 29, 2024 using the court's CM/ECF system and will then send same to all ECF-registered counsel of record.

                                                 */s/ Melissa Siedlecki*