IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| MELINDA SGARIGLIA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-cv-05684 |
| v. | ) | |
| | ) | Honorable Robert W. Gettleman |
| AMERICAN INTERNATIONAL RELOCATION SERVICES, LLC, d/b/a AIRES, an Illinois limited liability company, NICHOLAS GONRING, and KELSEY GONRING, | ) ) ) ) ) | Jury Demanded |
| | ) | |
| Defendants. | ) | |

**NICHOLAS AND KELSEY GONRING'S RESPONSE TO
PLAINTIFF'S 56.1 STATEMENT OF UNDISPUTED FACTS**

1. Plaintiff is a resident of the State of Illinois and owner of the property located at 2726 West Cortez Street, Unit 1, Chicago, Illinois (hereinafter, "Unit 1"). (See Affidavit of Melinda Sgariglia, attached as Exhibit 51).

**RESPONSE: Admitted.**

2. On July 25, 2018, Defendants Nicholas and Kelsey Gonring sold Unit 1 to Plaintiff Sgariglia. (See Nov. 2, 2023 Order, page 12).

**RESPONSE: Admitted.**

3. On April 29, 2020, Plaintiff filed a 2nd Amended Verified Complaint, alleging in Count I violation of the Illinois Residential Real Property Disclosure Act, 76 ILCS 77/35 et seq., ("Disclosure Act") against the Defendants Nicholas and Kelsey Gonring;

Count II as Fraudulent Concealment against Nicholas and Kelsey Gonring. (See 2nd Am. Complaint, attached as Exhibit 52).

**RESPONSE: Admitted.**

   4. On November 2, 2023, this Honorable Court entered an Order granting Plaintiff's Two Counts against Nicholas Gonring and Kelsey Gonring as to liability.

**RESPONSE:** **Admitted. Further answering, the Court's ruling on liability, including the specific acts for which the Court found the Gonrings liable, is explained in the Memorandum Opinion & Order dated November 2, 2023, Dkt. #244. The Gonrings refer to the Memorandum Opinion and Order for its contents and deny any allegations in Plaintiff's LR 5.6 Statement of Material Undisputed Facts that are inconsistent with the Court's ruling.**

   5. Plaintiff now brings her Motion for Summary Judgment for Damages.

**RESPONSE: Admitted.**

## COSTS OF REPAIRS TO 2726 WEST CORTEZ STREET

   6. Under the Condominium Declaration for the Property located at 2726 W. Cortez, Chicago, IL (hereinafter, "Cortez Property"), Plaintiff is responsible for 44% of the common element repairs, corresponding with her proportionate share of the condo association. (See Bylaws, attached as Exh. 17, page 25; see Affidavit of Melinda Sgariglia, attached as Exh. 41, ¶51, ¶21 and cited Exhibits).

**RESPONSE:** **The Gonrings admit that the Declaration of Condominium Ownership for 2726 W. Cortez Avenue Condominiums provides that each Unit Owner shall pay his proportionate share of the expenses of administration and maintenance of the Common Elements which, for the owner of Unit 1, is 44.00%. The Gonrings dispute that the Affidavit of Melinda Sgariglia is attached to Plaintiff Plaintiff's LR 5.6 Statement of Material Undisputed Facts as Exhibit 41, as stated, or that the referenced paragraphs in the**

>  **Affidavit of Melinda Sgariglia (Dkt. #262-51, ¶¶21 and 51) support this allegation.**

7. Shortly after purchasing her condo, Plaintiff became the Board President and worked on retaining professionals to repair the Cortez Property. She was also the records keeper for the Cortez Property Association. (See Exh. 51, ¶7-8 and cited Exhibits).

**RESPONSE:** The Gonrings moved out of Unit 1 ("Unit 1") in 2726 West Cortez Street, Chicago, IL (the "Building") in the Spring of 2018 and on July 25, 2018, the Gonrings sold Unit 1 to Plaintiff. Plaintiff's LR 56.1 Statement of Material Undisputed Facts, ¶2; Affidavit of Kelsey Gonring, filed as Exhibit A to Defendants Nicholas Gonring and Kelsey Gonring's LR 56.1 Statement of Additional Undisputed Facts, ¶¶9, 17; Affidavit of Nicholas Gonring, filed as Exhibit B to Defendants Nicholas Gonring and Kelsey Gonring's LR 56.1 Statement of Additional Undisputed Facts, ¶¶8, 17. The Gonrings have no personal knowledge as to the actions of the Building's condominium association (the "Association") after the time they sold Unit 1. For purposes of Plaintiff's Motion and the Gonrings' Cross-Motion for Summary Judgment on Damages, the Gonrings do not dispute that Plaintiff became President or records keeper of the Association.

8. In September 2018, Melinda Sgariglia retained Steve Hier, who provided his initial assessment of the Property. (See Steve Hier Affidavit, attached as Exhibit 49, ¶¶13-27; see Exh. 51, ¶9).

**RESPONSE:** The Gonrings have no personal knowledge of Plaintiff's actions after the time they sold Unit 1 to Plaintiff. For purposes of Plaintiff's Motion and the Gonrings' Cross-Motion for Summary Judgment on Damages, the Gonrings do not dispute the facts alleged in this paragraph.

9. Steve Hier is a veteran in the masonry experience who has inspected thousands of properties over his 30 years, while also having consulted on hundreds of projects. (See Exh. 49, ¶¶2-11)

**RESPONSE:** **The Gonrings have no personal knowledge of Steve Hier's experience. For purposes of Plaintiff's Motion and the Gonrings' Cross-Motion for Summary Judgment on Damages, the Gonrings do not dispute that Steve Hier testifies to these facts in the Affidavit of Steve Hier (Dkt. #262-49).**

    10.    Mr. Hier has seen hundreds of masonry and roofing quotes in the Chicagoland area, while also observing prices in material. (Exh 49, ¶¶7, 11).

**RESPONSE:** **The Gonrings have no personal knowledge of Steve Hier's experience. For purposes of Plaintiff's Motion and the Gonrings' Cross-Motion for Summary Judgment on Damages, the Gonrings do not dispute that Steve Hier testifies to these facts in the Affidavit of Steve Hier (Dkt. #262-49).**

    11.    Melinda paid Steve Hier $850 for the initial inspection for the Cortez Property. (See Exhibit 51, ¶58; see Hier Affidavit Exhibit 49, ¶27; see also Exh.1, page 4).

**RESPONSE:** **The Gonrings do not dispute the facts alleged in this paragraph.**

    12.    During his initial visit, Mr. Hier observed numerous deficiencies in the Cortez Property. See Exh. 49, ¶¶16-18; Exh. 51, ¶10). He also recommended a mold inspector evaluate possible mold. (See Exh. 49, ¶¶26, 27).

**RESPONSE:** **The Gonrings have no personal knowledge of Mr. Hier's observations or recommendations, which were not made until September 14, 2018, after the Gonrings sold Unit 1. For purposes of Plaintiff's Motion and the Gonrings' Cross-Motion for Summary Judgment on Damages, the Gonrings do not dispute that Mr. Hier observed deficiencies described in Dkt. #262-49 or recommended a mold inspector, but further state that these observations and recommendation were not made until after the Gonrings had sold Unit 1 and moved out of the Building.**

    13.    Thereafter, Mr. Hier made a series of site visits to the Cortez Property and conducted meetings with the members of the Cortez Property Association to oversee the proposals and determine if the work was done in a good and workmanlike manner. (See Exh 49, ¶28-56; Exh. 51, ¶59).

**RESPONSE:** The Gonrings have no personal knowledge of Mr. Hier's actions after they sold Unit 1 and moved out of the Building. For purposes of Plaintiff's Motion and the Gonrings' Cross-Motion for Summary Judgment on Damages, the Gonrings do not dispute the facts alleged in this paragraph.

14. To obtain 3 quotes, in September 2018, the Cortez Property Association contacted B. Allendorfer to review the property and provide a proposal. (See Exh. 50, ¶18; Exh. 51, 20-¶21, 24).

**RESPONSE:** The Gonrings have no personal knowledge of the Association's actions after they sold Unit 1 and moved out of the Building. The Gonrings dispute that the documentary evidence supports the assertion that the Association contacted Brian Allendorfer "[t]o obtain 3 quotes", but rather suggests that the Association obtained three quotes from three different companies, two of which have not been submitted in evidence. For purposes of Plaintiff's Motion and the Gonrings' Cross-Motion for Summary Judgment on Damages, the Gonrings do not dispute that the Association contacted Mr. Allendorfer to review the property and provide a proposal in September 2018, after the Gonrings had sold Unit 1.

15. The Cortez Property Association retained Mr. Brian Allendorfer's company, B. Allendlorfer, to repair the masonry at the Cortez Property. (See Exh. 49, ¶31; Affidavit of Brian Allendorfer, attached as Exh. 50; Exh. 51, ¶21).

**RESPONSE:** The Gonrings have no personal knowledge of the Association's actions after they sold Unit 1 and moved out of the Building. For purposes of Plaintiff's Motion and the Gonrings' Cross-Motion for Summary Judgment on Damages, the Gonrings do not dispute that the Association retained Mr. Allendorfer's company; however, the Gonrings dispute that any work performed by Mr. Allendorfer's company was directed towards issues of which the Gonrings had actual knowledge.

16. Mr. Allendorfer is a mason and roofing veteran who has worked on hundreds of roofing and masonry projects, large and small for decades. (See Exh. 50, ¶¶1, 3-16).

**RESPONSE:** **The Gonrings have no personal knowledge of Mr. Allendorfer's experience. For purposes of Plaintiff's Motion and the Gonrings' Cross-Motion for Summary Judgment on Damages, the Gonrings do not dispute that Mr. Allendorfer testifies to these facts in the Affidavit of Brian Allendorfer (Dkt. #262-50).**

17. In his initial inspection, Mr. Allendorfer found deficiencies in Cortez Property. (See Exh. 50, ¶18).

**RESPONSE:** **The Gonrings have no personal knowledge of Mr. Allendorfer's findings, which were not made until sometime in 2019, after the Gonrings had sold Unit 1. For purposes of Plaintiff's Motion and the Gonrings' Cross-Motion for Summary Judgment on Damages, the Gonrings do not dispute that Mr. Allendorfer found deficiencies, but further state that these deficiencies were not found until after the Gonrings had sold Unit 1 and the Gonrings had no actual knowledge of these deficiencies.**

18. B. Allendorfer provided the Cortez Property Association with a proposal of $120,000 to repair the masonry as to what he could observe at the time. (Exh. 49, ¶ 43; Exh. 50, ¶19; Exh. 51, ¶¶21, 24). This price was reduced from his initial quote to match the bids of other competing contractors. (See Exh. 51, ¶21).

**RESPONSE:** **For purposes of Plaintiff's Motion and the Gonrings' Cross-Motion for Summary Judgment on Damages, the Gonrings do not dispute the facts alleged in this paragraph.**

19. The first order of repairs made by the Cortez Property Association was to pay a contractor to remedy the mold in the 3rd floor unit. Ms. Sgariglia performed daily site visits while this work was being performed. (Exh. 51, ¶¶12-13). The Association took on the cost due to what the members viewed as negligence on the part of the Association. (Exh. 51, ¶¶11-16).

**RESPONSE:** **The Gonrings have no personal knowledge of the actions of the Association or Plaintiff alleged in this paragraph, which did not take**

place until October 17, 2018 (Dkt. #262-51, ¶12). Answering further, mold was not discovered in the 3rd floor unit ("Unit 3") until July 31, 2018, after the Gonrings had sold Unit 1. Declaration of John Gorr dated July 27, 2023, filed as Exhibit C to Defendants Nicholas Gonring and Kelsey Gonring's LR 56.1 Statement of Additional Undisputed Facts, ¶¶17-19. The Gonrings further dispute the allegation that that the Association was required to incur this cost because it was due to any negligence on the part of the Association. In its Memorandum Opinion and Order dated November 2, 2023, the Court found that the Association properly took steps to remediate the water infiltration issues with Unit 3. Dkt. #244, p. 22. The Court further found no evidence that the Association knew of the mold prior to July 31, 2018. *Id*.

20. B. Allendorfer began to repair the Cortez Property in Spring 2019. (Exh 49, ¶33; Exh. ¶50, 19-20).

**RESPONSE:** The Gonrings do not dispute the facts alleged in this paragraph, and further state that the repairs performed by Mr. Allendorfer were for issues in the Building not discovered until after the Gonrings had sold Unit 1 and of which the Gonrings had no actual knowledge.

21. Both Mr. Hier and Mr. Allendorfer determined that the roof of the Cortez Property was in danger of collapsing, and needed repair. (Exh. 49, ¶¶18, 35; Exh. 50, ¶¶20-24).

**RESPONSE:** The Gonrings have no personal knowledge of Mr. Hier's or Mr. Allendorfer's determinations regarding the roof of the Building, which were not made until September 14, 2018 and April 25, 2019, respectively. For purposes of Plaintiff's Motion and the Gonrings' Cross-Motion for Summary Judgment on Damages, the Gonrings do not dispute the facts alleged in this paragraph, and further state that these determinations were made regarding issues in the Building not discovered until after the Gonrings had sold Unit 1 and of which the Gonrings had no actual knowledge.

22. The roof repair was part of the process for remedying the construction defects of the Cortez Property. (Exh. 49, ¶¶32, 35; Exh 50, ¶20-24).

**RESPONSE:** **The Gonrings dispute that the issues in the roof, discovered after the Gonrings had sold Unit 1 and of which the Gonrings had no actual knowledge, relate to the material construction defects which the Court found the Gonrings liable for concealing. Dkt. #244, pp. 19-20. Accordingly, the Gonrings dispute that the roof repair was necessary to remedy the "material construction defects" referenced in the Court's ruling on liability.**

23. Mr. Allendorfer opened up the ceilings and walls of the 3rd floor unit and determined that the Property roof was in danger of collapsing. (Exh. 49, ¶35; Exh 51, ¶¶20-21).

**RESPONSE:** **The Gonrings have no personal knowledge of Mr. Allendorfer's determinations regarding the Building's roof, which were not made until after he opened the ceilings and walls on the top floor on April 25, 2019. Dkt. #262-50, ¶20. The Gonrings do not dispute the facts alleged in this paragraph, and further state that Mr. Allendorfer did not discover the defects in the roof until after the Gonrings had sold Unit 1 and so, the Gonrings had no actual knowledge of these defects.**

24. Exterior sealant was also required to prevent water infiltration in the Cortez Property. (Exh. 49, ¶36, 37; Exh 50, ¶25).

**RESPONSE:** **The Gonrings dispute that the documentary evidence supports the allegation that "exterior sealant was required to prevent water infiltration" into the Building as this statement is not supported by the Affidavit of Mr. Allendorfer or Mr. Hier, to which Plaintiff cites. Accordingly, the Gonrings deny the allegations in this paragraph. Answering further, the work referenced in this paragraph did not occur until May 14, 2020, two years after the Gonrings had sold Unit 1. Dkt. #262-50, ¶25.**

25. As work continued, B. Allendorfer continued to repair various portions of the Cortez Property to prevent water infiltration. (Exh 49, ¶¶49-52; Exh 50, ¶¶26-28).

**RESPONSE:** **The Gonrings dispute that the documentary evidence supports the allegations in this paragraph as this statement is not supported by the Affidavit of Mr. Allendorfer or Mr. Hier, to which Plaintiff cites.**

> **Accordingly, the Gonrings deny the allegations in this paragraph. Answering further, in the affidavit sections referenced in this paragraph, Mr. Allendorfer states that in May 26, 2020, he discovered missing mortar in certain areas; on July 8, 2020, he provided a proposal for glass block windows that were leaking; in July 2020, his company rebuilt the stoop, which was poorly constructed; and on July 10, 2020, he submitted an invoice for extra siding necessitated by the roof repair. Dkt. #262-50, ¶¶26-28. Each of these defects were not discovered until after the Gonrings had sold Unit 1 and so, the Gonrings had no actual knowledge of any of these claimed defects.**

26. Eventually additional leaks in Plaintiff Sgariglia's unit showed deficiencies in the terrace roofs, which B. Allendorfer addressed. (Exh. 49, ¶3; Exh 50; ¶29).

**RESPONSE:** **The Gonrings do not have personal knowledge of defects discovered after they had sold Unit 1. For purposes of Plaintiff's Motion and the Gonrings' Cross-Motion for Summary Judgment on Damages, the Gonrings do not dispute the facts alleged in this paragraph, and further state that these additional deficiencies were not discovered until March 16, 2021, nearly three years after the Gonrings had sold Unit 1, and so, the Gonrings had no actual knowledges of these deficiencies. Dkt. #262-50, ¶29.**

27. Plaintiff Sgariglia's windows require replacement and are damaged. In 2021, B. Allendorfer provided a quote to replace them, however Sgariglia has not replaced them to date and since then, the price as increased. (Exh. 49, ¶54; Exh. 50, ¶30; Exh. 51, ¶¶54-55).

**RESPONSE:** **The Gonrings do not have personal knowledge of the issues with the windows to Unit 1, which were not discovered until after the Gonrings had sold Unit 1. Dkt. #262-49, ¶54; Dkt. #262-50, ¶30; Dkt. #262-51, ¶54-55. The Gonrings dispute that they had actual knowledge of these issues. Affidavit of Kelsey Gonring, filed as Exhibit A to Defendants Nicholas Gonring and Kelsey Gonring's LR 56.1 Statement of Additional Undisputed Facts, ¶19; Affidavit of Nicholas Gonring, filed as Exhibit B to Defendants Nicholas Gonring and Kelsey Gonring's LR 56.1 Statement of Additional Undisputed Facts, ¶19.**

9

28. The garage to the Cortez Property also had deficiencies due to the original construction, and that the Association repaired while fully paying the invoices for the work and materials. (Exh. 49, ¶56; Exh. 51, ¶69).

**RESPONSE: The Gonrings do not have knowledge of deficiencies in the garage, which were not discovered after they had sold Unit 1. Dkt. #262-49, ¶56. For purposes of Plaintiff's Motion and the Gonrings' Cross-Motion for Summary Judgment on Damages, the Gonrings do not dispute the facts alleged in this paragraph, and further state that the garage deficiencies were not discovered until after the Gonrings had sold Unit 1 and so, the Gonrings had no actual knowledge of these deficiencies. Affidavit of Kelsey Gonring, filed as Exhibit A to Defendants Nicholas Gonring and Kelsey Gonring's LR 56.1 Statement of Additional Undisputed Facts, ¶19; Affidavit of Nicholas Gonring, filed as Exhibit B to Defendants Nicholas Gonring and Kelsey Gonring's LR 56.1 Statement of Additional Undisputed Facts, ¶19. The Gonrings dispute any inference in this paragraph that the deficiencies in the garage relate to the "material construction defects" referenced in the Court's ruling on liability.**

29. The Cortez Property Association paid all the invoices for work performed by Steve Hier. (Exh. Ex. 49, ¶55; Exh. 51,¶58-59.)

**RESPONSE: The Gonrings do not dispute the facts alleged in this paragraph, but do dispute any inference that the work performed by Mr. Hier was related to, or necessitated by, the issues which this Court found the Gonrings liable for concealing.**

30. The Cortez Property Association paid all the invoices for work performed by B. Allendorfer. (Exh. Ex. 50, ¶19, 22-29; Exh. 51,¶¶25, 28-38, 45, 48, 52).

**RESPONSE: The Gonrings do not dispute the facts alleged in this paragraph, but do dispute any inference that the work performed by Mr. Allendorfer was related to, or necessitated by, the issues which this Court found the Gonrings liable for concealing.**

31. The Cortez Property Association paid all invoices for work performed by Mold Solutions. (Exh. 51, ¶16).

**RESPONSE:** **The Gonrings do not dispute the facts alleged in this paragraph, but do dispute any inference that the work performed by Mold Solutions was related to, or necessitated by, the issues which this Court found the Gonrings liable for concealing. Answering further, mold was not discovered in the 3rd floor unit ("Unit 3") until July 31, 2018, after the Gonrings had sold Unit 1. Declaration of John Gorr dated July 27, 2023, ¶¶17-19.**

32. Melinda Sgariglia paid her 44% proportionate share to Mr. Steve Hier for the work performed for the Cortez Property Association. (Exh. 51, ¶59, 71, 73; see also Exh. 48).

**RESPONSE:** **The Gonrings do not dispute the facts alleged in this paragraph, but do dispute any inference that the work performed by Mr. Hier was related to, or necessitated by, the issues which this Court found the Gonrings liable for concealing.**

33. Melinda Sgariglia paid her 44% proportionate share to B. Allendorfer for the work performed for the Cortez Property Association. (Exh. 51, ¶23, 26-27, 39, 45, 49, 53, 59, 73; see also Exh. 48).

**RESPONSE:** **The Gonrings do not dispute the facts alleged in this paragraph, but do dispute any inference that the work performed by Mr. Allendorfer was related to, or necessitated by, the issues which this Court found the Gonrings liable for concealing.**

34. Melinda Sgariglia paid her 44% proportionate share to Mold Solutions for the work performed for the Cortez Property Association. (Exh. 51, ¶16, 73; see also Exh. 48).

**RESPONSE:** **The Gonrings do not dispute the facts alleged in this paragraph, but do dispute any inference that the work performed by Mold Solutions was related to, or necessitated by, the issues which this Court found the Gonrings liable for concealing. Answering further, mold was not discovered in the 3rd floor unit ("Unit 3") until July 31, 2018, after the Gonrings had sold Unit 1. Declaration of John Gorr dated July 27, 2023, ¶¶17-19.**

35. In the future, Ms. Sgariglia also has to pay 100% to replace her front windows, which are damaged. (Exh. 49, ¶54; Exh. 50, ¶30; Exh. 51, ¶¶55-56; see Exh. 17, Bylaws, ¶9, pages 8-9 of document; see also Exh. 48).

**RESPONSE: The Gonrings do not dispute that Plaintiff is required to pay 100% of the cost to replace the windows in Unit 1, which are not a Common Element. Answering further, the Gonrings do not have personal knowledge of the issues with the windows to Unit 1, which were not discovered until after the Gonrings had sold Unit 1. Affidavit of Kelsey Gonring, filed as Exhibit A to Defendants Nicholas Gonring and Kelsey Gonring's LR 56.1 Statement of Additional Undisputed Facts, ¶19; Affidavit of Nicholas Gonring, filed as Exhibit B to Defendants Nicholas Gonring and Kelsey Gonring's LR 56.1 Statement of Additional Undisputed Facts, ¶19.**

36. Ms. Sgariglia paid her 44% proportionate share to the building insurance increases that resulted from the Gonring's lawsuit against the Cortez Property Association. (Exh. 51, ¶62-65, 73; see also Exh. 48).

**RESPONSE: The Gonrings do not dispute the facts alleged in this paragraph. The Gonrings dispute that this cost is recoverable to Plaintiff as damages.**

37. Ms. Sgariglia paid her 44% and 100% proportionate share to B. Allendorfer for garage and deck repairs for the Cortez Property Association. (Exh. 51, ¶62-65, 69-70, 73; see also Exh. 48; see also Exh. 17, Bylaws, ¶9, pages 8-9 of document).

**RESPONSE: The Gonrings do not dispute the facts alleged in this paragraph, but do dispute any inference that the garage and deck repairs performed by Mr. Allendorfer was related to, or necessitated by, the issues which this Court found the Gonrings liable for concealing. Answering further, the issues in the garage and deck were not discovered until after the Gonrings sold Unit 1 and so, the Gonrings had no actual knowledge of these issues. Affidavit of Kelsey Gonring, filed as Exhibit A to Defendants Nicholas Gonring and Kelsey Gonring's LR 56.1 Statement of Additional Undisputed Facts, ¶19; Affidavit of Nicholas Gonring, filed as Exhibit B to Defendants Nicholas Gonring and Kelsey Gonring's LR 56.1 Statement of Additional Undisputed Facts, ¶19.**

38. Ms. Sgariglia paid her 44% proportionate share lawyers to pursue a case against Erie Insurance and collections against Arrow Masonry on behalf of the Cortez Property Association. (Exh. 51, ¶57, 73; see also Exh. 48).

**RESPONSE: The Gonrings do not dispute the facts alleged in this paragraph. The Gonrings dispute that this cost is recoverable to Plaintiff as damages.**

39. Ms. Sgariglia paid or must pay Steve Hier for his consultation and work for this case. (Ex. 49, ¶57; Exh. 51, ¶60, 71).

**RESPONSE: The Gonrings do not dispute the facts alleged in this paragraph. The Gonrings dispute that Mr. Hier's expert fees are recoverable to Plaintiff as damages.**

40. Ms. Sgariglia borrowed $100,000 from her 401k to pay for the Cortez Property repairs, resulting in a $33,333.00 tax penalty. (Exh. 51,¶61, 73; see also Exh. 48).

**RESPONSE: The Gonrings do not dispute the facts alleged in this paragraph. The Gonrings dispute that this cost was related to, or necessitated by, the issues which this Court found the Gonrings liable for concealing, or that it is recoverable to Plaintiff as damages.**

41. Ms. Sgariglia took out a $102,000 home equity line of credit to pay for the Cortez Property repairs, incurring $17,794.76 in interest. (Exh. 51,¶18, 66, 73; see also Exh. 48).

**RESPONSE: The Gonrings do not dispute the facts alleged in this paragraph. The Gonrings dispute that this cost was related to, or necessitated by, the issues which this Court found the Gonrings liable for concealing, or that it is recoverable to Plaintiff as damages.**

42. Ms. Sgariglia took out a $35,000, 401k loan to pay for the Cortez Property repairs, incurring $2,105.43 in interest. (Exh. 51,¶68, 73; see also Exh. 48).

**RESPONSE:** **The Gonrings do not dispute the facts alleged in this paragraph. The Gonrings dispute that this cost was related to, or necessitated by, the issues which this Court found the Gonrings liable for concealing, or that it is recoverable to Plaintiff as damages.**

43. Ms. Sgariglia paid costs for deposition transcripts for this case. (Exh. 51, ¶67, 73; see also Exh. 48).

**RESPONSE:** **The Gonrings do not dispute the facts alleged in this paragraph. The Gonrings dispute that this cost is recoverable to Plaintiff as damages.**

44. Ms. Sgariglia paid her 44% proportionate to obtain competitive quotes for masonry repair on behalf of the Cortez Property Association. (Exh. 51, ¶40, 73; see also Exh. 48).

**RESPONSE:** **The Gonrings do not dispute the facts alleged in this paragraph. The Gonrings dispute that this cost was related to, or necessitated by, the issues which this Court found the Gonrings liable for concealing, or that it is recoverable to Plaintiff as damages.**

45. Ms. Sgariglia has also paid attorney fees, which are not articulated in her spreadsheet. (Exh. 51, ¶73).

**RESPONSE:** **The Gonrings do not dispute the facts alleged in this paragraph. The Gonrings dispute that Plaintiff is entitled to recover her attorney's fees in connection with this action.**

46. Had Ms. Sgariglia received her condominium in accordance with Defendants' disclosure, she would not have borrowed funds for everyday repairs to her unit and common maintenance. (Exh. 51, ¶72).

**RESPONSE:** **The Gonrings dispute that Plaintiff was required to borrow funds for any repairs related to, or necessitated by, the issues which this Court found the Gonrings liable for concealing, but for issues discovered after the Gonrings had sold Unit 1.**

47. Mr. Hier has opined that all of the B. Allendorfer masonry, roof and garage repairs performed for the Cortez Property was remedial in nature, performed in a good and workmanlike manner, and that the charges were within industry standards for the Chicagoland area. (Exh. 49, ¶¶40-54, 56).

**RESPONSE: For purposes of Plaintiff's Motion and the Gonrings' Cross-Motion for Summary Judgment on Damages, the Gonrings do not dispute the facts alleged in this paragraph. Answering further, the repairs that Mr. Allendorfer performed were to correct issues discovered after the Gonrings had sold Unit 1 and of which the Gonrings had no actual knowledge. Gonring and Kelsey Gonring's LR 56.1 Statement of Additional Undisputed Facts, ¶19; Affidavit of Nicholas Gonring, filed as Exhibit B to Defendants Nicholas Gonring and Kelsey Gonring's LR 56.1 Statement of Additional Undisputed Facts, ¶19.**

48. Mr. Allendorder has opined that his prices are in conformity within the industry and the Chicagoland area, while Ms. Sgariglia negotiated down Mr. Allendorfer's initial quote to conform with another competitive quote. (Exh. 50, ¶15, 16, 22-30; Exh. 51, ¶21).

**RESPONSE: For purposes of Plaintiff's Motion and the Gonrings' Cross-Motion for Summary Judgment on Damages, the Gonrings do not dispute the facts alleged in this paragraph. Answering further, the repairs that Mr. Allendorfer performed were to correct issues discovered after the Gonrings had sold Unit 1 and of which the Gonrings had no actual knowledge. Gonring and Kelsey Gonring's LR 56.1 Statement of Additional Undisputed Facts, ¶19; Affidavit of Nicholas Gonring, filed as Exhibit B to Defendants Nicholas Gonring and Kelsey Gonring's LR 56.1 Statement of Additional Undisputed Facts, ¶19.**

49. From the time Plaintiff Sgariglia purchased her condo to date, she has spent $211,131.78 on repairs, consulting fees, Association attorney fees, increased insurance, interest, penalties, and deposition transcripts. (Exh. 51, ¶73; Exh. 48).

**RESPONSE:** **For purposes of Plaintiff's Motion and the Gonrings' Cross-Motion for Summary Judgment on Damages, the Gonrings do not dispute the facts alleged in this paragraph. The Gonrings dispute that these amounts were related to, or necessitated by, the issues which this Court found the Gonrings liable for concealing, or that they are recoverable to Plaintiff as damages.**

        **NICHOLAS GONRING and KELSEY GONRING**

        By: /s/ Jordan A. Finfer
        Jordan A. Finfer (ARDC #6296373)
        Elizabeth Archerd (ARDC #6329394)
        Patzik, Frank & Samotny Ltd.
        200 S. Wacker Drive, Suite 2700
        Chicago, IL 60606
        Phone: 312-551-8300
        jfinfer@pfs-law.com
        earcherd@pfs-law.com
        ***Attorneys for Nicholas and Kelsey Gonring***

CERTIFICATE OF SERVICE

    The undersigned, a non-attorney, under penalty of perjury, hereby certifies that NICHOLAS AND KELSEY GONRING'S RESPONSE TO PLAINTIFF'S 56.1 STATEMENT OF UNDISPUTED FACTS was electronically filed on July 29, 2024 using the court's CM/ECF system and will then send same to all ECF-registered counsel of record.

                                                     */s/ Melissa Siedlecki*