### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MELINDA SGARIGLIA, | ) |
| Plaintiff, | ) Case No. 1:19-cv-05684 |
| v. | ) |
| | ) Honorable Robert M. Dow, Jr. |
| AMERICAN INTERNATIONAL RELOCATION SERVICES, LLC, d/b/a AIRES, an Illinois limited liability company, NICHOLAS GONRING, and KELSEY GONRING, | ) Magistrate Judge Young B. Kim |
| | ) Jury Demanded |
| Defendants. | ) |
| NICHOLAS GONRING and KELSEY GONRING, | ) |
| Third Party Plaintiffs, | ) |
| v. | ) |
| 2726 WEST CORTEZ CONDOMINIUM and JOHN GORR, | ) |
| Third Party Defendants. | ) |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FOR DAMAGES AND FOR LEAVE TO FILE A PETITION FOR ATTORNEY FEES & COSTS**

**I.      ARGUMENT**

I. PLAINTIFF'S CLAIMED ACTUAL DAMAGES ARE RELATED TO THE DEFECTS THAT THE GONRINGS CONCEALED.

Defendants' argument that they were not aware of any of the defects to the property they fraudulently concealed to Ms. Sgariglia does not hold water. But the building sure did. One main argument that overshadows their entire "statement of facts" is that in essence, Defendants are dishonest. For example, Defendants claim that on December 4, 2017, they learned for the first time about water in Unit 3. (See Def. Stmt. Facts ¶5). Yet on November 9, 2017,

1

Defendants attended a condominium meeting where they document that the owner of Unit 3 complains of water in his unit. Their own meeting minutes contradict their affidavits. (See Pl. Response to ¶5).

Defendants incredulously claim that they knew nothing of the front stoop and the water damage caused to it, the block windows, the leaking in the terrace roofs, the leaking in Unit 1. (See Pl. Response to ¶22 of Def. 56.1 Stmt). All these defects are in the ESI Report that Defendants concealed from Ms. Sgariglia. (See Pl. Response to ¶22 of Def. 56.1 Stmt). The ESI report specifically reveals defects in the original construction, especially wall and door opening. The front stoop defects are in the ESI report with photos attached. The Defendants' additional contractor reports reveal roof defects. Indeed the Gralak report specifically cited a cracked block window and repairs to be made to all window and door openings, as well as the roof. Mr. Gorr showed the Defendants photos of his apartment with water stains on the drywall. Persistent water in drywall naturally results in mold. Defendants' argument, while wholly disingenuous, would result in liability against those with common sense, but not against those who lack it.

II. THERE IS NO DISPUTE THAT THE WATER INFILTRATION THAT THE GONRINGS WERE AWARE OF WAS NOT RESOLVED BEFORE PLAINTIFF MOVED INTO UNIT 1 & BEFORE THEY COMPLETED THEIR DISCLOSURES.

Defendants are repeatedly attempting to pull the wool over this Court's eyes with their preposterous claim that the water was resolved before Ms. Sgariglia moved in. As stated by this honorable Court, whatever they believed after the work was performed is irrelevant. (See 11/2/23 Order, page 18).

Even if relevant, this allegation is not the truth. It is undisputed Defendants accepted the cheapest quote that specifically fails to address the issues outlined in the ESI Report. The Arrow Masonry quote excludes leaks from the following sources: "roof leaks, defective or improperly

installed windows/ doors..'' (See Arrow Masonry quote attached as Def. Exh. I). In essence, Arrow Masonry excluded from work the source of the problem as articulated in the ESI Report. Furthermore, there is absolutely no dispute that the Gonrings were aware that there was a leak problem when they presented Ms. Sgariglia with their disclosures, all of which contained false information. They chose to hide water problems, insurance claims and essential meeting minutes. Indeed the fact that they hid them is clear that they knew Ms. Sgariglia could cancel the deal entirely has she been made aware of the extensive damage.

The Defendants' argument that they are not responsible for B. Allendorfer's roof findings is preposterous. The Gralak quote specifically mentions that work needed to be done on the roof, specifically the parapet walls and coping stones. (See Pl. Response to Def. 56.1 Stmt. of Facts, ¶22). Defendants should not benefit from running away from the problem and hiring the cheapest contractor with the smallest scope of work, specifically excluding findings made from the structural engineer and the other contractors.

The Defendants concealed multiple quotes, a structural report, meeting minutes, an insurance claim and now want to claim that they were not aware of defects. Yet the court found that the Defendants intentionally concealed facts from Ms. Sgariglia and admitted to hiding facts from her. They were well aware that contractors were finding the source of the leaks to be the roof, wall openings, and that the problem occurred with the original construction of the building. In addition, the original construction was the entire property included the garage.

### III. PLAINTIFF'S CLAIMED CONSEQUENTIAL DAMAGES ARE RELATED TO THE CONCEALMENT AND COULD NOT HAVE BEEN CONTEMPLATED BY THE GONRINGS AT THE TIME THEY ENTERED THE CONTRACT.

Ms. Sgarilgia's damages are all a direct result of the fraud perpetrated by the Defendants, and the law permits consequential damages proximately resulting from the fraud. Defendants'

argument that Plaintiff did not need to fix anything because Arrow repaired it all is disingenuous at best. The facts belie this statement, as the water damage had caused massive structural defects that would have collapsed the roof. To now claim it was simply a choice is yet more dishonestly that never ends in this case. The Gonrings were well aware, with the quotes that they received, that repairing the structural defects was going to be costly. The May 3, 2018 Bral estimate was nearly $50,000. (See Exhibit 21 of Original Motion for SJ). They were well aware that these repairs were extensive and expensive. Taking out a loan is a typical response to unforeseen repairs costs. Association expenses are also foreseen. It would be reasonable to expect a member of the Association to incur increased insurance costs, fees in an attempt to prevent further damage to the Association when parties have intentionally concealed the structural defects.

      Attorney fees are also permissible and appropriate in this case. Any homeowner who is handed over a residence with structural defects would incur attorney fees in attempting to recover their damages from a seller. It is within this honorable Court's discretion to grant such fees and costs. Defendants intentionally lied to Plaintiff and shifted their own property damages onto her. She was an innocent victim of their fraudulent scheme. This is a good reason for the Court to exercise its discretion in awarding fees and costs to the Plaintiff.

## II.    CONCLUSION

      Plaintiff Sgariglia respectfully asks this honorable Court to enter judgment against Defendants Kelsey and Nicholas Gonring (Count I & II) in the amount of $235,131.78. Plaintiff also asks this honorable Court to allow her attorney to file a petition for attorney fees and costs.

      Melinda Sgariglia,

By: /s/ Carol Oshana
One of her attorneys

Carol Oshana
OSHANA LAW
20 N. Clark Street, Suite 3000
Chicago, IL 60602
Oshanalaw@yahoo.com
ARDC #: 6243613

August 27, 2024