IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MELINDA SGARIGLIA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 C 5684 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| NICHOLAS GONRING, and | ) | |
| KELSEY GONRING, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION & ORDER</u>**

Plaintiff Melinda Sgariglia ("plaintiff") brings her second amended complaint against

defendants Nicholas and Kelsey Gonrings ("defendants"). In a previous order, the court granted

plaintiff's partial motion for summary judgment of liability against defendants on Counts I and II

of her second amended complaint. (Doc. 244).[1] Count I alleges that defendants violated the

Illinois Residential Real Property Disclosure Act ("the Illinois Disclosure Act"), 765 ILCS 77/1;

Count II alleges common law fraudulent concealment against defendants. Before the court are a

motion and cross motion for summary judgment on damages stemming from defendants' liability

on Counts I and II, as well as plaintiff's motion for leave to file a petition for attorney's fees and

costs. For the reasons discussed below, the court grants plaintiff's motion for summary

judgment on damages (Doc. 261) in part and denies it in part. Defendants' cross motion for

summary judgment (Doc. 264) is granted in part and denied in part. Plaintiff's motion for leave

to file a petition for attorney's fees (Doc. 261) is denied.

---

[1] A more complete procedural history is covered in that order and will not be reproduced here. <u>Sgariglia v.</u>
<u>American Int'l Relocation Servs.</u>, No. 19 C 5684, 2023 WL 7220030 (N.D. Ill. Nov. 2, 2023).

## **BACKGROUND**

The instant case arises out of the sale of a condominium unit located at 2726 West Cortez in Chicago, Illinois ("the Building"). The Building contains three units, and is governed by the Association, which is comprised of the owners of those units. Defendants owned Unit 1, the lowest of the three units in the Building, until it was sold to plaintiff on July 25, 2018. Before completing that sale, defendants fraudulently concealed that the Building, including Unit 1, had unresolved, material defects. Additionally, defendants violated the Illinois Residential Real Property Disclosure Act, 765 ILCS 77/1, by submitting false information on the statutorily required Illinois Residential Real Property Disclosure Report ("Illinois disclosure report"). Because the motion and cross motion for summary judgment before the court are on the issue of damages, the facts that the court focuses its attention on here relate to the information fraudulently concealed by defendants and subsequent remediation efforts undertaken by plaintiff. A more complete recounting of the facts relevant to the court's determination of liability can be found in its memorandum opinion and order on liability. (Doc. 244). The court takes the relevant facts from the parties' Local Rule 56.1 statements and supporting exhibits.

On May 19 and 21, 2018, defendants completed and executed an Illinois disclosure report, as required by the Illinois Disclosure Act, 765 ILCS 77/1. The Illinois disclosure report form cites to the Disclosure Act to define "residential real property," which includes "condominium units including the limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit." Further, the form notes that "[t]hese disclosures are not intended to cover the common elements of a condominium, but only the actual residential real property including limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit." The Association's bylaws define

2

"limited common elements" to include "[t]he part of the Common Elements contiguous to and serving a single Unit exclusively as an inseparable appurtenance thereto including specifically balconies, decks, porches and such portions of the perimeter walls, floors and ceilings, windows, doors and all fixtures and structures therein which lie outside the Unit boundaries."  Defendants answered "no" when prompted to disclose whether they were aware of any "leaks or material defects in the roof, ceilings, or chimney" or "in the walls, windows, doors or floors."

On May 29 and 30, 2018, defendants each signed a Seller Property Disclosure Statement ("disclosure statement").  In the disclosure statement, defendants disclosed that they were aware of "past water leakage in the house or other structures," specifying that "Unit 3 had leaks on west facing windows," but the "[Association] sealed building to resolve Unit 3 leak."  When prompted to disclose whether they were aware of past or present "deterioration or other problems with the walls, foundations or other structural components," defendants answered "no," and they also indicated that they had not filed any insurance claims on their homeowner's insurance policy for Unit 1 in the past five years.  They disclosed, however, "[t]uckpointing & sealing of Building exterior," when prompted to disclose shared or common areas or maintenance agreements.

But defendants' representations fraudulently concealed that the Building, including Unit 1, had unresolved, material defects.  On or about October 15, 2017, John Gorr ("Gorr"), defendants' upstairs neighbor and owner of Unit 3, filed a claim with Erie Insurance Group ("Erie") pursuant to the Association's insurance policy for "water damage to the building which was discovered on October 9, 2017."  Erie retained Engineering Systems, Inc. ("ESI") to examine the water infiltration issue, and on October 19, 2017, ESI compiled a report that summarized its recommendations.  According to the ESI report, "[w]ater infiltration is occurring at various locations in the structure, but particularly at window and door openings."  The report

3

explained that "[t]he water infiltration is occurring because of deficiencies in the original construction of the building with the predominate issue being improper flashing at wall openings."

In addition to the ESI report, defendants received various emails from Gorr that informed them as to the possible extent of the Building's defects:

- On December 4, 2017, Gorr emailed the other members of the Association, including defendants, to forward ESI's report. In his email, Gorr stated:

    "Hey guys, just wanted to forward the results of the inspection from the building insurance claim I put in for the water damage at my unit. . . . Most of the water issues at my place are above windows and doors, which is where the water would collect and leak into my unit. . . . After 5 years of being unable to solve this with minor fixes, I believe we have to move forward with the large repair."

    In the same email, Gorr also informed them that,

    "I've done everything I can over the years to repair on my own and it's just getting worse every year. At this point I believe it needs to become a building issue. To the best of my knowledge, it appears to me that the Condo documents would include this as a common element repair and would be paid for by the association. This also means it breaks down by unit percentage. (44% Unit 1, 26% Unit 2, 30% Unit 3)."

- On February 22, 2018, Gorr emailed defendants, informing them that:

    "It's not a unit-specific problem, they just have to tear out the drywall in my unit to diagnose. The windows are not leaking, the building is leaking, the wall above my door is leaking, the vent on my ceiling is dripping water. It's most likely due to some of the following: Capstones on parapet. Improper flashing above windows and doors. Improper flashing between floors. Tuckpointing cracks. Lack of cavity wall. Improper weepholes. Water absorbed through split-face block. Roof damage….The fact remains we have a building that is leaking and appears to be getting worse, it leaked this week during the rains. Water is in the structure and probably mold as well, there was mold in the past in unit 1 which you can read in the emails.

The Association took steps to remediate the water infiltration issues with Gorr's unit, first by hiring Bral and later by hiring Arrow. The evidence shows that Gorr worked to combat, and

4

eventually overcome, skepticism among his fellow board members for the Association to take action to address these problems with the Building.

## **LEGAL STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden, and the court must view all facts in the light most favorable to the nonmovant and draw all reasonable inferences in their favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). But the nonmovant must do more than raise "some metaphysical doubt as to the material facts." Id. at 586. Rather, the nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Where both parties file motions for summary judgment, the court applies the same standards of review. See Wis. Alumni Research Found. v. Xenon Pharm., Inc., 591 F.3d 876, 882 (7th Cir. 2010). The court views all facts and inferences in the light most favorable to the nonmovant on each motion, on an individual and separate basis. Id.

In an action for fraud based on defects in property, Illinois courts have recognized two appropriate methods for measuring damages. The first method is "granting the plaintiff the benefit of the bargain, i.e., subtracting the value the property actually had at the time of the sale, given the defects, from the value the property would have had at the time of the sale had the defects not existed." Napcor Corp. v. JPMorgan Chase Bank, 938 N.E.2d 1181, 1191 (Ill. App. 2d Dist. 2010). The second method is to determine "the cost of fixing the property to make it conform to the condition it would have had without the defects." Id. Based on the arguments

made in briefing and the evidence provided, the court understands plaintiff here to move for summary judgment on damages based on the second method.

In Illinois, "compensatory damages for fraud are intended to compensate for 'any injury which is the direct and natural consequence of [the plaintiff's] acting on the faith of defendant's representations.'" Roboserve Inc. v. Kato Kagaku Co., Ltd., 78 F.3d 266, 274 (7th Cir.1996) (quoting Gold v. Dubish, 549 N.E.2d 660, 666 (Ill. App. 5th Dist. 1989)). Damages for fraud, however, "are not intended to restore what one never had." Id. In addition to actual (compensatory) damages, certain consequential damages proximately resulting from the fraud are recoverable. Home Savings & Loan Ass'n v. Schneider, 469 N.E.2d 585, 589 (Ill. App. 3d Dist. 1984), aff'd in part & rev'd in part on other grounds, 483 N.E.2d 1225 (Ill. 1985); Tan v. Boyke, 508 N.E.2d 390, 394 (Ill. App. 2d Dist. 1987). In the fraud context, proximate causation limits recovery to "those damages which might foreseeably be expected to follow from the character of the misrepresentation itself." Martin v. Heinold Commodities, Inc., 643 N.E.2d 734, 748 (Ill. 1994) (quoting W. Prosser, Torts § 110, at 732 (4th ed. 1971)).

## DISCUSSION

The court begins by enumerating the categories of damages that plaintiff seeks on summary judgment, each of which will be evaluated in turn. Based on the court's reading of plaintiff's motion for summary judgment, the claimed damages are as follows:

A.  Mold remediation by Mold Solutions of Chicago, for which the Association paid $13,469.00;

B.  Masonry repair work by Brian Allendorfer ("Allendorfer"), for which the Association paid $120,000.00;

6

C.  Exploratory work by Steve Hier ("Hier"), for which the Association paid $10,530.00;

D.  Roof and truss repair by Allendorfer, for which the Association paid a total of $92,190.00;

E.  Additional water infiltration prevention work, including sealant, tuckpointing, exterior glass block window replacement performed by Allendorfer, for which the association paid a total of $12,125.00;

F.  Repair of deteriorated stairs performed by Allendorfer, for which the Association paid $3,000.00;

G.  Terrace roof repairs, for which the Association paid $5,700.00;

H.  Repairs to the garage roof performed by Renner & Renner and Classic Restoration, for which the Association paid a total of $27,210.00;

I.  A new wooden deck on the roof, for which plaintiff (alone) paid $9,810.00;

J.  Repairs to plaintiff's front facing windows, not yet performed, but quoted by Allendorfer at $24,000.00;

K.  Tax penalty incurred by plaintiff for early 401(k) withdrawal, for which plaintiff paid $33,333.00;

L.  Interest of $17,794.76 incurred by plaintiff on her home equity line of credit;

M.  Interest of $2,105.43 incurred by plaintiff for a loan against her 401(k);

N.  Insurance premium increase for the duration of defendants' lawsuit against the Association totaling $7,276.83;

O.  Deposition costs paid by plaintiff to Veritext Court Reporting of $1,895.30.

Before evaluating each of the above categories of damages, the court first clarifies the extent of defendants' liability. Defendants argue that the court found them liable for fraud only for

their concealment of information regarding water infiltration through the windows and doors of Unit 3. The court disagrees. This court found defendants liable because "[t]he evidence shows that the defendants granularly dissected each disclosure request to minimize the information available to plaintiff about <u>water infiltration in the Building and its ramifications for Unit 1</u>, including Gorr's claim on the Association's insurance." (Emphasis added.) The fraud committed by defendants consisted of concealment of <u>all</u> "the information available to the plaintiff about water infiltration in the building," and this information extends beyond the water infiltration through the windows and doors of Unit 3.

The most relevant set of information that defendants concealed from plaintiff is contained in the emails that they received from Gorr and the attached ESI report. Gorr notified defendants that the water infiltration issue had been occurring for five years. Gorr notified defendants that water was dripping not only from his doors and windows, but also from the vents on his top-floor ceiling. Gorr notified defendants that this was an issue with the entire building, not only his unit, and likely stemmed from some of the following sources: "Capstones on parapet. Improper flashing above windows and doors. Improper flashing between floors. Tuckpointing cracks. Lack of cavity wall. Improper weepholes. Water absorbed through split-face block. Roof damage." The ESI report concluded that "water infiltration is occurring at various locations of the structure…because of deficiencies in the original construction of the building with the predominate issue being improper flashing at wall openings."

The record definitively establishes the information available to defendants before they completed their disclosure forms. The information concealed by defendants included information about water infiltration through the exterior surfaces of the entire building, including the roof, split block face, windows, and doors. These components all qualify as "walls, foundations or

other structural components," which defendants fraudulently represented were, to their knowledge, free of "deterioration or other problems." Having clarified the character of defendants' liability, the court will now evaluate each category of damage claimed by plaintiff.

### Mold Remediation

Plaintiff moves for summary judgment on her 44% share $13,649.00 of Association expenses ($6,005.56) incurred for mold remediation work. Plaintiff argues that the cost of the mold remediation work is recoverable because it pertains to defects in the original construction of the Building that were fraudulently concealed by defendants.

Defendants argue that their liability cannot extend to the mold as a matter of law because they had no actual knowledge of the mold. Defendants remind the court of the timeline; the mold was discovered on September 7, 2018, approximately six weeks after the sale closed on July 25, 2018. Therefore, defendants contend, they cannot have concealed a mold issue that they had no knowledge of.

The court disagrees with defendants. As an initial matter, defendants did have some knowledge of the mold issue. Gorr reported to defendants on February 22, 2018, that "[w]ater is in the structure and probably mold as well." (Emphasis added.) More importantly, defendants' contention that without actual knowledge of the consequences of their fraud they cannot be liable for such consequences is legally erroneous. Since this court has already found defendants liable for fraudulently concealing information from plaintiff, the questions that remain in determining damages is whether the claimed injuries were factually and proximately caused by defendants' fraudulent concealment.[2]

---

[2] The court uses the term "proximate cause" to mean what some other jurists and courts refer to as "legal cause," as in "whether the injury is of a type that a reasonable person would see as a likely result of his conduct." Young v.

There is no dispute that plaintiff's remediation efforts are "the direct and natural consequence of [the plaintiff's] acting on the faith of defendant's representations." Roboserve, 78 F.3d 274. If defendants had not induced plaintiff to purchase Unit 1 by fraudulently concealing information regarding the defective condition of the Building, then plaintiff would not have been required to pay for mold remediation. Defendants' "see no evil" argument is irrelevant to the analysis of whether defendants' fraudulent concealment of information in fact caused plaintiff's injuries.

Since cause in fact is not in dispute, the court understands defendants' argument to sound in the realm of proximate cause. In the fraud context, proximate causation limits recovery to "those damages which might foreseeably be expected to follow from the character of the misrepresentation itself." Heinold Commodities, Inc., 643 N.E.2d at 748. The record shows the character of defendants' misrepresentation. Defendants' misrepresentation consisted of, among other things, fraudulently concealing the following information: (1) a water infiltration issue; (2) that was reported by Gorr to have existed for five years; (3) that was due to material defects throughout the original construction of the building; (4) and Gorr's report that "[w]ater is in the structure and probably mold as well."

The court finds that there is no genuine dispute of fact that remediation of mold damage "might foreseeably be expected" to follow from the character of the fraudulent concealment. No reasonable jury could conclude otherwise; five years of water infiltration from construction defects across the entire Building makes the presence and subsequent remediation of mold extremely foreseeable, so foreseeable that Gorr explicitly said so to defendants.

---

Bryco Arms, 821 N.E.2d 1078, 1086 (Ill. 2004).

**Masonry Repair**

Plaintiff moves for summary judgment on her 44% share of $120,000.00 of Association expenses ($52,800.00) incurred for masonry repairs performed by Allendorfer. Plaintiff argues that the cost of masonry work is recoverable because it pertains to defects in the original construction of the Building that were fraudulently concealed by defendants.

Defendants' argument against summary judgment on these damages mirrors their argument against mold remediation damages. Because the masonry issue was discovered after the close of the sale, defendants contend they had no knowledge of it. Without any knowledge of the masonry defects, defendants contend that, as a matter of law, they cannot be held liable for fraudulent concealment.

The court disagrees with defendants. First, contrary to defendants' assertions, the record shows that defendants did have knowledge of wider spread masonry issues. Gorr notified defendants that the water infiltration issue was affecting the entire building, not only his unit, and likely stemmed from some of the following sources: "Capstones on parapet. Improper flashing above windows and doors. Improper flashing between floors. Tuckpointing cracks. Lack of cavity wall. Improper weepholes. Water absorbed through split-face block. Roof damage." The ESI report concluded that "water infiltration is occurring at various locations of the structure…because of deficiencies in the original construction of the building with the predominate issue being improper flashing at wall openings."

Second, defendants' contentions on the law are incorrect. Plaintiff is entitled to recovery for damages that are "the direct and natural consequence of [the plaintiff's] acting on the faith of defendant's representations." Roboserve, 78 F.3d 274. As with the mold remediation issue, defendants' liability for the masonry repairs turns on whether plaintiff's injury was factually and

11

proximately caused by the fraudulent concealment. There is no dispute that defendants fraudulently concealed information to induce plaintiff to purchase Unit 1, and thus the fraud factually caused plaintiff's expenditures on the Building's masonry repairs.

Because there is no dispute that the fraudulent concealment was the factual cause of plaintiff's roof masonry expenditures, the only remaining issue is proximate cause. In other words, the remaining issue is whether plaintiff's roof repair costs are "damages which might foreseeably be expected to follow from the character of the misrepresentation itself." Heinold Commodities, Inc., 643 N.E.2d at 748. The court finds that based on the information concealed, there is no genuine dispute that masonry repairs were foreseeable. Building-wide water infiltration stemming from defective original construction foreseeably leads to the necessity for extensive masonry work.

### Exploratory Work and Roof Repair

Plaintiff moves for summary judgment on her 44% share of $92,190.00 of Association expenses ($40,563.60) incurred for roof and truss repairs performed by Allendorfer and on her 44% share of $10,530.00 of Association expenses ($4633.20) incurred for exploratory work prior to those repairs. Plaintiff argues that the cost of roof and truss repairs are recoverable because it pertains to defects in the original construction of the Building that were fraudulently concealed by defendants.

Defendants' argument against summary judgment on these damages mirrors their previous arguments. Because the roof damage was discovered after the close of the sale, defendants contend they had no knowledge of issues with the roof. Without any knowledge of roof issues, defendants contend that, as a matter of law, they cannot be held liable for fraudulent

12

concealment.

The court disagrees with defendants. First, contrary to defendants' assertions, the record shows that defendants did have knowledge of potential roof issues. Gorr, defendants' neighbor on the top floor of the building, reported in an email to defendants that "the building is leaking, the wall above my door is leaking, the vent on my ceiling is dripping water." Gorr explained that the leakage was most likely due to a list of potential causes, including "<u>roof damage.</u>" (Emphasis added.) Additionally, Gorr's report of leaking ceiling vents must be evaluated in context. Gorr lived on the top floor of the building, i.e., his ceiling was situated directly beneath the roof. As discussed above, this information was delivered to defendants in conjunction with information that the water infiltration was an "entire building" issue caused by material defects in its <u>original</u> construction.

Second, defendants' contentions on the law are incorrect. As discussed above, plaintiff is entitled to recovery for damages that are "the direct and natural consequence of [the plaintiff's] acting on the faith of defendant's representations." <u>Roboserve</u>, 78 F.3d 274. Defendants' liability for the roof repairs turns on whether plaintiff's injury was factually and proximately caused by the fraudulent concealment. There is no dispute that defendants fraudulently concealed information to induce plaintiff to purchase Unit 1, and thus the fraud factually caused plaintiff's expenditures on the Building's roof repairs.

Because there is no dispute that the fraudulent concealment was the factual cause of plaintiff's roof repair expenditures, the court understands defendants' argument to dispute proximate cause. In other words, defendants dispute whether plaintiff's roof repair costs are "damages which might foreseeably be expected to follow from the character of the misrepresentation itself." <u>Heinold Commodities, Inc.</u>, 643 N.E.2d at 748.

The court finds that there is no genuine dispute of fact that remediation of the issues in question "might foreseeably be expected" to follow from the character of defendants' fraudulent concealment. The information withheld by defendants included a five-year history of water infiltration in the top floor unit of the building, including leaking from the vents on the top floor ceiling. Gorr told defendants that he attributed the water infiltration to potential "roof damage." Of course, neither defendants nor Gorr are building experts who could confirm to a certainty that the roof required repairs. As defendants recount, Hier was the first professional to diagnose the roof issues and did so six weeks after the close of the sale. But the question the law asks is not whether defendants at the time of their fraud had in hand a professional report confirming that there was roof damage. The question is whether it was reasonably foreseeable that fraudulently concealing this information about the Building to a potential buyer (plaintiff)—information including a five-year history of water infiltration from above the top floor unit that was suspected to stem from roof damage—would result in that buyer needing to pay for these roof repairs. On that question, the court concludes that no reasonable jury could answer in the negative.

**Additional Water Infiltration Prevention**

Plaintiff moves for summary judgment on her 44% share of $12,125.00 of Association expenses ($5,335.00) incurred for additional water infiltration prevention work, including sealant, tuckpointing, and exterior glass block window replacement performed by Allendorfer. Plaintiff argues that the cost of the additional water infiltration work is recoverable because it pertains to defects in the original construction of the Building that were fraudulently concealed by defendants.

Defendants argue that because they did not have knowledge of these specific issues, they

14

cannot be liable for them.  As discussed elsewhere, since there is no dispute that defendants'
fraudulent concealment factually caused plaintiff's injury, the court understands defendants'
argument to dispute proximate cause.

The court finds that there is no genuine dispute that repairs to prevent further water
infiltration are the foreseeable consequence of defendants' fraudulent concealment.  Defendants
concealed information about water infiltration, not only in Unit 3, but throughout most of the
Building due to defects in its original construction.  That plaintiff would have to pay for repairs
to prevent further water infiltration is extremely foreseeable, and no reasonable jury could
conclude otherwise.

### Front Stairs and Stoop

Plaintiff moves for summary judgment on her 44% share of $3,000.00 of Association
expenses ($1,320.00) incurred for the repair of the deteriorated front stairs and stoop ("stoop")
performed by Allendorfer.  Plaintiff argues that the cost of the stoop repair is recoverable
because it pertains to defects in the original construction of the Building that were fraudulently
concealed by defendant.

The court understands defendants' argument to dispute that the stoop repairs were
proximately caused by their fraud.  In other words, defendants dispute whether plaintiff's stoop
repair costs are "damages which might foreseeably be expected to follow from the character of
the misrepresentation itself."  Heinold Commodities, Inc., 643 N.E.2d at 748.  Defendants note
that the stoop was repaired in July 2020, two years after the sale of Unit 1.

The court agrees with defendants.  First, the stoop is visible and accessible to anyone
approaching the building, including potential buyers like plaintiff.  The ESI report includes

images of the front steps with a conspicuous crack running through it. With or without the fraud, the condition of the front steps was evident to plaintiff. This raises a doubt over whether defendants' fraud was the factual cause of plaintiff's stoop repair expenses.[3]

Second, the court finds that the fraud was not the proximate cause of the stoop repair. The cost to repair the stoop is too attenuated from the fraudulently withheld information to have been foreseeable. Although the information withheld by defendants implicated a wide array of water infiltration related problems across the entire Building, there is no evidence in the record that the poor construction of the stoop had any relation to the water infiltration related issues. The only inference that can be drawn in favor of plaintiff is that defendants withheld information that indicated that the Building was generally poorly constructed. But, (1) the attenuation between the nature of the information withheld by defendants and the stoop repair, (2) the conspicuousness of the issue necessitating the stoop repair, and (3) the time delay between the fraud and the stoop repair, lead this court to conclude that defendants' fraud was not the proximate cause of plaintiff's stoop repair expenses. Plaintiff has offered no affirmative evidence to defeat defendants' cross-motion for summary judgment on this issue that links the stoop to the information concealed by defendants.

**Terrace Roof**

Plaintiff moves for summary judgment on her 44% share of $5,700.00 of Association

---

[3] While defendants did not brief this issue, when "there are multiple factors that may have combined to cause the injury, we ask whether defendant's conduct was a material element and a substantial factor in bringing about the injury." Young v. Bryco Arms, 821 N.E.2d 1078, 1086 (Ill. 2004). It is unclear that defendants' fraud was a substantial factor in the causal chain leading plaintiff to pay for stoop repairs. The causal chain includes other causes such as plaintiff's failure to act on the conspicuously poor stoop construction before purchase, weather, poor original construction, etc. Additionally, in real estate fraud cases, "liability will not be imposed where the buyer was aware of the defects prior to purchase or could have discovered them through diligent inspection." Mitchell v. Skubiak, 618 N.E.2d 1013, 1017 (Ill. App. 1st 1993). Nevertheless, the issue can be decided on the lack of proximate cause alone.

expenses ($2,580.00) incurred for repairs to leaking terrace roofs performed by Allendorfer. Plaintiff argues that the cost of the terrace roof repair is recoverable because the repair pertained to defects in the original construction of the Building that were fraudulently concealed by defendants.

Defendants argue that they could not have had knowledge of leaking terrace roofs because they were discovered three years after defendants moved out. As discussed elsewhere in this opinion, the relevant question is not whether defendants knew of the roof leak in question when they fraudulently concealed information, but rather whether plaintiff's injury, here paying for the terrace roof repairs, could "foreseeably be expected to follow from the character of the misrepresentation itself." Heinold Commodities, Inc., 643 N.E.2d at 748. The court understands defendants' argument about the lapse of almost three years between the sale and discovery of the terrace roof leaks to contest whether the claimed injury is sufficiently proximate to the underlying fraudulent concealment.

The court disagrees with defendants. Despite the lapse of almost three years between the sale of the house and the discovery of the terrace roof leaking, the need to repair such leaking was the foreseeable result of the information concealed by defendants. The ESI report concluded, among other things, that "[t]he water infiltration is occurring because of deficiencies in the original construction of the building with the predominate issue being improper flashing at wall openings." Explaining the repair of the terrace roofs, Allendorfer stated in his affidavit that:

> On March 16, 2021, for unit 2 the terrace roofs, we discovered the terrace roofs were leaking. Ultimately we had to do all of them. This was because they were poorly installed originally. There were issues with the flashing detail where the roof intersected masonry. There was no way to patch this; it had to be completely replaced to prevent water infiltration inside the building. (Emphasis added.)

Allendorfer identifies poor original installation and improper flashing as the two root causes of the terrace leaking. These are the same root issues that the ESI report identified, and

defendants fraudulently concealed from plaintiff. Given this close resemblance between the information concealed by defendants and the issues with the terrace roof, the court finds that plaintiff's expenditures to repair the leaking terrace roofs were the foreseeable consequence of defendants' fraudulent concealment.

**Garage Roof and Garage Deck**

Plaintiff moves for summary judgment on her 44% share of $27,210.00 of Association expenses ($11,972.40) incurred for the repairs of the garage roof as well as $9,810.00 in expenses incurred by plaintiff alone to construct a new wooden deck on the roof. Plaintiff argues that the costs of the garage repair and new roof deck are recoverable because they pertain to defects in the original construction of the Building that were fraudulently concealed by defendant.

The court understands defendants' argument to dispute that the garage repairs and roof deck construction were proximately caused by their fraud. In other words, defendants dispute whether plaintiff's garage roof repair costs and new deck construction costs are "damages which might foreseeably be expected to follow from the character of the misrepresentation itself." Heinold Commodities, Inc., 643 N.E.2d at 748.

The court agrees with defendants. First, the construction of a new roof deck has no relation to remediating building defects concealed by defendants. Damages for fraud "are not intended to restore what one never had." Roboserve, 78 F.3d at 274. Second, the repair to the garage roof is too attenuated from the information concealed by defendants to have been proximately caused by it. While the root construction defects in the building concealed by defendants could foreseeably lead to an array of follow-on issues in the Building, the same is not

true of a separately standing garage. The evidence offered by plaintiff does not establish the provenance of the original construction of the garage, i.e., whether it was in fact constructed at the same time or by the same builders at the main Building. Without that evidence, no reasonable jury could even impute the weak inference of overall poor construction quality to the garage. The character of defendants' fraudulent concealment did not make future repairs to the garage foreseeable. Therefore, this court finds there is no genuine dispute that the garage related expenses are not proximate to defendants' fraud.

**Unit 1 Front Windows**

Plaintiff moves for summary judgment on $24,000.00 for yet to be performed repairs to remediate deterioration to her front-facing windows. Plaintiff argues that the cost of repairing the front windows is recoverable because they pertain to defects in the original construction of the Building that were fraudulently concealed by defendants.

Defendants argue that these issues were only first noted three years after plaintiff moved into Unit 1. Therefore, defendants did not have knowledge of the issue and could not have concealed it. As discussed elsewhere, however, defendants' argument on timing and lack of knowledge misses the point. The question here is whether the injury claimed—the need to repair deterioration on Unit 1's front facing windows—would foreseeably be expected to follow the concealment of the information that defendants did have knowledge of.

The court concludes that the window repair costs were the foreseeable consequence of defendants' fraud. Defendants concealed information regarding a history of water infiltration around Unit 3's windows that was attributable to defects in the Building's original construction. The ESI report and Gorr's emails made clear to defendants that the issues with the Unit 3

19

windows were not a unit-specific issue, but rather due to deficiencies in the original construction of the entire Building. That Unit 1 would suffer leaking windows in a manner resembling the leakage from Unit 3's windows is no surprise. Thus, the court finds that plaintiff's pending expenditures to repair the Unit 1 windows are the foreseeable consequence of the fraud perpetrated by defendants.

### Borrowing Costs (Tax Penalty, Interest)

Plaintiff moves for summary judgment on various borrowing costs that were incurred because she had to access an unanticipated quantity of funds to pay for home repairs. These borrowing costs consist of: (1) A $33,333.00 tax penalty for an early withdrawal of $100,000.00 from her 401(k); (2) $17,794.46 of interest incurred on a $102,000.00 home equity line of credit; and (3) $2,105.43 of interest paid on a $35,000 loan against her 401(k). Together, these borrowing costs total $53,232.89. Plaintiff argues that these borrowing costs were a consequence of the fraud perpetrated by defendants. According to plaintiff, because the fraud led to unanticipated expenses, these borrowing costs were a foreseeable consequence of the nature of the fraud perpetrated.

Defendants make two arguments against these borrowing costs. First, defendants maintain that plaintiff was not forced to incur <u>any</u> costs because of their fraud, and thus they are not responsible for any derivative borrowing costs related to repair costs that were not related to their fraud. Based on the discussion above, this argument plainly fails. The court has found that several of the costs incurred by plaintiff were the factual and foreseeable consequence of the fraud perpetrated by defendants.

Second, defendants argue that plaintiff cannot recover these consequential damages

because they are not proximate to the fraud.[4]  The issue, again, is whether these borrowing costs "might foreseeably be expected to follow from the character of the misrepresentation itself." Heinold Commodities, Inc., 643 N.E.2d at 748.  Defendants argue that there is no connection between their concealment and these borrowing costs, and that they were not foreseen by defendants at the time of the concealment.

The court disagrees with defendants.  There is no genuine dispute that the borrowing costs were incurred to pay for repairs that were related to defendants' fraudulent concealment. To the extent that the repair costs were a foreseeable consequence of the fraud, borrowing costs to cover those repair costs were also foreseeable.  Defendants marshal no evidence in opposition to this conclusion and instead rely on the repeated insistence that defendants did not foresee any repair costs at all flowing from their fraudulent concealment.  That defendants did not subjectively foresee the consequences of their fraud at the time is not dispositive of whether such consequences were foreseeable. To overcome a motion for summary judgment, the "nonmovant must do more than raise some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 587.  Here, defendants make no unique argument against the borrowing costs as distinct from the repair costs they are tied to and do not offer any affirmative factual claim to dispute plaintiff's evidence.  Thus, the court finds that there is no genuine dispute of material fact over whether the borrowing costs incurred by plaintiff to finance repairs that were factually and proximately caused by the fraud were themselves also factually and proximately caused by that fraud.

---

[4] The court understands defendants to making this argument given their quotation of a bankruptcy case about breach of contract, which reads "[I]n order to recover consequential damages, it must reasonably be supposed to have been within the contemplation of the parties at the time of making the contract as a probable result of a breach thereof." While this specific point is inapposite since it is about a breach of contract claim rather than an intentional tort, the issue of foreseeability of an injury that was the result of the intentional tort of fraudulent concealment is reasonably similar.

A further complication arises because the court has not awarded plaintiff damages for repairs with a total cost equal to the sums borrowed. While the court will award borrowing costs associated with the repairs that this court had ruled are factual and proximate consequences of the fraud, the total borrowing includes financing for repairs that the court has not awarded to plaintiff. Thus, the court will limit its award of borrowing costs to better match the amount of repair related damages awarded. By the court's calculations, it has awarded plaintiff $135,917.36 in repair related damages.[5]

While the solution is imperfect, the court awards plaintiff the borrowing costs associated with the $100,000.00 withdrawal from her 401(k) and the $35,000.00 loan against her 401(k), but not the interest associated with the $102,000.00 home equity line of credit. The $135,000.00 of borrowing associated with the first two arrangements is reasonably sufficient to cover the cost of financing the $135,917.36 in repair related damages suffered by plaintiff. Thus, this court awards plaintiff $35,438.43, the borrowing costs associated with these two financing arrangements.[6]

## Insurance Premium

Plaintiff moves for summary judgment on her share ($7,276.83) of the Association's increased insurance premiums that persisted for the course of defendants' earlier lawsuit against the Association. Plaintiff fails to make a prima facie showing that the increased insurance premiums were a result of the fraud perpetrated by defendants. Even as plaintiff put it, those

---

[5] $6,005.56 + $52,800.00 + $4,633.20 + $40,563.60 + $5,335.00 + $2580.00 + $24,000.00 = $135,917.36. These figures represent, respectively, plaintiff's share of mold remediation, plaintiff's share of masonry work, plaintiff's share of exploratory work, plaintiff's share of roof and truss repairs, plaintiff's share of additional water infiltration prevention, plaintiff's share of terrace repairs, and Unit 1 front window repairs.
[6] The $100,000.00 401(k) withdrawal incurred a tax penalty of $33,333.00 and the $35,000.00 401(k) loan incurred interest of $2,105.43. Thus, the court awards plaintiff on $35,438.43 of associated borrowing costs.

costs were incurred "thanks to Defendant Gonrings hapless lawsuit against the Association," and not because of defendants' failure to disclose certain information about the Building, which is what this court found defendants liable for. Since plaintiff provides no affirmative evidence connecting the insurance premium to defendants' fraud, the court grants defendants' cross motion for summary judgment on the increased insurance premium.

### Deposition Costs

Plaintiff moves for the award of $1,895.00 of deposition costs paid to Veritext Court Reporting. Rule 54(d) directs federal courts to award costs, other than attorney's fees, to the prevailing party. Fed R. Civ. P. 54(d). Costs under Rule 54(d) include "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. §1920. See also 6 J. Moore, Federal Practice par. 54.77[4] (2d ed. 1982) (explaining that federal courts allow costs "for depositions or parts of depositions read into evidence, used for cross-examination, used in connection with a motion for summary judgment, or used to preserve the testimony of a witness."). Plaintiff should include this award in a bill of costs.[7]

### Petition for Attorney's Fees

Plaintiff asks the court to permit her to file a petition for attorney's fees. Illinois common law prohibits a party from recovering "attorneys' fees and costs incurred in the same action as damages from an opponent." McKeown v. Sun Life Assurance Co. of Canada, No. 16 C 748,

---

[7] As deposition costs should be included in a bill of costs, they do not comprise part of the judgment.

2021 WL 916079, at *6 (N.D. Ill. Mar. 10, 2021). Since the recovery of attorneys' fees and costs is prohibited in Illinois for a common law damages action, "[a]ny right to recovery must derive from contract or statute." <u>Webb v. Fin. Indus. Regulatory Auth., Inc.,</u> 889 F.3d 853, 857 (7th Cir. 2018). Thus, any right to recovery here must derive from the violation of the Disclosure Act rather than from the common law fraudulent concealment claim. Under the Disclosure Act, it is within a court's discretion to choose whether to award reasonable attorneys' fees incurred by the prevailing party. <u>See</u> 765 ILCS 77/55; <u>Cantrall v. Bergner</u>, N.E.3d 959, 965 (Ill. App. 4th Dist. 2016). In its discretion, the court declines to do so here. To the extent that plaintiff intends to file a bill of costs that does not include attorney's fees, plaintiff may do so as a matter of course. 28 U.S.C. §1920 ("A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.").

## <u>CONCLUSION</u>

For the above reasons, plaintiff's motion for summary judgment (Doc. 261) is granted in part and denied in part. Defendants' cross motion for summary judgment (Doc. 264) is granted in part and denied in part. The court awards a total of $171,355.79 in damages to plaintiff for the following:

1. Plaintiff's 44% share $13,649.00 of Association expenses for mold remediation ($6,005.56);

2. Plaintiff's 44% share of $120,000.00 of Association expenses for masonry repairs performed by Allendorfer ($52,800.00);

3. Plaintiff's 44% share of $10,530.00 of Association expenses incurred for exploratory work performed by Hier ($4,633.20);

4.  Plaintiff's 44% share of $92,190.00 of Association expenses incurred for roof and truss repairs performed by Allendorfer ($40,563.60);

5.  Plaintiff's 44% share of $12,125.00 of Association expenses incurred for additional water infiltration prevention work, including sealant, tuckpointing, exterior glass block window replacement performed by Allendorfer ($5,335.00);

6.  Plaintiff's 44% share of $5,700 of Association expenses incurred for terrace roof repairs performed by Allendorfer ($2,580.00);

7.  Plaintiff's cost to repair the Unit 1 front windows, as quoted by Allendorfer ($24,000.00); and

8.  Plaintiff's borrowing costs associated with her 401(k) withdrawal and 401(k) loan, which were necessary to finance the above repairs ($35,438.43).

The court grants defendants' cross motion for summary judgment on the issues of: (1) stairs & stoop repair; (2) garage roof repair; and (3) construction of the new garage deck.

Plaintiff's motion for leave to file a petition for attorney's fees (Doc. 261) is denied.

ENTER:

Robert W. Gettleman
United States District Judge

DATE:   October 18, 2024